1   QUINN EMANUEL URQUHART & SULLIVAN, LLP

2   Andrew H. Schapiro (admitted *pro hac vice*)          Josef Ansorge (admitted *pro hac vice*)
    andrewschapiro@quinnemanuel.com                      josefansorge@quinnemanuel.com
3   191 N. Wacker Drive, Suite 2700                       1300 I. Street, N.W., Suite 900
    Chicago, IL 60606                                     Washington, D.C. 20005
4   Telephone: (312) 705-7400                             Telephone: 202-538-8000
    Facsimile: (312) 705-7401                             Facsimile: 202-538-8100
5

6   Stephen A. Broome (CA Bar No. 314605)                 Jonathan Tse (CA Bar No. 305468)
    stephenbroome@quinnemanuel.com                        jonathantse@quinnemanuel.com
7   Viola Trebicka (CA Bar No. 269526)                    50 California Street, 22nd Floor
    violatrebicka@quinnemanuel.com                        San Francisco, CA 94111
8   865 S. Figueroa Street, 10th Floor                    Telephone: (415) 875-6600
    Los Angeles, CA 90017                                 Facsimile: (415) 875-6700
9   Telephone: (213) 443-3000
    Facsimile: (213) 443-3100
10

11  Jomaire A. Crawford (admitted *pro hac vice*)         Thao Thai (CA Bar No. 324672)
    jomairecrawford@quinnemanuel.com                      thaothai@quinnemanuel.com
12  51 Madison Avenue, 22nd Floor                         555 Twin Dolphin Drive, 5th Floor
    New York, NY 10010                                    Redwood Shores, CA 94065
13  Telephone: (212) 849-7000                             Telephone: (650) 801-5000
    Facsimile: (212) 849-7100                             Facsimile: (650) 801-5100
14

15

16  *Attorneys for Defendant Google LLC*

17              UNITED STATES DISTRICT COURT

18       NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

19

20  PATRICK CALHOUN, ELAINE CRESPO,            Case No. 5:20-cv-05146-LHK
    HADIYAH JACKSON and CLAUDIA
21  KINDLER, on behalf of themselves and all   **DEFENDANT GOOGLE'S NOTICE OF**
    others similarly situated,                 **MOTION AND MOTION TO DISMISS**
22                                             **COMPLAINT**
            Plaintiffs,
23
            v.                                 The Honorable Lucy H. Koh
24                                             Courtroom 8 – 4th Floor
    GOOGLE LLC,                                Date:    February 18, 2021
25                                             Time:    1:30 p.m.
            Defendant.
26

27

28

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2      Please take notice that, on February 18, 2021 at 1:30 p.m. the undersigned will appear before

3  the Honorable Lucy H. Koh of the United States District Court for the Northern District of California

4  at the San Jose Courthouse, Courtroom 8, 4th Floor, 280 South 1st Street, San Jose, CA 95113, and

5  shall then and there present Defendant Google's Motion to Dismiss (the "Motion").

6      The Motion is based on this Notice of Motion and Motion, the attached Memorandum of

7  Points and Authorities, the accompanying Request for Judicial Notice, the Declaration of Andrew

8  H. Schapiro and exhibits attached thereto, the pleadings and other papers on file in this action, any

9  oral argument, and any other evidence that the Court may consider in hearing this Motion.

10                          **ISSUE PRESENTED**

11      Whether the Complaint, along with the documents referenced and incorporated therein and

12  judicially noticeable documents, show that Plaintiffs fail to state a claim upon which relief can be

13  granted, thus warranting dismissal of the Complaint under Rule 12(b)(6).

14                          **RELIEF REQUESTED**

15      Google requests that the Court dismiss the Complaint with prejudice.

16

17  DATED:  October 5, 2020          Respectfully submitted,

18                                  QUINN EMANUEL URQUHART & SULLIVAN, LLP

19

20                                  By _____*/s/ Andrew H. Schapiro*_____

21                                      Andrew H. Schapiro
                                        Attorneys for Defendant Google
22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................... 1

BACKGROUND AND PLAINTIFFS' ALLEGATIONS ............................................................... 3

    A.    The Privacy Policy—To Which Plaintiffs Consented—States That Google
           Receives the Data from Its Third-Party Services ........................................................ 3

    B.    Google Received the Data During Plaintiffs' Experiments Because They
           Visited Websites That Use Google's Third-Party Services, Not Because
           Plaintiffs Used Chrome ............................................................................................. 5

    C.    The Chrome Privacy Notice Does Not Suggest that Using Chrome Without
           Sync Means Google Does Not Receive Data from Its Third-Party Services ............ 6

ARGUMENT .................................................................................................................................. 8

I.    ALL CLAIMS SHOULD BE DISMISSED BECAUSE PLAINTIFFS AND THE
      WEBSITES CONSENTED TO GOOGLE'S RECEIPT OF THE DATA ............................ 8

    A.    Plaintiffs Consented to Google's Receipt of the Data ............................................... 9

    B.    The Websites Consented to Google's Receipt of the Data ........................................ 9

II.    PLAINTIFFS FAIL TO STATE THEIR CLAIMS FOR ADDITIONAL
       REASONS ........................................................................................................................ 11

    A.    Plaintiffs' Wiretap Act Unauthorized Disclosure Claim (Count 2) Fails ............... 11

    B.    Plaintiffs' SCA Unauthorized Access Claim (Count 3) Fails ................................. 12

          1.    Plaintiffs Fail to Allege that Google's Alleged Access Was
               Unauthorized ............................................................................................... 13

          2.    Plaintiffs Fail to Allege that Google Accessed a Protected "Facility" ........ 13

          3.    Plaintiffs Fail to Allege That Google Accessed Electronic
               Communications While They Were in "Electronic Storage" ...................... 14

    C.    Plaintiffs' SCA Unauthorized Disclosure Claim (Count 4) Fails ........................... 16

    D.    Plaintiffs' Intrusion Upon Seclusion Claim (Count 7) Fails ................................... 17

          1.    Plaintiffs Fail to Plausibly Allege a Reasonable Expectation of
               Privacy ...................................................................................................... 17

          2.    Plaintiffs Fail to Plausibly Allege a Highly Offensive Invasion of
               Privacy ...................................................................................................... 18

    E.    Plaintiffs' Contract Claims (Counts 8-9) Fail ......................................................... 20

K.    Plaintiffs' CFAA Claim (Count 11) Fails ...................................................... 21

    1.    Plaintiffs Fail to Allege Google Intentionally Damaged a Protected Computer ................................................................................................. 21

    2.    Plaintiffs Fail to Allege Loss of $5,000 ..................................................... 22

F.    Plaintiffs' Statutory Larceny Claim (Count 13) Fails .............................................. 22

G.    Plaintiffs' UCL Claim (Count 14) Fails ..................................................................... 23

    1.    Plaintiffs Fail to Allege They Lost Money or Property ............................. 23

    2.    Plaintiffs Fail to Allege Entitlement to Monetary Damages ....................... 24

    3.    Plaintiffs Do Not Allege "Unlawful," "Unfair," or "Fraudulent" Conduct ..................................................................................................... 24

III.    PLAINTIFFS' CLAIMS ARE BARRED BY THE STATUTES OF LIMITATIONS ................................................................................................................. 25

CONCLUSION ................................................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### <u>Cases</u>

*Andrews v. Sirius XM Radio Inc.*,
    932 F.3d 1253 (9th Cir. 2019) ............................................................22

*Archer v. United Rentals, Inc.*,
    195 Cal. App. 4th 807 (2011) ............................................................24

*Berryman v. Merit Prop. Mgmt., Inc.*,
    152 Cal. App. 4th 1544 (2007) ............................................................24

*People v. Brock*,
    143 Cal. App. 4th 1266 (2006) ............................................................8

*Brodsky v. Apple Inc.*,
    2019 WL 4141936 (N.D. Cal. Aug. 30, 2019) ............................................21, 25

*Brodsky v. Apple Inc.*,
    445 F. Supp. 3d 110 (N.D. Cal. 2020) ............................................................25

*Caltex Plastics, Inc. v. Lockheed Martin Corp.*,
    824 F3d 1156 (9th Cir. 2016) ............................................................25

*Chance v. Ave. A, Inc.*,
    165 F. Supp. 2d 1153 (W.D. Wash. 2001) ............................................................10

*Claridge v. RockYou, Inc.*,
    785 F. Supp. 2d 855 (N.D. Cal. 2011) ............................................................23

*Crowley v. CyberSource Corp.*,
    166 F. Supp. 2d 1263 (N.D. Cal. 2001) ............................................................17

*People v. Davis*,
    19 Cal. 4th 301 (1998) ............................................................23

*Depot, Inc. v. Caring for Montanas, Inc.*,
    915 F.3d 643 (9th Cir. 2019) ............................................................11

*In re Doubleclick Inc. Privacy Litig.*,
    154 F. Supp. 2d 497 (S.D.N.Y. 2001) ............................................................10, 16, 20

*In re Facebook Internet Tracking Litig.*,
    263 F. Supp. 3d 836 (N.D. Cal. 2017) ............................................................14, 23

*In re Facebook Privacy Litig.*,
    791 F. Supp. 2d 705 (N.D. Cal. 2011) ............................................................24

*In re Facebook, Inc. Internet Tracking Litig.*,
    956 F.3d 589 (9th Cir. 2020) ............................................................*passim*

*Garcia v. Enterprise Holdings, Inc.*,
    78 F. Supp. 3d 1125 (N.D. Cal. 2015) ................................................................9

*Gonzales v. Uber Techs., Inc.*,
    305 F. Supp. 3d 1078 (N.D. Cal. 2018) ..............................................................24

*In re Google Assistant Privacy Litig.*,
    2020 WL 2219022 (N.D. Cal. May 6, 2020) .................................................*passim*

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
    806 F.3d 125 (3d Cir. 2015) ........................................................................14, 15

*In re Google Inc. Gmail Litig.*,
    2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) ....................................................11

*In re Google, Inc. Privacy Policy Litig.*,
    58 F. Supp. 3d 968 (N.D. Cal. 2014) ..................................................................19

*In re Google Inc. Privacy Policy Litig.*,
    2013 WL 6248499 (N.D. Cal. Dec. 3, 2013) .................................................13, 18

*Grouse River Outfitters Ltd v. NetSuite, Inc.*,
    2016 WL 5930273 (N.D. Cal. Oct. 12, 2016) .....................................................23

*Guillen v. Bank of America Corp.*,
    2011 WL 4071996 (N.D. Cal. Aug. 31, 2011) ...................................................25

*Harris v. Garcia*,
    734 F. Supp. 2d 973 (N.D. Cal. 2010) ................................................................23

*Hill v. Nat'l Collegiate Athletic Assn.*,
    7 Cal. 4th 1 (1994) ...............................................................................................18

*In re iPhone Application Litigation*,
    2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) ...................................................24

*In re iPhone Application Litigation*,
    844 F. Supp. 2d 1040 (N.D. Cal. 2012) ...................................................14, 19, 22

*Killian v. Millard*,
    228 Cal. App. 3d 1601 (Cal. Ct. App. 1991) ......................................................10

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (2003) .......................................................................................24

*Low v. LinkedIn Corp.*,
    900 F. Supp. 2d 1010 (N.D. Cal. 2012) ...............................................12, 16, 17, 19, 22

*Madrid v. Perot Sys. Corp.*,
    130 Cal. App. 4th 440 (2005) .............................................................................24

*Malcolm v. JP Morgan Chase Bank, N.A.*,
    2010 WL 934252 (N.D. Cal. Mar. 15, 2010) ......................................................21

-iv-

*Moreno v. San Francisco Bay Area Rapid Transit Dist.*,
    2017 WL 6387764 (N.D. Cal. Dec. 14, 2017) ................................................................19

*In re Nickelodeon Consumer Privacy Litig.*,
    2014 WL 3012873 (D.N.J. July 2, 2014) ................................................................9, 14

*In re Nickelodeon Consumer Privacy Litig.*,
    827 F.3d 262 (3d Cir. 2016) ................................................................19

*United States v. Nosal*,
    676 F.3d 854 (9th Cir. 2012) ................................................................21

*Quan v. Arch Wireless Operating Co.*,
    529 F.3d 892 (9th Cir. 2008) ................................................................16

*Siry Inv., L.P. v. Farkhondehpour*,
    45 Cal. App. 5th 1098 (2020) ................................................................23

*Smith v. Facebook, Inc.*,
    262 F. Supp. 3d 943 (N.D. Cal. 2017) ................................................................8

*Smith v. Facebook, Inc.*,
    745 F. App'x 8 (9th Cir. 2018) ................................................................9, 18

*Theme Promotions, Inc. v. News Am. Mktg. FSI*,
    546 F.3d 991 (9th Cir. 2008) ................................................................24

*Thompson v. Ross*,
    2010 WL 3896533 (W.D. Pa. Sept. 30, 2010) ................................................................16

*In re Toys R Us, Inc., Privacy Litig.*,
    2001 WL 34517252 (N.D. Cal. Oct. 9, 2001) ................................................................15

*Two Jinn, Inc. v. Gov't Payment Serv., Inc.*,
    233 Cal. App. 4th 1321 (2015) ................................................................23

*People v. Williams*,
    57 Cal. 4th 776 (2013) ................................................................22

*Windham v. Davies*,
    2015 WL 461628 (E.D. Cal. Feb. 3, 2015) ................................................................22

*In re Yahoo Mail Litig.*,
    7 F. Supp. 3d 1016 (N.D. Cal. 2014) ................................................................17, 18

*In re Zynga Privacy Litig.*,
    2011 WL 7479170 (N.D. Cal. June 15, 2011) ................................................................24

*In re Zynga Privacy Litig.*,
    750 F.3d 1098 (9th Cir. 2014) ................................................................14

## Statutes and Rules

18 U.S.C. § 1030(a)(5)(A) ........................................................................................8, 21

18 U.S.C. § 1030(c)(4)(A)(i) ............................................................................................22

18 U.S.C. § 1030(e)(1) .....................................................................................................22

18 U.S.C. § 1030(e)(8) .....................................................................................................21

18 U.S.C. § 1030(g) ...................................................................................................22, 25

18 U.S.C. § 2510(17) .......................................................................................................14

18 U.S.C. § 2510(17)(A) ..................................................................................................15

18 U.S.C. § 2510(17)(B) ............................................................................................15, 16

18 U.S.C. § 2511(3)(a) ...............................................................................................11, 12

18 U.S.C. § 2511(3)(b)(ii) ............................................................................................8, 9

18 U.S.C. § 2520(e) ..........................................................................................................25

18 U.S.C. § 2701(a) ..........................................................................................................13

18 U.S.C. § 2701(a)(1) .....................................................................................................13

18 U.S.C. § 2701(c) .....................................................................................................8, 12

18 U.S.C. § 2701(c)(1) .....................................................................................................13

18 U.S.C. § 2701(c)(2) .....................................................................................................13

18 U.S.C. § 2702(a) ..........................................................................................................16

18 U.S.C. § 2702(a)(1) .....................................................................................................12

18 U.S.C. § 2702(b)(3) .................................................................................................8, 9

18 U.S.C. § 2707(f) ..........................................................................................................25

Cal. Bus. & Prof. Code § 17204 .....................................................................................23

Cal. Bus. & Prof. Code § 17208 .....................................................................................25

Cal. Civ. Code § 1566 ......................................................................................................11

Cal. Civ. Code § 1572 ......................................................................................................11

Cal. Civ. Code § 1577 ......................................................................................................11

Cal. Civ. Code § 3515 ..................................................................................................8, 18

Cal. Code Civ. Pro. § 337(a) ...........................................................................................25

Cal. Code Civ. Pro. § 338(c)..............................................................................................25

Cal. Pen. Code § 484......................................................................................................22

Cal. Pen. Code § 631(a) ...................................................................................................8

Cal. Penal Code § 496(a) ...............................................................................................22

Fed. R. Civ. P. 9(b) .......................................................................................................10

## MEMORANDUM OF POINTS AND AUTHORITIES

### PRELIMINARY STATEMENT

The Complaint in this putative class action has been stitched together by taking snippets of Google's privacy disclosures out of context to conjure baseless claims that Google engaged in criminal acts, including "wiretapping," "fraud," and "larceny." It has no merit whatsoever. Plaintiffs complain that Google received certain data generated by their web browsing activities on third-party sites that use Google's web services (the "Third-Party Services"), including Google analytics and advertising services, while they were using Google's Chrome browser without Chrome's synchronization feature ("sync") enabled. But Google's Privacy Policy ("Privacy Policy")—to which Plaintiffs agreed when they signed up for their Google Accounts—discloses that Google receives the data at issue. The Privacy Policy does not suggest that the user's browser choice—whether Chrome or any other browser (e.g., Safari, Internet Explorer, Firefox)—affects whether Google receives such data from its Third-Party Services. Plaintiffs' argument that Google's Chrome Privacy Notice ("Notice") represented that using Chrome without sync means Google would not receive such data is baseless: the Notice says no such thing. The Complaint should be dismissed.

Chrome is free, downloadable software for browsing the Internet, published by Google. Chrome offers several modes, features, and settings that allow users to tailor their browsing experience and privacy preferences.[1] Anyone can download Chrome and use it in Basic Browser mode—there is no need to sign up for an account or to provide Google with personal information such as name or email address to use it. However, some of Chrome's optional personalization features, to function, require users to sign into their Google Account. For example, users can choose to enable sync (which is disabled by default) to store their visited URLs, bookmarks, or other preferences in their Google Account, to be available to them across devices. Ex. 33 at 6-7.[2] Alternatively, some "Autofill" data can be accessible to users who sign in to Chrome without sync

---

[1]   Chrome offers four modes: (1) Basic Browser; (2) Signed In; (3) Signed In with sync enabled; and (4) Incognito.  Plaintiffs allege that they used only the first two modes.

[2]   "Ex." designated by Arabic numerals refer to Exhibits attached to the Complaint, "Ex." designated by letters refer to Exhibits attached to the concurrently filed Declaration or Andrew H. Schapiro.

1  enabled ("Signed In" mode), for instance saving payment information to the user's Google

2  Payments account. *Id.* at 4.

3        Plaintiffs' Complaint is predicated on a willful misinterpretation of *two isolated sentences*

4  in the Notice, taken out of context, to argue that Google represented that using Chrome in Basic

5  Browser mode or Signed In mode without sync enabled meant Google would not receive the data

6  that the Privacy Policy expressly states Google collects to provide its Third-Party Services when

7  users interact with websites using those services. *See* Compl. ¶¶ 37-38. Specifically, Plaintiffs

8  complain that Google received the following data from its Third-Party Services while they were

9  using Chrome without sync enabled: "IP address linked to user agents"; "[u]nique, persistent cookie

10  identifiers"; "[u]nique browser identifiers"; and "[b]rowsing history" (the "Data"). *Id*. ¶ 4. The

11  Privacy Policy, however, plainly discloses that when users visit websites that use Google's Third-

12  Party Services, Google receives the very Data at issue here, namely "your activity on other sites and

13  apps." Ex. 7 at 3. This includes "details of how you used our service, such as search queries …

14  Internet protocol address… browser type… referral URL… [and] cookies that may uniquely identify

15  your browser or [] Google Account," and "device-specific information[,] such as your hardware

16  model, operating system version, unique device identifiers, and mobile network information." *Id.* at

17  1-2. And, contrary to Plaintiffs' contention, the Notice does not state that using Chrome with or

18  without sync affects whether Google receives the Data. The two sentences on which the Complaint

19  is based simply do not support Plaintiffs' interpretation.

20        *First*, Plaintiffs observe that the Notice states: "***You don't need to provide any personal***

21  ***information to use Chrome***, but Chrome has different modes you can use to change or improve

22  your browsing experience." Compl. ¶ 37 (emphasis added); Ex. 17 at 2; Ex. 33 at 1. This is correct:

23  users do not need to sign up for a Google Account or provide Google with personal information,

24  such as their name or email address, to use Chrome in Basic Browser mode. This contrasts with

25  Signed In mode and Signed In mode with sync enabled, which require the user to have a Google

26  Account and to provide personal information to function, as the Notice subsequently explains.

27        *Second*, Plaintiffs note that in describing Basic Browser mode the Notice states that "[t]he

28  ***personal information*** that ***Chrome stores*** won't be sent to Google unless you choose to store that

data in your Google Account by turning on sync, or, in the case of payment cards and billing information, choosing specific payment card and billing information to store in your Google Payments account." Compl. ¶ 38 (emphases added); Ex. 33 at 2; *see also* Ex. 17 at 2. This sentence immediately follows a list of information Chrome stores locally, including "[p]ersonal information and passwords, to help you fill out forms or sign in to sites you visit." The sentence is correct: the described personal information *stored by Chrome* will not be sent to Google unless the user enables sync and/or uses Chrome while signed into their Account. Importantly, the Notice distinguishes "personal information" in this context from "[b]rowsing history information" and "[c]ookies or data from websites you visit." Ex. 17 at 2; Ex. 33 at 2. In sum, Plaintiffs' allegation that two cherry-picked sentences from the Notice can reasonably be interpreted to mean that Google represents that using Chrome without sync will prevent Google from receiving the Data—notwithstanding the Privacy Policy Plaintiffs agreed to—is not supported by the documents in which those sentences appear.

All ten claims at issue in this Motion should be dismissed. They fail at the outset because consent is a defense to each claim. Plaintiffs consented to Google's Privacy Policy, which disclosed that Google receives the Data used to provide its Third-Party Services. Nothing in the Notice negates that consent. Plaintiffs' claims may be dismissed on that basis alone. The third-party websites with which Plaintiffs allegedly "communicated" also consented, which independently defeats their claims under "one-party consent" statutes—*i.e.*, the Wiretap Act and Stored Communications Act ("SCA"). Each of the claims also must be dismissed because Plaintiffs have failed to plausibly allege the other elements of their claims, and because they are irredeemably time-barred.

## BACKGROUND AND PLAINTIFFS' ALLEGATIONS

### A.    The Privacy Policy—To Which Plaintiffs Consented—States That Google Receives the Data from Its Third-Party Services

Plaintiffs are Google Account holders and Chrome users who allege that they "chose not to 'Sync' their [Chrome] browsers with their Google accounts … from July 27, 2016 to the present (the 'Relevant Period')." Compl. ¶ 1. Plaintiffs allege that they entered a "contract" with Google when they signed up for their Google Accounts on or before July 27, 2016. *See id*. ¶ 6. They further

allege that, at the time they entered the contract, it included, *inter alia*, Google's "general Terms of Service" and "general Privacy Policy." Ex. 1. The Privacy Policy makes clear that it applies both to Google consumer services and "services Google provides … on other sites (such as our advertising services)." Ex. 7 at 5.[3]

Plaintiffs allege that their "contract" with Google also included the Chrome Privacy Notice. Ex. 1. All versions of the Notice during the relevant period explain that "[a]lthough this policy describes features that are specific to Chrome, any personal information that is provided to Google or stored in your Google Account will be used and protected in accordance with the Google Privacy Policy." *See* Ex. 17 at 1; Ex. 33 at 1. The term "Google Privacy Policy" is underlined and hyperlinks to the Privacy Policy. *Id.*

The Privacy Policy clearly states that Google receives the Data in the ordinary course of users' interactions with the Third-Party Services (and has at all times during the relevant period). Indeed, in support of their breach of contract and good faith and fair dealing claims, Plaintiffs allege that "they paid valuable consideration [to Google] in the form of the PI [*i.e.*, the Data] they *agreed to share*" with Google. Compl. ¶ 356 (emphasis added); *see also id.* ¶ 366.

The Privacy Policy in effect at the onset of the Relevant Period (July 27, 2016), for example, stated: "We collect information about the services that you use and how you use them, like when you … visit a website that uses our advertising services, or view and interact with our ads and content." Ex. 7 at 1. The Privacy Policy specifically disclosed that Google receives precisely the categories of Data at issue, including:

> Device information … such as your hardware model, operating system version, unique device identifiers, and mobile network information including phone number….[;] Log information … [such as] details of how you used our service, such as your search queries … Internet protocol [IP] address[;] device event information such as … the date and time of your request and referral URL[;] cookies that may uniquely identify your browser or your Google Account[;] Location information …

---

[3]   On March 31, 2020—after Plaintiffs had been Google Account holders and allegedly using Chrome for at least four years—Google updated its general ToS to state that the Privacy Policy would no longer be "part of these terms," but emphasized that "we encourage you to read [the Privacy Policy] to better understand how you can update, manage, export, and delete your information." Ex. 4 at 1.

[such as] IP address, GPS, and other sensors…[;] cookies and similar technologies to identify your browser or device.

*Id.* at 1-2. The Privacy Policy explained that Google receives the Data "when you interact with services we offer to our partners, such as advertising services or Google features that may appear on other sites," and "[o]ur Google Analytics product [that] helps businesses and site owners analyze the traffic to their websites and apps." *Id.* at 2. Nowhere does the Privacy Policy state or even suggest that Google's receipt of Data from its Third-Party Services is affected by the user's browser choice or, for Chrome users, whether they have chosen to enable its sync feature.

The Privacy Policy also explains that, if a user is signed in to their Google Account, the Data that Google receives from its Third-Party Services "may be associated with your Google account." *Id.* The Privacy Policy further explains Google will "*treat*" information that in and of itself does not constitute "personal information"—e.g., browsing history—as "personal information" once associated with a user's Google Account (and thus with the individual user). *Id.* (emphasis added). If the account holder is not signed in to their Google Account when interacting with Google's Third-Party Services, Google receives the Data to provide those services, but uses "cookies or similar technologies to identify your browser or device." *Id.*

**B.   Google Received the Data During Plaintiffs' Experiments Because They Visited Websites That Use Google's Third-Party Services, Not Because Plaintiffs Used Chrome**

The Privacy Policy disclosures provide key context for the results of the experiments Plaintiffs allege they conducted. Plaintiffs assert that they used the data monitoring tool Fiddler "to recreate and record data transmissions that Chrome sent from [their] personal computing device[s] to Google" while visiting websites in Chrome without sync. Compl. ¶¶ 154, 168, 174, 180. Plaintiffs include screenshots of the data allegedly sent to Google upon their site visits. *See id.* ¶¶ 157-92.

Plaintiffs' allegations and screenshots confirm, however, that Google received Data relating to their site visits because they interacted with *websites* that contracted with Google to provide services—as disclosed in the Privacy Policy—and *not* because Plaintiffs were using Chrome (regardless of sync use). Indeed, Plaintiffs acknowledge that Google receives the Data because "the *website* with which the user is exchanging a communication *will send* a set of instructions to Chrome

[or any other browser], commanding [the browser] with source code … provided by Google and specifically designed to command [the browser] to contemporaneously re-direct the precise content of the GET or POST part of the communication to Google." *Id.* ¶ 122 (emphases added).

For example, the screenshot reflecting Calhoun's visit to a website operated by a government agency makes clear that Data was sent to Google because the agency used Google Analytics. *See id.* ¶ 157. The screenshot reflecting Calhoun's visit to a website on which a political article was displayed makes clear that Data was sent to Google because the site used Google's DoubleClick ads service. *See id.* ¶163. In addition, the screenshots that Plaintiffs Crespo, Jackson, and Kindler provided demonstrate that they were *logged in* to their Google Accounts at the time they conducted the experiments and interacted with Google's Services on various websites. *See id.* ¶¶ 169, 175, 181. To the extent Fiddler showed that Data was being sent not only to Google for purposes of providing its analytics or advertising services, but to Google's servers to be associated with Plaintiffs' Google Accounts, the Privacy Policy specifically disclosed that this would occur: "Information we collect *when you are signed in to Google* … may be associated with your Google Account." Exs. 7-16 at 2; Exs. A-D at 2. By contrast, Calhoun was not logged in during the Fiddler experiment, and the screenshots show that cookies and other technologies were used to identify his browser and device. *See* Compl. ¶¶ 155, 157-63. The Privacy Policy also disclosed this would occur: "We and our partners use various technologies to collect and store information when you visit a Google service, and this may include using cookies or similar technologies to identify your browser or device." Exs. 7-12 at 2; Exs. A-D at 4, 12.

### C.    The Chrome Privacy Notice Does Not Suggest that Using Chrome Without Sync Means Google Does Not Receive Data from Its Third-Party Services

Plaintiffs argue that Google represented in the Notice that the Data collection described in the Privacy Policy would not occur if they used Chrome without sync enabled.  In support of this strained argument, Plaintiffs quote the bolded portion of the following sentence from the Notice: "***You don't need to provide any personal information to use Chrome***, but Chrome has different modes you can use to change or improve your browsing experience. Privacy practices are different depending on the mode you're using." Compl. ¶ 37 (emphasis added); Ex. 17 at 2; Ex. 33 at 1. In

the next paragraph, under the heading "Basic browser mode," the Notice states that "[t]he basic browser mode stores information locally on your system," and, in describing what "[t]his information might include," distinguishes between (1) "[p]ersonal information" used "to help you fill out forms," and "passwords" to "sign in to sites you've visited," and (2) other information that does not constitute personal information in and of itself, such as "[b]rowsing history information" and "[c]ookies or data from websites you visit." Ex. 17 at 2; Ex. 33 at 1-2. Subsequent paragraphs similarly distinguish between "web page URLs" and "personal information." Ex. 17 at 3; Ex. 33 at 4.

To use Chrome in Basic Browser mode, users do not need to provide Google "personal information," *i.e.*, they do not need to set up an account and provide Google with their name, email address, or other contact or billing information. The Notice further explains that in Basic Browser mode "[t]he ***personal information*** that ***Chrome stores*** won't be sent to Google unless you choose to store that data in your Google Account by turning on sync." Ex. 33 at 2; *see also* Ex. 17 at 2.[4] Contrary to Plaintiffs' argument, this statement in no way suggests that using Chrome in Basic Browser mode affects the Data Google ordinarily receives when users interact with its Third-Party Services. Rather, it means precisely what it says—the "***personal information***" (e.g., names, email address, payment information, and other information used to fill out forms) that "***Chrome stores***" "locally on your system" will not be sent to Google unless the user chooses to store it in their Google Account by enabling sync or consenting to a signed-in feature.

In sum, Plaintiffs consented to the Privacy Policy, which disclosed that Google receives the Data from its Third-Party Services, and Plaintiffs' argument that they believed they had withdrawn their consent to such collection by using Chrome without sync enabled is implausible and not supported by the two sentences in the Notice on which they rely.

---

[4]   During the relevant period, in the summer of 2018, Chrome introduced new optional features for users signed in to Chrome without sync. Previously, users only signed in to Chrome when enabling sync. Accordingly, the Notice prior to this launch described how sign in worked at the time, and was updated to describe the new mode. *See* Ex. 17 at 2 (2016 Notice) ("The personal information that Chrome stores won't be sent to Google unless you choose to store that data in your Google Account by signing in to Chrome. Signing in enables Chrome's synchronization feature.").

# ARGUMENT[5]

## I.   ALL CLAIMS SHOULD BE DISMISSED BECAUSE PLAINTIFFS AND THE WEBSITES CONSENTED TO GOOGLE'S RECEIPT OF THE DATA

Plaintiffs allege that Google unlawfully received the Data generated by their visits to non-Google websites that use Google's Third-Party Services while Plaintiffs were using Chrome without its sync feature enabled. Compl. ¶¶ 270-73. But they acknowledge that they consented to the Privacy Policy that disclosed the Data collection, and consent is a defense to each of Plaintiffs' claims.[6] There is no plausible argument that the two sentences in the Notice that Plaintiffs cite out of context somehow negated that consent.

Plaintiffs' "unauthorized disclosure" claims under the Wiretap Act (Count 2) and the SCA (Count 4) are defeated by a second consent defense as well. Even if Plaintiffs' theory that "*Chrome* intentionally divulged the contents of user communications with non-Google websites to *Google*" (*id.* ¶ 290 (emphases added)) (*i.e.*, treating Chrome and Google as separate entities) were coherent—it is not—only the websites' consent is necessary to bar the claims, and their consent is clear.

---

[5]   The Complaint asserts sixteen causes of action. On September 18, 2020, the Court ordered that this case "be litigated through trial on 10 selected claims" with each side to "choose 5 of the 10 claims to litigate." ECF No. 51. On September 25, 2020, the parties submitted a joint statement identifying the ten claims selected. ECF No. 54. This Motion addresses only those ten claims.

[6]   *See* 18 U.S.C. § 2511(3)(b)(ii) (Wiretap Act) (entity providing ECS may divulge communication "with the lawful consent of the originator or any addressee or intended recipient of such communication"); 18 U.S.C. § 2701(c) (SCA) (excepting conduct authorized by ECS provider or user); *id.* § 2702(b)(3) (excepting disclosure with "lawful consent of the originator or an addressee or intended recipient of such communication"); Cal. Pen. Code § 631(a) (CIPA) (prohibiting wiretapping and eavesdropping "without the consent of all parties to the communication"); *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 955-56 (N.D. Cal. 2017), *aff'd* 745 F. App'x 8 (9th Cir. 2018) ("Plaintiffs' consent [] bars their common-law tort claims [for intrusion upon seclusion]") (citing Cal. Civ. Code § 3515) ("He who consents to an act is not wronged by it."); 18 U.S.C. § 1030(a)(5)(A) (CFAA) (prohibiting "the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization"); *People v. Brock*, 143 Cal. App. 4th 1266, 1274 (2006), as modified on denial of reh'g (Nov. 9, 2006) ("Theft by larceny is a trespassory offense that is not committed when the property is taken with the owner's consent."). Consent is also a defense to Plaintiffs' breach of contract, good faith and fair dealing, and UCL claims because it negates the fundamental basis of those claims—the purported promise from Google *not* to obtain the Data.

### A.  Plaintiffs Consented to Google's Receipt of the Data

Plaintiffs each consented to Google's receipt of the Data. Plaintiffs allege they have had Google Accounts since at least July 27, 2016. *See id.* ¶¶ 20-23. Accordingly, they consented to Google's ToS, which incorporated Google's Privacy Policy. The Privacy Policy specifically disclosed that Google would receive the Data from its Third-Party Services. *See supra*, Background and Plaintiffs' Allegations § A; *see also Smith v. Facebook, Inc.*, 745 F. App'x 8, 8-9 (9th Cir. 2018) (consent established for Wiretap Act and other claims given that "Terms and Policies contain numerous disclosures related to information collection on third-party websites"); *Garcia v. Enterprise Holdings, Inc.*, 78 F. Supp. 3d 1125, 1135-37 (N.D. Cal. 2015) (dismissing CIPA claim where app's terms and privacy policy provided consent for the disclosures). Indeed, in support of their breach of contract claim, Plaintiffs allege they "paid valuable consideration [to Google] in the form of the PI [*i.e.*, the Data] they *agreed to share*" with Google. Compl. ¶ 356 (emphasis added); *see also id.* ¶¶ 225, 230, 366.

Any argument by Plaintiffs that they believed they had *withdrawn* consent by using Chrome without sync enabled is meritless because the two Notice sentences on which Plaintiffs' purported belief is based do not support their interpretation. Because Plaintiffs consented to Google's receipt of the Data, all of Plaintiffs' claims should be dismissed.

### B.  The Websites Consented to Google's Receipt of the Data

The Wiretap Act and SCA claims fail for an independent consent-based reason: both are "one-party consent" statutes. They both provide that "a person or entity providing an electronic communication service ['ECS'] to the public … may divulge the contents of [a] communication with the lawful consent of the originator *or* any addressee or intended recipient of such communication." 18 U.S.C § 2511(3)(b)(ii) (emphasis added); *id.* § 2702(b)(3). Because the alleged "communications" here—*i.e.*, between Plaintiffs and the websites (Compl. ¶¶ 290, 317)—were transmitted to Google "with the express consent of websites" using Google's Third-Party Services, Counts 2 and 4 should be dismissed. *See In re Nickelodeon Consumer Privacy Litig.*, 2014 WL 3012873, at *13 (D. N.J. July 2, 2014).

Plaintiffs do not allege that the websites did *not* consent to Google's receipt of the Data. Nor could they. The Complaint alleges that websites that want to make use of Google's analytics and advertising services "us[e] source code provided by Google and specifically designed to command [] Chrome to contemporaneously re-direct" the Data to Google. Compl. ¶ 122; *see also id.* ¶ 134. Courts have long recognized that websites that install Google's code to obtain its Third-Party Services consent to Google's receipt of Data used to provide those services. In *In re Doubleclick Inc. Privacy Litig.*, 154 F. Supp. 2d 497 (S.D.N.Y. 2001), for example, the court granted the defendant's Rule 12(b)(6) motion to dismiss, holding that websites that used DoubleClick (n.k.a Google Ad Manager) to display ads had consented to DoubleClick's "interception" of data generated by user interactions with those websites—including "searches performed on the Internet [and] Web pages or sites visited." *Id.* at 503, 510; *see also Chance v. Ave. A, Inc.*, 165 F. Supp. 2d 1153, 1162 (W.D. Wash. 2001) ("It is implicit in the web pages' code instructing the user's computer to contact [defendant], either directly or via DoubleClick's server, that the web pages have consented to [defendant's] interception of the communication between them and the individual user.").

Tacitly acknowledging that the websites consented, Plaintiffs argue that the websites' consent was "vitiate[d]" by Google's alleged "failure to adequately inform websites" that Google purportedly "promised Chrome users that it would not share user personal information unless the user was logged-in to Sync" which "constituted a fraud and mistake of fact" by the websites. Compl. ¶ 279. This argument fails for four reasons. *First*, as explained above, Google did not make the alleged "promise" on which Plaintiffs' fraud and mistake allegations are based. *See supra*, Background and Plaintiffs' Allegations § C. *Second*, Plaintiffs lack standing to claim that websites that use Google's Services were defrauded or mistaken. To the extent that the consent of certain websites was invalidly obtained, only those websites could seek redress. *See Killian v. Millard*, 228 Cal. App. 3d 1601, 1605 (Cal. Ct. App. 1991) (defendant, as a non-party to the contract, "lacked standing to seek to void that contract").

*Third*, Plaintiffs have failed to plead the "circumstances constituting fraud or mistake" with "particularity." *See* Fed. R. Civ. P. 9(b). Rule 9(b) requires Plaintiffs to allege with particularity the "time, place, and specific content of the false representations as well as the identities of the parties

to the misrepresentation." *Depot, Inc. v. Caring for Montanas, Inc.*, 915 F.3d 643, 668 (9th Cir. 2019). Here, Plaintiffs only vaguely allege that Google "faile[d] to *adequately inform* [unidentified] websites" of its alleged "promise" to Plaintiffs. Plaintiffs do not (1) identify the representations Google made to any particular websites; (2) allege that the purported "promise" to Plaintiffs would have been material to the websites' decision to provide consent; or (3) allege that any particular websites were in fact deceived or mistaken. The omission of such allegations is not surprising given that Plaintiffs cannot purport to speak to these issues on behalf of the many websites that use Google's Third-Party Services.

*Fourth*, there is no statutory or other exception to consent based on fraud or mistake of fact under the Wiretap Act or SCA. Fraud and mistake of fact may vitiate *contractual* consent and potentially provide grounds for *the websites* to seek rescission of *their* contracts with Google. *See* Cal. Civ. Code §§ 1566, 1572, 1577. But, as this Court has held, "consent for purposes of contract law is distinct from consent for purposes of the Wiretap Act." *In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *14 n.11 (N.D. Cal. Mar. 18, 2014) (Koh, J.) (refusing to credit theory that minors cannot provide consent under Wiretap Act because, *inter alia*, Plaintiffs relied exclusively on a California statute that related to contract law). Accordingly, the claims should be dismissed.

## II.     PLAINTIFFS FAIL TO STATE THEIR CLAIMS FOR ADDITIONAL REASONS

### A.     Plaintiffs' Wiretap Act Unauthorized Disclosure Claim (Count 2) Fails

Plaintiffs argue that Google violated 18 U.S.C. § 2511(3)(a) (*see* Compl. ¶ 285), which prohibits a "person or entity providing an ['ECS'] to the public [from] intentionally divulg[ing] the contents of any communication [] while in transmission on that service to any person or entity." The statute plainly is intended to prohibit ECS *providers* from disclosing the contents of communications to *third parties*—a situation that is not alleged here. Plaintiffs attempt to fit a square peg into a round hole by anthropomorphizing Chrome and alleging that "*Chrome* intentionally divulged the contents of user communications with non-Google websites *to Google*." Compl. ¶ 290 (emphasis added). Plaintiffs acknowledge, however, that Chrome is merely "a software application" (*id.* ¶ 106); it is not a "person or entity" capable of acting with "intention" or "providing an [ECS]." In order to state a claim under § 2511(3)(a), Plaintiffs must allege that the "entity *providing* [the alleged ECS] to the

public"—*i.e.*, the Defendant, Google—intentionally divulged their communications to third parties. *See* 18 U.S.C. § 2511(3)(a). But the Complaint conspicuously omits such an allegation.

Moreover, even if Plaintiffs' allegations could be fairly read to mean that *Google* "intentionally divulged" their communications—and it appears Plaintiffs chose *not* to make that allegation—the claim still fails because Google cannot "divulge" communications to itself. Indeed, in *In re Google Assistant Privacy Litig.*, 2020 WL 2219022, at *12 (N.D. Cal. May 6, 2020), the court rejected a virtually identical claim under the Stored Communications Act ("SCA").[7] The plaintiffs alleged that Google unlawfully obtained and used audio data from another Google product, Google Assistant, to target personalized advertising to users, in violation of the SCA's unauthorized disclosure prohibition. The court dismissed the claim because "there [were] no allegations … that [Google] disclose[d] any information to '*third parties*' to accomplish this purpose," and "[Google's] *own* use of Plaintiffs' data for advertising purposes does not constitute an unlawful 'disclosure.'" *Id.* at *12 (emphases added). The same reasoning applies here. Count 2 should be dismissed.

## B.  Plaintiffs' SCA Unauthorized Access Claim (Count 3) Fails

This Court has explained that "the SCA has a narrow scope: [it] is not a catch-all statute designed to protect the privacy of stored Internet communications; instead there are many problems of Internet privacy that the SCA does not address." *Low v. LinkedIn Corp.* 900 F. Supp. 2d 1010, 1022 (N.D. Cal. 2012) (Koh, J.) (quotation marks and citation omitted). The SCA plainly does not address the situation alleged here, where Plaintiffs awkwardly (and incorrectly) assert that their individual computers and browsers are ECSs while conspicuously failing to identify the alleged ECS "provider," who is exempt from liability under § 2701(c). The SCA simply does not apply to the circumstances alleged in the Complaint.

---

[7]   The Wiretap Act and the SCA make up Titles I and II of the Electronic Communications Protection Act ("ECPA"), respectively. Both Titles contain "unauthorized disclosure" prohibitions that are substantively identical to each other. *Compare* 18 U.S.C. § 2511(3)(a) (ECS provider "shall not intentionally divulge the contents of any communication ... to any person or entity") *with* 18 U.S.C. § 2702(a)(1) (ECS provider "shall not knowingly divulge to any person or entity the contents of a communication"). The two provisions should be interpreted consistently.

To state a claim for unauthorized access to stored ECS communications, Plaintiffs must allege that Google: (1) accessed communications without "authorization"; (2) accessed "a facility through which an [ECS] is provided"; and (3) obtained an electronic communication "while it [was] in electronic storage." *See* 18 U.S.C. § 2701(a). Plaintiffs fail to satisfy these elements.

### 1.   Plaintiffs Fail to Allege that Google's Alleged Access Was Unauthorized

Section 2701(c)(1) exempts from liability "conduct authorized … by the person or entity providing" the alleged ECS. Plaintiffs do not identify the ECS provider, but given that they identify their own "personal computing devices" and "Chrome browsers" as the protected ECS "facilities" (Compl. ¶ 307), they imply that *they* are ECS providers. That is implausible and inconsistent with case law. *See infra*, § II.B.2.

If, as the Complaint alleges, "Google Chrome is [the] ECS" (Compl. ¶ 287), then Google is the "entity providing [the ECS]," and thus exempt under § 2701(c)(1). Indeed, in *In re Google, Inc. Privacy Policy Litig.*, the court rejected the argument that "in aggregating users' information between Google services …, Google exceeded the scope of [its] authorized access" under § 2701(a), explaining that "[t]his claim borders on frivolous, considering the plain language of subsection (c)." 2013 WL 6248499, at *12 (N.D. Cal. Dec. 3, 2013). "Whatever the propriety of Google's actions, it plainly authorized actions that it took itself." *Id.*

Moreover, § 2701(c)(2) exempts from liability "conduct authorized … by a user of [an ECS] with respect to a communication of or intended for that user." Assuming Chrome is an ECS through which Plaintiffs and the websites "communicated" (Compl. ¶¶ 287-90), and Plaintiffs and the websites are the "users" of the alleged ECS, then Google's access was (1) authorized by the websites and/or Plaintiffs for the reasons explained *supra*, §§ I.A and B, and (2) exempt under § 2701(c)(2). Only one "user's" authorization is necessary under § 2701(c)(2), but here both "users" consented.

### 2.   Plaintiffs Fail to Allege that Google Accessed a Protected "Facility"

Under the SCA, the "facility" improperly accessed must be one "through which an [ECS] is *provided*." 18 U.S.C. § 2701(a)(1) (emphasis added). The Complaint alleges that Google unlawfully accessed the following "facilities": (i) "Plaintiffs' personal computing devices"; (ii) "Plaintiffs' Chrome browsers"; (iii) Plaintiffs' "browser-managed files, which, together, constitute all of the

-13-

programs contained within the Plaintiffs' Chrome browsers"; and (iv) "Plaintiffs' IP addresses." Compl. ¶ 307. None of these items meets the statutory definition.

This Court has previously held that an "*individual's* computer, laptop, or mobile device" is not a "facility." *In re iPhone Application Litigation*, 844 F. Supp. 2d 1040, 1057-58 (N.D. Cal. 2012) (Koh, J.) (emphasis added). Indeed, "the vast majority of published and non-published decisions that have considered the issue" have rejected the theory that "personal computers"—or personal computer browsers—"should be considered 'facilities' for purposes of the SCA." *In re Nickelodeon*, 2014 WL 3012873, at *16 (rejecting allegation that cookies placed on personal computer browsers triggered SCA, and collecting cases); *see also In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 147-48 (3d Cir. 2015) (declining to interpret "facility" to include plaintiffs' personal computers or web browsers); *In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d 836, 845-846 (N.D. Cal. 2017) (rejecting argument that a browser in which defendant allegedly placed cookies was a "facility" under the SCA).

The "facilities" covered by the statute "are not computers that enable the use of an [ECS], but instead are facilities that are operated by [ECS] *providers.*" *In re Google Assistant Privacy Litig.*, 2020 WL 2219022, at *12 (emphasis added); *see also In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 609 (9th Cir. 2020) ("*Facebook*") ("[T]he SCA has typically only been found to apply in cases involving a centralized data-management entity; for instance, to protect servers that stored emails."). Thus, the SCA "covers access to electronic information stored in *third party computers*"—e.g., an email provider's servers—not a user's own computer or browser. *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1104 (9th Cir. 2014) (emphasis added); *In re Nickelodeon*, 2014 WL 3012873, at *16 (the SCA requires that communications be accessed while "stored on *someone else's* computer") (emphasis added). Thus, Plaintiffs' personal computers, browsers, browser-managed files, and IP addresses, do not constitute "facilities" under the SCA.

### 3. Plaintiffs Fail to Allege That Google Accessed Electronic Communications While They Were in "Electronic Storage"

Section 2510(17) defines electronic storage as "(A) any temporary, intermediate storage of a[n] … electronic communication incidental to the electronic transmission thereof; and (B) any

storage of such communication by an [ECS] for purposes of backup protection of such communication." 18 U.S.C. § 2510(17). Plaintiffs allege that this definition is satisfied because "Chrome stores" the URLs of the webpages they visited locally (1) in their "browser's web-browsing history, which is [] kept … for 90 days," and (2) "[f]or purposes of backup protection, so that if the browser inadvertently shuts down, the user can be presented the option to restore" the webpage they were viewing at the time of the crash. Compl. ¶ 312. Neither allegation meets the SCA's definition of "electronic storage." Indeed, the Ninth Circuit rejected a virtually identical interpretation of "electronic storage" as one that "would stretch [the SCA's] application beyond its limits." *Facebook,* 956 F.3d at 609.

*First*, Plaintiffs' allegation that Chrome stores browsing history locally on their device for 90 days is insufficient because such browsing history is not stored "incidental to the electronic transmission" of a communication with websites. *See* 18 U.S.C. § 2510(17)(A). The SCA "only protects electronic communications stored for a limited time *in the middle of a transmission*, i.e., when an [ECS] temporarily stores a communication *while waiting to deliver it*." *In re Toys R Us, Inc., Privacy Litig.*, 2001 WL 34517252, at *10-11 (N.D. Cal. Oct. 9, 2001) (emphases added) (internal quotation marks omitted); *see also In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d at 146 (3d Cir. 2015) ("Temporary storage incidental to transmission and storage for purposes of backup protection are not how personal computing devices keep communications, but how third party network service providers do—or at least did, in 1986 [when the SCA was enacted]."). The Ninth Circuit has rejected the argument that browsing history stored locally in an individual's browser constitutes "electronic storage" of communications under the SCA because "browsing histories are not composed of the actual communications sent between the individuals [and the websites]—rather, the browsing histories are merely a record of URLs visited." *Facebook*, 956 F.3d at 609.

*Second*, Plaintiffs' allegation that Chrome temporarily stores URLs locally on their device for the purpose of allowing users to "restore" the page they were viewing if their browser crashes does not satisfy the SCA's definition of "storage … *by an [ECS] for the purposes of backup protection*." *See* 18 U.S.C. § 2510(17)(B) (emphasis added). Plaintiffs' personal computers and web

browsers do not provide "storage … for purposes of backup protection" under § 2510(17)(B). *See Facebook*, 956 F.3d at 609 (rejecting argument that "browsing histories are stored for 'purposes of back-up' and thus satisfy the SCA's electronic storage definition"); *see also*, *e.g.*, *In re Doubleclick*, 154 F. Supp. 2d at 511 (cookies residing on plaintiffs' computers do not satisfy § 2510(17)(B) because plaintiffs are not ECS providers); *Thompson v. Ross*, 2010 WL 3896533, at *5-6 (W.D. Pa. Sept. 30, 2010) (plaintiff's computer is not an ECS provider and thus cannot provide backup protection under § 2510(17)(B)).

*Third*, Plaintiffs do not plausibly allege that Google accessed information *while* it was stored in Chrome. Although Plaintiffs allege that Chrome "[p]laces the contents of [a user's] GET or POST requests in storage in the browser's web-browsing history and short-term memory" (Compl. ¶ 117), they carefully stop short of alleging that is how and when Google accesses such information. To the contrary, Plaintiffs allege that Google's source code on third-party websites "re-direct[s]" the GET and POST requests to Google "*[a]t the same time* that the transmission and content exchange of the communication is happening between the user's browser and the website server." *Id.* (emphasis added); *see also id.* ¶ 272 ("Google's interception of Plaintiffs' communications was done contemporaneously with the Plaintiffs' sending and receipt of those communications."). These admissions are fatal to the claim.  Count 3 should be dismissed.

## C.  Plaintiffs' SCA Unauthorized Disclosure Claim (Count 4) Fails

Section 2702(a) of the SCA applies only where an ECS *provider* allegedly discloses stored ECS communications to *third parties*. 18 U.S.C. § 2702(a) (establishing liability for any "entity providing an [ECS] to the public" that "knowingly divulge[s] to any person or entity the contents of a communication while in electronic storage"); *see also Low*, 900 F. Supp. 2d at 1022 ("'[T]he SCA prevents 'providers' of communication services from divulging private communications to certain entities and/or individuals.'") (quoting *Quan v. Arch Wireless Operating Co.*, 529 F.3d 892, 900 (9th Cir. 2008)). Here, Plaintiffs again attempt to fit a square peg in a round hole by anthropomorphizing Chrome and alleging that "*Chrome* knowingly divulges the contents of user communications *to Google* while those user communications are in electronic storage by Chrome."

Compl. ¶ 317. But, again, Plaintiffs admit that Chrome is "a software application" (*id.* ¶ 106); it is not a "person or entity" capable of "knowingly divulging" communications under the SCA.

Even assuming "Chrome is an ECS" (*id.* ¶ 287), it is a Google product. Thus, Google would be the "entity providing [the ECS] to the public," and Google cannot "divulge" information to itself within the meaning of the SCA. *See In re Google Assistant Privacy Litig.*, 2020 WL 2219022, at *12 ("Defendants' own use of Plaintiffs' data for advertising purposes does not constitute an unlawful 'disclosure.'"); *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1026-27 (N.D. Cal. 2014) (Koh, J.) ("The SCA grants immunity to 18 U.S.C. § 2701(a) claims to electronic communication service providers ... for accessing content on their own servers."); *Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263, 1272 (N.D. Cal. 2001) (dismissing SCA claim for wrongful access against Amazon because "Amazon's access to its own systems is not limited under the [SCA]").

Plaintiffs also fail to plausibly allege that the alleged "communications" were in "electronic storage." *See supra*, § II.B.3. Accordingly, Count 4 should be dismissed.

**D.      Plaintiffs' Intrusion Upon Seclusion Claim (Count 7) Fails**

Plaintiffs' intrusion upon seclusion claim fails because they do not plausibly allege that (1) they maintained a reasonable expectation of privacy in the Data vis-à-vis Google, or (2) Google's conduct was "so serious ... as to constitute an egregious breach of the social norms" that is "highly offensive." *See Facebook*, 956 F.3d at 601; *see also Low*, 900 F. Supp. 2d at 1025 ("[I]f the allegations 'show no reasonable expectation of privacy or an insubstantial impact on privacy interests, the question of invasion may be adjudicated as a matter of law.'").

**1.      Plaintiffs Fail to Plausibly Allege a Reasonable Expectation of Privacy**

Plaintiffs thinly allege, based on a selective reading of two sentences in the Notice, that they had a reasonable expectation that Google would not receive the Data from its Third-Party Services "unless [they] chose to Sync with their Google Accounts." Compl. ¶ 335. However, as explained above, Plaintiffs consented to the Privacy Policy, which disclosed that Google receives the Data from its Third-Party Services, and neither the Privacy Policy nor the Notice states or suggests that using Chrome in Basic Browsing mode or Signed In mode without sync enabled would prevent that from happening. In addition, Plaintiffs acknowledge that they "agreed to share" the Data with

Google. *Id.* ¶¶ 356, 366. Courts routinely hold that there can be no reasonable expectation of privacy as it relates to an online service provider under such circumstances.[8]

> ### 2.   Plaintiffs Fail to Plausibly Allege a Highly Offensive Invasion of Privacy

"[T]he common law set[s] a high bar for an intrusion [upon seclusion] to be actionable." *In re Google Assistant Privacy Litig.*, 2020 WL 2219022, at \*19 (internal quotation marks omitted). "Actionable invasions of privacy must be sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right." *Hill v. Nat'l Collegiate Athletic Assn.,* 7 Cal. 4th 1, 37 (1994). "Many courts have found that the collection … of personal information about the users of a technology may not constitute a sufficiently 'egregious breach of social norms' to make out a common law or constitutional privacy claim." *In re Google Assistant Privacy Litig.*, 2020 WL 2219022, at \*19 (collecting cases). Plaintiffs fail to meet the "high bar" for their claim.

*First*, Plaintiffs Crespo, Jackson, and Kindler were signed in to their Google Accounts when Google received the Data. *See, e.g.*, Compl. ¶¶ 169, 175, 181. The Privacy Policy disclosed that Google receives the Data from users' interactions with its services on third-party websites and, if users are doing so while signed into their Accounts, such data "may be associated with your Google account." Ex. 7 at 2. It is not "highly offensive" for Google to receive the Data from its Third-Party Services and associate the Data with Plaintiffs' Accounts when the Privacy Policy stated that would occur. In *Facebook*, the Ninth Circuit explained that plaintiffs had sufficiently pleaded "highly offensive" conduct when they alleged that Facebook promised it would not track logged out users and then did so. 956 F.3d at 606 n.8 ("[Plaintiffs] had logged out and were not using Facebook when Facebook tracked them."). The Ninth Circuit *contrasted* those allegations with cases in which courts

---

[8]  *See, e.g.*, *In re Yahoo Mail Litig.*, 7 F. Supp. 3d at 1037–38 (a plaintiff asserting intrusion upon seclusion "must not have manifested by his or her conduct a voluntary consent to the invasive actions of defendant"); *Smith v. Facebook, Inc.*, 745 F. App'x at 8-9 (users' acquiescence to terms and policies disclosing practice of collecting data from third-party sites established users' knowing authorization); *In re Google, Inc. Privacy Policy Litig.*, 2013 WL 6248499, at \*16 ("[T]he court does not find any expectation to be plausible in light of Google's earlier disclosure that it would commingle PII across products to support its advertising model."); Cal. Civ. Code § 3515 ("He who consents to an act is not wronged by it.").

in this District have held that a defendants' collection of users' data while they are *using the defendant's services* does not amount to "highly offensive conduct." *See id.*; *see also In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968, 987-88 (N.D. Cal. 2014) (no highly offensive conduct when Plaintiffs alleged that Google surreptitiously tracked their browsing data while using Google's services); *Low*, 900 F. Supp. 2d at 1016-18 (absence of allegation that defendants tracked the plaintiffs after they stopped using the defendant's services precluded finding of "highly offensive" conduct); *In re iPhone App. Litig.*, 844 F. Supp. 2d at 1049–50 (same).

*Second*, Calhoun's claim should be dismissed because he was signed out of his Account when Google received the Data. Compl. ¶ 155. The Privacy Policy explains that, when users are signed out, Google "store[s] the information we collect with unique identifiers tied to the browser, application, or device you're using," *not* with their Accounts or information that personally identifies them. Ex. 16 at 2. Plaintiffs do not allege that Google acted contrary to this representation. In *Low*, this Court held that the disclosure of anonymized browsing history did not constitute a "serious invasion of privacy" because while it was theoretically possible to "de-anonymize this data, it [was] not clear that anyone had actually done so." 900 F. Supp. 2d at 1025; *see also Moreno v. San Francisco Bay Area Rapid Transit Dist.*, 2017 WL 6387764, at *8 (N.D. Cal. Dec. 14, 2017) (collecting anonymous location data not tied to a user's contact information did not constitute a serious privacy invasion). Similarly, here, Plaintiffs' allegation that Google *could* theoretically link the Data with an Account or other personal identifying information fails to establish a serious invasion of privacy where they do not allege Google actually did so while they were web browsing while signed out of their Google Accounts.

*Third*, courts have "characterized the collection [of browsing data] as 'routine commercial behavior'" that cannot simultaneously constitute "highly offensive" conduct. *In re Google Assistant Privacy Litig.*, 2020 WL 2219022, at *19 (distinguishing "allegations that Defendants recorded their private conversations without authorization" from "browsing history" for purposes of invasion of privacy claim). And courts have long recognized that cookies "can serve legitimate commercial purposes." *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 294 (3d Cir. 2016); *see also id.* at 294-95 ("Google used third-party cookies on Nick.com in the same way that it deploys cookies

on myriad others websites. Its decision to do so here does not strike us as sufficiently offensive, standing alone, to survive a motion to dismiss."); *In re DoubleClick Inc.*, 154 F. Supp. 2d at 519 ("DoubleClick's purpose has plainly not been to perpetuate torts on millions of Internet users, but to make money by providing a valued service to commercial Web sites.").

Accordingly, Plaintiffs fail to plead the elements of intrusion upon seclusion and thus Count 7 should be dismissed.

### E.     Plaintiffs' Contract Claims (Counts 8-9) Fail

Plaintiffs' breach of contract claim should be dismissed because they fail to plausibly allege that Google breached any "promise" in the Notice. *See supra*, Background and Plaintiffs' Allegations § C; Compl. ¶¶ 352-53; *see also In re Google Assistant Privacy Litig.*, 2020 WL 2219022, at * 22 (dismissing breach of contract claim because "in paraphrasing the relevant terms, Plaintiffs have altered them," and, on its face, the alleged contract did not make the promise alleged).

Moreover, in support of their contract claim, Plaintiffs allege that "they paid valuable consideration [to Google] in the form of the [Data] *they agreed to share*." Compl. ¶ 356 (emphasis added); *see also id.* ¶ 366 ("Plaintiffs and the Class members did not receive the benefit of the bargain for which they contracted and for which *they paid valuable consideration in the form of their personal information*," *i.e.*, the Data) (emphasis added). Plaintiffs cannot simultaneously claim that Google's receipt of the Data constituted a breach of contract when they "agreed to share" the Data with Google as a form of "consideration."

Finally, the Notice that Plaintiffs allege is part of their "current contract" with Google (*see* Compl. ¶ 26; Ex. 33) merely provides users information about Chrome. There is no "exchange for a promise" and thus the Notice cannot provide the basis for a breach of contract claim under California law. *See Facebook*, 956 F.3d at 610-11 (rejecting argument that an alleged breach of "Privacy and Data Use Policies" gives rise to a breach of contract claim where the policies "merely provide []information—not commitments—regarding [the defendant's] use of information and how users can control that information," but do "not require the user to make any commitment" to the defendant).

1    Plaintiffs' good faith and fair dealing claim should be dismissed because the allegations do

2  "not go beyond the breach of contract theories asserted." *See id.* at 611 (affirming dismissal of

3  plaintiffs' claim for breach of covenant of good faith and fair dealing); *Malcolm v. JP Morgan Chase*

4  *Bank, N.A.*, 2010 WL 934252, *6 (N.D. Cal. Mar. 15, 2010) ("If the allegations in a breach of

5  implied covenant claim do not go beyond the statement of a mere contract breach and, relying on

6  the same alleged acts, simply seek the same damages or other relief already claimed in a companion

7  contract cause of action, they may be disregarded as superfluous as no additional claim is actually

8  stated."). Plaintiffs' good faith and fair dealing claim is based on the same theory of liability, and

9  seeks the same damages, as their breach of contract claim. *Compare* Compl. ¶¶ 352-53, 356 *with* ¶¶

10  361, 366. Accordingly, Counts 8 and 9 should be dismissed.

11    **K.    Plaintiffs' CFAA Claim (Count 11) Fails**

12    "[T]he CFAA was enacted 'primarily to address the growing problem of computer hacking,'

13  such that the en banc Ninth Circuit has favored an interpretation of the statute that 'maintains the

14  CFAA's focus on hacking rather than turning it into a sweeping Internet-policing mandate'" or an

15  expansive misappropriation statute. *Brodsky v. Apple Inc.*, 2019 WL 4141936, at *7 (N.D. Cal. Aug.

16  30, 2019) (Koh, J.) (quoting *United States v. Nosal*, 676 F.3d 854, 858 (9th Cir. 2012) (en banc)).

17  "[A] user would have 'serious difficulty' pleading a CFAA violation based on the voluntary

18

19  installation of software." *Id.* at *8. Yet that is exactly what Plaintiffs try—and fail—to do.

20    1.    Plaintiffs Fail to Allege Google Intentionally Damaged a Protected Computer

21    Plaintiffs bring their CFAA claim under § 1030(a)(5)(A) (*see* Compl. ¶ 373), which applies

22  to one who uses code to "*intentionally cause[] damage* without authorization, to a protected

23  computer." 18 U.S.C. § 1030(a)(5)(A) (emphasis added). *First*, Plaintiffs do not allege that Google

24  acted with the requisite intent. That deficiency alone is fatal to their claim.

25    *Second*, Plaintiffs fail to allege any "damage," which the CFAA defines as "any impairment

26  to the integrity or availability of data, a program, a system, or information." *Id.* § 1030(e)(8).

27  Plaintiffs only conclusorily allege that the "integrity" of their "data, browsers and computer

28  systems" was impaired by Google's alleged "remov[al] [of] a key privacy feature." Compl. ¶ 379.

But Plaintiffs do not identify the alleged "feature," or from where it was "removed." If Plaintiffs mean that the Chrome browser—in its default Basic Browser mode—is itself a "privacy feature," the allegation is implausible and not based on any Google disclosure. Because Plaintiffs do not allege any cognizable "impairment" to their computers, Count 11 should be dismissed. *See In re iPhone App. Litig.*, 844 F. Supp. 2d at 1067 (dismissing CFAA claim because plaintiffs did not plausibly allege a downloaded file impaired their devices or interrupted service).

### 2.   Plaintiffs Fail to Allege Loss of $5,000

Plaintiffs also fail to allege that Google's conduct caused them to suffer a "loss" of $5,000 "during any 1-year period." *See* 18 U.S.C. §§ 1030(c)(4)(A)(i), 1030(g). "Loss" is defined as "any reasonable cost to any victim." *Id.* § 1030(e)(1). Plaintiffs' theory of loss of personal information is not covered by the CFAA's "narrow conception of 'loss.'" *See Andrews v. Sirius XM Radio Inc.*, 932 F.3d 1253, 1262 (9th Cir. 2019). And Plaintiffs do not allege that Google's conduct otherwise caused them to incur any costs, let alone costs of $5,000 or more over a one-year period.

### F.   Plaintiffs' Statutory Larceny Claim (Count 13) Fails

Plaintiffs assert a "statutory larceny" claim under Cal. Pen. Code §§ 484 ("Theft defined") and 496 ("Receiving or concealing stolen property").[9] The claim fails at the outset because the Data that Google allegedly "stole" is not "property." *See, e.g., Low*, 900 F. Supp. 2d at 1030 ("[T]he weight of authority holds that a plaintiff's 'personal information' [including plaintiffs' personal browsing histories] does not constitute property.").

Plaintiffs' claim based on Google's alleged "buy[ing] or receiv[ing]" (*see* Cal. Penal Code § 496(a)) of "property" obtained "by false pretense" (Compl. ¶ 397), should be dismissed because they do not allege the elements, which include a "*consensual* transfer of possession as well as *title* of property." *People v. Williams*, 57 Cal. 4th 776, 788 (2013) (emphases in original). Here, Plaintiffs allege nothing with respect to title, and (implausibly) allege that Google's receipt of the Data was "without Plaintiffs' consent." Compl. ¶ 400.

---

[9] Section 484 merely defines "theft" and "does not contain any language suggesting that civil enforcement is available," nor is there "any authority that a violation of [§ 484] provides a private right of action." *Windham v. Davies*, 2015 WL 461628, at *6 (E.D. Cal. Feb. 3, 2015).

The false pretense claim should also be dismissed because California courts have barred civil claims under § 496(c) where, as here, the claim is based on "conduct involving fraud [or] misrepresentation." *Siry Inv., L.P. v. Farkhondehpour*, 45 Cal. App. 5th 1098, 1134 (2020), as modified on denial of reh'g (Mar. 23, 2020); *Grouse River Outfitters Ltd v. NetSuite, Inc.*, 2016 WL 5930273, at *14, 16 (N.D. Cal. Oct. 12, 2016) (dismissing § 496 claim without leave to amend because the statute requires a receipt of *stolen* property, not property obtained through false pretenses); *see also* Compl. ¶ 400 (alleging Google "fraudulently appropriated Plaintiffs' PI").

Plaintiffs' theory that Google "stole" the Data (Compl. ¶ 400) also fails. Larceny occurs when a defendant "(1) takes possession (2) of personal property (3) owned or possessed by another, (4) by means of trespass (5) with intent to steal the property, and (6) carries the property away." *Harris v. Garcia*, 734 F. Supp. 2d 973, 999 (N.D. Cal. 2010). "The intent to steal … is the intent … to permanently deprive the owner of possession." *People v. Davis*, 19 Cal. 4th 301, 305 (1998); *see also In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d at 843 ("[A] larceny claim requires … an 'intent to permanently deprive an individual of his property.'"). Plaintiffs do not and cannot plausibly allege these elements. If Plaintiffs ever "possessed" the Data, they still possess it—Google merely has a copy or similar Data, and thus there is no "taking." Plaintiffs also do not allege that Google intended to "permanently deprive" them of Data.  Count 13 should be dismissed.

### G.    Plaintiffs' UCL Claim (Count 14) Fails

#### 1.    <u>Plaintiffs Fail to Allege They Lost Money or Property</u>

Plaintiffs lack statutory standing under the UCL because they fail to plausibly allege that Google caused them to lose "money or property." "To satisfy the UCL standing requirement, the plaintiff must [] establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury.*" *Two Jinn, Inc. v. Gov't Payment Serv., Inc.*, 233 Cal. App. 4th 1321, 1331 (2015) (emphasis added); Cal. Bus. & Prof. Code § 17204.

A plaintiff has "'lost' money [when] he has parted … with some *identifiable sum* formerly belonging to him or subject to his control," and "has 'lost' property [when] he has parted with some particular item of property he formerly owned or possessed; it has *ceased to belong to him,* or at least has passed beyond his control or ability to retrieve it." *Claridge v. RockYou, Inc.*, 785 F. Supp.

2d 855, 862 (N.D. Cal. 2011) (emphases in original). Plaintiffs conclusorily allege that "the unauthorized disclosure and taking of their personal information [caused them to] suffer[] harm in the form of diminution of the value of their private and personally identifiable data and content." Compl. ¶ 413. However, this Court and others have consistently held that "a plaintiff's 'personal information' does not constitute money or property under the UCL." *In re iPhone Application Litig.*, 2011 WL 4403963, at *14 (N.D. Cal. Sept. 20, 2011) (Koh, J.).[10]

### 2. Plaintiffs Fail to Allege Entitlement to Monetary Damages

Plaintiffs also fail to allege that they are entitled to any monetary relief under the UCL; thus the claim should be limited to injunctive relief only. Plaintiffs seek "restitution and disgorgement" of Google's allegedly "unjust profits." Compl. ¶ 416. Where, as here, the plaintiff seeks disgorgement of "money obtained from third parties" by the defendant (as opposed to "money taken from the victims"), that is "nonrestitutionary disgorgement," which the California Supreme Court has held is "not available" under the UCL. *Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th 440, 460-62 (2005); *see also Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1148 (2003) ("This court has never approved of nonrestitutionary disgorgement of profits as a remedy under the UCL."); *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1009 (9th Cir. 2008) (same).

### 3. Plaintiffs Do Not Allege "Unlawful," "Unfair," or "Fraudulent" Conduct

Plaintiffs' claim under the UCL's "unlawful" prong fails because, as demonstrated above, the Complaint fails to allege that Google violated any of the laws on which this claim is predicated. *See Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554 (2007) (for a UCL

---

[10]   *Accord In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 714 (N.D. Cal. 2011), *aff'd*, 572 F. App'x 494 (9th Cir. 2014) ("A plaintiff's 'personal information' does not constitute property under the UCL."); *Archer v. United Rentals, Inc.*, 195 Cal. App. 4th 807, 816 (2011) (dismissing UCL claim based on alleged "unlawful collection and recordation of [plaintiffs'] personal identification information" because "plaintiffs have failed to demonstrate how such privacy violation translates into a loss of money or property," which is "fatal" to a UCL claim); *Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1093 (N.D. Cal. 2018) ("[T]he sharing of names, user IDs, location and other personal information does not constitute lost money or property for UCL standing purposes."); *In re Zynga Privacy Litig.*, 2011 WL 7479170, at *2 (N.D. Cal. June 15, 2011), *aff'd*, 750 F.3d 1098 (9th Cir. 2014) (allegation "that Defendant unlawfully shared their 'personally identifiable information' with third-party advertisers" failed under the UCL because "personal information does not constitute property for purposes of a UCL claim").

1   "unlawful" claim to survive, claims under the laws on which the UCL claim is predicated must

2   survive); *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1161 (9th Cir. 2016)

3   (similar). Plaintiffs' "unfair" and "fraudulent" prong claims fail because they are based on the

4   implausible allegation that the Notice represented that using Chrome without sync would prevent

5   Google from receiving the Data from its Third-Party Services. Compl. ¶¶ 36, 412.

6   **III.   PLAINTIFFS' CLAIMS ARE BARRED BY THE STATUTES OF LIMITATIONS**

7           The statutes of limitations ("SOL") for Plaintiffs' claims under the Wiretap Act, SCA, CIPA,

8   CFAA, for intrusion upon seclusion, and larceny are one to three years.[11] The SOL for contract and

9   UCL claims is four years.[12] Plaintiffs allege that Google has been unlawfully receiving their Data

10  since *at least* July 27, 2016. Compl. ¶ 1. They do not allege when Google's conduct *first* occurred,

11  nor do they allege the time or manner in which they discovered the conduct. Plaintiffs' Complaint

12  filed July 27, 2020 was clearly too late for the claims to which a SOL of less than four years applies.

13  *See Brodsky*, 2019 WL 4141936, at *11-12. As for the contract and UCL claims—to which a four-

14  year SOL applies—Plaintiffs must allege when the challenged conduct *first* occurred so the Court

15  may determine when the claims accrued. Their failure to do so requires that the claims be dismissed.

16                                   **CONCLUSION**

17          Each of Plaintiffs' claims is predicated on a willful misinterpretation of two isolated

18  sentences in the Chrome Privacy Notice. The context surrounding those sentences makes clear that

19  Plaintiffs' purported interpretation is not reasonable. In addition, Plaintiffs' strained effort to fit their

20  allegations into the framework of their statutory and common law claims is unavailing. The

21  Complaint should be dismissed in its entirety with prejudice.

22

23

24

---

25  [11]   *See* 18 U.S.C. § 2520(e) (SOL for Wiretap Act is two years); 18 U.S.C. § 2707(f) (SOL for SCA

26  is two years); *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 136 (N.D. Cal. 2020) (Koh, J.) (SOL for CIPA is one year and for CFAA is two years); *Guillen v. Bank of America Corp.*, 2011 WL 4071996,

27  at *10 (N.D. Cal. Aug. 31, 2011) (SOL for intrusion upon seclusion is one year); 18 U.S.C. § 1030(g) (SOL for CFAA is two years); Cal. Code Civ. Pro. § 338(c) (SOL for larceny is three years).

28  [12]   Cal. Code. Civ. Pro. § 337(a) (contract); Cal. Bus. & Prof. Code § 17208 (UCL).

1    DATED:  October 5, 2020                    QUINN EMANUEL URQUHART &
2                                               SULLIVAN, LLP

3
                                          By _____/s/ Andrew H. Schapiro_____
4                                               Andrew H. Schapiro (*pro hac vice* pending)
                                                andrewschapiro@quinnemanuel.com
5                                               191 N. Wacker Drive, Suite 2700
                                                Chicago, IL 60606
6                                               Telephone: (312) 705-7400
                                                Facsimile: (312) 705-7401
7

8                                               Stephen A. Broome (CA Bar No. 314605)
                                                stephenbroome@quinnemanuel.com
9                                               Viola Trebicka (CA Bar No. 269526)
                                                violatrebicka@quinnemanuel.com
10                                              865 S. Figueroa Street, 10th Floor
                                                Los Angeles, CA 90017
11                                              Telephone: (213) 443-3000
                                                Facsimile: (213) 443-3100
12

13                                              Jomaire A. Crawford (admitted *pro hac vice*)
                                                jomairecrawford@quinnemanuel.com
14                                              51 Madison Avenue, 22nd Floor
                                                New York, NY 10010
15                                              Telephone: (212) 849-7000
                                                Facsimile: (212) 849-7100
16

17                                              Josef Ansorge (admitted *pro hac vice*)
                                                josefansorge@quinnemanuel.com
18                                              1300 I. Street, N.W., Suite 900
                                                Washington, D.C. 20005
19                                              Telephone: 202-538-8000
                                                Facsimile: 202-538-8100
20
                                                Jonathan Tse (CA Bar No. 305468)
21                                              jonathantse@quinnemanuel.com
                                                50 California Street, 22nd Floor
22                                              San Francisco, CA 94111
                                                Telephone: (415) 875-6600
23                                              Facsimile: (415) 875-6700

24

25

26

27

28

                                            DEFENDANT'S MOTION TO DISMISS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Thao Thai (CA Bar No. 324672)
thaothai@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

*Attorneys for Defendant Google LLC*