**BLEICHMAR FONTI & AULD LLP**
Lesley Weaver (Cal. Bar No. 191305)
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
lweaver@bfalaw.com

**KAPLAN FOX & KILSHEIMER LLP**
David A. Straite (admitted *pro hac vice*)
850 Third Avenue
New York, NY 10022
Tel.: (212) 687-1980
dstraite@kaplanfox.com

Laurence D. King (Cal. Bar No. 206423)
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Tel.: (415) 772-4700
Fax: (415) 772-4707

**SIMMONS HANLY CONROY LLC**
Jason 'Jay' Barnes (admitted *pro hac vice*)
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel.: (212) 784-6400
jaybarnes@simmonsfirm.com

*Counsel for Plaintiffs; additional counsel listed in signature blocks below*

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel: (312) 705-7400
Fax: (312) 705-7401

Stephen A. Broome (CA Bar No. 314605)
sb@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: (213) 443-3000
Fax: (213) 443-3100

*Counsel for Defendant; additional counsel listed in signature blocks below*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION**

PATRICK CALHOUN, *et al.*, on behalf of themselves and all others similarly situated,
Plaintiffs,

v.

GOOGLE LLC,
Defendant.

Case No. 5:20-cv-5146-LHK-SVK

**~~[PROPOSED]~~ STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION**

Referral: Hon. Susan van Keulen, USMJ

**1. PURPOSE**

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules.

**2. COOPERATION**

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

**3. LIAISON**

a) The parties have identified liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI. Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

b) Google appoints Viola Trebicka, Jomaire Crawford, Jonathan Tse, and Josef Ansorge as its e-discovery liaisons.

c) Plaintiffs appoint David Straite, Jay Barnes, Lesley Weaver, and Angelica Ornelas as their e-discovery liaisons.

**4. ESI DISCLOSURES**

a) Within 14 days of the court entering the ESI Protocol, the parties agree to meet and confer and disclose information regarding the topics set forth in the N.D. Cal. Guidelines for the Discovery of Electronically Stored Information and Checklist for Rule 26(f) Meet and Confer Regarding ESI.

b) Within 14 days of the court entering the ESI Protocol, the parties agree to meet and confer and agree on a description of any likely relevant ESI, outside of those agreed to in Sections 5(b) and (c) below, that the party contends is inaccessible or only of limited accessibility and, hence, not producible by that party without undue burden and/or expense.

**5. PRESERVATION**

The parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

a) ESI created or received between July 27, 2014 and the present will be preserved. The parties reserve the right to meet and confer in good faith if a party believes that certain relevant documents may exist outside of the date range;

b) These data sources are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B) and ESI from these sources will be preserved but not searched, reviewed, or produced nothing in this paragraph modifies a producing party's obligation to preserve or produce relevant ESI under Fed. R. Civ. P. 26:

i. backup systems and/or tapes used for disaster recovery; and

ii. systems no longer in use that cannot be accessed.

c) Within 14 days of the court entering the ESI Protocol, the parties agree to meet and confer regarding additional types or sources of ESI that need not be preserved, searched or collected;

d) In addition to the agreements above, the parties agree to meet and confer regarding other data that (a) could contain relevant information but (b) under the proportionality factors, should not be preserved.

**6. SEARCH**

a) The parties agree that in responding to an initial Fed. R. Civ. P. 34 request, or earlier if appropriate, they will meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery.

b) **Search Methodology and Search Terms**: The parties recognize that there exist a variety of search tools and methodologies, including but not limited to the use of search terms and technology assisted review ("TAR") tools. The parties agree to meet and confer over the use of search tools and methodologies, including the use of search terms and TAR, before any particular

tool or methodology is applied.

As used above, the term "meet and confer" shall encompass, at a minimum, the following:

i. Within 14 days of the date the Court enters the ESI Protocol, the responding party shall propose custodians and initial search terms to be run across ESI sources identified as containing potentially relevant ESI. The requesting party will respond to the proposed search terms and custodians within 14 days, and the parties shall negotiate differences in good faith including the use of hit reports as provided in (ii) and (iii) below. In the absence of full agreement on ESI custodians, the parties shall present their disputes to the Court in accordance with the Magistrate Judge van Keulen's Civil Standing Order unless the parties agree otherwise. Additional custodians may be proposed upon a showing of good cause.

ii. The responding party shall provide hit reports (to include unique hits and hits with families) on any terms the responding party disputes within 14 days of receipt of the requesting party's proposed search terms.

iii. The parties shall meet and confer following the exchange of search terms. For any search term that the producing party claims is unduly burdensome or not proportional to the needs of the case, the party shall provide a general description of the some of the non-relevant types of information that each disputed search term is returning.

iv. If the parties are unable to reach agreement on search terms within 14 days of the meet and confer, unless otherwise agreed, they shall present their disputes to the Court in accordance with the Magistrate Judge Van Keulen's Civil Standing Order.

c) Each party will use its best efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list. Unless necessary to render relevant ESI in reasonably usable format,

additional culling of file types based on file header information may include, but are not limited to: Application Package File, Backup Files, Batch Files, Binary Disc Image, C++ File Formats, Cascading Style Sheet, Configuration File, Database File, Dictionary Files, Dynamic Link Library, Event Log Files, Executable Files, Hypertext Cascading Stylesheet, Java Archive Files, JavaScript files, JavaScript Source Code and Class Files, Macintosh Resource Fork Files, Package Manager Files, Program Files, Program Installers, Python Script Files, Shell Script Files, System or Temporary Files, Thumbnail Cache Files, Troff Files, TrueType Font Files, Windows Cabinet File, Windows Command Files, Windows File Shortcut, Windows Help Files, Windows Metafiles and Enhanced Metafiles, Windows Spool Files, Windows System File.

d) **De-duplication**. The Parties will make reasonable efforts to de-duplicate ESI documents globally through MD5 Hash or SourceHash and enter all unique names in the DE-DUPED CUSTODIAN metadata field prior to production. The Parties will meet and confer about whether additional methods of de-duplication across various sets of documents will reduce both Parties' burden to review and produce data. Notwithstanding the foregoing, attachments to emails shall not be eliminated from the parent email because they are duplicative of a document or email attachment elsewhere in the production.

e) **Email Threading**. A party may de-duplicate responsive ESI across Custodians through MD5 hash or SourceHash. Emails in an email thread that are collected and de-duplicated shall be produced individually as separate documents. The parties agree that email threading may be employed for production of email threads with redactions. The parties retain the right to request production of earlier-in-thread versions of any last-in-thread, redacted documents that are produced.

f) Source code files will be provided according to the Protective Order and not included in custodial data productions. If applicable, no provision of this Order affects the inspection or production of source code which will be collected and made available consistent with the Protective Order governing this case.

**7. PRODUCTION FORMATS**

a) Appendix A sets forth technical specifications that the parties propose to govern the form of production of documents in this litigation, absent agreement by the parties or order by the Court.

b) The parties agree to produce Documents in file formats as set forth in Appendix A. If particular Documents warrant a different format, the parties will cooperate to arrange for the mutually acceptable production of such Documents.

c) The parties agree not to degrade the searchability of Documents as part of the Document production process. The parties agree to meet and confer in good faith to address any issues that may arise in this regard, and to seek judicial intervention only if their efforts to resolve the issues on an informal basis are unsuccessful.

d) The parties also recognize that certain information to be produced in discovery may reside in proprietary systems and formats that may warrant production in an alternative format or require additional metadata or database fields not set forth in Appendix A. To the extent this possibility eventuates, the parties will meet and confer to reach agreement about a form of production that produces the information as kept in the usual course of business and will seek Court intervention only if necessary.

**8. PHASING**

When a party propounds discovery requests pursuant to Fed. R. Civ. P. 34, the parties agree to meet and confer about whether the production of ESI should be prioritized and how that prioritization may occur across ESI sources and custodians.

**9. DOCUMENTS PROTECTED FROM DISCOVERY**

a) Communications involving outside counsel that post-date the filing of the complaint need not be placed on a privilege log. Communications may be identified on a privilege log by category, rather than individually, if appropriate.

b) Nothing in this Agreement shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity; provided, however,

that no redactions shall be made based on the basis of relevance as a matter of course except as outlined in Section 11 of the Appendix. The parties do not waive any objections to the production, discoverability, admissibility, or confidentiality of documents and ESI.

**10. MODIFICATION**

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown. Any such modified Stipulated Order will be titled sequentially as follows, "First Modified Stipulated Order re: Discovery of Electronically Stored Information for Standard Litigation," and each modified Stipulated Order will supersede the previous Stipulated Order.

**IT IS SO STIPULATED**, through Counsel of Record, this 7th day of January, 2021.

**BLEICHMAR FONTI & AULD LLP**

By: *_/s/ Lesley E. Weaver_*
Lesley E. Weaver (Cal. Bar No. 191305)
Angelica M. Ornelas (Cal. Bar No. 285929)
Joshua D. Samra (Cal. Bar No. 313050)
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com
aornelas@bfalaw.com
jsamra@bfalaw.com

**KAPLAN, FOX & KILSHEIMER LLP**

By: *_/s/ David A. Straite_*
David A. Straite (admitted *pro hac vice*)
Aaron L. Schwartz (admitted *pro hac vice*)
850 Third Avenue
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714
dstraite@kaplanfox.com

Laurence D. King (State Bar No. 206423)
Mario Choi (State Bar No. 243409)
1999 Harrison Street, Suite 1560
Oakland, CA 94612

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

By: *_/s/ Andrew H. Schapiro_*
Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel: (312) 705-7400
Fax: (312) 705-7401

Stephen A. Broome (CA Bar No. 314605)
sb@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: (213) 443-3000
Fax: (213) 443-3100

Jomaire Crawford (admitted *pro hac vice*)
jomairecrawford@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Tel: (212) 849-7000
Fax: (212) 849-7100

Josef Ansorge (admitted *pro hac vice*)
josefansorge@quinnemanuel.com

Tel.: (415) 772-4700
Fax: (415) 772-4707
lking@kaplanfox.com

**SIMMONS HANLY CONROY LLC**

By: */s/ Jay Barnes*
Mitchell M. Breit (admitted *pro hac vice*)
Jason 'Jay' Barnes (admitted *pro hac vice*)
An Truong (admitted *pro hac vice*)
Eric Johnson (admitted *pro hac vice*)
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel.: (212) 784-6400
Fax: (212) 213-5949
mbreit@simmonsfirm.com
jaybarnes@simmonsfirm.com

*Counsel for Plaintiffs*

1300 I Street NW, Suite 900
Washington D.C., 20005
Tel: (202) 538-8000
Fax: (202) 538-8100

Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: (415) 875-6600
Fax: (415) 875-6700

Thao Thai (CA Bar No. 324672)
thaothai@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Tel: (650) 801-5000
Fax: (650) 801-5100

*Counsel for Defendant*

**PURSUANT TO STIPULATION, IT IS SO ORDERED.**

Dated: January 7, 2021

Hon. Susan van Keulen
United States Magistrate Judge

**ATTESTATION PURSUANT TO CIVIL L.R. 5-1(i)(3)**

I, Andrew H. Schapiro, attest that concurrence in the filing of this document has been obtained from the other signatories. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 7th day of January, 2021 at Chicago, Illinois.

*/s/ Andrew H. Schapiro*
Andrew H. Schapiro

**APPENDIX A**
**PRODUCTION FORMAT AND METADATA**

1. **Production Components.** Productions shall include, single page TIFFs, Text Files, an ASCII delimited metadata file (.dat format) and an image load file (.opt format as specified in paragraph 2 below) that can be loaded into commercially acceptable production software (e.g., Concordance).

2. **Image Load File** shall contain the following comma-delimited fields: BEGBATES, VOLUME, IMAGE FILE PATH, DOCUMENT BREAK, FOLDER BREAK, BOX BREAK, PAGE COUNT.

3. **Metadata Fields and Metadata File.**[1] Each of the metadata and coding fields set forth below that can be extracted shall be produced for each document. The parties are not obligated to populate manually any of the fields below if such fields cannot be extracted from a document, with the exception of the following: BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, and CUSTODIAN. The metadata file shall be delimited according to the following characters:
   - Delimiter = ¶ (ASCII:020)
   - Text-Qualifier = þ (ASCII:254)
   - New Line = ® (ASCII:174)
   - Multi-value delimiter - ; (ASCII Code 059)

| Field Name | Field Description |
|---|---|
| BEGBATES | Beginning Bates number as stamped on the production image |
| ENDBATES | Ending Bates number as stamped on the production image |
| BEGATTACH | First production Bates number of the first document in a family |
| ENDATTACH | Last production Bates number of the last document in a family |
| CUSTODIAN | Includes the Individual (Custodian) from whom the documents originated. |
| HASH | MD5 Hash Value |
| ATTACHNAME | The file name(s) of the attachment(s) to a parent document (s). Separated by a semicolon. |

[1] The parties reserve the right to request that additional metadata fields as discovery progresses.

| EMAIL SUBJECT | Subject line of email |
|---|---|
| TITLE | Any value populated in the Title field of the document properties |
| DATESENT | Date and time email was sent (format: MM/DD/YYYY HH:MM) |
| DATERECEIVED | Date Received & Time (format: MM/DD/YYYY HH:MM) |
| TO | All recipients that were included on the "To" line of message |
| FROM | The name and email address of the sender of message |
| CC | All recipients that were included on the "CC" line of the message |
| BCC | All recipients that were included on the "BCC" line of message |
| OWNER | Any value populated in the Owner field of the document properties |
| TITLE | Any value populated in the Title field of the document properties |
| AUTHOR | Any value populated in the Author field of the document properties |
| CONFIDENTIALITY | Identifies the confidential designation as applied in accordance with protective order on file in this Action |
| PAGECOUNT | The number of pages of the Document, excluding the pages of documents in the same family |
| FILENAME | Original file name |
| FILEEXTENSION | Indicates file extension of source native file (e.g., .msg, .doc, .xls, etc.) |
| MESSAGE ID | The Unique Identifier assigned by a program to a Message/Communication |
| PRODUCTION VOLUME | Name of the production volume |
| DATEMOD | Date an electronic document was last modified (format: MM/DD/YYYY) (Edoc or attachment) |
| DATECREATED | Date the document was created (format: MM/DD/YYYY) (Edoc or attachment) |
| NATIVELINK | Native File Link (Native Files only) |

| TEXTLINK | Link to text files |
|---|---|
| REDACTIONFLAG | When document contains redactions, field will be populated "Yes" |
| DE-DUPED CUSTODIANS | All Individual(s) whose documents de-duplicated out (De-Duped Custodian) through exact match HASH value. |
| DUPLICATE FILEPATH | Folder locations of documents by held by other custodians whose copy of the document was not produced based on exact match HASH value de-duplication. Folder names shall be delimited by semicolons and include originating custodian name. |
| DUPLICATE MAILFOLDERS | Original file names of e-mail duplicates within the PST/OST; separated by semicolons. |
| DUPLICATE FILENAMES | Original file names of the unproduced deduplicated documents. Multiple values separated by semicolons. |

4. **Processing.** ESI items shall be processed in a manner that preserves the source native file and all of the above-referenced metadata without modification, including their existing time, date and time-zone metadata consistent with the requirements provided in this Order. ESI items shall be produced with all of the metadata and coding fields set forth above.

a) Time Zone. ESI items shall be processed so as to preserve and display the date/time shown in the Document. ESI items shall be processed to reflect the date and time standardized to a single time zone for all productions by a party, that time zone shall be Universal Coordinated Time (UTC), and shall be consistent across each party's productions. The parties understand and acknowledge that such standardization affects only metadata values and does not affect, among other things, dates and times that are hardcoded text within a file. Dates and times that are hard-coded text within a file (for example, in an e-mail thread, dates and times of earlier messages that were converted to body text when subsequently replied to or forwarded; and in any file type, dates and times that are typed as such by users) will be produced in accordance with the formats set forth in this Protocol.

b) Hidden Content. ESI items shall be processed in a manner that preserves hidden columns or rows, hidden text or worksheets, speaker notes, tracked changes, comments, and other rich data (including, but not limited to strikethrough text, etc.) as displayed in the Document to the extent reasonably and technically possible.

5. **Email Families.** Parent-child relationships (the association between an attachment and its parent email, which are referred to as "families") that have been maintained in the ordinary course of business must be preserved. The Producing Party will make reasonable efforts to produce responsive families together unless one or more members of the family are

privileged, and in that case, the family will be Bates numbered with a placeholder for the withheld privileged document and the removed document will be logged on the Privilege Log.

6. **Hard Copy Documents.** Documents that exist only in hard copy format shall be scanned and produced as TIFFs. Unless excepted below, documents that exist as ESI shall be converted and produced as TIFFs. Unless excepted below, single page Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents. Each TIFF image shall be named according to a unique corresponding Bates number associated with the document. Each image shall be branded according to the Bates number and the agreed upon confidentiality designation. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). TIFFs shall show all text and images that would be visible to a user of the hard copy documents. Hard copy documents shall be produced with an accompanying metadata load file as forth above.

   a) Unitization of Paper Documents: Paper documents should be logically unitized for production. Therefore, when scanning or producing paper documents, documents should be scanned as they as they are kept in the regular course of business, distinct documents shall not be merged into a single file or database record, and distinct documents shall not be split into multiple files or database records. The parties will make their best efforts to unitize documents correctly.

   b) File/Binder Structures (Parent-Child Unitization): Where multiple documents were organized into groups, such as folders, clipped bundles and binders, each distinct document shall be unitized, but maintained together in a parent-child relationship. The parties will make their best efforts to unitize parent-child groups correctly.

   c) Identification: Where a document or a document group – such as folder, clipped bundle, or binder – has an identification spine, "Post-It Note" or any other label, the information on the label shall be scanned and produced as the first page of the document or grouping.

   d) Custodian Identification: The parties will utilize best efforts to ensure that paper records for a particular custodian, which are included in a single production, are produced in consecutive Bates stamp order.

7. **Text Files.** A single multi-page text file shall be provided for each document, and the filename should match its respective TIFF filename. A commercially acceptable technology for optical character recognition "OCR" shall be used for all scanned, hard copy documents. When possible, the text of native files should be extracted directly from the native file. Text files will not contain the redacted portions of the documents and OCR text files will be substituted instead of extracted text files for redacted documents. All

documents shall be produced with a link in the TextLink field.

8. **Image Load Files / Data Load Files.** Each TIFF in a production must be referenced in the corresponding image load file. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image Load file(s) in the production. The total number of pages referenced in a production's image load file should match the total number of TIFF files in the production. The total number of documents in a production should match the total number of records in the data load file.

9. **Bates Numbering.** All documents must be endorsed with sequential Bates numbers on the lower right-hand corner of all images, with any claimed confidentiality status as per the Parties' Stipulated Protective Order (the "Stipulated Protective Order") in the lower left-hand corner. The Bates Numbering and the confidentiality status will be applied in a manner that does not obliterate, conceal, obscure, or interfere with any information from the source document. Each document should be assigned a Bates number that must always: (1) be unique across the entire document production; (2) maintain a constant length of eight numeric digits (including 0-padding) across the entire production; (3) contain only alphanumeric characters, no special characters or embedded spaces; and (4) be sequential within a given document.

10. **Confidentiality Designation.** Responsive documents in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the Protective Order in this matter. Each responsive document produced in native format will have its confidentiality designation identified in the filename of the native file.

11. **Redaction of Information.** If documents are produced containing redacted information, an electronic copy of the original, unredacted data shall be securely preserved in such a manner so as to preserve without modification, alteration or addition the content of such data including any metadata therein. Any redaction for privilege shall be recorded on a privilege log and in accordance with Magistrate Judge Van Keulen's Civil Scheduling & Discovery Standing Order. Information pertaining solely to unannounced and confidential new products or services may be redacted if not relevant to the case. Further, a party may propose additional relevance redactions and the receiving party shall meet and confer within five business days to discuss and attempt to reach agreement. If an attachment in its entirety qualifies for a relevance redaction, the parent document must be produced with its own metadata and the metadata of the fully redacted attachment. Nothing in this paragraph abridges a producing party's right and/or obligation to redact sensitive personal information that is not relevant to the case, including, but not limited to, sensitive health information, social security numbers, bank information, dates of birth, etc. If any documents are redacted as outlined above, the producing party shall produce a log identifying all documents with such redactions (by bates number) and the basis for

redaction (e.g., sensitive health information, etc.; confidential new product or service; or by agreement).

12. **Color.** The parties agree to produce Documents in black and white but the Parties shall meet and confer in good faith if the Receiving Party seeks the color production of certain Documents.

13. **Native Files.** The following types of files shall be produced in native format unless a file is being produced in redacted form:

   a. all media files whether audio or video, and
   b. spreadsheets (e.g. MS Excel or .csv files, Google Sheets, or an acceptable equivalent for Google Sheets).

   A file produced in native format shall be named for its assigned Bates number. A placeholder TIFF image (slipsheet) named for the Bates number shall be produced with the native file. The slipsheet will include the Bates number, any confidentiality designation and the language "Produced in Native Format." TIFF images need not be produced unless the files have been redacted, in which instance such files shall be produced in TIFF with OCR Text Files. If good cause exists to request production of files, other than those specifically set forth above, in native format, the party may request such production and provide an explanation of the need for native file review, which request shall not unreasonably be denied. Any native files that are produced shall be produced with a link in the NativeLink field, along with extracted text and applicable metadata fields set forth in Appendix A. If a file has been redacted, TIFF images and OCR text of the redacted document will suffice in lieu of a native file and extracted text.

14. **Tools for Native Redaction**. The Parties agree that they may use tools that allow for native redaction of spreadsheets where possible to avoid additional expense.

15. **Proprietary Files.** To the extent a response to discovery requires production of ESI accessible only through proprietary software, the parties should continue to preserve each version of such information. The parties shall meet and confer to finalize the appropriate production format.

16. **Database Records and Structured Data.** To the extent that any party requests information that is stored in a database, or database management system, or proprietary system, instant message service, or server logs, the Parties agree that such information can be produced in Excel format. To the extent that Excel format forbids the proper review of the information, the Parties will meet and confer in good faith in an attempt to reach agreement on the data to be produced and the form of the production.

17. **Manner of Production.** All productions must be made by secure file transfer to agreed-upon email addresses. In the event the producing party deems it is not practical to upload a voluminous production (e.g., a production exceeding 20GB) to a secure file transfer site, it shall be sent to the receiving party by overnight mail on external hard drives, readily accessible computer(s) or other electronic media ("Production Media"). Each piece of Production Media shall identify a production number corresponding to the production volume (e.g., "VOL001," "VOL002"), as well as the volume of the material in that production (e.g. "-001," "-002"). Each production shall be accompanied by a cover letter that identifies: (1) the producing party's name; (2) the production date; (3) the Bates Number range of the materials contained on the Production Media; and (4) the set(s) of requests for production for which the documents are being produced.