**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

**BLEICHMAR FONTI & AULD LLP**
Lesley Weaver (Cal. Bar No. 191305)
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
lweaver@bfalaw.com

**KAPLAN FOX & KILSHEIMER LLP**
David A. Straite (admitted *pro hac vice*)
850 Third Avenue
New York, NY 10022
Tel.: (212) 687-1980
dstraite@kaplanfox.com

Laurence D. King (Cal. Bar No. 206423)
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Tel.:   (415) 772-4700
Fax:   (415) 772-4707

**SIMMONS HANLY CONROY LLC**
Jason 'Jay' Barnes (admitted *pro hac vice*)
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel.: (212) 784-6400
jaybarnes@simmonsfirm.com

*Counsel for Plaintiffs; additional counsel listed in signature blocks below*

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel: (312) 705-7400
Fax: (312) 705-7401

Stephen A. Broome (CA Bar No. 314605)
sb@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: (213) 443-3000
Fax: (213) 443-3100

*Counsel for Defendant; additional counsel listed in signature blocks below*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION**

| | |
|---|---|
| PATRICK CALHOUN, *et al*., on behalf of themselves and all others similarly situated,<br>    Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br>    Defendant. | Case No. 5:20-cv-5146-LHK-SVK<br><br>**JOINT LETTER BRIEF RE: GOOGLE'S MOTION FOR A PROTECTIVE ORDER AND PLAINTIFFS' CROSS-MOTION FOR DISCOVERY**<br><br>Referral:  Hon. Susan van Keulen, USMJ |

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

February 5, 2021

**Submitted via ECF**

Magistrate Judge Susan van Keulen
San Jose Courthouse
Courtroom 6 - 4th Floor
280 South 1st Street
San Jose, CA 95113

    Re:    Joint Letter Brief re Google's Motion for a Protective Order
             *Calhoun v. Google LLC*, Case No. 5:20-cv-5146-LHK-SVK (N.D. Cal.)

Dear Magistrate Judge van Keulen:

Pursuant to Your Honor's June 2020 Civil Scheduling and Discovery Referral Matters Standing Order, Plaintiffs and Google LLC ("Google") submit this joint statement regarding Google's Motion for a Protective Order and Plaintiffs' Cross-Motion for Discovery. Counsel for the parties have met and conferred and reached an impasse on these issues. There are 301 days until the close of fact discovery. Dkt. 83. A trial date has not yet been set. Ex. A contains Google's proposed order and Exhibit B contains Plaintiffs' proposed order. Exhibit C is Plaintiffs' Rule 30(b)(6) Notice.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

## GOOGLE'S STATEMENT

Plaintiffs are demanding that Google preserve data logs in its possession that reflect any event-level data of any Chrome user in the United States. Those logs collect ▮▮▮ of event-level data entries ***every day***. Plaintiffs' demand that Google suspend its standard retention policies for these logs (typically ▮▮▮▮▮, unless the data is deleted earlier by individual users) would require Google to store an estimated ▮▮▮▮▮ of additional data every 30 days. This would be an unprecedented preservation effort that would require inordinate engineering and storage resources, cost millions of dollars, and require Google to flout its legal obligations and promises in its Privacy Policy. Plaintiffs do not and cannot articulate a need for such enormous volumes of data; rather, they speculate that they *might* need some portion of it. Plaintiffs thus demand that Google preserve the entire beach in case they later decide that they could use a few grains of sand.

Plaintiffs aver Google's refusal to meet this blunderbuss demand would constitute "spoliation," leaving Google little choice but to seek the Court's intervention. Google respectfully requests that the Court find that Plaintiffs' preservation demand is wholly disproportionate to the needs of the case, and order that Google need not suspend the standard retention periods applicable to the applicable logs. Google has articulated a reasonable preservation compromise that is tailored to the needs of this case as further explained in Section B ("Google's Compromise").

Plaintiffs' demand is entirely disproportionate to this dispute. The Complaint alleges that Google improperly collected data when Plaintiffs used Google's Chrome browser to visit websites that use Google's Analytics and Ad Manager services (the "Services"). Plaintiffs do not dispute that Google's Privacy Policy disclosed the precise data collection at issue. Nor do they allege they took advantage of any of Google's many privacy controls and features. Instead, they allege Google's Chrome Privacy Notice led them to believe they could prevent such data collection simply by *not* enabling a particular feature—Chrome's "sync" feature. Accordingly, Plaintiffs' claims turn on the narrow question of whether their alleged interpretation of the Chrome Privacy Notice is reasonable (It is not. *See* Dkt. No. 57.) Plaintiffs have failed to show that the indiscriminate preservation they seek is necessary to proving their claims.

Discovery must be "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "This district recognizes that the proportionality principle applies to the duty to preserve potential sources of evidence." *Lord Abbett Mun. Income Fund, Inc. v. Asami*, 2014 WL 5477639, at *3 (N.D. Cal. Oct. 29, 2014) (cost of $500 per month to store computers outweighed the likely benefit of maintaining the computers). A party need not preserve data beyond what is truly "needed to prosecute th[e] case." *FTC v. DirecTV, Inc.*, 2016 WL 7386133, at *5 (N.D. Cal. Dec. 21, 2016) (no prejudice where although preservation was not perfect, it was sufficient for stated need); N.D. Cal. Guideline 1.03 (proportionality standard set forth in Rule 26(b)(1) applies to preservation of information); *see also* Fed. R. Civ. P. 37(e) Adv. Comm. Notes (2015) ("[P]erfection in preserving all relevant electronically stored information is often impossible."). Plaintiffs' demand that Google preserve every data log reflecting any event-level data of any Chrome user that visited a website that uses the Services eviscerates this basic principle.

*First*, the data logs consist of ▮▮▮ of entries ***per day***, and include data reflecting the activity of millions of users who are not putative class members and whose data cannot be reasonably segregated from the logs. Google estimates that suspending preservation of these logs—assuming it is even feasible—would result in an additional ▮▮▮▮▮ of data ***every thirty days***.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

That would mean that to satisfy Plaintiffs' demand, every thirty days Google would need to add the equivalent of ▓▓▓▓▓ to its server space. In addition, suspension of the retention periods is not like flipping a switch. It would entail a complex engineering effort that would take several engineering teams weeks or months to accomplish. And managing this volume of data for the indefinite duration of the litigation would require, on an ongoing basis, hundreds of engineering hours and millions of dollars in storage costs—increasing as the data accumulates.

Such colossal effort and costs are grossly disproportionate to the needs of a case involving interpretation of Google's disclosures. Plaintiffs have yet to articulate a need for the data at issue. Indeed, given the massive size and overbreadth of the logs at issue, there is no reason to think that even a fraction of this data would ever be used in litigation. As an illustration, the approximate size of just one Analytics log for a single 30-day period is ▓▓▓▓▓—data equivalent to ▓▓▓▓▓ ▓▓▓▓▓. It would take almost ▓▓▓▓▓ to download over a high-speed gigabit Internet connection. It defies reason to believe that Plaintiffs will spend the resources necessary to download, host, process, review, and actually use in this litigation many multiples of that amount of data.

*Second*, Plaintiffs' demands would undermine Google's compliance with its legal obligations, its commitment to user privacy, and compliance with its contractual obligations. Writ large, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. The data in ▓▓▓▓▓ is subject to user controls—Google empowers users to set auto-deletion periods (3, 18, or 36 months), as well as to review and delete individual entries of the data Google received when that user visited a website that used Google's Services. The deletion requests are then propagated to the relevant ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. It is ironic that Plaintiffs—who claim to be champions of privacy rights—demand that Google override the important processes it has in place to give users control over, and to delete, the data associated with their accounts. At an even more basic level, Google's retention periods and data privacy policies are carefully crafted to abide by Google's legal obligations under laws in the various jurisdictions in which it operates, including EU General Data Protection Regulation 2016/679, the California Consumer Privacy Act, and Lei Geral de Proteção de Dados. Google's preservation obligation is not so broad as to compel it to put aside its obligations to respect users' deletion requests and retention preferences.

In fact, Plaintiffs have refused to produce to Google any non-Chrome data relating to their internet activity, claiming that producing such information would *invade their privacy*. Yet, they demand that Google preserve event-level data for millions of users who, unlike Plaintiffs, did not *choose* to participate in litigation and to undertake the discovery obligations that come with it.

### A. GOOGLE'S PROPOSAL

The Complaint centers on data sent to Google's Ad Manager and Analytics Services when Plaintiffs used Chrome to visit a website that uses those Services. To address Plaintiffs' preservation concerns and provide information to understand the data collection practices at issue, Google proposes to provide:

(1) *Subscriber Information.* Google Account subscriber information that Google has preserved for each Plaintiff. The subscriber information will contain, among other information, each Plaintiff's Google Account name, Google Account ID, date of account creation, email address,

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

alternate email address, IP logs that will contain IP addresses, and User Agents, as well as cookie values related to Plaintiffs' sign-ins.

(2) **Web Browsing Data.** Subject to a stipulated consent order pursuant to the SCA, web browsing information for each Plaintiff ("My Activity"), which will include URL information and time stamps (if not deleted by Plaintiffs), and additional data related to Plaintiffs' activity on websites that used Ad Manager or Analytics services. The My Activity information will provide Plaintiffs with additional information on data categories collected in Analytics and Ad Manager logs.

(3) **Preservation.** Google will agree to preserve the underlying data associated with each Plaintiff's Google Account(s) as recorded in the Ad Manager and Analytics logs that are ▮▮▮▮ ▮▮▮▮.

### PLAINTIFFS' STATEMENT

**Background of the Dispute**: Google now admits that for months it has permanently destroyed substantial volumes of electronic evidence relevant to this data privacy class action *and is continuing to do so today*, without prior authorization in violation of this Court's order. *See* ESI Protocol dated Jan. 7, 2021 (Dkt. 96), ¶ 5(a)-(c). The spoliated evidence includes the entirety of Google's Identity Logs, Analytics Logs and Display Ad Logs regardless of whether ▮▮▮▮ ▮▮▮▮, if older than very narrow retention periods (3, 18 or 36 months). The spoliated evidence also includes Google's synched traffic logs older than 35 days or 63 days. Google also *refuses to suspend future destruction* or even to identify and preserve the most relevant portions of these logs.

Substantial data in these event logs and synched traffic logs are obviously relevant to the case. Google promises Chrome users that certain personal information (including web browsing information) ("PI") will be stored locally on Chrome and only collected by Google if the user chooses (by "synching" the browser with a Google Account). Plaintiffs' investigation, detailed in their 93-page complaint using developer debugging tools, revealed that Google collects some PI from Chrome regardless of whether synched. *The destroyed logs appear to contain the historical and current record of what PI Google collects from Chrome users,* whether the PI is linked any Google Account, *and whether the PI was taken from a "synched" browser* – data with obvious utility in determining class membership, establishing liability, and quantifying damages.[1]

While Plaintiffs are largely still in the dark regarding how these logs work, what little Google has disclosed confirms their relevance and that Google had no right to delete them. Indeed, Google represented to this Court that it had "taken steps to preserve evidence relevant to this litigation" *but never mentioned ongoing destruction of key data logs*. *See* Joint CMC Statement dated Sept. 2,

---

[1] Google falsely states above that "Plaintiffs do not dispute that Google's Privacy Policy disclosed the precise data collection at issue." But of course Plaintiffs dispute it, repeatedly. *See, e.g.,* Pl. Opp. to MTD (Dkt. 67) at 6 ("Google never discloses the data practices at issue here"); *see also* Plaintiffs' Statement of Recent Decision dated December 14, 2020 (Dkt. 84) (French data privacy regulator finding that Google Privacy Policy does not sufficiently disclose Google's data collection). Google makes several other false and self-serving mischaracterizations of Plaintiffs' positions above, but it is not necessary to today's submission to correct them all here.

2020 (Dkt. 44) at 4. Worse, when the parties negotiated an ESI Protocol (approved by this Court last month in modified form), Google agreed that all relevant ESI "created or received between July 27, 2014 and the present will be preserved." Dkt. 96, ¶ 5(a). Google pre-negotiated two exceptions to the preservation obligation (backup systems for disaster recovery, and systems no longer in use that cannot be accessed), *see id*. ¶ 5(b), but **the parties agreed that any other exemption from preservation duties would require additional negotiation**. *Id*. ¶ 5(c). The Court also held oral argument on the proposed ESI Protocol last month and Google again never mentioned that it was destroying relevant evidence contrary to preservation obligations in the Protocol.

On January 20, 2021, Google identified for the first time that "event logs" had already been destroyed and that Google would not prevent further destruction. The next day, Plaintiffs requested in writing that Google confer regarding the data destruction; sought additional information including samples of data being destroyed; requested an accounting of what relevant data has been destroyed; and requested that Google identify a corporate representative to sit for a Rule 30(b)(6) on this narrow topic. On January 29, 2021, Google also disclosed the existence of separate sync traffic logs and confirmed that they, too, are not being preserved. Plaintiffs also formally noticed the deposition, limiting it to these narrow topics. *See* Notice, attached as Exhibit C. However, before meeting and conferring about the notice – a conference Plaintiffs specifically requested to attempt a negotiated solution – Google presented Plaintiffs with the surprise motion above for protective order.

Google has refused all of Plaintiffs' requests. Google refuses to suspend the destruction of relevant data; refuses to provide an accounting or representative samples; and refuses to provide an expedited deposition. Instead, Google seeks a broad protective order blessing its unauthorized past data destruction and permitting future data destruction, without the benefit of a factual record. Plaintiffs oppose the request, and instead propose an expedited plan to gather the facts necessary for Plaintiffs and the Court to weigh in on an informed basis.

**Plaintiffs' Response to Google's Request for a Protective Order and Plaintiffs' Counter-Proposal**: The Court should reject Google's motion for a protective order and instead grant Plaintiffs' counter-proposal for expedited discovery including a 30(b)(6) deposition with the focused topics in the attached Exhibit C. Plaintiffs also request an emergency hearing next week.

*First*, Google provides the Court with no evidentiary support for its extraordinary request to destroy obviously relevant data in the future. Even if bare representations of counsel could substitute for evidence, the short outline of facts above does not come close to providing the Court or Plaintiffs with the information necessary to know what precisely is being destroyed. Google refuses to produce documents describing the logs, Google's retention policies, exemplars, or to discuss sampling or what steps it could take mitigate ongoing destruction.[2] The burden is not on Plaintiff to explain why Google must preserve relevant evidence. *The burden is on the party who proposes to destroy the evidence*. But Google is asking *after the fact* for a judicial pardon based on representations by its counsel on no factual record for both past and future destruction of material evidence. This cannot be the code of conduct in the Northern District of California.

---

[2] For this reason, Google's proposal above to preserve only the "underlying data associated with each Plaintiff's Google Account(s) as recorded in the Ad Manager and Analytics logs that are ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" is not reassuring. With no factual record, it is unclear what data is included and excluded in this offer, but for certain it is only for *four people* and excludes data ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. It does not identify what was deleted relating to those four.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

The law supports Plaintiffs' request to take evidence. In *Pippins v. KPMG LLP*, 279 FRD 245, 247 (S.D.N.Y. 2012), the defendant sought to preserve a small random sampling of hard drives from thousands of former employees. Like here, KPMG refused to produce "even one hard drive for inspection" or "furnish Plaintiffs' access to any hard drives." *Id*. at 251. Instead, KPMG made a series of "take or leave offers" and "sought to have Plaintiffs agree that KPMG only had to preserve a smaller sample of the hard drives without giving Plaintiffs the opportunity to review the contents of any hard drivers first." *Id*. The Court denied KPMG's motion for a protective order because the record before was "devoid of information necessary to conduct such an analysis." The court could not "possibly balance the costs and benefits of preservations when [it was] missing one side of the scale (the benefits)." The Court should deny Google's motion for this reason alone.[3]

Further, without evidence, the Court cannot know what the true proportionality metrics are. Taking Google counsel's say-so as evidence is prejudicial to Plaintiffs, particularly when the representations are based on misrepresentations of Plaintiffs' positions. For example, counsel's assertion that Plaintiffs demanded Google preserve "▮▮▮▮▮▮▮▮ of data" is false and an inversion of the parties' discussions. Proportionality also requires two metrics – burden and benefit – but Google asks this Court to permit data destruction on burden grounds alone, before knowing the benefit – do alternative data sources exist, or are the logs essential to the case? Google doesn't say.

*Second*, the Court should not prematurely bless Google's **past** destruction of relevant evidence without first giving Plaintiffs an opportunity to fully brief a spoliation motion following a full factual investigation. Litigants are "under a duty to preserve evidence which [they] know[] or reasonably should know is relevant to the action" as soon "as a potential claim is identified." *In re Napster, Inc. Copyright Litig.*, 462 F.Supp.2d 1060 (N.D. Cal. 2006); *accord*, The Manual for Complex Litigation (Fourth) § 11.443 (duty to confer prior to destruction). Once the duty takes effect, a party is "required to suspend any existing policies related to deleting or destroying files and preserve all relevant documents related to the litigation." *Id*. at 1070. Google must comply with these rules like any other litigant. It cannot simply destroy relevant evidence without leave of court or agreement of Plaintiffs, ***particularly in light of a stipulated Court order forbidding it***.

Plaintiffs therefore respectfully request that the Court deny Google's motion for a protective order, and instead order expedited discovery and oversight as outlined in Plaintiffs' proposed order accompanying this Joint Submission. As proposed by Plaintiffs, Google would produce all documents related to the retention policies; produce representative samples of the logs; produce all documents associated with the four Plaintiffs and their identifiers; produce an accounting of all relevant evidence destroyed since July 27, 2020; and comply with the attached deposition notice on or before February 12, 2021. Plaintiffs also respectfully request an emergency discovery hearing during the week of February 15, 2021.

---

[3] Google cites two inapposite cases. In *Lord Abbett Mun. Income Fund, Inc. v. Asami*, 2014 WL 5477639, at *3 (N.D. Cal. Oct. 29, 2014), the evidence that was *to be* destroyed had already been the subject of a forensic review and "there ha[d] been absolutely no showing that they contain relevant evidence." In *FTC v. DirecTV, Inc.*, 2016 WL 7386133, at *5 (N.D. Cal. Dec. 21, 2016), the complaint was only that "potentially relevant" data was lost after the litigant waited until the close of discovery to complain about the spoliation.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

| | |
|---|---|
| **BLEICHMAR FONTI & AULD LLP** | **QUINN EMANUEL URQUHART & SULLIVAN, LLP** |
| By: /s/ Lesley Weaver | |
| Lesley Weaver (Cal. Bar No. 191305) | By: /s/ Andrew H. Schapiro |
| Angelica M. Ornelas (Cal. Bar No. 285929) | Andrew H. Schapiro (admitted *pro hac vice*) |
| Joshua D. Samra (Cal. Bar No. 313050) | andrewschapiro@quinnemanuel.com |
| 555 12th Street, Suite 1600 | 191 N. Wacker Drive, Suite 2700 |
| Oakland, CA 994607 | Chicago, IL 60606 |
| Tel.: (415) 445-4003 | Tel: (312) 705-7400 |
| Fax: (415) 445-4020 | Fax: (312) 705-7401 |
| lweaver@bfalaw.com | |
| aornelas@bfalaw.com | Stephen A. Broome (CA Bar No. 314605) |
| jsamra@bfalaw.com | sb@quinnemanuel.com |
| | Viola Trebicka (CA Bar No. 269526) |
| **KAPLAN, FOX & KILSHEIMER LLP** | violatrebicka@quinnemanuel.com |
| | 865 S. Figueroa Street, 10th Floor |
| By: /s/ David A. Straite | Los Angeles, CA 90017 |
| David A. Straite (admitted *pro hac vice*) | Tel: (213) 443-3000 |
| Aaron L. Schwartz (admitted *pro hac vice*) | Fax: (213) 443-3100 |
| 850 Third Avenue | |
| New York, NY 10022 | Jomaire Crawford (admitted *pro hac vice*) |
| Telephone: (212) 687-1980 | jomairecrawford@quinnemanuel.com |
| Facsimile: (212) 687-7714 | 51 Madison Avenue, 22nd Floor |
| dstraite@kaplanfox.com | New York, NY 10010 |
| | Tel: (212) 849-7000 |
| Laurence D. King (State Bar No. 206423) | Fax: (212) 849-7100 |
| Mario Choi (State Bar No. 243409) | |
| 1999 Harrison Street, Suite 1560 | Josef Ansorge (admitted *pro hac vice*) |
| Oakland, CA 94612 | josefansorge@quinnemanuel.com |
| Tel.:    (415) 772-4700 | 1300 I Street NW, Suite 900 |
| Fax:    (415) 772-4707 | Washington D.C., 20005 |
| lking@kaplanfox.com | Tel: (202) 538-8000 |
| | Fax: (202) 538-8100 |
| **SIMMONS HANLY CONROY LLC** | |
| | Jonathan Tse (CA Bar No. 305468) |
| By: /s/ Jay Barnes | jonathantse@quinnemanuel.com |
| Mitchell M. Breit (admitted *pro hac vice*) | 50 California Street, 22nd Floor |
| Jason 'Jay' Barnes (admitted *pro hac vice*) | San Francisco, CA 94111 |
| An Truong (admitted *pro hac vice*) | Tel: (415) 875-6600 |
| Eric Johnson (admitted *pro hac vice*) | Fax: (415) 875-6700 |
| 112 Madison Avenue, 7th Floor | |
| New York, NY 10016 | Thao Thai (CA Bar No. 324672) |
| Tel.: (212) 784-6400 | thaothai@quinnemanuel.com |
| Fax: (212) 213-5949 | 555 Twin Dolphin Drive, 5th Floor |
| mbreit@simmonsfirm.com | Redwood Shores, CA 94065 |
| jaybarnes@simmonsfirm.com | Tel: (650) 801-5000 |
| | Fax: (650) 801-5100 |
| | |
| *Counsel for Plaintiffs* | *Counsel for Defendant* |

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(I)(3)

I, Andrew H. Schapiro, attest that concurrence in the filing of this document has been obtained from the other signatories. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 5th day of February, 2020, at Chicago, Illinois.

*Andrew H. Schapiro*