**BLEICHMAR FONTI & AULD LLP**
Lesley Weaver (Cal. Bar No.191305)
Angelica M. Ornelas (Cal. Bar No. 285929)
Joshua D. Samra (Cal. Bar No. 313050)
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com

**DICELLO LEVITT GUTZLER**
David A. Straite (admitted pro hac vice)
One Grand Central Place
60 East 42nd Street, Suite 2400
New York, New York 10165
Tel.: (646) 933-1000
dstraite@dicellolevitt.com

Amy E. Keller (admitted pro hac vice)
Ten North Dearborn Street, 6th Fl.
Chicago, Illinois 60602
Tel.: (312) 214-7900
akeller@dicellolevitt.com

**SIMMONS HANLY CONROY LLC**
Jason 'Jay' Barnes (admitted *pro hac vice*)
Mitchell M. Breit (admitted *pro hac vice*)
An Truong (admitted *pro hac vice*)
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel.: (212) 784-6400
Fax: (212) 213-5949
jaybarnes@simmonsfirm.com

*Counsel for Plaintiffs*

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel: (312) 705-7400
Fax: (312) 705-7401

Stephen A. Broome (CA Bar No. 314605)
stephenbroome@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
865 S. Figueroa Street, 10th Floor Los Angeles, CA 90017
Tel: (213) 443-3000
Fax: (213) 443-3100

*Counsel for Defendant; additional counsel listed in signature blocks below*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| PATRICK CALHOUN, *et al*., on behalf of themselves and all others similarly situated,<br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br>Defendant. | Case No. 5:20-cv-5146-LHK-SVK<br><br>**JOINT SUBMISSION PURSUANT TO DKT. 241 RE: ESI SEARCH TERMS**<br><br>Hon. Susan van Keulen, USMJ |

July 23, 2021

**Submitted via ECF**

Magistrate Judge Susan van Keulen
San Jose Courthouse
Courtroom 6 - 4th Floor
280 South 1st Street
San Jose, CA 95113

Re: **Joint Submission re: ESI Search Terms**
*Calhoun v. Google LLC*, Case No. 5:20-cv-5146

Dear Magistrate Judge van Keulen:

Pursuant to Your Honor's Order dated July 8, 2021 in *Calhoun, et al. v. Google LLC* (Dkt. No. 241), the parties jointly submit this statement containing a joint summary of the status of ESI search terms negotiations since the July 8, 2021 hearing and the parties' respective positions with respect to outstanding disputes over search terms.

**JOINT STATEMENT:**

Since the July 8, 2021 hearing, the parties have exchanged various correspondence and proposals as they negotiate ESI search terms. The substance of those efforts is as follows:

On July 12, Google sent counsel a letter (i) clarifying that there are a total of 36 undisputed terms (not 24), and 27 disputed terms, and (ii) confirming that these undisputed terms were run against the 24 custodians identified as of that date. Google also provided (i) updated total and unique hit counts for the disputed terms run across the documents of these 24 custodians; and (ii) descriptions of NR documents that hit on 12 of the disputed terms. (Google already provided NR analysis for the remaining 15 terms in dispute prior to the July 8 hearing.)

On July 13, Plaintiffs proposed an initial round of revisions to 22 of the 27 disputed terms and withdrew one term (i.e., <priva*>).

On July 16, Google (i) identified its 25th custodian and (ii) provided updated total and unique hit counts after running the July 13 revisions against all 25 ESI custodians. The resulting total document hit count was over 7.5 million (7.9 million with families). To aid more meaningful modifications, Google also provided Plaintiffs with the total and unique hit counts for deconstructed terms.

On July 20, Plaintiffs provided additional modifications to the disputed terms and withdrew a second term. The additional modifications reduced the total document hit count to 3.1 million (and 3.3 million with families). On July 22, Google requested further modifications to the remaining 25 terms and Plaintiffs proposed further revisions to the search term (No. 13) with the most number of hits. Google agreed to run two additional terms.

Although the parties have made good progress negotiating the disputed terms, they have now reached an impasse. The 23 disputed terms and their associated hit counts are enclosed herewith as **<u>Exhibit A.</u>**

**PLAINTIFFS' STATEMENT:**

At the July 8 hearing, the parties confirmed that 27 ESI Search Terms remained in dispute, and since then Plaintiffs thus bent over backwards to reduce the raw volume of hits:

- Plaintiffs removed two Search Terms entirely, reducing the disputed terms to 25.
- Plaintiffs repeatedly proposed modifications to the remaining terms, including narrowing the limiters from "/100" to "/50," consistent with the same limiter used by the Court in the search for Officer and Director documents, Dkt. No. 181-1.
- The result of these efforts was to reduce the 7.5 million hits to 2.9 million hits, and even more importantly, ***to reduce the "unique hits" to 1.4 million***.
- Last night, Plaintiffs proposed yet further modifications to Search Term No. 13, which is currently responsible for more than 1 million hits.

Unfortunately, all of Plaintiffs' compromises, modifications and even wholesale withdrawal of two terms have hit a wall. Google refuses to compromise other than to accept 2 of the remaining 25 disputed terms, even after Plaintiffs agreed to substantially limit each term.

Plaintiffs respectfully submit that Plaintiffs' proposed search strings, as modified over that past two weeks, are not overbroad. Of the total hits generated across the strings disputed as of July 22, only about 17% of those hits are unique. This means the search strings are hitting on substantially similar documents, suggesting that the terms *are* narrowly tailored. Were the range of

uniqueness to fall on a high percentage, e.g., 80%, then that would indicate an overbroad search term. None of Plaintiffs' proposed strings reach such an extreme threshold.

Furthermore, these "hits" are not the same thing as documents. They do not take into account the de-duplication that will take place once Google transfers the data from its staging database to its review platform. For example, in the current database, 4.6% of the documents have more than 10 recipients, 10% have more than 5 recipients, and another 10% have between 2 and 5 recipients, all of which would have been counted multiple times in the hit counts, but not accurately reflect true burdens. The counts also do not take into account that email threading will reduce Google's review burden. For example, there is a document in Google's current production consisting of an email thread with 14 segments and a "hit" in the first segment; this document would be counted 14 times for the hit count, but reviewed only once.[1] And they do not take into account that multiple Google custodians will possess the same document. The size of the document population Google will ultimately review is certain to be far less than the number of hits disputed here.

Finally, even if the 1.4 million unique hits were each associated with non-duplicative documents, that would still not be an undue burden given the magnitude and complexity of this case. To date, Google has only produced approximately 22,980 documents totaling approximately 73,000 pages. Even taking into account the 80,000 pages in the queue for production, this falls woefully short of the total number of documents (not hits) likely to be produced here. *See, e.g.*, *Klein v. Facebook*, No. 5:20-cv-08570-LHK, Dkt. No. 114 (defendant produced over ***12 million pages of documents***); *In re Juul Labs, Inc.*, No. 3:19-md-02913-WHO, Dkt. No. 2034 at 2 (defendant produced ***5.8 million documents totaling 21.4 million pages***); *In re Anthem, Inc. Data Breach Litig.* No. 5:15-md-02617-LHK, Dkt. No. 869-7 ¶ 2 (plaintiffs reviewed ***3.8 million pages of documents***); *In re Yahoo! Customer Data Security Breach Litig.*, No. 16-md-02752-LHK, Dkt. No. 330-2 ¶¶ 4, 8 (over ***9 million pages*** *of documents* produced in class action involving 500 million user accounts).

If the Court were to decide that Google has met its burden of demonstrating undue burdens, Plaintiffs offer two additional compromises: First, Google could bulk-produce all non-privileged documents that hit on the disputed search terms, subject to review for privilege, per the parties' Rule 502(d) stipulation, which already has a bulk-production provision approved by this Court. *See In re Actavis Holdco U.S., Inc.*, 2019 WL 8437021, at *1 (3d Cir. Dec. 6, 2019) (affirming production of all documents that hit on search terms after conducting a privilege review but "without a manual relevance review"). Alternatively, Plaintiffs remain willing (as they first proposed in May) to reach agreement on a technology assisted review ("TAR") protocol on an expedited basis, which will reduce the burden and expense of a traditional linear review. *See Moore v. Publicis Groupe*, 287 F.R.D. 182, 183, 193 (S.D.N.Y. 2012), *adopted sub nom. Moore v. Publicis Groupe SA*, 2012 WL 1446534 (S.D.N.Y. Apr. 26, 2012) (urging parties to consider TAR "for use in large-data-volume cases where it may save . . . significant amounts of legal fees in document review.").

**GOOGLE'S STATEMENT:**

The Court admonished Plaintiffs to "be sensible" by "narrow[ing]" their "incredibly broad terms" so Google can "run a more meaningful search." 7/8/21 Hrg. Tr. at 22:21-24. Despite the Court's statement, *three rounds* of revisions, and Google's considerable efforts, Plaintiffs continue to overreach. This scorched-earth approach has forced Google to incur needless costs while trying to resolve these rudimentary disputes. To move discovery along, Google asks the Court to set a cap on the number of document hits commensurate with the time remaining for fact discovery.

---

[1] GOOG-CALH-00064271.

***Plaintiffs' July 13 Revisions Were Largely Cosmetic and Did Little to Move the Needle.*** To drive meaningful negotiations, Google provided an NR analysis *for each disputed term* detailing the large swaths of irrelevant documents captured. Plaintiffs ignored that analysis, choosing instead to (i) withdraw just *one* of nearly 16,000 deconstructed terms, and (ii) make superficial tweaks that left intact egregious terms with disproportionately high counts. To boot, they failed to revise Terms 8, 29, and 29a—each of which was responsible for 1.6 to 3.8 million hits. Not surprisingly, such meager edits only shaved off a mere 1.1 million hits.  Google promptly provided hit reports.  In the hopes of encouraging more meaningful revisions, Google also gave Plaintiffs *even more data* showing total and unique counts for *thousands* of deconstructed terms and recommended specific fixes to address Google's burden and scope objections. Plaintiffs repeatedly insisted on receiving these hit counts from Google; they now baselessly attack them as an "artificially inflat[ed]" metric, impeding further progress. *But see* 7/8/21 Hrg. Tr. at 28:23-29:7.

***Plaintiffs' July 20 and 23 Revisions Ignore Expansive Terms Driving Up the Count.*** Plaintiffs' practice of negligible revisions continued despite the mountains of data they possess.  The Court need look no further than Exhibit A for confirmation that the terms still suffer from glaring deficiencies and are not tailored to relevant discovery—a point that Plaintiffs do not (and cannot) refute. For example: (i) Term 23, with over 700,000 hits, includes the term <question* /25 Chrome> and (ii) Term 12, with nearly 480,000 hits, includes the term <Chrome /25 sometimes>. Worse, Plaintiffs still seek over 31 standalone terms like Term 29a and Term 8 (e.g., <sync> and <client ID>)—creating the false impression that other terms have "low" unique counts (which is a central theme of Plaintiffs' position statement and argument).  There can be no doubt that these terms will pull in an exorbitant volume of NR ESI (and Plaintiffs cite no authority compelling such a burdensome review for facially overbroad and irrelevant terms).[2] Given the extensive NR analysis and the Court striking down even narrower terms in *Brown*, further tailoring is needed.

***A Court-Ordered Cap of 350,000 Document Hits Is Appropriate.*** The Court previously deemed it "premature" to order a cap, affording the parties one final chance to meet and confer to narrow the search terms. *Id.* at 13:11. It is now apparent that a cap on the *document hits* is the only way to (i) appropriately narrow these terms; and (ii) ensure Google can timely review and produce these documents, including for noticed depositions.  Google previously explained the rationale for a 350,000 document hit cap. *See* Dkt. No. 228 at 6.  Such a review will take five weeks to complete, assuming a team of 50 reviewers. Conversely, a review of 2.9 million document hits would take over nine months—which is hardly proportional and would grossly exceed the time allotted for fact discovery.[3] Plaintiffs cannot have it both ways: having refused to extend the schedule, they cannot now seek 2.9 million document hits,[4] which will require *several more months to review* than the

---

[2] For example, as confirmed by Google's NR analysis, these terms would capture ESI noting Chrome sometimes renders fonts larger than other browsers, apps that sync music, discussions about "Client IDs" that do not bear on Plaintiffs' claims, and bugs specific to users with sync enabled (e.g., missing bookmarks on a synced device).

[3] As Exhibit A reveals, many terms are so overbroad and untethered as to not be relevant to the claims or defenses, as well as burdensome.  The Court limited the parties to one page plus an attachment for disputed terms; should the Court grant Google permission, it will file an affidavit corroborating the burden associated with the disputed terms. Google also welcomes the opportunity to correct the many misstatements Plaintiffs make about (i) Google's review process (e.g., Plaintiffs vastly overestimate how much last-in-time and de-duplication will reduce Google's burden), and (ii) the FRE 502(d) stipulation that the parties entered, which does not obligate a party to mass produce documents, through TAR or otherwise, contrary to Plaintiffs' assertion. *See* Dkt. 103, ¶ 1  (simply providing that an inadvertent production of a protected document "as part of a mass production is not itself a waiver in this case").

[4] Plaintiffs' authorities miss the mark, as *none* address the propriety of running facially overbroad and burdensome terms like those sought here, nor do they obligate Google to review *millions* of documents from such facially overbroad and burdensome terms in the few months remaining in the case's fact discovery schedule.

schedule can accommodate, creating outsized burdens for Google's document review process, document review team, discovery vendor, and counsel.[5]

[5] Likewise, Plaintiffs cannot decry the volume of Google's custodial productions now, particularly where this very dispute over search terms has obstructed Google's ability to complete its review and production efforts since February.

DATED: July 23, 2021

**BLEICHMAR FONTI & AULD LLP**

By:*/s/ Lesley Weaver*
Lesley Weaver (Cal. Bar No. 191305)
Angelica M. Ornelas (Cal. Bar No. 285929)
Joshua D. Samra (Cal. Bar No. 313050)
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
*lweaver@bfalaw.com*
*aornelas@bfalaw.com*
*jsamra@bfalaw.com*

**DICELLO LEVITT GUTZLER**

By:*/s/ David A. Straite*
David A. Straite (admitted pro hac vice)
One Grand Central Place
60 East 42nd Street, Suite 2400
New York, New York 10165
Tel.: (646) 933-1000
*dstraite@dicellolevitt.com*

Amy E. Keller (admitted pro hac vice)
Ten North Dearborn Street, 6th Fl.
Chicago, Illinois 60602
Tel.: (312) 214-7900
*akeller@dicellolevitt.com*

**SIMMONS HANLY CONROY LLC**

By: */s/ Jay Barnes*
Jason 'Jay' Barnes (admitted *pro hac vice*)
An Truong (admitted *pro hac vice*)
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel.: (212) 784-6400
Fax: (212) 213-5949
*jaybarnes@simmonsfirm.com*
*antruong@simmonsfirm.com*

*Counsel for Plaintiffs*

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

By: */s/ Andrew H. Schapiro*
Andrew H. Schapiro (admitted pro hac vice)
andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Stephen A. Broome (CA Bar No. 314605)
sb@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Jomaire Crawford (admitted pro hac vice)
jomairecrawford@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Josef Ansorge (admitted pro hac vice)
josefansorge@quinnemanuel.com
Carly Spilly (admitted pro hac vice)
carlspilly@quinnemanuel.com
1300 I Street NW, Suite 900
Washington D.C., 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

*Attorneys for Defendant Google LLC*

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

I, Andrew Schapiro, attest that concurrence in the filing of this document has been obtained from the other signatories. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 23rd day of July, 2021, at Chicago, Illinois.

*/s/ Andrew Schapiro*
Andrew Schapiro