1

2 **BLEICHMAR FONTI & AULD LLP**
Lesley Weaver (Cal. Bar No. 191305)

3 555 12th Street, Suite 1600
Oakland, CA 94607

4 Tel.: (415) 445-4003
lweaver@bfalaw.com

5 **DICELLO LEVITT GUTZLER**

6 David A. Straite (admitted *pro hac vice*)
One Grand Central Place

7 60 East 42nd Street, Suite 2400
New York, New York 10165

8 Tel.: (646) 933-1000
*dstraite@dicellolevitt.com*

9

10 Amy E. Keller (admitted *pro hac vice*)
Ten North Dearborn Street, 6th Fl.

11 Chicago, Illinois 60602
Tel.: (312) 214-7900

12 *akeller@dicellolevitt.com*

13 **SIMMONS HANLY CONROY LLC**
Jason 'Jay' Barnes (admitted *pro hac vice*)

14 112 Madison Avenue, 7th Floor
New York, NY 10016

15 Tel.: (212) 784-6400
jaybarnes@simmonsfirm.com

16

17 *Counsel for Plaintiffs; additional counsel
listed in signature blocks below*

**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel: (312) 705-7400
Fax: (312) 705-7401

Stephen A. Broome (CA Bar No. 314605)
stephenbroome@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: (213) 443-3000
Fax: (213) 443-3100

*Counsel for Defendant; additional counsel
listed in signature blocks below*

18 **UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION**

19

20 PATRICK CALHOUN, *et al*., on behalf of
themselves and all others similarly situated,

21       Plaintiffs,

22       v.

23 GOOGLE LLC,
      Defendant.

24

Case No. 5:20-cv-5146-LHK-SVK

**JOINT SUBMISSION IN RESPONSE TO
DKT. 220 RE: STATUS OF DISCOVERY
DISPUTES**

Referral: Hon. Susan van Keulen, USMJ

25

26

27

28

August 2, 2021

**Submitted via ECF**

Magistrate Judge Susan van Keulen
San Jose Courthouse
Courtroom 6 - 4th Floor
280 South 1st Street
San Jose, CA 95113

Re:   Joint Submission in Response to Dkt. No. 220 re: Status of Discovery Disputes
      *Calhoun v. Google LLC*, Case No. 5:20-cv-5146-LHK-SVK (N.D. Cal.)

Dear Magistrate Judge van Keulen:

Pursuant to Your Honor's June 8, 2021 Order (Dkt. 220), Plaintiffs and Google LLC ("Google") jointly submit this statement containing a table identifying the status of discovery disputes.

Pursuant to Your Honor's order dated July 30, 2021 (Dkt. 252), each side identifies two "priority" issues for the hearing:

Plaintiffs select the following two disputes to prioritize:

- Dispute 1.13 (clean-room access)

- Dispute 1.14 (cross-use protocol)

Google selects the following two disputes to prioritize:

- Dispute 2.7 (Google's Request for Production No. 5)

- Dispute 2.12 (Plaintiffs' Response to Google's Amended Interrogatory No. 7)

| No. | Date Submitted | Dispute | Status as of 8/2/21 Joint Submission | Status as of 8/16/21 Hearing |
|---|---|---|---|---|
| | | | **Disputes Identified by Plaintiffs** | |
| 1.1 | 2/17/2021 | Plaintiffs' cross-motion to compel Rule 30(b)(6) deposition on topic of data logs and production of documents in advance (next deposition scheduled for August 4, 2021) | Plaintiffs' Position: The Court ordered a Rule 30(b)(6) deposition of Google on topics d-e and g-j of Plaintiffs' original Rule 30(b)(6) deposition notice (Dkt. 188-6), see Order dated May 13, 2021 (Dkt. No. 192-1), and the deposition is scheduled for August 4 per agreement of the parties.  However, an issue has arisen.  On July 22, 2021, Plaintiffs sent Google a list of 18 specific categories of documents subsumed within their initial discovery requests for which Google had not produced documents, and asked that they be produced in advance of the deposition. On July 26, 2021, the parties broached the topic in a meet-and-confer, at which point Google informed Plaintiffs that they did not believe the sub-categories were subsumed, and will not be producing them in advance of the deposition. <br> Google's Position: This dispute is not ripe. Plaintiffs' 18 new categories of documents are not subsumed by their deposition notice, not covered by this Court's prior order for a narrow document production, and do not fall under Plaintiffs' prior RFP requests either. For example, the new categories include all documents relating to particular product features or code names not referenced in Plaintiffs' deposition notice or RFPs.  Google informed Plaintiffs that they should seek these documents in the ordinary course of discovery: propound RFPs under the Federal Rules. Google will then respond, conduct a reasonable search where appropriate, and the parties can meet and confer about any remaining issues. | |
| 1.2 | 4/20/2021 | Protective Order regarding Plaintiff devices and PI | Intentionally left blank | |
| 1.3 | 4/20/2021 | Plaintiffs' RFP No. 5, request for data associated with Plaintiffs or their PI | Joint Position: As ordered by the Court on June 8, 2021 (Dkt. No. 220-1), Plaintiffs moved to compel the production of data, documents and information associated with the plaintiffs or their identifiers, on June 23, 2021. Dkt. No. 226.  Google filed its opposition under seal on June 30, 2021.  Dkt Nos. 232, 233.  The Court then appointed a special master (Douglas Brush), Dkt. No. 246, and referred the motion to him, see Dkt. No. 247, and the parties had their initial conference with Mr. Brush on July 30, 2021. | |
| 1.4 | 4/20/2021 | Plaintiffs' RFP Nos. 1 & 2, request for documents exchanged with regulators | Plaintiffs' Position: Google produced to plaintiffs various Civil Investigative Demands issued to Google by the Texas Attorney General, the Arizona Attorney General and the Federal Trade Commission.  On June 8, 2021, the Court gave Google 30 days to identify any other public investigation of Google's collection of PI while users are using Chrome. Dkt No. 220-1. Google represented on July 8 that there are no further relevant public investigations. Importantly, Plaintiffs also learned that Google identified more than 100 custodians as sources of the material produced to the regulators, far more than those Google was willing to identify for this litigation, and therefore Plaintiffs believe the regulator productions are likely to contain documents that would never otherwise be produced here.  Plaintiffs will now be requesting the production of documents produced in response to a subset of the RFPs and ROGs in the regulator CIDs. <br> Google's Position: This dispute is not ripe. Plaintiffs have not requested additional regulatory documents. Plaintiffs are incorrect in their assertion that Google identified "more than 100 custodians" in response to the CIDs. To the extent Plaintiffs are referring to *State of Texas, et al. v. Google LLC*, 4:20-cv-957 (E.D. Tex. 2021), the regulatory agency—not Google—identified in its CID the sources for the production. Further, each of the | |

| No. | Date Submitted | Dispute | Status as of 8/2/21 Joint Submission | Status as of 8/16/21 Hearing |
|---|---|---|---|---|
| | | | investigations at issue spanned topics far outside of the scope of Plaintiffs' complaint here. For example, *State of Texas, et al. v. Google LLC* is an antitrust action focusing on Google's purported actions to inhibit third parties' access to certain data and S*tate of Arizona ex rel. Mark Brnovich, Attorney General v. Google LLC*, No. CV 2020-006219 (Ariz. Superior Ct. 2020) is about geolocation data. Thus, it is of no moment that Google may not produce in this case documents that squarely relate to topics outside the appropriate scope of discovery in this action. Given the thousands of documents that have been and will be collected, reviewed, and produced in this case—in response to the very RFPs that Plaintiffs propounded—further production of documents that were produced in irrelevant regulatory matters is neither reasonable nor proportional to the needs of this case. | |
| 1.5 | 4/20/2021 | Plaintiffs' RFP Nos. 3 & 4, request for documents exchanged in related litigation | Intentionally left blank | |
| 1.6 | 4/20/2021 | ESI Search Terms | <u>Joint Statement</u>: On July 23, 2021, the parties jointly updated the Court on progress (and ultimate impasse) in negotiating 23 of 27 disputed ESI Search Terms, Dkt. No. 251, and incorporate that joint statement here by reference. | |
| 1.7 | 4/20/2021 | ESI Custodians | Intentionally left blank | |
| 1.8 | 4/20/2021 | Plaintiffs' RFP No. 8B (docs received or authored by officers and directors if related to data privacy) | <u>Plaintiffs' Position</u>: On May 10, 2021, the Court ordered Google to provide documents (by June 15, 2021) authored or received by officers or directors if related to Chrome privacy, using the search string <Chrome w/50 "data privacy"> to locate relevant documents. Dkt. No. 181-1. On June 8, 2021, the Court clarified the definition of "officer or director," and modified the search string to <Chrome w/50 privacy>. Dkt. No. 220-1. Google represents that it has produced documents located by the original search string, but has not yet completed production of officer and director documents located with the revised string. <br><u>Google's Position</u>: On June 11, 2021, Google produced documents that were collected pursuant to the Court's May 10 order (Dkt. 181-1). Google is nearing completion of the review of the additional documents it has collected and searched pursuant to the Court's June 8 order (Dkt. 220-1). | |
| 1.9 | 4/20/2021 | Plaintiffs' RFP Nos. 14 & 20 (certain draft docs; documents related to the "White Paper," see FAC ¶¶ 81-86 | Intentionally left blank | |
| 1.10 | 4/20/2021 | Plaintiffs' RFP Nos. 9-13, 15, 17, 19, 21, 23-25. | Intentionally left blank | |

| No. | Date Submitted | Dispute | Status as of 8/2/21 Joint Submission | Status as of 8/16/21 Hearing |
|---|---|---|---|---|
| 1.11 | 8/2/2021 | Privilege Logs | **Plaintiffs' Position**: Section 12 of Your Honor's Civil and Discovery Referral Matters Standing Order requires privilege logs to be produced within 14 days of the due date for discovery responses, absent agreement of the parties. The standing order does not address rolling productions, however, and Plaintiffs request time at the hearing to discuss the Court's expectations regarding timing of privilege logs in the context of a rolling production. **Google's Position**: Google is prepared to discuss the Court's expectations regarding the timing of the service of privilege logs for rolling productions for both parties. Due to the large volume of documents that Google is reviewing and producing, with respect to any documents for which there is a substantial completion deadline agreed to by the parties or set by the Court, Google submits that the parties should agree to a deadline consistent with the volume of the review. Since the amount of time required to prepare the privilege log will be dependent on the amount of documents reviewed, and since the parties have not yet discussed this issue, there is no dispute that is ripe for Court intervention with respect to privilege logs. | |
| 1.12 | 8/2/2021 | Depositions – matters protected by NDAs | **Plaintiffs' Position**: At two recent depositions of Plaintiffs, Google has inquired into subject matter potentially protected by confidentiality agreements, including for example settlement of past litigation. Google has taken the position that even if the information is covered by the agreement, Google can force the deponent to disregard his or her contractual obligations, or at least "assume and expect that whatever confidentiality clause there was in there had an exception for [depositions]." Counsel added, "[a]nd if it didn't, it is not my problem." Counsel for Google, July 22, 2021 Deposition of Elaine Crespo (rough transcript) at 204:11-14. Plaintiffs disagree. Because additional plaintiff depositions are scheduled in the near future, Plaintiffs seek the Court's guidance on this issue. **Google's Position**: Plaintiffs have not presented any evidence or authority that demonstrates that the information Google sought during the depositions of named plaintiffs was not discoverable under Federal Rule of Civil Procedure 26. Indeed, several courts have rejected the argument that subject matter protected by confidentiality agreements is not discoverable, concluding instead that "[c]onfidentiality agreements do not bar discovery, and a general interest in protecting confidentiality does not equate to privilege." *In re Application of O'keeffe*, 2016 WL 2771697, at *4 (D. Nev. Apr. 4, 2016) (collecting cases), see also *Pia v. Supernova Media, Inc.*, 2011 WL 6069271, at *1 (D. Utah Dec. 6, 2011) (compelling plaintiff to answer deposition questions he previously refused to answer based on confidentiality agreements which he ha[d] failed to produce and noting that "information and documents are not shielded from discovery merely because they are confidential"). | |
| 1.13 | 8/2/2021 | Clean-Room Access | **Plaintiffs' Position**: Plaintiffs for some time have requested expert access to a "clean room" to view plaintiff and other data in the native environment, in the same way that Google sees it. Plaintiffs have also repeatedly requested the production of Plaintiff information that Google collects about them, including data dictionaries and protos sufficient for Plaintiffs to ascertain what has been collected, stored and how it can be searched. Clean room access is the most efficient way to produce this information as well. **Google's Position**: This dispute is not ripe. Plaintiffs have not served any discovery request for clean room access. In any event, clean room access is neither feasible nor proportional to the needs of the case and should not be ordered where other, less-invasive, discovery pathways exist. In this case, Google has already produced thousands of pages in response to Plaintiffs' discovery requests for data. Plaintiffs should analyze that information to identify any purported gaps, prior to requesting further discovery. | |

Case No. 5:20-cv-5146-LHK-SVK
JOINT SUBMISSION IN RESPONSE TO DKT. 220

| No. | Date Submitted | Dispute | Status as of 8/2/21 Joint Submission | Status as of 8/16/21 Hearing |
|---|---|---|---|---|
| 1.14 | 8/2/2021 | Cross-Use Protocol | Plaintiffs' Position: As directed by the Court, the parties in *Brown* and *Calhoun* have been jointly negotiating a protocol to govern cross-use of certain discovery between the two cases.  Google originally only proposed that documents from overlapping ESI custodians be produced in both cases, which the Court said was the "minimum" and directed to the parties to continue negotiations.<br><br>The parties almost reached full agreement on cross-use, but there are four points of dispute that remain where the parties are at an impasse, and now respectfully seek an order from the Court.  Exhibit A (Plaintiffs' proposed protocol) and Exhibit B (Google's proposed protocol) are attached; Exhibit C is a redline showing the differences. Plaintiffs respectfully request that the Court enter Exhibit A for the reasons stated below. At 11:22 pm pacific, 2: 22 am eastern on 8/4/21, Google first provided its insert on these issues.  Plaintiffs attempt to address these issues this evening, but reserve the right to submit an additional response in the morning, given the complexities of negotiating these matters across the two cases at these late hours.  Plaintiffs also suggest the court impose deadlines by which the parties must provide substantive positions on filing days, at a minimum by 3 pm pacific.  No one is providing his/her best work or reaching reasonable compromises at these hours.<br><br>***First***, there is no reason to add Google's Paragraph 5.  Google refuses to cross-produce documents related to "regulatory productions" or "other litigation" until the receiving party deems "resolved" all related pending disputes.  Similarly, Google refuses to cross-produce the officer and director documents until all related disputes are deemed "resolved."  Google thus admits the relevance but attaches a facially absurd demand.  Plaintiffs' version omits this section completely.<br><br>***Second***, there is no reason to include Google's discovery of individual Plaintiffs in the two different cases in this cross-use order, as Google proposes in paragraphs 7 and 8.  What the Incognito Plaintiffs searched for on the Chrome browser has no bearing on the Sync Plaintiffs' case and vice versa.  This is a further intrusion on their privacy.  Google's intrusive discovery demands have already caused people to withdraw from serving as a class representatives.<br><br>***Third***, Google's insistence on mandatory joint depositions, no matter what, is deeply prejudicial to Plaintiffs. Plaintiffs can agree that depositions of overlapping custodians are mandatory, but only after Google substantially completes production of documents for that witness.  The cases have very different fact discovery deadlines, with different class certification schedule. Google's document production in each case is neither complete nor consistent across the two.  Plaintiffs have attempted to meet Google half-way by proposing numerous alternatives: requiring pre-notice of any deposition and a required meet-and-confer; or that Google retain the right to ask the Court to order a joint deposition; and even proposed accepting a mandatory joint deposition once Google certified substantial completion of the production of documents from the proposed witness.  Google rejected all of these offers of compromise, insisting on mandatory joint depositions with just ten days' notice and no promise that document production for those deponents be substantially complete. Where new documents are produced after an initial deposition, any "duplicative" testimony will be the product of Google's actions, an appropriate incentive | |

| No. | Date Submitted | Dispute | Status as of 8/2/21 Joint Submission | Status as of 8/16/21 Hearing |
|-----|----------------|---------|--------------------------------------|------------------------------|
|     |                |         | for Google to produce documents timely.  And while Google complains about the timing of production, Google's failure to engage in meaningful meet and confers on these issues for months is the primary cause for any time crunch. |  |

*Fourth*, to permit enough time to question witnesses during any joint depositions, Plaintiffs reasonably propose 12 hours for joint depositions.  Google proposes that joint depositions be limited to 9 hours, rather than the 14 hours that would be allowed if the witness were deposed separately in each case.  These are two very different cases, involving non-overlapping class definitions, and it is unfair to just assume that most of the questions would overlap.  Plaintiffs' previous offer of 10 hours was in the context of multiple other concessions on disputed issues, all of which Google rejected, and the parties had not discussed whether 10 hours would take place in a single day.

*Fifth*, at 11:22 pm pacific, 2:22 am eastern, Google has introduced a new paragraph to this submission objecting to Plaintiffs' ability to confer about the joint depositions Google demands.  The case Google cites at the eleventh hour is plainly off point, because there the defendant was not insisting that the parties seeking to share the discovery take joint depositions.  *Beavers-Gabriel v. Medtronic, Inc.* 2014 WL 7882099 at *2 (D. Haw. June 20, 2014).  It is also out of step of the common practice regarding joint depositions and highlights the difficult position Google seeks to put Plaintiffs in. Google has repeatedly and aggressively sought confirmation in this litigation that Plaintiffs' counsel have not shared information with each other (such as the names or number of custodians), while simultaneously demanding that Plaintiffs' counsel coordinate on merits discovery (such as demanding agreement from Calhoun counsel to participate in a 30b6 deposition without even providing the notice or the topics of the deposition).  Google's demands portend a new sideshow, ironically about the very coordination Google insist must occur, governed by Google's rules.  Plaintiffs ask that the Court make clear that Google cannot put them in a "gotcha" position of discussing the testimony each seeks to solicit, or refrain from, in the proposed joint depositions only to find themselves accused of violating Google's unilateral confidentiality designations.

Plaintiffs therefore respectfully request that the Court enter Plaintiffs' Proposed Protocol (Exhibit A).  If the Court believes that the joint deposition issue could use further negotiation, Plaintiffs respectfully request that the Court enter the cross-use protocol with the joint deposition section removed, and order Google to promptly produce documents.

Google's Position:

    1. *Timing of Productions.* Plaintiffs' proposal fails to take into account that cross-use productions are logistically difficult and require more time. Furthermore, Plaintiffs' proposed order creates arbitrary deadlines that Google has explained to Plaintiffs are not feasible. Google intends to make cross-productions available without delay, but a certain lead time is required to prevent errors. Google and its vendors need sufficient time, as proposed, to parse out documents qualified for production under cross-use, to move the selected documents to a different database, Bates stamp documents specifically under cross-use, and prepare the new set of documents for

| No. | Date Submitted | Dispute | Status as of 8/2/21 Joint Submission | Status as of 8/16/21 Hearing |
|-----|----------------|---------|--------------------------------------|------------------------------|
| | | | production. Consistent with these considerations, Google can agree to the following: (1) releasing future cross-use productions to their vendor simultaneously; and (2) releasing past productions to the vendor within ten (10) business days of the entry of the cross-use Order.  This proposal will ensure that the productions happen without delay.<br><br>    2. *Productions for Unresolved Disputes.* The parties disagree on whether compromise productions on one issue should be subject to cross-production even though there are live, non-resolved disputes on the same issue in the other matter. Google agrees to reproduce documents that were produced as a result of compromise or Court order in one matter, but the receiving party in the second matter should not be allowed to argue or file motions arguing over a substantially similar issue in the hopes of receiving more. Any other arrangement would allow for gamesmanship whereby one party agrees to resolve a dispute in exchange for a more limited compromise production, while the other takes the dispute to the Court in the hopes of obtaining more relief—with no risk because it has already received the compromise production through cross-use.  It would be inefficient and inequitable to allow a re-do for discovery matters that have previously been argued and settled. Google does not, as Plaintiffs state, concede that "regulatory productions" or "director/officer documents" are relevant. Google's position is that it should not have to go through the exercise of determining the relevance of these documents for purposes of cross-use if Plaintiffs cannot agree to drop disputes related to substantially similar issues.<br><br>    3. *Plaintiffs' Discovery Responses.* Plaintiffs demand that Google produce its discovery responses across both matters, but at the same time refuse to agree that their discovery responses should also be served in both matters. The Named Plaintiffs in each case are putative class members in the other case; therefore, efficiency and justice requires cross-use of Plaintiffs' discovery responses.<br><br>    4. *Deposition Attendance.* Plaintiffs insist that the "parties in both Matters may attend depositions in either Matter" regardless of whether the deposition is defined as joint under the cross-use agreement. There is no need for this provision. For good reason: if a deposition is not joint, there is no reason for attorneys in the other matter to attend. This  demand is both opportunistic and prejudicial to Google, which will receive none of the efficiency benefits under cross-use if the provision is adopted.<br><br>    5. *Joint Depositions of Overlapping Custodians.* Plaintiffs' description of their third point mischaracterizes the history of the parties' meet and confer efforts and leaves out many concessions made by Google during this process, such as agreeing to exclude Rule 30(b)(6) depositions from the agreement entirely. Plaintiffs also omit their refusal to include  joint depositions in the same agreement as cross-use until approximately July 16, 2021, which is the reason the parties have not been able to finalize a proposed order, despite joint depositions appearing (i) as a provision in the cross-use proposed order that Google submitted to the Court on June 1, 2021 as well as (ii) in the sample cross-use agreements Plaintiffs have identified.<br><br>Importantly, the purpose of a cross-use and joint deposition agreement is to provide efficiency and cost-effectiveness for both the Court and the parties. The goal of that agreement would be defeated by building in requirements of pre-notice, mandatory meet and confers, and for Google to bring a motion every time it seeks a | |

| No. | Date Submitted | Dispute | Status as of 8/2/21 Joint Submission | Status as of 8/16/21 Hearing |
|---|---|---|---|---|
| | | | joint deposition. Plaintiffs' substantial completion proposal is an illusory one, particularly where (i) the *Brown* plaintiffs are proposing a deadline of October 1 to finish identifying search terms, and (ii) there is an outstanding search term dispute in *Calhoun* that will undoubtedly affect substantial completion in that action. These unknowns make it virtually impossible to certify further substantial completion (in either or both cases) over the next few weeks and potentially months, while depositions are simultaneously being noticed and scheduled.<br><br>Joint depositions of overlapping custodians should be required as a matter of course. Plaintiffs should not, as of right, be able to re-depose the same witness.  Forcing witnesses to sit for two depositions and answer very similar (if not identical) questions in related cases with overlapping custodians is unreasonably duplicative. *See Allstate Ins. Co v. ASKO Appliances Inc*, 2011 U.S. Dist. LEXIS 125659, at *5 (N.D. Cal. Oct. 31, 2011) (a court "must limit the frequency or extent of discovery" if  "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive"). Given that most fact depositions have yet to be scheduled, requiring joint depositions for overlapping custodians would not interfere with any current existing discovery schedules and would likely push forward discovery at a quicker pace in both cases. Accordingly, Google believes to the extent that a deposition notice involves any Overlapping Custodians, Plaintiffs in the second matter should either join the notice within ten (10) days of service or be foreclosed from deposing that individual at a later time.<br><br>      6. *Joint Depositions Should be Limited to 9 Hours on the Record.* In the interest of compromise, Google can agree to extend the deposition limit from seven to nine hours on the record. Anything else would be extremely burdensome and unjust to the witnesses.  It is extremely demanding to appear on the record for more than nine hours (likely a 11 to 12 hour day after breaks), the ability of fact witnesses to provide thoughtful and coherent answers to questions after more than nine hours on the record would decline.  Moreover, it appears Plaintiffs have reversed course on this issue, bringing the parties even further apart than where they stood just days prior: Plaintiffs were willing to accept 10-hour depositions (as recently as July 28), however, the proposal they made a few hours prior to this filing suggests that they are now insisting on 12-hour depositions.<br><br>      7. *Sharing of Google's Confidential Information Among Plaintiffs.* Plaintiffs should be allowed to discuss Google's confidential documents produced in one case but not the other only if, in good faith, they believe such documents are necessary to prepare for a joint deposition. Plaintiffs' proposal that they be able to "review any documents produced in either Matter" as long as they are "consider[ing]" taking a joint deposition would unfairly give them unfettered discretion to share sensitive documents. The unfettered disclosure provisions Plaintiffs seek would expose confidential and highly confidential material to more eyes and increase the risk of inadvertent disclosure with little benefit. Sharing provisions already "significantly increase the risk of disclosures that could harm Defendants' proprietary interests." *Beavers-Gabriel v. Medtronic, Inc.*, 2014 WL 7882099, at *2  (D. Haw. June 20, 2014) ("Defendants have demonstrated good cause to issue a protective order to limit the use of confidential discovery materials to this litigation only"). Google's proposed provision on sharing of confidential information is tailored and reasonable. | |

| No. | Date Submitted | Dispute | Status as of 8/2/21 Joint Submission | Status as of 8/16/21 Hearing |
|---|---|---|---|---|
| | | | Google respectfully requests that the Court decide the issues of document cross-use and joint depositions together as, from Google's perspective, the two issues go hand in hand. If cross-use of documents is not coupled with joint depositions, discovery coordination would be rendered to an opportunistic way to expand the scope of discovery rather than a tool to minimize burden and add efficiency to the discovery process. Moreover, Google received Plaintiffs' revisions to the protocol for cross-use mere hours before the filing deadline for this submission (which reveal more than the "four" points of contention identified in their statement). Google is reviewing Plaintiffs' recent changes and requests an opportunity to  address any further issues at the August 12, 2021 hearing.<br><br>Google received Plaintiffs' additional inserts at 12:06 AM PT on August 3, 2021.  Given the late hour, Google reserves the right to submit additional materials on this dispute. | |
| **Disputes Identified by Google** | | | | |
| 2.1 | 2/17/2021 | Google's Motion for Protective Order Against Suspending Ordinary Log Retention Policies | <u>Joint Position:</u> The parties have scheduled the third 30(b)(6) deposition of Google, pursuant to the Court's May 13, 2021. (Dkt. No. 192-1). | |
| 2.2 | 4/20/2021 | Timing of Named Plaintiffs' depositions. | RESOLVED. | |
| 2.3 | 4/20/2021 | Plaintiffs' device preservation, as it relates to Google's Request for Production No. 1, production, and use of a review protocol. | <u>Google's Position:</u> It has been two months since Plaintiffs represented to the Court and Google that "efforts are underway" for completing the imaging of the devices of new plaintiffs (Dkt. No. 206) and yet, they have still not finished imaging the devices of at least one plaintiff. Plaintiffs have refused to inform Google who the remaining plaintiff is, which is troublesome given that Mr. Henry's deposition is scheduled for next week and Plaintiffs still have not produced his Chrome settings. Plaintiffs finally committed to a certain date range for imaging the devices of the unnamed plaintiff on the day of filing. Google reserves its right to seek assistance from the Court if Plaintiffs continue to delay or if the delay results in the loss or destruction of responsive documents.<br><u>Plaintiffs' Position:</u> Plaintiffs have forensically imaged devices containing relevant ESI for all but two plaintiffs. One is withdrawing, and Google has stipulated to his dismissal today (the date of this joint submission). The imaging of the final remaining plaintiff's devices has been delayed due to a family emergency. Plaintiffs are working to image his devices this week. | |
| 2.4 | 4/20/2021 | Google's Requests for Production No. 2. | <u>Google's Position:</u> In the last joint discovery status chart, Plaintiffs represented that "they anticipate providing the information responsive to RFP No. 2 after completing imaging of Plaintiffs' Chrome devices." (Dkt. No. 206). Remarkably, Plaintiffs now claim for the first time in this submission that they already produced some responsive information in January. But Google has informed Plaintiffs since at least May 26, 2021 that it seeks Chrome settings in response to this RFP, which Plaintiffs only started producing the day of this filing but for a subset of Named Plaintiffs. Plaintiffs' obfuscation and misstatements concerning Google's productions do not change that they failed to produce the requested information  for the remaining new Plaintiffs, despite Google propounding the same RFP over 3 months ago.  Indeed, Google still does not have Chrome settings for Mr. Henry, whose deposition is scheduled for next week.  Google continues to be unduly prejudiced by Plaintiffs' delay in producing | |

Case No. 5:20-cv-5146-LHK-SVK

JOINT SUBMISSION IN RESPONSE TO DKT. 220

| No. | Date Submitted | Dispute | Status as of 8/2/21 Joint Submission | Status as of 8/16/21 Hearing |
|---|---|---|---|---|
| | | | this crucial information, particularly in light of these ongoing depositions of the plaintiffs (as well as the September 2, 2021 deadline for Plaintiffs to move for class certification, and Google's October 21, 2021 deadline to oppose such motion). Because the parties have reached an impasse on this issue, Google requests that the Court order Plaintiffs to produce this information by no later than August 19, 2021.<br>Plaintiffs' Position: The parties have not reached impasse on this issue, indeed nor is there even a bona fide dispute. Plaintiffs began producing documents responsive to RFP No. 2 in January before Google produced any documents, and even before entry of the ESI Protocol, starting with the HTTP logs cited in the complaint.  Plaintiffs have now produced eight volumes of ESI, with a ninth volume on track for this week, consisting of more than 28,000 pages of documents, which until recently had even outpaced Google's production of non-public documents.  In addition, Google has decided to depose all plaintiffs prior to the class certification motion and at Google's request, Plaintiffs have prioritized production of documents in the order of deposition. Thus, Ms. Jackson's emails were produced first, followed by Dr. Kindler's, and then Mr. Calhoun's, always with an effort to produce them on the expedited schedule imposed by Google. | |
| 2.5 | 4/20/2021 | Google's Interrogatory No. 2. | RESOLVED. | |
| 2.6 | 4/20/2021 | Google's Interrogatory No. 4. | RESOLVED. | |
| 2.7 | 4/20/2021 | Google's Requests for Production Nos. 3 and 5. | Google's Position:  Google's RFP No. 5 requests documents reflecting Plaintiffs' alleged harm. Although Plaintiffs respond that they "will disclose relevant damages expert disclosures" and are "further investigating whether any documents responsive to this request exist aside from any that will be the subject of expert discovery," Google is not aware of any such documents having been produced or the results of Plaintiffs' inquiry.  Google reserves the right to seek to preclude Plaintiffs from relying on factual information not timely disclosed during fact discovery.<br>Plaintiffs' Position: There is no dispute here, and it is unclear what Google complains of.  As has been stated in correspondence and during meet and confers, Plaintiffs will serve damages expert disclosures in accordance with the schedule set by the Court and are further investigating whether any documents responsive to this request exist aside from any that will be the subject of expert discovery. If they do, Plaintiffs will promptly collect and review such materials for production. While Google's production continues to be ongoing and the apparent scope and level of potential damages is ever expanding, Plaintiffs are working to complete any remaining follow-up on this issue in time to report to the court at the next discovery conference. | |
| 2.8 | 4/20/2021 | Google's First Set of Requests for Admission Nos. 1a and 1b. | Joint Position: On June 8, 2021, Plaintiffs submitted responses to Google's Amended Requests for Admission Nos. 1a and 1b. There is currently no outstanding dispute with respect to these requests. | |
| 2.9 | 4/20/2021 | Google's Second Set of Requests for Admission Nos. 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, and 13 | Joint Position: There are currently no outstanding disputes with respect to Google's Second Set of Requests for Admission. | |

| No. | Date Submitted | Dispute | Status as of 8/2/21 Joint Submission | Status as of 8/16/21 Hearing |
|---|---|---|---|---|
| 2.10 | 4/20/2021 | Google's Second Set of Interrogatories Nos. 6, 7, 8, and 9. | RESOLVED. | |
| 2.11 | 5/24/2021 | Plaintiffs' Amended Response to Google's First Set of Interrogatories No. 5. | RESOLVED. | |
| 2.12 | 8/2/2021 | Plaintiffs' Response to Google's Amended Interrogatory No. 7 | Google's Position: Google's Amended Interrogatory No. 7 asks that Plaintiffs describe with particularity (i) how Google "intentionally misrepresented the privacy settings of Chrome" as alleged in paragraph 424 of the Amended Complaint, (ii) the documents or location in which Google's alleged intentional misrepresentations appear, (iii) whether Plaintiffs in fact reviewed each alleged intentional misrepresentation, and if so (iv) when they did so, and whether they relied on each alleged misrepresentation in using Chrome without its sync feature enabled. This Interrogatory seeks highly relevant information.  Indeed, "the Court has consistently required allegations of actual reliance and injury at the pleading stage for claims under *all three prongs* of the UCL where such claims are premised on misrepresentations," as Plaintiffs' claim is here. *Backhaut v. Apple, Inc.*, 74 F.Supp.3d 1033, 1048 (N.D. Cal. 2014) (Koh, J.); *see also* First Amended Compl. ¶ 415 ("Google also misrepresented its privacy practices by disguising third-party tracking cookies as first-party tracking cookies). Plaintiffs cannot escape the fact that they have framed this case as based on Google's alleged knowing, affirmative misrepresentation (*i.e.*, fraud) in the Chrome Privacy Notice. *See, e.g.*, 67 (MTD Opp.), at 1 (asserting that the Complaint "relies on a direct misrepresentation [by Google] as opposed to only an omission theory"). In response to Rog 7, Plaintiffs  referred Google to the entirety of their 85-page Complaint, which does not answer the questions posed. Because the parties have reached an impasse on this issue, Google requests that the Court order Plaintiffs to provide a particularized response to this Interrogatory. <br><br>Plaintiffs' Position:  Plaintiffs originally pled all three prongs of a UCL claim. In the Amended Complaint, Plaintiffs removed the "fraudulent" prong, which was the only reliance-based claim in the case, in part hoping to streamline discovery. Google's inquiry into any reliance on Google's intentional misrepresentations is thus no longer relevant to the case, and Plaintiffs asked Google to withdraw ROG No. 7. Google did not, Plaintiffs preserved appropriate objections, and the parties will need to confer to determine if a mutually agreeable approach is possible.  In its section above, Google argues that reliance is still an element of the remaining UCL claims, based on Judge Koh's *Backhaut v. Apple, Inc.* decision, but this is a willful misreading of *Backhaut*. Citing *Kwikset Corp. v. Superior Court*, 120 Cal. Rptr.3d 741, 246 P.3d at 888, Judge Koh held: "In line with this authority, this Court has concluded 'that the actual reliance requirement also applies to claims under the UCL's unfair prong *to the extent such claims are based on fraudulent conduct*.'" *Backhaut*, 74 F. Supp. 3d at 104 (emphasis added). The amended complaint does not allege fraud, and thus reliance is not an element of any claim in the case. | |

Case No. 5:20-cv-5146-LHK-SVK

JOINT SUBMISSION IN RESPONSE TO DKT. 220

1

2

3   **BLEICHMAR FONTI & AULD LLP**

4   By:   /s/ Lesley Weaver
    Lesley Weaver (Cal. Bar No. 191305)
5   Angelica M. Ornelas (Cal. Bar No. 285929) Joshua
    D. Samra (Cal. Bar No. 313050)
6   555 12th Street, Suite 1600
    Oakland, CA 994607
7   Tel.: (415) 445-4003
    Fax: (415) 445-4020
8   lweaver@bfalaw.com
    aornelas@bfalaw.com
9   jsamra@bfalaw.com

10  **DICELLO LEVITT GUTZLER**

11  By:  /s/ David A. Straite
    David A. Straite (admitted *pro hac vice*)
12  One Grand Central Place
    60 East 42nd Street, Suite 2400
13  New York, New York 10165
    Tel.: (646) 933-1000
14  dstraite@dicellolevitt.com

15  Amy E. Keller (admitted *pro hac vice*)
    Adam Prom (admitted *pro hac vice*)
16  Ten North Dearborn Street, 6th Fl.
    Chicago, Illinois 60602
17  Tel.: (312) 214-7900
    akeller@dicellolevitt.com

18  **SIMMONS HANLY CONROY LLC**

19
    By:  /s/ Jay Barnes
20  Jason 'Jay' Barnes (admitted *pro hac vice*)
    An Truong (admitted *pro hac vice*)
21  Eric Johnson (admitted *pro hac vice*)
    112 Madison Avenue, 7th Floor
22  New York, NY 10016
    Tel.: (212) 784-6400
23  Fax: (212) 213-5949
    mbreit@simmonsfirm.com
24  jaybarnes@simmonsfirm.com

25  *Counsel for Plaintiffs*

26

27

28

Respectfully,

**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**

By:   /s/ Andrew H. Schapiro
Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel: (312) 705-7400
Fax: (312) 705-7401

Stephen A. Broome (CA Bar No. 314605)
stephenbroome@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: (213) 443-3000
Fax: (213) 443-3100

Jomaire Crawford (admitted *pro hac vice*)
jomairecrawford@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Tel: (212) 849-7000
Fax: (212) 849-7100

Josef Ansorge (admitted *pro hac vice*)
josefansorge@quinnemanuel.com
1300 I Street NW, Suite 900
Washington D.C., 20005
Tel: (202) 538-8000
Fax: (202) 538-8100

Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: (415) 875-6600
Fax: (415) 875-6700

*Counsel for Defendant*

**ATTESTATION OF CONCURRENCE**

I am the ECF user whose ID and password are being used to file this Joint Submission in Response to Docket No. 220. Pursuant to Civil L.R. 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in the filing of this document.

Dated: August 2, 2021                                 By:   */s/ Andrew H. Schapiro*
                                                                     Andrew H. Schapiro