# EXHIBIT B

**BLEICHMAR FONTI & AULD LLP**
Lesley Weaver (Cal. Bar No.191305)
Angelica M. Ornelas (Cal. Bar No. 285929)
Joshua D. Samra (Cal. Bar No. 313050)
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
*lweaver@bfalaw.com*
*aornelas@bfalaw.com*
*jsamra@bfalaw.com*

**SIMMONS HANLY CONROY LLC**
Mitchell M. Breit (admitted *pro hac vice*)
Jason 'Jay' Barnes (admitted *pro hac vice*)
An Truong (admitted *pro hac vice*)
Eric Johnson (admitted *pro hac vice*)
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel.: (212) 784-6400
Fax: (212) 213-5949
*mbreit@simmonsfirm.com*
*jaybarnes@simmonsfirm.com*
*atruong@simmonsfirm.com*
*ejohnson@simmonsfirm.com*

**DICELLO LEVITT GUTZLER LLC**
David A. Straite (admitted *pro hac vice*)\
One Grand Central Place
60 E. 42nd Street, Suite 2400
New York, NY 10165
Tel.: (646) 993-1000
*dstraite@dicellolevitt.com*

Amy E. Keller (admitted *pro hac vice*)
Ten North Dearborn Street
Sixth Floor
Chicago, IL 60602
Tel.: (312) 214-7900
*akeller@dicellolevitt.com*

*Counsel for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION**

| | |
|---|---|
| PATRICK CALHOUN, et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 5:20-cv-5146-LHK-SVK<br><br>**PLAINTIFFS' AMENDED RESPONSES AND OBJECTIONS TO DEFENDANT'S SECOND SET OF INTERROGATORIES** |

**PLAINTIFFS' AMENDED RESPONSES AND OBJECTIONS TO DEFENDANT'S SECOND SET OF INTERROGATORIES (NOS. 6-9)**

Pursuant to Federal Rules Civil Procedure 26 and 33, Plaintiffs Patrick Calhoun, Elaine Crespo, Hadiyah Jackson, and Claudia Kindler (collectively, "Plaintiffs"), by and through their undersigned counsel, provide this amended responses and objections to Defendant Google LLC's ("Google") Second Set of Interrogatories as follows:

**PRELIMINARY STATEMENT**

Plaintiffs incorporate by reference the Preliminary Statement set forth in their Responses and Objections to Defendant's Second Set of Interrogatories (Nos. 6-9) dated March 12, 2021.

**AMENDED OBJECTIONS AND RESPONSES TO INTERROGATORIES**

**INTERROGATORY NO. 6:**

Describe with particularity the basis for YOUR alleged understanding that using the Chrome browser without the Sync feature enabled would prevent Google from receiving DATA from its SERVICES, including by identifying the specific statements by GOOGLE that YOU allege contributed to YOUR alleged understanding, the documents or locations in which those statements appeared, whether YOU in fact reviewed the statements, if so when YOU did so.

**ORIGINAL RESPONSE:**

Plaintiffs incorporate the above Preliminary Statement as though fully set forth herein.

Plaintiffs object that the phrase "prevent GOOGLE from receiving information through its SERVICES" is vague and ambiguous. The Interrogatory does not clarify whether "prevent" refers to a legal prohibition or a technical barrier, for example, which could make it physically or practically impossible to receive the information.

Plaintiffs also object that the term DATA is vague, ambiguous, and misleading. As defined by Google, DATA means "the data or information that YOU allege GOOGLE improperly received in Paragraph 4 of the COMPLAINT, including 'IP address linked to user agents'; '[u]nique persistent cookie identifiers;' '[u]nique browser identifiers'; and '[b]rowsing history.'" However, Paragraph 4 only provides a list of four examples of Personal Information ("PI"), and it is unclear whether Google intended to limit this Interrogatory to these four examples, or PI more broadly.

Plaintiffs also object to the definition of "SERVICES" as vague, ambiguous, overly broad, unduly burdensome, and purposefully confusing. Google defines "SERVICES" in these Interrogatories to be "services that GOOGLE provides to websites and through which YOU allege GOOGLE 'intercepted' YOUR COMMUNICATIONS." However, Plaintiffs' contracts with Google relate to services that Google provides to consumers, including Chrome – which is the specific Google service that Plaintiff was using at all times relevant to this case. Further, the definition of "SERVICES" conflicts with Google's use of the term "SERVICES" in the Google Privacy Policy. The Google Privacy Policy does not define what it means by SERVICES to consumers. Instead, it (1) identifies "Chrome & the Chrome Operating System" as a "specific Google service" for which a user can review its "privacy notice" for "additional information[;]" and (2) informs users that the "My Activity" tool "allows you to review and control data that's created when you use Google services[.]" Compl., Ex. 16 at 9. But when a user goes to the "My Activity" page, no user activity in the purported "SERVICES" Google defines are presented for review. As properly understood, for consumers, the term "SERVICES" does not include Google Analytics or Google Ads, and instead is limited to consumer services such as Gmail, search requests directly at Google.com, and the use of Chrome. To the extent that Google persists in attempting to assert this misleading definition of "SERVICES" upon discovery in this case, Plaintiffs reserve the right to amend the Complaint to allege this misleading definition as another example for their claim for breach of the duty of good faith and fair dealing.

Plaintiffs also object to the extent that Plaintiffs' individual understanding is not relevant to any claim or defense in this case.

Plaintiffs also object on vagueness grounds because Google does not specify whether it is inquiring into what Plaintiffs understood at the time of first using Chrome, or instead their investigation into their claims into this Action, or something in between. To the extent Google is seeking information about Plaintiffs' investigation of claims in this case, Plaintiffs further object on privilege and work product grounds.

Subject to the foregoing objections, at the time that Plaintiffs downloaded and began using Chrome, Plaintiffs respond that they believed, based on reasonable expectations, that their personal

- 3 -

information, including the content of their internet communications, would not be sent to Google when they were exchanging communications with persons and entities other than Google. Consistent with their reasonable expectations, Plaintiffs further assert that Google never gave them any reason to believe that Chrome was designed to redirect their personal information to Google even when they were on non-Google websites while using Chrome in an unsynced state. In addition, Plaintiffs never authorized Chrome to redirect their personal information on non-Google websites to Google while they were using Chrome in an unsynced state. Plaintiffs had no reason to believe that Google would obtain their personal information from non-Google websites in the scope and amount that Plaintiffs are beginning to understand has occurred. Plaintiffs' discovery and investigation of Google's actions is ongoing, and Google has not fully disclosed its collection and use of Plaintiffs' personal information.

Without waiving attorney client privilege, Plaintiffs further respond that during the investigation of their claims and prior to filing they reviewed the Complaint which cites to relevant provisions and attached various versions of the Google Terms of Service, service-specific terms relating to Chrome and the Google Privacy Policy. Plaintiffs' review of the Complaint and the relevant provisions of the documents attached support and reinforce their reasonable expectations, as stated above.

**AMENDED RESPONSE:**

Subject to their prior responses and objections, and the parties meet and confers, Plaintiffs confirm their objection to Google's definition of "SERVICES," and further that note that in its dealings with consumers, Google itself defines the term "SERVICES" consistent with Plaintiffs' understanding and not the definition offered by Google counsel in this case. The Google Terms of Service uses the phrase "services" 80 times, including 19 hyperlinks to the following definition, "Google services that are subject to these terms are the products and services listed at https://policies.google.com/terms/service-specific, including: Google apps and sites (like Search and Maps); platforms (like Google Play); integrated services (like Maps embedded in other companies' apps or sites); [and] devices (like Google Home)." The complete list on the "service-specific" page does not mention Google Analytics or Google Ads or any of Google's other

- 4 -

publisher or advertiser-oriented services. Third, the "Subscriber Information" sheets that Google has produced thus far for each Plaintiff confirms that no Plaintiff ever used "Google Analytics," "Google Ads," or any other ads products in the "Services" sections of their respective accounts. *See, e.g.* GOOG-CALH-00027550 (Calhoun), 00027552 (Calhoun), 00027555 (Crespo), 00027538 (Jackson), 00027547 (Kindler). Fourth, in stark contrast, the Google Privacy Policy mentions "services" 86 times, but does not specifically define the term at all, much less differently than how it is defined in the contractually binding Terms of Service or Google's own internal "Subscriber Information" sheets that it maintains for each of the Plaintiffs.

Plaintiffs further amend their response to this Interrogatory and note that on April 16, 2021 Plaintiffs filed an Amended Class Action Complaint in which they, among other things, eliminated fraud as a predicate act for their claim under California's Unfair Competition Law. Accordingly, Plaintiffs' "understanding" that using the Chrome browser without the Sync feature enabled would prevent Google from receiving DATA from its SERVICES is not relevant to the operative Complaint, as reliance is not an element of any claim alleged.

- 5 -

*Calhoun, et al. v. Google LLC*, 5:20-cv-5146-LHK-SVK
Plaintiffs' Amended Responses and Objections to Defendant's Second Set of Interrogatories Re: No. 6