**BLEICHMAR FONTI & AULD LLP**
Lesley Weaver (Cal. Bar No.191305)
Angelica M. Ornelas (Cal. Bar No. 285929)
Joshua D. Samra (Cal. Bar No. 313050)
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
*lweaver@bfalaw.com*
*aornelas@bfalaw.com*
*jsamra@bfalaw.com*

**SIMMONS HANLY CONROY LLC**
Jason 'Jay' Barnes (admitted *pro hac vice*)
An Truong (admitted *pro hac vice*)
Eric Johnson (admitted *pro hac vice*)
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel.: (212) 784-6400
Fax: (212) 213-5949
*jaybarnes@simmonsfirm.com*
*atruong@simmonsfirm.com*
*ejohnson@simmonsfirm.com*

**DICELLO LEVITT GUTZLER LLC**
David A. Straite (admitted *pro hac vice*)
One Grand Central Place
60 East 42nd Street, Suite 2400
New York, NY 10165
Tel.: (646) 933-1000
*dstraite@dicellolevitt.com*

Amy Keller (admitted *pro hac vice*)
Adam Prom (admitted *pro hac vice*)
Sharon Cruz (*pro hac vice* pending)
Ten North Dearborn St., Sixth Floor
Chicago, IL 60602
Tel.: (312) 214-7900
*akeller@dicellolevitt.com*
*aprom@dicellolevitt.com*
*scruz@dicellolevitt.com*

*Counsel for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION**

| | |
|---|---|
| PATRICK CALHOUN, et al., *on behalf of themselves and all others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE, LLC,<br><br>Defendant. | Case No. 5:20-cv-05146-LHK-SVK<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL; MEMORANDUM OF LAW IN SUPPORT THEREOF**<br><br>Judge:      Hon. Lucy H. Koh<br>Date:        February 17, 2022<br>Time:        1:30 pm<br>Courtroom: 8, 4th Floor |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

1

## **TABLE OF CONTENTS**

2

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II.   STATEMENT OF ISSUES TO BE DECIDED .................................................. 3

III.  STATEMENT OF FACTS .......................................................................... 3

      A.  Google's Promises in its Contracts and Terms of Services Operate Are Uniform
          And Central to Liability and Google's Consent Defenses ............................... 3

      B.  Google's Conduct in Collecting and Using Date Taken From Users Is Subject to
          Common Proof that Predominates .............................................................. 5

IV.   LEGAL STANDARD ............................................................................... 8

V.    ARGUMENT .......................................................................................... 8

      A.  The Prerequisites of Rule 23(a) Are Met ...................................................... 8

          1.  There are Millions of Class Members ..................................................... 8

          2.  Google's Conduct Is at the Center of the Claims and Defenses, Creating
              Common Questions for All Claims ........................................................ 9

          3.  Plaintiffs' claims are typical of those of the Class ................................... 10

          4.  Plaintiffs and their counsel meet the adequacy requirement. .......................... 11

      B.  The Requirements of Rule 23(b)(3) Are Met ................................................. 12

          1.  Common issues predominate. ............................................................... 12

          2.  Damages Can Be Determined on a Class-Wide Basis .................................. 19

          3.  Class treatment is superior to other forms of adjudication. ........................... 23

      C.  Class Certification is Appropriate Under Rule 23(b)(2) .................................. 25

VI.   CONCLUSION ....................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Aichele v. City of Los Angeles*,
   314 F.R.D. 478 (C.D. Cal. Aug. 26, 2013) .............................................................. 23

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013) ......................................................................................................... 8

*Apple, Inc. v. Samsung Elecs. Co.*,
   2012 WL 2571719 (N.D. Cal. Jun. 30, 2012) ......................................................... 20

*Astiana v. Kashi Co.*,
   291 F.R.D. 493 (S.D. Cal. July 30, 2013) ................................................................ 19

*Avina v. Spurlock*,
   28 Cal.App.3d 1086 (Ct. App. 1972) ........................................................................ 20

*Bona Fide Conglomerate, Inc. v. SourceAmerica*,
   2016 WL 3543699 (S.D. Cal. Jun. 29, 2016) .......................................................... 20

*Briseno v. ConAgra Foods, Inc.*,
   844 F.3d 1121 (9th Cir. 2017) ................................................................................... 24

*Carey v. Piphus*,
   435 U.S. 247 (1978) ...................................................................................................... 20

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013) ........................................................................................................ 19

*Doe v. Chao*,
   540 U.S. 614 (2004) ...................................................................................................... 22

*Ellis v. Costco III*,
   285 F.R.D. 492 (N.D. Cal. 2012) .............................................................................. 23

*Ellis v. Costco Wholesale Corp. II*,
   657 F.3d 970 (9th Cir. 2011) ..................................................................................... 23

*Ellsworth v. U.S. Bank, N.A.*,
   2014 WL 2734953 (N.D. Cal. Jun. 13, 2014) ............................................... 9, 10, 13

*Facebook Privacy Litigation*,
   572 Fed. Appx. 494 (9th Cir. 2014) ........................................................................ 21

*Facebook, Inc. v. Patel*,
   140 S. Ct. 937 (2020) ................................................................................................... 20

*Feller v. Transamerica Life Ins. Co.*,
  2017 WL 6496803 (C.D. Cal. Dec. 11, 2017)..................................................... 9, 10

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*,
  326 F.R.D. 592 (N.D. Cal. 2018) ........................................................................ 8

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998)........................................................................ 12, 24

*In re Anthem, Inc. Data Breach Litig.*,
  2016 WL 3029783 (N.D. Cal. May 17, 2016) ...................................................... 21

*In re Facebook Biometric Info. Priv. Litig.*,
  326 F.R.D. 535 (N.D. Cal. 2018) ........................................................................ 8

*In re Facebook Internet Tracking Litig.*,
  956 F.3d 589 (9th Cir. 2020).......................................................................... 14, 21

*In re Facebook, Inc. Cons. Priv. User Prof. Litig.*,
  402 F. Supp. 3d 767 (N.D. Cal. 2019)................................................................ 16

*In re Facebook, Inc., Cons. Priv. User Prof. Litig.*,
  402 F. Supp. 3d 767 (N.D. Cal. 2019)................................................................ 10

*In re Google Cookie*,
  806 F.3d 125 (2015) ........................................................................................ 14

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (Cal. 2009) ............................................................................. 18

*In re Whirlpool Corp. Front–Loading Washer Products Liab. Litig.*,
  722 F.3d 838 (6th Cir.2013)............................................................................. 18

*Ion Equipment Corp. v. Nelson*,
  110 Cal.App. 3d 868 (1980).............................................................................. 20

*Jacob v. Duane Reade, Inc.*,
  293 F.R.D. 578 (S.D.N.Y. 2013)....................................................................... 18

*Jacob v. Duane Reade, Inc.*,
  602 Fed. Appx. 3 (2d Cir. 2015) ....................................................................... 18

*Jimenez v. Allstate Ins. Co.*,
  765 F.3d 1161 (9th Cir. 2014)......................................................................... 18, 19

*Larson v. John Hancock Life Ins. Co.*,
  2017 WL 4284163 (Cal. Super. Mar. 23, 2017).................................................. 11

*Leyva v. Medline Ind., Inc.,*
   716 F.3d 510 (9th Cir. 2013)..............................................................19

*Lilly v. Jamba Juice Co.,*
   308 F.R.D. 231 (N.D. Cal. 2014) ......................................................18

*Marsu, B.V. v. Walt Disney Co.,*
   185 F.3d 932 (9th Cir. 1999).............................................................22

*Morgan v. U.S. Soccer Fed'n, Inc.,*
   2019 WL 7166978 (C.D. Cal. Nov. 8, 2019) ....................................9

*Motors, Inc. v. Times Mirror Co.,*
   102 Cal.App.3d 735 (1980)................................................................19

*Mullins v. Premier Nutrition Corp.,*
   2016 WL 1535057 (N.D. Cal. Apr. 15, 2016)...................................24

*Opperman v. Path,*
   2016 WL 3844326 (N.D. Cal. Jul. 15, 2016) ....................14, 20, 23

*Parsons v. Ryan,*
   754 F.3d 657 (9th Cir. 2014).............................................................25

*Patel v. Facebook,*
   932 F.3d 1264 (9th Cir. 2019)...........................................................20

*Pulaski & Middleman, LLC v. Google, Inc.,*
   802 F.3d 979 (9th Cir. 2015).........................................18, 19, 22

*Raffin v. Medicredit, Inc.,*
   2017 WL 131745 (C.D. Cal. Jan. 3, 2017)........................................25

*Riley v. California,*
   573 U.S. 373 (2014) ..........................................................................14

*Rodriguez v. City of Los Angeles,*
   2014 WL 12515334 (C.D. Cal. Nov. 21, 2014) ...............................23

*Rodriguez v. Hayes,*
   591 F.3d 1105 (9th Cir. 2010).....................................................10, 11

*Roley v. Google LLC,*
   2020 WL 8675968 (N.D. Cal., July 20, 2020) ....................10, 13, 17

*Roy v. Cty. of Los Angeles,*
   2018 WL 3436887 (C.D. Cal. Jul. 11, 2018) ...................................23

iv

*Shulman v. Group W. Prods., Inc.*,
   18 Cal.4th 200 (1998) ............................................................................... 14

*State Farm Fire & Cas. Co. v. Superior Court*,
   45 Cal. App. 4th 1093 (Cal. App. 1996) ................................................... 19

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ..................................................................... 12

*Tait v. BSH Home Appliances corp.*,
   289 F.R.D. 466 (C.D. Cal. 2012) ......................................................... 10, 18

*Torres v. Mercer Canyons Inc.*,
   835 F.3d 1125 (9th Cir. 2016) ..................................................................... 8

*Tyson Foods, Inc. v. Bouaphakeo*,
   577 U.S. 442 (2016) ............................................................................. 12, 19

*United States ex rel. Terry v. Wasatch Advantage Grp., LLC*,
   327 F.R.D. 395 (E.D. Cal. 2018) ................................................................. 9

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) .............................................................................. 9, 10

*Williams v. Apple, Inc.*,
   2021 WL 2186223 (N.D. Cal. May 28, 2021) ....................................... 9, 10, 13, 24

*Wortman v. Air New Zealand*,
   326 F.R.D. 549 (N.D. Cal. 2018) ................................................................ 8

*Yahoo Customer Data Breach Litig.*,
   2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) .......................................... 21

*Yokoyama v. Midland Nat. Life Ins. Co.*,
   594 F.3d 1087 (9th Cir. 2010) ................................................................... 19

**Statutes**

Cal. Civ. Code § 1798 ...................................................................................... 6

Cal. Pen. Code § 484 ..................................................................................... 17

Cal. Pen. Code § 496 ..................................................................................... 18

Cal. Pen. Code § 631 ..................................................................................... 16

1

**Other Authorities**

2

Restatement (First) of Restitution § 128 (1937) ............................................................................ 21

3

Restatement (Second) of Torts § 652H (1977) ............................................................................... 23

4

5

**Rules**

6

Fed. R. Civ. P. 23 .................................................................................................................. passim

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE THAT on February 17, 2022 at 1:30 pm, before the Honorable Lucy H. Koh of the United States District Court for the Northern District of California, Plaintiffs Patrick Calhoun, Elaine Crespo, Michael Henry, Dr. Rodney Johnson, Dr. Claudia Kindler, and Dr. Corinice Wilson (collectively, Plaintiffs), will and do hereby move the Court, pursuant to Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, for an order certifying a class of (the "Class"):

> All Google Chrome users in the United States who did not enable "Sync" while browsing the web using Chrome ("Not Synced Chrome Users") or who disabled "Sync" while browsing using Chrome ("Unsynced Users"), at any time between July 27, 2016 to the present (the "Class Period"). Browsing using the Chrome browser in Incognito mode is excluded from the Class.[1]

> Excluded from the proposed Class is Defendant Google LLC, its ultimate parent Alphabet, Inc. or any intermediate parents, subsidiaries, affiliates, officers and directors; any entity in which Google has a controlling interest; and all judges assigned to hear any aspect of this litigation, as well as their staff and immediate family members. For the statutory larceny claim, to the extent the Court determines that individual damages calculations cannot be efficiently calculated on a class-wide basis, Plaintiffs in the alternative seek certification pursuant to Fed. R. Civ. P. 23(c)(4) as to liability only.

Plaintiffs further move for their appointment as class representatives and to appoint Lesley E. Weaver of Bleichmar Fonti & Auld LLP, David A. Straite of DiCello Levitt Gutzler LLC, and Jason "Jay" Barnes of Simmons Hanly Conroy LLC as class counsel.

This motion is based upon this Notice of Motion and Motion, the incorporated Memorandum of Law, and the following declarations:

1.  Declaration of Jay Barnes dated October 14, 2021 ("Barnes Decl.");

2.  Declaration of David Straite dated October 14, 2021 ("Straite Decl.");

3.  Declaration of Lesley Weaver dated October 14, 2021 ("Weaver Decl."), which attaches, among other exhibits, the following:

---

[1] All Chrome transmissions in Incognito browsing are the subject of the *Brown v. Google* action, 5:20-cv-3664-LHK-SVK ("*Brown*").

a.    The declarations of Proposed Class Representatives Patrick Calhoun ("Calhoun Decl."), Elaine Crespo ("Crespo Decl."), Michael Henry ("Henry Decl."), Dr. Rodney Johnson ("Johnson Decl."), Dr. Claudia Kindler ("Kindler Decl."), and Dr. Corinice Wilson ("Wilson Decl.").

b.    Report of **Dr. Russell Mangum** ("Mangum Rpt."). Dr. Mangum is an expert in economic analysis and damages quantification in matters related to intellectual property and technology, antitrust, class certification, statistical analysis, and complex commercial disputes, with testimony in over 100 matters before local, state, and federal courts. Dr. Mangum is also an Associate Professor of Economics in the School of Business and Economics at Concordia University Irvine.

c.    Report of **Prof. Leslie K. John** ("John Rpt."). Professor John is the Marvin Bower Professor of Business Administration at the Harvard Business School and is an expert in behavioral economics. Much of Professor John's research falls in the domain of the psychology of privacy decision-making.

d.    Report of **Prof. Joseph Turow** ("Turow Rpt."). Professor Turow is Robert Lewis Shayon Professor of Media Systems & Industries at the University of Pennsylvania's Annenberg School for Communication. A 2005 New York Times Magazine article referred to Turow as "probably the reigning academic expert on media fragmentation." In 2010, the New York Times called him "the ranking wise man on some thorny new-media and marketing topics." In 2012, the TRUSTe internet privacy-management organization designated him a "privacy pioneer" for his research and writing on marketing and digital-privacy.

e.    Report of **Prof. Zubair Shafiq** ("Shafiq Rpt."). Dr. Shafiq is an Associate Professor of Computer Science at University of California, Davis. His research focuses on making the Internet more private, secure, and performant using measurement and machine learning techniques.

f.    Report of **Richard Smith** ("Smith Rpt."). Mr. Smith is the owner and a consultant with Boston Software Forensics LLC, providing consulting services to the legal industry involving the analysis of software systems for technology-related litigation and privacy and security reviews. Previously, he worked at the Privacy Foundation as the chief technology officer (CTO) and was a founder and CEO of Phar Lap Software, Inc.

In addition, and contemporaneously herewith, Plaintiffs submit a Request for Judicial Notice ("RJN") of the Exhibits to Plaintiffs' original complaint, attached to the Weaver Declaration submitted in support of this motion. This motion may also be supported by additional rebuttal evidence submitted on reply, and any further argument presented to the Court.

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I. INTRODUCTION AND SUMMARY OF ARGUMENT**

3

The proposed class is easily certifiable. Plaintiffs' claims arise out of Google's uniform

4

Chrome contract of adhesion drafted by Google and governed by California and federal law

5

nationwide. Contract claims are typically well-suited for class treatment. This case is no different.

6

Google promises Chrome users that they "don't need to provide any personal information

7

to use Chrome" and "[t]he personal information that Chrome stores won't be sent to Google

8

unless you choose to store that data in your Google Account by turning on sync[.]" *See* Order

9

Granting in Part and Denying in Part Motion to Dismiss With Leave to Amend, March 17, 2021,

10

ECF No. 142, ("MTD Order") at 19. These promises are identical or "very similar" in each

11

version of the contract from July 27, 2016 to the present. *Id.* at 7, n. 2. Chrome also promises that

12

the *default* state is not synced ("Sync is only enabled if you choose"). The *default* is that Chrome

13

will not send and Google is not permitted to collect users' personal information unless the user

14

finds the Sync toggle and enables it. Thus, no action is needed for the promised privacy

15

protections to apply. These promises apply by operation of contract and law regardless of any

16

individual action and whether an individual was even aware of the Sync feature.

17

Despite these promises, Google admits, categorically, that it "collects and uses data from

18

[Chrome] Users who have not enabled sync[.]" Ex. T, Google's Responses and Objections to

19

Plaintiffs' Interrogatory No. 20 ("Resp. to ROG No. 20").[2] Plaintiffs' experts Richard Smith and

20

Zubair Shafiq confirm that this practice is ongoing and a common function of Chrome's design.

21

Google says that it will not "cease collecting and using such data." *Id.*

22

Instead of ceasing collection or clarifying disclosures, Google argues that its multiple

23

privacy policies, which vaguely disclose data collection, override its specific contractual

24

promises to the contrary. Google contends that collection of personal information from Chrome

25

is "consistent with Google's Terms of Use, Privacy Policy, and Chrome Privacy Notice." *Id*. The

26

Court has already rejected this defense. *See* MTD Order at 16-17 ("To the contrary, Google's

27

28

[2] Unless otherwise indicated "Ex." refers to exhibits attached to the Weaver Decl.

1   representations might have led a reasonable user to believe that Google did not collect his or her

2   personal information when the user was not synced").[3] The mounting evidence does too, as

3   Google's internal documents show and Plaintiffs' experts affirm that Google's data collection

4   practices, and how it uses that data, are far beyond its disclosures.

5       Google may argue that individual Chrome users cannot complain about data collection if

6   they fail to employ "privacy protections," such as third-party cookie blockers. This is akin to a

7   thief criticizing the victim for failing to use a second lock. Google's argument is without merit.

8   ████████████████████████████████████  ████████████████████

9   ████████████████████████████████████████████████

10  ████████████████████████████  Thus, inquiries into protective measures are irrelevant,

11  because Google defeats them by common design. As Google's CEO Sundar Pichai candidly

12  admitted internally, "████████████████████████████████████

13  ████████████████  Ex. CC (GOOG-CALH-00044423, at 438).

14      ████████████████████████████████████████████

15  ████████████████████████████████████████████████

16  ████████████████████████████████████████████████

17  ████████████████████████████████████████████████

18  ████████████████████████████████████████████████

19  ████████████████████████████████████████████████

20  ████████████████████████████████████████████████

21  ████████████████████████████████████████████████

22  ████████████████████████████████████████████████

23  ████████████████████████████████████████████████

24  ████████████████████████████████████████████████

25  ████████████████████████████████████████████████

26  ████████████████████████████████████  Ex. FF (GOOG-CABR-

27  ─────────────────────────

28  [3] Even if the Court were to reconsider, the ruling would apply on a class-wide basis.

00125420, at 420) █████████████████████████████████████

████████████████████ It does so every day.

Damages are easily calculated on a class-wide basis using a common formula. Contract damages will be the same for every Chrome user, subject only to formulaic adjustments, as will fixed statutory damages under the CIPA. For privacy tort and UCL claims, Plaintiffs seek general privacy damages resulting from the data collection (not individual consequential damages) determined by objective "reasonable person" standards. Economic damages are susceptible to class-wide calculation, as explained by Prof. Mangum, based on restitution or unjust enrichment.

Plaintiffs respectfully seek certification of six causes of action: (1) breach of contract (Count 8); (2) breach of the implied covenant of good faith and unfair dealing (Count 9); (3) intrusion upon seclusion (Count 7); (4) statutory larceny (Count 13); (5) violation of the California Unfair Competition Law ("UCL") (Count 14), and (6) violation of the California Invasion of Privacy Act ("CIPA) (Count 5).

## II.    STATEMENT OF ISSUES TO BE DECIDED

1. Whether the Court should certify the Class under Fed. R. Civ. P. 23(b)(2).
2. Whether the Court should certify the Class under Fed. R. Civ. P. 23(b)(3).
3. In the alternative for the Statutory Larceny claim, whether the Court should certify the Class under Fed. R. Civ. P. 23(c)(4).
4. Whether the Court should appoint the Plaintiffs as class representatives and appoint class counsel under Fed. R. Civ. P. 23(c)(1)(B) and 23(g).

## III.    STATEMENT OF FACTS

### A. Google's Promises in its Contracts and Terms of Services Operate Are Uniform And Central to Liability and Google's Consent Defenses

Chrome's sign-in screens and Google's disclosures relating to Sync are uniform across the Class Period. To download Chrome, users are presented with a clickwrap agreement requiring "agreement" to Google's Terms of Service and Privacy Policy. This Court has found that the operative terms and privacy policy make similar representations across the Class Period. MTD Order at 4-5 ("[p]rior versions of the [March 31, 2020] Terms of Service made similar statements") and at 6 ("[s]ubsequent versions of Google's Privacy Policy made similar

disclosures"). "From April 14, 2014 until March 31, 2020, Google's Terms of Service invoked Google's Privacy Policy" by reference to the "privacy policy or additional terms for particular services." *Id.* at 5. Thus, the Chrome Privacy Notice is incorporated into Google's contract with Chrome users for the entire Class Period.

The Court's Order identifies the operative Terms, including the Chrome Privacy Notice, noting that California law "govern[s] all disputes[.]" *Id.* at 4-7. The Order identifies key disclosures made in Google's Privacy Policy in effect from June 28, 2016 to August 29, 2016 and correctly notes that "[s]ubsequent versions of Google's Privacy Policy made similar disclosures." *Id.* at 6. And the Order identifies statements central to this case:

- "You don't need to provide any personal information to use Chrome, but Chrome has different modes you can use to change or improve your browsing experience. Privacy practices are different depending on the mode you're using[;]" and,
- "The personal information that Chrome stores won't be sent to Google unless you choose to store that data in your Google account by turning on sync[.]"[4] *Id.* at 6-7.

Upon Chrome's download, all Class members are exposed to the same First Run Experience ("FRE"), a set of screens that Chrome sends users through the first time that they use the browser. Plaintiffs' expert recorded those FREs through the Class Period. *See* Shafiq Rpt. Exhibit C. The FREs give Chrome users the option to sign-in. Users who choose to do so are shown a pop-up asking, "Turn on Sync?," under which Google states that it will "Sync your bookmarks, passwords, history, and more on all your devices." If the user clicks "Yes, I'm in," "Google may use your history to personalize Search and other Google services." *Id.* Google made identical or similar representations throughout the Class Period and ████████████████

---

[4] Though the MTD Order focuses upon two primary promises, Google violates more: (1) "Sync is only enabled if you choose."; (2) "In general, the fact that you use Chrome to access Google services, such as Gmail, does not cause Google to receive any additional personally identifying information about you."; and (3) Unless you turn on sync *and* Web & App Activity to allow Google to use your Chrome history, "Google will only use your Chrome data after it's anonymized and aggregated with data from other users." Ex. N at Exhibit 25, 6 of 11; Exhibit 26, 2 of 11 and 7 of 11. *See also* Ex. AAA (Plaintiffs' Response to Google Interrogatory No. 7) (stating currently known uniform false or misleading statements or omissions made to not-synced users).

1    ███████████████████████████    Shafiq Rpt. *Id.*; Ex. V (Google Resp. to RFA 37).

2    Once downloaded, a Sync toggle appears on the top right of the browser. When a Chrome user

3    is not synced, the browser presents the user with an option to "Turn on Sync" in a large blue

4    button. This is identical for all Class members. When a user clicks to Sync, Google takes them

5    through a process presenting the same promises from the Sync screen during the FRE of a third

6    party. *Id.*

7    **B. Google's Conduct in Collecting and Using Date Taken From Users Is Subject
        to Common Proof that Predominates**

8

9    Google's actions are also uniform. Google admits that it "collects and uses data from

10   [Chrome] Users who have not enabled sync[.]" Ex. T (Resp. to ROG No. 20); Google's Answer

11   to the First Amended Complaint, May 17, 2021, ECF No. 195 ("Ans."), ¶ 4 ("certain Google

12   services" are designed to "send certain information to Google" including "IP address, HTTP

13   headers (which may contain information about the user's browser or device (i.e. user-agent),

14   cookies, referrer URL, and the URL of the website requesting the service" regardless of sync

15   status)); *see also* Ans. ¶ 153 (Sync status has no impact on X-Client-Data header). ██████

16   ████████████████████████████████████

17   ████████████████████████████████████

18   ████████████████████████████████████

19   ████████████████████████████████████

20   ███████████ █ ████████████████████████

21   ████████████████████████████████████

22   ████████████████████████████████████

23   ████████████████████████████████

24   ████████████████████████████████████

25   ████████████████████████████████████

26   ───────────────

27   [5] ██████████████████████████████████████

28   ████████████

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR CLASS CERTIFICATION
Case No. 5:20-CV-05146-LHK-SVK



This is "personal information" as a matter of law. *See* Cal. Civ. Code § 1798.140(o)(1), (x) (IP address, Internet activity, browsing history, cookies, pixel tags, mobile ad identifiers, customer numbers, unique pseudonyms used to identify particular consumer or device all listed in definition). It is also "personal information" as a matter of contract. Consistent with California law, the Google Privacy Policy defines "personal information" to include information that "can be reasonably linked to" Google Account information "by Google, such as information [Google] associate[s] with your Google Account." These are dispositive questions applicable to all Class members. MTD Order at 16 ("As Google's counsel conceded at the hearing on the instant motion, the data at issue in the instant case falls within these broad definitions of personal information.").

---

[6] *See, e.g.* Ex. GG (GOOG-CALH-00027547) (IP address for Claudia Kindler ); Ex. HH (GOOG-CALH-00651647) (User-Agent and Device data associated with Plaintiffs); Ex. II (GOOG-CALH-00061948) (inferred interests file for Elaine Crespo); Ex. JJ (GOOG-CALH-00492852) (X-client data header info for Michael Henry);  Ex. KK (GOOG-CALH-00039102) (first-party cookie data associated with Claudia Kindler); Ex. LL (GOOG-CALH-00039120) (Signed-out activity associated with Patrick Calhoun); Ex. MM (GOOG-CALH-00027803) (Signed-in activity associated with Patrick Calhoun going back to Nov. 15, 2012).



By connecting all of this information for its own purposes across devices and sign-in states regardless of Sync status, *Google is secretly tracking all not-synced Chrome users just as if they had been synced.*

The harmful, offensive, and undisclosed practice of profile creation and use is consistent across the Class.

There are only two exceptions to these uniform practices. First, for Incognito browsing, Chrome makes different representations that are the subject of *Brown*. Second, Google represents that its data collection practices with regards to Incognito browsing is different – also a subject

---

[7] Transmissions to Google.com include Plaintiffs' personal information.

1  for *Brown*. For these reasons, Incognito browsing is excluded from the proposed class. As

2  discussed below, Plaintiffs' claims for breach of contract, good faith and fair dealing, privacy,

3  and statutes rest on multiple common questions of fact which predominate. The proposed Class

4  should be certified.

5  **IV.   LEGAL STANDARD**

6      "[T]he ultimate goal of Rule 23 is to determine whether efficiency and justice are best

7  served by plaintiffs pursuing their claims on behalf of a class[.]" *Fitzhenry-Russell v. Dr. Pepper*

8  *Snapple Grp., Inc.*, 326 F.R.D. 592, 607 (N.D. Cal. 2018). "The proposed class action must

9  satisfy all four requirements of Rule 23(a), and at least one of the sub-sections of Rule 23(b)." *In*

10 *re Facebook Biometric Info. Priv. Litig.*, 326 F.R.D. 535, 541 (N.D. Cal. 2018); *Amgen Inc. v.*

11 *Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013) (merits questions should only be

12 considered to the extent relevant to determine whether Rule 23 prerequisites are satisfied).

13 **V. ARGUMENT**

14     Plaintiffs move to certify the Class defined below as to their claims for (1) breach of

15 contract; (2) breach of the implied covenant of good faith and unfair dealing; (3) intrusion

16 upon seclusion; (4) statutory larceny; (5) violation of the UCL; and (6) violation of the CIPA.

17     <u>**Proposed Class:**</u>
18     All Google Chrome users in the United States who did not enable "Sync" while
       browsing the web using Chrome ("Not Synced Chrome Users") or who disabled
19     "Sync" while browsing using Chrome ("Unsynced Users"), at any time between
       July 27, 2016 to the present (the "Class Period"). [8]

20 This proposed Class is certifiable because membership "can be established by means of objective,

21 verifiable criteria," *Wortman v. Air New Zealand*, 326 F.R.D. 549, 555 (N.D. Cal. 2018), and the

22 "definition is reasonably co-extensive with Plaintiffs' chosen theory of liability." *Torres v.*

23 *Mercer Canyons Inc.*, 835 F.3d 1125, 1136-37 (9th Cir. 2016).

24     **A.  The Prerequisites of Rule 23(a) Are Met**

25         **1.  There are Millions of Class Members.**

26

27 ────────────
28 [8] Subject to the exclusions referenced in the Notice of Motion.

1    Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is

2    impracticable." Fed. R. Civ. P. 23(a)(1). ████████████████████████████████████

3    ████████████████████████████████████████████████████████████████████████████████

4    ████████████████████████████████████████████████████████████████████████████████

5    ████████████████████████████████████████████    Google's conduct affects many millions

6    of people.

### 2.    Google's Conduct Is at the Center of the Claims and Defenses, Creating Common Questions for All Claims.

An issue is common if it is of "such a nature that it is capable of class wide resolution—which means that the determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Commonality is construed permissively, *see Morgan v. U.S. Soccer Fed'n, Inc.*, 2019 WL 7166978, at *8 (C.D. Cal. Nov. 8, 2019), and "even a single common question will do." *Dukes,* 564 U.S. at 359 (internal quotation marks omitted).

As set forth above, Google's standardized contracts and actions present common questions suitable for certification. *Ellsworth v. U.S. Bank, N.A.*, 2014 WL 2734953, at *20 (N.D. Cal. Jun. 13, 2014) ("[C]ourts routinely certify class actions regarding breaches of form contracts.").[9] The Court has correctly found that Google's representations are materially similar throughout the Class period. *See* MTD Order at 4-7. Moreover:

> It is an axiom of contract law that when there is a standardized agreement like the form contract at issue in this case, the agreement is interpreted wherever reasonable as treating alike all those similarly situated, without regard to their knowledge or understanding of the standard terms of the writing. Rather than weigh each class member's subjective understanding, courts in construing and applying a

---

[9] *See, e.g. Williams v. Apple, Inc.*, 2021 WL 2186223, at *15 (N.D. Cal. May 28, 2021) (holding, *inter alia*, a "key common issue predominates here: all class members 'signed a standard form contract' with the same challenged language"); *United States ex rel. Terry v. Wasatch Advantage Grp., LLC*, 327 F.R.D. 395, 416 (E.D. Cal. 2018) (collecting cases) ("California district courts commonly certify classes for breach of contract claims" involving form contracts); *Feller v. Transamerica Life Ins. Co.*, 2017 WL 6496803, at *11-13 (C.D. Cal. Dec. 11, 2017) (finding that claims premised on "uniform policy language and uniform conduct" show that common questions predominate and noting that such claims "present the classic case for treatment as a class action") (quotations omitted).

standardized contract seek to effectuate the reasonable expectations of the average member of the public who accepts it.

*Williams*, 2021 WL 2186223, at *5 (quotations omitted). Accordingly, Google's promises in its standardized policies present common questions regarding issues of contract formation and interpretation.

Breach is likewise a common question. *See Transamerica*, 2017 WL 6496803, at *6. Google admits that Chrome discloses personal information regardless of Sync status. Ans. ¶ 4. This unqualified admission applies to all Class members, because Google's conduct is uniform. Other questions that will turn on common evidence include:

(1) Whether Google breached its duty of good faith and fair dealing. *See Ellsworth*, 2014 WL 2734953, at *27 ( "duty of good faith … is rooted in form contracts and the application of uniform policies to the rights and obligations under those contracts, [thus] the duty does not require examining each plaintiff's individual expectations because those … are reflected in the contract.");

(2) Whether Google "intentionally intruded into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy," and whether such "intrusion occurred in a manner highly offensive to a reasonable person." MTD Order at 17 ("highly offensive" element judged by "reasonable person" standard and "focuses on the degree to which the intrusion is unacceptable as a matter of public policy");

(3) Whether Google committed theft by larceny by taking Class members' property without consent. *Roley v. Google LLC*, 2020 WL 8675968, at *11 (N.D. Cal., July 20, 2020) (certifying "conversion" class with identical elements as statutory larceny);

(4) Whether Google's practices are unfair under the UCL. *See Tait v. BSH Home Appliances corp.*, 289 F.R.D. 466, at 480 (C.D. Cal. 2012) ("[C]ourts in California routinely certify consumer class actions arising from alleged violations of the… UCL."); and

(5) Whether Chrome users consented to the interception of their PI. *See In re Facebook, Inc., Cons. Priv. User Prof. Litig.*, 402 F. Supp. 3d 767, 789 (N.D. Cal. 2019).

The "common answers" to these questions will resolve primary issues on a class wide basis. *Dukes*, 564 U.S. at 350. The scope of Google's conduct is the test of Google's consent arguments, and the conduct is also common across the Class. Common questions predominate.

**3. Plaintiffs' claims are typical of those of the Class.**

Representative claims are typical if they are "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Rodriguez v. Hayes*, 591 F.3d

1105, 1124 (9th Cir. 2010) (quotations omitted). The requirement is "satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Id.* (quotations omitted).

Here, Plaintiffs assert the same claims they assert on behalf of all Class members. Plaintiffs and Class members were subject to the same Google policies and practices—the very policies and practices Google claims support its defense—and the same conduct. Ex. T (Resp. to ROG No. 20). This satisfies the typicality requirement. *See Larson v. John Hancock Life Ins. Co.*, 2017 WL 4284163, at *10 (Cal. Super. Mar. 23, 2017) (plaintiff's claims were "typical, indeed, substantially identical, to those of the class" because they arose from the same policy language). Further, Plaintiffs' expectations and actions are consistent with how an objectively reasonable person behaves, as the work of Professors John and Turow explain. Ex. P (John Rpt. pp. 3-8); Ex. S (Turow Rpt. ¶¶ 13-30). They were each harmed by Google taking their PI without their express consent while they used Chrome. *See* Ex. D (Calhoun Decl. ¶ 7 ("I feel like my personal data has been taken and sent to places that I did not consent, against my will. It's tantamount to stalking, in my opinion.")); Ex. E (Crespo Decl. ¶ 5 ("I've noticed that if I view a specific item and then I come back hours later, that item now becomes an ad. I just find that very annoying and creepy.")); Ex. H (Kindler Decl. ¶ 7 ("I believe that what Google is doing – taking people's information, bundling it, and then selling it without consent or compensation to the individual is wrong.")); Ex. F (Henry Decl. ¶ 5 ("I just feel like it's crazy that [Google] [] know[s] everything…without me knowing")); Ex. G (Johnson Decl. ¶¶ 3, 5 ("[m]y searches and communications are reflections of who I am"; they are "not on public display"; and "I never consented to Chrome sharing my personal information… with Google)); Ex. I (Wilson Decl. ¶ 5 ("I believe my online activities should be private unless I give permission and it should not be used by Google to create a file about me and my online activity")).

### 4. Plaintiffs and their counsel meet the adequacy requirement.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class" as determined by whether Plaintiffs and their counsel have any conflicts

of interest with other Class members and will vigorously prosecute the action. *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). There are no conflicts. And Plaintiffs have already proven their adequacy by investing many hours in this case, responding to extensive discovery, permitting the forensic imaging of their personal devices, and collecting documents. Save two (scheduled for deposition this month at Google's continuance), they have prepared and sat for deposition. They will continue to safeguard the interests of class members as this litigation progresses. *See* Ex. D (Calhoun Decl. ¶¶ 9-12); Ex. E (Crespo Decl. ¶¶ 7-10); Ex. H (Kindler Decl. ¶¶ 10-13); Ex. F (Henry Decl. ¶¶ 6-9); Ex. G (Johnson Decl. ¶¶ 6-11); Ex. I (Wilson Decl. ¶¶ 7-11). Proposed Class Counsel have extensive experience litigating internet privacy cases, and have (and will continue to) vigorously prosecute this case. *See* Ex. B (Barnes Decl. ¶¶ 4-16); Ex. C (Straite Decl. ¶ 10-11, 22-33); Weaver Decl. ¶¶ 2-10, 17. There are no conflicts that would impede counsel's ability to litigate this action to a successful outcome for Plaintiffs and Class members. *See* Ex. B (Barnes Decl. ¶ 17); Ex. C (Straite Decl. ¶ 34); Weaver Decl. ¶ 19. The proposed Class Representatives and Class Counsel should be appointed.

## B. The Requirements of Rule 23(b)(3) Are Met

### 1. Common issues predominate.

Class certification under Rule 23(b)(3) is appropriate when common "questions of law or fact…predominate over any question affecting only individual members." Fed. R. Civ. P. 23(b)(3). In determining whether common issues predominate, the court examines each claim individually. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998). A single predominant issue is enough. *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 452-53 (2016).

#### a. Common Issues Predominate as to the Breach of Contract Claim

For the breach of contract claim, Plaintiffs must establish "(1) the existence of the contract with Google, (2) their performance under that contract, (3) Google breached that contract, and (4) they suffered damages." MTD Order at 31. These elements are uniform for the Class and turn on common, not individualized, proof. Google's admission that it discloses Chrome users' PI regardless of synced status and "will not cease" is a uniform breach. Consumer

contract claims are routinely certified. *See Williams*, 2021 WL 2186223; *Roley*, 2020 WL 8675968.

                  **b.**    <u>Common Issues Predominate the Good Faith and Fair Dealing Claim</u>

       The duty of good faith and fair dealing requires plaintiffs to show that Google unfairly interfered with their right to receive the benefits of the contract. MTD Order at 34. Because "the duty of good faith and reasonableness is rooted in form contracts and the application of uniform policies to the rights and obligations under those contracts. The duty does not require examining each plaintiff's individual expectations because those … are reflected in the contract." *Ellsworth*, 2014 WL 2734953, at *27.

       The evidence establishing Google's objectively unreasonable behavior applies to all Class members. As the Court noted in its MTD Order, Google acted in bad faith, including by circumventing cookie blockers. MTD Order at 34 (citing FAC ¶¶ 62-86). ████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
██  ██████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████  █
████████████████████████████████████████████████████
████████████████████ Because Google's promises and conduct are intended to, and do, apply uniformly to Plaintiffs and the Class, common proof predominates.

                  **c.**    <u>Common Issues Predominate the Intrusion Claim</u>

       Intrusion has two elements that require proof that Google (1) "intentionally intruded into

---

[10] Indeed, Google's counsel denied that in open court. *See Brown*, ECF 104, Tr. of Feb. 25, 2021 Hearing at 27:20 ("We don't really have user profiles.").

a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy," and (2) "the intrusion occurred in a manner highly offensive to a reasonable person." MTD Order at 26 (citations omitted). Both are judged from the perspective of an objectively reasonable person. *Id.* Accordingly, both questions can be proven on a common, class wide basis. *See Shulman v. Group W. Prods., Inc*., 18 Cal.4th 200, 232 (1998) ("reasonable expectation of privacy" asks whether plaintiff had "objectively reasonable expectation of seclusion or solitude in the place, conversation, or data source"); MTD Order at 29 ("highly offensive" element judged through eyes of "a reasonable person" and "focuses on the degree to which the intrusion is unacceptable as a matter of public policy"). "These determinations may require an examination of [Defendant's] motives, but they will not require individualized determinations of class members' subjective expectations." *Opperman v. Path*, 2016 WL 3844326, at *11 (N.D. Cal. Jul. 15, 2016).

"The existence of a reasonable expectation of privacy, given the circumstances of each case, is a mixed question of law and fact." *In re Facebook Internet Tracking Litig*., 956 F.3d 589, 601 (9th Cir. 2020). The Supreme Court has unanimously held that consumers have a reasonable expectation of privacy in the data that can be found on a smartphone. *Riley v. California*, 573 U.S. 373, 395-96 (2014). In *Facebook Internet Tracking*, the Ninth Circuit explained that the "critical fact was that the online entity represented to the plaintiffs that their information would not be collected, but then proceeded to collect it anyway." 956 F.3d at 603. The Third Circuit reached the same conclusion. *In re Google Cookie*, 806 F.3d 125, 151 (2015) Here, Google has taken data that it promised it would not collect.

Plaintiffs' experts Professors Joseph Turow and Leslie John propose peer-reviewed methodologies to explain to the jury that reasonable consumer expectations can and routinely are calculated through general surveys and experiments. Using commonly accepted methods for decades, Prof. Turow has found that reasonable consumers do not understand how Internet data collection works, framing the question of whether this particular intrusion would be expected. Most consumers falsely believe that the very existence of a privacy policy means their personal

information will be protected. Turow Rpt. ¶ 29. Prof. Turow cites widely-accepted research that people do not expect the contents of their communications to be shared with others without their consent. *Id.* ¶ 27. He concludes that a user who engaged in Chrome's First Run Experience, viewed its user interface, or read Google's privacy policies could not reasonably conclude that Chrome would engage in the conduct at issue here. *Id.* Indeed, Chrome makes express promises that it will not engage in this conduct. *See* MTD Order at 19 ("you don't need to provide any personal information to use Chrome" and that "[t]he personal information that Chrome stores won't be sent to Google unless you choose to store that data in your Google Account by turning on sync"); *see also* Ex. N at Exhibit 27, 2 of 11 (Chrome Privacy Notice consistently represents to users that they have the choice to "Sync" and "the fact that you use Chrome to access Google services, such as Gmail, does not cause Google to receive any additional personally identifying information about you").[11] These are all common issues.

The "offensiveness" element is also common, because the standard is whether the conduct would be highly offensive "to a reasonable person." This language tracks the "reasonable consumer" standard that makes California UCL claims ripe for class certification. A factfinder will look in large part to the scope of Google's conduct and what it promised, and omitted, in its disclosures to users. Google cannot challenge the methodology of applying generalization to not synced users, ████████████████████████ John Rpt. pp. 2-3; ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████

All of this bears on the objectively reasonable standard, which does not require an individualized inquiry to reach a conclusion. Based on discovery to date and years of lauded

---

[11] Professor Turow's conclusions echo the experience of the proposed class representatives. *See* Ex. D (Calhoun Decl. ¶¶ 4-7); Ex. E (Crespo Decl. ¶¶ 3-4); Ex. H (Kindler Decl. ¶¶ 5-6); Ex. F (Henry Decl. ¶¶ 4-5); Ex. G (Johnson Decl. ¶¶ 3-4); Ex. I (Wilson Decl. ¶ 4).

research, Professors Turow and John can show at trial through accepted methodologies that if a reasonable user read the policies, he/she/they would never conclude that Google is doing this level of spying on not-synced users. Alternatively, if a user did not read them—a confirmed normal response for the average consumer—a reasonable person has the same expectations. John Rpt. pp. 3-7. For Google to obtain consent for its data collection practices here, and the way it uses that data, Google's disclosures need to say so clearly. They do not. The question turns not on the users' conduct, but Google's, and that predominates.

d.   Common Issues Predominate the CIPA Claim

CIPA makes it unlawful for any person to "in any … manner … willfully and without the consent of all parties to the communication, or in any unauthorized manner" to "read[], or attempt[] to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit … or is being sent from, or received at any place within this state" or to "use[], or attempt[] to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained[.]" Cal. Pen. Code § 631.

All proof relevant to Plaintiffs' CIPA claim is common. *First*, Google's "manner" of interception was through the design of the Chrome browser and uniform deployment of Google source code. This conduct was directed in the same manner towards all Chrome users. Smith Rpt. ¶ 12. *Second*, Google's "willful" intent is the same for all because it acted categorically across the class. *Third*, consent is a common issue for which Google bears the burden of proof. MTD Order at 12, 17. "The question of whether [Chrome] users consented to the alleged conduct is one of contract interpretation governed by California law [which] requires the Court to pretend that users actually read [Google's] contractual language before clicking their acceptance, even though we all know virtually none of them did." *In re Facebook, Inc. Cons. Priv. User Prof. Litig*., 402 F. Supp. 3d 767, 789 (N.D. Cal. 2019). The promises – and lack of consent – go beyond Google's Chrome contract language to include the very name of the service at issue (*i.e.* Sync) and how the option to use it is presented to users.

Plaintiffs expect Google to argue that different websites have different privacy policies

and that policies on non-Google websites create consent for Google's activity. Even this (not persuasive) defense involves a common issue: can Google evade liability by pointing to the uniform promises and acts of a third parties? As this Court previously noted, to prove this, Google must demonstrate consent to interception of communications "with users who were using Chrome without sync," and Google does not have any document to which it can point stating "that Google engages in the alleged data collection while users are using Chrome without sync... To the contrary, Google's disclosures state that the data will not be sent to Google when users use Chrome without sync." MTD Order at 18. Likewise, Google's already failed defense that third party disclosures trump Google's explicit promises is also a question of common proof. Put simply, an article from a newspaper cannot be used by Google to create individualized issues by arguing that some users may have believed the reporter instead of Google's express privacy promises. This is particularly true here, where Google has engaged in national campaign branding and adopted a public corporate mantra insisting that its products are ███████. Indeed, CEO Pichai could have told users that ██████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████

e.  <u>Common Issues Predominate the Statutory Larceny Claim</u>

California law forbids obtaining property "by false…representation or pretense." MTD Order at 35; Cal. Penal Code § 484. This Court's Order is part of a growing trend across the country recognizing the lost value of users' information, holding that Plaintiffs adequately alleged that they were deprived of a property interest when Google copied Plaintiffs' personal data in violation of its promises not to do so. *Id.* at 36. Google's defense that the data is not property (or that copying is not theft) is common to all Class members – it will fail (or succeed) for all Class members, or none. Further, a claim under Cal. Pen. Code § 484 is the statutory equivalent of a common law conversion claim, which courts have frequently certified in a consumer context, including in a recent case against Google. *See Roley*, 2020 WL 8675968, at *10. Finally, damages for the larceny claim are easily calculated on a class-wide basis as

discussed more below. Google's theft of data beyond the scope of consent resulted in excess profits for Google, which can be valued using a class-wide formula. Ex. Q (Mangum Rpt. ¶ 14).

In the event the Court declines to adopt an excess-profit measure for the larceny claim and instead requires that restitution be measured with respect to each Class member's specific web browsing, Plaintiffs respectfully move for the certification of an issues class pursuant to Fed. R. Civ. P. 23(c)(4), for the larceny claim *only*. Rule 23(c)(4) can "serve as a useful and fair case management tool" allowing the Court to resolve liability on a common class-wide basis, but give Google "the opportunity to respond" to individual questions of each class member's damages. *Jacob v. Duane Reade, Inc.*, 293 F.R.D. 578, 589 (S.D.N.Y. 2013), aff'd, 602 Fed. Appx. 3 (2d Cir. 2015), accord *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1167–69 (9th Cir. 2014) (citing *In re Whirlpool Corp. Front–Loading Washer Products Liab. Litig.*, 722 F.3d 838, 854 (6th Cir.2013) ("[N]o matter how individualized the issue of damages may be, determination of damages may be reserved for individual treatment with the question of liability tried as a class action."). Here, California's larceny statute allows Plaintiffs and Class members to sue individually for three times the value of the unlawfully copied data, plus attorney's fees, Cal. Penal Code § 496(c), and valuation is feasible, because Google can produce a record of each Class member's web browsing and profiles. These facts are more than sufficient to meet the "very low burden" of establishing that damages can "feasibly and efficiently be calculated once the common liability questions are adjudicated." *Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 243 (N.D. Cal. 2014).

### f.    Common Issues Predominate the UCL Claim

UCL claims are "ideal for class certification because they will not require the court to investigate class members' individual interaction with the product." *Tait*, 289 F.R.D. at 480. "For this reason, district courts in California routinely certify consumer class actions arising from alleged violation of the [] UCL." *Id.* (collecting cases). Individualized proof of deception, reliance, and injury is not required. *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 985-986 (9th Cir. 2015) (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 320 (Cal. 2009)).

Google's across-the-board conduct in violating its own uniform promises to users predominates over any individualized issues. "In determining whether a business practice is unfair, the court must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim. An unfair business practice occurs when that practice offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. *State Farm Fire & Cas. Co. v. Superior Court*, 45 Cal. App. 4th 1093, 1095, 1103-1104 (Cal. App. 1996) (quoting *Motors, Inc. v. Times Mirror Co.*, 102 Cal.App.3d 735 (1980)). In this case, both prongs can be satisfied by Google's violation of (1) breach of contract; (2) breach of the implied covenant of good faith and unfair dealing; (3) intrusion upon seclusion; (4) statutory larceny; and (5) violation of the CIPA. Consequently, for the same reasons stated above, predominance is satisfied as to Plaintiffs' claims for unfair and unlawful business practices under the UCL.

### 2. Damages Can Be Determined on a Class-Wide Basis

Common methodologies to calculate nominal, general, statutory, punitive and restitutionary damages can be applied to the facts here on a class-wide basis. "Damage calculations alone cannot defeat certification." *Pulaski & Middleman*, 802 F.3d, at 984; *Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010); *Jimenez*, 765 F.3d, at 1167. Further, damage calculations need only be "consistent" with the liability case but "need not be exact." *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013). Instead, "plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the liability" and not that the damages are the same for everyone. *Leyva v. Medline Ind., Inc*., 716 F.3d 510, 513-14 (9th Cir. 2013). Even if Class members ultimately need to submit a claim form or other individualized proof of damages, the common liability issues raised by their claims are enough to warrant class certification. *Tyson Foods, Inc.*, 577 U.S., at 452-53; *see also Astiana v. Kashi Co*., 291 F.R.D. 493, 506 (S.D. Cal. July 30, 2013) ("[t]he amount of damages is invariably an individual question and does not defeat class action treatment") (quotations omitted). Plaintiffs will establish damages on a common or class-wide formulaic basis.

### a. Statutory Damages Are Certifiable

CIPA entitles those whose rights are violated to a statutory minimum judgment as a matter of law. *Ion Equipment Corp. v. Nelson*, 110 Cal.App. 3d 868, 882 (1980); *Bona Fide Conglomerate, Inc. v. SourceAmerica*, 2016 WL 3543699, at *10 (S.D. Cal. Jun. 29, 2016). Thus, these are common, identical, certifiable damages; and the fact of extremely large aggregate or individual damages will not defeat class certification. *Patel v. Facebook*, 932 F.3d 1264, 1276–77 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 937 (2020).

### b. Nominal Damages Are Certifiable

Similarly, nominal damages apply to Plaintiffs' contract, implied covenant, and intrusion claims, which are easily subject to class-wide proof. Nominal damages are apt here. "[T]he law recognizes the importance to organized society that those rights be scrupulously observed." *Carey v. Piphus*, 435 U.S. 247, 266 (1978). California recognizes nominal damages where either (1) "there is no loss or injury but where the law still recognizes a technical invasion of a plaintiff's rights;" and (2) "although there have been real, actual injury and damages suffered by a plaintiff, the extent of plaintiff's injury and damages cannot be determined from the evidence presented." *Avina v. Spurlock*, 28 Cal.App.3d 1086, 1088 (Ct. App. 1972). It is precisely "where the amount of damages is uncertain [that] nominal damages may [] be awarded." *Apple, Inc. v. Samsung Elecs. Co.*, 2012 WL 2571719, at *28 (N.D. Cal. Jun. 30, 2012). In *Opperman*, Judge Tigar certified a nominal damages class for privacy claims less egregious than here, noting that "several district courts in the Ninth Circuit have certified classes involving claims for nominal damages." 2016 WL 3844326, at *15-16. Here, nominal damages are certifiable.

### c. Restitution and Unjust Enrichment Damages Can Be Calculated on a Class Basis and Are Certifiable

Plaintiffs can also establish actual economic damages by establishing the fair market value of the data Google has wrongfully taken from Plaintiffs and Class Members, as set forth in the Report of Prof. Mangum. For economic damages on all claims, Plaintiffs can prove class-wide damages via: (1) unjust enrichment by identification of Google's excess profits derived from its conduct as well as a proposed allocation method; (2) benefit of the bargain damages;

1  and (3) calculation of the value of the stolen data by reference to market payments for consumer

2  data as well as consumer payments to reduce or block tracking.

3  The Ninth Circuit held in 2020 that "California law requires disgorgement of unjustly

4  earned profits regardless of whether a defendant's actions caused a plaintiff to directly expend

5  his or her own financial resources or whether a defendant's actions directly caused the plaintiff's

6  property to become less valuable." *Facebook Internet Tracking*, 956 F.3d at 600. This "stake in

7  unjustly earned profits exists regardless of whether an individual planned to sell his or her data

8  or whether the individual's data is made less valuable." *Id.* In addition to "disgorgement of

9  unjustly earned profits," Plaintiffs are entitled to the lost "value of that [personal] information"

10  that is negligently leaked or misappropriated. *Facebook Privacy Litigation*, 572 Fed. Appx. 494

11  (9th Cir. 2014) (unpublished). The lost sales value of personal information is "sufficient to show

12  the element of damage" for "breach of contract and fraud claims" in California. This is consistent

13  with the Restatement of Restitution § 128 and the law of misappropriation of trade secrets.[12]

14  Moreover, the argument that users must prove that they tried to sell their data to establish

15  its value has been rejected by the Ninth Circuit and fails as economic theory, as supported by

16  Prof. Mangum's analysis. Mangum Rpt. ¶¶ 65-95. *In re Facebook, Inc. Internet Tracking Litig.*,

17  956 F.3d 589, 600 ("Under California law, this stake in unjustly earned profits exists regardless

18  of whether an individual planned to sell his or her data or whether the individual's data is made

19  less valuable."). Where there is a market to sell users' data or a product/service utilizing the data,

20  economic theory can identify pricing factors. ███████████████████████████████████

21  ████████████████████████████████████████████████████████████████████████████

22  ███████████████████████████████████████████████  independently supported by a

23  Boston University study focused on the AdChoices advertising model, where Professor Garrett

24

25  [12] Other courts have agreed. *Yahoo Customer Data Breach Litig.*, 2017 WL 3727318, at *3 (N.D. Cal. Aug. 30, 2017) (Koh, J.); *In re Anthem, Inc. Data Breach Litig.*, 2016 WL 3029783, at *14-

26  15 (N.D. Cal. May 17, 2016). Under the Restatement, where the defendant either possessed or disposed of a chattel without authorization, "restitution is granted" even if the "conversion was

27  innocent and the entire transaction resulted in no net benefit to the defendant." *Restatement (First) of Restitution* § 128 (1937), cmt. d and f.

28

1    Johnson concluded that when users opted out, ████████████████████████████████

2    ████████████████████████████████████████    *Id.* ¶ 47.

3    ████████████████████████████████████████████████████

4    ████████████████████████████████████████████████████████

5    ████████████████████████████████████████████    publicly available

6    numbers, Prof. Mangum proposes the following method to ascertain the value of the data that

7    Google continues to wrongfully take from users: first, calculate Google's revenue premium;

8    second, isolate the U.S. portion; third, apportion and subtract Incognito revenue; fourth, apply

9    the percentage of not synced users to the revenue premium; and fifth, apply the computed profit

10   margin to the revenue. *Id.* ¶¶ 56-64.[13]

11          As for restitution, *Pulaski & Middleman, LLC v. Google, Inc.* explained that

12   restitutionary damages "require[] only that some reasonable basis of computation of damages be

13   used, and the damages may be computed even if the result reached is an approximation" and

14   even if it "may not be susceptible of exact proof or may be uncertain, contingent, or difficult of

15   ascertainment[.]" 802 F.3d, at 989 (citing *Marsu, B.V. v. Walt Disney Co.*, 185 F.3d 932, 938-39

16   (9th Cir. 1999)). In short, the value of the data Google has taken from users without consent can

17   be quantified through common accounting practices, including Google's own. This is no

18   impediment to certification.

19                    d.    General Damages are Certifiable

20          "Traditionally, the common law has provided [privacy] victims with a claim for 'general

21   damages … [i.e.] presumed damages: a monetary award calculated without reference to specific

22   harm." *Doe v. Chao*, 540 U.S. 614, 621, n. 3 (2004) (damages "without proof of pecuniary loss

23   [or] physical harm"). Privacy harm is separate and apart from emotional distress or economic

24

25   [13] Of course, this methodology may be unnecessary once Google complies with its discovery

26   obligations and produces documents reflecting revenue from not synced users. For example,

27   ████████████████████████████████████████████████████████████████

28   ████████████████████████████████████████████████████

harm. Restatement (Second) of Torts § 652H (1977). In fact, "the plaintiff need not plead or prove special damages." *Id.* Courts have frequently approved class certification for "general damages" in claims involving deprivations of important rights. *Aichele v. City of Los Angeles*, 314 F.R.D. 478, 496 (C.D. Cal. Aug. 26, 2013); *Rodriguez v. City of Los Angeles*, 2014 WL 12515334, at *6 (C.D. Cal. Nov. 21, 2014); *Roy v. Cty. of Los Angeles*, 2018 WL 3436887, at *3 (C.D. Cal. Jul. 11, 2018). The facts in this case are also so egregious and important to privacy rights that the median threshold for offensiveness removes any individuation from the calculus.

e.    Punitive Damages are Certifiable

Punitive damages are certifiable under both Rule 23(b)(2) and (b)(3). *See Ellis v. Costco Wholesale Corp. II*, 657 F.3d 970 (9th Cir. 2011). Under 23(b)(2), a court "may consider whether punitive damages are an allowable 'form of incidental monetary relief' … because they do not require an individual determination." *Id*. at 987. On remand from the Ninth Circuit, the District Court in *Ellis* determined that punitive damages can also be certified for a money damages class. *Ellis v. Costco III*, 285 F.R.D. 492, 542-44 (N.D. Cal. 2012) (Chen, J.). Likewise, the court in *Opperman* rejected the argument that "punitive damages are not susceptible to class wide adjudication because they must be determined on the individual harm suffered by each class member." 2016 WL 3844326, at *16 (N.D. Cal. Jul. 15, 2016). *Opperman* also rejected the argument, explaining that "Because the purpose of punitive damages is not to compensate the victim, but to punish and deter the defendant, any claim for such damages hinges, not on facts unique to each class member, but on the defendant's conduct toward the class as a whole." *Id.,* at *16-17. As with *Opperman*, this case involves software designed by a Defendant that mistreats each Class member in exactly the same manner. Punitive damages are certifiable.

**3.    Class treatment is superior to other forms of adjudication.**

Rule 23(b)(3) requires a finding that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This is especially true in this case. Because Google shrouds its conduct in secrecy, Class members are likely unaware that their rights may have been violated and the extent to which it has occurred.

1    And because potential recovery for each individual (with the largest statutory recovery of $5,000

2    available under the CIPA) is modest relative to the cost of litigating against Google, Class

3    members might be deterred from individual suit. "Cases 'where litigation costs dwarf potential

4    recovery' are paradigmatic examples of those well-suited for classwide prosecution." *Mullins v.*

5    *Premier Nutrition Corp.*, 2016 WL 1535057, at *8 (N.D. Cal. Apr. 15, 2016) (*quoting Hanlon*

6    *v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998)).

7            Google may argue it is difficult to ascertain class members. But that is neither true nor a

8    bar to class certification. First, ascertainability is not an element of class certification in the Ninth

9    Circuit. Plaintiffs need not "demonstrate that there is an 'administratively feasible' means of

10   identifying absent class members[.]" *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124-1125

11   (9th Cir. 2017); *Williams*, 2021 WL 2186223, at *12. Second, class membership can be more

12   accurately ascertained from Google's records here than many other types of cases that are

13   routinely certified (such as those involving the retail purchase of a small dollar product). Prof.

14   Shafiq explains how it can be done through many sources, including through

15

16

17

18

19

20

21

22

23

24   ███████████████    In short, Google could use the same technologies it uses billions of

25   times every day for purposes of delivering targeted advertising, to identify specific, not-synced

26   Chrome browsers that it has seen before in a non-synced state. Shafiq Rpt. ¶¶ 61-120. In fact, in

27   ████████████████████████████████████████████████████████████████,

28

1 ███████████████████████████████████████████████████████

2 ███████████████████████████████████████████████████████

3 ████████████████████████████████████████████████ The

suggestion that Google, the world's largest data aggregator and sorter, is not capable of

identifying Class members in this case, is not plausible. Regardless, even if Google claims it is

incapable of doing so, Mr. Smith can. Smith Rpt. ¶¶ 110-158. Class treatment is manageable and

well suited here.

### C. Class Certification is Appropriate Under Rule 23(b)(2)

Certification of an injunctive relief class is appropriate as to all counts, because Google

"has acted or refused to act on grounds that apply generally to the class, so that final injunctive

relief . . . is appropriate respecting the class a whole." Fed. R. Civ. P. 23(b)(2). Google will

apparently neither cease its undisclosed data collection and tracking, nor change its disclosures.

*See* Ex. T (Resp. to ROG No. 20). Here, Google's refusal to act in accordance with its promises

have harmed Plaintiffs on grounds that apply generally to the Class. For example, although

Plaintiffs Calhoun and Wilson would consider using Chrome again if Google were to change its

practices, they cannot under the current circumstances. *See* Ex. D (Calhoun Decl. ¶ 8); Ex. I

(Wilson Decl. ¶ 6). Similarly, Plaintiffs Kindler, Crespo, and Johnson need to use Chrome for

work purposes and thus continue to be harmed by Google's misconduct. *See* Ex. E (Crespo Decl.

¶ 5); Ex. H (Kindler Decl. ¶ 8); Ex. G (Johnson Decl. ¶ 11). Further, and as noted by Plaintiff

Calhoun, "there are times when certain websites appear not to load properly on other browsers

or when Google features appear to work more seamlessly in Chrome. In these instances, the

option of using Chrome would be beneficial. But due to Google's misconduct, [Plaintiffs and

Class members] have limited choices now." Ex. D (Calhoun Decl. ¶ 8) (citation omitted). Shafiq

Rpt. ¶¶ 54-60. The requested relief can and will halt Google's uniform unlawful practices,

making (b)(2) certification appropriate. *See, e.g.*, *Parsons v. Ryan*, 754 F.3d 657, 688 (9th Cir.

2014); *Raffin v. Medicredit, Inc.*, 2017 WL 131745, at *9-10 (C.D. Cal. Jan. 3, 2017).

## VI.   CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court grant their Motion for Class Certification, appoint class representatives, and appoint class counsel.

Dated:  October 14, 2021

**BLEICHMAR FONTI & AULD LLP**

*/s/ Lesley E. Weaver*
Lesley Weaver (Cal. Bar No.191305)
Angelica M. Ornelas (Cal. Bar No. 285929)
Joshua D. Samra (Cal. Bar No. 313050)
555 12th Street, Suite 1600
Oakland, CA 994607
Tel.: (415) 445-4003
Fax: (415) 445-4020
*lweaver@bfalaw.com*
*aornelas@bfalaw.com*
*jsamra@bfalaw.com*

**SIMMONS HANLY CONROY LLC**

*/s/ Jay Barnes*
Jason 'Jay' Barnes (admitted *pro hac vice*)
An Truong (admitted *pro hac vice*)
Eric Johnson (admitted *pro hac vice*)
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel.: (212) 784-6400
Fax: (212) 213-5949
*jaybarnes@simmonsfirm.com*
*atruong@simmonsfirm.com*
*ejohnson@simmonsfirm.com*

*Counsel for Plaintiffs*

**DICELLO LEVITT GUTZLER LLC**

*/s/ David A. Straite*
David A. Straite (admitted *pro hac vice*)
One Grand Central Place
60 East 42nd Street, Suite 2400
New York, NY 10165
Tel.: (646) 933-1000
*dstraite@dicellolevitt.com*

Amy Keller (admitted *pro hac vice*)
Adam Prom (admitted *pro hac vice*)
Sharon Cruz (*pro hac vice* pending)
Ten North Dearborn St., Sixth Floor
Chicago, IL 60602
Tel.: (312) 214-7900
*akeller@dicellolevitt.com*
*aprom@dicellolevitt.com*
*scruz@dicellolevitt.com*

1

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

2          I, Lesley E. Weaver, attest that concurrence in the filing of this document has been

3 obtained from the other signatories. I declare under penalty of perjury that the foregoing is true

4 and correct.

5

6 Dated:  October 14, 2021                    /s/ *Lesley E. Weaver*
                                             Lesley E. Weaver

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on October 14, 2021, I electronically filed the foregoing document

3

using the CM/ECF system, which will send notification of such filing to all counsel of record

4

registered in the CM/ECF system. I also caused a copy of the under seal filings to be delivered

5

to counsel for Defendant Google LLC via electronic mail.

6

7

*/s/ Lesley E. Weaver*
Lesley E. Weaver

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28