**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

EXHIBIT P

# Declaration

## Background

I am a Professor at Harvard University, in the Negotiations, Organizations, and Markets Unit at the Harvard Business School in Boston, MA. I have been employed here since 2011. I hold a PhD and MSc from Carnegie Mellon University in behavioral decision research—a field that is at the intersection of psychology and economics and is often referred to as "Behavioral Economics." Broadly speaking, it deals with how people reason and decide, and how their decisions can be at odds with classical economics' "rational actor" model of decision-making. I have been conducting research in this field for the past 15 years and regularly publish in the top academic journals. Because my research is interdisciplinary in nature, I have published in a variety of different outlets, spanning marketing, management, medicine, and beyond. To date, I have published 40 peer-reviewed articles in scholarly journals, 3 book chapters, and 17 practitioner-oriented articles. In 2021, I was promoted to full professor with tenure.

I conduct research on numerous topics within the field of behavioral decision making but my primary focus is on privacy—in understanding when and why people reveal or conceal sensitive personal information, as well as their reactions to firms' collection and use of their information. As is common practice—in both academia and in industry—I study these topics by conducting experiments, surveys, and survey-based experiments in which I present samples of research participants with stimuli and measure their resultant attitudes, thoughts, and behaviors. As is also common practice, I then make generalizations from the findings.

I have received numerous recognitions for my research, including for my work on privacy. In addition to recently being granted tenure, earlier in my career, I was named a "Marketing Science Institute Young Scholar," awarded to the best young marketing academics in the world; as well as a "Rising Star" by the Association for Psychological Science. I am ranked #1 in my cohort (i.e., faculty at US universities in my field who received their PhD in 2011) in publications.[1]

In addition to disseminating my research in my writing (both in peer-reviewed academic journals as well as popular magazines such as the *Harvard Business Review*), I also disseminate my and others' work through teaching. I have taught hundreds of MBAs and Executives on topics including: Negotiation, Behavioral Economics, and Marketing.

I am a member of numerous professional associations, and regularly present my work at them. These include: the Society for Judgment and Decision Making, Society for Personality and Social Psychology, Academy of Management, and the Association for Consumer Research.

My hourly rate is $1000.00, and my fee is neither contingent on the results of this case nor contingent on the content of my opinion. I have not testified as an expert witness at trial or by deposition in the last four years. My present opinion is limited to the scope of the assignments I have considered to date. I understand that discovery is still ongoing and I may amend my

---

[1] http://www.perceptionstudies.com/docsig2011/ as of its latest updating.

conclusions after access to additional information. I may also submit additional opinions in this action at a later point in time.

Attached as **Exhibit A** is a copy of my current curriculum vitae, which includes additional education experience and qualifications, including a list of all publications I have authored.

To form my opinions for this report, in addition to relying on my years of research and knowledge of this field in general, I considered the documents identified in **Exhibit B** attached.

I reserve the right to amend my declaration upon receipt of any additional information that is made available to me.

**My Assignment**

My assignment was to provide my opinion on the following four questions:

1. Could reasonable consumer expectations of internet privacy be determined class-wide by studying a sample of the proposed class?

2. Does the reasonable consumer care about their privacy on the internet?

3. Are Plaintiffs' allegations of invasion of privacy on Chrome consistent with reasonable consumer expectations?

4. Are Plaintiffs' personal experiences typical of the reasonable consumer?

**My Opinions**

**1.      A common methodology can be applied to answering questions about consumer expectations and actions and would not require individual questioning of all consumers.**

The bedrock methodology for my field of study is observing consumer behavior for the purpose of reaching general conclusions about consumers. Consumer behavior can be observed in a variety of ways, a common one being surveys, in which participants are asked a series of questions, often about specific stimuli they are presented. Sometimes the stimuli are systematically varied, to see how participants respond to different versions (for example, to assess which version of a logo is generally most appealing). Scholars in my field (and beyond) use these peer-reviewed, scientifically-accepted methodologies to form general conclusions about consumer behavior.



██████████████████████████████████████████████████

## 2. Consumers care about their privacy on the internet.

My opinion is that consumers, by and large, care about internet privacy. Anecdotal evidence of such concerns abound—from the outrage that ensues after salient breaches of privacy (e.g., Cambridge Analytica) to the everyday privacy-protective behaviors we engage in (e.g., using passwords; moving our device screens out of others' sight). For its part, Facebook apparently deemed privacy concerns so consequential that it listed them on its S-1 filling.[2] But beyond the anecdotal, I base my opinion on empirical research that speaks to this question from several different angles; the findings of a variety of research methods converge: "consumers fundamentally care about online privacy" (p.736).[3]

How do you define invasion of privacy? Consumers' sense of whether their privacy has been invaded or respected is dictated by norms or expectations of how companies/others "ought" to treat their personal data. Such expectations are often implicit and context-dependent. One study assessed what users deem reasonable—versus unreasonable—use of their personal data in the context of online behavioral advertising.[4] The study indicated that consumers generally find the following activities to be unreasonable—i.e., privacy-invasive: third-party data sharing and making inferences about a person (even if they are accurate). To the extent that these activities are common ways that Google uses consumers' data—and I assume these facts to be true for this analysis—reasonable consumers would feel that Google is invading their privacy.

Finally, just because people are still using social media or the internet despite having privacy concerns does not mean they don't value privacy. In fact, numerous studies point to how people's attitudes about privacy do not always align with their behaviors; this is in part because (as is alleged here) consumers often are not aware that a particular behavior erodes privacy, or how. The fact that there are some contexts in which people's behavior appears to indicate a lack of concern for privacy, therefore, cannot be taken as evidence that they therefore do not care about their privacy.

## 3. It is reasonable for a consumer to use Chrome in the not-synced state and believe that Chrome will not send their personal information to Google. This is true for consumers who read Google's privacy policies and for consumers who do not.

A.   *Without having read Google's privacy policies, it is reasonable for a consumer to use Chrome in the not-synced state and believe that Chrome will not send her personal information to Google.*

My opinion is that by default, people do not generally expect their personal information to be transmitted to third parties without their knowledge or explicit consent. I base this opinion in

---

[2] https://www.sec.gov/Archives/edgar/data/1326801/000119312512034517/d287954ds1.htm#toc287954_2
[3] https://www.cmu.edu/dietrich/sds/docs/loewenstein/secretslikes.pdf
[4] https://academic.oup.com/jcr/article/45/5/906/4985191

part on research in which my coauthors and I found that people's expectations of how their personal data ought to flow between entities in online contexts is dictated by well-established norms from the offline world. We found that just as, in the offline world, it is unacceptable to eavesdrop on someone else's conversation, so too is the digital equivalent: third-party tracking. Relatedly, in classic work, Grice articulated maxims of conversations, and these norms are believed to guide people's expectations with respect to how they and others behave with information. One of those norms is the norm of "quantity," whereby a person doesn't reveal more information than necessary. Applied to the context of Chrome use, what this means is that a person would expect the services with which they interact—in this case, Google Chrome—to only collect the information relevant to the given "interaction" with Google. This means that they would not expect Google to share their data with third parties. Further, this "background belief" may dissuade people from reading privacy notices: if you aren't expecting your information to be transmitted for purposes orthogonal to the salient purpose you have in mind for using a website, then why read the notice?

As I stated in "Why Am I Seeing This Ad? The Effect of Ad Transparency on Ad Effectiveness," I explained with my co-authors that (p. 908):

> In the offline world, acceptable versus unacceptable flows of information are generally well established and agreed upon. A wealth of research shows that people inherently understand, and generally adhere to, implicit rules of communication. For instance, people are adept at complying to social rules of disclose and penalize non-compliance. And, with respect to the sharing of personal information in particular, there are norms or "rules" that span across contexts. …

> In offline contexts, there are strong norms with respect to appropriate flows of personal information, and violations of these norms can seem invasive.

> Although offline and online worlds differ greatly in the way personal information is gathered and used, we posit that when determining whether a given ad practice is acceptable, consumers turn to the offline world as a guidepost, where these norms – the ways in which individuals should behave in sharing personal information – are well established and well understood. Indeed, philosopher Helen Nissenbaum suggest that in orienting to the often bewildering online world, consumers look for "the contours of familiar social activities and structures." Consistent with this theorizing, Moon (2000) empirically demonstrated that the tendency to reciprocate others' disclosures – a well-established norm in offline contexts – also applies in online human-computer interactions.

> These ideas, coupled with the fact that consumers have idiosyncratic, preconceived notions of how firms ought to handle their personal data (Malhotra, Kim, and Agarwal 2004; Milne and Gordon 1993; Smith, Milberg, and Burke 1996), suggest that consumer response to ad transparency will depend on consumers' perceptions of which information flow patterns should – or should not – be used to generate the ads.

Our study found that, consistent with the well-established and agreed upon understanding of unacceptable flows of information in the offline world, consumers "thought that firms should not use information obtained cross-website relative to that obtained within website" and that "firms should not make inferences about their attributes relative to relying on ones that the consumer had stated" (p. 911). We also found that, when consumers were actually informed of cross-website tracking behavior, ad effectiveness was significantly reduced.

> B.    *If a reasonable consumer were to read Google's privacy policies, it is reasonable for her to use Chrome in the not-synced state and believe that Chrome will not send her personal information to Google.*

It is my understanding that, when considering internet privacy cases, courts presume that the users in question read the privacy disclosures made by a company. I was provided the Court's decision on Google's motion to dismiss, in which the Court explained that for a company like Google to show consent, its "disclosures must 'explicitly notify' users of the practice at issue" and "the disclosures must have only one plausible interpretation for a finding of consent."

Though there is behavioral scientific research to question this underlying legal assumption—that people read privacy policies—(see below), my opinion is that if consumers did read the relevant privacy disclosures, they would not come to one singular interpretation of what these notices mean, and a common—and perhaps even the most common—understanding would be to conclude that not syncing means that Google would not collect their personal information.

My opinion is based on a body of research pointing to how difficult it is to understand privacy policies and that, indeed, most people do not understand them. In fact, one study indicated that even privacy policy experts do not always agree on what a given privacy policy is actually saying.[5] Moreover, there are several express statements in the Chrome Privacy Notice that, assuming that the user reads it, could lead reasonable consumers to believe that Google does not collect their personal information if they are not synced. For example:

- "You don't need to provide any personal information to use Chrome."
- "The personal information that Chrome stores won't be sent to Google unless you choose to store that data in your Google Account by turning on sync."
- "In general, the fact that you use Chrome to access Google services, such as Gmail, does not cause Google to receive any additional personally identifying information about you."
- "Sync is only enabled if you choose."
- If you don't enable sync and allow "your Chrome data to personalize your Google experience outside of Chrome, Google will only use your Chrome data after it's anonymized and aggregated with data from other sources."

For the purpose of this analysis, I assume that in fact Chrome does send personal information to Google even when the user is not synced, and that Google uses it to "personalize" data. I understand that Google may argue that reasonable consumers should have known Google was engaged in this conduct (i.e., collecting user data even when they are not synced) based on disclosures that were present in Google's general Privacy Policy and on other websites. Google's

---

[5] https://papers.ssrn.com/sol3/papers.cfm?abstract_id=2418297

argument is contrary to how normal people consider relationships with the services they use. It would be difficult for a consumer to understand that their use of Chrome was controlled by a privacy statement other than the one that Google says is directly applicable to Chrome. Further, though the Google Privacy Policy as a whole is lengthy and difficult to understand, there are relatively straight-forward statements about Sync and Chrome browsing history that are consistent with the Chrome Privacy Notice, in the sense that they could reasonably lead consumers to think that Google does not collect their data when they are not synced. These include:

- "The activity information we collect may include: … Chrome browsing history you've synced with your Google Account." and
- "Your Chrome browsing history is only saved to your account if you've enabled Chrome synchronization with your Google Account."

The same general principle would be true for statements from other websites. As explained below, consumers generally do not read website privacy policies. However, based on my experience and research, if they did here, consumers would not understand that statements of non-Google websites would change how Google was expected to treat their personal information when they were using Chrome.

In addition to these various privacy statements, it is my conclusion that the Chrome user interface does not explicitly explain that Chrome routinely sends their personal information to Google. It also does not explain, in a way that is readily comprehensible to consumers, what kind of data is collected and sent and how it is used.

Scholars and practitioners have addressed the question of whether users read privacy policies. The conclusion from this work is clear: "an overwhelming majority of Internet users do not read privacy policies." (p. 513).[6] For example, one nationally representative poll from 2019 asked Americans: "When you are asked to agree to a company's privacy policy, how often do you read it before agreeing to it?" The response options were: "always," "often," "sometimes," "never" and "no answer."[7] Thirty-six percent said that they <u>never</u> read privacy policies, and 38% said that they only <u>sometimes</u> read privacy policies. Only 13% said that they <u>often</u> read them, and fewer still – 9% – reported <u>always</u> reading them. Another study measured whether people even clicked on the link to view a privacy policy in the first place; only 26% of participants did so (and it is unclear whether these participants actually read the policy).[8] Moreover, the authors noted that this 26% is likely an overestimate: "we believe that the policy consultation numbers are inflated because subjects knew they were being observed, and what the purpose of the experiment was. They therefore likely took more care and were more thorough in their decision-making process than they normally would" (p. 215).

Given the sheer number of privacy policies that the average consumer encounters in daily life, asking consumers to read (let alone understand) privacy policies is an unreasonable ask.

---

[6] https://www.science.org/doi/10.1126/science.aaa1465
[7] https://www.pewresearch.org/internet/wp-content/uploads/sites/9/2019/11/Pew-Research-Center_PI_2019.11.15_Privacy_FINAL.pdf
[8] https://dl.acm.org/doi/10.1016/j.ijhcs.2005.04.019

Indeed, it would take a person 244 hours per year just to read all privacy policies of all the websites they visit—the aggregate opportunity cost of this time to US consumers as a whole was estimated to be $781 billion per year.[9]

Second, some people do not expect to understand what is there, so they figure, "why bother?" Indeed, privacy policies are typically difficult for people to understand, which may contribute to a general sense of "why bother to read this if I won't even understand it."

Third, some people may expect the privacy policy to be reasonable. For example, in one survey, 62% of respondents incorrectly believed that the mere existence of a privacy policy meant that the website would not share their personal information without their permission.[10]

Fourth, privacy policies are often inconspicuous and difficult to find, which I also find to be the case with Google's placement of its links to its relevant privacy information. It is not reasonable to expect a person to read a privacy notice if they do not even notice it in the first place. Empirical research, including my own, indicates that consumers can be insensitive to important but non-salient factors. For example, people are less likely to respond to incentives when those incentives are not made salient – even when they are aware of the existence of such incentives.[11] Similarly, other work has found that people's purchase behavior is unaffected by taxes when those taxes are not made salient (for example, by highlighting them on price tags).[12]

## 4.     The Plaintiffs' experiences mentioned in their depositions are typical of reasonable consumers.

Given my opinions above, the plaintiffs who wish to act as class representatives (at least the four who have been deposed to date) seem typical of the reasonable consumer. All four said they did not read Google's policies or terms of service, in great detail or at all, similar to the majority of U.S consumers who do not read or understand privacy policies despite caring about their privacy. And all four expressed concern upon learning that Chrome was reporting their information to Google without being synced, typical of how I believe the reasonable consumer would react upon learning the facts of this litigation.

For example, Calhoun stated: "I am aware that certain policies and terms of service were presented at the time of download, but I did not read them. Those documents were "large, they were confusing" and I assumed that Google would act in accordance with "the law and ethics." Tr. 100:10-101:12. He said: "Even absent the "Sync" language, and as previously testified to, I expect that my personal information, including the contents of my Internet communications, are and will remain private absent my express consent. This expectation is based on my "expectations of privacy day-to-day." Tr. 20:14-21:4. By this I mean, that in my daily life I do not expect my property to be taken without my consent. For example, if I created a graphic design that design should not be copied

---

[9] https://lorrie.cranor.org/pubs/readingPolicyCost-authorDraft.pdf
[10] https://www.ftc.gov/system/files/documents/public_comments/2015/09/00003-97143.pdf
[11] https://www.hbs.edu/faculty/Pages/item.aspx?num=60569
[12] https://www.hbs.edu/ris/Publication%20Files/DonnellyEtAlForthcoming2021_86fbc33d-7701-403c-b667-9502ba8b9d65.pdf

without my consent, or if I created music that music would not be stolen. I have the same expectation of my personal information when using the Internet. *See* Tr. 22:11-22. My expectation of privacy is also based on Google marketing, which "has consistently used as marketing tool the idea of privacy and protection of [] [] data, as a reason to use Google Chrome's products…." Tr. 20:20-21:1, 23:7-16."

Plaintiff Crespo's comments sound similar themes. "I am not okay with "[t]he fact that they were still collecting information from me while they stated they weren't." Tr. 39:25-40:10. "When you sync into Chrome, it's collecting all this information. But if you are not synced, then my understanding is that my information is not being collected and shared." Tr. 72:9-73:4.

Plaintiffs Henry and Kindler also paint a consistent picture. Henry: "After filing this lawsuit, I stopped using Chrome because it "was sharing my information with . . . Google without my consent." Tr. 22:7-14. Kindler: "I think it's creepy how much information is collected on individuals." Tr. 27:17-19. "I believe what Google is doing—taking people's information, bundling it, and then selling it without consent or compensation to the individual is wrong." Tr. 58:13-16.

I understand plaintiffs Wilson and Johnson have not yet been deposed and reserve a right to address new testimony, but their statements in their declaration are also consistent in general and quite typical of general consumer sentiment on the points discussed herein.


Signed,

*Leslie John*

_____

Leslie K. John
October 13, 2021

EXHIBIT A



**Leslie K. John**

Baker Library | Bloomberg Center 467
Harvard Business School
Boston, MA 02163
617.495.6394
ljohn@hbs.edu

## ACADEMIC POSITIONS

| | |
|---|---|
| 07/2011 – present | Professor, Harvard Business School |
| 07/2016 – 07/2021 | Marvin Bower Associate Professor, Harvard Business School |
| 07/2011 – 06/2016 | Assistant Professor, Harvard Business School |

## EDUCATION

| | |
|---|---|
| May 2011 | Ph.D., Behavioral Decision Research<br>Carnegie Mellon University, Pittsburgh, PA |
| May 2008 | M.Sc., Psychology & Behavioral Decision Research<br>Carnegie Mellon University, Pittsburgh, PA |
| May 2006 | B.A., Honors Psychology & Arts and Business Co-op<br>University of Waterloo, Ontario, Canada |
| 1992 – 2001 | Trained at international ballet schools:<br>National Ballet School of Canada, Toronto, Ontario, Canada<br>Royal Winnipeg Ballet School, Manitoba, Canada<br>John Cranko Ballet School, Stuttgart, Germany |

## HONORS AND AWARDS

Recognition for individual articles:
- Finalist for the McKinsey Award, which recognizes the year's best *Harvard Business Review* article (Brooks & John, 2018)
- Winner of the Michael P. O'Donnell Paper of the Year for impactful research on a topic of timely importance in health promotion (John et al., 2018, *American Journal of Health Promotion*)
- Finalist for the American Marketing Association's Green Award, which recognizes articles with the most potential to contribute to marketing practice (John, Emrich, Gupta, & Norton, 2017, *Journal of Marketing Research)*
- Winner of the Future of Privacy Forum's Best Privacy Paper for Policy Makers (Acquisti, John, & Loewenstein, 2013, *Journal of Legal Studies*)

Marketing Science Institute Young Scholar, 2017
Association for Psychological Science Rising Star, 2016
Wired Innovation Fellow, 2016
Doctoral Fellowship, Facebook, Inc., 2010-2011
Doctoral Fellowship, Social Sciences and Humanities Research Council of Canada, 2007-2010

## AFFILIATIONS

Faculty Associate, Berkman Klein Center for Internet & Society, Harvard University, 2019-present
Research Fellow, Behavioural Economics in Action at Rotman (BEAR), University of Toronto, 2018-present
Affiliate Scientist, Center for Health and Happiness, Harvard Chan School of Public Health, 2014-present
Faculty Affiliate, Healthcare Initiative, Harvard Business School, 2013-present
Faculty Affiliate, Behavioral Insights Group, Harvard Kennedy School, 2013-present
Faculty Affiliate, University of Pennsylvania Center for Health Incentives & Behavioral Economics, 2011-present

## PUBLICATIONS

### Academic Journal Articles

Donnelly, G. E., Guge, P. M., Howell, R.T., & John, L.K. (*Forthcoming).* A Salient Sugar Tax Decreases Sugary Drink Buying, *Psychological Science.*

Decelles, K.A., Adams, G.S., Howe, H., & John, L.K. (*Forthcoming*). Anger Damns the Innocent, *Psychological Science.*

Collins, H., Whillans, A.V., & John, L.K. (2021). Joy and Rigor in Behavioral Science, *Organizational Behavior and Human Decision Processes*, 164, 179-191.

Milkman, K. L., *+42 authors including John, L.K.,* Duckworth, A.L. (2021). A Mega-Study of Text-Based Nudges Encouraging Patients to Get Vaccinated at an Upcoming Doctor's

Appointment. *Proceedings of the National Academy of Sciences*, 118(20).

Mohan, B., Buell, R.W., & John, L.K. (2020). Lifting the Veil: The Benefits of Cost Transparency, *Marketing Science*, 39(6), 1033-1201.

Kim, T., Barasz, K., John, L.K. (2020). Consumer Disclosure, *Consumer Psychology Review*, 1-11.

John, L.K., Slepian, M.L., & Tamir, D. (2020). Tales of Two Motives: Disclosure and Concealment, *Current Opinion in Psychology*, 31, iv-vii.

Gershon, R., Cryder, C., & John, L.K. (2020). Why Prosocial Referral Incentives Work: The Interplay of Reputational Benefits and Action Costs, *Journal of Marketing Research*, 57(1), 156-172.

Bachireddy, C., Joung, A., John, L.K., Gino, F., Tuckfield, B., Foschini, L., & Milkman, K. (2019). Effect of Different Financial Incentive Structures on Promoting Physical Activity Among Adults, *JAMA Network Open*, 2(8), 1-13.

John, L.K., Loewenstein, G., Marder, A., & Callaham, M. (2019). Effect of Revealing Authors' Conflicts of Interests in Peer Review: Randomized Controlled Trial, *British Medical Journal*, 367: l5896.

Kim, T., John, L.K., Rogers, T. & Norton, M.I. (2019). Procedural Justice and the Risks of Consumer Voting, *Management Science*, 65(11), 5234-5251.

Blunden, H., Logg, J., Brooks, A.W., John, L.K., & Gino, F. (2019). Seeker Beware: The Interpersonal Costs of Ignoring Advice, *Organizational Behavior and Human Decision Processes*, 150, 83-100.

John, L.K., Jeong, M., Gino, F., & Huang, L. (2019). The Self-Presentational Consequences of Upholding One's Stance in Spite of the Evidence, *Organizational Behavior and Human Decision Processes*, 154, 1-14.

John, L.K., Blunden, H., & Liu, H. (2019). Shooting the Messenger, *Journal of Experimental Psychology: General*, 148(4), 644-666.

John, L.K., Donnelly, G.E., & Roberto, C. (2019). Using Behavioral Science to Inform Policies Limiting Sugary-Drink Portions: Reply to Wilson and Stolarz-Fantino (2018), *Psychological Science*, 30(7), 1103-1105.

Kim, T., Barasz, K. & John, L.K. (2019). Why Am I Seeing this Ad? The Effect of Ad Transparency on Ad Effectiveness, *Journal of Consumer Research*, 45(5), 906-932.

John, L.K., Troxel, A., Yancy, W., Friedman, J., Zhu, J. Yang, L., Halpern, S., Galvin, R., Miller-Kovach, K., Loewenstein, G. & Volpp, K. (2018). The Effect of Cost Sharing on an Employee Weight Loss Program: A Randomized Trial, *American Journal of Health Promotion*, 32(1), 170-176.

Donnelly, G.E.,* Zatz, L.Y.,* Svirsky, D., & John, L.K. (2018). The Effect of Graphic Warnings on

Sugary-Drink Purchasing, *Psychological Science*, 29(8), 1321-1333. *The first two authors contributed equally.

Thomadsen, R., Rooderkerk, R., Amir, O., Arora, N., Bollinger, B., Hansen, K., John, L.K., Liu, W., Sela, A., Singh, V., Sudhir, K., Wood, W. (2018). How Context Affects Choice, *Customer Needs and Solutions*, 5(1), 3-14.

Callaham, M., & John, L.K. (2018). What Does It Take to Change an Editor's Mind? Identifying Minimally Important Difference Thresholds for Peer Reviewer Rating Scores of Scientific Articles, *Annals of Emergency Medicine*, 72(3), 314-318.e2.

John, L.K., Loewenstein, G., Acquisti, A. & Vosgerau, J. (2018). When and Why Randomized Response Techniques (Fail to) Elicit the Truth, *Organizational Behavior and Human Decision Processes*, 148, 101-123.

John, L.K., Emrich, O., Gupta, S. & Norton, M.I. (2017). Does "Liking" Lead to Loving? The Impact of Joining a Brand's Social Network on Marketing Outcomes, *Journal of Marketing Research*, 54(1), 144-155.

Barasz, K., John, L.K., Keenan, E., & Norton, M.I. (2017). Pseudo-Set Framing, *Journal of Experimental Psychology: General*, 146(10), 1460-1477.

John, L.K., Donnelly, G.E. & Roberto, C.A. (2017). Psychologically Informed Implementations of Sugary-Drink Portion Limits, *Psychological Science*, 28(5), 620-629.

Hofstetter, R., Rüppell, R., & John, L.K. (2017). Temporary Sharing Prompts Unrestrained Disclosures That Leave Lasting Negative Impressions, *Proceedings of the National Academy of Sciences*, 114(45), 11902-11907.

John, L.K., Barasz, K. & Norton, M.I. (2016). Hiding Personal Information Reveals the Worst, *Proceedings of the National Academy of Sciences*, 113(4), 954-959.

Barasz, K., Kim, T. & John, L.K. (2016). The Role of (Dis)similarity in (Mis)predicting Others' Preferences, *Journal of Marketing Research*, 53(4), 597-607.

Rogers, T., Milkman, K.L., John, L.K. & Norton, M.I. (2015). Beyond Good Intentions: Prompting People to Make Plans Improves Follow-through on Important Tasks, *Behavioral Science & Policy*, 1(2), 33-41.

John, L.K., Loewenstein, G. & Rick, S. (2014). Cheating More for Less: Upward Social Comparisons Motivate the Poorly Compensated to Cheat, *Organizational Behavior and Human Decision Processes*, 123(2), 101-109.

John, L.K. & Norton, M.I. (2013). Converging to the Lowest Common Denominator in Physical Health, *Health Psychology*, 32(9), 1023-1028.

Mitchell, M.S., Goodman, J.M., Alter, D.A., John, L.K., Oh, P.I., Pakosh, M.T., & Faulkner, G.E. (2013). Financial Incentives for Exercise Adherence in Adults: Systematic Review and Meta-analysis, *American Journal of Preventive Medicine*, 45(5), 658-667.

Acquisti, A., John, L.K. & Loewenstein, G. (2013). What is Privacy Worth? *Journal of Legal Studies*, 42(2), 249-274.

Haward, M.F., John, L.K., Lorenz, J.M. & Fischhoff, B. (2012). Effects of Description of Options on Parental Perinatal Decision-Making, *Pediatrics*, 129(5), 891-902.

John, L.K., Loewenstein, G. & Volpp, K. (2012). Empirical Observations on Longer-term Use of Incentives for Weight Loss, *Preventive Medicine*, 55, S68-S74.

Acquisti, A., John, L.K. & Loewenstein, G. (2012). The Impact of Relative Standards on the Propensity to Disclose, *Journal of Marketing Research*, 49(2), 160-174.

John, L.K., Loewenstein, G. & Prelec, D. (2012). Measuring the Prevalence of Questionable Research Practices With Incentives for Truth Telling, *Psychological Science*, 23(5), 524-532.

John, L.K., Loewenstein, G., Troxel, A., Norton, L., Fassbender, J. & Volpp, K. (2011). Financial Incentives for Extended Weight Loss: A Randomized, Controlled Trial, *Journal of General Internal Medicine*, 26(6), 621-626.

Koehler, D., White, R. & John, L.K. (2011). Good Intentions, Optimistic Self-Predictions, and Missed Opportunities, *Social Psychological and Personality Science*, 2(1), 90-96.

John, L.K., Acquisti, A. & Loewenstein, G. (2011). Strangers on a Plane: Context-Dependent Willingness to Divulge Sensitive Information, *Journal of Consumer Research*, 37(5), 858-873.

John, L.K. & Fischhoff, B. (2010). Changes of Heart: The Switch-Value Method for Assessing Value Uncertainty, *Medical Decision Making*, 30(3), 388-397.

Volpp, K., John, L.K., Troxel, A., Norton, L., Fassbender, J. & Loewenstein, G. (2008). Financial Incentive-Based Approaches for Weight Loss: A Randomized Trial, *Journal of the American Medical Association*, 300(22), 2631-2637.

## Book Chapters

LeBel, E. & John, L.K. (2017). Toward Transparent Reporting of Psychological Science, in S.O. Lilienfield and I.D. Waldman (Eds.), *Psychological Science Under Scrutiny: Recent Challenges and Proposed Solutions*, New York: John Wiley & Sons.

John, L.K. (2015). The Consumer Psychology of Online Privacy: Insights and Opportunities from Behavioral Decision Theory, in M. Norton, D. Rucker and C. Lamberton (Eds.), *Cambridge Handbook of Consumer Psychology*.

Loewenstein, G., John, L.K. & Volpp, K. (2013), Using Decision Errors to Help People Help Themselves, in E. Shafir (Ed.), *The Behavioral Foundations of Public Policy*, Princeton and Oxford: Princeton University Press, 361-379.

## Academic Research Pipeline

Brough, A.I., Norton, D.A., Sciarappa, S., & John, L.K. The Bulletproof Glass Effect: When Privacy Notices Backfire, Harvard Business School Working Paper No. 20-089, February 2020, *revise and resubmit, Journal of Marketing Research*.

Garcia-Rada, X., John, L.K., O'Brien, E., & Norton, M.I. A Preference for Revision Absent Objective Improvement, Harvard Business School Working Paper, No. 19-087, February 2019 (revised December 2019), *revise and resubmit, Journal of Marketing Research*.

Hofstetter, R., Kunath, G., & John, L.K. From Sweetheart to Scapegoat: Brand Selfie-Taking Shapes Consumer Behavior, Harvard Business School Working Paper No. 20-085, February 2020, *under review, Journal of Marketing Research*.

Jiang, L., Kouchaki, M., Gino, F., Boghrati, R., & John, L.K. Fostering Perceptions of Authenticity via Sensitive Self-Disclosure, Harvard Business School Working Paper, No. 20-070, January 2020, *revise and resubmit,* Journal of Experimental Psychology: Applied.

John, L.K., Blunden, H., Milkman, K., Foschini, L., Gino, F., & Tuckfield, B. The Limits of Inconspicuous Incentives, *revise and resubmit, Organizational Behavior and Human Decision Processes*.

Kim, T., Barasz, K., John, L.K., & Norton, M.I. Calculators for Women: When Identity Appeals Provoke Backlash, Harvard Business School Working Paper, No. 19-086, February 2019.

Prinsloo, E., Barasz, K., John, L.K., & Norton, M.I. Opportunity Neglect, *revise and resubmit, Psychological Science*.

Small, M., Brant, K., Garcia-Rada, X., & John, L.K. People Avoid Their Support Network as Much as They Approach It—To Their Own Detriment, *under review*.

Volger, S., Parrott, J.S., Elbel, B., John, L.K., Block, J., Gibson, L., Rothpletz-Puglia, P., & Roberto, C. A. A Sugary Drink Portion Cap is Associated with Decreased Drink Ounces Bought and Consumed, *revise and resubmit, Preventive Medicine Reports*.

Keenan, E., Wilson, & John, L.K. When Less is More: Consumers Prefer Brands that Donate More in Relative versus Absolute Terms, *revise and resubmit, Marketing Letters*.

## Managerial Publications

### *Print*

John, L.K. Savvy Self-Promotion: The (Delicate) Art and Science of Bragging, *Harvard Business Review*. May-June 2021.

Brooks, A.W., & John, L.K. The Surprising Power of Questions, *Harvard Business Review*, May-June 2018.

John, L.K., Kim, T., & Barasz, K. Ads That Don't Overstep. *Harvard Business Review*, January-February 2018.

John, L.K., Mochon, D., Emrich, O. & Schwartz, J. What's the Value of a Like? *Harvard Business Review*, March-April 2017.

John, L.K. How to Negotiate with a Liar, *Harvard Business Review*, July-August 2016.

### *Digital*

Jeong, M., John, L.K., Gino, F., & Huang, L. Research: Changing Your Mind Makes You Seem Intelligent, *Harvard Business Review.org*, September 2019 https://hbr.org/2019/09/research-changing-your-mind-makes-you-seem-intelligent

Blunden, H., Logg, J., Brooks. A.W., John, L.K., & Gino, F. How Asking Multiple People for Advice Can Backfire, *Harvard Business Review.org*, May 2019 https://hbr.org/2019/05/how-asking-multiple-people-for-advice-can-backfire

John, L.K., Blunden, H., & Liu, H. Research Confirms: When Receiving Bad News We Shoot the Messenger, *Harvard Business Review.org*, April 2019 https://hbr.org/2019/04/research-confirms-when-receiving-bad-news-we-shoot-the-messenger

John, L.K. Uninformed Consent, *Harvard Business Review.org*, Lead Article in "The Surveillance Economy," The Big Idea Series, September 2018 https://hbr.org/cover-story/2018/09/uninformed-consent

John, L.K. What Hiding Reveals, *People Science*, March 2018 http://peoplescience.maritz.com/Articles/2018/What-Hiding%20Reveals

John, L.K. Dear Negotiation Coach: Breaking Bad News, *Negotiation Briefings*, September 2017.

John, L.K. Warts and All Beats Hiding Facts, *Wired Magazine*, April 2017. Also available online: http://www.wired.co.uk/article/truth-dating-communication

John, L.K. The Value of a Facebook Fan: Does "Liking" Influence Consumer Behavior? *American Marketing Association Scholarly Insights Blog*, February 13, 2017 https://www.ama.org/resources/Pages/the-value-of-a-facebook-fan.aspx

John, L.K. Dear Negotiation Coach: Dealing with Early-Bird Bidders, *Negotiation Briefings*, January 2017.

John, L.K. Dear Negotiation Coach: Encouraging Honesty, *Negotiation Briefings*, June 2016.

John, L.K. Dear Negotiation Coach: Minding the Gap, *Negotiation Briefings*, April 2015.

John, L.K. We Say We Want Privacy Online, But Our Actions Say Otherwise, *Harvard Business Review.org*, October 2015 https://hbr.org/2015/10/we-say-we-want-privacy-online-but-our-actions-say-otherwise

## Course Materials

Buell, R. & John, L.K. "Commonwealth Bank of Australia: Unbanklike Experimentation," Harvard Business School case 619-018 (2018) [27]. (Revised February 2020.)

Buell, R. & John, L.K. "Commonwealth Bank of Australia: Unbanklike Experimentation," Harvard Business School teaching note 620-041 (2019) [44]. (Revised February 2020.)

John, L.K. "Fishbowl: Scaling Up," Harvard Business School case 919-013 (2018) [23]. (Revised February 2020.)

John, L.K. "Fishbowl: Scaling Up," Harvard Business School teaching note 920-022 (2019) [43]. (Revised February 2020.)

John, L.K. "Fishbowl: Scaling Up (video supplement)," Harvard Business School multimedia/video supplement 920-706 (2020).

John, L.K., Weiss, M., & Kelley, J. "Sidewalk Labs: Privacy in a City Built from the Internet Up," Harvard Business School case 819-024 (2018) [29]. (Revised July 2019.)

John, L.K., Weiss, M., & Kelley, J. "Sidewalk Labs: Privacy in a City Built from the Internet Up," Harvard Business School teaching note 820-023 (2019) [30]. (Revised February 2020.)

Keenan, L.K. & John, L.K. "Back to the Roots," Harvard Business School case 518-073 (2018) [23]. (Revised October 2019.)

Keenan, L.K. & John, L.K. "Back to the Roots," Harvard Business School teaching note 520-028 (2019) [17].

John, L.K. & Preble, M.G. "The Campbell Home (A)," Harvard Business School case 918-017 (2017) [20]. (Revised January 2020.)

John, L.K. & Preble, M.G. "The Campbell Home (B)," Harvard Business School case 918-018 (2017) [2]. (Revised January 2020.)

John, L.K. & Preble, M.G. "The Campbell Home (C)," Harvard Business School case 918-019 (2017) [1]. (Revised January 2020.)

John, L.K. "The Campbell Home (A), (B) and (C)," Harvard Business School teaching note 919-012 (2018) [21].

John, L.K., Quelch, J. & Huckman, R. "CVS Health: Promoting Drug Adherence," Harvard Business School case 515-010 (2015) [12]. (Revised July 2019.)

John, L.K., Quelch, J. & Huckman, R. "CVS Health: Promoting Drug Adherence," Harvard Business School teaching note 515-086 (2015) [12].

Dolan, R.J. & John, L.K. "Marketing Reading: Marketing Intelligence," Core Curriculum Reading Series, Harvard Business Publishing 8191, (2015) [39].

John, L.K., Norton, M.I. & Norris, M. "Making stickK Stick: The Business of Behavioral Economics," Harvard Business School case 514-019 (2014) [15]. (Revised June 2015.)

John, L.K. & Norton, M.I. "Making stickK Stick: The Business of Behavioral Economics," Harvard Business School teaching note 515-088 (2015) [13]. (Revised September 2016.)

Dolan, R.J. & John, L.K. "Kiehl's Since 1851: Pathway to Profitable Growth," Harvard Business School case 514-044 (2013) [26]. (Revised April 2015.)

Dolan, R.J. & John, L.K. "Kiehl's Since 1851: Pathway to Profitable Growth (B)," Harvard Business School supplement 514-046 (2013) [8]. (Revised March 2015.)

John, L.K. & Dolan, R.J. "Kiehl's Since 1851: Pathway to Profitable Growth," Harvard Business School teaching note 515-087 (2015) [16].

### *In Preparation*
John, L.K. & Pierce, L. "Privacy at Civic Science," Harvard Business School case in preparation.


## SELECTED GRANTS

| 2019 – 2024 | ***Behaviourally Informed Organizations*** |
| | Social Sciences and Humanities Research Council of Canada, $2,500,000 CAD |
| | With Dilip Soman (PI, University of Toronto) and 19 co-applicants |

2015          ***Optimally Rewarding Exercise and Building Healthy Habits***
              Foundations of Human Behavior Initiative, $36,600
              With B. Tuckfield (Wharton), K. Milkman (Wharton), and F. Gino (Harvard)

2014          ***Evaluating Sugar-Sweetened Beverage Cap Policy***
              Obesity Society, $25,000; Foundations of Human Behavior Initiative, $15,000
              With C. Roberto (PI, Harvard), J. Block (Harvard), and B. Elbel (NYU)

2007          ***Research Grants, Financial Incentives for Weight Loss***
              U.S. Department of Agriculture, NICHD Population Studies Center, NIA
              Population Aging Research Center, Hewlett Foundation, $128,000
              With K. Volpp (PI, U Penn) & G. Loewenstein (CMU)

## TEACHING

**Primary teaching assignments**

      Negotiation and Behavioral Design, Program for Leadership Development, Executive Education
          (2019, 2020, 2021)
      Negotiation, MBA Elective Curriculum course (Spring 2018, Spring 2019)
      Negotiation, MBA Elective Curriculum course (Fall 2015)
      Negotiation, MBA Elective Curriculum course (Spring 2015)
      Marketing, MBA Required Curriculum course (2011-2013)

**Secondary teaching activities**

      Transforming Customer Experiences, Executive Education (2019)
      Managing Healthcare Delivery, Executive Education (2018)
      Driving Digital and Social Strategy, Executive Education (2016, 2017, 2018)
      Behavioral Economics, Executive Education (2014 - 2021)
      Harvard Catalyst Program (2016)
      Harvard Graduate School of Design Executive Education (2016)
      Changing the Game, Executive Education (2015, 2016)
      Doctoral Seminar in Consumer Behavior, co-taught with Professor John Gourville (2014)
      Strategic Marketing Management, Executive Education (2013-2014)
      Guest Lecturer, Experimental Methods in Behavioral Research, Doctoral Program (2013)
      Guest Lecturer, Micro Topics in Organizational Behavior, Doctoral Program (2012, 2014)

**PRESENTATIONS**

**Invited presentations**

| | |
|---|---|
| Fall 2021 | Fuqua School of Business, Duke University (Marketing) |
| Spring 2021 | Tuck School of Business, Dartmouth University (Marketing) |
| Spring 2021 | University of Arizona, Eller College of Management (Information Systems) |
| Spring 2021 | Princeton University (Center for Information Technology Policy) |
| Spring 2021 | Columbia Business School (Management) |
| Spring 2021 | Data Colada seminar series |
| March 2020 | Harvard University (Psychology) – *postponed due to COVID-19* |
| February 2020 | Boston University (Cyber Security, Law, and Society Alliance) |
| January 2020 | Yale School of Management (Marketing) |
| November 2019 | Psychology of Technology Institute, Washington, DC |
| October 2019 | Harvard Business School (Technology, Operations, and Markets) |
| September 2019 | Media Alpha, Annual Conference Keynote |
| June 2019 | Keynote, Behavioural Economics in Action at Rotman conference |
| May 2019 | Rotterdam School of Management and Erasmus School of Economics |
| May 2019 | Bocconi University, Marketing Group |
| January 2019 | Stanford University, Graduate School of Business (Organizational Behavior) |
| November 2018 | Northeastern University, D'Amore-McKim School of Business (Marketing) |
| November 2018 | University of Texas at Austin, McCombs School of Business (Marketing) |

| | |
|---|---|
| October 2018 | Carnegie Mellon University, Center for Behavioral Decision Research |
| September 2018 | Media Alpha, Annual Conference Keynote |
| September 2018 | Washington University: Trust and Privacy in the Digital Age symposium |
| August 2018 | Tech Policy Institute, Aspen Forum |
| May 2018 | Massachusetts Institute of Technology, Sloan School of Management (Marketing) |
| March 2018 | University of Manitoba, Asper School of Business (Marketing) |
| February 2018 | University of Minnesota, Carlson School of Management (Marketing) |
| May 2017 | INSEAD, Fontainebleau (Marketing) |
| March 2017 | Keynote, Designing Privacy for Real People, Behavioural Economics in Action Rotman, University of Toronto |
| February 2017 | University of Alberta (Marketing) |
| February 2017 | Judgment and Decision Making Preconference, Annual Meeting of the Society for Personality and Social Psychology |
| February 2017 | Washington University at St. Louis (Marketing) |
| January 2017 | University of Chicago (Coase-Sandor Institute for Law and Economics) |
| December 2016 | Boston Chief Information Security Officer Executive Summit |
| November 2016 | Wired 2016 |
| October 2016 | Perspectives on Robust, Reliable, and Replicable Methods in the Psychological/Behavioral Sciences, Harvard University |
| June 2016 | Behavioral Exchange, Cambridge, MA |
| April 2016 | Anderson School of Management, UCLA (Marketing) |
| March 2016 | Cornell University (Behavioral Economics and Decision Research seminar) |
| January 2016 | The Future Frontiers of Online Privacy, University of Toronto |
| November 2015 | University of Massachusetts, Amherst (Marketing) |
| July 2015 | Chautauqua Institution |
| March 2015 | Chicago Booth School of Business (Marketing) |
| May 2014 | Faculty Research Symposium, Healthcare Initiative Spotlight, HBS |
| April 2014 | Behavioral Economics & Public Health Workshop, Harvard School of Public Health |
| March 2014 | Haas School of Business, University of California at Berkeley (Marketing) |
| March 2014 | Behavioral Insights Group, Harvard University |
| February 2014 | National Science Foundation (Workshop: Promoting Robust and Replicable Research) |
| February 2014 | University of Vermont (Vermont Center on Behavior and Health) |
| February 2014 | Boston University (Marketing) |
| November 2013 | Institute for Quantitative Social Science, Harvard |
| October 2013 | New England Marketing Consortium (Marketing) |
| October 2013 | Yale School of Management (Marketing) |
| September 2013 | University of Texas at Dallas (Economics) |
| August 2013 | Insight Squared, Inc. |
| May 2013 | Association for Psychological Science |
| May 2013 | Consumer Health Summit, Stamford, CT |
| May 2013 | Applying Field Experimentation to Behavior Research, Rady School, UC San Diego |
| April 2013 | Ross School of Business, University of Michigan (Marketing) |
| March 2013 | HubSpot, Inc. |

| March 2013 | Columbia Business School (Marketing) |
| February 2013 | Royal Flemish Academy of Belgium for Science and the Arts |
| November 2012 | Wharton School, University of Pennsylvania (OPIM) |
| May 2012 | Workshop on the Behavioral Economics of Innovation, Marketing Science Institute |
| March 2012 | The Science of Getting People to do Good, Stanford Center for Social Innovation |
| February 2011 | University of Vermont and U.S. Navy Medicine: Incentives and Health Symposium |
| November 2010 | Yale School of Management (Organizational Behavior) |
| November 2010 | Harvard Business School (Marketing) |
| October 2010 | Leeds School of Business, University of Colorado at Boulder (Marketing) |
| October 2010 | Rotman School of Management, University of Toronto (Marketing) |
| October 2010 | Kellogg Graduate School of Management, Northwestern University (Marketing) |
| September 2010 | University of Technology, Sydney, Australia (Marketing) |
| September 2010 | Desautels Faculty of Management, McGill University (Marketing) |
| August 2010 | Facebook, Inc. |

**Selected Talks at Peer-Reviewed Scientific Meetings (does not include talks by co-authors)**

Brough, A., & John, L.K. The Bulletproof Glass Effect
- Association for Consumer Research, 2019 (Atlanta)
- Society for Consumer Psychology, 2017 (San Francisco)

Donnelly, G.E., Zatz, L., Svirsky, D., & John, L.K. The Effect of Graphic Warnings on Sugary Drink Purchasing
- Academy of Management, 2018 (Chicago)

Hofstetter, R., Rueppell, R., & John, L.K. Temporary Sharing, Enduring Impressions
- Digitized Behavior, Behavioral Decision Research in Management pre-conference, 2018 (Boston)
- Marketing Science, University of Southern California, 2017 (Los Angeles)
- Academy of Management, 2017 (Atlanta)
- Association for Consumer Research, 2017 (San Diego)
- Society for Judgment and Decision Making, 2017 (Vancouver)

John, L.K., Blunden, H., & Liu, H. Shooting the Messenger
- Academy of Management, 2017 (Atlanta)
- Society for Experimental Social Psychology, 2017 (Boston)

John, L.K., Donnelly, G.E. & Roberto, C. Setting the Record Straight on Soda Size Cap Policies.
- Association for Consumer Research, 2015 (New Orleans)
- Society for Consumer Psychology, 2016 (St. Petersburg)
- Tenth Triennial Invitational Choice Symposium, 2016 (Lake Louise, Canada)
- Behavioral Exchange, 2016 (Boston)

John, L.K., Garcia-Rada, X. & Norton, M.I. Revision Bias: Preferences for Revised Experiences Absent Objective Improvement

- Behavioral Decision Research in Management, 2018 (Boston)
- Association for Consumer Research, 2015 (New Orleans)
- Society for Consumer Psychology, 2016 (St. Petersburg)
- Society for Judgment and Decision Making, 2016 (Boston)

John, L.K., Emrich, O., Gupta, S. & Norton, M.I. What are Facebook Fans Really Worth?, Theory and Practice of Marketing, London Business School, 2013 (London)

John, L.K. & Norton, M.I. What Hiding Reveals
- Society for Personality and Social Psychology, 2013 (New Orleans)
- Society for Consumer Psychology, 2013 (San Antonio)
- Association for Consumer Research, 2013 (Chicago)

John, L.K. & Norton, M.I. Walking While Working
- Behavioral Decision Research in Management, 2012 (Boulder)
- Association for Consumer Research, 2012 (Vancouver)
- Society for Consumer Psychology, 2013 (San Antonio)

John, L.K., Loewenstein, G. & Prelec, D. Measuring the Prevalence of Questionable Research Practices with Incentives for Truth Telling
- Society for Personality and Social Psychology, 2012 (San Diego)
- Association for Psychological Science, 2012 (Chicago)
- American Psychological Association, 2012 (Orlando)

John, L.K., Loewenstein, G. & Acquisti, A. Paradoxical Effects of Randomized Response Techniques
- Society for Judgment and Decision Making, 2011 (Seattle)
- Academy of Management, 2018 (Chicago)

John, L.K., Loewenstein, G. & Rick, S. Cheating More for Less, Behavioral Decision Research in Management, 2010 (Pittsburgh)

Volpp, K., John, L.K., Norton, L., Fassbender, J., Troxel, A. & Loewenstein, G. Financial Incentive-Based Approaches for Weight Loss: A Randomized Trial
- Society for Judgment and Decision Making, 2008 (Chicago)
- Society for Medical Decision Making, 2008 (Philadelphia)

John, L.K., Acquisti, A. & Loewenstein, G. Inconsistent Preferences for Privacy, Behavioral Decision Research in Management, Rady School of Management, 2008 (UC San Diego)

## Discussant / Panelist

John, L.K. Conversation on Translating Consumer Research into Policy, Society for Consumer Psychology, 2017 (San Francisco).

John, L.K. Causes and Consequences of Consumer Susceptibility to Financial Dishonesty, Conference on Consumer Financial Decision Making, 2016 (Boulder).

John, L.K. Think outside the Lab: Using Field Data in Behavioral Research, Association for Consumer Research, 2012 (Vancouver).

## SERVICE

| | |
|---|---|
| Co-Editor: | Special Issue of *Current Opinion in Psychology*: Privacy and Disclosure, Online and in Social Interactions (2020) |
| Associate Editor: | *Collabra: Psychology* |
| Editorial Board: | *Journal of Consumer Research* (2020 – present)<br>*Journal of Marketing Research* (2018 – 2020)<br>*Social Psychological and Personality Science* (2017 – 2019) |
| Reviewing: | *Advances in Methods and Practices in Psychological Science*<br>*American Psychologist*<br>*Annals of Behavioral Medicine*<br>*Computers in Human Behavior*<br>*Health Economics*<br>*Healthcare Policy*<br>*International Journal of Research in Marketing*<br>*Journal of the American Medical Association*<br>*Journal of Computer Mediated Communication*<br>*Journal of Consumer Psychology*<br>*Journal of Consumer Research*<br>*Journal of Economic Behavior*<br>*Journal of Empirical Legal Studies*<br>*Journal of Experimental Psychology: General*<br>*Journal of Experimental Social Psychology*<br>*Journal of Management*<br>*Journal of Marketing*<br>*Journal of Marketing Research*<br>*Journal of Personality and Social Psychology*<br>*Journal of Public Policy and Marketing*<br>*The Lancet*<br>*Management Information Systems Quarterly*<br>*Management Science*<br>*Marketing Science*<br>*Medical Decision Making*<br>*National Institute of Health*<br>*National Science Foundation*<br>*Nature Human Behavior*<br>*Organization Science* |

|  | *Organizational Behavior and Human Decision Processes* |
|---|---|
|  | *PLOS One* |
|  | *Preventive Medicine* |
|  | *Psychological Methods* |
|  | *Psychological Science* |
|  | *Science* |
|  | *Social Psychology* |
|  | *Social Psychological and Personality Science* |

Program Committee:  Behavioral Decision Research in Management, 2016, 2018, 2020
Society for Judgment and Decision Making, 2015-2019

Organizer:  Behavioral Decision Research in Management, 2018
Behavioral Insights Group Graduate Student Workshop, 2016
Women in Judgment and Decision Making Keynote and Luncheon, 2014, 2013, 2012

Other:  Marketing Science Institute Behavioral Economics Roundtable, 2016-17

## DOCTORAL ADVISING

- Kate Barasz, HBS Marketing (DBA 2016, initial placement: IESE Marketing, 2018 placement: HBS)
- Bhavya Mohan, HBS Marketing (DBA 2016, placement: USF Marketing)
- Tami Kim, HBS Marketing (DBA 2017, placement: UVA Darden School, Marketing)
- Grant Donnelly, HBS Marketing (DBA 2018, placement: The Ohio State University, Marketing)
- Martha Jeong, HBS Micro OB (PhD 2019, placement: HKUST, Management)
- Annie Wilson, HBS Marketing (PhD 2020, placement: Vanguard and The Wharton School)
- MoonSoo Choi, HBS Technology, Operations, and Management (DBA 2021, placement: Amazon)
- Ximena Garcia-Rada, HBS Marketing (PhD 2021, placement: Texas A&M, Marketing)
- Hayley Blunden, HBS Micro OB (PhD expected 2022)
- Emily Prinsloo, HBS Marketing (PhD expected 2023)

## MEMBERSHIPS

- Association for Consumer Research
- Society for Consumer Psychology
- Academy of Management
- Society for Judgment & Decision Making
- Society for Medical Decision Making
- Society for Personality and Social Psychology

**OTHER PROFESSIONAL EXPERIENCES**

| | |
|---|---|
| 2017 – present | Talks at various companies (e.g., Goldman Sachs) |
| 2017 | Research consultant for Pepsico |
| 2015 | Expert consultant for Bollea in Bollea (aka Hulk Hogan) vs. Gawker lawsuit |
| 2012 – 2014 | Weight Watchers, Inc. |
| 2009 – 2011 | Blue Cross Blue Shield |
| 2008 – 2009 | Glaxo Smith Kline; Genzyme |
| 2008 – 2010 | McKinsey & Company |

**SELECTED MEDIA COVERAGE**

*Bloomberg, Boston Public Radio, Business Insider, Canadian Broadcasting Corporation Radio, The Globe and Mail, Harvard Magazine, Los Angeles Times, National Public Radio, Nature, The New York Times, PBS Newshour, Scientific American, Times Magazine, The Wall Street Journal, Wired Magazine*

EXHIBIT B

Acquisti, A., & Grossklags, J. (2005). Privacy and rationality in individual decision making. *IEEE security & privacy*, *3*(1), 26-33.

Acquisti, A., Brandimarte, L., & Loewenstein, a. G. (2015). Privacy and human behavior in the age of information. *Science*, *347*(6221), 509-514.

Acquisti, A., Brandimarte, L., & Loewenstein, G. (2020). Secrets and Likes: The Drive for Privacy and the Difficulty of Achieving It in the Digital Age. *Journal of consumer psychology*, *30*(4), 736-758.

Acquisti, A., John, L.K. & Loewenstein, G. (2012). The Impact of Relative Standards on the Propensity to Disclose, *Journal of Marketing Research*, 49(2), 160-174.

Acquisti, A., John, L.K. & Loewenstein, G. (2013). What is Privacy Worth? *Journal of Legal Studies*, 42(2), 249-274.

Adjerid, I., Acquisti, A., Brandimarte, L., & Loewenstein, G. (2013). Sleights of privacy: framing, disclosures, and the limits of transparency. In *SOUPS* (pp. 1-11): ACM.

Athey, S., Catalini, C., & Tucker, C. (2017). *The digital privacy paradox: Small money, small costs, small talk*.

Auxier, B.; Rainie, L., Anderson, M.; Perrin, A. & M. a. E. T. Kumar (2019). Americans and Privacy: Concerned, Confused and Feeling Lack of Control Over Their Personal Information. Pew Research Center.

Beresford, A. R., Kübler, D., & Preibusch, S. (2012). Unwillingness to pay for privacy: A field experiment. *Economics letters*, *117*(1), 25-27.

Best, S. J., Krueger, B. S., & Ladewig, J. (2006). The polls- trends : Privacy in the information age. *Public opinion quarterly*, *70*(3), 375-401.

Bilogrevic, I., & Ortlieb, M. (2016). "If You Put All The Pieces Together..." Attitudes Towards Data Combination and Sharing Across Services and Companies. Proceedings of the 2016 CHI Conference on Human Factors in Computing Systems.

Brandimarte, L., Acquisti, A., & Loewenstein, G. (2013). Misplaced Confidences: Privacy and the Control Paradox. *Social psychological & personality science*, *4*(3), 340-347.

Brough, A.I., Norton, D.A., Sciarappa, S., & John, L.K. (2020). The Bulletproof Glass Effect: When Privacy Notices Backfire, *revise and resubmit, Journal of Marketing Research.*

Chetty, R., Looney, A., & Kroft, K. (2009). Salience and Taxation: Theory and Evidence. *American Economic Review*, *99*(4), 1145-1177.

Dinev, T., & Hart, P. (2006). An Extended Privacy Calculus Model for E-Commerce Transactions. *Information systems research*, *17*(1), 61-80.

Dinner, I., Johnson, E., Goldstein, D., & Liu, K. (2011). Partitioning Default Effects: Why People Choose Not to Choose (vol 17, pg 332, 2011). *Journal of Experimental Psychology-Applied*, *17*, 1.

Donnelly, G. E., Guge, P. M., Howell, R. T., & John, L. K. (Forthcoming). A Salient Sugar Tax Decreases Sugary Drink Buying. In: Psychological Science.

Gluck, J., Schaub, F., Friedman, A., Habib, H., Sadeh, N., Cranor, L. F., & Agarwal, Y. (2016). How short is too short? Implications of length and framing on the effectiveness of privacy notices. Twelfth Symposium on Usable Privacy and Security ({SOUPS} 2016),

Grice, P. (1975). "Logic and conversation". Cole, P.; Morgan, J. (eds.). In: *Syntax and semantics*. 3: Speech acts. New York: Academic Press. pp. 41–58.

Hofstetter, R., Rüppell, R., & John, L.K. (2017). Temporary Sharing Prompts Unrestrained Disclosures That Leave Lasting Negative Impressions, *Proceedings of the National Academy of Sciences*,    114(45), 11902-11907.

Hoofnagle, C. J., & Urban, J. M. (2014). Alan Westin's privacy homo economicus. *Wake Forest law review*, *49*(2), 261.

Jensen, C., Potts, C., & Jensen, C. (2005). Privacy practices of Internet users: Self-reports versus observed behavior. *International Journal of Human-Computer Studies*, *63*(1), 203-227.

John, L. K. (2015). The Consumer Psychology of Online Privacy: Insights and Opportunities from Behavioral Decision Theory. M. I. Norton & D. D. R. a. C. L. Rucker (Eds.), *The Cambridge Handbook of Consumer Psychology*. Cambridge University Press.

John, L. K. (2018). Uninformed Consent, *Harvard Business Review*, Lead Article in "The Surveillance Economy," The Big Idea Series.

John, L. K., Acquisti, A. & Loewenstein, G. (2011). Strangers on a Plane: Context-Dependent Willingness to Divulge Sensitive Information, *Journal of Consumer Research*, 37(5), 858-873.

John, L. K., Barasz, K. & Norton, M.I. (2016). Hiding Personal Information Reveals the Worst, *Proceedings of the National Academy of Sciences*, 113(4), 954-959.

John, L. K., Blunden, H., Milkman, K., Foschini, L., Gino, F., & Tuckfield, B. The Limits of Inconspicuous Incentives, *revise and resubmit, Organizational Behavior and Human Decision Processes.*

John, L. K., Kim, T., & Barasz, K. (2018). Ads That Don't Overstep. *Harvard Business Review*.

John, L. K., Loewenstein, G., Acquisti, A. & Vosgerau, J. (2018). When and Why Randomized Response Techniques (Fail to) Elicit the Truth, *Organizational Behavior and Human Decision Processes*, 148, 101-123.

John, L. K., Slepian, M. L., & Tamir, D. (2020). Editorial overview: Tales of two motives: disclosure and concealment. *Current Opinion in Psychology*, *31*, iv-vii.

Johnson, E. J., & Goldstein, D. (2003). Do Defaults Save Lives? *Science*, *302*(5649), 1338-1339.

Kelley, P. G. (2013). Designing Privacy Notices: Supporting User Understanding and Control.

Kelley, P. G., Cesca, L., Bresee, J., & Cranor, L. F. (2010). *Standardizing privacy notices: an online study of the nutrition label approach.* Proceedings of the SIGCHI Conference on Human Factors in Computing Systems, Atlanta, Georgia, USA.

Kim, T., Barasz, K. & John, L.K. (2019). Why Am I Seeing this Ad? The Effect of Ad Transparency on Ad Effectiveness, *Journal of Consumer Research*, 45(5), 906-932.

Kim, T., John, L. K., Rogers, T., & Norton, M. I. (2019). Procedural Justice and the Risks of Consumer Voting. *Management Science*, *65*(11), 5234–5251.

King, J. (2014). Taken out of context: An empirical analysis of westin's privacy scale. Workshop on Privacy Personas and Segmentation.

Kumaraguru, P. (2005). Privacy Indexes: A Survey of Westin's Studies. In L. F. Cranor (Ed.): Institute for Software Research International School of Computer Science, Carnegie Mellon University.

Leon, P., Ur, B., Wang, Y., Sleeper, M., Balebako, R., Shay, R., . . . Cranor, L. (2013). *What Matters to Users? Factors that Affect Users' Willingness to Share Information with Online Advertisers*.

Malhotra, N. K., Kim, S. S., & Agarwal, J. (2004). Internet Users' Information Privacy Concerns (IUIPC): The Construct, the Scale, and a Causal Model. *Information systems research*, *15*(4), 336-355.

McDonald, A. M., & Cranor, L. F. (2008). The cost of reading privacy policies. *I/S: A Journal of Law and Policy for the Information Society*, *4*, 543.

McDonald, A. M., Reeder, R. W., Kelley, P. G., & Cranor, L. F. (2009). A Comparative Study of Online Privacy Policies and Formats. In I. Goldberg & M. J. Atallah, *Privacy Enhancing Technologies* Berlin, Heidelberg.

Mohan, B., Buell, R.W., & John, L.K. (2020). Lifting the Veil: The Benefits of Cost Transparency, *Marketing Science*, 39(6), 1033-1201.

Moon, Y. (2000). Intimate Exchanges: Using Computers to Elicit Self-Disclosure From Consumers. *The Journal of consumer research*, *26*(4), 323-339.

Nissenbaum, H. (2004). Privacy as contextual integrity. *Washington law review*, 79(1), 119.

Nissenbaum, H. (2011). A Contextual Approach to Privacy Online. *Daedalus*, 140(4), 32–48.

Norberg, P. A., Horne, D. R., & Horne , D. A. (2007). The Privacy Paradox: Personal Information Disclosure Intentions versus Behaviors. *Journal of Consumer Affairs*, *41*(1), 100-126.

*Opinion Surveys: What Consumers Have to Say About Information Policy: Hearing before the U.S. House Committee on Energy and Commerce,* 107th Cong. (2001). https://www.govinfo.gov/content/pkg/CHRG-107hhrg72825/html/CHRG-107hhrg72825.htm

Ortlieb, M., & Garner, R. (2016). Sensitivity of personal data items in different online contexts. *it-Information Technology*, *58*(5), 217-228.

Rainie, L., Kiesler, S., Kang, R., & Madden, M. (2013). Anonymity, Privacy, and Security Online. In: Pew Research Center.

Rao, A., Schaub, F., Sadeh, N., Acquisti, A., & Kang, R. (2016). Expecting the unexpected: Understanding mismatched privacy expectations online. Twelfth Symposium on Usable Privacy and Security ({SOUPS} 2016),

Reidenberg, J. R., Beaux, T., Cranor, L. F., French, B., Grannis, A., Graves, J. T., . . . Schaub, F. (2015). Disagreeable Privacy Policies: Mismatches Between Meaning and Users' Understanding. *Berkeley technology law journal*, *30*(1), 39-88.

Schnorf, S., Ortlieb, M., & Sharma, N. (2014). Trust, transparency & control in inferred user interest models. In *Conference on Human Factors in Computing Systems* (pp. 2449-2454): ACM.

Schwarz, N. (1999). Self-reports: How the questions shape the answers. *American psychologist*, *54*(2), 93.

Smith, H. J., Milburg, S. J., & Burke, S. J. (1996). Information Privacy: Measuring Individuals' Concerns about Organizational Practices. *MIS quarterly*, *20*(2), 167-196.

Solove, D. J. (2007). "I've got nothing to hide" and other misunderstandings of privacy. *The San Diego law review*, *44*(4), 745.

Solove, D. J. (2012). Introduction: Privacy self-management and the consent dilemma. *Harv. L. Rev.*, *126*, 1880.

Solove, D. J., & Citron, D. K. (2021). Privacy Harms. *SSRN Electronic Journal*.

Spiekermann, S., Grossklags, J., & Berendt, B. (2001). *E-privacy in 2nd generation E-commerce: privacy preferences versus actual behavior* Proceedings of the 3rd ACM conference on Electronic Commerce, Tampa, Florida, USA.

Svirsky, D. (2019). Three Experiments about Human Behavior and Legal Regulation. In.

Tsai, J. Y., Egelman, S., Cranor, L., & Acquisti, A. (2011). The Effect of Online Privacy Information on Purchasing Behavior: An Experimental Study. *Information Systems Research*, *22*(2), 254-268.

Turow, J., King, J., Hoofnagle, C. J., Bleakley, A., & Hennessy, M. (2009). Americans Reject Tailored Advertising and Three Activities that Enable It. *SSRN Electronic Journal*.

United States Securities and Exchange Commission, (2012). *Registration Statement, Facebook Inc.* https://www.sec.gov/Archives/edgar/data/1326801/000119312512034517/d287954ds1.htm#toc287954_2

| | | |
|---|---|---|
| Exh B - Calhoun v. Google -- FAC 16 APR 2021-with TOC-UNREDACTED.pdf | | |
| Dkt 2 2020-07-27 Exs 1 to 33-Complaint.pdf | | |
| Dkt 57 Def Google's MTD Complaint.pdf | | |
| Dkt 57-1 Proposed Order Granting MTD.pdf | | |
| Dkt 57-2 Decl of Andrew H Shapiro iso MTD | | |
| Dkt 57-3 Exh A to Shapiro Decl iso MTD | | |
| Dkt 57-4 Exh B to Shapiro Decl iso MTD | | |
| Dkt 57-5 Exh C to Shapiro Decl iso MTD | | |
| Dkt 57-6 Exh D to Shapiro Decl iso MTD | | |
| Dkt 58 Def Google's Req for Judicial Notice iso MTD | | |
| Dkt 58-1 Proposed Order Granting Req for Judicial Notice iso MTD | | |
| Dkt 66 PL Req for JN iso MPA in Opposition to MTD | | |
| Dkt 67 PL MPA in Opposition to MTD | | |
| Dkt 67-1 Decl of Jay Barnes iso PL Opp to MTD | | |
| Dkt 67-2 Exh A to Decl of Jay Barnes iso PL Opp to MTD | | |
| Dkt 67-3 Exh B to Decl of Jay Barnes iso PL Opp to MTD | | |
| Dkt 67-4 Exh C to Decl of Jay Barnes iso PL Opp to MTD | | |
| Dkt 67-5 Exh D to Decl of Jay Barnes iso PL Opp to MTD | | |
| Dkt 67-6 Exh E to Decl of Jay Barnes iso PL Opp to MTD | | |
| Dkt 67-7 Exh F to Decl of Jay Barnes iso PL Opp to MTD | | |
| Dkt 81 Google's Reply iso MTD | | |
| Dkt 142 Order Granting in part Denying in part MTD | | |
| Dkt. No. 163, 4/16/2021 Redacted First Amended Complaint, Calhoun v. Google, No. 5:20-cv-05146-LHK (N.D | | |
| 2021-07-05 Calhoun v. Google - Pl Kindler Dep. Tr. w. Confidentiality Designations + Errata | | |
| Calhoun_PDFTran_Confidentiality & 502(d) Designations and Signed Errata_ | | |
| Crespo_PDFTran_Confidentiality Designations and Signed Errata_ | | |
| MichaelHenry_PDFTran_Confidentiality Designations and Signed Errata | | |
| 2021.10.11 - Calhoun v. Google - PL Henry Decl iso Class Cert - DocuSigned - Marked for Redaction | | |
| 2021.10.11 - Calhoun v. Google - PL Kindler Decl UNDER SEAL | | |
| 2021.10.12 - Calhoun v. Google - PL E. Crespo Declaration ISO  MCC - SIGNED | | |
| 2021.10.12 - Calhoun v. Google - PL Dr. R. Johnson Declaration - DocuSigned | | |
| 2021.10.13 - Calhoun v. Google - Pl. Dr. Wilson Declaration - DocuSigned | | |
| 2021.10.12 - Calhoun v. Google - PL P. Calhoun Declaration - Signed - Marked for Redaction | | |
| 2021-04-09 | ███████ | (signed) |
| 2021-04-09 | ███████ | (errata) |
| 2021-04-09 | ███████ | (Full) |
| 2021-04-09 | ███████ | (Mini) |
| ███████ | vol. 1, Ex001 | |
| ███████ | vol. 1, Ex002 | |
| ███████ | vol. 1, Ex003 | |
| ███████ | vol. 1, Ex004 | |
| ███████ | vol. 1, Ex005 | |
| ███████ | vol. 1, Ex006 | |
| ███████ | vol. 1, Ex007 | |
| ███████ | vol. 1, Ex008 | |
| ███████ | vol. 1, Ex009 | |
| ███████ | vol. 1, Ex010 | |

| | | |
|---|---|---|
| ██ | vol. 1, Ex011 | |
| ██ | vol. 1, Ex012 | |
| ██ | vol. 1, Ex013 | |
| ██ | vol. 1, Ex014 | |
| ██ | vol. 1, Ex015 | |
| ██ | vol. 1, Ex016 | |
| ██ | vol. 1, Ex017 | |
| ██ | vol. 1, Ex018 | |
| ██ | vol. 1, Ex019 | |
| ██ | vol. 1, Ex020 | |
| ██ | vol. 1, Ex021 | |
| ██ | vol. 1, Ex022 | |
| 2021-06-11 | ██ | (Full) |
| 2021-06-11 | ██ | (Mini) |
| 2021-06-11 | ██ | (signed) |
| ██ | vol. 2, Ex008 | |
| ██ | vol. 2, Ex010 | |
| ██ | vol. 2, Ex017 | |
| ██ | vol. 2, Ex023 | |
| ██ | vol. 2, Ex024 | |
| ██ | vol. 2, Ex025 | |
| ██ | vol. 2, Ex026 | |
| ██ | vol. 2, Ex028 | |
| ██ | vol. 2, Ex029 | |
| ██ | vol. 2, Ex030 | |
| ██ | vol. 2, Ex031 | |
| ██ | vol. 2, Ex032 | |
| ██ | vol. 2, Ex033 | |
| ██ | vol. 2, Ex034 | |
| ██ | vol. 2, Ex035 | |
| ██ | vol. 2, Ex036 | |
| ██ | vol. 2, Ex037 | |
| ██ | vol. 2, Ex038 | |
| ██ | vol. 2, Ex040 | |
| ██ | vol. 2, Ex041 | |
| ██ | vol. 2, Ex042 | |
| ██ | vol. 2, Ex043 | |
| ██ | vol. 2, Ex044 | |
| ██ | vol. 2, Ex045 | |
| ██ | vol. 2, Ex046 | |
| ██ | vol. 2, Ex052 | |
| ██ | vol. 2, Ex053 | |
| ██ | vol. 2, Ex054 | |
| ██ | vol. 2, Ex055 | |
| ██ | vol. 2, Ex057 | |
| ██ | vol. 2, Ex059 | |
| 2021-08-04 | ██ | (Mini)(Executed) |

| | |
|---|---|
| | Ex001 |
| | Ex002 |
| | Ex003 |
| | Ex004 |
| | Ex005 |
| | Ex006 |
| | Ex007 |
| | Ex008 |
| | Ex009 |
| | Ex010 |
| | Ex011 |
| | Ex012 |
| | Ex013 |
| | Ex014 |
| | Ex015 |
| | Ex016 |
| | Ex017 |
| | Ex018 |
| | Ex019 |
| | Ex020 |
| | Ex021 |
| | Ex022 |
| | Ex023 |
| | Ex024 |
| | Ex025 |
| GOOG-CABR-00388120 | |
| GOOG-CABR-03685105 | |
| GOOG-CALH-00036337 | |
| GOOG-CALH-00080047 | |
| GOOG-CALH-00080946 | |
| GOOG-CABR-04489343 | |
| GOOG-CABR-00709512 | |
| GOOG-CABR-00553475 | |
| GOOG-CABR-04664058 | |
| GOOG-CABR-04664059 | |
| GOOG-CABR-04664061 | |
| GOOG-CABR-04664064 | |
| GOOG-CABR-04664066 | |
| GOOG-CABR-04664096 | |
| GOOG-CABR-04664133 | |
| GOOG-CABR-04664152 | |
| GOOG-CABR-04664174 | |
| GOOG-CABR-04664190 | |
| GOOG-CABR-04664216 | |
| GOOG-CABR-04664249 | |
| GOOG-CABR-04664360 | |
| GOOG-CABR-04664410 | |

| |
|---|
| GOOG-CABR-04664456 |
| GOOG-CABR-04664702 |
| GOOG-CABR-04664727 |
| GOOG-CABR-04664869 |
| GOOG-CABR-04664870 |
| GOOG-CABR-04664906 |
| GOOG-CABR-04664907 |
| GOOG-CABR-04664912 |
| GOOG-CABR-04664916 |
| GOOG-CABR-04664919 |
| GOOG-CABR-04664962 |
| GOOG-CABR-04664964 |
| GOOG-CABR-04664969 |
| GOOG-CABR-04664972 |
| GOOG-CABR-04664975 |
| GOOG-CABR-04664976 |
| GOOG-CABR-04664979 |
| GOOG-CABR-04664983 |
| GOOG-CABR-04664985 |
| GOOG-CABR-04664990 |
| GOOG-CABR-04665000 |
| GOOG-CABR-04665002 |
| GOOG-CABR-04665003 |
| GOOG-CABR-04665005 |
| GOOG-CABR-04665036 |
| GOOG-CABR-04665071 |
| GOOG-CABR-04665078 |
| GOOG-CABR-04665081 |
| GOOG-CABR-04665085 |
| GOOG-CABR-04665086 |
| GOOG-CABR-04665091 |
| GOOG-CABR-04665097 |
| GOOG-CABR-04665098 |
| GOOG-CABR-04665125 |
| GOOG-CABR-04665127 |
| GOOG-CABR-04663985 |
| GOOG-CABR-04663986 |
| GOOG-CABR-04663987 |
| GOOG-CABR-04663988 |
| GOOG-CABR-04663989 |
| GOOG-CABR-04663990 |
| GOOG-CABR-04663991 |
| GOOG-CABR-04663992 |
| GOOG-CABR-04663993 |
| GOOG-CABR-04663994 |
| GOOG-CABR-04663995 |
| GOOG-CABR-04663996 |

| |
|---|
| GOOG-CABR-04663997 |
| GOOG-CABR-04663998 |
| GOOG-CABR-04663999 |
| GOOG-CABR-04664000 |
| GOOG-CABR-04664001 |
| GOOG-CABR-04664002 |
| GOOG-CABR-04664003 |
| GOOG-CABR-04664004 |
| GOOG-CABR-04664005 |
| GOOG-CABR-04664006 |
| GOOG-CABR-04664007 |
| GOOG-CABR-04664008 |
| GOOG-CABR-04664009 |
| GOOG-CABR-04664010 |
| GOOG-CABR-04664011 |
| GOOG-CABR-04664012 |
| GOOG-CABR-04664013 |
| GOOG-CABR-04664014 |
| GOOG-CABR-04664015 |
| GOOG-CABR-04664016 |
| GOOG-CABR-04664017 |
| GOOG-CABR-04664018 |
| GOOG-CABR-04664019 |
| GOOG-CABR-04664020 |
| GOOG-CABR-04664021 |
| GOOG-CABR-04664022 |
| GOOG-CABR-04664023 |
| GOOG-CABR-04664024 |
| GOOG-CABR-04664025 |
| GOOG-CABR-04664026 |
| GOOG-CABR-04664027 |
| GOOG-CABR-04664028 |
| GOOG-CABR-04664029 |
| GOOG-CABR-04664030 |
| GOOG-CABR-04664031 |
| GOOG-CABR-04664032 |
| GOOG-CABR-04664033 |
| GOOG-CABR-04664034 |
| GOOG-CABR-04664035 |
| GOOG-CABR-04664036 |
| GOOG-CABR-04664037 |
| GOOG-CABR-04664038 |
| GOOG-CABR-04664039 |
| GOOG-CABR-04664040 |
| GOOG-CABR-04664041 |
| GOOG-CABR-04664042 |
| GOOG-CABR-04664043 |

| | | |
|---|---|---|
| GOOG-CABR-04664044 | | |
| GOOG-CABR-04664045 | | |
| GOOG-CABR-04664046 | | |
| GOOG-CABR-04664047 | | |
| GOOG-CABR-04664048 | | |
| GOOG-CABR-04664049 | | |
| GOOG-CABR-04664050 | | |
| GOOG-CABR-04664051 | | |
| GOOG-CABR-04664052 | | |
| GOOG-CABR-04664053 | | |
| GOOG-CABR-04664054 | | |
| GOOG-CABR-04664055 | | |
| GOOG-CABR-04664056 | | |
| GOOG-CABR-04664057 | | |
| GOOG-CABR-00112576 | | |
| 2021- 10-04 | ███████ | (Full) |
| 2021- 10-04 | ███████ | (Mini) |
| ███ | - Exhibit 0001 | |
| | - Exhibit 0002 | |
| | - Exhibit 0003 | |
| | - Exhibit 0004 | |
| | - Exhibit 0005 | |
| | - Exhibit 0006 | |
| | - Exhibit 0007 | |
| | - Exhibit 0008 | |
| | - Exhibit 0009 | |
| | - Exhibit 0010 | |
| | - Exhibit 0011 | |
| | - Exhibit 0012 | |
| | - Exhibit 0013 | |
| | - Exhibit 0014 | |
| | - Exhibit 0015 | |
| | - Exhibit 0016 | |
| | - Exhibit 0017 | |
| | - Exhibit 0018 | |
| | - Exhibit 0019 | |
| | - Exhibit 0020 | |
| | - Exhibit 0021 | |
| | - Exhibit 0022 | |
| | - Exhibit 0023 | |
| | - Exhibit 0024 | |
| | - Exhibit 0025 | |
| | - Exhibit 0026 | |
| | - Exhibit 0027 | |
| | - Exhibit 0028 | |
| | - Exhibit 0029 | |
| | - Exhibit 0030 | |

| ███████ - Exhibit 0031 |
|---|
| GOOG-CABR-00108711 |
| GOOG-CABR-00111383 |
| GOOG-CABR-00145297 |
| GOOG-CABR-00147799 |
| GOOG-CABR-00150420 |
| GOOG-CABR-00151258 |
| GOOG-CABR-00354205 |
| GOOG-CABR-00355004 |
| GOOG-CABR-00355149 |
| GOOG-CABR-00362698 |
| GOOG-CABR-00364415 |
| GOOG-CABR-00366162 |
| GOOG-CABR-00367383 |
| GOOG-CABR-00372073 |
| GOOG-CABR-00374001 |
| GOOG-CABR-00402720 |
| GOOG-CABR-00402880 |
| GOOG-CABR-00422093 |
| GOOG-CABR-00547621 |
| GOOG-CABR-00550863 |
| GOOG-CABR-00553365 |
| GOOG-CABR-00553475 |
| GOOG-CABR-00703904 |
| GOOG-CABR-00704188 |
| GOOG-CABR-00704534 |
| GOOG-CABR-00710092 |
| GOOG-CABR-00710115 |
| GOOG-CABR-00710166 |
| GOOG-CABR-00710288 |
| GOOG-CABR-00710374 |
| GOOG-CABR-00795653 |
| GOOG-CABR-00903443 |
| GOOG-CABR-03610307 |
| GOOG-CALH-00032220 |
| GOOG-CALH-00043038 |
| GOOG-CALH-00044479 |
| GOOG-CALH-00044714 |
| GOOG-CALH-00053600 |
| GOOG-CALH-00059317 |
| GOOG-CALH-00059428 |
| GOOG-CALH-00068733 |
| GOOG-CALH-00075689 |
| GOOG-CALH-00075919 |
| GOOG-CALH-00084655 |
| GOOG-CALH-00157011 |
| GOOG-CALH-00330107 |

| |
|---|
| GOOG-CALH-00330880 |
| GOOG-CALH-00334843 |
| GOOG-CALH-00361018 |
| GOOG-CALH-00370149 |
| GOOG-CALH-00451935 |
| GOOG-CALH-00468016 |
| GOOG-CALH-00478788 |
| Exhibit C to the Report of Prof. Zubair Shafiq |
| GOOG-CALH-00028608 |
| GOOG-CALH-00028896 |
| GOOG-CALH-00029450 |
| GOOG-CALH-00030432 |
| GOOG-CALH-00033694 |
| GOOG-CALH-00036166 |
| GOOG-CALH-00038708 |
| GOOG-CALH-00044423 |
| GOOG-CALH-00046720 |
| GOOG-CALH-00068733 |
| GOOG-CALH-00068833 |
| GOOG-CALH-00070750 |
| GOOG-CALH-00070804 |
| GOOG-CALH-00082375 |
| GOOG-CALH-00124775 |
| GOOG-CALH-00134537 |
| GOOG-CALH-00164080 |
| GOOG-CALH-00164156 |
| GOOG-CALH-00167588 |
| GOOG-CALH-00172918 |
| GOOG-CALH-00490900 |
| GOOG-CALH-00491188 |
| GOOG-CALH-00491569 |
| GOOG-CALH-00491606 |
| GOOG-CALH-00491692 |
| GOOG-CALH-00491885 |
| GOOG-CALH-00492050 |
| GOOG-CALH-00492146 |
| GOOG-CALH-00492148 |
| GOOG-CALH-00492152 |
| GOOG-CALH-00492155 |
| GOOG-CALH-00492160 |
| GOOG-CALH-00492163 |
| GOOG-CALH-00492189 |
| GOOG-CALH-00292464 |
| GOOG-CALH-00425997 |
| GOOG-CALH-00047155 |
| GOOG-CABR-00413918 |
| GOOG-CABR-00395420 |

| |
|---|
| GOOG-CABR-00144331 |
| GOOG-CABR-00132907 |
| GOOG-CABR-00127037 |
| GOOG-CABR-00111932 |
| GOOG-CABR-00108711 |
| GOOG-CALH-00011022 |
| GOOG-CALH-00029143 |
| GOOG-CALH-00029353 |
| GOOG-CALH-00029450 |
| GOOG-CALH-00030453 |
| GOOG-CALH-00032023 |
| GOOG-CALH-00033864 |
| GOOG-CALH-00034696 |
| GOOG-CALH-00034703 |
| GOOG-CALH-00034802 |
| GOOG-CALH-00035752 |
| GOOG-CALH-00035779 |
| GOOG-CALH-00035872 |
| GOOG-CALH-00035898 |
| GOOG-CALH-00036041 |
| GOOG-CALH-00036053 |
| GOOG-CALH-00036166 |
| GOOG-CALH-00036661 |
| GOOG-CALH-00038728 |
| GOOG-CALH-00042656 |
| GOOG-CALH-00042685 |
| GOOG-CALH-00045718 |
| GOOG-CALH-00045932 |
| GOOG-CALH-00045948 |
| GOOG-CALH-00046257 |
| GOOG-CALH-00046288 |
| GOOG-CALH-00046314 |
| GOOG-CALH-00046391 |
| GOOG-CALH-00046428 |
| GOOG-CALH-00046431 |
| GOOG-CALH-00046720 |
| GOOG-CALH-00052909 |
| GOOG-CALH-00052958 |
| GOOG-CALH-00052965 |
| GOOG-CALH-00053090 |
| GOOG-CALH-00053097 |
| GOOG-CALH-00053976 |
| GOOG-CALH-00061904 |
| GOOG-CALH-00061979 |
| GOOG-CALH-00062039 |
| GOOG-CALH-00062046 |
| GOOG-CALH-00062063 |

| |
|---|
| GOOG-CALH-00062114 |
| GOOG-CALH-00062382 |
| GOOG-CALH-00062402 |
| GOOG-CALH-00064022 |
| GOOG-CALH-00068652 |
| GOOG-CALH-00068688 |
| GOOG-CALH-00068689 |
| GOOG-CALH-00068694 |
| GOOG-CALH-00068814 |
| GOOG-CALH-00068895 |
| GOOG-CALH-00068919 |
| GOOG-CALH-00069048 |
| GOOG-CALH-00069689 |
| GOOG-CALH-00069704 |
| GOOG-CALH-00069963 |
| GOOG-CALH-00070039 |
| GOOG-CALH-00070149 |
| GOOG-CALH-00070709 |
| GOOG-CALH-00070750 |
| GOOG-CALH-00073039 |
| GOOG-CALH-00073079 |
| GOOG-CALH-00073318 |
| GOOG-CALH-00073526 |
| GOOG-CALH-00076844 |
| GOOG-CALH-00077055 |
| GOOG-CALH-00077081 |
| GOOG-CALH-00077340 |
| GOOG-CALH-00077368 |
| GOOG-CALH-00077489 |
| GOOG-CALH-00077520 |
| GOOG-CALH-00077529 |
| GOOG-CALH-00077780 |
| GOOG-CALH-00078293 |
| GOOG-CALH-00079113 |
| GOOG-CALH-00081809 |
| GOOG-CALH-00081943 |
| GOOG-CALH-00082375 |
| GOOG-CALH-00082378 |
| GOOG-CALH-00082443 |
| GOOG-CALH-00083597 |
| GOOG-CALH-00084071 |
| GOOG-CALH-00084078 |
| GOOG-CALH-00084873 |
| GOOG-CALH-00084876 |
| GOOG-CALH-00085425 |
| GOOG-CALH-00086021 |
| GOOG-CALH-00086062 |

| |
|---|
| GOOG-CALH-00087326 |
| GOOG-CALH-00087441 |
| GOOG-CALH-00088503 |
| GOOG-CALH-00090106 |
| GOOG-CALH-00090197 |
| GOOG-CALH-00091435 |
| GOOG-CALH-00096082 |
| GOOG-CALH-00097414 |
| GOOG-CALH-00099042 |
| GOOG-CALH-00100926 |
| GOOG-CALH-00101593 |
| GOOG-CALH-00103835 |
| GOOG-CALH-00105741 |
| GOOG-CALH-00106726 |
| GOOG-CALH-00106769 |
| GOOG-CALH-00113945 |
| GOOG-CALH-00114890 |
| GOOG-CALH-00115085 |
| GOOG-CALH-00115206 |
| GOOG-CALH-00121865 |
| GOOG-CALH-00123078 |
| GOOG-CALH-00123183 |
| GOOG-CALH-00123780 |
| GOOG-CALH-00124703 |
| GOOG-CALH-00126158 |
| GOOG-CALH-00127517 |
| GOOG-CALH-00127960 |
| GOOG-CALH-00128981 |
| GOOG-CALH-00129726 |
| GOOG-CALH-00130466 |
| GOOG-CALH-00130568 |
| GOOG-CALH-00131468 |
| GOOG-CALH-00133258 |
| GOOG-CALH-00133463 |
| GOOG-CALH-00134537 |
| GOOG-CALH-00134687 |
| GOOG-CALH-00136259 |
| GOOG-CALH-00136717 |
| GOOG-CALH-00137755 |
| GOOG-CALH-00137774 |
| GOOG-CALH-00138372 |
| GOOG-CALH-00138379 |
| GOOG-CALH-00144090 |
| GOOG-CALH-00154773 |
| GOOG-CALH-00157961 |
| GOOG-CALH-00160141 |
| GOOG-CALH-00160209 |

| |
|---|
| GOOG-CALH-00160477 |
| GOOG-CALH-00160536 |
| GOOG-CALH-00160816 |
| GOOG-CALH-00160845 |
| GOOG-CALH-00161431 |
| GOOG-CALH-00161739 |
| GOOG-CALH-00162941 |
| GOOG-CALH-00164080 |
| GOOG-CALH-00164086 |
| GOOG-CALH-00164123 |
| GOOG-CALH-00164156 |
| GOOG-CALH-00164270 |
| GOOG-CALH-00165051 |
| GOOG-CALH-00165100 |
| GOOG-CALH-00165315 |
| GOOG-CALH-00166737 |
| GOOG-CALH-00167233 |
| GOOG-CALH-00167567 |
| GOOG-CALH-00167921 |
| GOOG-CALH-00168615 |
| GOOG-CALH-00490900 |
| GOOG-CALH-00490997 |
| GOOG-CALH-00491188 |
| GOOG-CALH-00491367 |
| GOOG-CALH-00491386 |
| GOOG-CALH-00491393 |
| GOOG-CALH-00491569 |
| GOOG-CALH-00492050 |
| GOOG-CALH-00492127 |
| GOOG-CALH-00492257 |

GOOG-CABR-00388120

--FILED UNDER SEAL--

GOOG-CABR-03685105

--FILED UNDER SEAL--

GOOG-CALH-00077520

--FILED UNDER SEAL--