# Exhibit 9

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
1           IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF CALIFORNIA
2                     SAN JOSE DIVISION
3             CASE NO.:  5:20-cv-5146-LHK-SVK
4
    PATRICK CALHOUN, et al., on behalf
5   of themselves and all others
    similarly situated,
6
          Plaintiffs,
7
     -vs-
8
    GOOGLE, LLC,
9
          Defendant.
10  _____/
11                  HIGHLY CONFIDENTIAL
12      DEPOSITION OF:   PATRICK CALHOUN
13      DATE:            Monday, July 19, 2021
14      TIME:            9:00 a.m. - 3:48 p.m.
15
        PLACE:           VIRTUAL ZOOM
16
17
        STENOGRAPHICALLY
18      REPORTED BY:     VANESSA OBAS, RPR
19
20
21
22
23
24
25
```

Page 1

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

A P P E A R A N C E S:

ERIC JOHNSON, ESQUIRE
JASON "JAY" BARNES, ESQUIRE
OF:   SIMMONS HANLY CONROY
      One Court Street
      Alton, Illinois 62002
      jaybarnes@simmonsfirm.com
      APPEARING ON BEHALF OF THE PLAINTIFF
      (Appearing via ZOOM)


ANDREW H. SCHAPIRO, ESQUIRE
TRACY GAO, ESQUIRE
OF:   QUINN EMANUEL URQUHART & SULLIVAN LLP
      865 S Figueroa Street
      10th Floor
      Los Angeles, California 90017
      andrewschapiro@quinnemanuel.com
      APPEARING ON BEHALF OF THE DEFENDANT
      (Appearing via ZOOM)

ALSO PRESENT:

      DEVERICK SHEFTALL, VIDEOGRAPHER

                                    - - -

Page 2

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

I N D E X

|   |   | PAGE |
|---|---|---|
| TESTIMONY OF PATRICK CALHOUN | | |
| DIRECT EXAMINATION BY MR. SCHAPIRO | | 9 |
| CROSS-EXAMINATION BY MR. JOHNSON | | 210 |
| CERTIFICATE OF OATH | | 212 |
| CERTIFICATE OF REPORTER | | 213 |
| ERRATA SHEET | | 214 |
| Read & Sign Letter to Witness | | 215 |

------

S T I P U L A T I O N S

It is hereby stipulated and agreed by and between the counsel for the respective parties and the deponent that the reading and signing of the deposition transcript be reserved.

------

Veritext Legal Solutions
866 299-5127

1   A.   Yes.

2   Q.   So in the response, there are a series of

3   objections, and then if we go down to the bottom of

4   page 3, you responded, "Subject to the foregoing

5   objections, at the time that plaintiffs downloaded and

6   began using Chrome, plaintiffs respond that they

7   believed they found reasonable expectations that their

8   personal information, including the content of their

9   internet communications, would not be sent to Google

10   when they were exchanging communications with persons

11   and entities other than Google."

12         Is that accurate as to you?

13   A.   Yes.

14   Q.   And -- so can you explain -- you say that your

15   belief was based on reasonable expectations.  What was

16   the basis for those -- those expectations?

17         MR. JOHNSON:  Objection to the extent the

18      question violates Rifkind versus Superior Court.

19         Subject to that, you may answer.

20         THE WITNESS:  I have several bases for that,

21      actually, one of which just being the obvious

22      expectation of privacy day-to-day.  However, also,

23      Google has, you know, consistently used as a

24      marketing tool the idea of privacy and protection of

25      data, and things like that, as a reason to use

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

1    Google Chrome's product and because it says "sync"
2    really big right in the corner, I assumed and
3    understood that to mean that my information would
4    not be sent to anyone unless I pressed that button.
5  BY MR. SCHAPIRO:
6    Q.   So you listed several bases.  You said first,
7  the obvious expectation of -- I think the transcript
8  should say privacy day-to-day.  And then Number 2, you
9  said Google has consistently used as a marketing tool
10 the idea of privacy and protection of data as a reason
11 to use Chrome.  I'm paraphrasing here.
12       And I guess third you said because you see the
13 word "sync" very large in the corner, you assumed and
14 understood that to mean that the information would not
15 be sent to anyone unless you pressed the button.
16       Was there any other basis for that -- your
17 expectation, or does that cover?
18       MR. JOHNSON:  Objection to the extent it
19   misstates his prior testimony.  And violates Rifkind
20   versus Superior Court.
21       Subject to that, you may answer.
22       THE WITNESS:  I think you about summarized what
23   I said well.
24 BY MR. SCHAPIRO:
25   Q.   So I know I -- I like to think I summarized

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

1   what you said well.
2          But my question was a little different.  It was
3   does that -- was there anything else?  Does that cover
4   the bases for your reasonable expectations, or is there
5   anything else you would like to add?
6          MR. JOHNSON:  Objection.
7          You can answer.
8          THE WITNESS:  As far as I know, that covers --
9      that about covers them, yes.
10  BY MR. SCHAPIRO:
11      Q.   So the first one you said was the obvious
12  expectation of privacy day-to-day.  Can you tell me a
13  little more what you mean by that?
14         MR. JOHNSON:  Objection.
15         You can answer.
16         THE WITNESS:  Yes.  I don't like my data being
17      taken or anything that belongs to me being taken
18      without my expressed consent.  So I have an
19      expectation going day-to-day that my items don't get
20      stolen, my graphic designs don't get copied.  My
21      music -- that music wouldn't be stolen.  I have that
22      same expectation of my data.
23  BY MR. SCHAPIRO:
24      Q.   Your second basis you said is that Google has
25  consistently used as a marketing tool the idea of

```
 1   privacy and protection of -- of data.
 2            Are there any specific statements by Google
 3   that -- that you're referring to when you say that?
 4            MR. JOHNSON:  Objection to the extent it
 5       misstates his prior testimony.  Violates Rifkind.
 6            You may answer.
 7            THE WITNESS:  Well, besides Google's tagline
 8       being "Don't be evil," I would say -- and they did
 9       change that, I think.  But I would say that I think
10       there's plenty of marketing in various different
11       arenas that talk about privacy being a number one
12       concern.  We don't share your personal data, et
13       cetera, et cetera, I can't get specifics.  I mean,
14       Google's been around for quite some time.  Google
15       Chrome too.  I've seen a lot of different marketings
16       from you.  It's kind of an understood thing.
17   BY MR. SCHAPIRO:
18       Q.   And just to be clear.  At least as you sit here
19   now, you don't recall any specific marketing statements
20   that led you to have this expectation?  It was just
21   the -- the general collection; is that right?
22       A.   Correct.
23       Q.   And then the third thing you said was because
24   it said "sync" really big in the corner, I assumed and
25   understood that to mean any information would not be
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

1  sent to anyone unless I pressed that button.
2        What was your basis for that assumption and
3  understanding?
4        MR. JOHNSON:  Objection to the extent it
5     misstates his prior testimony.  And it violates
6     Rifkind.
7        You may answer.
8        THE WITNESS:  The definition of the word sync
9     gave me that impression.
10 BY MR. SCHAPIRO:
11     Q.   How so?
12     A.   Typically when you see the word sync, it means
13 that if you press it, then things would be brought to
14 meet, sent over, transferred, brought to the same page.
15 So if that button is there, then I would press it if I
16 wanted that.  I did not want that, so therefore I did
17 not press it.
18        MR. JOHNSON:  Andrew, are you done using this
19     document for a minute?
20        MR. SCHAPIRO:  Am I done using the document for
21     a minute?  I don't know.
22        MR. JOHNSON:  Okay.  Well, he's -- right now
23     he's talking to a document and not to your face.  So
24     if you're -- if you had moved on from the document,
25     I wanted to make sure that he had you up and not

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

CERTIFICATE OF OATH

STATE OF FLORIDA:
COUNTY OF MIAMI-DADE:

    I, VANESSA OBAS, RPR, Notary Public, State of Florida, do hereby certify that PATRICK CALHOUN personally appeared before me on July 19, 2021 and was duly sworn and produced his driver's license as identification.

    Signed this 22nd day of July, 2021.

_____
VANESSA OBAS, RPR
Notary Public, State of Florida
My Commission No.:  GG 364117
Expires:  September 13, 2023

CERTIFICATE OF REPORTER

STATE OF FLORIDA:
COUNTY OF MIAMI-DADE:

I, VANESSA OBAS, RPR, Notary Public, State of Florida, certify that I was authorized to and did stenographically report the deposition of PATRICK CALHOUN; that a review of the transcript was requested; and that the foregoing transcript, pages 9 through 211, is a true and accurate record of my stenographic notes.

I further certify that I am not a relative, employee, or attorney, or counsel of any of the parties, nor am I a relative or employee of any of the parties' attorneys or counsel connected with the action, nor am I financially interested in the action.

DATED this 22nd day of July, 2021.

_____
VANESSA OBAS, RPR