# Exhibit 10

CONFIDENTIAL

```
 1            IN THE UNITED STATES DISTRICT COURT
 2          FOR THE NORTHERN DISTRICT OF CALIFORNIA
 3                     SAN JOSE DIVISION
 4                        ---oOo---
 5   PATRICK CALHOUN, et al.,      )
     on behalf of themselves and   )
 6   all others similarly          )
     situated,                     )
 7                                 )
              Plaintiffs,          ) Case No.
 8                                 ) 5:20-cv-5146-LHK-SVK
     vs.                           )
 9                                 )
     GOOGLE LLC,                   )
10                                 )
              Defendant.           )
11   _____)
12
13                        ---oOo---
14             Videotaped Zoom Deposition of
15                 DR. CLAUDIA KINDLER
16                     CONFIDENTIAL
17                  Monday, July 5, 2021
18                        ---oOo---
19
20
21
22
23   Katy E. Schmidt
24   RPR, RMR, CRR, CSR 13096
25   Veritext Job No.: 4638398
```

Page 1

CONFIDENTIAL

```
1              IN THE UNITED STATES DISTRICT COURT
2           FOR THE NORTHERN DISTRICT OF CALIFORNIA
3                       SAN JOSE DIVISION
4                           ---o0o---
5   PATRICK CALHOUN, et al.,      )
    on behalf of themselves and   )
6   all others similarly          )
    situated,                     )
7                                 )
              Plaintiffs,          ) Case No.
8                                 ) 5:20-cv-5146-LHK-SVK
    vs.                           )
9                                 )
    GOOGLE LLC,                   )
10                                )
              Defendant.          )
11  _____)
12
13         BE IT REMEMBERED that, pursuant to Notice, and
14  on Monday, the 5th day of July, 2021, commencing at the
15  hour of 8:51 a.m., thereof, in Oakland, California,
16  before me, KATY E. SCHMIDT, a Certified Shorthand
17  Reporter in and for the County of Yolo, State of
18  California, there virtually personally appeared
19
                       DR. CLAUDIA KINDLER
20
21  called as a witness herein, who, being by me first duly
22  sworn, was thereupon examined and interrogated as
23  hereinafter set forth.
24
25
```

Page 2

```
 1   APPEARANCES:
 2   For The Plaintiffs:
 3                    (Appeared via Zoom)
 4         BLEICHMAR FONTI & AULD LLP
           BY: LESLEY WEAVER, Esq.
 5         BY: JOSHUA SAMRA, Esq.
           555 12th Street, Suite 1600
 6         Oakland, California 994607
           415.445.4003
 7         lweaver@bfalaw.com
 8         DICELLO LEVITT GUTZLER
           BY: DAVID, STRAITE, Esq. (pro hac vice)
 9         One Grand Central Place
           60 East 42nd Street, Suite 2400
10         New York, New York 10165
           646.933.1000
11         dstraite@dicellolevitt.com
12         SIMMONS HANLY CONROY
           BY: JASON "JAY" BARNES, Esq.
13         One Court Street
           Alton, Illinois 62002
14         618.693.3104
           jaybarnes@simmonsfirm.com
15
     For The Defendants:
16
                    (Appeared via Zoom)
17
           QUINN EMANUEL URQUHART & SULLIVAN LLP
18         BY: VIOLA TREBICKA, Esq.
           BY: JONATHAN TSE, Esq.
19         BY: STEPHEN BROOME, Esq.
           865 S Figueroa Street, 10th Floor
20         Los Angeles, California 90017
           violatrebicka@quinnemanuel.com
21
     Also present:
22
           David West, videographer
23
                         ---o0o---
24
25
```

Page 3

| | | | |
|---|---|---|---|
| 1 | | Actually, let me take a step back and say: | 09:27 |
| 2 | | You understand that Chrome can be used in | 09:28 |
| 3 | different modes. | | 09:28 |
| 4 | | Is that correct? | 09:28 |
| 5 | A. | Can you give me examples of the different | 09:28 |
| 6 | modes? | | 09:28 |
| 7 | Q. | Well, let me ask you: Do you have an | 09:28 |
| 8 | understanding that Chrome can be used in different | | 09:28 |
| 9 | modes? | | 09:28 |
| 10 | A. | If you're referring to synced or un-synced, | 09:28 |
| 11 | yes. | | 09:28 |
| 12 | Q. | So that's your sole understanding of a Chrome | 09:28 |
| 13 | mode, synced or un-synced. | | 09:28 |
| 14 | | Is that correct? | 09:28 |
| 15 | A. | Yes. | 09:28 |
| 16 | Q. | Have you ever read the Chrome privacy notice? | 09:28 |
| 17 | A. | No. | 09:28 |
| 18 | Q. | You've never read the Chrome privacy notice; | 09:28 |
| 19 | correct? | | 09:28 |
| 20 | A. | (No response.) | 09:28 |
| 21 | Q. | Correct? | 09:28 |
| 22 | A. | Correct. | 09:28 |
| 23 | Q. | Have you ever used Chrome with sync enabled? | 09:28 |
| 24 | A. | Not intentionally. | 09:29 |
| 25 | Q. | Do you know whether you have ever used Chrome | 09:29 |

Page 26

| | | |
|---|---|---|
| 1 | with sync enabled? | 09:29 |
| 2 | A. No. | 09:29 |
| 3 | Q. Where did you get your understanding of sync | 09:29 |
| 4 | versus un-sync? | 09:29 |
| 5 | A. From Lesley Weaver. | 09:29 |
| 6 | MR. STRAITE: Okay. And I'm going to caution | 09:29 |
| 7 | the witness again, you have no duty to reveal what | 09:29 |
| 8 | conversations you had with counsel. | 09:29 |
| 9 | BY MS. TREBICKA: | 09:29 |
| 10 | Q. Before conversations with counsel, on the | 09:29 |
| 11 | basis of your own understanding, did you have an | 09:29 |
| 12 | understanding of the difference between using Chrome | 09:29 |
| 13 | with sync enabled versus Chrome without sync enabled? | 09:29 |
| 14 | A. On a very surface level. | 09:29 |
| 15 | Q. Tell me about that understanding before you | 09:30 |
| 16 | had conversations with counsel. | 09:30 |
| 17 | A. I just did not want to join or link Chrome and | 09:30 |
| 18 | Google. I think it's creepy how much information is | 09:30 |
| 19 | collected on individuals. And so I always try to limit | 09:30 |
| 20 | my exposure. | 09:30 |
| 21 | Q. So you stated that you did not want to join or | 09:30 |
| 22 | link Chrome or Google. | 09:30 |
| 23 | Is that correct? | 09:30 |
| 24 | A. Correct. | 09:30 |
| 25 | Q. And what do you mean by that? | 09:30 |

| | | |
|---|---|---|
| 1 | A. I don't understand. | 09:30 |
| 2 | Q. You just stated in response to my question | 09:31 |
| 3 | that "I just did not want to join or link Chrome or | 09:31 |
| 4 | Google." | 09:31 |
| 5 | And I'm wondering what exactly you mean by | 09:31 |
| 6 | that sentence. | 09:31 |
| 7 | A. I was trying to limit how much information was | 09:31 |
| 8 | being gathered on me. | 09:31 |
| 9 | Q. By who? | 09:31 |
| 10 | A. Google. | 09:31 |
| 11 | Q. Okay. So just by Google. | 09:31 |
| 12 | Is that correct? | 09:31 |
| 13 | A. It's hard for me to know who takes the | 09:31 |
| 14 | information when I'm online. | 09:31 |
| 15 | Q. So you stated that you always try to limit | 09:31 |
| 16 | your exposure; correct? | 09:31 |
| 17 | A. Yes. | 09:31 |
| 18 | Q. And tell me what have you done to be able to | 09:31 |
| 19 | understand how you can limit your exposure when you are | 09:31 |
| 20 | online? Tell me all the steps you've taken. | 09:31 |
| 21 | MR. STRAITE: Again, cautioning the witness, | 09:31 |
| 22 | you don't have to respond to the extent that those steps | 09:32 |
| 23 | involve communications with counsel. | 09:32 |
| 24 | THE WITNESS: So I don't understand all of the | 09:32 |
| 25 | workings that go on behind my screen and who collects | 09:32 |

Page 28

```
 1   what and how.  I mostly limit myself by not having        09:32
 2   Facebook, not going on Snapchat, and just really trying   09:32
 3   to stay off of social media platforms where I feel the    09:32
 4   information is shared ad nauseam.                         09:32
 5   BY MS. TREBICKA:                                          09:32
 6       Q.   Any other steps you've taken to be able to       09:32
 7   limit your exposure when you are online?                  09:32
 8       A.   Not that I'm aware of.                           09:32
 9       Q.   And you're a doctor of chiropractic; correct?    09:32
10       A.   Correct.                                         09:32
11       Q.   It's an academic title?                          09:32
12       A.   Yes.                                             09:32
13       Q.   And to be able to get that title, I assume you   09:32
14   had to do some research or learning.                      09:32
15            Is that correct?                                 09:32
16       A.   Yes.                                             09:33
17       Q.   And the same idea of research and learning,      09:33
18   did you ever apply that to you being able to understand   09:33
19   the steps that you need to take to be able to limit your  09:33
20   exposure online?                                          09:33
21       A.   Those two things are very, very different.  I    09:33
22   spent thousands of hours studying anatomy and physiology  09:33
23   and kinesiology to have my expertise in my field.  I      09:33
24   have not spent thousands of hours trying to research how  09:33
25   to keep myself private when I'm online.                   09:33
```

| | | |
|---|---|---|
| 1 | Q. Have you spent any time trying to research how | 09:33 |
| 2 | to keep yourself private while you're online? | 09:33 |
| 3 | A. No. | 09:33 |
| 4 | Q. So it's correct that before being in contact | 09:34 |
| 5 | with counsel, you did not have an understanding of what | 09:34 |
| 6 | Chrome sync was. | 09:34 |
| 7 | Is that correct? | 09:34 |
| 8 | MR. STRAITE: Objection. Misstates earlier | 09:34 |
| 9 | testimony. | 09:34 |
| 10 | BY MS. TREBICKA: | 09:34 |
| 11 | Q. You may answer. | 09:34 |
| 12 | A. I did answer. | 09:34 |
| 13 | Q. So I will ask a question. Sometimes counsel | 09:34 |
| 14 | is unhappy with the way that I've phrased the question | 09:34 |
| 15 | or the form of the question, and he will make an | 09:34 |
| 16 | objection. Unless he instructs you not to answer, you | 09:34 |
| 17 | have to answer my question. | 09:34 |
| 18 | Do you understand that? | 09:34 |
| 19 | A. Yes. | 09:34 |
| 20 | Q. I know it's a little stilted, but that's just | 09:34 |
| 21 | the way it is. Counsel needs to put certain objections | 09:34 |
| 22 | on the record. | 09:34 |
| 23 | So -- and I am trying to answer -- ask these | 09:34 |
| 24 | questions in a way that's understandable, and sometimes | 09:35 |
| 25 | they may sound like the same question, but there are | 09:35 |

Page 30

CONFIDENTIAL

```
 1   slight differences and I need to ask the questions in      09:35
 2   those -- in that particular way.                           09:35
 3            Do you understand?                                09:35
 4       A.  I do understand.  But as a person who's not in     09:35
 5   the legal field, it feels like you're trying to trick      09:35
 6   me.                                                        09:35
 7       Q.  I'm not trying to trick you.  You don't have       09:35
 8   to take my word for it.  But let me continue               09:35
 9   answering (sic) the questions and I'm just -- I'm just     09:35
10   trying to answer -- to ask you questions and you           09:35
11   answer back.                                               09:35
12            Is that all right?                                09:35
13       A.  I'll do the best I can.                            09:35
14       Q.  Before conversations with counsel, did you         09:35
15   have an understanding of what Chrome sync was?             09:35
16            MR. STRAITE:  Same objection.                     09:35
17            THE WITNESS:  Chrome sync would make it so my     09:35
18   browsing in Google were connected.                         09:35
19   BY MS. TREBICKA:                                           09:36
20       Q.  This is the extent of your understanding;          09:36
21   correct?                                                   09:36
22       A.  Yes.                                               09:36
23       Q.  What was your understanding based on?              09:36
24            MR. STRAITE:  Again, objection on the rule of     09:36
25   Rifkind versus Superior Court.                             09:36
```

Page 31

Veritext Legal Solutions
866 299-5127

CONFIDENTIAL

| | | |
|---|---|---:|
| 1 | THE WITNESS: My gut. | 09:36 |
| 2 | BY MS. TREBICKA: | 09:36 |
| 3 | Q.   Anything else other than your gut? | 09:36 |
| 4 | A.   No. | 09:36 |
| 5 | Q.   Do you know how to turn on or off Chrome sync? | 09:36 |
| 6 | A.   Yes. | 09:36 |
| 7 | Q.   Did you know -- prior to being contacted by | 09:36 |
| 8 | counsel, did you know how to turn on or off Chrome sync? | 09:36 |
| 9 | A.   Yes. | 09:36 |
| 10 | Q.   Had you ever turned Chrome sync on previously? | 09:37 |
| 11 | A.   Not that I recall. | 09:37 |
| 12 | Q.   You may have, you may not have.  You just | 09:37 |
| 13 | don't recall? | 09:37 |
| 14 | A.   Correct. | 09:37 |
| 15 | Q.   Because you do know how to turn it on and off | 09:37 |
| 16 | and you did know how to turn it on and off before being | 09:37 |
| 17 | contacted by counsel; correct? | 09:37 |
| 18 | MR. STRAITE:  Objection.  This question has | 09:37 |
| 19 | already been asked. | 09:37 |
| 20 | THE WITNESS:  Yes. | 09:37 |
| 21 | BY MS. TREBICKA: | 09:37 |
| 22 | Q.   Now, is your understanding that if you disable | 09:37 |
| 23 | sync on Chrome, that would block all of Google's data | 09:37 |
| 24 | collection on your browsing? | 09:37 |
| 25 | A.   My understanding of not being synced is Chrome | 09:37 |

Page 32

| | | |
|---|---|---|
| 1 | would not share my personal information, also property, | 09:37 |
| 2 | with Google. | 09:38 |
| 3 |     Q.   My question was slightly different, which is: | 09:38 |
| 4 |        Sitting here today, is it your understanding | 09:38 |
| 5 | that if you disabled sync on Chrome, that would block | 09:38 |
| 6 | all of Google's data collection on your -- related to | 09:38 |
| 7 | your browsing? | 09:38 |
| 8 |        MR. STRAITE:  Objection.  Misstates earlier | 09:38 |
| 9 | testimony. | 09:38 |
| 10 |        THE WITNESS:  I don't know if it would block | 09:38 |
| 11 | it.  My understanding is it would not be shared. | 09:38 |
| 12 | BY MS. TREBICKA: | 09:38 |
| 13 |     Q.   It would not be shared with whom? | 09:38 |
| 14 |     A.   Chrome would not share with Google. | 09:38 |
| 15 |     Q.   You have no understanding as to whether or not | 09:39 |
| 16 | Google would be entirely blocked from viewing or | 09:39 |
| 17 | receiving any of your browsing data; correct? | 09:39 |
| 18 |        MR. STRAITE:  Objection.  Asked and answered. | 09:39 |
| 19 |        THE WITNESS:  I believe sharing and blocking | 09:39 |
| 20 | are two separate things. | 09:39 |
| 21 | BY MS. TREBICKA: | 09:39 |
| 22 |     Q.   So your understanding is that Chrome sync -- | 09:39 |
| 23 | the only thing Chrome sync does is it enables Chrome to | 09:39 |
| 24 | share your personal information with Google. | 09:39 |
| 25 |        Is that correct? | 09:39 |

Page 33

CONFIDENTIAL

| | | |
|---|---|---|
| 1 | MR. STRAITE: Objection. This is now the | 09:39 |
| 2 | third time this question has been asked. | 09:39 |
| 3 | THE WITNESS: Will you ask again, please? | 09:39 |
| 4 | BY MS. TREBICKA: | 09:39 |
| 5 | Q. Your understanding is that Chrome sync enables | 09:39 |
| 6 | Chrome to share your personal information with Google? | 09:39 |
| 7 | A. Yes. | 09:39 |
| 8 | Q. And that is the extent of your understanding | 09:40 |
| 9 | of what Chrome sync does? | 09:40 |
| 10 | MR. STRAITE: Objection. Again, this is now | 09:40 |
| 11 | the fourth time we're asking the same question. | 09:40 |
| 12 | THE WITNESS: Yes. | 09:40 |
| 13 | BY MS. TREBICKA: | 09:40 |
| 14 | Q. You said in response to my question "personal | 09:40 |
| 15 | information." | 09:40 |
| 16 | Do you recall that? | 09:40 |
| 17 | A. Yes. | 09:40 |
| 18 | Q. And in the beginning of the deposition, we | 09:40 |
| 19 | went through what you meant by the term "private | 09:40 |
| 20 | information." | 09:40 |
| 21 | Do you recall that? | 09:40 |
| 22 | A. Yes. | 09:40 |
| 23 | Q. Are you using personal information and private | 09:40 |
| 24 | information interchangeably? | 09:40 |
| 25 | A. Yes. | 09:40 |

CONFIDENTIAL

```
 1              REPORTER'S CERTIFICATE
 2                    ---o0o---
 3   STATE OF CALIFORNIA    )
                            ) ss.
 4   COUNTY OF YOLO         )
 5        I, KATY E. SCHMIDT, a Certified Shorthand
 6   Reporter in and for the State of California, duly
 7   commissioned and a disinterested person, certify:
 8        That the foregoing deposition was taken before me
 9   at the time and place herein set forth;
10        That DR. CLAUDIA KINDLER, the deponent herein,
11   was put on oath by me;
12        That the testimony of the witness and all
13   objections made at the time of the examination were
14   recorded stenographically by me to the best of my
15   ability and thereafter transcribed into typewriting;
16        That the foregoing deposition is a record of the
17   testimony of the examination.
18        IN WITNESS WHEREOF, I subscribe my name on this
19   6th day of July, 2021.
20                    [signature]
21                    _____
                      Katy E. Schmidt, RPR, RMR, CRR, CSR 13096
22                    Certified Shorthand Reporter
                      in and for the
23                    County of Sacramento,
                      State of California
24
25   Ref. No. 4638398 KES
```

Page 327