# Exhibit 11

```
 1            IN THE UNITED STATES DISTRICT COURT
 2          FOR THE NORTHERN DISTRICT OF CALIFORNIA
 3                      SAN JOSE DIVISION
 4
 5   PATRICK CALHOUN, et al.,
 6   on behalf of themselves and
 7   all others similarly situated,
 8        Plaintiff,
 9   vs.                                Case No.
10   GOOGLE, LLC,                       5:20-cv-5146-LHK-SVK
11        Defendant.
12   _____
13
14
15       VIRTUAL VIDEOCONFERENCE DEPOSITION OF
16                 DR. CORINICE WILSON
17          TAKEN ON BEHALF OF THE DEFENDANT
18    ON OCTOBER 25, 2021, BEGINNING AT 8:59 A.M. CST
19                      VIA ZOOM
20
21
22   REPORTED BY:
23   Lacy Antle, CSR, RPR (via Zoom)
24   JOB No. 4841734
25
```

Page 1

```
 1                    APPEARANCES:
 2
 3    Appearing on behalf of the PLAINTIFFS:
 4          Angelica M. Ornelas
 5          Lesley Weaver
 6          BLEICHMAR, FONTI & AULD, LLP
 7          555 12th Street, Suite 1600
 8          Oakland, California 94607
 9          (415) 445-4003
10          lweaver@bfalaw.com
11          aornelas@bfalaw.com
12
13
14    Appearing on behalf of the PLAINTIFFS:
15          Nimrod Chapel, Jr., ESQ.
16          THE CHAPEL LAW GROUP, LLC
17          311 West Dunkin Street
18          Jefferson City, Missouri 65101
19          (573) 303-0405
20          nimrod@chapellaw.com
21
22
23
24
25
```

```
 1    Appearances continued
 2
 3    Appearing on behalf of the DEFENDANT:
 4          Josef T. Ansorge (via Zoom)
 5          QUINN, EMANUEL, URQUHART & SULLIVAN
 6          1300 I Street NW, Suite 900
 7          Washington, D.C. 20005
 8          (212) 538-8000
 9          josefansorge@quinnemanuel.com
10
11
12          ALSO PRESENT VIA ZOOM:
13          Ms. Tracy Gao, Quinn Emanuel, LLC
14
15    VIDEOTAPED BY:  Kenny Parker (via Zoom)
16
17
18
19
20
21
22
23
24
25
```

```
 1    choose to enable sync."
 2              Can you read that out for us, please.
 3         A    "I did not choose to enable sync on my
 4    Google account on personal devices and I've never
 5    consented to Chrome sharing my personal information
 6    including my browsing history information or
 7    anything that might personally identify me with
 8    Google."
 9         Q    Now, Dr. Wilson, how are you
10    distinguishing between Chrome and Google in this
11    passage?
12         A    When you click on Chrome, there is a sync
13    button that that information will be stored on a
14    server.  And to your earlier statement Google is
15    just a search engine, so that's the difference.
16    Correct?
17         Q    Can you think of any other differences?
18         A    Well, that's -- that's the difference that
19    I know.
20         Q    And do you understand that Chrome is a
21    browser that's made by Google; is that correct?
22         A    It does say Google Chrome.
23         Q    So --
24         A    Are they two separate things?  Are there
25    two separate entities?  Chrome is different than
```

Page 70

```
 1    Google the browser?
 2         Q    Well, I'm asking you, ma'am, if you
 3    understand that --
 4         A    They're two separate things?
 5         Q    -- Chrome is a product made by Google?
 6         A    So they're not two different entities,
 7    they're one?
 8         Q    Is your understanding that they're two
 9    different entities?
10         A    Yes.
11         Q    And what is that understanding based on?
12              MS. ORNELAS:  And just a reminder, to the
13    extent answering that response requires you to
14    divulge anything we've discussed, I don't want you
15    to divulge those issues.
16              THE WITNESS:  Okay.  Could you repeat the
17    question?
18         Q    (BY MR. ANSORGE) And what is that
19    understanding based on?
20         A    What do you mean, that Chrome is different
21    than Google?
22         Q    Yes, I had asked is your understanding
23    that they're two different entities, you had
24    answered yes.  I then asked and what is that
25    understanding based on, we then received the
```

Page 71

1   cautioning that there might be some kind of
2   privilege related to that answer and that's --
3   that's where we are now.
4          MS. ORNELAS:  So objection to the extent
5   the question -- answering the question would require
6   you to disclose attorney-client confidences, do not
7   answer the question.  If you can answer the question
8   without revealing anything we discussed, you can
9   answer.
10         THE WITNESS:  Well then I cannot.
11      Q   (BY MR. ANSORGE) So then prior to retaining
12  counsel in this action, you had no understanding
13  that Chrome and Google may be different entities; is
14  that correct?
15      A   That would be correct.
16      Q   Thank you, Dr. Wilson.
17          Let's turn to the next sentence, "I did
18  not choose to enable sync on my Google accounts on
19  my personal devices."
20          Do you see that passage, Dr. Wilson?
21      A   Yes.
22      Q   So what is your understanding of the
23  meaning of the word "sync"?
24      A   When I think of the word sync, that means
25  for me that that information is going to be stored

Page 72

1    on a server, my browsing history, the information
2    that I download.
3         Q    Do you have any other understanding of the
4    word "sync"?  Have you ever heard the term used in a
5    different context outside of browser communications,
6    that somebody says oh, let's synchronize our watches
7    or we need to sync up on something; have you ever
8    heard those terms?
9         A    Well you just said synchronize your
10   watches, that's different than syncing on Chrome,
11   correct?
12        Q    How is it different?
13        A    I don't know, I'm asking you.
14        Q    But unfortunately it's not my deposition,
15   I'd love to be deposed by you, Dr. Wilson.
16        A    I'm sorry, I was --
17        Q    I would enjoy it.  I would enjoy it.  I
18   think I'd be a great witness, unfortunately I'm
19   asking you the questions and I have to ask you and
20   what your understanding is based on the terms that
21   you used in your declaration that was put in less
22   than two weeks ago.
23        A    Okay.  So my understanding, I would say --
24             MS. ORNELAS:  I'm sorry --
25             MS. WEAVER:  Objection.

Page 73

1            MS. ORNELAS:  One second.  Can I get the
2    pending question read back, please?
3            MR. ANSORGE:  Ms. Ornelas, do you not have
4    real time before you?
5            MS. ORNELAS:  There was an extensive back
6    and forth Mr. Ansorge and I would like the witness
7    to have an opportunity to know what question she is
8    answering before she gives a response.
9            MR. ANSORGE:  It's just improper.  We're
10   hearing so much from you, Ms. Ornelas, and I've been
11   pretty patient, can't we stick to object, vague,
12   form and try to get out of here in a reasonable
13   amount of time?
14           MS. ORNELAS:  I will, Mr. Ansorge, I just
15   want to know before -- sorry we have an
16   interruption.  Before I do lodge an objection, I
17   would like to know the pending question and like I
18   said, there was extensive back and forth, so I would
19   just like to make sure we're all on the same page
20   and know what question is pending.
21       Q   (BY MR. ANSORGE) So you have an answer, you
22   just said synchronize your watches, that's different
23   than synching on Chrome, correct?  And I asked how
24   is it different.
25       A   You said -- you said synchronize watches.

Page 74

```
 1        Q    Yeah, that's right.  We had an answer, you
 2   said -- you just said synchronize your watches,
 3   that's different than synching on Chrome, correct?
 4   And then the question was, how is it different?
 5        A    Okay.  So when I think of the word sync
 6   for Chrome, that means that my information will be
 7   stored.
 8        Q    What's your understanding of the meaning
 9   of the word synchronized, is that different from
10   your understanding of the meaning of the word sync?
11             MS. ORNELAS:  Object to form.  Vague and
12   ambiguous.
13             THE WITNESS:  I don't understand the
14   question.  I'm sorry, I'm trying to understand.
15        Q    (BY MR. ANSORGE) That's no problem,
16   Dr. Wilson.
17             What's your understanding of the term
18   "synchronize"?
19        A    Okay.  So to your question in regards to
20   watches, everyone look at their watch at the same
21   time.
22        Q    Now, in your declaration here you say "I
23   did not choose to enable sync on my Google
24   accounts."  And I just wanted to ask you some
25   questions about that; is that all right?
```

Page 75

1      A    Sure.
2      Q    And what do you mean by "enable sync on my
3  Google accounts"?
4      A    So that that information will be stored on
5  a server somewhere.  I'm very private.  My privacy
6  is very important to me, so that's the reason why I
7  have chosen not to enable sync.
8      Q    And you understand that sync is enabled on
9  the Chrome browser; is that correct?
10     A    It's enabled or I have to do it?  I have
11 to do it.
12     Q    And where would you have to do it, what's
13 your understanding of where you have to do it?
14     A    So if you were to click on the Chrome
15 browser -- I mean click on Chrome, it's in the
16 right-hand corner at the upper right-hand corner and
17 it says to sync or not to sync.
18     Q    And do you understand that there's a
19 difference between your Google account and the
20 Chrome browser?
21     A    So are you saying there's a difference?
22     Q    I'm asking if you understand that there's
23 a difference between a Google account and a Chrome
24 browser?
25     A    I mean you just said that there's a

Page 76

```
 1   difference, right?
 2        Q    Well, ma'am, I'm asking you.
 3        A    Oh, you're asking -- I'm sorry, could you
 4   repeat the question?
 5        Q    You understand that there's a difference
 6   between your Google account and the Chrome browser,
 7   I'm asking you?
 8        A    Do I understand there's a difference
 9   between my Google account and -- and Chrome?
10        Q    That's right, ma'am.
11        A    Well, now I do.
12        Q    But prior to this deposition, you did not
13   understand that there is a difference between Google
14   account and the Chrome browser; is that correct?
15        A    What I do know is that I don't sync, so I
16   don't -- so that information is not stored, that's
17   what I do know.  I'm trying to understand, I just --
18   because you're talking about sync and now you're
19   talking about a difference between Chrome and Google
20   and if I click on the button sync, what is the --
21   I'm trying to understand.
22        Q    And you're doing great, it's probably my
23   questions aren't that great.
24        A    I just want to be very forthcoming and
25   share the information.  So I'm just like --
```

Page 77

1    Q    So can you think of some situations where
2  browsing history information would not be personally
3  identified?
4    A    For me, I'd say that when I browse it
5  identifies me.
6    Q    And how does it identify you; what's your
7  understanding of that?
8    A    Mr. Josef, I've already answered that
9  question, I'm sorry.
10    Q    No, I don't want to try your patience,
11  Dr. Wilson, we're with each other for a long time.
12  So I'm just going to skip, maybe we'll sync up on it
13  later and let's go to paragraph four.
14    A    Okay.  I thought we were already on
15  paragraph four.
16    Q    Oh, unfortunately we were on paragraph
17  three.
18    A    Oh, my goodness, how long, seven hours?
19  Oh, Mr. Josef.
20    Q    Well, seven hours is what would be on the
21  record, Dr. Wilson.  To be frank, the way it's been
22  going, we might have to do it a little longer.  We
23  would maybe try to subtract some of the time that's
24  spent with the speaking objections but that's a
25  conversation we can have further down the line.

Page 100

1        MS. ORNELAS:  Or the paragraph long
2    questions.
3            But Mr. Ansorge, I would like to note
4    we've been going for a little bit longer than an
5    hour so whenever you get to a natural stopping point
6    if we could take a break, that would be great.  So
7    if you have a couple more questions or if you think
8    this is -- this line of questioning is going to
9    proceed for an extended period of time, I'd like to
10   know that so we can kind of plan for it.
11           MR. ANSORGE:  Thank you, Ms. Ornelas, I
12   think we should then take a break now.  What would
13   you like?  Half an hour?  An hour?  Forty-five
14   minutes?  What would be your preference?
15           MS. ORNELAS:  Why don't we just do 10, can
16   we just take 10 and reconvene?
17           MR. ANSORGE:  Oh, I thought this would be
18   the lunch break.  No we can do 10 and another hour,
19   I thought maybe you had some food in or something.
20           MS. ORNELAS:  All right.  So let's take a
21   10-minute break and reconvene at, it's 11:20 where I
22   a.m.
23           MR. ANSORGE:  Yeah, okay, so in 10 minutes
24   we'll meet at the bottom of the hour.
25           MS. ORNELAS:  Excellent.

1           THE VIDEOGRAPHER:  11:20 a.m., we are off
2    the record.
3           (Break taken from 11:20 a.m. to 11:31
4    a.m.)
5           THE VIDEOGRAPHER:  11:31 a.m., we are on
6    the record.
7      Q    (BY MR. ANSORGE) Welcome back Dr. Wilson.
8      A    Thank you.
9      Q    We were at paragraph four of your
10   declaration.  Do you have that before you?
11     A    I have it before me now.
12     Q    And you see the first sentence says "I
13   have seen the sync feature in Chrome?
14     A    Uh-huh, yes.
15     Q    What did you think would happen if you
16   turned on that sync feature?
17     A    That my search history and information
18   would be stored on a server.
19     Q    And what would be different to not turning
20   it on, what's your understanding of that?
21     A    If I do not turn it on, my information
22   would not be stored or shared.
23     Q    And we established earlier that you
24   understand that the sync function has to be enabled
25   on the Chrome browser, correct; do you recall that?

Page 102

1  Mr. Jeffers.
2              THE VIDEOGRAPHER:  Okay.  The time is --
3              THE WITNESS:  No, sir, I'm sorry, it's
4  Josef.  I said Jeffers.  I'm sorry, I'm so tired,
5  Josef, I'm like, okay.  This has been a long day.
6  Thank you.
7              MS. ORNELAS:  And we will read and sign
8  and we'd like to provisionally designate the
9  transcript confidential, please.
10             THE VIDEOGRAPHER:  Okay.
11             MR. ANSORGE:  And did we ever get the
12 index or did I just miss that?
13             MS. ORNELAS:  I do believe Leslie sent it
14 to you.
15             MR. ANSORGE:  Okay.  I must have just
16 missed it.  Thank you.
17             THE VIDEOGRAPHER:  Okay.  5:25 p.m. we are
18 off the record.
19             (DEPOSITION CONCLUDED AT 5:25 p.m.)
20
21
22
23
24
25

Page 307

```
 1                        CERTIFICATE

 2

 3             I, Lacy Antle, Certified Shorthand

 4   Reporter, do hereby certify that the above-named DR.

 5   CORINICE WILSON was by me first duly sworn to testify

 6   the truth, the whole truth, and nothing but the truth,

 7   in the case aforesaid; that the above and foregoing

 8   deposition was by me taken in shorthand and thereafter

 9   transcribed; and that I am not an attorney for nor relative

10   of any of said parties or otherwise interested in the event
     of said action.

11             IN WITNESS WHEREOF, I have hereunto set my

12   hand and official seal this 28th day of October,

13   2021.

14

15

16

17

18

19             <%824,Signature%>

20             Lacy Antle, CSR, RPR

21             Oklahoma CSR #1865

22             Arkansas CCR #791

23

24

25

                                                  Page 308
```

```
 1   Angelica M. Ornelas
 2   aornelas@bfalaw.com
 3                                        October 28, 2021
 4   RE: CALHOUN vs. GOOGLE
 5   OCTOBER 25, 2021, DR. CORINICE WILSON, JOB NO. 4841734
 6
 7   The above-referenced transcript has been
 8   completed by Veritext Legal Solutions and
 9   review of the transcript is being handled as follows:
10   __ Per CA State Code (CCP 2025.520 (a)-(e)) – Contact Veritext
11      to schedule a time to review the original transcript at
12      a Veritext office.
13   __ Per CA State Code (CCP 2025.520 (a)-(e)) – Locked .PDF
14      Transcript - The witness should review the transcript and
15      make any necessary corrections on the errata pages included
16      below, notating the page and line number of the corrections.
17      The witness should then sign and date the errata and penalty
18      of perjury pages and return the completed pages to all
19      appearing counsel within the period of time determined at
20      the deposition or provided by the Code of Civil Procedure.
21   __ Waiving the CA Code of Civil Procedure per Stipulation of
22      Counsel - Original transcript to be released for signature
23      as determined at the deposition.
24   __ Signature Waived – Reading & Signature was waived at the
25      time of the deposition.
```

Page 309