# Exhibit 12

```
 1            IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF CALIFORNIA
 2                     SAN JOSE DIVISION
 3     Patrick Calhoun, et al,§
       On Behalf of Themselves§
 4     and All Others         §
       Similarly Situated     §
 5                            §
                Plaintiffs,   §
 6                            §
       vs.                    § Case No. 5:20-cv-5146-LHK-SCV
 7                            §
       Google, L.L.C.         §
 8                            §
                Defendant.    §
 9
10     * * * * * * * * * * * * * * * * * * * * * * * * *
11           REMOTE VIDEOTAPED ORAL DEPOSITION OF
                    DR. RODNEY JOHNSON
12                   OCTOBER 23, 2021
         (Designated as "Provisionally Confidential")
13     * * * * * * * * * * * * * * * * * * * * * * * * *
14        REMOTE VIDEOTAPED ORAL DEPOSITION OF DR. RODNEY
       JOHNSON, produced as a witness and duly sworn, was
15     taken in the above-styled and numbered cause on
       October 23, 2021, from 9:11 a.m. until 4:43 p.m. CDT,
16     before Suzanne Kelly, CSR Number 1260, in and for the
       State of Texas, reported by stenographic method with
17     all participants appearing remotely from separate
       locations, with the Court Reporter and the witness in
18     the state of Texas, pursuant to the Federal Rules of
       Civil Procedure and the provisions stated on the
19     record, if any.
20
       Job Number: 4841695
21
22
23
24
25
                                                    Page 1
```

### Page 2

```
 1           APPEARANCES
 2  FOR THE PLAINTIFF:
 3  Lesley Weaver, Esq.
         -and-
 4  Angelica Ornelas, Esq.
    BLEICHMAR FONTI & AULD
 5  555 12th Street
    Suite 1600
 6  Oakland, California 94607
    415.445.4003
 7  lweaver@bfalaw.com
    aornelas@bfalaw.com
 8
    Nimrod Chapel, Esq.
 9  CHAPEL LAW GROUP, L.L.C.
    311 W. Dunkin
10  Jefferson City, Missouri 65101
    573.303.0405
11  nimrod@chapellaw.com
12
13  FOR THE DEFENDANT:
14  Andrew Schapiro, Esq.
    QUINN EMANUEL URQUHART & SULLIVAN, L.L.P.
15  191 N. Wacker Drive
    Suite 2700
16  Chicago, Illinois 60606
    312.705.7403
17  andrewschapiro@quinnemanuel.com
18
    Tracy Gao, Esq.
19  QUINN EMANUEL URQUHART & SULLIVAN, L.L.P.
    865 S. Figueroa Street
20  10th Floor
    Los Angeles, California 90017
21  212.84.-7000
    tracygao@quinnemanuel.com
22
23  ALSO PRESENT:
24  Ms. Talitha Pollok, Videographer
25
```

### Page 3

```
 1              INDEX
 2                               PAGE
 3  Appearances..................    2
 4     DR. RODNEY JOHNSON
 5     Examination by Mr. Schapiro........   10
 6  Signature and Changes ........................  283
 7  Reporter's Certificate .......................  285
 8
 9          EXHIBITS
10  NO.       DESCRIPTION             PAGE
11
    Exhibit 1   A seven-page copy of the      30
12              Declaration of Dr. Rodney
                Johnson in Support Plaintiffs'
13              Motion for Class Certification
14  Exhibit 2   A copy of an 11-page document   54
                entitled, "Defendant's First
15              and Second Set of
                Interrogatories to Plaintiffs
16              Added in the First Amended
                Complaint Filed April 16, 2021
17              (Nos. 1-9)
18  Exhibit 3   A 20-page copy of Plaintiffs'  57
                Responses and Objections to
19              Defendant's First and Second
                Set of Interrogatories to
20              Plaintiffs Added in First
                Amended Complaint Filed
21              April 16, 2021
22  Exhibit 4   A three-page copy of a
                verification signed by
23              Rodney Johnson,
                dated July 26, 2021
24              (Withdrawn on Page 144)
25
```

### Page 4

```
 1            INDEX (Continued)
 2              EXHIBITS
 3  NO.       DESCRIPTION             PAGE
 4  Exhibit 5   A 92-page copy of the First    99
                Amended Class Action Complaint
 5
    Exhibit 6   A copy of a one-page document, 108
 6              Bates stamped
                PLAINTIFFS00034538,
 7              designated as "Confidential"
 8  Exhibit 7   A one-page copy of a document, 113
                Bates stamped
 9              PLAINTIFFS00028094,
                designated as "Confidential"
10
    Exhibit 8   A two-page copy of an e-mail   118
11              dated March 11, 2017, Bates
                labeled PLAINTIFFS00029087
12              through PLAINTIFFS00029087,
                designated as "Confidential"
13
    Exhibit 9   A 19-page copy of a document   162
14              entitled, "Waze- Privacy
                Policy"
15
    Exhibit 10  A copy of a three-page document 167
16              entitled, "How Google Uses
                Information From Sites or
17              Apps That Use Our Services"
18  Exhibit 11  A five-page copy of an e-mail, 178
                dated May 12, 2018, Bates
19              labeled PLAINTIFFS00029145
                through PLAINTIFFS00029153,
20              designated as "Confidential"
21  Exhibit 12  A seven-page copy of an e-mail, 185
                dated May 12, 2018, Bates
22              labeled PLAINTIFFS00029079
                through PLAINTIFFS00029085,
23              designated as "Confidential"
24
25
```

### Page 5

```
 1            INDEX (Continued)
 2              EXHIBITS
 3  NO.       DESCRIPTION             PAGE
 4
    Exhibit 13  A four-page copy of an e-mail, 187
 5              dated February 21, 2020, Bates
                labeled PLAINTIFFS00029156
 6              through PLAINTIFFS00029159,
                designated as "Confidential"
 7
    Exhibit 14  A two-page copy of an e-mail,  188
 8              dated February 22, 2020, Bates
                labeled PLAINTIFFS00029189
 9              through PLAINTIFFS00029190,
                designated as "Confidential"
10
    Exhibit 15  A three-page copy of an e-mail, 190
11              dated February 21, 2020, Bates
                labeled PLAINTIFFS00029052
12              through PLAINTIFFS00029054,
                designated as "Confidential"
13
    Exhibit 16  A two-page copy of an e-mail,  191
14              dated February 21, 2020, Bates
                labeled PLAINTIFFS00029079
15              through PLAINTIFFS00029071,
                designated as "Confidential"
16
    Exhibit 17  A two-page copy of an e-mail,  192
17              dated June 10, 2015, Bates
                labeled PLAINTIFF00029135
18              through PLAINTIFF00029136,
                designated as "Confidential"
19
    Exhibit 18  A two-page copy of an e-mail,  193
20              dated December 27, 2020, Bates
                labeled PLAINTIFFS00034252
21              through PLAINTIFFS00034253,
                designated as "Confidential"
22
    Exhibit 19  A three-page copy of an e-mail, 194
23              dated July 9, 2020, Bates
                labeled PLAINTIFF00029185
24              through PLAINTIFF00029187,
                designated as "Confidential"
25
```

**Page 58**

```
 1         MS. WEAVER:  Uh-huh.
 2   BY MR. SCHAPIRO:
 3      Q.  So I'm just going to ask:  Does that
 4   seem accurate to you, 2009, 2010?
 5         MS. WEAVER:  So just take your time
 6   to read the document.
 7         THE WITNESS:  Uh-huh.
 8         MS. WEAVER:  So that you're
 9   comfortable.  If you're comfortable, then you can
10   answer.
11         THE WITNESS:  Yeah.  I'm just
12   looking at these Gmail accounts.  Some of these
13   e-mails are more recent.  But that Drjaye2020 was
14   established early.
15   BY MR. SCHAPIRO:
16      Q.  So, yes.  All I'm going to ask you -- go
17   ahead and read it, but I'm just going to ask if
18   there is anything in this paragraph marked "B"
19   that is inaccurate or -- or incorrect to the best
20   of your knowledge.
21      A.  The dates are the only thing that I'm
22   seeing right now that might be inaccurate, maybe.
23   Let's see.  Because it very well could have been
24   before that.  I'm not sure.
25      Q.  Sure.  Okay.  So, and just to be clear,
```

**Page 59**

```
 1   so I think you've testified, so this is -- my
 2   question here is about when you started using
 3   Chrome.
 4         There's, I think you are also
 5   answering a separate question which is when you
 6   might have started -- had your first Gmail
 7   account, which I take from what you've told us
 8   before, that might have been before this.
 9   Correct?
10      A.  Restate that because I -- okay.  Restate
11   the question again.
12      Q.  Sure.  Well, you understand that Chrome
13   and e-mail are two different things.  Right?
14      A.  Correct.
15      Q.  And what I was focusing on right now was
16   when you started using Chrome, not when you might
17   have had your first Gmail or Google account.
18         And if we focus only when you first
19   started using Chrome, 2009 or 2010 seem right to
20   you?
21      A.  That's what is here.  I'm just going to
22   go with what's here.
23      Q.  And these are interrogatories that you
24   verified at some point?
25      A.  Uh-huh.  Yes.
```

**Page 60**

```
 1      Q.  Okay.  And you have testified earlier
 2   that you -- you have familiarity with Chrome's
 3   Sync feature.  Right?
 4      A.  Yes.
 5      Q.  Do you know -- by the way, you can take
 6   down this document now.  I was just using it for
 7   the date.
 8         Have -- have you ever used Chrome
 9   with Sync turned on, as far as you know?
10      A.  No.  I haven't activated Sync.
11      Q.  And do you know how to turn Sync on or
12   off?
13      A.  Yes.
14      Q.  How do you do that?
15      A.  Well, in the upper right-hand corner,
16   there is a Sync feature and if you choose not to
17   sync, then you don't select "Sync."
18      Q.  And what is your understanding of what
19   Chrome Sync is -- is -- what Chrome Sync does.
20   Would happen if you turn it on?
21      A.  That it would share some or all
22   information with Google.
23      Q.  And so, you believe that if Sync is
24   turned off, no information will be shared with
25   Google?
```

**Page 61**

```
 1         MS. WEAVER:  Objection.  Vague.
 2         THE WITNESS:  How do you turn Sync
 3   off?  I mean if Sync is not activated, I don't
 4   activate Sync, is Sync still on?
 5         MS. WEAVER:  Yeah.  That's the
 6   vagueness of the question.
 7         MR. SCHAPIRO:  I'll rephrase it.
 8   BY MR. SCHAPIRO:
 9      Q.  You testified a moment ago that your
10   understanding is if Sync were turned on, it would
11   share some or all information with Google.  And I
12   guess I'm asking you:  Do you also believe that
13   the reverse is true, if Sync is not turned on,
14   that Chrome would not share some or all
15   information with Google?
16         MS. WEAVER:  So if you're asking
17   what actually occurs, Andy, I'm going to instruct
18   the witness, to the extent you've learned
19   anything from counsel that's not in the Complaint
20   about what was shared with Google, he can
21   testify.
22         There is some information in the
23   Complaint about data shared with Google.  Right?
24         THE WITNESS:  Right.
25         MS. WEAVER:  That's public so you
```

16 (Pages 58 - 61)

1  can talk about that.
2         THE WITNESS: And I'm thinking
3  about this like my Geometry class you have
4  conditional statements which are true but you
5  have the converse which is false but
6  bi-conditional statements that are true both ways
7  if and only if the other is true. So that's how
8  vague your question is.
9  BY MR. SCHAPIRO:
10     Q. Before you were contacted by counsel to
11 participate in this case, did you have any
12 understanding of what Sync mode did?
13     A. Yes, I did. Uh-huh. Then we shared all
14 types of information with Google.
15     Q. Uh-huh. And where did you get that
16 understanding, if you remember?
17     A. Even before the case?
18     Q. Yes, sir.
19     A. I mean I always understood that, you
20 know, anything that I'm not familiar with, I
21 don't do.
22         So, if I just want to search the
23 Internet, I am searching the Internet. I am not
24 worried about who knows what and syncing and not
25 syncing and...

Page 62

1      Q. Sure. While you told us a moment ago,
2  though, I asked before you were contacted by
3  counsel to participate in this, participate in
4  the case, whether you had an understanding of
5  what Sync mode did?
6          And you said: Yes, that it -- it
7  shares all types of information with Google.
8          And I'm just asking: At that time,
9  before your involvement in this case, do you
10 recall where -- where you got that understanding?
11     A. I mean that was just a general practice
12 of mine. I don't accept cookies when I am
13 searching the Internet. I don't accept cookies,
14 anything that flashes up and says: Do you want
15 to take part in this? I X out.
16         I mean, I'm just on the Internet
17 trying to do business or trying to conduct
18 research, that sort of thing.
19     Q. Before you spoke to any lawyers about
20 this case, did Google -- did you see anything
21 from Google that represented -- that said to you,
22 that if you turn on Sync, all types of
23 information will be shared with Google?
24     A. I can't recall, no.
25     Q. Do you know if you look at any Google

Page 63

1  terms of services or policies that described what
2  Google's position about what Sync does?
3      A. I can't -- well, I can't recall
4  specifically but, you know, before any accepting
5  on my part, any type of procedures, I would want
6  to open the terms of contract -- terms and
7  agreement and read a couple of pages of it at
8  least, you know, and then press the Accept button
9  in order to allow me to use the feature that I'm
10 looking for.
11     Q. And early -- earlier, you said, anything
12 that I'm not familiar with, I don't do. And so
13 that's why that's why you didn't turn on Sync.
14 Is that correct?
15     A. Anything that I'm not familiar with,
16 yes, I don't -- I don't do that.
17     Q. And so, you didn't turn on Sync because
18 you didn't know what it would do?
19     A. That's really a confusing question. My
20 inaction was purely voluntary. And that's things
21 that I generally do I didn't activate Sync
22 because I knew that it would share it with
23 Chrome. I mean, with Google. But my state of
24 mind when I did so, I mean I just do these things
25 unconsciously. I don't activate those things.

Page 64

1      Q. Do you know if Chrome has a feature --
2  separate and apart from anything your lawyers
3  have told you. Okay?
4          So if Chrome has a feature that
5  allows a user to synchronize settings like
6  bookmarks, tabs, passwords, browsing history,
7  across different devices so that you can have
8  those things on different devices at the same
9  time?
10     A. I've used bookmarks. I've used -- clear
11 my browsing history to make my machine faster.
12         When you clear your cache and all
13 those different types of things. A clean sweep
14 in order to make your machine faster, you have
15 to, you know, eliminate your browsing history.
16         But other than that, those other
17 things that you mentioned, I'm not familiar with.
18     Q. I think you mentioned near the beginning
19 of the deposition some different devices that you
20 used at times -- correct me if I'm wrong: A
21 laptop or an iPad or a phone. Is that accurate?
22     A. A desktop, yes.
23     Q. A desktop. And when you book mark a
24 page on one of those devices, does it does that
25 bookmark also appear on your other devices, or

Page 65

17 (Pages 62 - 65)

| | |
|---|---|
| 1  Lesley Weaver, Esq.<br>      -and-<br>2  Angelica Ornelas, Esq.<br>   BLEICHMAR FONTI & AULD<br>3  555 12th Street<br>   Suite 1600<br>4  Oakland, California 94607<br>   415.445.4003<br>5  lweaver@bfalaw.com<br>   aornelas@bfalaw.com<br>6<br>   Nimrod Chapel, Esq.<br>7  CHAPEL LAW GROUP, L.L.C.<br>   311 W. Dunkin<br>8  Jefferson City, Missouri 65101<br>   573.303.0405<br>9  nimrod@chapellaw.com<br>10 Andrew Schapiro, Esq.<br>   QUINN EMANUEL URQUHART & SULLIVAN, L.L.P.<br>11 191 N. Wacker Drive<br>   Suite 2700<br>12 Chicago, Illinois 60606<br>   312.705.7403<br>13 andrewschapiro@quinnemanuel.com<br>14 Tracy Gao, Esq.<br>   QUINN EMANUEL URQUHART & SULLIVAN, L.L.P.<br>15 865 S. Figueroa Street<br>   10th Floor<br>16 Los Angeles, California 90017<br>   212.84.-7000<br>17 tracygao@quinnemanuel.com<br>18      I further certify that I am neither counsel for,<br>   related to, nor employed by any of the parties or<br>19 attorneys in the action in which this proceeding was<br>   taken, and further that I am not financially or<br>20 otherwise interested in the outcome of the action.<br>21      In witness whereof, I have this date subscribed my<br>   name on this 27th day of October, 2021.<br>22<br>23<br>24<br>25<br>Page 286 | 1  lweaver@bfalaw.com<br>2           October 27, 2021<br>3  RE: Patrick Calhoun v. Google, Llc<br>4  DEPOSITION OF: Dr. Rodney Johnson (# 4841695)<br>5      The above-referenced witness transcript is<br>6  available for read and sign.<br>7      Within the applicable timeframe, the witness<br>8  should read the testimony to verify its accuracy. If<br>9  there are any changes, the witness should note those<br>10 on the attached Errata Sheet.<br>11     The witness should sign and notarize the<br>12 attached Errata pages and return to Veritext at<br>13 errata-tx@veritext.com.<br>14     According to applicable rules or agreements, if<br>15 the witness fails to do so within the time allotted,<br>16 a certified copy of the transcript may be used as if<br>17 signed.<br>18                Yours,<br>19                Veritext Legal Solutions<br>20<br>21<br>22<br>23<br>24<br>25<br>Page 288 |
| 1<br>2<br>3  *Suzanne Kelly* (signature)<br>4<br>   Suzanne Kelly, RDR, CRR<br>5  VERITEXT LEGAL SOLUTIONS<br>   Firm Registration No. 571<br>6  300 Throckmorton Street<br>   Suite 1600<br>7  Fort Worth, Texas 76102<br>   817.336.3042  1.800.336.4000<br>8<br>9<br>10<br>11<br>12<br>13<br>14<br>15<br>16<br>17<br>18<br>19<br>20<br>21<br>22<br>23<br>24<br>25<br>Page 287 | |