# Exhibit 13

HIGHLY CONFIDENTIAL

```
 1              IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF CALIFORNIA
 2                       SAN JOSE DIVISION
 3                    CASE NO.:  5:20-cv-5146-LHK-SVK
 4     PATRICK CALHOUN, et al., on behalf of
       themselves and all other similarly
 5     situated,
 6          Plaintiff(s),
 7     -vs-
 8     GOOGLE LLC,
 9          Defendant(s).
       _____/
10
11                     HIGHLY CONFIDENTIAL
12           REMOTE VIDEO DEPOSITION OF ELAINE CRESPO
13
                    DATE:  Thursday, July 22, 2021
14                  TIME:  9:09 a.m. - 3:52 p.m.
15
16
17
18
19
20
21
22              Taken on behalf of the DEFENDANT before
23     Jennifer L. Bush, RPR, FPR, Notary Public in and for the
24     State of Florida at Large, pursuant to Notice of Taking
25     Deposition in the above cause.
```

Page 1

## Page 2

```
 1         A P P E A R A N C E S
 2   APPEARING ON BEHALF OF THE PLAINTIFF(S):
 3
         Eric Johnson, Esquire
 4       Jay Barnes, Esquire
         An Truong, Esquire
 5       SIMMONS HANLY CONROY
         One Court Street
 6       Alton, IL 62002
         618-693-3104
 7
 8
     APPEARING ON BEHALF OF THE DEFENDANT(S):
 9
10       Andrew Schapiro, Esquire
         Tracy Gao, Esquire
11       QUINN EMANUEL URQUHART &
         SULLIVAN LLP
12       865 S Figueroa Street, 10th
         Floor
13       Los Angeles, CA 90017
14
     ALSO PRESENT:
15
         Marise Nazzaro, Videographer
16
17
18
19
20
21
22
23
24
25
```

## Page 3

```
 1              I N D E X
 2
 3   THE WITNESS:
 4   ELAINE CRESPO
 5            DIRECT   CROSS  REDIRECT  RECROSS
 6   BY MR. SCHAPIRO      7
 7
 ...
15            DEFENDANT'S EXHIBITS
16   Exhibit     Description              Page
17   Exhibit 1   Plaintiffs' Amended Responses and   25
18               Objections to Defendant's First Set of
19               Interrogatories
20   Exhibit 2   Plaintiffs' Amended Responses and   64
21               Objections to Defendant's Second Set
22               of Interrogatories
23   Exhibit 3   Google Privacy Policy 3/1/17        75
24   Exhibit 4   Bates Plaintiffs 00027865           94
25   Exhibit 5   Bates GOOG-CALH-00027555            96
```

## Page 4

```
 1   Exhibit 6    Bates GOOG-CALH-00027718           103
 2   Exhibit 7    Bates GOOG-CALH-00027719           107
 3   Exhibit 8    Activity Controls                  110
 4   Exhibit 9    Bates GOOG-CALH-00047653           113
 5   Exhibit 10   Bates GOOG-CALH-00050814           116
 6   Exhibit 11   First Amended Complaint            128
 7   Exhibit 12   Plaintiffs' Responses and Objections  138
 8                to Defendant's Second Set of
 9                Interrogatories
10   Exhibit 13   Verification                       139
11   Exhibit 14   Google Terms of Service            145
12   Exhibit 15   Privacy Policy                     164
13   Exhibit 16   Google Analytics Opt-Out Browser   171
14                Add-On
15   Exhibit 17   E-mail from Google                 186
```

## Page 5

         The attorneys participating in this
deposition acknowledge that I, the court reporter,
am not present with the witness and that I will be
reporting the proceedings and administering the
oath remotely. This arrangement is pursuant to the
Florida Supreme Court Administrative Order No.
AOSC-20-16 (and extended by AOSC-20-17). The
parties and their counsel consent to this
arrangement and waive any objections to this
manner of reporting.
         (All agree.)
         THE VIDEOGRAPHER: We are now on the record
of Media Unit No. 1 of the deposition of Elaine
Crespo, in the matter of Patrick Calhoun versus
Google.
         Today is July 22nd, and the time is 9:09
East Coast Time. Deposition is Jennifer -- excuse
me, the court reporter is Jennifer Bush; the
videographer is Marise Nazzaro.
         Will counsel and all parties present state
their appearance, whom they represent, after the
court reporter please swear in the witness.
         Proceed.
         MR. JOHNSON: This is Eric Johnson with
Simmons, Hanly, Conroy for the Class and the

```
 1      Q.   What about a browser plug-in, do you know
 2   what a browser plug-in is?
 3      A.   I do not.
 4      Q.   Are you familiar with Chrome's Incognito
 5   mode?
 6           MR. JOHNSON: Objection, vague.
 7           You can answer.
 8           THE WITNESS: I'm familiar with what --
 9   with Incognito.
10   BY MR. SCHAPIRO:
11      Q.   Do you ever use Incognito when browsing the
12   internet?
13           MR. JOHNSON: Objection, vague as to time.
14           You can answer.
15           THE WITNESS: I have in the past.
16   BY MR. SCHAPIRO:
17      Q.   Frequently?
18           MR. JOHNSON: Objection, vague.
19           You can answer.
20           THE WITNESS: No.
21   BY MR. SCHAPIRO:
22      Q.   What do you understand Incognito mode to
23   be?
24      A.   It's when anything that you search or type
25   will not be stored or -- or stored in general. It would
```
Page 54

```
 1   disappear, whatever you do.
 2      Q.   Did you expect that using Chrome and
 3   Incognito mode would do anything different than using
 4   Chrome without sync in terms of privacy?
 5           MR. JOHNSON: Objection, vague.
 6           You can answer.
 7           THE WITNESS: Can you repeat that again,
 8      please?
 9   BY MR. SCHAPIRO:
10      Q.   Sure.
11           Did you expect that using Chrome in
12   incognito mode would do anything different in terms of
13   privacy than using Chrome without sync?
14           MR. JOHNSON: Same objection.
15           THE WITNESS: I mean, if I'm using
16      incognito mode, I expect the information not to be
17      stored, what I do. And if I'm not syncing, I
18      expect that information not to be collected and
19      shared.
20   BY MR. SCHAPIRO:
21      Q.   So the difference is -- is that -- well,
22   strike that.
23           What about private browsing modes on other
24   browsers, have you -- have you ever used them?
25      A.   I'm not familiar with other modes or
```
Page 55

```
 1   private browsing.
 2      Q.   Are you familiar with a browser called
 3   Brave with a capital B?
 4           MR. JOHNSON: Objection, vague.
 5           You can answer.
 6           THE WITNESS: I am not.
 7   BY MR. SCHAPIRO:
 8      Q.   Are you familiar with something called
 9   DuckDuckGo?
10           MR. JOHNSON: Objection, vague.
11           You can answer.
12           THE WITNESS: I have heard of that, yes.
13   BY MR. SCHAPIRO:
14      Q.   What do you know about it?
15      A.   From what I gather, I mean, it's coming
16   from conspiracy groups or whatever to use that as a
17   privacy sort of browser. I find it weird. I don't know.
18   I've never personally used it.
19      Q.   And I apologize if I -- if this is -- if
20   I'm repeating this question, but I just want to make sure
21   that I've asked it in the right way.
22           Am I correct that you have not researched
23   whether other browsers, including Firefox, also send your
24   data to Google the way that you say Chrome does in this
25   case?
```
Page 56

```
 1           MR. JOHNSON: Objection, vague, calls for a
 2      legal conclusion.
 3           You can answer.
 4           THE WITNESS: I have not.
 5   BY MR. SCHAPIRO:
 6      Q.   When you use -- when you currently use
 7   Chrome at the office, do you take any steps to prevent
 8   Google from receiving your information?
 9           MR. JOHNSON: Objection, calls for expert
10      opinion.
11           You can answer.
12           THE WITNESS: I don't.
13   BY MR. SCHAPIRO:
14      Q.   Do you know what mode you use when you're
15   browsing the Internet at the office? By that, I mean,
16   basic or synced or signed-in or incognito?
17           MR. JOHNSON: Objection, vague as to time.
18           You can answer.
19           THE WITNESS: I'm not familiar with
20      different modes. I just know that we open the
21      icon on the bottom and begin our search.
22   BY MR. SCHAPIRO:
23      Q.   Okay. Do you believe that you have entered
24   into any type of contract with Google?
25           MR. JOHNSON: Objection, calls for a legal
```
Page 57

**Page 70**

1 Google that you allege contributed to your alleged
2 understanding, the documents or location in which those
3 statements appeared, whether you in fact reviewed the
4 statements; and if so, when you did so."
5 　　　　Did you review that interrogatory before
6 working with your lawyers to provide a response to it?
7 　　　　MR. JOHNSON: Objection, to the ex- --
8 　　don't answer to the extent it reveals any
9 　　communications with counsel.
10 　　　　THE WITNESS: I don't understand the
11 　　question.
12 BY MR. SCHAPIRO:
13 　　Q.　Yeah, that was a poorly framed -- framed
14 question. I'll try again.
15 　　　　When you -- these interrogatories include
16 statements of fact from or about you, correct?
17 　　A.　Yes.
18 　　Q.　And without telling me the contents, I
19 assume you worked with your lawyers or your lawyers
20 worked with you to prepare the answers to these, correct?
21 　　A.　Yes.
22 　　Q.　Okay. So if we look at the response here
23 in the -- what's listed as the original response, you'll
24 see there are a series of paragraphs that begin with
25 objections. And then if you scroll down to page 3,

**Page 71**

1 line 27 --
2 　　　　MR. JOHNSON: Take your time.
3 BY MR. SCHAPIRO:
4 　　Q.　-- you'll see that there is a sentence
5 begins -- paragraph beginning, "Subject to the foregoing
6 objections." Let me know when you are there.
7 　　A.　Okay.
8 　　Q.　So in your answer here, you said, "Subject
9 to the foregoing objections, at the time that plaintiffs
10 downloaded and began using Chrome, plaintiffs respond
11 that they believed, based on reasonable expectations,
12 that their personal information, including the content of
13 their Internet communications, would not be sent to
14 Google when they were exchanging communications with
15 persons and entities other than Google."
16 　　　　I'm going to pause there and just say, is
17 that accurate as to you?
18 　　　　MR. JOHNSON: Objection, to the extent that
19 　　calls for a legal conclusion, violates Rifkind and
20 　　was proceeded by a lengthy objection and was
21 　　followed by an amended response.
22 BY MR. SCHAPIRO:
23 　　Q.　You may answer.
24 　　A.　Yes.
25 　　Q.　So the responses that you believed, based

**Page 72**

1 on reasonable expectations, that your personal
2 information as described there would not be sent to
3 Google, correct?
4 　　　　MR. JOHNSON: Objection, to the extent the
5 　　response speaks for itself. Same objection as
6 　　before.
7 　　　　THE WITNESS: Yes.
8 BY MR. SCHAPIRO:
9 　　Q.　And what was the basis for those reasonable
10 expectations?
11 　　　　MR. JOHNSON: Objection, calls for a legal
12 　　conclusion, violates Rifkind.
13 　　　　Answer if you are able.
14 　　　　THE WITNESS: That sync is sync; and when
15 　　you are not synced, that your information wouldn't
16 　　be sent anywhere.
17 BY MR. SCHAPIRO:
18 　　Q.　So based on -- on -- so you said that "sync
19 is sync." What do you mean by that?
20 　　A.　When your -- when you sync into Chrome,
21 it's collecting all this information. But if you are not
22 synced, then my understanding is that my information is
23 not being collected and shared.
24 　　Q.　Did that belief that you had come from any
25 statements by Google?

**Page 73**

1 　　　　MR. JOHNSON: Objection, to the extent it
2 　　calls for a legal, violates Rifkind.
3 　　　　Answer if you are able.
4 　　　　THE WITNESS: Yes.
5 BY MR. SCHAPIRO:
6 　　Q.　What statements?
7 　　　　MR. JOHNSON: Same objection.
8 　　　　THE WITNESS: That your privacy would be
9 　　protected as a Chrome user if you were not going
10 　　to sync into the -- into Chrome.
11 BY MR. SCHAPIRO:
12 　　Q.　And where did you see Google say that your
13 privacy would be protected as a Chrome user if you are
14 not -- sorry, what did you -- if you are not synced into
15 Chrome?
16 　　　　MR. JOHNSON: Objection, violates Rifkind.
17 　　You can answer.
18 　　　　THE WITNESS: I don't know specifically
19 　　where, you know, there were some thing -- probably
20 　　some sort of marketing or something about privacy
21 　　for Google.
22 BY MR. SCHAPIRO:
23 　　Q.　So you said something about -- you said
24 some sort of marketing or something about privacy for
25 Google.

```
 1  BY MR. SCHAPIRO:
 2     Q.   Do you know what the Google Blogger service
 3  is or was?
 4     A.   I do not.
 5     Q.   And YouTube, we've already established you
 6  are familiar with that, correct?
 7     A.   Yes.
 8     Q.   iGoogle, I think you said you weren't
 9  familiar with, correct?
10     A.   That's correct.
11     Q.   Android was a maybe, right?
12     A.   Right.
13     Q.   Google Calendar, familiar?
14     A.   Yes.
15     Q.   Google Hangouts?
16     A.   I don't know what that is.
17     Q.   How about Google Chrome Sync, did you ever
18  use sync with this Google account?
19          MR. JOHNSON:  Object to form, foundation.
20          THE WITNESS:  No.
21  BY MR. SCHAPIRO:
22     Q.   And how can you be so sure?
23          MR. JOHNSON:  Objection, asked and
24     answered.
25          Answer if you can.
                                            Page 118
```

```
 1          THE WITNESS:  I'm not.  I don't know.
 2  BY MR. SCHAPIRO:
 3     Q.   I see.  So when you said, "no," you mean --
 4  you mean -- you meant you don't know one way or another
 5  if you used sync with this Google account?
 6     A.   I would have never used sync.
 7     Q.   Do you know how to turn sync on or off?
 8     A.   I've seen it.
 9     Q.   And why do you say you would have never
10  used sync?
11          MR. JOHNSON:  Objection, vague.
12          THE WITNESS:  I wouldn't have a reason to.
13  BY MR. SCHAPIRO:
14     Q.   And so the Google subscriber information
15  for your account says that one of the services used was
16  Google Chrome Sync.  Do you have any explanation for
17  that?
18          MR. JOHNSON:  Objection, foundation,
19     speculation.
20          THE WITNESS:  I don't.
21  BY MR. SCHAPIRO:
22     Q.   Is it possible someone else enabled sync on
23  your account?
24          MR. JOHNSON:  Objection, calls for
25     speculation.
                                            Page 119
```

```
 1          You can answer.
 2          THE WITNESS:  No.
 3          MR. JOHNSON:  Andrew, just so you know, our
 4     lunch is here.  We're in no rush.  I know we
 5     agreed on 12:30, but I just wanted to give you a
 6     heads up in case your stopping point was fluid.
 7          MR. SCHAPIRO:  Thank you.
 8  BY MR. SCHAPIRO:
 9     Q.   You've told us before that you have a
10  laptop and a mobile phone, correct?
11     A.   Yes.
12     Q.   And when you were using Chrome, did you
13  have your passwords, for example, automatically stored in
14  either or both of those devices?
15          MR. JOHNSON:  Objection, vague.
16          THE WITNESS:  For certain accounts, like
17     banking.
18  BY MR. SCHAPIRO:
19     Q.   How about bookmarks, do you ever -- do you
20  ever bookmark websites?
21          MR. JOHNSON:  Objection, vague.
22          THE WITNESS:  Occasionally.
23  BY MR. SCHAPIRO:
24     Q.   And are the bookmarks on your phone and
25  your laptop the same bookmarks or are -- do you have one
                                            Page 120
```

```
 1  set for your phone and one set for your laptop?
 2          MR. JOHNSON:  Objection, vague as to time.
 3          You can answer.
 4          THE WITNESS:  I can't answer that.  I don't
 5     know.
 6  BY MR. SCHAPIRO:
 7     Q.   Do you ever use the auto fill features to
 8  fill in fields like name, address?
 9          MR. JOHNSON:  Objection, vague.
10          You can answer.
11          THE WITNESS:  Possibly on my phone.
12  BY MR. SCHAPIRO:
13     Q.   How about on your laptop?
14          MR. JOHNSON:  Same objection.
15          THE WITNESS:  I can't recall.
16  BY MR. SCHAPIRO:
17     Q.   How about the work computer?
18          MR. JOHNSON:  Same objection.
19          THE WITNESS:  No.
20          MR. SCHAPIRO:  All right.  Why don't we go
21     off the record.
22          THE VIDEOGRAPHER:  Okay.  Off the record at
23     12:25.
24          (A lunch recess was taken from 12:25 p.m. to
25     1:11 p.m.)
                                            Page 121
```

```
 1      Q.   Have you ever tried to sell your personal
 2   information?
 3      A.   No.
 4      Q.   Do you have any plans to ever sell your
 5   personal information?
 6           MR. JOHNSON:  Objection, calls for
 7      speculation.
 8           THE WITNESS:  No.
 9   BY MR. SCHAPIRO:
10      Q.   Is there a dollar amount that you assign to
11   your personal information?
12           MR. JOHNSON:  Objection, calls for expert
13      testimony.
14           THE WITNESS:  I wouldn't even know how to
15      answer that.
16           MR. SCHAPIRO:  Let's introduce the next
17      exhibit.  I think this will be Exhibit 12.
18           (Defendant's Exhibit 12 is marked for
19   Identification.)
20           MR. SCHAPIRO:  And why don't we, at the
21      same time, sorry, just also introduce the next
22      one.  I'll represent the next one is the
23      verification which, for whatever reason, is in a
24      separate document.  So I just want to toggle
25      between them, if that's all right.  So let's just
```
Page 138

```
 1      put up Exhibit 13 also which is our Tab 21.
 2           (Defendant's Exhibit 13 is marked for
 3   Identification.)
 4           MR. JOHNSON:  We're still waiting on 13,
 5      Andrew.
 6           MR. SCHAPIRO:  Okay.
 7   BY MR. SCHAPIRO:
 8      Q.   Can you just, while you're waiting on 13,
 9   if you want, for Exhibit 12, can you just tell me what
10   the title of that document is, Ms. Crespo?
11           MR. JOHNSON:  Here you go, go back into 12.
12           THE WITNESS:  You mean 12 down here,
13      Exhibit 12?
14           MR. JOHNSON:  Yes.
15           MR. SCHAPIRO:  And I have no objection if
16      Eric wants to point you to where the title on a
17      legal pleading is because it is not always obvious
18      to people who aren't familiar with them.
19           MR. JOHNSON:  Thank you for the
20      accomodation.
21           THE WITNESS:  I'm back on Exhibit 12, and
22      the title is "Plaintiffs' Response and Objections
23      to Defendant's Second Set of Interrogatories."
24   BY MR. SCHAPIRO:
25      Q.   All right.  Can you now jump to Exhibit 13
```
Page 139

```
 1   and just tell me if Exhibit 13 is a verification for
 2   Exhibit 12 -- oh, you know what?  Yeah, you'll have to
 3   scroll down to the second page because there are multiple
 4   plaintiffs on this one.
 5      A.   Yes.
 6      Q.   Okay.  So here on page 2 it says that you,
 7   Elaine Crespo, have read Plaintiffs' Responses and
 8   Objections to Defendant's Second Set of Interrogatories
 9   and certify under penalty of perjury, et cetera, correct?
10      A.   Yes.
11      Q.   Okay.  So let's go back to Exhibit 12.
12      A.   Okay.
13      Q.   I'll ask you to take a look at
14   Interrogatory No. 8 which is at the bottom of page 6.
15      A.   Okay.
16      Q.   So here the -- you're asked to describe
17   with particularity the personal information that you
18   allege you agreed to share with Google as valuable
19   consideration for your alleged contract with Google and
20   which you allege has ascertainable value.
21           Do you see that interrogatory?
22      A.   Yes.
23      Q.   And the response, for which I'll save Eric
24   the trouble of saying which is subject to whatever
25   objections you have earlier in -- earlier in the
```
Page 140

```
 1   document, says that, "Plaintiffs allege a contractual
 2   relationship with Google governed by the general terms of
 3   service, the Chrome additional terms and the Chrome
 4   privacy notice.  Consideration for the contract consists
 5   of a mutual exchange of promises, but also includes
 6   Plaintiffs' provision of this personal information or PI
 7   referenced" -- excuse me, "of the personal information or
 8   PI referenced in paragraphs 356 and 366.  This PI has
 9   monetary value and includes name, e-mail address and
10   other PI associated with Plaintiffs' Google account.
11   Chrome browsing history and associated identifiers when
12   plaintiffs have chosen to affirmatively sync to their
13   account and the contents of information within Google
14   consumer accounts with consumer authorization.
15   Plaintiffs discovery and investigation of Google's
16   actions is ongoing."
17           All right.  I'll end here.  Is this
18   response true as it pertains to you?
19           MR. JOHNSON:  Objection, to the extent it
20      calls for a legal conclusion, violates Rifkind,
21      foundation.
22           You can answer.
23           THE WITNESS:  Yes.
24   BY MR. SCHAPIRO:
25      Q.   And so here it says that one of the things
```
Page 141

36 (Pages 138 - 141)

**Page 142**

1  that you provided, consensually provided to Google is
2  Chrome browsing history and associated identifiers when
3  plaintiffs or you have chosen to affirmatively sync to
4  your account.
5      Do you have an understanding of what it
6  means to sync to your account?
7      MR. JOHNSON: Objection, you can answer.
8      THE WITNESS: When you turn the little sync
9      button on the corner.
10 BY MR. SCHAPIRO:
11     Q. Well, isn't that just about syncing Chrome?
12 I'm wondering whether by syncing to your account you mean
13 here log-in to your account?
14     MR. JOHNSON: Objection, foundation,
15     violates Rifkind.
16     You can answer.
17     THE WITNESS: I'm not sure how to answer
18     that.
19 BY MR. SCHAPIRO:
20     Q. How come?
21     A. Not really sure what you are asking.
22     Q. Do you have a clear idea in mind or are you
23 uncertain about what it means to sync to your account?
24     MR. JOHNSON: Same objection.
25     THE WITNESS: I don't.

**Page 143**

1  BY MR. SCHAPIRO:
2      Q. You say that in the answer here that the
3  contract with Google consists of the general terms of
4  service, this is in the first sentence, the general terms
5  of service, the Chrome additional terms and the Chrome
6  privacy notice. And I know earlier today you told us
7  that, you know, you understood that you had entered into
8  a contract with -- with Google.
9      Are those in your mind the documents that
10 make up the contract?
11     MR. JOHNSON: Objection, form, compound,
12     misstates testimony, calls for legal conclusion,
13     violates Rifkind.
14     You can answer.
15     THE WITNESS: Not sure how to answer that.
16 BY MR. SCHAPIRO:
17     Q. So is the answer -- so when you say you are
18 not sure how to answer it, do you mean you are not sure
19 that your answer -- that your answer is, you are not sure
20 or is there something unclear about the question?
21     A. I'm still unclear.
22     Q. So in your verified response to this
23 interrogatory, you said that you, when I say, the
24 plaintiffs, that you are one of the plaintiffs, have
25 alleged a contractual relationship with Google governed

**Page 144**

1  by, and then there are three things listed after that:
2  The general terms of service, the Chrome additional terms
3  and the Chrome privacy notice.
4      I'm asking whether that is true with regard
5  to you, whether you are claiming a contract, a
6  contractual relationship with Google that is governed by
7  those three documents?
8      MR. JOHNSON: Objection, foundation, calls
9      for legal conclusion, asked and answered.
10     Violates Rifkind.
11     Answer to the extent you are able.
12     THE WITNESS: Yes.
13 BY MR. SCHAPIRO:
14     Q. And when -- if you know, when in your view
15 did you enter into that contract?
16     MR. JOHNSON: Same objection.
17     THE WITNESS: When you sign up for your
18     Gmail account.
19 BY MR. SCHAPIRO:
20     Q. And for you that was -- well, at least for
21 the Elaine E. Crespo one that was in 2011 I believe, is
22 that right?
23     A. Yes.
24     Q. And so in 2011, you agreed to be bound by
25 each of these documents?

**Page 145**

1      MR. JOHNSON: Objection, asked and
2      answered. Calls for a legal conclusion.
3      Foundation.
4      Answer if you are able.
5      THE WITNESS: I already answered that.
6  BY MR. SCHAPIRO:
7      Q. What was your -- and your answer was yes?
8      MR. JOHNSON: Same objection.
9      THE WITNESS: Yes.
10 BY MR. SCHAPIRO:
11     Q. I mean, you don't mention the Google
12 privacy policy here as -- in your view is the Google
13 privacy policy part of your contract?
14     MR. JOHNSON: Objection, the document
15     speaks for itself, calls for a legal conclusion,
16     violates Rifkind.
17     Answer if you are able.
18     THE WITNESS: Yes.
19     MR. SCHAPIRO: Let's put in our Tab 22.
20 BY MR. SCHAPIRO:
21     Q. So let me know when you have Exhibit 14.
22     MR. JOHNSON: Still waiting on it.
23     (Defendant's Exhibit 14 is marked for
24 Identification.)
25     MR. JOHNSON: Okay.

```
 1   about any additional compensation you might receive for
 2   being a class representative?
 3       A.  No.
 4       MR. SCHAPIRO:  I'm going to take a moment
 5   here.  I think that's all I have.  Let me just
 6   look at my notes for a moment, please.
 7       MR. JOHNSON:  Do you want to go off the
 8   record but have us stick around?
 9       MR. SCHAPIRO:  No, that's okay.  I think
10   I'm finished.
11       Ms. Crespo, I might come back if your
12   attorney asks any questions that I need to follow
13   up on.  But otherwise, that's what I have for
14   today.  Thank you for your time.
15       THE WITNESS:  Thank you.
16       MR. JOHNSON:  And I don't have any
17   questions of the witness.  Thank you.
18       MR. SCHAPIRO:  Thanks, everyone.
19       MR. BARNES:  Thank you for your impeccable
20   timing.
21       THE VIDEOGRAPHER:  Off the record at 3:52.
22       (The proceeding is adjourned at 3:52 p.m.)
23
24
25
                                                       Page 206
```

```
 1          CERTIFICATE OF NOTARY PUBLIC
 2
 3   STATE OF FLORIDA
 4   COUNTY OF _____
 5
 6       I, ELAINE CRESPO, certify that I have read
 7   the foregoing transcript of my deposition and that the
 8   statements contained therein, together with any additions
 9   or corrections made on the attached Errata Sheet are true
10   and correct.
11
12       Dated this _____ day of _____, 20__.
13
14       _____
             ELAINE CRESPO
15
16       The foregoing certificate was subscribed to
17   before me this _____ day of _____, 20__, by
18   the witness who has produced a _____ as
19   identification and who did not take an additional oath.
20
21       _____
                NOTARY PUBLIC
22
23
24
25
                                                       Page 207
```

```
 1          CERTIFICATE OF OATH OF WITNESS
 2
 3   STATE OF FLORIDA     )
 4   COUNTY OF ST. LUCIE  )
 5
 6       I, the undersigned Notary Public, in and
 7   for the State of Florida, hereby certify that ELAINE
 8   CRESPO personally appeared before me and was duly sworn.
 9
10
11       WITNESS MY HAND and official seal in the
12   City of Fort Pierce, County of St. Lucie, State of
13   Florida this July 27, 2021.
14
15
16
17
18       Jennifer L. Bush, RPR, FPR
19       Notary Public
         State of Florida at Large.
20       My Commission: #HH 002112
         My commission expires:  9/24/24
21
22
23
24
25
                                                       Page 208
```

```
 1              CERTIFICATE OF REPORTER
 2
 3   STATE OF FLORIDA        )
 4   COUNTY OF ST. LUCIE     )
 5       I, Jennifer L. Bush, Registered Registered
 6   Registered Professional Reporter, do hereby certify that
 7   I was authorized to and did stenographically report the
 8   deposition of ELAINE CRESPO; and that a review of the
 9   transcript was requested; and that pages 1 through 211,
10   inclusive, are a true record of my stenographic notes.
11       I further certify that I am not a relative,
12   employee, attorney or counsel of any of the parties, nor
13   am I a relative or employee of any of the parties,
14   attorneys or counsel connected with the action, nor am I
15   financially interested in the action.
16
17       Dated this July 27, 2021.
18
19
20
21
22
23
24   Jennifer Bush, RPR, FPR
25
                                                       Page 209
```