# Exhibit 14

```
 1                    UNITED STATES DISTRICT COURT

 2                   NORTHERN DISTRICT OF CALIFORNIA

 3                           SAN JOSE DIVISION

 4

 5    CHASOM BROWN, MARIA NGUYEN, AND    )  C-20-03664 LHK
      WILLIAM BYATT, INDIVIDUALLY AND    )
 6    ON BEHALF OF ALL SIMILARLY         )  SAN JOSE, CALIFORNIA
      SITUATED,                          )
 7                                       )  FEBRUARY 25, 2021
                          PLAINTIFF,     )
 8                                       )  PAGES 1-66
                      VS.                )
 9                                       )
      GOOGLE LLC AND ALPHABET INC.,      )
10                                       )
                          DEFENDANTS.    )
11    _____    )

12

13              TRANSCRIPT OF ZOOM PROCEEDINGS
              BEFORE THE HONORABLE LUCY H. KOH
14                UNITED STATES DISTRICT JUDGE

15

16    A P P E A R A N C E S:

17    FOR THE PLAINTIFFS:     SUSMAN GODFREY LLP
                              BY:  AMANDA K. BONN
18                            1900 AVENUE OF THE STARS, SUITE 1400
                              LOS ANGELES, CALIFORNIA  90067
19
                              BY:  ALEXANDER P. FRAWLEY
20                            1301 AVENUE OF THE AMERICAS, 32ND FLOOR
                              NEW YORK, NEW YORK  10019
21

22             APPEARANCES CONTINUED ON NEXT PAGE

23    OFFICIAL COURT REPORTER:    LEE-ANNE SHORTRIDGE, CSR, CRR
                                  CERTIFICATE NUMBER 9595
24

25         PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
                TRANSCRIPT PRODUCED WITH COMPUTER
```

```
 1
 2      APPEARANCES (CONTINUED)
 3
 4      FOR THE PLAINTIFFS:      BOIES SCHILLER FLEXNER LLP
                                 BY:  MARK C. MAO
 5                               44 MONTGOMERY STREET, 41ST FLOOR
                                 SAN FRANCISCO, CALIFORNIA  94104
 6
                                 BY:  JAMES LEE
 7                               100 SE 2ND STREET, 28TH FLOOR
                                 MIAMI, FLORIDA  33131
 8
 9
10      FOR THE DEFENDANTS:      QUINN EMANUEL URQUHART & SULLIVAN
                                 BY:  ANDREW H. SCHAPIRO
11                               191 N. WACKER DRIVE, SUITE 2700
                                 CHICAGO, ILLINOIS  60606
12
13                               BY:  STEPHEN A. BROOME
                                      VIOLA TREBICKA
14                               865 S. FIGUEROA STREET, 10TH FLOOR
                                 LOS ANGELES, CALIFORNIA  90017
15
16
17
18
19
20
21
22
23
24
25
```

1  DATA STRAIGHT FROM THE BROWSERS, PAIRING IT WITH OTHER USER
2  PROFILES, AND SELLING IT TO OTHERS.  THAT IS SEPARATE AND APART
3  FROM THE SERVICE THEY'RE PROVIDING THE NEW YORK TIMES.
4        SO YOU HEARD THIS LAST WEEK I THINK AT THE CALHOUN
5  HEARING.  IF YOU'RE TO ACCEPT GOOGLE'S POSITION, THAT MEANS
6  GOOGLE CAN USE THE CONTENT OF THE COMMUNICATION IT RECEIVES FOR
7  ANY PURPOSE.  THAT'S THEIR ACTUAL ARGUMENT.  AND THEN THEY CAN
8  JUST HIDE BEHIND THE FACT THAT IT IS PART OF SOME OTHER
9  SERVICE.
10        THAT'S INCONSISTENT WITH THE ECPA.  THE EXCEPTION IS
11  CERTAINLY NOT THAT BROAD.
12        AND IN THE GMAIL LITIGATION, YOUR HONOR POINTED THIS VERY
13  THING OUT, AND I'M QUOTING YOU HERE.  YOU SAID, "CONGRESS DID
14  NOT INTEND TO ALLOW ELECTRONIC COMMUNICATION SERVICE PROVIDERS
15  UNLIMITED LEEWAY TO ENGAGE IN ANY INTERCEPTION THAT WOULD
16  BENEFIT THEIR BUSINESS MODELS, AS GOOGLE CONTENDS."
17        YOU REJECTED THIS SAME TYPE OF ARGUMENT IN THE GMAIL
18  LITIGATION, YOU SHOULD REJECT IT TODAY.
19            MR. BROOME:  MAY I BRIEFLY RESPOND THERE, YOUR HONOR?
20            THE COURT:  YEAH, PLEASE.
21            MR. BROOME:  ONE THING MR. LEE DID NOT IDENTIFY OR
22  QUIBBLE WITH IS WHAT IS THE DEVICE AT ISSUE HERE.  I THINK
23  WE'RE ALL ON THE SAME PAGE THAT THE DEVICE IS THE CODE ON -- ON
24  THE WEBSITES THAT SERVES THE ANALYTICS AND ADS SERVICES, AND SO
25  I THINK THAT TAKES US OUT OF THIS, THIS CONCEPT THAT THE

1    TRANSMISSION AT ISSUE HERE IS BETWEEN THE USER'S BROWSER AND
2    THE WEBSITES.
3         THAT'S NOT -- YOU KNOW, THE TRANSMISSION AT ISSUE HERE IS
4    BETWEEN THE WEBSITES AND GOOGLE.  THAT'S WHAT THE DEVICE IS
5    INTERCEPTING.
6         MR. LEE ALSO MADE THE POINT THAT GOOGLE IS NOT AN ECS.
7    WELL, SECTION 2510 DEFINES AN ECS AS "ANY SERVICE WHICH
8    PROVIDES TO USERS THEREOF," WHICH IN THIS CASE IS THE WEBSITES,
9    "THE ABILITY TO SEND OR RECEIVE ELECTRONIC COMMUNICATIONS."
10        AND SECTION 2510(12) DEFINES ELECTRONIC COMMUNICATIONS TO
11   INCLUDE "ANY TRANSFER OF DATA OF ANY NATURE TRANSMITTED IN
12   WHOLE OR IN PART BY WIRE THAT AFFECTS INTERSTATE OR FOREIGN
13   COMMERCE."
14        ON THE FACTS ALLEGED, GOOGLE ANALYTICS AND ADS CODE FALLS
15   SQUARELY WITHIN THESE DEFINITIONS.
16        THE OTHER POINT I'D JUST LIKE TO ADDRESS IS THAT MR. LEE
17   SAID, WELL, NOW WE'RE SETTING UP A STANDARD WHERE GOOGLE CAN
18   USE THIS DATA FOR ANY PURPOSE IT LIKES AND AN ECS CAN USE THIS
19   DATA FOR ANY PURPOSE IT LIKES, AND THAT'S NOT WHAT WE'RE SAYING
20   AT ALL.
21        WE'RE SAYING THAT GOOGLE CAN USE THIS DATA FOR THE
22   PURPOSES FOR WHICH THE WEBSITES TRANSMIT THE DATA TO GOOGLE,
23   AND THAT'S TO PROVIDE ADS AND ANALYTIC SERVICES.
24        AND JUST FINALLY ON THE POINT THAT, YOU KNOW, GOOGLE IS
25   PACKAGING THIS UP, ALL THIS DATA UP AND SELLING IT OFF TO THIRD

| | |
|---|---|
| 1 | PARTIES, THAT'S NOT TRUE, AND I DON'T THINK THERE ARE ANY WELL |
| 2 | PLEADED ALLEGATIONS OTHER THAN JUST PURELY CONCLUSORY |
| 3 | ALLEGATIONS.  BUT THAT'S NOT HOW GOOGLE SERVICES WORK. |
| 4 |        THE COURT:  HOW DO THEY WORK?  WHAT DO THEY SELL? |
| 5 | HOW DO THEY SELL IT? |
| 6 |        MR. BROOME:  GOOGLE SERVES THE ADS.  SO THE WEBSITES |
| 7 | INSTALL THE CODE ON THEIR SITES, THAT SENDS A SIGNAL TO THE |
| 8 | USER'S BROWSER WHICH THEN -- IT'S VERY SIMILAR TO FACEBOOK, |
| 9 | IT'S THE SAME TRANSMISSION OF DATA, AND THAT SENDS THE DATA TO |
| 10 | GOOGLE. |
| 11 |   SO FOR GOOGLE ANALYTICS, GOOGLE THEN HAS THAT DATA AND IS |
| 12 | ABLE TO SERVE ADS ON THE WEBSITE, ON THE WEBSITE ITSELF. |
| 13 |   IT'S NOT LIKE GOOGLE IS TAKING THE DATA, PACKAGING IT UP, |
| 14 | AND SENDING IT OFF TO ADVERTISERS.  ADVERTISERS WITH CONTRACTS |
| 15 | WITH WEBSITES AND GOOGLE TO DO THE ANALYSIS -- GOOGLE DOES THE |
| 16 | ANALYSIS INTERNALLY AND THEN POPULATES AN AD ON THE SITE. |
| 17 |        THE COURT:  SO YOU'RE DENYING THAT GOOGLE USES THE |
| 18 | INFORMATION TO ENHANCE ITS USER PROFILES? |
| 19 |        MR. BROOME:  IT DEPENDS WHAT YOU MEAN BY "USER |
| 20 | PROFILES."  BUT, I MEAN, WE DON'T REALLY HAVE USER PROFILES. |
| 21 |   BUT THE TYPES OF DATA THAT ARE BEING TRANSMITTED TO GOOGLE |
| 22 | ARE THEN -- YES, THEY ARE ANALYZED, AND THAT WOULD INCLUDE IN |
| 23 | SOME CASES BROWSING HISTORY. |
| 24 |   IN THE CONTEXT OF PRIVATE BROWSING BECAUSE THE COOKIES, |
| 25 | YOU KNOW, ARE -- THE EXISTING COOKIES ON THE BROWSER ARE NOT |

|     |     |
| --- | --- |
| 1   | SHARED IN THAT TRANSMISSION, AND THE COOKIES ARE DELETED WHEN |
| 2   | THE PRIVATE BROWSING SESSION IS CLOSED. |
| 3   | SO YOU COULD HAVE A SITUATION, YOU KNOW, IF A PERSON WENT |
| 4   | TO FIVE WEBSITES THAT ALL USED GOOGLE SERVICES, THEN GOOGLE |
| 5   | WOULD HAVE A RECORD OF THOSE FIVE WEBSITES BEING VISITED AND, |
| 6   | YOU KNOW, ITS ADVERTISING ALGORITHMS COULD ANALYZE THOSE FIVE |
| 7   | SITES, AND THEN THE AD THAT YOU SEE ON THE SIXTH SITE MAY BE |
| 8   | REFLECTIVE OF THAT PRIOR BROWSING HISTORY. |
| 9   | SO THAT'S THE WAY THAT IT'S USED. |
| 10  | BUT IT'S NOT PACKAGED UP AND SOLD TO THIRD PARTIES. |
| 11  | THE COURT:  ALL RIGHT. |
| 12  | LET ME HEAR FROM MR. LEE.  GO AHEAD AND RESPOND, PLEASE. |
| 13  | MR. LEE:  SURE.  SO I THINK THAT THE BIGGEST |
| 14  | MISCONCEPTION HERE IS WHAT THE TRANSMISSION IS, RIGHT? |
| 15  | MR. BROOME SUGGESTED THAT THE TRANSMISSION IS BETWEEN THE |
| 16  | WEBSITE AND GOOGLE THROUGH THE SERVICE GOOGLE ANALYTICS. |
| 17  | BUT THAT'S ACTUALLY INCONSISTENT WITH OUR ALLEGATIONS. |
| 18  | IT'S ALSO INCONSISTENT WITH THE TECHNOLOGY. |
| 19  | THE WAY IT REALLY WORKS IS THE SCRIPTS ARE EMBEDDED INTO |
| 20  | THE WEB PAGES BY GOOGLE, THROUGH GOOGLE ANALYTICS, RIGHT?  AND |
| 21  | WHEN A USER VISITS A WEB PAGE, THAT CODE DIRECTS THE USER'S |
| 22  | BROWSER TO THEN SEND A DUPLICATE COMMUNICATION TO GOOGLE. |
| 23  | SO THE BROWSE -- THE TRANSMISSION AT ISSUE CANNOT BE |
| 24  | BETWEEN GOOGLE AND THE WEBSITES.  THEY'RE NOT ACTUALLY MEETING |
| 25  | IN THE MIDDLE.  GOOGLE IS TAKING THAT INFORMATION DIRECTLY FROM |

```
1      THE USER'S BROWSER.
2            SO I THINK THAT WE JUST, FROM THE OUTSET, DON'T AGREE THAT
3      THE TRANSMISSION IS AS MR. BROOME SUGGESTS.  I THINK WE'RE A
4      LITTLE FAR AFIELD HERE IN THAT THE TRANSMISSION IS REALLY
5      BETWEEN THE USER AND THE WEBSITE.
6            BUT EVEN IF THAT WEREN'T THE CASE, I THINK MR. BROOME'S
7      CHARACTERIZATION IS INCORRECT, AND IN EITHER CASE, WE'RE STILL
8      NOT -- GOOGLE IS STILL NOT ACTING AS AN ECS IN THAT CONTEXT.
9                  MR. BROOME:  IF I COULD JUST --
10                 THE COURT:  I DON'T WANT TO HEAR ANY MORE ON THAT.
11           IF YOU WANT TO RESPOND ANY MORE TO OTHER POINTS THAT HE
12     MADE?
13                 MR. LEE:  YEAH, JUST ON THE USER PROFILE ISSUE,
14     JUDGE, WE OBVIOUSLY ALLEGE IN PRETTY GOOD DETAIL WHAT GOOGLE
15     DOES IN TERMS OF ONCE IT RECEIVES THE PRIVATE BROWSING
16     HISTORIES, HOW IT PAIRS IT WITH OTHER INFORMATION IT ALREADY
17     HAS, PRIOR BROWSING HISTORIES, AS WELL AS UNIQUE USER
18     IDENTIFIERS.
19           AND THEN ONCE THEY HAVE ALL THAT, THEN THEY CAN PAIR IT
20     WITH THE PROFILES THAT THEY DO KEEP.
21           AND IT'S -- I DON'T REALLY THINK IT'S REALLY A
22     CONTROVERSIAL POINT THAT WE KNOW THAT GOOGLE KEEPS USER
23     PROFILES AND THAT'S HOW THEY MONETIZE THEIR BUSINESS.  THEY'RE
24     THE LARGEST TRACKING COMPANY IN THE UNIVERSE.  SO TO SUGGEST
25     THAT THEY MAY OR MAY NOT HAVE USER PROFILES I THINK IS A LITTLE
```

1       BIT SILLY.
2               THE COURT: OKAY. SO IS THAT YOUR COMPLETE RESPONSE?
3       ONCE YOU COMPLETE YOUR RESPONSE, THEN I'LL GO BACK TO
4       MR. BROOME AND LET HIM RESPOND.
5               MR. LEE: SURE. YES, YOUR HONOR.
6               THE COURT: ANY OTHER POINTS YOU WANTED TO MAKE?
7               MR. BROOME: SORRY. WAS THAT TO ME, YOUR HONOR?
8               THE COURT: NO. I WANTED MR. LEE TO FINISH BEFORE --
9       THIS IS VOLLEYBALL, SO I WANT HIM TO FINISH BEFORE HE VOLLEYS
10      IT BACK TO YOU AND THEN YOU CAN RESPOND.
11              MR. BROOME: UNDERSTOOD.
12              THE COURT: MR. LEE, DID YOU FINISH?
13              MR. LEE: YES. MR. BROOME HAS THE BALL.
14              THE COURT: OKAY.
15          GO AHEAD, PLEASE, MR. BROOME.
16              MR. BROOME: YES, YOUR HONOR.
17          I DON'T THINK WE'RE IN DISAGREEMENT ABOUT THE DATA FLOW OR
18      THE COMMUNICATION FLOW HERE. WE AGREE THAT USERS COMMUNICATE
19      WITH WEBSITES, WEBSITES INSTALL CODE THAT CAUSES THE USER'S
20      BROWSER TO SEND THE DATA TO GOOGLE.
21          BUT MY POINT ABOUT THE ORDINARY COURSE OF BUSINESS
22      EXCEPTION IS THAT THE ALLEGED INTERCEPTING DEVICE IS THE CODE,
23      AND THAT CODE IS NOT DESIGNED TO FACILITATE TRANSMISSIONS
24      BETWEEN THE USER'S BROWSER AND THE WEBSITES.
25              THAT'S WHERE THEY'RE SAYING, YOU KNOW, THE CODE IS

CERTIFICATE OF REPORTER

    I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY CERTIFY:

    THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS A CORRECT TRANSCRIPT FROM THE RECORD OF ZOOM PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

_____
LEE-ANNE SHORTRIDGE, CSR, CRR
CERTIFICATE NUMBER 9595

DATED: FEBRUARY 26, 2021