# Exhibit A

2022 WL 214552
Only the Westlaw citation is currently available.
United States District Court, N.D. California.

Anibal RODRIGUEZ, et al., Plaintiffs,
v.
GOOGLE LLC, Defendant.

Case No. 20-cv-04688-RS
|
Signed 01/25/2022

**Attorneys and Law Firms**

Alexander Patrick Frawley, Shawn Jonathan Rabin, Steven M. Shepard, Pro Hac Vice, William Christopher Carmody, Pro Hac Vice, Susman Godfrey LLP, New York, NY, Alexander Justin Konik, Antonio Lavalle Ingram, II, Beko Osiris Ra Reblitz-Richardson, Erika Britt Nyborg-Burch, Pro Hac Vice, Hsiao C. Mao, Boies Schiller Flexner LLP, San Francisco, CA, Amanda K. Bonn, Susman Godfrey L.L.P., Los Angeles, CA, Ian B. Crosby, Pro Hac Vice, Jenna Golda Farleigh, Susman Godfrey LLP, Seattle, WA, James W. Lee, Pro Hac Vice, Rossana Baeza, Pro HaBoies Schiller Flexner, Miami, FL, Jean Sutton Martin, John A. Yanchunis, Pro Hac Vice, Olusegun Amen, Ra, Ryan McGee, Pro Hac Vice, Morgan & Morgan Complex Litigation Group, Tampa, FL, Jesse Michael Panuccio, Pro Hac Vice, Washington, DC, Michael Francis Ram, Morgan & Morgan Complex Litigation Group, San Francisco, CA, for Plaintiffs.

David H. Kramer, Wilson Sonsini Goodrich & Rosati, Palo Alto, CA, Amanda Cristina Maya, Orrick Herrington Sutcliffe LLP, Menlo Park, CA, Argemira Florez, Benedict Y. Hur, Eduardo E. Santacana, Jayvan E Mitchell, Lori C Arakaki, Simona Alessandra Agnolucci, Willkie Farr Gallagher LLP, San Francisco, CA, for Defendant.

**ORDER GRANTING MOTION TO DISMISS**

RICHARD SEEBORG, Chief United States District Judge

## I. INTRODUCTION

*1 Plaintiffs sued Google for collecting their data through apps that use Google services, even after Plaintiffs had asked Google to cease and desist. Plaintiffs are now on their Third Amended Complaint ("TAC"), after several previous motions to dismiss. (The instant Motion does not seek dismissal of all of Plaintiffs' claims, so some will survive regardless of the outcome of this motion.) Google moves to dismiss two of Plaintiffs' amended claims, beginning with their California Invasion of Privacy Act ("CIPA") § 631 claim. It was previously dismissed because it failed to aver simultaneous interception. Plaintiffs' amendments cannot mask that their theory is essentially one of recording and then transmission, not interception. Plaintiffs also tried to revitalize their breach of contract claim by arguing it was a unilateral contract. Under this theory, a contract was created by Google's provision of a button to adjust privacy settings, text describing what the button supposedly did, and Plaintiffs' clicking of that button. This is not enough to create a unilateral contract. Google was not asking Plaintiffs to click the button, let alone bargain for such performance, and Plaintiffs could not have reasonably expected they were entering into a contract simply by adjusting their account settings. Thus, for the reasons further set out below, Google's motion to dismiss is granted. Plaintiffs' motion to file a surreply concerning Google's passing accusations of "bad-faith" litigation is denied.

## II. BACKGROUND

The background of this case has been extensively laid out in previous orders. *See* Dkt. No. 109, at 2–7. This section will discuss only facts relevant to this Motion. The previous Order dismissed two claims. First, it dismissed an existing claim for violating § 631 of the CIPA after Plaintiffs modified it to aver recording followed by transmission, rather than by simultaneous interception of communications. (This distinction is crucial for CIPA purposes. *See* *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 898–99 (1975); *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878–79 (9th Cir. 2002). Plaintiffs had previously averred a § 632 claim, which covers improper recordings, which was dismissed. Dkt. No. 109, at 13.) Plaintiffs argued this was an error, as they had alleged simultaneity before, and could do so again. The previous

Order said this suggestion was "not well taken," and gave Plaintiffs leave to amend their claims "in a manner strictly honoring the duty to litigate in good faith." Dkt. No. 127, at 7–8. Second, Plaintiffs' newly added breach of contract claim was dismissed. Google's conduct had not violated the broad promises made in its privacy policy. Further, the Web and App Activity ("WAA") Help Page was not incorporated into the Terms of Service, and was not a standalone contract.

Plaintiffs have again amended their Complaint. First, for their CIPA claim, Plaintiffs have reverted to averring Google simultaneously intercepts their data in transit. The mechanism by which it does so, however, is unclear. Plaintiffs reference an "open line of communication," and "real-time ad bidding" in support of this theory, but neither describes how Google actually intercepts data in real time. TAC, Dkt. No. 130-3 ¶¶ 51–52. In fact, the TAC also lays out a sequence of events wherein Google logs the data, and then transmits a copy later. Second, for the breach of contract claim, Plaintiffs argue clicking the button to turn off WAA creates a unilateral contract. *Id.* ¶ 242. In other words, Google promises that if a user turns off WAA, Google will not collect their data.

**\*2** Finally, Plaintiffs move to file a surreply to respond to Google's passing references to their arguments being in bad faith. In the proposed surreply, Plaintiffs argue Google agreed with their interpretation of the facts underlying their revised claims, and that Google agreed to withdraw any claim to Plaintiffs litigating in bad faith. Google opposes the surreply and disputes Plaintiffs' version of events.

### III. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss for failure to meet this standard may be based either on the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). In other words, the complaint must contain "factual content allow[ing] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009), and be "sufficiently detailed to give fair notice to the opposing party of the nature of the claim so that the party may effectively defend against it[.]" *Sensible Foods, LLC v. World Gourmet, Inc.*, 2011 WL 5244716, at \*3 (N.D. Cal. Nov. 3, 2011) (citing *Starr v. Baca*, 633 F.3d 1191, 1204 (9th Cir. 2011)).

### IV. DISCUSSION

#### A. CIPA

In Google's view, beyond yet again invoking "simultaneously" in the newest iteration, the TAC repeats the portions of the previous complaint deemed defective. These portions describe how Google records data and then subsequently transmits it, which falls short of a § 631 claim. TAC ¶¶ 15, 46, 53-59. That is consistent with how Plaintiffs have generally framed their allegations: that developers and consumers consented to Google uploading data to its servers for the developers' use, but that Google also retained a copy for its own use. Thus, Google argues, Plaintiffs' conclusory statement that communications are intercepted is not enough to make out a § 631 claim.

Google is correct. The previous order held Plaintiffs had not made out a § 631, and the minimal material Plaintiffs added does not change that analysis. Plaintiffs acknowledge that an "open line of communication" is not sufficient, and the "real-time ad bidding" they discuss is a separate process with limited relevance to the conduct at issue. What is nowhere to be found is a specific description of how Google is secretly intercepting Plaintiffs' data. When Plaintiffs do describe the process, they describe misuse of a recording, not interception: Google logs the data, and sends a second copy to itself, even when it is not supposed to. The material Plaintiffs have added to the TAC does nothing to plead any plausible claim of interception. *See Iqbal*, 556 U.S. at 683.

Granted, from the beginning, Plaintiffs have argued that Google "intercepted" their data. The very first sentence of each iteration of the complaint has used "intercepted." Some form of it appears between 69 and 86 times in each of the various complaints. The First Amended Complaint ("FAC"), which the previous Order described as adequately alleging simultaneity, alleged that "Google ... copies that request, and then simultaneously transmits it to Google." FAC, Dkt. No. 60 ¶ 49. The use of the word "then" creates some conflict with the word "simultaneously," but the meaning was held to be clear enough. Yet the Second Amended Complaint made clear Plaintiffs' theory was essentially one of logging and then transmitting. Using the word "intercept" repeatedly is

simply not enough without the addition of specific facts that make it plausible Google is intercepting their data in transit.

### B. Breach of Contract

**\*3** Plaintiffs do not state a claim for breach of contract. Plaintiffs point to the settings page where users can turn off WAA. They argue Google promised users that if they do so, their data would not be collected. It has already been established that the WAA Help Page did not create a contract. The language describing the consequences of toggling the WAA button is, naturally, similar to that on the WAA Help Page. However, Plaintiffs argue that the button implicitly creates a unilateral contract. In a bilateral contract, a promise is exchanged for another promise. In a unilateral contract, a promise is conditioned on the other party performing some action, (e.g., in a real-life example involving Google, "Local Guides who reach Level 4 in the next 2 weeks can still unlock the original offer of 1TB of Free Drive storage.") *Roley v. Google LLC*, No. 18-CV-07537-BLF, 2019 WL 1779974, at \*2, 4–5 (N.D. Cal. Apr. 23, 2019).

The WAA button might create an expectation in the mind of the user that a certain result will ensue. Yet it is no different from the expectation a user might have after reading the WAA Help Page, which was not enough to create a contract. There are two main reasons why the WAA settings page does not create a contract. First, a uniteral contract must still have a "bargained-for act or forbearance" as consideration. *Harris v. Time, Inc.*, 191 Cal. App. 3d 449, 456 (1987). Plaintiffs cannot point to any act or forbearance that Google would be bargaining for here. Google did not even ask users to turn WAA off. While Google arguably "promised to render performance" "in clear and positive terms" if they did turn WAA off, it was not "in exchange for something requested." *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 788 (9th Cir. 2012).

Plaintiffs incorrectly argue unilateral contracts do not require mutuality of obligation in the first place. *See Harris*, 191 Cal. App. 3d at 455–56. Indeed, this contention conflicts with their correct argument that the only difference between bilateral and unilateral contracts is the form of acceptance. Of course, often, performance by the offeree will immediately satisfy his or her obligation. That does not change the fact that there was an obligation for the offeree to perform in order to form the contract. Arguably, keeping WAA on might be read as part of Google's general exchange with users to provide services in return for their data, but that does not explain what Google would have desired in return for users turning WAA off—perhaps Google was bargaining for privacy-conscious users continuing to use their services? Yet this is undermined by Google not having WAA off by default, or asking users to turn it off. That type of behavior cannot reasonably be read as "bargaining," even at the pleading stage.

Nor could Plaintiffs have reasonably concluded that in toggling the button they were forming a contract. Changing settings does not create a contract. Instead, Plaintiffs created a contract with Google by agreeing to its Terms of Service. The WAA page merely contains explanatory language about Google's products. *See Block v. eBay, Inc.*, 747 F.3d 1135, 1138–39 (9th Cir. 2014). (Consumers are not left without remedies if they feel deceived—they can sue on contracts they did form, or in tort, or other forms of relief.)

Plaintiffs respond that in simple terms, Google promised to do something—stop collecting users' data—if they turned WAA off. Yet Google "promised" to do something only in that every seller of goods "promises" its products will work in a certain way. *See Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913 (N.D. Cal. 2012). A helpful analogy is to a car sold directly by a manufacturer to a consumer. If a car's manual said drivers could press a button to save gas, and the feature did not perform as expected, neither that section of the instruction manual nor pushing the button itself could be said to create some new, separate contract. At most there would be a breach of some term in another contract between buyer and seller. By contrast, a unilateral contract in this context might be created if the manufacturer promised "As part of our 'go green' commitment, if you press the 'save gas' button, we will send you $100." That is no mere explanatory language about a product; it is a specific offer tied to using the product in a certain way. Plaintiffs respond that defective product cases are inapposite as the issue is Google "overpromising," and that WAA is functioning as Google intended. This is a distinction without a difference. Overpromising and underdelivering (i.e., having a defective product) are two sides of the same coin.

**\*4** Finally, Plaintiffs also plead a quasi-contract claim as an alternative theory. Google reads the previous order as allowing only amendment of existing claims, not additional claims or theories. This reads the previous order too strictly. In any case, the quasi-contract claim is meritless. Plaintiffs are incorrect that holding there is no unilateral contract means there was no contract governing

this subject matter. The Terms of Service govern this subject matter—Google's services—so quasi-contract claims about it are forbidden. *Letizia v. Facebook Inc.*, 267 F. Supp. 3d 1235, 1253–54 (N.D. Cal. 2017). Plaintiffs also seek to argue that the subject area is privacy, and the Terms of Service do not incorporate the Privacy Policy after March 2020. Privacy is nonetheless a subset of the subject matter in the Terms of Service; holding otherwise would transform every setting or instruction into a quasi-contract claim.

### C. Surreply

Plaintiffs' motion to file a surreply is denied. Plaintiffs take umbrage with Google's casual accusations of "bad-faith" litigation. Such contentions should not be made lightly or casually interjected. Moreover, the record does not reflect such bad-faith litigation tactics. This area of law is complicated. The CIPA does not neatly sync with digital technology. While Plaintiffs' CIPA claims lack factual support, they do not evidence some kind of improper litigation conduct.

### V. CONCLUSION

For the reasons set forth above, Google's motion to dismiss is granted. As Plaintiffs have now been afforded several opportunities to amend and have failed to do so successfully, further leave to amend is not warranted. *See AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2022 WL 214552