1          UNITED STATES DISTRICT COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3  Before The Honorable Susan van Keulen, Magistrate Judge

4

5  CALHOUN, et al.,                )
                                   )
6          Plaintiffs,             )
                                   )
7  vs.                             )      No. C 20-05146-YGR
                                   )
8  GOOGLE LLC,                     )
                                   )
9          Defendant.              )
   _____ )

10

11                                 San Jose, California
                                   Thursday, March 3, 2022
12

13  TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
        RECORDING 12:17 - 1:11 & 1:43 - 1:52 = 63 MINUTES
14

15  APPEARANCES:

16  For Plaintiffs:
                                   Bleichmar Fonti & Auld LLP
17                                 555 12th Street
                                   Suite 1600
18                                 Oakland, California 94607
                            BY:    LESLEY ELIZABETH WEAVER, ESQ.
19
                                   DiCello Levitt Gutzler
20                                 10 North Dearborn Street
                                   6th Floor
21                                 Chicago, Illinois 60601
                            BY:    SHARON D. CRUZ, ESQ.
22

23

24          (APPEARANCES CONTINUED ON NEXT PAGE)

25

2

1  APPEARANCES:  (Cont'd.)

2  For Defendant:

                              Quinn Emamnual Urquhart &
3                                Sullivan LLP
                              865 South Figueroa Street
4                             10th Floor
                              Los Angeles, California 90017
5                     BY:  VIOLA TREBICKA, ESQ.
                      BY:  CRYSTAL NIX-HINES, ESQ.

6

7  Transcribed by:          Echo Reporting, Inc.
                            Contracted Court Reporter/
8                           Transcriber
                            echoreporting@yahoo.com

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1  Thursday, March 3, 2022                        12:17 p.m.

2                    P-R-O-C-E-E-D-I-N-G-S

3                         --oOo--

4        THE CLERK:  Calling case 20-cv-05146, Calhoun, et

5  al., versus Google LLC.

6     Counsel, please identify yourselves for the record,

7  beginning with plaintiffs.

8        MS. WEAVER:  Lesley Weaver, Bleichmar Fonti and

9  Auld, for Calhoun plaintiffs.

10       MS. CRUZ:  Sharon Cruz from DiCello Levitt

11 Gutzler, also for Calhoun plaintiffs.

12       THE COURT:  Thank you.  Welcome back.

13       MS. CRUZ:  Thank you.

14       MS. TREBICKA:  Viola Trebicka with Quinn Emamnual

15 for Google.

16       MS. NIX-HINES:  Crystal Nix-Hines from Quinn

17 Emamnual also for Google.

18       THE COURT:  Excellent.  Thank you.

19    All right.  I want to note for the record that this

20 matter did start today, came on at 9:30 and we did go on the

21 record and get appearances of counsel, and then we had an

22 audio challenge with the recording system.

23    So at that point, counsel left the courtroom to meet

24 and confer, and they have kept me apprised of their status.

25 It is now 12:20 and we are reconvening to get us an update

4

1  on status and to address any other discovery issues.

2      So without further ado, as to the 30(b)6 deposition

3  issue.  Ms. Weaver?

4          MS. WEAVER:  Thank you, Your Honor.  Lesley Weaver

5  from DFA.  So we are getting there, your Honor.  I think

6  that we are trying to address other issues that would

7  immediately -- if we had just reached agreement on the

8  topics, it would have implicated document production issues,

9  dates, et cetera.

10      So we're working on a comprehensive plan that builds in

11 interim dates and also allows for a review and testing of

12 some proper documents.  That is to say, some of the

13 testimony covers Search revenue, which has been an area of

14 dispute among the parties.  And the plaintiffs don't possess

15 enough Search documents to be able to reach a compromise.

16      So we are proposing interim dates by which the

17 plaintiffs will receive first a sample of docs, review and

18 respond immediately, then receive a production perhaps

19 within a week of documents that address the topics.  And

20 then it may be that the plaintiffs actually forego some

21 30(b)6 testimony if the document production is sufficient.

22      We are going to also reserve a 30(b)6 deposition date

23 in case we wish to proceed.  We're still negotiating the

24 parameters and the dates.

25      And then there are a couple other 30(b)6 topics where

5

1  we think we can reach compromise, and Google has offered

2  some dates and some testimony which we informed you of

3  earlier in the day.

4      There are two probable areas of dispute that we may

5  need -- yes.

6          THE COURT:  Before you go there, I just want to

7  make it clear when you're talking about Search documents

8  that's Search initial cap S.

9          MS. WEAVER:  I'm sorry?

10          THE COURT:  Is that search as in --

11          MS. TREBICKA:  It's Google Search advertising,

12  your Honor, correct.

13          THE COURT:  Right, right.

14          MS. TREBICKA:  Correct.

15          MS. WEAVER:  Google.com.

16          MS. TREBICKA:  It's a scope of the case issue.

17          THE COURT:  So that's what I meant.  Initial

18  cap -- got it.  Not search lower case.

19          MS. TREBICKA:  Not searching documents.

20          MS. WEAVER:  Right, not "searching," the

21  vernacular word.  That is right.  It is a technical service.

22          THE COURT:  It's a vernacular word of which we use

23  a great deal in this case, I think it would be fair to say.

24      Okay.  So got two issues lurking.

25          MS. WEAVER:  So the two issues are -- one is

6

1 related to Search and it is whether testimony related to

2 profiles, which is in topic -- 2B?

3          MS. TREBICKA:  2A.  I believe 2A.

4          MS. WEAVER:  2A.  Profiles are collected data sets

5 that are pulled from various services.  And the parties have

6 a dispute about whether or not we can take -- the plaintiffs

7 may take testimony about profiles that come from Search, in

8 part.  And Ms. Trebicka will address her argument in a

9 second.

10     It is pretty technical.  I think your Honor could rule

11 today, in my view, on that issue if we discussed it.

12     The second issue is even more technical.  It's the

13 OmniBar (sic) -- I think Ms. Cruz would address it if you

14 wanted to hear what the dispute was here.  But both of them

15 have to do -- and especially the profile building of the

16 identifiers that are used to track people as they move

17 across the web.

18     And I think we will have a technical dispute, and so

19 that was why we would request briefing on it.

20          THE COURT:  Okay.  So is it plaintiffs' request

21 for briefing on both of these disputes?

22          MS. WEAVER:  I think that would be helpful, and

23 hopefully we can do it very quickly.

24          THE COURT:  Okay.  I'm just making a note here.

25     Okay.  And the name of the second dispute?

7

1          MS. WEAVER:  One is the OmniBar dispute in general

2   and whether OmniBar is relevant to the case --

3          MS. TREBICKA:  Omnibox.

4          MS. WEAVER:  Omnibox.

5     And then number two is the issue of whether plaintiffs

6   may take testimony relating to data from profiles.

7          THE COURT:  Right.  I have them in the opposite

8   order because --

9          MS. WEAVER:  I was confusing --

10         THE COURT:  -- that's how I heard it.

11     Okay.  Thank you, Ms. Weaver.

12     And let me first commend everybody for sleeves rolled

13  up and working hard, and I want you to keep at it.  And it

14  sounds like the issue -- we have these two sticking points

15  and the request for briefing.

16         MS. WEAVER:  I'm sorry.  If I may, I forgot to

17  communicate.  We do have an issue with timing.  If we allow

18  for sampling, review and response, production, review and

19  then do we reach agreement, it touches into a couple of

20  significant dates.

21         THE COURT:  Probably you're not going to be done

22  by tomorrow afternoon.

23         MS. WEAVER:  That's true.

24         THE COURT:  Okay.

25         MS. WEAVER:  And you did allow us until March 11th

8

1 to identify discovery disputes.

2          THE COURT:  I did.

3          MS. WEAVER:  My colleagues here say, even if we

4 did reach agreement, they need a week.  I don't honestly

5 think that seems unreasonable, but then you have your March

6 15 hearing date.

7      The other problem, for plaintiffs at least, is that we

8 have that March 24th expert disclosure date, which we intend

9 to meet, so as we get further out, it gets uncomfortable for

10 us.  But we would be amenable to negotiating a schedule that

11 is firm, with the ability to come and seek relief if we

12 don't get the documents we need or we need testimony and

13 there is a further dispute.

14      But we are working in good faith to try to make it all

15 happen.

16          THE COURT:  I understand.  A question I have is,

17 how far out?  The dates you're talking about, how far out

18 are you pushing it?

19          MS. WEAVER:  Right.  My initial proposal was that

20 we would get production by March 14th, which would have

21 given us time for your hearing on the 15th.  It looks like

22 that can't be possible and I --

23          THE COURT:  Well --

24          MS. TREBICKA:  Your Honor, I can address that.

25          MS. WEAVER:  And we have not --

9

1          THE COURT:  Yeah, but just give me some idea.

2          MS. TREBICKA:  I think --

3          MS. WEAVER:  Right.  We were thinking a ballpark

4  production date of maybe March 17th, which then gives us

5  some time, and then a place holder deposition date there.

6  But it really is going to be overlapping.

7     So what we might ask -- the plaintiffs might ask is if

8  we can have an extension of the expert disclosure date just

9  for the damages expert.  That might solve all our problems.

10 But we're not there yet.

11     But that was what we were thinking, and everything else

12 can stay.

13          THE COURT:  Okay.  And you have to ask Judge

14 Gonzalez Rogers for that.

15          MS. WEAVER:  And we have to ask Judge Gonzalez

16 Rogers, exactly.

17          THE COURT:  Okay.  All right.

18     Ms. Trebicka.

19          MS. TREBICKA:  So, your Honor, we agree, we've

20 been working very hard at it and we have the outlines of a

21 compromise that we're working with counsel on.

22     As far as Google Search, as your Honor knows --

23          THE COURT:  Just be sure you're near the

24 microphone so you're getting captured.  With masks

25 everything is more muffled.

10

1          MS. TREBICKA:  As your Honor knows, the Google

2   Search issue has been a bone of contention among plaintiffs'

3   counsel and defense counsel.

4          In good faith, we have identified a couple of surface

5   points where Google Search does intersect with the data flow

6   in the complaint, which is users visiting third party

7   websites.  And those data points -- or those touch surfaces

8   are remarketing and conversion tracking.

9          So our compromise would be geared towards providing

10  documents related to revenue on those two surface points or

11  touch points and build out from there.  Obviously,

12  plaintiffs would like to get the underlying documents as

13  well as potentially some testimony.

14         So I just want to --

15             THE COURT:  I'm sorry.  It was remarketing and --

16             MS. TREBICKA:  Conversion tracking.

17             THE COURT:  Oh, yes.  Okay.

18             MS. TREBICKA:  We're trying to reach a global

19  compromise, so we will be working in good faith and

20  hopefully we will reach that today.

21             THE COURT:  All right.

22             MS. TREBICKA:  As far as the documents, the issue

23  at heart is that the way that the accounting works for

24  purposes of attributing revenue does not neatly track

25  plaintiffs' allegations.

11

1    So we're having to go to documents that talk about

2 informal attribution of revenue so that we can meet

3 plaintiffs where they're at that, and that is what's causing

4 some of the additional work and additional digging to find

5 those documents.

6    And for that reason, the two-day turnaround is not

7 possible.  The time lines that plaintiffs' counsel mentioned

8 are good with us.

9    We would be willing to -- a short extension of --

10 frankly, I mean it could be just the damages, but it may

11 make sense to do that for all expert reports because things

12 are interrelated.  And I just don't know whether it is

13 possible to do it, to carve out just the damages fees.  But

14 that's something that we are willing to speak about as well.

15 And we would need Judge Gonzalez Rogers' permission to do

16 that.

17         THE COURT:  Yes.  And when are the rebuttal

18 reports due?

19         MS. TREBICKA:  Five weeks after, I believe.

20         THE COURT:  Five weeks.

21         MS. TREBICKA:  I can --

22         THE COURT:  So I assume you'd want to push on both

23 sides --

24         MS. TREBICKA:  Correct.  We would --

25         THE COURT:  -- so everybody has a chance to

12

1  respond.

2        MS. TREBICKA:  Correct.  So perhaps a week

3  extension on both sides.

4     And what we were thinking is -- the discovery hearing,

5  your Honor, is March 15.  Perhaps we could push that to

6  accommodate this time line that we're building out and that

7  way we can address those issues then.

8        THE COURT:  Okay.  That's very helpful.  Thank

9  you.

10        MS. WEAVER:  If I may just be heard on that.

11     We have not discussed moving all the expert deadlines.

12        THE COURT:  I understand.

13        MS. WEAVER:  I don't think that plaintiffs want to

14  do that.  We want our schedule.

15        MS. TREBICKA:  And we prefer to have the schedule

16  as well.  The only issue is this document production that

17  we're trying to expedite.

18        THE COURT:  Right.

19        MS. TREBICKA:  But I just don't know when that

20  will be completed.

21        THE COURT:  Okay.  So what has to happen for you,

22  Ms. Trebicka, based on today's progress, to be able to say,

23  okay, we can do production by March 14th or March 23rd or

24  whatever.

25        MS. TREBICKA:  Yeah.  In the sense of the

13

1  compromise that we need to reach or --

2          THE COURT:  Yes.  I mean it sounds like you need

3  to get information from --

4          MS. TREBICKA:  Correct.

5          THE COURT:  You all are building on a compromise,

6  but you need to talk to the engineers, the people who

7  actually have to find the documents, right --

8          MS. TREBICKA:  Correct.

9          THE COURT:  -- and produce those.  So when do you

10 think you -- I mean how much time do you need to do that?

11         MS. TREBICKA:  I understand.  So by Monday we

12 should be able to have a good understanding of the amount of

13 documents that we can find and, therefore, have to review

14 before production.

15     So I believe that by Monday will be able to have a

16 firmer time line in place.

17         MS. WEAVER:  Our plan was actually to propose --

18 not leave here today without proposing a time line, when we

19 spoke before, to get you some dates so that we could then --

20 that was our hope, right?

21         THE COURT:  Okay.

22         MS. TREBICKA:  Right.  And we can do that except

23 for that time line that we agreed to will have to account

24 for the uncertainty, which by Monday may be resolved.

25         THE COURT:  Understood, understood.  Okay.  And

14

1  that's fine.  I'll let you guys keep working on that and

2  figure out how you want to leave it with me.  And I

3  appreciate that's part of the back-and-forth.

4      Now, what about timing for briefing on the profiles and

5  the Omnibox issue, or is that also tied into this?

6          MS. WEAVER:  We didn't actually discuss the

7  briefing, but you know, plaintiffs will turn it around as

8  soon as -- maybe by Monday if that's what you wanted.  If

9  you wanted to do a staggered, we could do it Monday -- I

10 mean I think what we've been doing is a simultaneous

11 exchange.

12          MS. TREBICKA:  Yeah, but --

13          MS. WEAVER:  We'd rather stick with that.

14          MS. TREBICKA:  We'd prefer having a set brief from

15 plaintiffs that we can respond to.  And no disrespect to

16 anyone, it helps us to know exactly what is in dispute so

17 that we may respond clearly for your Honor's benefit.

18      So we do have a slight preference for plaintiffs tell

19 us they need and then we respond.  And maybe we'll find

20 compromise but --

21          THE COURT:  Yeah, and I did see that was raised

22 several times in what's remaining from the chart from

23 Monday's hearing.  And sometimes that works.  Again, we're

24 tight on time.

25      I'm willing to allow staggered, but then it has to

15

1  be -- there has to be more communication.  And I appreciate

2  sometimes it's hard when you're meeting and conferring and

3  typing up the charts at the same time, especially at this

4  point in the case.

5      But if we go to a staggered briefing, it's still going

6  to be extremely tight.  The leash will be short, but it will

7  require, okay, now we see this issue and it will require

8  further discussion.  And you'll have to represent to the

9  Court that --

10          MS. WEAVER:  I don't -- just for the record,

11  plaintiffs don't want staggered briefing.

12          THE COURT:  I understand.

13          MS. WEAVER:  Okay.  And the only thing I would say

14  is this dispute has been discussed a lot.

15          THE COURT:  I can tell.  I know.  It's not even

16  new to me.  I'm like, oh profiles, that's number -- I know.

17      Okay.  I understand.  I'm not making any decisions yet.

18  I want you to keep doing what you're doing.

19      So what do you think makes sense for the progress here

20  today?

21          MS. WEAVER:  It turns out we're all on the same

22  flight to Los Angeles soon, so we're going to finish this

23  deal very quickly and report back to you and offer maybe the

24  Court some dates.  And we could check in -- I assume there

25  needs to be a lunch break here.  So we could go do that and

16

1 maybe come back at --

2        THE COURT:  We have a 2:00 o'clock calendar, but
3 we are down to --

4     We have one matter, Ms. Fanthorpe?

5        THE CLERK:  Yes.

6        THE COURT:  Unfortunately, the kind of matter I
7 don't know if it's a five-minute or a 30-minute session, but
8 it wouldn't be more than that.

9        MS. WEAVER:  I think that we could come back at
10 1:30.

11        MS. TREBICKA:  We can try.  But we don't want to
12 leave before it's resolved.

13        THE COURT:  I understand.  I understand.

14        MS. TREBICKA:  So let's try to come back at 1:30
15 to have half an hour of your Honor's time before the other
16 matter.

17        THE COURT:  Okay.  Ms. Fanthorpe, is that okay
18 with you?

19        THE CLERK:  For -- okay.

20        MS. TREBICKA:  Let's work through lunch.

21        THE COURT:  There's a snack machine.

22     Okay.  Then let me take a few minutes and go to a
23 higher level.  Okay.  And maybe this factors in to going
24 forward.

25     Anything else from you all?

1          MS. WEAVER:  The one thing I would say is that
2     this is an attempt to try to address or take prophylactic
3     measures from some of these other identified disputes which
4     include revenue documents.
5          THE COURT:  I see that.
6          MS. WEAVER:  Okay.
7          THE COURT:  I see that so -- and I'm pleased to
8     hear that because I did have some concern.  And I actually
9     when it was about 3 o'clock or 4 o'clock yesterday
10    afternoon, I was like, gosh, I do hope they've worked
11    everything out and they don't come in tomorrow.  But I
12    really would like to talk to the two parties tomorrow, so
13    this actually all worked out, because I still had from
14    plaintiffs' sort of mini prioritization, I ruled on a couple
15    of those but you asked me to look at dispute 126, I think it
16    was and indicated if you do that, it also addresses these
17    other three or four.
18         And I actually -- I did look at all three or four of
19    those.  I think it was 1.26 -- 1.24, 1.25, 1.26 and 1.3.
20    And it wasn't clear to me that ruling on one would actually
21    necessarily inform.
22         So I get that they're all around some of these issues
23    that you've been talking about, so if these discussions are
24    helping to inform those, I'll let you keep working on that.
25         MS. WEAVER:  I think it would be good -- I just --

18

1  off the top of my head, I can't recall all of them, and I'm
2  actually -- I think we're all impressed by the fact that
3  your Honor has worked for so many of these issues.  It's
4  terrible that the numbering is so high.

5          THE COURT:  Well, it is what it is, but that's --
6  and that's fair.  You don't have the chart in front of you
7  and I rarely don't have the chart in front of me.

8      But, again, I want you to keep working.  My higher
9  level comment really was I think even after addressing what
10 has been identified as priorities, there were at least --
11 depending how you count, at least 10 more substantive
12 disputes in the chart from last week and from Monday's
13 hearing.

14     And some of those drill down into many sub-parts, like
15 here are a lot of RFPs that are at issue or a lot of
16 interrogatories.  I want to be clear that discovery disputes
17 are still timely.  Discovery is still open.  We are still in
18 discovery.

19     It is our local rule that sets the close of discovery
20 seven days to bring a dispute.  That's where the March 11
21 day comes from.  And I'm not changing that, certainly not at
22 this time.

23     I appreciate some of these compromises may be, okay,
24 well, we need more time to do this.  And it may be for
25 certain discrete issues I will take disputes after.  But I'm

19

1  not not opening those floodgates, as you can appreciate.

2      But I was concerned on both sides by the -- okay,

3  here's every dispute we've ever had -- at least it appeared

4  that way to me -- and that's still outstanding, and boy,

5  that's a lot.  And the response of, well, gosh, it's awfully

6  late to be talking about disputes.

7      But you guys have already -- I think you've already

8  worked past that and you're very focused on the substantive

9  issues.

10      My concern is what do I get next Friday in terms of,

11  okay, give me your current final discovery disputes.

12          MS. WEAVER:  I think the most pressing issue is

13  that plaintiffs have requested deposition dates of 30(b)1

14  witnesses and we don't have any answers.

15      Some of that was driven by getting the response on the

16  30(b)6, who are you identifying, what are the topics.  I

17  think we have topics, et cetera, settled, and I think we're

18  going to stick with our 30(b)1 choices.  So we need those

19  dates.  And obviously you've just discussed the schedule.

20      There may be a few fringe, but we did give you the

21  pleasure of the bulk of the disputes in the last chart.

22          THE COURT:  Right, which I understand.  But you

23  will have to -- plaintiffs will have to prioritize.

24      If I'm going to get a chart with what's left over from

25  this week and whatever else comes up, you're going to have

20

1  to prioritize.  And I will do what I can, but I'm not going

2  to be able to do it all.

3      I also -- it would seem to me that with all the

4  productions and the depositions, that perhaps a number of

5  these disputes -- you know, perhaps you've moved past a

6  number of the disputes.  So someone needs to take a step

7  back and maybe reassess carefully.

8          MS. WEAVER:  Understood, your Honor.  I do think

9  it's helpful to have you require us to meet and confer.

10  Everybody's very busy and having us set time aside will

11  solve a lot of problems.

12          THE COURT:  I know and if it helps to say you have

13  to do it here, then we'll do that.  You know, it does

14  require travel time which eats into valuable hours.

15          MS. TREBICKA:  Yes.

16          THE COURT:  And I appreciate -- the clock is

17  running out.

18          MS. WEAVER:  Right.

19          MS. TREBICKA:  Right.  And I do want to address

20  that very briefly, your Honor, which is we have -- we, our

21  team -- and I'm sure plaintiffs too -- have been working on

22  overdrive.

23          THE COURT:  Oh, of course.

24          MS. TREBICKA:  The team is exhausted.  I do not

25  exaggerate when I say people are falling over sick, over the

21

1    exhaustion.  So something has to give with the time lines

2    that have been set.

3         We have been in discovery for 18 months, and there's a

4    lot that's been done, a lot that's been done.  And this last

5    push in the last week is truly driving us over the edge.

6         So I just very respectfully and very sincerely ask that

7    there be some limit, some sort of an end in sight because if

8    there is not, then we just don't see -- the goalpost keeps

9    getting moved.

10        And we've that in particular with the special master

11   process where we thought we were going down a very

12   structured, well-thought-out road, and then at the last

13   minute, or what I considered to be the last minute, the

14   goalpost was suddenly changed to include all of these issues

15   that weren't really raised before.

16        And I know that it's a little bit in the abstract that

17   I'm talking, but it is coming from the heart, because the

18   whole team is sort of trying to meet these deadlines and

19   working on overdrive, only to be battered by dozens of

20   disputes that we thought had been laid to rest.

21             THE COURT:  And I appreciate that.  And I can

22   assure both sides, obviously, I'm empathetic.  I've been in

23   your position as both the plaintiff and the defendant.

24        I know these last weeks of discovery well, and I do

25   have that in mind even as I set deadlines.  I do speak every

22

1  day with Special Master Brush, and I am aware of his
2  deadline.
3      And I know how hard everyone is working.  But this is
4  the train we're on and we're going to see this to the end.
5  And we're going to do it as much of a reasonable and
6  reasoned fashion as we can.
7      There is always tension in this case.  There is tension
8  in all cases of this size and magnitude.  But it is very
9  obvious in this case as well, you know, there's a great deal
10  of information that plaintiffs want and don't want to let go
11  of wanting certain information, and there is an extreme and
12  evident reluctance on the part of defendant to turn
13  information over.
14      And those dynamics work together and lead to this,
15  which is a week -- you know, we're at the discovery cutoff
16  and we still have some pretty big issues.  And are they new
17  or have they always been there?  To a large extent it
18  depends on the lens and the eyes of the beholder.
19      So all Special Master Brush and I can do is hear it and
20  respond as clearly and consistently as we are able, which
21  is -- we'll do our best.  But we'll just keep -- this is the
22  train.
23      This is productive, and if you can keep talking and
24  making progress and come back to me with a proposal on
25  dates -- you know, look, we'll put it together this way and

23

1  get it before you here and we'll need a little bit more time

2  to bring a dispute, okay.

3      I set -- and I have changed internally, much to my

4  staff's frustration.  I have moved between having a hearing

5  on March 15 or March 17 back and forth and back and forth.

6  And this morning I was back to, well, if I'm not getting

7  your charts really until the weekend because you don't have

8  to get them, I'm not going to be ready on Tuesday.

9      And I can certainly push -- go back to the 17th, which

10  is a couple of days.  But, you know, I appreciate the work

11  you're doing and you're not going to have answers until you

12  get documents and get a look at them, but I don't know if

13  there are other issues that could be dealt with in a -- you

14  know, more quick fashion that don't require -- aren't part

15  of this more complex structure.  And I just don't know.  I

16  never know what's coming.

17          MS. WEAVER:  I'm happy to address that.  I think

18  that we were in a very constructive state of mind, so I

19  don't want to respond everything that Mr. Trebicka said, but

20  I will say everybody's working very, very hard.

21          THE COURT:  I know that, I know that.

22          MS. WEAVER:  And we see it.  And the Court is too,

23  and we're grateful.

24      I think that -- we do not know -- I mean the big things

25  that are coming are revenue documents, some of which we're

24

1  negotiating.  I think it's the depositions.

2      And then I think there are some written responses.  We

3  did try to be -- the plaintiffs' side, we were trying to

4  resolve that RFA dispute in a way that actually works for

5  the Court too, because when we go to going to trial, we'll

6  be back talking about documents.

7      And having a stipulation that allows us to add

8  documents after the end of discovery --

9          THE COURT:  We will come to the RFAs in a moment.

10          MS. WEAVER:  Okay.  That was the concept, to just

11  try to take it out of this war zone and put it at a

12  different time -- into perhaps a different war zone, but to

13  take it out of this very stressful time.

14          THE COURT:  I got that.

15          MS. WEAVER:  So on the plaintiffs' side, I'm sure

16  there are some minor things, but we don't see any new issues

17  coming that are enormous.  That's the answer.

18          THE COURT:  I laugh only -- what else are you

19  going to do.  Okay.

20          MS. TREBICKA:  May I mention something?

21          THE COURT:  Wait.  Let me --

22          MS. TREBICKA:  Yes.

23          THE COURT:  To the extent -- okay.  So are we

24  agreed, I will not issue further rulings on the chart from

25  Monday until I hear -- I mean let me hear back from you.

25

1    MS. WEAVER:  Yes.  I don't think any of our
2  discussions affect anything actually other than 1.21 today.
3  What we intend to do is offer a proposal on 1.21 today, and
4  then I think we should -- I think the issues that are before
5  you, plaintiffs would like a ruling on.  I think that will
6  help.  That's the response.
7    THE COURT:  Okay.  All right.  Then I will need
8  prioritization from plaintiffs on the remaining disputes.
9    MS. WEAVER:  Understood.  And we will get that to
10  you by close of business or -- today.
11    THE COURT:  If you can do it today, that would be
12  good.
13    MS. WEAVER:  Yes, okay.  We will try.
14    THE COURT:  So that is -- prioritization is all
15  the remaining.  And let's include -- still keep 1.26, which
16  is the one you'd already identified but hadn't gotten to,
17  but you identified there were three others that went with
18  that.  So prioritize the whole.
19    MS. WEAVER:  We will do that.
20    And then just as a reminder so I'm being clear, what is
21  not on your chart is that we haven't scheduled some of these
22  30(b)1 depositions, and hopefully that will happen today --
23    MS. TREBICKA:  And I can address that, right.
24    THE COURT:  Okay.  So let's address that.
25    MS. TREBICKA:  Okay.  Great.

26

1          THE COURT:  Since that's a concrete issue, and

2   we're all right here.

3          MS. TREBICKA:  Yes, absolutely.

4          THE COURT:  30(b)1 dates.

5          MS. TREBICKA:  And I also wanted to mention that

6   my impassioned speech earlier was not to impugn plaintiffs'

7   counsel.  It was just something that we wanted to make your

8   Honor aware that we are working on all eight cylinders at

9   this point.

10          THE COURT:  Even beyond, I'm quite sure.

11      30(b)1 depositions.

12          MS. TREBICKA:  Correct, your Honor.  We have a 20

13  deposition limit in the case.  And the 20 deposition limit

14  includes 30(b)6 time, so we need to understand how

15  plaintiffs are making the choices for how to fill those

16  slots so that we can also make sure it doesn't exceed the 20

17  limit cap.

18      And at this point my understanding, at least my

19  counting, is that there are more depositions noticed or

20  sought than the 20 cap limit.  So it may be an issue of us

21  sitting here today and going deponent by deponent name and

22  also perhaps attaching some time frames to the 30(b)6 topics

23  so that we have -- it will help everybody I think.

24      But it is an issue that is out there and hasn't been

25  resolved.

27

1          THE COURT:  Okay.

2          MS. WEAVER:  I can address that.  We think we're

3  at 20 if you count these 30(b)6 topics as one.  And that is

4  because when your Honor first ordered depositions on the

5  preservation issue, those did not count and you said that

6  expressly.

7          THE COURT:  Right.

8          MS. WEAVER:  So there are three of those deps.  So

9  by our count, it's just that we're at -- and that also

10  assumed Ms. Borsay's deposition is proceeding and we have

11  elected with that, and also the resolution of Mr. Pachai's

12  (phonetic) deposition.  If we're not afforded Mr. Pachai's

13  deposition, then we're at 19.

14     So we don't see the cap as being preclusive and we

15  think the parties should just set dates for these deps.

16  That's our preference.

17          THE COURT:  Okay.

18          MS. TREBICKA:  And I would like to meet and confer

19  with counsel on that, just so that we come to your Honor

20  with a clean dispute --

21          THE COURT:  That's fine.

22          MS. TREBICKA:  -- if there is one and maybe there

23  is not.

24          THE COURT:  Okay.  Yeah, it's not clear to me if

25  the dispute is the 30(b)6 counts for how many or if it's --

28

1          MS. TREBICKA:  Yeah, because we in our counting,

2   we are not counting the initial 30(b)6's that your Honor

3   set --

4          THE COURT:  Right.

5          MS. TREBICKA:  -- and specifically said are

6   outside of the limit.

7      The 30(b)6 testimony, from our understanding, should be

8   counted up as hours.  And if it exceeds seven hours, then it

9   is more than one deposition.

10     But we obviously would love to hear from your Honor as

11  to how you're -- because it could be that, you know, all

12  these 30(b)6 topic -- it's a very long topic and we've

13  agreed to provide a lot of testimony, even beyond what's

14  being disputed here today.  It could be that it ends up

15  being 20 hours, in which case we don't think it's fair

16  because it does put on us the burden to prepare these people

17  to sit for deposition.

18         THE COURT:  I understand.  And my preference when

19  I'm managing the case in setting limits is to do deposition

20  by hours, not by bodies, but that is water under the bridge

21  in this case.  So we're not going to switch now to counting

22  hours.

23     So you guys meet and confer, and let's figure out how

24  many bodies you are talking about.  It sounds like you're --

25  maybe there's not a big dispute.  Maybe we're quite close.

1  But --

2         MS. WEAVER:  I honestly think the issue is not

3  going to be the cap.  I think that honestly we can show good

4  cause to get maybe another 30(b)6 day, if it takes two

5  30(b)6 days.

6      I've already offered to cap any testimony on the

7  financial revenue things to four hours.  They've offered

8  partial testimony -- I'm fine with that.  We'll take short

9  depositions.  We just actually need the evidence.

10        THE COURT:  Yes.

11        MS. WEAVER:  So I think we should be able to work

12  that out.  I really do.

13        THE COURT:  Okay.  Then I'm going to let you

14  keep --

15        MS. TREBICKA:  We can keep talking about it,

16  right.

17        THE COURT:  It sounds like there is room there,

18  and if you need me to call it, I'll call it.  But we're

19  going -- let's get this done.  Let's not slow down the train

20  because of depo dates, for heaven's sake.

21        MS. WEAVER:  I just want to note that another

22  thing that has become evident in the pandemic is that if you

23  are deposing somebody in Europe, you don't get the pleasure

24  of traveling there and being in the time zone.  You are

25  deposing them at 1:00 or 2:00 a.m., which has been fun for

30

1  all of us here on the West Coast.

2          THE COURT:  Yes.  I've been doing that with

3  settlement conferences with people in Asia, yes.

4          MS. TREBICKA:  And, your Honor, there's one more

5  issue on the dispute, since you mentioned the disputes.

6      We received your order on this Sabine Borsay

7  deposition.  And we would like to bring to your Honor's

8  attention some additional considerations, and we will use

9  the joint chart to bring those considerations to you.

10      I just wanted to give everybody a heads-up.  I'm not

11  going to argue the merits right now.  I can if your Honor

12  wants to, but we do feel strongly that this is something

13  that your Honor needs to hear about a little more.

14          THE COURT:  Okay.  Well, I'm concerned because I

15  set a time limit for that depo to take place, so if it's not

16  coming up until a chart next week --

17          MS. TREBICKA:  We can brief it before your Honor.

18          THE COURT:  Ms. Weaver, would you like to address

19  it now or do you want to --

20          MS. WEAVER:  We can address it now.  We do think

21  she's very important.

22          THE COURT:  I understand, and I have ruled on it,

23  so if you have additional information, this is essentially a

24  motion for reconsideration but let's --

25          MS. TREBICKA:  Your Honor.

31

1          THE COURT:  -- put it on the table.

2          MS. TREBICKA:  So Ms. Borsay -- your Honor is

3    aware of the circumstances.  She's a new mother.  She's a

4    German citizen, a German resident, has a special needs son

5    at home.  And her other related health issues make it

6    extremely difficult for her to sit at deposition, at least

7    such a short time after giving birth.

8          Everybody is willing to do the best that they can do to

9    alleviate this issue of her, so we're trying to come up with

10   additional considerations for your Honor.

11         One another consideration is to have her sit in the

12   summer, which is -- she is very happy to submit a

13   declaration that says right now it is practically impossible

14   for her to sit and therefore -- but a summer deposition

15   would work.

16         Another one, your Honor, is that we've identified

17   someone on her team who is also in Germany and is willing to

18   travel to Austin to be deposed just so that Ms. Borsay

19   doesn't have to sit for a deposition.

20         THE COURT:  Right.  The problem, as I understand

21   it, is she is the sole custodian for some critical

22   documents.  And she's been in discussion for a long time.

23   The health issues are a challenge, granted.  What did I set

24   the time limit at, that depo?

25         MS. TREBICKA:  March 15.

32

```
 1            THE COURT:  No, I --

 2            MS. TREBICKA:  Oh, six hours.

 3            THE COURT:  Six hours but joint, right?

 4            MS. TREBICKA:  Correct.

 5            THE COURT:  For both cases, and they can take

 6  place over several days.  It can take place in increments.

 7  I mean the parties have got to address these issues.

 8            MS. TREBICKA:  We agree, your Honor.

 9       One additional point I wanted to mention is I'm not

10  sure it came through in the briefing, but it is against

11  German law to force a German citizen to sit for a U.S.

12  deposition.

13       And we're putting both Google and Ms. Borsay in an

14  impossible position to force her to sit for a deposition

15  against her will.

16       I realize it's a weird issue under American law, but it

17  is something that we do feel strongly about and are bending

18  over backwards to accommodate the substance of it by

19  offering a later deposition, offering someone else, offering

20  to stipulate to the authenticity of her documents.

21            THE COURT:  And admissibility.

22            MS. TREBICKA:  Oh, admissibility?

23            THE COURT:  Uh-huh.

24            MS. TREBICKA:  As in waiving --

25            THE COURT:  As in her documents come in.  You can
```

33

1  have other witnesses testify about it but its authenticity

2  and admissibility.

3        MS. TREBICKA:  Her documents come in no matter

4  hearsay exception or anything else at trial?

5        THE COURT:  If there's no witness, I mean the

6  document come in.

7     I understand and I get it's a difficult situation.  But

8  it seemed that offering other persons was not going to

9  get -- I mean she is the author of critical documents and

10 sole custodian, so that is a challenge.  She has been in

11 discussion a long time.

12    I don't know -- and maybe there is room that she can be

13 deposed in 30 days.  Maybe there is some extra extension if

14 it's not needed for this immediate upcoming activity around

15 expert disclosure.

16    You know, summer seems far away, but this is March and

17 maybe she can -- perhaps May, I don't know.  I'm just -- I'm

18 hearing it for the first time as is Ms. Weaver.

19        MS. TREBICKA:  Correct, your Honor.  And I just

20 wanted to -- because it is such an important issue to us, I

21 wanted to bring it up in the interest of transparency.

22        THE COURT:  I understand.  And the issue with

23 regards to German law, I appreciate, but witnesses have been

24 made available when -- you know, they have been being made

25 available, so to now say "Well, German law won't allow it,"

34

1   I appreciate if she doesn't want to be deposed, but she is

2   an employee and she is an author of critical documents.

3       So if the position is she cannot as a matter of

4   international law, then I will have to reconsider what that

5   means with regards to evidence.

6           MS. TREBICKA:  May we have an opportunity to brief

7   it, your Honor, and --

8           THE COURT:  No, I want you all -- why don't you

9   make a proposal, Ms. Weaver.  Think about it.  Talk to your

10  team.  Let's get this worked out.  All right?  This is --

11          MS. WEAVER:  This is the first we're hearing this

12  news, so that's fine.

13          THE COURT:  I know.

14          MS. TREBICKA:  Correct, and it is because it's on

15  the heels of your Honor's order and plaintiffs' election.

16          THE COURT:  Understood.  Understood.  But that's

17  why by videos to address it, in small hourly increments to

18  address it.  I left it to the parties to really address the

19  health issues.

20      I appreciate there may even more issues that weren't

21  identified, but we've got to figure out a way to make this

22  happen.

23          MS. TREBICKA:  Understood.

24          THE COURT:  So keep that on your meet and confer

25  list, that long list.

1    Okay.  I will get plaintiffs' priorities on the chart.

2  If you want to get those to me tomorrow, that's also okay.

3         MS. WEAVER:  Thank you, your Honor.

4         THE COURT:  You have a full day today.  Sounds

5  like the 30(b)1 depo is in the mix with this 30(b)6

6  negotiation, so keep that up.

7    Let me tell you -- let's talk for a moment about the

8  proposed stipulation on the RFAs.

9    Okay.  RFAs as to authenticity, as everybody knows,

10  those aren't capped and it's just admit these documents are

11  authentic.  Very, very difficult for a defendant who has

12  produced documents to then say these are not authentic.

13    Google suggested somewhere in the briefing that there's

14  an issue maybe about the formatting or if they were being

15  used in a different format than they were produced, but you

16  all will work that out.

17    So that is the easy piece.

18    Stipulating to admissibility is really a pretrial issue

19  that comes up for Judge Gonzalez Rogers.  And I'm quite sure

20  she has very strong views on what you all will have to do

21  and the accommodations you will have to make on

22  admissibility through her pretrial process.

23    So I think that you can come to terms on a stip to

24  authenticity, and it would seem that a stip as to

25  admissibility is -- if you can't work it out now, she will

36

1  make you work it out in the pretrial process.

2      So I don't see that as an issue that is before me or

3  should be before me right now.

4      Ms. Weaver, are there other concerns about

5  admissibility in the near term?

6          MS. WEAVER:  Yes.  What we were asking in the RFAs

7  that we propounded was that Google admit that these

8  identified documents were business records and that's the

9  issue that they dispute.

10      Frankly, in most cases, we do get stipulation on this.

11          THE COURT:  Right.

12          MS. WEAVER:  Judge Koh approved one in In re Yahoo

13  Mail.  That is exactly what we sent to them here.  And

14  because they refused, we said, okay, well then, here are

15  RFAs.

16      And we are in this uncomfortable place where we are

17  still taking depositions.  We are getting more exhibits

18  every day.  We don't know what's going to happen on summary

19  judgment.

20          THE COURT:  I understand but I think that -- I get

21  the delay, let us address this later.

22          MS. WEAVER:  Yes.

23          THE COURT:  My point is that a call as to whether

24  or not categories of documents are business records is an

25  issue to be teed up in front of Judge Gonzalez Rogers.  And

37

1  then she may refer it back to me.  But admissibility -- she

2  has a way she manages documents and she has sort of a set,

3  yes, all emails are business records.  I mean I'm not -- I

4  don't want to make a misrepresentation, but I just know from

5  practice that she has a set way she approaches these.

6          MS. WEAVER:  So the posture is a motion to compel

7  responses to requests for admissions, which would be due

8  tomorrow under your Honor's ruling.  I'm a little unclear

9  how to proceed.

10         THE COURT:  So why aren't the RFAs -- I mean they

11 can either be responded to or in lieu of responding, parties

12 enter into a stipulation as to authenticity.

13     And as to admissibility, the parties can acknowledge

14 and stipulate -- you know, those are really issues for trial

15 and will be addressed in the pretrial conference.

16         MS. WEAVER:  Understood, your Honor.

17         THE COURT:  Okay.  Does that make sense?

18         MS. WEAVER:  Yes.

19         THE COURT:  I think that takes care of it.  Yes,

20 it kicks it all down the road.  But that's really going to

21 be the trial judge's call.

22         MS. WEAVER:  So the only issue is whether we -- I

23 don't want to be foreclosed at trial from showing that these

24 are business records.

25         THE COURT:  Right.

38

1          MS. WEAVER:  And normally we would take a 30(b)6

2 witness, and that's the issue.  So we need to either depose

3 somebody or somehow we need to take evidence before the

4 close of discovery about what a business record is at Google

5 and whether these documents or the documents we have

6 identified, and perhaps will identify, fall within that

7 exception.

8      And because Google's not agreeing to do it, then we

9 have to take evidence, either through RFA or 30(b)6.

10          THE COURT:  Uh-huh.

11          MS. TREBICKA:  May I address it, your Honor?

12          THE COURT:  Yes.

13          MS. TREBICKA:  Our view is aligned with your

14 Honor, which is this is an issue for pretrial and can be

15 dealt with at pretrial, depending on Judge Gonzalez Rogers'

16 rules.

17      And therefore we thought that the stipulation we

18 entered into was fair because it essentially froze the

19 dispute so that plaintiffs wouldn't waive their rights and

20 we'd deal with it at pretrial.

21          THE COURT:  But that doesn't address Ms. Weaver's

22 concern of:  Well, but I don't want to get down to trial and

23 then be asked by the judge, "So what's the foundation for

24 business records?"

25          MS. TREBICKA:  Is that something that's addressed

39

1  through a custodial witness at trial?  That's at least been

2  my understanding, but I'm sure your Honor has a different

3  view

4          THE COURT:  Well, that's how I do it.  And the

5  parties can put that in the stipulation, that if necessary a

6  custodial witness will be provided.

7          MS. WEAVER:  Yeah, if Google would agree --

8          THE COURT:  So if you can't do it by stipulation

9  through the pretrial process, then Google will provide a

10  custodial witness to address any open issues.

11      And Judge Gonzalez Rogers may tell you, no, we're not

12  spending trial time on that.  You guys agree -- which I

13  think is probably what she's going to -- what I would

14  imagine she'll say.

15          MS. WEAVER:  But just to restate.  Without a

16  stipulation or evidence, we are prejudiced, so we need

17  either an agreement from Google or we have to take evidence

18  I think at this time on how emails and documents are

19  generated at Google, et cetera.

20      So that -- I guess maybe that is a new issue.

21          THE COURT:  Well, I mean the parties are either

22  going to stipulate -- and if you're going to stipulate

23  later, you can stipulate now.  And that's usually what

24  happens, right?

25          MS. WEAVER:  Right.

40

1        THE COURT:  As long as we've produced it and the

2  person is in there doing their job and within the scope of

3  their job and that's their email, then yes, it's a business

4  record.

5      But I'm not going to tell the parties how to litigate.

6        MS. TREBICKA:  Understood.

7        THE COURT:  A stipulation on admissibility at that

8  level is not inappropriate.  Otherwise, you will have to

9  provide a witness to provide that foundation as required in

10  the pretrial process.

11        MS. TREBICKA:  Understood.  And, your Honor, I

12  would like to also take a beat and think -- this has been a

13  very good discussion.  I'd like to think about it a little

14  more.  But I guess our concern would be that, if I recall

15  the RFAs correctly, it was not just the business records

16  foundation but it was also something like "and this document

17  is therefore entirely admissible at trial."

18      And my concern would be about double hearsay

19  statements, for example, in potentially business records.

20  And I wouldn't want to waive rights with respect to those

21  complicating issues, I suppose.

22        THE COURT:  Right.  Nobody wants to miss that time

23  of the weeks before trial sitting in a conference room with

24  your so-called narrowed exhibit lists and going through what

25  your objections -- or foundations or objections are.  That

41

 1  would just be heartbreaking.  I get it.

 2       But that's what you need to address.  And perhaps it's

 3  to the extent that there are additional issues.  And maybe

 4  you agree or maybe Judge Gonzales Rogers helps you to see

 5  your way to agree to, you know, not raising foundational

 6  challenges.

 7       That is general, but if -- you know, on any specific

 8  document if there's multiple layers.

 9       But again --

10            MS. TREBICKA:  And that's our --

11            THE COURT:  We're not going to be able to address

12  that for the hundreds of thousands of pages of documents.

13            MS. TREBICKA:  And then that's exactly our

14  concern, your Honor, that we wouldn't want to sign something

15  that says, yes, this document that we've barely looked at

16  because it's 50 pages long, everything in that document is

17  entirely admissible.

18       So if we can reserve at least some of that for the

19  potentiality that there are statements in there that are not

20  admissible because of evidentiary rules --

21            THE COURT:  Right, but then you're going to have

22  to be willing to provide a witness to address the

23  evidentiary issues in the documents.  And you can agree, and

24  I can allow you to agree, that that witness -- that witness

25  can be provided as needed in the pretrial process.

42

1          MS. TREBICKA:  Okay.  And, your Honor, I think the

2    additional wrinkle here is that plaintiffs have identified

3    1200 documents now, but we don't know that at trial --

4          THE COURT:  Right.  They're not done, of course

5    not.

6          MS. TREBICKA:  It's a long time away.  And it

7    is -- right, it may just be premature, is what I'm saying at

8    this point.

9          THE COURT:  It may be, but Ms. Weaver's point I

10   think is well taken, when she says, okay, but the discovery

11   door is closing and I can't be in front of the trial judge

12   and say well, I didn't know I needed, you know, foundational

13   evidence.

14         MS. TREBICKA:  Right.

15         THE COURT:  So put together a stipulation.  You

16   can deal with the authenticity point.

17      As to admissibility, those issues will be handled

18   through pretrial.  But to the extent a witness is needed

19   for -- you know, to provide evidence as to admissibility,

20   such as business records, Google will provide that witness.

21      And if you all need to come back to see me as to the

22   who and when, you'll know where to find me.

23         MS. TREBICKA:  Understood.

24         MS. WEAVER:  That sounds constructive.  Thank you.

25         THE COURT:  Okay.  All right.

43

1          MS. TREBICKA:  Now that we've taken up most of

2  your lunch hour.

3          THE COURT:  Well, that's all right.

4      Tell me what is your -- are you going to stay here and

5  work or are you going to catch an airplane and work?  What's

6  the plan?

7          MS. WEAVER:  If we could stay here and work and

8  try to get you something still, but what time is it?

9          MS. TREBICKA:  It's 1:10 so we have 20 minutes.

10  Let's make it happen.

11          MS. WEAVER:  Yes.  I think your colleague has

12  already ironed out all the wrinkles in our proposal, so we

13  can probably --

14          MS. TREBICKA:  Crystal is the -- yeah, the doer.

15          MS. WEAVER:  Yes.

16          THE COURT:  What is your flight schedule?  What is

17  your --

18          MS. TREBICKA:  3:00 p.m. I believe.

19          MS. WEAVER:  Mine's 2:50 I think.  It's the same I

20  think.

21          THE COURT:  Okay.  All right.

22      I'm not sure you're going to make that, but go ahead,

23  you can try.

24          MS. TREBICKA:  We don't need to -- we want to get

25  this resolved, your Honor.

44

1            THE COURT:  Okay.

2            MS. TREBICKA:  That's why we came here.

3            MS. WEAVER:  I really actually -- it's a pretty --

4  yes, on pain of separation from my partner.

5            MS. TREBICKA:  We need to make this flight.  I

6  already moved it a couple times.

7            THE COURT:  Understood.  Well, Ms. Fanthorpe and I

8  are going to grab some lunch, and we'll see you at 20 to

9  2:00.

10            MS. WEAVER:  Great.

11            MS. TREBICKA:  Yes.

12            THE COURT:  Give you a few extra minutes.  Give us

13  a few extra minutes.

14            MS. TREBICKA:  Thank you, your Honor.

15            MS. WEAVER:  Thank you.

16            THE COURT:  Okay.

17            MS. TREBICKA:  May we stay here?

18            THE COURT:  Yes.  Our 2:00 o'clock -- that's fine.

19  That's fine.

20            MS. TREBICKA:  Okay.  Great.  Thank you.

21        (Proceedings recessed briefly.)

22            MS. WEAVER:  We have identified unfortunately I

23  think one other area of dispute on the 30(b)6.

24        What I would suggest, and I have not run this past my

25  colleagues, is that we come to you in writing maybe by close

45

1  of business tomorrow with any issues that we really haven't

2  been able to work out and we can submit something in writing

3  on it.

4      We've identified two.  I think there may be a third,

5  maybe a fourth issue.

6          THE COURT:  Would it be helpful if we had a

7  conference tomorrow morning just this group?

8          MS. WEAVER:  We could do that if it could be

9  virtual.

10          THE COURT:  Oh, yes.  Yes.

11          MS. WEAVER:  Would that be okay?  And then, yes,

12  Ms. Cruz would like to argue the Omnibox today because she's

13  prepared.

14          THE COURT:  I understand.  That just sounds so

15  fascinating.  I want to be sure I have that carved out where

16  I can focus on it.

17      I know your schedules -- you know, I feel like you guys

18  must be in depo and looks at documents constantly.

19          MS. TREBICKA:  Your Honor -- oh, I'm sorry, I

20  didn't want to interrupt.

21          THE COURT:  No, no, no.  I'm just trying to figure

22  out what makes sense in terms of next steps.

23      We can meet, just this group, tomorrow at 10:00, or you

24  can submit something in writing.  Tell me what you think

25  makes sense.

46

1          MS. WEAVER:  I think we are going to have impasse

2   on one additional issue.  We're going to kick one additional

3   issue out of here that we were hoping to fold in.  It's on a

4   document.

5      But I think what we could do is report to you by day's

6   end in an email and at least say, if you wish, there's

7   agreement here, there is not agreement here.  Or we can just

8   have another hearing.  Those are the options that I see.

9          MS. TREBICKA:  Yeah.  What would be also helpful

10  is -- we found agreement on many topics, it would be helpful

11  to get on the record, get those on the record so that our

12  mind is focused on the ones where we don't have agreement.

13          THE COURT:  Yes.

14          MS. TREBICKA:  Would that be all right?

15          MS. WEAVER:  Yes, so we don't backslide.

16          THE COURT:  That's fine if you just want to do it

17  on the record here.  Or if you want to submit it.

18          MS. WEAVER:  I think we should submit it in

19  writing.

20          MS. TREBICKA:  That's okay, yes.

21          THE COURT:  I don't want to make work like, oh, go

22  write something else.

23          MS. WEAVER:  No, we've been writing it.

24          THE COURT:  But then everybody has it and you can

25  share it with your teams and everybody's very clear.

47

1          MS. TREBICKA:  Yes.  Okay.

2          THE COURT:  All right.  Let's do this.  You guys

3 are making progress.  The Court greatly appreciate it.

4     So I want you to keep doing what your doing.  We don't

5 need to set a time to talk tomorrow.  Keep working through

6 it.  You can submit me something in writing at close of

7 business tomorrow, if that's helpful.

8     Plaintiffs have to prioritize their disputes that are

9 currently before me.

10     Everybody owes me a set of issues next Friday, and I'm

11 very hopeful that in the meantime you keep resolving these.

12     So if you feel like you need something in the interim,

13 time with me, let me know.

14          MS. WEAVER:  I have a request, that you set us a

15 deadline or a hearing because I like helping my opposing

16 counsel manage their client, and I think deadlines are

17 really helpful.

18          THE COURT:  What kind of deadline -- what do you

19 need?

20          MS. WEAVER:  Either we report to you in writing by

21 10:00 a.m. tomorrow or we appear.

22     I don't know what you think, Ms. Trebicka.

23          MS. TREBICKA:  That's all right.  We can appear

24 tomorrow.

25          MS. WEAVER:  And if we resolve, we'll let you

48

1  know.

2       MS. TREBICKA:  Right.  What I'd also like to make

3  sure we do is get the agreements on the record and before

4  your Honor so we can move on.

5       MS. WEAVER:  How about this.  We get agreement on

6  the record today in writing to you.

7    By tomorrow morning, if we don't identify disputes

8  today, we will do it by tomorrow morning by 9:30 Pacific.

9  And if you want to hear from us or if you want us to brief

10 it, you just let us know.

11      THE COURT:  Okay.

12      MS. TREBICKA:  Can we do 11:00 Pacific just

13 because --

14      THE COURT:  Yeah, you guys get something

15 memorialized what you've accomplished today.

16      MS. TREBICKA:  Right.

17      THE COURT:  And get those to me.  And then it

18 would seem naturally, the fallout from that is what you

19 haven't been able to agree to.

20    But I do think it's helpful for you to put that in

21 writing.  Both sides are seen clearly what they think they

22 need.  You can submit that to the Court by close of business

23 tomorrow and then I'll --

24      MS. TREBICKA:  And is the submission of disputes,

25 is that with or without argument?  Is it just identification

49

1 of disputes or would you like --

2          THE COURT:  Well, if you want to do a joint

3 five-page submission with comment from each side plus a

4 list, you can do that.  Does that --

5          MS. TREBICKA:  Okay.

6          MS. WEAVER:  I think a --

7          MS. TREBICKA:  A list may be better in my opinion.

8          MS. WEAVER:  I think a list, given knowing what's

9 happening tomorrow.

10          MS. TREBICKA:  Yeah.

11          MS. WEAVER:  And then if we end up having to brief

12 some of these issues, if we could have those due Monday or

13 Tuesday, I think that's going to be better for my team,

14 given what we have going.

15          THE COURT:  Right.  Well, I have to look at them,

16 and then I can tell you what I need.

17          MS. WEAVER:  Exactly.

18          MS. TREBICKA:  Exactly.  Yes, perfect.

19          THE COURT:  But I'm giving you the day tomorrow

20 for you to put those together.

21          MS. TREBICKA:  Perfect.

22          THE COURT:  So you will continue your meet and

23 confer efforts.  You will memorialize what you have

24 accomplished today.  And do you file that, do you want to

25 submit that?

50

1          MS. WEAVER:  Yes.

2          MS. TREBICKA:  Yes.

3          THE COURT:  Okay.  By noon tomorrow, does that

4  work?

5          MS. WEAVER:  Yes, perfect.

6          MS. TREBICKA:  Uh-huh.

7          THE COURT:  It sounds like you're ready to do it

8  now.

9          MS. TREBICKA:  Yeah, I would like -- I think we

10  had a good session.

11          THE COURT:  But put it in writing.

12          MS. TREBICKA:  Yes.

13          MS. WEAVER:  Yes.

14          THE COURT:  So by noon tomorrow get filed a

15  stipulation that reflects your agreement as of -- that

16  you've been able to reach.

17      And then you can retreat and work on your list of

18  issues and get that to me by 5:00 o'clock tomorrow.

19          MS. TREBICKA:  Okay.

20          MS. WEAVER:  That's fine.  We will do that.

21          THE COURT:  And then I will look at that and

22  you'll hear from me sometime in the first part of next week.

23      Plaintiffs will also get me your prioritizations

24  tomorrow.

25          MS. WEAVER:  That is underway, your Honor.

51

1          THE COURT:  And that is fine.  You can also do
2  that at noon.

3          MS. WEAVER:  Okay.

4          THE COURT:  That way I have -- I have something to
5  do tomorrow afternoon.

6      And then whatever else we need to do next week we'll do
7  with the submissions coming on Friday.

8          MS. TREBICKA:  Right.  Currently, the hearing is
9  on the calendar for March 15th.

10         THE COURT:  It is.

11         MS. TREBICKA:  Is there movement from that,
12 because I know your Honor said that you were considering --

13         THE COURT:  I don't think yet.  I want to see how
14 next week goes.  So hold on to that.

15     In fact, why don't you have your teams reserve time --
16 and I appreciate you've got depos too.  But let's reserve
17 time on the 15th and the 17th.  Okay?

18         MS. WEAVER:  Will do.

19         THE COURT:  And then that way, you've got the
20 time, I've got the time, Ms. Fanthorpe has the time.

21     We'll do those by Zoom.  As long as everybody is
22 behaving we'll do them by Zoom.  And hopefully we won't need
23 them both, but with the submissions coming on the 11th, that
24 will, again, give us maximum time to get these things
25 resolved.

52

1        MS. TREBICKA:  And the reason that we have a

2  slight preference for the 17th is because on the 15th we

3  have two hearings before Judge YGR and obviously it's just a

4  time management issue more than anything.

5        THE COURT:  Okay.  All right.  I understand.

6     Okay.  Well, let's just -- I got it.  We'll see how

7  that plays out.

8        MS. TREBICKA:  Thank you.

9        MS. WEAVER:  Thank you very much.  Thank you for

10 your time.

11       THE COURT:  I'll put that one in pencil, how about

12 that.  But you guys get them on your calendars.

13       MS. WEAVER:  We will.

14       THE COURT:  And, Ms. Fanthorpe will notice them on

15 ECF and then we'll just deal with it next week.

16       THE CLERK:  At 10:00 o'clock?

17       THE COURT:  Sure, why not.

18    All right.  You've worked hard.  Thank you.

19       MS. WEAVER:  Thank you.

20       MS. TREBICKA:  Thank you.

21       THE COURT:  Thank you all very much for your time

22 and attention today, and we'll get this done.

23    (Proceedings adjourned at 1:52 p.m.)

24

25

53

1                         CERTIFICATE OF TRANSCRIBER

2

3        I certify that the foregoing is a true and correct

4   transcript, to the best of my ability, of the above pages of

5   the official electronic sound recording provided to me by

6   the U.S. District Court, Northern District of California, of

7   the proceedings taken on the date and time previously stated

8   in the above matter.

9        I further certify that I am neither counsel for,

10  related to, nor employed by any of the parties to the action

11  in which this hearing was taken; and, further, that I am not

12  financially nor otherwise interested in the outcome of the

13  action.

14

15

16            Echo Reporting, Inc., Transcriber

17                 Saturday, March 5, 2022

18

19

20

21

22

23

24

25