**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

Diane M. Doolittle (CA Bar No. 142046)
dianedoolittle@quinnemanuel.com
Sara Jenkins (CA Bar No. 230097)
sarajenkins@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
Teuta Fani (admitted *pro hac vice*)
teutafani@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Stephen A. Broome (CA Bar No. 314605)
stephenbroome@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
Crystal Nix-Hines (Bar No. 326971)
crystalnixhines@quinnemanuel.com
Alyssa G. Olson (CA Bar No. 305705)
alyolson@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Josef Ansorge (admitted *pro hac vice*)
josefansorge@quinnemanuel.com
Xi ("Tracy") Gao (CA Bar No. 326266)
tracygao@quinnemanuel.com
Carl Spilly (admitted *pro hac vice*)
carlspilly@quinnemanuel.com
1300 I Street NW, Suite 900
Washington D.C., 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

Jomaire Crawford (admitted *pro hac vice*)
jomairecrawford@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

*Counsel for Defendant Google LLC*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| PATRICK CALHOUN, *et al.*, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 4:20-cv-5146-YGR-SVK<br><br>**GOOGLE LLC'S REPLY IN SUPPORT OF MOTION TO STRIKE REPORT OF PLAINTIFFS' EXPERT RUSSELL MANGUM, III, PH.D.**<br><br>Judge:  Hon. Yvonne Gonzalez Rogers<br>Courtroom 1 – 4th Floor<br>Date:  May 31, 2022<br>Time:  1:30 p.m. |

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................................1

I.    PRELIMINARY STATEMENT ...........................................................................................1

II.   ARGUMENT .......................................................................................................................2

A.    Dr. Mangum's Damages Opinions Should Be Stricken As Irrelevant Because Neither Unjust Enrichment Nor Restitution Are Available to Plaintiffs ......................................................................................................................2

1.    Dr. Mangum's Damages Opinions Are Inapplicable to Plaintiffs' Breach of Contract and Good Faith and Fair Dealing Claims. ......................2

2.    Neither Unjust Enrichment nor Restitution Are Available for CIPA, Statutory Larceny, or Intrusion Upon Seclusion. ...........................................5

3.    Dr. Mangum's Damages Opinions Are Inapplicable to Plaintiffs' UCL Claim. ..................................................................................................6

B.    Dr. Mangum's Proposed Methodology Fails to Account for Uninjured Class Members......................................................................................................................7

C.    Dr. Mangum's Approaches For Calculating Restitution Are Unreliable.................11

1.    Dr. Mangum's Methodology for Restitution Cannot Fairly Compensate Class Members. ..........................................................................11

2.    Dr. Mangum's Methodology Does Not Fit Plaintiffs' Theory of Liability. ....................................................................................................13

D.    Dr. Mangum's Methodology for Calculating and Apportioning Unjust Enrichment Damages is Unreliable. .......................................................................14

III.  CONCLUSION ...................................................................................................................15

# TABLE OF AUTHORITIES

**Page**

## CASES

*AcryliCon USA, LLC v. Silikal GmbH*,
     985 F.3d 1350 (11th Cir. 2021)................................................................. 4

*ADT LLC v. Vivint, Inc.*,
     No. 17-cv-80432 (S.D. Fla., Nov. 14, 2017)................................................. 13, 14

*Argush v. LPL Fin., LLC*,
     2017 WL 349378 (D.N.J. Jan. 23, 2017) ................................................... 2

*Brazil v. Dole Packaged Foods, LLC*,
     660 F. App'x 531 (9th Cir. 2016) ................................................................ 11, 12

*Chowning v. Kohl's Dep't Stores, Inc.*,
     733 F. App'x 404 (9th Cir. 2018).............................................................. 11, 12

*Comcast Corp. v. Behrend*,
     569 U.S. 27 (2013) ...................................................................................... 13

*Cooper v. Brown*,
     510 F.3d 870 (9th Cir. 2007)....................................................................... 15

*Cty. of San Bernardino v. Walsh*,
     158 Cal. App. 4th 533 (Cal. App. 2007) ...................................................... 6

*Daubert v. Merrell Dow Pharms., Inc.*,
     509 U.S. 579 (1993) ...................................................................................... 2

*Doyle v. Chrysler Grp., LLC*,
     663 F. App'x 576 (9th Cir. 2016) ............................................................... 15

*Folgelstrom v. Lamps Plus, Inc.*,
     195 Cal. App. 4th 986 (2011)....................................................................... 7

*Huynh v. Quora, Inc.*,
     2019 WL 5434184 (July 18, 2019 N.D.Cal.) ............................................... 3

*In re Facebook, Inc. Internet Tracking Litig.*,
     956 F.3d 589 (9th Cir. 2020)....................................................................... 5, 7

*In re Facebook, Inc., Consumer Privacy User Profile Litig.*,
     402 F. Supp. 3d 767 (N.D. Cal. 2019) ........................................................ 4, 7

*In re TFT-LCD Antitrust Litig.*,
     637 F. App'x 981 (9th Cir. 2016)................................................................ 5

*Johnson v. Napa Valley Wine Train, Inc.*,
     2016 WL 493229 (N.D. Cal. Feb. 9, 2016) .................................................. 2

*Kansas v. Nebraska*,
    574 U.S. 445 (2015) ................................................................................................. 4, 5

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (Cal. 2003) .......................................................................................... 6

*McHale v. Silicon Valley L. Grp.*,
    2011 WL 6990187 (N.D. Cal. Dec. 14, 2011) ............................................................... 6

*Messner v. Northshore University HealthSystem*,
    669 F.3d 802 (7th Cir. 2012) .......................................................................................... 8

*Opperman v. Path, Inc.*,
    2016 WL 3844326 (N.D. Cal. July 15, 2016) ........................................................... 8, 12

*Smith v. Arthur Andersen LLP*,
    421 F.3d 989 (9th Cir. 2005) .......................................................................................... 6

*Svenson v. Google Inc.*,
    65 F. Supp. 3d 717 (N.D. Cal. 2014) ............................................................................ 3

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) ................................................................................................... 8

*Turnier v. Bed Bath & Beyond Inc.*,
    2021 WL 4209473 (S.D. Cal. Sept. 16, 2021) ......................................................... 12, 13

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ....................................................................................................... 8

*Ward v. Taggart*,
    51 Cal.2d 736 (1959) ..................................................................................................... 6

*Williams v. Apple, Inc.*,
    338 F.R.D. 629 (N.D. Cal. 2021) .................................................................................. 8

## STATUTES

Cal. Civ. Code § 3358 ............................................................................................................ 3, 4

1

2

## **MEMORANDUM OF POINTS AND AUTHORITIES**

3

**I.      PRELIMINARY STATEMENT**

4      Plaintiffs' opposition confirms that Dr. Russell Mangum's original report is neither relevant

5 nor reliable and should be stricken.

6      Google's Motion to Strike Dr. Mangum's Report (Dkt. 427) (the "Motion" or "Mot.")

7 established that Dr. Mangum's damages opinions—which are limited to restitution and unjust

8 enrichment theories—are irrelevant because those remedies are not available for any of Plaintiffs'

9 claims.  In their Opposition to Google's Motion (the "Opposition" or "Opp."), Plaintiffs fail to

10 address the majority of Google's authorities, and instead offer only unsupported arguments and

11 conclusory assertions.

12      Plaintiffs implicitly concede the unreliability of Dr. Mangum's original report by attempting

13 to supplement it with "Rebuttal" reports from Dr. Mangum, Dr. Richard Smith, and Dr. Zubair

14 Shafiq—after Google deposed them and filed the Motion to Strike Dr. Mangum's original report.

15 Dr. Mangum, Dr. Smith, and Dr. Shafiq's untimely rebuttal reports introduce new theories and rely

16 on new evidence submitted for the first time on reply and should therefore be stricken for the reasons

17 stated in Google's Objection to Reply Evidence, Dkt. 528.  Even if the rebuttal reports are

18 considered, however, none of the new theories evidence can cure the three fundamental defects in

19 Dr. Mangum's original report.

20      *First,* Dr. Mangum has articulated no methodology to exclude uninjured class members.

21      *Second,* Dr. Mangum's restitution opinion—which turns on calculating the value that class

22 members place on the data at issue—ignores the undisputed record, including testimony from

23 Plaintiffs' other experts, that different class members place wildly differing values on their personal

24 information.  That Google's Ipsos program offers a range of compensation to obtain data from some

25 Internet users actually *supports* Google's conclusion of variability.  And the Ipsos payments cannot

26 serve as a proxy for the restitution value here because the data the Ipsos program gathers is of a

27 different quality and quantity than the data at issue in this case.

28

*Third,* confronted with Google's critique, Dr. Mangum simply jettisoned his prior unjust enrichment apportionment opinion and arrived at a brand new one in his Rebuttal Report, tacitly conceding his original methodology was deficient.  His new methodology is little more than smoke and mirrors, relying on unverifiable assumptions and Dr. Shafiq's incomplete analysis. In any event, Dr. Mangum's rebuttal report and new methodology disclosed for the first time therein should be excluded for the reasons outlined in Google's Objection to Reply Evidence. (Dkt. 528.)

For these reasons, the Court should strike Dr. Mangum's original report and disregard his rebuttal report.

## II.    ARGUMENT

### A.    Dr. Mangum's Damages Opinions Should Be Stricken As Irrelevant Because Neither Unjust Enrichment Nor Restitution Are Available to Plaintiffs

Plaintiffs do not dispute that Dr. Mangum opined on only two damages remedies: unjust enrichment and restitution. (*See* Mot. at 8.)  Neither remedy is available to Plaintiffs in this case, and Dr. Mangum's opinions should therefore be stricken as irrelevant. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993); *Argush v. LPL Fin., LLC*, 2017 WL 349378, at *2 (D.N.J. Jan. 23, 2017) (striking portions of expert reports as irrelevant because they opined on damages that could not be recovered as a matter of law), *aff'd*, 759 F. App'x 121 (3d Cir. 2018).

#### 1.    Dr. Mangum's Damages Opinions Are Inapplicable to Plaintiffs' Breach of Contract and Good Faith and Fair Dealing Claims.

Plaintiffs have doubled down on a theory of liability that rests entirely on their breach of contract claim (*see* Opp. at 2), but the remedies they seek are not available for such a claim.  (*See* Mot. at 8-14.)[1]

*Restitution.* Plaintiffs address *none* of the authorities Google cited that confirm restitution is not an available remedy for a breach of contract claim. (*See id.* at 10.)

---

[1]    Arguments regarding contract damages apply equally to damages for breach of good faith and fair dealing claims. *See Johnson v. Napa Valley Wine Train, Inc.*, 2016 WL 493229, at *12 (N.D. Cal. Feb. 9, 2016) ("Current California law maintains that damages for the breach of the covenant of good faith and fair dealing are limited to contract rather than tort remedies, with an exception for bad faith in insurance contracts.").

To divert attention from the inevitable conclusion that *restitution* is unavailable to them, Plaintiffs argue that Dr. Mangum's methodology is "a perfect fit for '*benefit-of-the-bargain*' damages." (Opp. at 10.)  Benefit-of-the-bargain is not an available remedy either because Plaintiffs paid nothing to use the (free) Chrome browser.  (Mot. at 10.)  Courts have rejected Plaintiffs' argument that Chrome is not free because Google "obtains considerable consideration in exchange for asking people to agree to its contract prior to using Chrome." (Opp. at 10.)  In *Huynh v. Quora, Inc.*, 2019 WL 5434184 (July 18, 2019 N.D.Cal.), a case cited in Google's Motion but which Plaintiffs ignore, the plaintiffs made nearly identical allegations, asserting that "although users do not pay a direct fee to Quora to use the website or app, they enter into a transaction—a value-for-value exchange—in which they agreed to provide content, PII and other user information," that "users continually provide value to Quora with every sign-in, post, like, or comment because the PII and content have tangible economic value because they are used by Quora and others to generate advertising revenue," and that "[i]n exchange for users providing their PII and content, part of the value Quora provides to users is the assurance that the information provided will remain secure." *Id.*,  Dkt. No. 61 at 10.  The court there disagreed. It found that benefit-of-the-bargain damages were not available because "Plaintiffs have not shown that they paid anything for the asserted privacy protections."  2019 WL 11502875, at *10 (N.D. Cal. Dec. 19, 2019). Google cited a host of similar authorities in its Motion (at 10-11), but Plaintiffs address none of them.[2]

*Unjust Enrichment.* Plaintiffs' unsupported contention that unjust enrichment and disgorgement of profits are remedies for contract and good faith and fair dealing claims (Opp. at 10-11), is contrary to the law. Plaintiffs entirely sidestep California Civil Code § 3358 and authorities relying on it, which expressly limit contract damages to an amount no "greater ... than [the plaintiff] could have gained by the full performance [of the contract] on both sides." Cal. Civ. Code § 3358. Here, that amount is $0 since Plaintiffs paid nothing to Google and expected no compensation in

---

[2] *See also Svenson v. Google Inc.*, 65 F. Supp. 3d 717, 724 (N.D. Cal. 2014) and *Svenson v. Google Inc.*, 13-cv-04080, Dkt. No. 85 at 5 (benefit-of-bargain theory of damages defective because defendant's services were free, despite allegations that plaintiffs "did not receive the benefit of the bargain for which they contracted and for which they paid and provided valuable consideration" including "by providing Defendants their personal information"). Similarly, benefit-of-the-bargain damages are not available here.

REPLY IN SUPPORT OF MOTION TO STRIKE REPORT OF PLAINTIFFS' DAMAGES EXPERT RUSSELL MANGUM, III, PH.D

return.  Instead of addressing Section 3358 and the cases applying it, Plaintiffs cite *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767 (N.D. Cal. 2019), a motion to dismiss order in the case stemming from the Cambridge Analytica scandal.  There, the court found *if* plaintiffs suffered a detriment as a result of a breach of contract, they may seek compensatory damages for the amount of the detriment.  *In re Facebook Privacy User Profile Litig.*, 402 F. Supp. 3d at 802.  *In re Facebook Privacy User Profile Litig.* does not mention unjust enrichment or disgorgement of profits, much less find that these remedies are available to redress breach of contract claims.

Plaintiffs' reliance on *Kansas v. Nebraska*, 574 U.S. 445, 461 (2015) and Restatement (Third) of Restitution § 39 (2010) is also misplaced. In *Kansas v. Nebraska,* the Supreme Court served "as a substitute for the diplomatic settlement of controversies between sovereigns and a possible resort to force" and held that Kansas was entitled to the equitable remedy of partial disgorgement of Nebraska's profits from its breach of the Republican River Compact. 574 U.S. at 461. This holding was *expressly* limited to the context of agreements and lawsuits between states related to interstate waterways:

> "[t]wo particular features of this interstate controversy further distinguish it from a run-of-the-mill private suit and highlight the essentially equitable character of our charge. The first relates to the subject matter of the Compact and Settlement: rights to an interstate waterway. The second concerns the Compact's status as not just an agreement, but a federal law."

*Id.* at 454.  Far from recognizing that disgorgement of profits or unjust enrichment are proper remedies in private contract disputes, as Plaintiffs contend, the Court explained that "*whatever is true of a private contract action…*this Court may order disgorgement of gains, if needed to stabilize a compact and deter future breaches, when a State has demonstrated reckless disregard of another, more vulnerable State's rights under that instrument." *Id.* at 462. (emphasis added). Given the Supreme Court's express limitation of its holding to the unique circumstances before it, *Kansas v. Nebraska* plainly has no bearing on the contract dispute between the private parties here.

Indeed, in *AcryliCon USA, LLC v. Silikal GmbH*, 985 F.3d 1350, 1372 (11th Cir. 2021), the Eleventh Circuit held exactly that, and rejected a party's attempt to use *Kansas v. Nebraska* as

support for its argument that disgorgement is a remedy for breach of contract.  *Id.* (reversing judgment for disgorgement and holding that *Kansas v. Nebraska* "has no bearing on an ordinary contract dispute between private parties"). Similarly, Plaintiffs cite no authority in this Circuit or in California that applies Restatement (Third) of Restitution § 39 to find that unjust enrichment or disgorgement are appropriate remedies in private contract disputes.

## 2.   Neither Unjust Enrichment nor Restitution Are Available for CIPA, Statutory Larceny, or Intrusion Upon Seclusion.

Plaintiffs do not address Google's argument that  neither unjust enrichment nor restitution are available for CIPA or statutory larceny. Nor could they: both statutes enumerate the specific remedies available and neither includes unjust enrichment, disgorgement of profits, or restitution. (*See* Mot. at 9.)

Plaintiffs argue (Opp. at 9) that such remedies are available for intrusion upon seclusion, but they fail to cite *a single* decision awarding unjust enrichment or restitution for an intrusion upon seclusion claim. Plaintiffs primarily rely on *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 600 (9th Cir. 2020), but that case does not establish that restitution or unjust enrichment are available remedies for intrusion upon seclusion (or any of the other claims Plaintiffs seek to certify). In *In re Facebook Tracking*, the Ninth Circuit merely held that an alleged "legal interest in unjustly earned profits" was "sufficient to confer Article III *standing*" for claims of violations of California's Comprehensive Computer Data and Access Fraud Act ("CDAFA"), statutory larceny, trespass to chattels, and fraud.  *Id.* (emphasis added).  The Ninth Circuit clearly did *not* hold that unjust enrichment or disgorgement is an appropriate *remedy* for such claims (or for any of the claims Plaintiffs assert here).  Nor could the Court have so held given that CDAFA and the larceny statute, for example, specifically enumerate the fines, punishments, and remedies for violations of those statutes—and unjust enrichment or disgorgement of profits are not among them.   Indeed, in *In re TFT-LCD Antitrust Litig.*, 637 F. App'x 981, 985 (9th Cir. 2016)—another case Plaintiffs simply ignore—the Ninth Circuit recognized that the fact that there is *injury* does not mean there is a

*monetary remedy.*[3] *See also Smith v. Arthur Andersen LLP*, 421 F.3d 989, 1005 (9th Cir. 2005) (distinguishing question of sufficiency of allegation of injury from question of "how to measure the extent of that injury"); *McHale v. Silicon Valley L. Grp*., 2011 WL 6990187, at \*8 (N.D. Cal. Dec. 14, 2011) (finding that the cases relied upon by trustee support a finding of injury and standing "but do not address the proper measure of damages" and holding those cases to be "inapposite to the question of the proper measurement of damages"). In short, while an interest in allegedly unjust profits may be sufficient to confer *standing* for a claim, that does not mean disgorgement of profits is an appropriate remedy for the claims. The *remedies* for Plaintiffs' claims are still limited to those available under common law, or by statute, as the case may be.

As a last resort, Plaintiffs attempt to mischaracterize Restatement (Second) of Torts § 652H—but that authority mentions neither restitution nor unjust enrichment. *See* Restatement (Second) of Torts § 652H (1977) ("One who has established a cause of action for invasion of privacy is entitled to recover damages for: (a) the harm to his interest in privacy resulting from the invasion; (b) his mental distress proved to have been suffered if it is of a kind that normally results from such an invasion; and (c) special damage of which the invasion is a legal cause.")

### 3. Dr. Mangum's Damages Opinions Are Inapplicable to Plaintiffs' UCL Claim.

Plaintiffs cannot credibly dispute that unjust enrichment and non-restitutionary disgorgement of profits (which is what Plaintiffs seek) are unavailable in UCL actions. (*See* Mot. at 12).[4] They incorrectly argue, however, that ordinary restitution remains an appropriate remedy even though they cannot establish by class-wide proof the value of the alleged "property" (*i.e.* the disputed data) lost by each class member, which obviously varies dramatically from class member

---

[3] Plaintiffs also cite *Ward v. Taggart*, 51 Cal.2d 736, 742-43 (1959), a case that is over six decades old and deals with an action against a real estate broker by his employee to recover an illicit profit obtained by the broker through fraud, and *Cty. of San Bernardino v. Walsh,* 158 Cal. App. 4th 533, 542 (Cal. App. 2007), an action by a county against the county administrator and other public officials to recover damages as a result of two bribery schemes. (Opp. at 9.) Neither case involves any of the claims Plaintiffs bring, much less similar allegations.

[4] In a parenthetical (Opp. 11-12), Plaintiffs blatantly misstate the holding in *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134 (Cal. 2003) as allowing disgorgement of profits under the UCL, when in fact, the court held the opposite: "disgorgement of such profits is not an authorized remedy…under the UCL." *Id.* at 1140.

to class member based on a variety of factors (*e.g.*, how often they browse, which websites they visit and whether those sites use Google services, and whether the class member uses any privacy features that prevent Google from receiving data).

Moreover, the data at issue here is not Plaintiffs' "property" under California law. Plaintiffs' reliance on Judge Koh's motion to dismiss orders (Opp. at 12-13) is misplaced for the reasons explained in Google's Motion (at 13). Indeed, Google cited ten cases, stretching from 2011 to 2021, showing a consistent line of precedent in the Ninth Circuit and this District holding that the alleged "personal information" at issue here is not "property" under the UCL. (*See* Mot. at 11-14.)[5] Plaintiffs fail to address the holding in *Facebook Privacy Litigation*, a case involving collection of essentially the same data at issue here, in which the Ninth Circuit "affirm[ed] the district court's dismissal of the plaintiffs' UCL claim because plaintiffs failed to allege that they 'lost money *or property* as a result of the unfair competition.'" 572 Fed.App'x. 494 (citing *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986 (2011) (emphasis added)). In fact, Plaintiffs address only two of the ten cases Google cited, merely asserting, with no support, that those two decisions "stand in stark contrast" to a "growing trend" among courts deciding this issue. Wrong. There is no growing trend, and Judge Koh's motion to dismiss orders are outliers.

Because unjust enrichment/disgorgement of profits and restitution are not available remedies for Plaintiffs' claims, Dr. Mangum's opinions are irrelevant and should be stricken.

**B.     Dr. Mangum's Proposed Methodology Fails to Account for Uninjured Class Members**

Google's Motion identified four reasons why some members of Plaintiffs' proposed class would be uninjured and therefore not entitled to damages. (Mot. at 14-16.) Dr. Mangum ignores all of them. Plaintiffs argue that Google is attempting to obtain merits determinations (Opp. at 14) but that is incorrect. A proper damages methodology at the class certification stage must be able to yield a damages amount that applies only to *injured* class class members while proposing how *uninjured*

---

[5] The cases Plaintiffs cite are no different. For example, the UCL claim in *Pulaski* dealt with money paid for advertising services and did not involve any allegations, much less determinations on the issue of whether personal information constitutes property. 802 F.3d at 989. *In re Facebook, Inc. Internet Tracking Litig.* did not even involve a UCL claim.

class members would be excluded.  *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2200 (2021) (reversing class damages award where only some of the class members had standing); *Williams v. Apple, Inc.*, 338 F.R.D. 629, 641 (N.D. Cal. 2021) (declining to certify portion of class where plaintiffs failed to show that the number of uninjured class members would be *de minimis* and offered no feasible method of determining uninjured class members);  *Opperman v. Path, Inc.*, 2016 WL 3844326, at *14–15 (N.D. Cal. July 15, 2016) (rejecting damages model at class certification stage because "[n]o damages number arising from this model will apply to all class members, particularly since some of the class members, by this measure, will not have been injured at all). Even the case Plaintiffs cite supports the well-established principle that evidence of uninjured class members should be considered when assessing a damages model, *even if* it means that some merits evidence is used. *Messner v. Northshore University HealthSystem*, 669 F.3d 802, 823 (7th Cir. 2012) (merits evidence could be used to undermine the methodologies of plaintiffs' economic expert at the class certification stage); *see also Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 351 (2011) (explaining that the "rigorous analysis [under Rule 23(a)] will entail some overlap with the merits of the plaintiff's underlying claim" and stating "[t]hat cannot be helped") (internal quotation marks omitted). That is precisely what Google did in its Motion.

### *Dr. Mangum's Methodology Fails to Account for Consenting Class Members.* Consent is

a defense to each of the claims Plaintiffs seek to certify.  (Dkt. 142 at 12 & n.3.) Therefore, Plaintiffs' claim that all class members are injured "by virtue of *not* syncing," no matter their consent (Opp. at 14-15), is wrong.  Users who consented are, by definition, uninjured. Cal. Civ. Code § 3515 ("He who consents to an act is not wronged by it."). Evidence confirms that class members provided express and/or implied consent, and therefore Plaintiffs' damages model must have a methodology to exclude those class members.  (*See* Mot. at 14.)  Dr. Mangum's model does not.

### *Dr. Mangum's Methodology Does Not Account for Class Members Whose Alleged "Personal Information" Was Not Collected.* Plaintiffs' sweeping class definition includes three of

the five Chrome browser modes (Basic Mode, Signed in without Sync enabled, and Guest Mode). (*See* Opp. at 4.) Google does *not* link any of the data at-issue to a user's identity when they are in

Basic Mode or Guest Mode—indeed, some of these users may not even have a Google Account and therefore Google has no way to identify them.  (*See* Dkt. 428-22, Declaration of David Monsees, dated December 20, 2021 ("Monsees Decl.") §§ A-B.)  For these users, the data at issue is not "personal information" under any applicable definition (and such data certainly is not the "personal information *that Chrome stores*").[6]  *See id.*  Plaintiffs attempt to confuse by citing snippets of documents and testimony out of context, but they cannot escape that Dr. Mangum's damages methodology fails to exclude uninjured Chrome users and that his damages calculation is thus inflated and unreliable.

**_Plaintiffs Mischaracterize Google's Argument on User Controls._**  Plaintiffs' argument that users' account or browser settings do not prevent all transmissions of the at-issue data and therefore users that enable these controls are nonetheless injured because their data was received by Google is wrong on the facts and misses the point.  (Opp. at 16-18.)   As it relates to Plaintiffs' unjust enrichment theory in particular, a user is not entitled to damages if Google does not derive a benefit from the data received from that user's activity, as is the case when the user enables certain controls, such as ad blockers, which impact Google's ability to use their data for targeted advertising. (Mot. at 15.)

Plaintiffs' conclusory assertion that "it is not possible for users who do not sync to prevent Chrome from sending personal information to Google, even using cookie browsers [sic] or other methods" is also incorrect.  As the Berntson Declaration makes clear, whether Google Ad Manager, for example, uses the categories of data alleged to be improperly collected depends on a number of user controls that can prevent transmission of data to Google Ad Manager. (Dkt. No. 430-8 at 13-

---

[6] To the extent Judge Koh found that all the at-issue data is "personal information" without regard for whether it is linked, Google respectfully disagrees.  Moreover, contrary to Plaintiffs' conclusory assertion, there is nothing in the record to suggest that Google links data of users in Basic or Guest Mode to their Google Accounts (if they even have one, which some Chrome users do not).  Indeed, the record shows the exact opposite. (*See* Dkt. No. 430-8, Declaration of Glenn Berntson, dated December 21, 2021 ("Berntson Decl.") at 17 (the ███████████████ "does not map GAIA IDs to Biscotti and Zwieback Not-GAIA IDs. Rather, ███ is intentionally designed and operated to do the opposite."); Dkt. 428-22, Monsees Decl. at 4-5 (explaining that "Googlers are prohibited from using four of the five specific categories of information listed by Plaintiffs…to attempt to identify a browser or user" and identifying the specific practices in place to prevent that from happening).)

16.)  Indeed, controls such as firewalls can be configured to allow traffic only to specific domains or to prevent traffic to specific domains such that Google domains receive no data. (*See id* at 15.) Similarly, when users block all cookies in their Chrome browser settings, Chrome prevents websites and Google Ad Manager from setting or receiving any cookies. (*Id.* at 7; *see also* Mot. at 15.)[7] Finally, the conclusory statement that Prof. Shafiq has explained how Google's systems can be used to determine precisely how much information Google has in its possession for each class member that was sent from Chrome to Google is contrary to the record. (*See, e.g.*, Declaration of Tim Schumann, dated  December 20, 2021 (Dkt. 428-26) at ¶¶ 2-8, Expert Report of Georgios Zervas, dated December 21, 2021 ("Zervas Rpt."), at ¶¶ 75-96.)

### ***Dr. Mangum Does Not Account For Class Members Who Value Personalized Ads More Than The At-Issue Data.*** Dr. Mangum's restitution analysis sweeps in unharmed class members because it ignores evidence that the value some class members derived from personalized advertising may have outweighed the purported value of the data alleged to be improperly taken or the benefit of any such data to Google. (Mot. at 15.) The measure of the value class members place on personalized ads is crucial to calculating restitution damages.   Indeed, "without evidence of the value received, that calculation is impossible." *Chowning v. Kohl's Dep't Stores, Inc.*, 733 F. App'x

---

[7] Plaintiffs advance a number of arguments for why specific user controls are ineffective. (Opp. at 16-18.) Each of Plaintiffs' arguments improperly relies on evidence that was unavailable both at the time Dr. Mangum filed his report and at the time Google filed its Motion. (*See, e.g.*, Opp. at 16-18 (relying on Rebuttal Report of Pls' Technical Expert Richard Smith ("Smith Rebuttal Rpt."), filed on February 16, 2022).)  These arguments should therefore not be considered by the Court. *See* Dkt. 528. In any event, each one of Plaintiffs' arguments is wrong. *First,* while opting out of or turning off Ads Personalization—through browser/account settings or through the Network Advertising Initiative's personalized advertising opt-out—will not prevent all transmissions of the broad categories of alleged data, they will prevent Google Ad Manager from serving targeted ads to a user based on their GAIA identity or third-party cookies. (Berntson Decl. at ¶¶ 19, 22, 26.)  *Second,* Plaintiffs argue that blocking all cookies "effectively breaks the browser." (Opp. Br. at 16.) This is an overstatement, as blocking all cookies impacts some (not all) browser functionality. Plaintiffs ignore that users can browse and interact with website features that do not require cookies. (Berntson Decl. at ¶ 19(a), Zervas Rpt. at ¶¶ 31-34). *Third, w*hile it is true that ad blockers may not block all transmissions, and the scope of transmissions that they do block may differ based on the ad blocker's configuration, they can prevent Chrome from sending any ad requests to Google Ad Manager, impacting Google's ability to earn ad revenue. (*See* Berntson Decl. at ¶ 19(e), Zervas Rpt. at ¶ 48.)  *Fourth,* Plaintiffs' argument that fewer than .01 percent of users disable Javascript is inapposite; the fact remains that such a feature is available to Chrome users and prevents transmissions of at-issue data, and some users do in fact use this feature. Moreover, as Professor Zervas explained, there are websites that do not include Javascript-dependent features.  (Zervas Rpt. at ¶ 38.)

REPLY IN SUPPORT OF MOTION TO STRIKE REPORT OF PLAINTIFFS' DAMAGES EXPERT RUSSELL MANGUM, III, PH.D

404, 406 (9th Cir. 2018); *Brazil v. Dole Packaged Foods, LLC*, 660 F. App'x 531, 534 (9th Cir. 2016) (affirming decertification and holding that the measure of "restitution is equal to the difference between what the plaintiff paid and the value she received in return.").

Plaintiffs' arguments in response fail. *First*, they claim Google did not provide any data to support the fact that some class members may have valued personalized ads more than the data alleged to be improperly collected. (Opp. at 18.)  Wrong. The Expert Report of Dr. Bruce Strombom, dated December 21, 2021 (Dkt. 427-7) ("Strombom Rpt.") cites numerous studies showing that many users prefer personalized ads. (*See* Strombom Rpt. at 34-38; *see also, e.g.* Expert Report of Leslie John (Dkt. 339-16), Ex. A at 3 (citing study that concludes "consumers may find it upsetting if brands they feel especially close to refrain from using all the information they have to provide personalized experiences.") That *some* users, including Plaintiffs, found the concept of personalized advertising to be "annoying" (Opp. at 18) only highlights why this action should not be certified.

*Second*, Plaintiffs also argue that the "damages calculation for **unjust enrichment** need not account for benefits received after purchase." (Opp. Br. at 18 (emphasis added) (citing *Pulaski*, 802 F.3d at 989).)[8] But Plaintiffs are responding to a straw man because Google's argument is that the damages calculation for **restitution**, not unjust enrichment, requires subtracting the value of what the plaintiffs received from the value they provided. *See Chowning*, 733 F. App'x at 406; *Brazil*, 660 F. App'x at 534.

### C. Dr. Mangum's Approaches For Calculating Restitution Are Unreliable

#### 1. Dr. Mangum's Methodology for Restitution Cannot Fairly Compensate Class Members.

---

[8] To the extent Plaintiffs cite *Pulaski* for the proposition that restitution need not account for benefits received after purchase, that holding is not contrary to Google's argument. (Opp. Br. at 18.)  The court held, consistent with Google's argument, that "[r]estitution is the return of the excess of what the plaintiff gave the defendant over the value of what the plaintiff received. 802 F.3d at 988. The court further held that the proper measure of damages was "the difference between what was paid and what a reasonable consumer would have paid at the time of purchase without the fraudulent or omitted information." *Id.* at 989.  Dr. Mangum's report completely ignores the second part of this equation by failing to consider that some class members would pay more to receive personalized ads than their data is worth to them.

REPLY IN SUPPORT OF MOTION TO STRIKE REPORT OF PLAINTIFFS' DAMAGES EXPERT RUSSELL MANGUM, III, PH.D

As Google's Motion established, a single restitution number cannot fairly compensate all proposed class members because (1) the value that browser users place on their privacy and personalized advertising differs, and (2) the type and volume of data Google receives varies significantly from one proposed class member to another. (Mot. at 16-18.); *see Turnier v. Bed Bath & Beyond Inc.*, 2021 WL 4209473, at *2 (S.D. Cal. Sept. 16, 2021) ("The difference between what the plaintiff paid and the value of what the plaintiff received is a proper measure of restitution.").

*First,* Plaintiffs mischaracterize Google's first argument as centering on "class members' personal *feelings* about the value of their data." (Opp. Br. at 20.) (emphasis added). This mistatement aside, Dr. Mangum actually agrees that the value users place on their privacy is the key to determining the economic value class members are owed. (*See, e.g.*, Mangum Rpt. P. 70 ("Determining the economic value of that difference in service as a result of Chrome's breach in contract comes down to assessing *the value that browser users place on their privacy* and control of their own personal information…[which] can be estimated using survey data.").) The problem with Dr. Mangum's approach is that he ignores the fact that "browser users" place *widely different* values on their privacy, and Dr. Mangum fails to identify a reliable method for determining each class member's personal valuation. *See Opperman*, 2016 WL 3844326 at *14–15 (rejecting class damages model for privacy claim because "the chief problem with this analysis is that because consumers do not have identical preferences, each class member will place a very different value on the protection" of their data) (internal quotation marks omitted). That is because none exists. *See id.* (finding that the problem with a damages methodology almost identical to Dr. Mangum's is that "[n]o damages number arising from this model will apply to all class members").

*Second*, Plaintiffs improperly rely on a newly produced document and the reply report of Prof. Shafiq,[9] neither of which were available when Google filed its Motion, to argue that Google's

---

[9] Plaintiffs cite GOOG-CALH-00700912 for the proposition that Google uses ▓▓▓▓▓ to analyze gaia-keyed revenue. (Opp. at 20 (citing Weaver Ex. N).) But as that document makes clear, ▓▓▓▓▓ is limited to the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, not Display Ads revenue Google receives from users' activity on third party websites. *See* Ex. N at 3 (limiting to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓). Plaintiffs also cite Prof. Shafiq's Rebuttal Report for the proposition that Google stores revenue information keyed to specific ▓▓▓▓▓ logs associated with Display Ads. (Opp. at 20.) Respectfully, the Court should disregard this new report submitted for the first time on Reply. (Dkt. 528.)

existing systems can identify **_revenue_** on a per user basis and thus that Google's argument on variability of amount and type of data should be deposed.  (Opp. at 20.)  Even if those were considered (they should not be) and actually supported Plaintiffs' claim (they do not), the revenue-related arguments do not help Dr. Mangum's calculation of **_restitution_** damages per class member. *See Turnier*, 2021 WL 4209473, at *2.[10]

## 2. Dr. Mangum's Methodology Does Not Fit Plaintiffs' Theory of Liability.

Dr. Mangum's methodology for calculating restitution damages reflects a stark mismatch between the information Dr. Mangum attempts to value and the data Plaintiffs allege was improperly sent to Google. (Mot. at 18-20.) To deflect, Plaintiffs rely on new evidence (again) to argue that the Ipsos Screenwise Panel is comparable because it uses the same identifiers at issue in this case. (Opp. at 22.) That fact alone does not make the Ipsos data comparable. The Ipsos Screenwise Panel compensates users for 1) a slew of data and requirements that are not at issue in this case (*see* Weaver Ex. J (describing the various meters users install for the panels studies, including a TV meter, router, mobile and tablet apps, and browser extension for every browser they use)), and 2) data, such as name and email address, that Plaintiffs allege were voluntarily provided to Google.[11] Dr. Mangum does not offer a methodology for excluding this not-at-issue-data from the damages analysis.

Plaintiffs cannot escape the holding of *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) that a proposed damages model must compensate only for damages caused by the alleged wrongdoing by relying on law that the restitution damages can be "an approximation." (Opp. at 19.) Dr. Mangum fails to "approximate" the value of the at-issue data and only the at-issue data, as required by *Comcast.* 569 U.S. 27 at 35; *see also ADT LLC v. Vivint, Inc.*, No. 17-cv-80432, at 6 (S.D. Fla.,

---

[10] Plaintiffs also argue that Google can use its ad-serving technology to identify class members and how much information it has in its possession for each class member as a result of Chrome sending personal information to Google while they were not synced. (Opp. at 21 (citing Shafiq Rebuttal Rpt. at ¶¶ 157-188).) Respectfully, the Court should disregard this new report submitted for the first time on Reply. (Dkt. 528.)  In any event, this is a far fetched theory that is not supported by the evidence in the record.

[11] Plaintiffs mischaracterize Dr. Strombom's testimony in claiming that he did not know about the Screenwise program. To the contrary, Dr. Strombom references the program in his report (¶ 53) and discusses it along with the other research companies Dr. Mangum identified. *See* Strombom Rpt. at 66.

REPLY IN SUPPORT OF MOTION TO STRIKE REPORT OF PLAINTIFFS' DAMAGES EXPERT RUSSELL MANGUM, III, PH.D

Nov. 14, 2017), Dkt. 170 (excluding Dr. Mangum's opinion in part because his "sweeping damages calculation [did] not reflect[] damages actually attributable to [defendant]'s alleged misconduct"). Similarly, the Reference Manual on Scientific Evidence (Third) that explains that an expert may approximate the market value of a cargo of wheat from prices of similar products or objects does not help here, where Dr. Mangum attempts to approximate the value of data like browsing history and IP address (the wheat) from the value of installing things like a TV meter, router, mobile and tablet apps, and browser extensions (the land on which the wheat is planted and harvested).

### D.      Dr. Mangum's Methodology for Calculating and Apportioning Unjust Enrichment Damages is Unreliable.

For the first time in their Opposition and in Dr. Mangum's rebuttal report, Plaintiffs argue that Dr. Mangum's model of calculating the aggregate unjust enrichment number is sound because it is "substantially similar" to Google's "late produced" calculations of revenue impact from loss of third-party cookies in Chrome Incognito. (Opp. at 23.) *First*, Plaintiffs' claim that this calculation was "late produced" is false.  Documents containing this calculation were produced on October 5, 2021, yet Dr. Mangum's October 14, 2021 report did not cite them or claim they involved calculations that were "substantially similar" to his method. *Second*, the claim that these two calculations are "substantially similar" is factually incorrect, and an illustration of the fundamental unfairness of Plaintiffs submitting a "rebuttal report" without giving Google a chance to correct Dr. Mangum's misstatements.[12]

Plaintiffs also attempt to cure Dr. Mangum's failure to provide a fair and reliable allocation method for unjust enrichment damages[13] by arguing that recent discovery has shown that Google

---

[12] In short, there is very little similarity between the two calculations, including because (1) Dr. Mangum attempts to identify revenue for users who do not have sync enabled, and does so in a flawed way; and (2) Google's model is limited to Chrome Incognito traffic, which is explicitly excluded from Dr. Mangum's calculations.

[13] Plaintiffs also argue, in passing and with no support, that the "per user, per month" method of apportionment is sufficient for restitution. (Opp. at 23.) This is contrary to Dr. Mangum's report, which proposes a single restitution number apply across the class. (*See* Mangum Dep. Tr. at 179:11-12; Mangum Rpt. at 35.) Moreover, for all the reasons this allocation method is not appropriate for allocating unjust enrichment damages, it is also not appropriate for allocating restitution damages as it would severely overcompensate some, while undercompensating other Google Account holders in the class and entirely fail to compensate non account holders. (*See* Mot. at 21-22.)

REPLY IN SUPPORT OF MOTION TO STRIKE REPORT OF PLAINTIFFS' DAMAGES EXPERT RUSSELL MANGUM, III, PH.D

tracks revenue on an individual user basis.  (Opp Br. at 24 (citing Shafiq Rebuttal Report at ¶¶ 176-188).  Plaintiffs further claim that the Reply Report of Prof. Shafiq, to which Google does not have an opportunity to respond, allegedly explains how these logs can be used with other systems and computer programs to apportion damages. *Id.*  Dr. Shafiq's convoluted argument misstates the record with impunity because Plaintiffs' submission of this argument for the first time in Reply makes it impossible for Google's experts to respond. In any event, it is a complete departure from Dr. Mangum's original opinion relying on "Google Account Months" (*see* Mangum Rpt. ¶ 64) and therefore supports Google's motion to strike Dr. Mangum's initial methodology as unnecessary and flawed.

As a last resort, Plaintiffs attempt to change the conversation from one about their inability to comport with *Comcast*, to one about Google presenting evidence of "costs, expenses, and other deductions" or having improperly "commingled unauthorized property or profits with lawfully obtained property or profits." (Opp. at 24-25.)  Google will of course offer evidence of costs and expenses as necessary. And the hundred-year-old case law Plaintiffs cite regarding commingled property has nothing to do with class actions or the claims and allegations in this case.  Plaintiffs' position that any of these arguments excuse them from proposing a methodology that calculates damages from the alleged wrongdoing is contrary to the law. *See Doyle v. Chrysler Grp., LLC*, 663 F. App'x 576, 579 (9th Cir. 2016) (damages model fails to satisfy *Comcast* because "[t]here is [] no way to determine whether the proposed damages model measures damages that are solely attributable to the theory of liability."); *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007)  ("It is the proponent of the expert who has the burden of proving admissibility.") (internal quotation marks and citations omitted).

## III.   CONCLUSION

The Court should grant Google's Motion and strike Dr. Mangum's report in its entirety.

DATED:  March 16, 2022

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By      /s/ Andrew H. Schapiro

Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
Teuta Fani (admitted *pro hac vice*)
teutafani@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Diane M. Doolittle (CA Bar No. 142046)
dianedoolittle@quinnemanuel.com
Sara Jenkins (CA Bar No. 230097)
sarajenkins@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Stephen A. Broome (CA Bar No. 314605)
stephenbroome@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
Crystal Nix-Hines (Bar No. 326971)
crystalnixhines@quinnemanuel.com
Alyssa G. Olson (CA Bar No. 305705)
alyolson@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Jomaire A. Crawford (admitted *pro hac vice*)
jomairecrawford@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Case No. 4:20-cv-5146-YGR-SVK
REPLY IN SUPPORT OF MOTION TO STRIKE REPORT OF PLAINTIFFS' DAMAGES EXPERT RUSSELL MANGUM, III, PH.D

Josef Ansorge (admitted *pro hac vice*)
josefansorge@quinnemanuel.com
Xi ("Tracy") Gao (CA Bar No. 326266)
tracygao@quinnemanuel.com
Carl Spilly (admitted *pro hac vice*)
carlspilly@quinnemanuel.com
1300 I Street NW, Suite 900
Washington D.C., 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

*Attorneys for Defendant Google LLC*

REPLY IN SUPPORT OF MOTION TO STRIKE REPORT OF PLAINTIFFS' DAMAGES EXPERT RUSSELL
MANGUM, III, PH.D