| | |
|---|---|
| **BLEICHMAR FONTI & AULD LLP**<br>Lesley Weaver (Cal. Bar No. 191305)<br>555 12th Street, Suite 1600<br>Oakland, CA 94607<br>Tel.: (415) 445-4003<br>*lweaver@bfalaw.com*<br><br>**DiCELLO LEVITT GUTZLER LLC**<br>David A. Straite (admitted *pro hac vice*)<br>One Grand Central Place<br>60 East 42nd Street, Suite 2400<br>New York, New York 10165<br>Tel.: (646) 933-1000<br>*dstraite@dicellolevitt.com*<br><br>Amy E. Keller (admitted *pro hac vice*)<br>Ten North Dearborn Street, 6th Fl.<br>Chicago, Illinois 60602<br>Tel.: (312) 214-7900<br>*akeller@dicellolevitt.com*<br><br>**SIMMONS HANLY CONROY LLC**<br>Jason 'Jay' Barnes (admitted *pro hac vice*)<br>112 Madison Avenue, 7th Floor<br>New York, NY 10016<br>Tel.: (212) 784-6400<br>*jaybarnes@simmonsfirm.com*<br><br>*Counsel for Plaintiffs; additional counsel listed in signature blocks below* | **QUINN EMANUEL URQUHART & SULLIVAN, LLP**<br>Andrew H. Schapiro (admitted *pro hac vice*)<br>andrewschapiro@quinnemanuel.com<br>191 N. Wacker Drive, Suite 2700<br>Chicago, IL 60606<br>Tel: (312) 705-7400<br>Fax: (312) 705-7401<br><br>Stephen A. Broome (CA Bar No. 314605)<br>stephenbroome@quinnemanuel.com<br>Viola Trebicka (CA Bar No. 269526)<br>violatrebicka@quinnemanuel.com<br>865 S. Figueroa Street, 10th Floor<br>Los Angeles, CA 90017<br>Tel: (213) 443-3000<br>Fax: (213) 443-3100<br><br>*Counsel for Defendant; additional counsel listed in signature blocks below* |

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION**

| | |
|---|---|
| PATRICK CALHOUN, *et al.*, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>GOOGLE LLC,<br><br>    Defendant. | Case No. 4:20-cv-5146-YGR-SVK<br><br>**JOINT SUBMISSION RE: CLAWBACK DISPUTE (Dispute 1.34)**<br><br><br>Referral:  Hon. Susan van Keulen, USMJ |

February 25, 2022

**Submitted via ECF**

Magistrate Judge Susan van Keulen
San Jose Courthouse
Courtroom 6 - 4th Floor
280 South 1st Street
San Jose, CA 95113

    Re:    Joint Submission re: Dispute 1.34 Clawback Dispute
                 *Calhoun v. Google LLC*, Case No. 4:20-cv-5146-YGR-SVK (N.D. Cal.)

Dear Magistrate Judge van Keulen:

        Pursuant to Your Honor's March 15, 2022 Order (Dkt. 565-1), Plaintiffs and Google LLC ("Google") jointly submit this briefing on dispute 1.34 regarding Google's claw back of three documents – GOOG-CABR-00122624, GOOG-CABR-0014288, GOOG-CABR-04340991 – in their entirety. The unredacted documents are submitted with this joint statement for the Court's *in camera* review. Pursuant to section 3.B the Stipulated Order regarding Fed. R. Evid. 502(d), the Parties may use the content of the documents at issue to brief this submission (Dkt. 103).

**Plaintiffs' Position**

Google seeks to claw back three documents: GOOG-CABR-00122623, GOOG-CABR-04340991, and GOOG-CABR-0014288. The first two documents are drafts of the Google Privacy Policy, which is central to many claims and defenses in this case. Likewise, the third document, GOOG-CABR-0014288, is a mock-up of a user interface that illustrates consent flow, an issue that goes to the heart of Google's consent defense. Google asserts attorney-client privilege over these documents, in their entirety. But on their face, these documents were not created for the provision of legal advice. Rather, the documents are accessible to an undisclosed group of individuals who can make comments and edits to the document at will. In asserting privilege, Google argues, in effect, that the presence of some comments from individuals in Google's legal department, irrespective of content and context, renders the *entire* document privileged. Google is wrong on the law and the facts. The evidence initially proffered by Google – merely identifying the presence of employees in Google's legal department[1] and relying on previously submitted declarations in the related *Brown* case[2] – failed to satisfy Google's burden of establishing privilege. And Google's new declarations, provided for the first time in the course of this briefing, do not change the outcome. Google's claw backs are improper, and the documents should be produced.

The attorney-client privilege extends to communications between an attorney and their client made in confidence for the purpose of securing legal advice from the lawyer. *U.S. v. Chen,* 99 F.3d 1495, 1501 (9th Cir.1996). The privilege does not protect an attorney's business advice. *See, e.g. In re Micropro Securities Litig.*, 1988 WL 109973, at *1 (N.D. Cal. Feb. 26, 1988). Notably, a communication with in-house counsel "warrants heightened scrutiny" because "[i]n-house counsel may act as integral players in a company's business decisions or activities, as well as legal matters." *Oracle Am., Inc. v. Google, Inc.*, 2011 WL 3794892, at *4 (N.D. Cal. Aug. 26, 2011). "When a communication may relate to both legal and business advice, the proponent of the privilege must make a *clear showing* that the primary purpose of the communication was securing legal advice." *Dolby Laboratories Licensing Corp. v. Adobe Inc.*, 402 F. Supp. 3d 855, 873 (N.D. Cal. 2019) (emphasis added) (citations omitted). The burden of proving that privilege applies lies with the party asserting the privilege and, even if established, privilege is to be strictly construed. *See Weil v. Investment/Indicators Research & Mgmt.,* 647 F.2d 18, 24-25 (9th Cir. 1981).

Here, GOOG-CABR-00122623 and GOOG-CABR-04340991 are drafts of Google's

---

[1] For the Court's reference, the comment author list is provided with the *in camera* documents. In this list, Google identifies Liz Palley, Noelle Luiten, Cary Bassin, Troy Sauro, and Will DeVries as "Google Legal Department or Law Firm representing Google." There are at least twelve other non-attorney Google employees identified as commenters on these documents. The documents are submitted for *in camera* review pursuant to Section 3(B)(ii) of the Stipulated 502(d) Order (Dkt.103).

[2] During meet and confers, Plaintiffs requested the foundational bases for Google's privilege arguments, as well as identification of individuals with access to the documents and identification of the comment authors. In response, Google produced the list of comment authors and argued that declarations provided in *Brown*, by Google in-house counsel Jessica Gan Lee and Leslie Liu (*Brown,* Dkts. 290-1 and 290-2), were sufficient to provide the foundational requirements for privilege. But neither of these attorneys have any role in the documents at issue here, nor is there any overlap in context and substance. The clawback dispute in *Brown* related to a *narrow subset* of redactions, whereas here Google seeks to claw back entire drafts of the Google Privacy Policy and mock-up of a user interface, refusing to consider more narrowed and measured approach.

1  Privacy Policy. In clawing back these documents, Google asserts privilege over the entire document based on a handful of purportedly privileged comments from counsel and non-attorneys. But the
2  mere presence of counsel does not render a document privilege. *See U.S. v. Chevron Texaco Corp.*, 241 F. Supp. 2d 1065, 1076 (N.D. Cal. 2002) (there is no presumption of privilege for
3  communications with in-house counsel). Moreover, Google's assertion that these documents "were prepared *expressly* 'for the purpose of obtaining legal advice'" (emphasis added) is belied by the
4  declarations of its own legal counsel. Nowhere in these declarations does it state that the documents were prepared expressly for the purpose of obtaining legal advice. Rather, the declarations explain
5  that, consistent with Google's business practices, the documents were placed in Google Docs, a web-based program that allows multiple people, including non-attorneys to work on a document at
6  any given time. *See* Palley Decl. ¶ 4; Luiten Decl. ¶3.
7  
   A review of the comments at issue show that for the vast majority of the comments no legal
8  advice was sought or received. For GOOG-CABR-00122623, Google argues that comments from Liz Palley shields the entire document from disclosure. But the majority of the comments attributed
9  to Ms. Palley do not respond to legal related request nor provide legal advice. To the contrary, most of her comments are editorial in nature and fall in the vein of business advice. For example, Ms.
10 Palley ███████████████████████████ (Comment 4), ███████████████████████
11 ███████████████ (Comment 5), ███████████████████████ (Comment 7), and
12 ███████████████████████████████████████████████████████████ " (Comment
13 12). *See also* Comment 14 (███████████████████████████████████████ Comment 15
   (█████████████████████ Comment 60 █████████████████████████
14 ████████████; Comment 61 ████████████████████████████████████ Ms. Palley
   also makes factual assertions which are not privileged. *See, e.g.* Comment 16
15 ████████████████████; Comment 71 ███████████████████████████████████████
   ████████████████████████████████ Comment 83 █████████████████████
16 ████████████████████████████████████; *In re Micropro Securities Litig.*,
17 1988 WL 109973 at 2 (N.D. Cal. Feb. 26, 1988) (attorney-client privilege does not extend to communications consisting of factual information); *accord QinetiQ Ltd. v. Samsung Telecomms.*
18 *Am. L.P.*, 2004 WL 7330941, at *6 (E.D. Tex. Aug. 12, 2004) (sentences that reflect in-house counsel's awareness of particular facts are not privileged).
19
   Likewise, for GOOG-CABR-04340991, Google asserts privilege on the basis of comments
20 from Ms. Palley, Cary Bassin, Troy Sauro, and Will DeVries. But many of the comments at issue do not convey legal advice, but are rather editorial and business in nature. *See, e.g.*, comment 10
21 ████████████████████████████████ comment 16 █████████████████████████████.
22 The last document, GOOG-CABR-0014288, is a mock-up of a user interface screen. On its face, it conveys factual specifications and display of a user consent screen. This factual content is
23 not subject to privilege. *See In re Micropro Securities Litig.*, *supra*. Contrary to Google's assertions, nowhere on the face of the document is the title "Legal Review," and there is no indication of any
24 redlines, let along ones attributed to an attorney. Insofar as the document contains commentary, Google provides no explanation as to why  narrowed redactions would not suffice.
25
   Notably, for GOOG-CABR-04340991 and GOOG-CABR-0014288, many of the comments
26 are cut-off making it impossible to discern the true context of the discussions. This underscores the perfunctory nature of Google's privilege assertion; Google is basing privilege merely on the
27 presence of in-house counsel, without regard to the full nature of the comments on which its
28 privilege assertion is based.

It bears noting that Google's abuse of the privilege designation is currently the subject of sanctions briefing in *U.S. v. Google, LLC*, 1:20-cv-03010-APM, Dkt. 326-1 (D.D.C. Mar. 21, 2022). There, the United States Department of Justice has discovered (and the D.D.C. just this week unsealed) that Google has an internal secret program called "Communicate with Care" where employees go through training designed to teach them how to fake the indicia of privilege, including adding attorneys to sensitive communications solely to improperly keep the document from being discoverable. This newly revealed secret program is unprecedented and Google's deficient privilege claims in this case should be considered in light of this deceptive practice.

Simply put, Google has not made a "*clear showing* that the primary purpose of the[se] communication[s] was securing legal advice." *Dolby Laboratories*, 402 F. Supp. 3d at 873 (emphasis added) (citations omitted); *see also In re Google Inc.*, 462 F. App'x 975, 978 (Fed. Cir. 2012) (holding Google failed to demonstrate the purpose of the communication was for the provision of legal advice). And, even if it had, Google's attempt to claw back the entire documents is improper. The documents undeniably contain nonprivileged information, such as factual information and communications between non-attorneys. Accordingly, claw back of the entire documents, without regard for narrowed redactions, is improper. *See Staley v Gilead Scis., Inc.*, 2021 WL 2416993, at *2 (N.D. Cal. Jun. 14, 2021) ("'[b]ecause it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed'") (quoting *U.S. v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002)). Plaintiffs request that the documents at issue be produced.

### Google's Position

Plaintiffs' privilege challenges are baseless. "The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). The three documents at issue here easily meet this standard. The first two documents (GOOG-CABR-04340991 and GOOG-CABR-00122623) are drafts of Google's privacy policy, prepared by in-house counsel with the assistance of non-attorneys acting at her direction, with extensive attorney comments and revisions providing and reflecting legal advice. The third document (GOOG-CABR-00142888) is a series of draft user notifications, which was also sent for counsel's legal review with extensive comments and revisions from a Google attorney included in the document, along with requests from non-attorneys for counsel's legal advice.

Plaintiffs' passing reference to unfounded and unadjudicated accusations the DOJ has made against Google in an unrelated case does not help their argument. Google takes its disclosure obligations seriously and employs an entire team of lawyers dedicated to fulfilling those obligations faithfully—often producing many documents that non-lawyers at Google believed were privileged and marked as such. In this and every case, Google withholds documents for privilege only if, after a rigorous review, the facts indicate that the document is in fact privileged, as it has for each of the three documents discussed below.

Plaintiffs' description of the parties' meet and confers is incorrect. Google's counsel informed Plaintiffs many times over the span of multiple months that the documents at issue were prepared at the direction of counsel, include counsel's legal advice, and are obviously privileged. Google provided docket numbers from the declarations submitted in the *Brown* litigation and informed Plaintiffs that it would submit similar declarations if they proceeded with challenging these documents, which Google is submitting with this brief. *See* E. Palley Decl.; N. Luiten Decl. Those declarations echo what Google's counsel has been telling Plaintiffs about these documents

for months.  Google further objects to Plaintiffs' submission of Google's privileged documents for *in camera* review without its consent or authorization from the Court.  *See, e.g.*, *Brown* Sept. 30, 2021 Hrg. Tr. 30:5–11 (*in camera* review is a "last resort"); *In re Grand Jury Investigation*, 974 F.2d 1068, 1073 (9th Cir. 1992) (initial evidentiary showing required before *in camera* review).  Google repeatedly requested that Plaintiffs not furnish its documents with this submission, to no avail.

### GOOG-CABR-04340991 and GOOG-CABR-00122623

Plaintiffs attempt to cast GOOG-CABR-04340991 and GOOG-CABR-00122623 as mere business documents on which counsel were incidentally included.  Not so.  Both documents were prepared at the express direction of Google in-house attorneys, and they contain numerous comments and redlines reflecting and containing counsel's legal advice.

GOOG-CABR-04340991 is a draft of a section of Google's Privacy Policy that reflects (i) redlines of the Privacy Policy prepared by Google in-house attorneys and non-attorneys at the request and direction of counsel, Palley Decl. ¶¶ 6–7; *United States v. Rite Aid Corp.*, 2021 WL 1196250, at *11 (E.D. Cal. Mar. 30, 2021) (draft that "includes counsel's redline edits and proposed modifications . . . . reflects counsel's impressions and advice regarding the potential agreement and is therefore privileged."); (ii) historical drafts of the policy that reflect changes to the policy that incorporate these redlines, Palley Decl. ¶ 7; *see Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 2019 WL 1950381, at *2 (N.D. Cal. May 1, 2019) ("The privilege extends to versions of electronic communications and preliminary drafts of communicated documents.") (citation omitted); and (iii) 92 comments authored by Google in-house counsel Liz Eraker Palley, additional comments from Google in-house attorneys Cary Bassin, Troy Sauro, and Will DeVries, and comments from non-attorneys that were prepared at the request of counsel, Palley Decl. ¶¶ 6–7; *Chattler v. United States*, 2009 WL 1313227, at *4 (N.D. Cal. May 12, 2009) ("track-changes draft with legal comments made directly in draft" is "protected by the attorney-client privilege").  These edits and comments are obviously privileged, as is the draft itself.  *See In re Banc of California Sec. Litig.*, 2018 WL 6167907, at *2 (C.D. Cal. Nov. 26, 2018) ("When a client sends a draft disclosure document to an attorney for comment or input, the attorney-client privilege attaches to the draft and remains intact even after the final document is disclosed.").  The communications among non-attorneys are likewise protected.  *See Brown* Oct. 27, 2021 Hearing Tr. 9:12–19 (non-attorneys' contributions are protected from disclosure where they reflect "non-lawyers transmitting legal advice, sharing legal advice, acting on legal advice that is reflected in a document" because "as we know from the . . . Ninth Circuit, transmitting legal advice, sharing it, discussing it, even without the lawyer, is still within the coverage of attorney-client privilege.").

GOOG-CABR-00122623 is also a draft of a section of Google's Privacy Policy that reflects (i) redlines prepared by Google in-house attorneys and non-attorneys at the request and direction of counsel, Palley Decl. ¶¶ 9–10; (ii) historical drafts of the policy that show edits by Google in-house counsel and non-attorneys implemented at the request of in-house counsel, Palley Decl. ¶ 10; and (iii) 32 comments authored by Google in-house counsel Liz Eraker Palley, along with comments from Google non-attorneys acting at her direction, Palley Decl. ¶ 9.  Like GOOG-CABR-04340991, Ms. Palley's edits of the privacy policy are plainly privileged, as is the draft itself.  Plaintiffs' challenge of this document should be denied for the same reasons as GOOG-CABR-04340991.

Plaintiffs suggest that the drafts are not privileged because Google's attorneys offer "editorial" and "factual" comments as well as legal advice, but this misrepresents the facts and the law.  First, the documents as a whole—including the attorney edits and comments contained therein—were prepared expressly "for the purpose of obtaining legal advice." *United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002); Palley Decl. ¶¶ 5–10.  Second, what Plaintiffs characterize as "editorial" or "business" advice is directly related to Google's legal obligations.  Where, as here, the underlying document will create binding agreements with Google's users, precise phrasing has a dramatic effect on Google's legal obligations—as the instant lawsuit clearly demonstrates.  And in this case, Google's in-house counsel was specifically tasked with ensuring that the statements contained in the draft policy complied with regulatory and legal requirements, including the requirement imposed by the European Union General Data Protection Regulation (GDPR) Article 12 that information regarding user data is disclosed "in a concise, transparent, intelligible and easily accessible form, using clear and plain language".  Palley Decl. ¶¶ 6, 9.  Further, even if some of the advice were non-legal, a privileged document does not lose its protection simply because an attorney provides both legal and non-legal advice on the same draft, as long as the predominant purpose of the consultation was to seek legal advice.  *See, e.g.*, *Shenwick v. Twitter, Inc.*, 2018 WL 5750119, at *2 (N.D. Cal. 2018) (privilege applies to "'dual purpose' communications, where documents are related to a business purpose and serve a legal purpose" as long as "the primary or predominant purpose of the attorney-client consultation is to seek legal advice or assistance"); *Chattler v. United States*, 2009 WL 1313227, at *3 (attorney's comments "on general substance of draft memo" are "covered by the attorney-client privilege").  The predominant purpose of the consultation here was precisely to seek legal advice. Palley Decl. ¶ 11.

Plaintiffs' further suggestion that these documents should be produced because they are "central to many claims and defenses in this case" is equally misplaced, as it is well settled that "it doesn't matter how key the issues are, if the communication is privileged, that is, between client and attorney, then it is privileged." *Brown* Oct. 27, 2021 Hearing Tr. 6:24–7:1.  Plaintiffs' challenge should be denied.

**GOOG-CABR-00142888**

GOOG-CABR-00142888 is a set of draft user notifications that (i) was prepared in order to facilitate the provision of legal advice by Google in-house counsel Noelle Kvasnosky Luiten (as indicated by the title of the document, which was included in metadata produced to Plaintiffs and contains the words "Legal Review"), Luiten Decl. ¶¶ 5–7; and (ii) contains Google in-house counsel Noelle Kvasnosky Luiten's redlines and edits, along with 14 comments from Ms. Luiten and comments from non-attorneys directed to Ms. Luiten (also included in metadata produced to Plaintiffs), which seek, discuss, and respond to her legal advice, *id.*; *see also, e.g.*, *Rite Aid Corp.*, 2021 WL 1196250, at *11; *Chattler*, 2009 WL 1313227, at *4; *Wit v. United Behav. Health*, 2016 WL 258604, at *8 (N.D. Cal. Jan. 21, 2016) ("Dr. Triana provided a draft of the memorandum to counsel in order to receive legal advice and . . . the memorandum that was circulated contained the legal advice he received from counsel. The Court concludes that UBH has sufficiently demonstrated that the Triana Memorandum transmits legal advice (and not business advice, as Plaintiffs contend) that was sought and obtained from in-house counsel and therefore, under the authority cited above, that the document falls within the ambit of attorney-client privilege.").  Plaintiffs' challenge should be denied.

Respectfully,

| | |
|---|---|
| **BLEICHMAR FONTI & AULD LLP** | **QUINN EMANUEL URQUHART & SULLIVAN, LLP** |
| By: /s/ Lesley Weaver | By: /s/ Andrew H. Schapiro |
| Lesley Weaver (Cal. Bar No. 191305) | Andrew H. Schapiro (admitted *pro hac vice*) |
| Angelica M. Ornelas (Cal. Bar No. 285929) | andrewschapiro@quinnemanuel.com |
| Joshua D. Samra (Cal. Bar No. 313050) | 191 N. Wacker Drive, Suite 2700 |
| 555 12th Street, Suite 1600 | Chicago, IL 60606 |
| Oakland, CA 94607 | Tel: (312) 705-7400 |
| Tel.: (415) 445-4003 | Fax: (312) 705-7401 |
| Fax: (415) 445-4020 | |
| *lweaver@bfalaw.com* | Stephen A. Broome (CA Bar No. 314605) |
| *aornelas@bfalaw.com* | stephenbroome@quinnemanuel.com |
| *jsamra@bfalaw.com* | Viola Trebicka (CA Bar No. 269526) |
| | violatrebicka@quinnemanuel.com |
| **DICELLO LEVITT GUTZLER** | 865 S. Figueroa Street, 10th Floor |
| | Los Angeles, CA 90017 |
| By: /s/ David A. Straite | Tel: (213) 443-3000 |
| David A. Straite (admitted *pro hac vice*) | Fax: (213) 443-3100 |
| One Grand Central Place | |
| 60 East 42nd Street, Suite 2400 | Jomaire Crawford (admitted *pro hac vice*) |
| New York, New York 10165 | jomairecrawford@quinnemanuel.com |
| Tel.: (646) 933-1000 | 51 Madison Avenue, 22nd Floor |
| *dstraite@dicellolevitt.com* | New York, NY 10010 |
| | Tel: (212) 849-7000 |
| Amy E. Keller (admitted *pro hac vice*) | Fax: (212) 849-7100 |
| Adam Prom (admitted *pro hac vice*) | |
| Sharon Cruz (admitted *pro hac vice*) | Josef Ansorge (admitted *pro hac vice*) |
| Ten North Dearborn Street, 6th Fl. | josefansorge@quinnemanuel.com |
| Chicago, Illinois 60602 | 1300 I Street NW, Suite 900 |
| Tel.: (312) 214-7900 | Washington D.C., 20005 |
| *akeller@dicellolevitt.com* | Tel: (202) 538-8000 |
| *aprom@dicellolevitt.com* | Fax: (202) 538-8100 |
| *scruz@dicellolevitt.com* | |
| | Jonathan Tse (CA Bar No. 305468) |
| **SIMMONS HANLY CONROY LLC** | jonathantse@quinnemanuel.com |
| | 50 California Street, 22nd Floor |
| By: /s/ Jay Barnes | San Francisco, CA 94111 |
| Jason 'Jay' Barnes (admitted *pro hac vice*) | Tel: (415) 875-6600 |
| An Truong (admitted *pro hac vice*) | Fax: (415) 875-6700 |
| Eric Johnson (admitted *pro hac vice*) | |
| 112 Madison Avenue, 7th Floor | *Counsel for Defendant* |
| New York, NY 10016 | |
| Tel.: (212) 784-6400 | |
| Fax: (212) 213-5949 | |
| *jaybarnes@simmonsfirm.com* | |
| *atruong@simmonsfirm.com* | |
| *ejohnson@simmonsfirm.com* | |
| *Counsel for Plaintiffs* | |

**ATTESTATION OF CONCURRENCE**

I am the ECF user whose ID and password are being used to file this Joint Submission. Pursuant to Civil L.R. 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in the filing of this document.

Dated: March 24, 2022                                    By: */s/ Jay Barnes*
                                                            Jay Barnes

                                                        *Counsel for Plaintiffs*

9                                    Case No. 4:20-cv-5146-YGR-SVK
                                     JOINT SUBMISSION RE: DISPUTE 1.34