QUINN EMANUEL URQUHART & SULLIVAN, LLP

Diane M. Doolittle (CA Bar No. 142046)
dianedoolittle@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Stephen A. Broome (CA Bar No. 314605)
stephenbroome@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Josef Ansorge (admitted *pro hac vice*)
josefansorge@quinnemanuel.com
Carl Spilly (admitted *pro hac vice*)
carlspilly@quinnemanuel.com
1300 I. Street, N.W., Suite 900
Washington, D.C. 20005
Telephone: 202-538-8000
Facsimile: 202-538-8100

Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Jomaire A. Crawford (admitted *pro hac vice*)
jomairecrawford@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

*Attorneys for Defendant Google LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| PATRICK CALHOUN, *et al.*, on behalf of themselves and all others similarly situated,<br>    Plaintiffs,<br><br>       v.<br><br>GOOGLE LLC,<br>    Defendant. | Case No. 4:20-cv-5146-YGR-SVK<br><br>**GOOGLE LLC'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE WHY IT SHOULD NOT BE SANCTIONED**<br><br>The Hon. Susan van Keulen |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................................1

II. BACKGROUND .................................................................................................................2

III. LEGAL STANDARD ..........................................................................................................5

IV. GOOGLE'S GOOD FAITH ATTEMPT TO ENFORCE THE COURT'S
PROTECTIVE ORDER IS NOT A BASIS FOR SANCTIONS .........................................6

    A. Google's Consultation with EY Was Substantially Justified .................................6

    B. Google Acted in Good Faith and Caused No Harm to Plaintiffs ............................8

V. CONCLUSION ....................................................................................................................9

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Apple iPod iTunes Antitrust Litig.*,
 2011 WL 13202278 (N.D. Cal. May 6, 2011) ................................................................. 5

*Cf. Rojas v. Bosch Solar Energy Corp.*,
 2020 WL 8617414 (N.D. Cal. Aug. 28, 2020) ................................................................ 8

*Cunha v. Chico Produce, Inc.*,
 2018 WL 11348748 (N.D. Cal. Sep. 5, 2018) ................................................................. 7

*Cuviello v. Feld Ent. Inc.*,
 2015 WL 877688 (N.D. Cal. Feb. 27, 2015) ................................................................... 9

*Del Campo v. Am. Corrective Counseling Servs., Inc.*,
 2010 WL 4696558 (N.D. Cal. Nov. 9, 2010) .................................................................. 5

*Fink v. Gomez*,
 239 F.3d 989 (9th Cir. 2001) .......................................................................................... 6

*General Electric Co. v. United States*,
 119 F. Supp. 3d 17 (D. Conn. 2015) ............................................................................... 7

*Glass Egg Digital Media v. Gameloft, Inc.*,
 2019 WL 5720731 (N.D. Cal. Nov. 5, 2019) .................................................................. 5

*GoPro, Inc. v. 360Heros, Inc.*,
 291 F. Supp. 3d 1060 (N.D. Cal. 2017) .......................................................................... 8

*Hyde & Drath v. Baker*,
 24 F.3d 1162 (9th Cir. 1994) .......................................................................................... 6

*Mollica v. County of Sacramento*,
 2022 WL 317004 (E.D. Cal. Feb. 2, 2022) ..................................................................... 8

*In re NCAA Student-Athlete Name & Likeness Licensing Litig.*,
 2012 WL 5372477 ........................................................................................................... 9

*Perez v. Wells Fargo Bank, N.A.*,
 2019 WL 289831 (N.D. Cal. 2019) ................................................................................ 6

*Pierce v. Underwood*,
 487 U.S. 552 (1988) ........................................................................................................ 5

*Sanchez v. County of Sacramento*,
 2022 WL 866057 (E.D. Cal. Mar. 23, 2022) .................................................................. 8

*Surgical Techniques, Inc. v. Olympus Am., Inc.*,
 2014 WL 1095591 (N.D. Cal. Mar. 14, 2014) ................................................................ 5

*Toppan Photomasks, Inc. v. Park*,
 2014 WL 2567914 (N.D. Cal. May 29, 2014) ................................................................ 9

-ii-     Case No. 4:20-cv-5146-YGR-SVK
GOOGLE LLC'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE
WHY IT SHOULD NOT BE SANCTIONED

*Uschold v. Carriage Servs., Inc.*,
  2019 WL 1975433 (N.D. Cal. Mar. 15, 2019) ................................................................. 5

*Uschold v. Carriage Servs., Inc.*,
  2019 WL 8275629 (N.D. Cal. Oct. 11, 2019) ................................................................... 7

*Vinteractive, LLC v. Optirev, LLC*,
  2016 WL 3361810 (N.D. Cal. June 17, 2016) .................................................................. 8

**Rules and Regulations**

Fed. R. Civ. P. 37 ................................................................................................................. 6, 9

Fed. R. Civ. P. 37(a)(5)(A) ..................................................................................................... 2, 5

Fed. R. Civ. P. 37(b)(2)(C) ..................................................................................................... 2, 5

## I.   INTRODUCTION

The Court has ordered Google to show cause why it should not be sanctioned for its relevance review of nonparty Ernst & Young LLP's ("EY") documents prior to production. Google respectfully submits that such conduct is not sanctionable because it was substantially justified under the circumstances: Google was attempting to bring EY's production in line with the Court's November 16, 2021 order granting in part Google's motion for a protective order regarding Plaintiff's overreaching third-party subpoena to Google's auditor (the "EY Protective Order"). Nothing in Google's conduct reflects a bad-faith effort to undermine or otherwise obstruct the production of responsive documents to Plaintiffs.

On November 16, 2021, the Court ruled on Google's motion for a protective order on Plaintiffs' subpoena to EY. The Court granted it in part, and ordered EY to produce documents in response to five of Plaintiffs' RFPs concerning a narrow topic: valuation of Google's user data. *See* Dkt. 380. EY identified two sets of workpapers it determined to be responsive and sought help from Plaintiffs (not Google) in crafting searches tailored to identify any responsive emails. Plaintiffs refused to assist, so nonparty EY crafted search terms that, as even a cursory review confirms, were far broader than the terms ordered or agreed to for party discovery. EY conducted an unguided responsiveness review, resulting in a production containing thousands of documents far beyond the scope of what this Court ordered to be produced. Recognizing that these documents could implicate Google's highly sensitive and confidential business information, EY allowed Google the opportunity to review the documents prior to production. Google did so believing that its approach was fully consistent with prior legal authority that allowed a party to conduct a relevance review of documents to be produced by its nonparty insurer and legal advisor. EY chose to respect Google's recommendations concerning relevance, as a party to the litigation, and the dispute resulting in the EY Protective Order.

This process was transparent. EY and Google made no attempt to hide Google's involvement *or* EY's decision to withhold certain documents from production on the basis of relevance. Plaintiffs were aware of Google's review since December 2021, yet chose not to bring this issue to the Court until February 25, 2022, a week before the close of fact discovery. Moreover, Plaintiffs have since

confirmed that *none* of the initially withheld documents pertains to valuation of Google's user data—the narrow topic the EY Protective Order allowed. On March 18, 2022, the Court ordered Plaintiffs "to identify any valuation by [EY] of information collected from users" "based on the E&Y production" by March 31, 2022. Dkt. 579-2 at 20 (Order on RFP 126). March 31 has come and gone, and Plaintiffs have (correctly) identified no such documents. Declaration of Jonathan Tse ("Tse Decl.") ¶ 3. This further confirms that Google's relevance determinations were proper and made in good faith.

Regardless, with the benefit of hindsight, Google should have sought guidance from the Court as soon as it realized that EY had identified such a large number of nonresponsive documents. That it did not was a misjudgment, but not a sanctionable one. Under Federal Rule of Civil Procedure 37, a party is not subject to sanction where its conduct was "substantially justified" or "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A) & (b)(2)(C). Google was attempting only to align the production of documents in EY's possession that contained Google's highly sensitive and confidential information with the scope of the EY Protective Order. In doing so, it did not withhold *a single document* that it believed the EY Protective Order directed EY to produce. On the contrary—Google went out of its way to identify additional documents using underlying agreements for the sake of completion. Following the Court's order compelling production, Google moved rapidly to remedy its mistake. Sanctions under these circumstances would be unjust.

## II.   BACKGROUND

On September 28, 2021, Plaintiffs served on EY a subpoena incorporating ten requests for production seeking a wide variety of documents relating to EY's valuation of Google's user data in its role as Google's financial auditor and other audits or investigations of Google by EY and other third parties. Dkt. 541-1 ¶ 2. Plaintiffs' requests were overbroad, so Google moved for a protective order, and the parties submitted joint briefing on October 10, 2021. Dkt. 352. The Court granted in part Google's requested relief, striking Plaintiffs' overbroad requests but ordering EY to produce documents related to valuation of user data that would not otherwise be in Google's possession, custody, or control. Dkt. 380.

In EY's own words, "EY is not a party to this case and does not have the benefit of the history regarding the parties' discussions with each other and this Court." Dkt. 543. With no input from any party involved in the discovery process, counsel for EY identified workpapers it believed to be potentially responsive. But in its efforts to comply with the Court's November 16 order, EY asked *Plaintiffs'* assistance in preparing search terms to identify responsive emails. Dkt. 543. Plaintiffs refused. Instead of helping EY craft tailored terms like those the Court has ordered in the past (often at Plaintiffs' own request), *see*, *e.g.*, Dkt. 287-1 at Terms 2, 14, 21 (adopting Plaintiffs' proposed search terms over Google's competing proposals), Plaintiffs left EY to run broad and ill-fitting searches entirely on its own. Not surprisingly, EY's process arrived at far less targeted terms than those the Parties themselves have agreed or been ordered to run. *See* Dkt. 541 at 3. EY performed a review that was limited to a "good-faith determination as a non-party to this case" as to what documents "*appeared* responsive." Dkt. 543 (emphasis added). EY recognized it had identified documents containing Google's highly sensitive and confidential information. Dkt. 543 at 1 (explaining that "the documents contain Google's proprietary data and the parties to this case are better positioned to address issues regarding responsiveness and relevance"). Accordingly, EY "authorized Google to review documents it identified containing Google's own highly sensitive and confidential information for responsiveness and privilege." Dkt. 541-1 ¶ 4.

Unlike EY, Google and its counsel have been intimately involved in the substantial give-and-take of this case's highly complex discovery process—including numerous orders resolving fine-bore disputes about what *is* and *is not* properly within the scope of discovery. Google's outside counsel thus determined that many documents EY had identified for production were not responsive to the requests to which the Court had ordered EY to respond. *See* Dkt. 541-1 ¶ 5. Google's counsel provided its views on the responsiveness of the documents to EY's counsel to assist its compliance with the EY Protective Order while protecting Google's highly confidential and non-responsive documents from overproduction.

To be clear, Google did *not* instruct EY to withhold documents. EY confirmed during the motion to compel briefing that it "did not, as Plaintiffs' Motion suggests, choose to follow Google's request over the Court's order." Dkt. 543. Google respects EY's status as an independent auditor.

Rather, nonparty EY decided to follow the advice of a party in providing an appropriate production to Plaintiffs' requests in accordance with the EY Protective Order.

Throughout the process, Google was entirely transparent. Google and EY made no effort to obscure Google's responsiveness review of EY's documents, nor that EY had withheld documents after considering Google's determinations. Indeed, EY produced slipsheets for each document EY had identified for production and Google recommended withholding, stating: "Withheld at the Request of Google's Counsel for Non-Relevance." Dkt. 541-1 ¶ 4. Plaintiffs have been fully aware of Google's responsiveness review since at least EY's first production on December 7, 2021. *Id.* Google further described its review when the parties met and conferred on December 23, 2021, at which point Plaintiffs declared an impasse but took no further action. *Id.* ¶¶ 9–10.

Further underscoring its good faith, Google also affirmatively *helped* in identifying and producing responsive documents to Plaintiffs. Recognizing that certain agreement amendments EY identified may have underlying agreements with responsive terms or be subject to notice obligations to third parties, Google, on its own initiative, shouldered the burden of (i) locating and consulting underlying third-party agreements in its *own* possession, (ii) determining that they rendered 70 additional documents responsive, (iii) identifying any disclosure notice obligations, and (iv) undertaking all correspondence to comply with such notice obligations. Google completed this independent investigation and informed EY of the 70 documents on February 10, 2022. Dkt. 541-1 ¶ 7, 11. Again respecting Google's advice, EY produced those documents to Plaintiffs on February 25, 2022. *Id.* ¶ 11.

On March 4, 2022, the final day of fact discovery and nearly three months after Google disclosed its good-faith review, Plaintiffs moved to compel EY to produce all documents it initially identified in response to Plaintiffs' requests for production. Dkt. 533. Google opposed the motion, Dkt. 541, and EY submitted a response correcting certain of Plaintiffs' mischaracterizations. Dkt. 543. On March 14, this Court granted Plaintiffs' motion to compel (Dkt. 558), Google provided EY with a copy of that decision (Dkt. 561), and EY produced the requested documents to Plaintiffs within 48 hours. Dkt. 568. The Court's March 14 decision further ordered Google to show cause

why it should not be sanctioned in the form of an order to pay Plaintiffs' attorneys fees and costs associated with its motion to compel.

### III.    LEGAL STANDARD

Federal Rule of Civil Procedure 37(a)(5)(A) provides that a party whose conduct necessitated a successful motion to compel must, after an opportunity to be heard, pay the movant's expenses incurred in making the motion, "but [that] *the court must not order this payment* if," in relevant part, "the opposing party's nondisclosure, response, or objection was substantially justified" or "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A) (emphasis added). The analysis is the same under Rule 37(b)(2)(C), which applies when a party has failed to obey an order to provide or permit discovery. Under that rule, too, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

As to the first factor, "[a] discovery request is 'substantially justified' if reasonable people could differ on the matter in dispute." *Glass Egg Digital Media v. Gameloft, Inc.*, 2019 WL 5720731, at *3 (N.D. Cal. Nov. 5, 2019) (Illman, Mag. J.); *see also Uschold v. Carriage Servs., Inc.*, 2019 WL 1975433 (N.D. Cal. Mar. 15, 2019) (Laporte, Mag. J.). "Substantially justified" has "never been described as meaning 'justified to a high degree,' but rather has been said to be satisfied if there is a 'genuine dispute.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). A party's conduct may be substantially justified if, for example, it was taken to avoid unnecessary expense, *Apple iPod iTunes Antitrust Litig.*, 2011 WL 13202278, at *1 (N.D. Cal. May 6, 2011) (delay in production substantially justified while Apple sought less expensive means of obtaining data), to avoid unnecessary disclosure, *Del Campo v. Am. Corrective Counseling Servs., Inc.*, 2010 WL 4696558, at *2 (N.D. Cal. Nov. 9, 2010) (incomplete interrogatory response "substantially justified" where, *e.g.*, information withheld "[o]n privacy grounds"), or included some but not all discoverable material, *Surgical Techniques, Inc. v. Olympus Am., Inc.*, 2014 WL 1095591, at *4 (N.D. Cal. Mar. 14, 2014) (insufficient contentions "substantially justified" where party had not "failed to serve any contentions by the deadline").

As to the second factor, "good or bad faith may be a consideration in determining whether imposition of sanctions would be unjust." *Hyde & Drath v. Baker*, 24 F.3d 1162, 1171 (9th Cir. 1994). Applying these factors, courts in this district have declined to apply sanctions where a losing party's "interpretation . . . was not wholly untenable." *Perez v. Wells Fargo Bank, N.A.*, 2019 WL 289831, at *1 (N.D. Cal. 2019) (Laporte, Mag. J.).

A court may also use its inherent power to "levy fee-based sanctions when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, delaying or disrupting litigation, or has taken actions in the litigation for an improper purpose." *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001). Such a finding of bad faith is essential, and mere recklessness—in the absence of "frivolousness, harassment, or an improper purpose"—cannot justify sanctions under the Court's inherent power. *Id.* at 991–94.

## IV. GOOGLE'S GOOD FAITH ATTEMPT TO ENFORCE THE COURT'S PROTECTIVE ORDER IS NOT A BASIS FOR SANCTIONS

### A. Google's Consultation with EY Was Substantially Justified

In hindsight, Google recognizes it should have approached the issue differently. Faced with EY's impending production of entirely irrelevant and non-responsive documents reflecting Google's confidential business information, it should have alerted the Court to the necessity of a process that would ensure proper compliance with the EY Protective Order. Nonetheless, Google's conduct was substantially justified under the test for Rule 37, particularly because Plaintiffs' strategic refusal to assist EY in tailoring its search to their requests resulted in EY's attempting to produce Google's highly sensitive and confidential documents for no reason other than that EY as a nonparty was unable to properly identify documents responsive to the EY Protective Order. *See Del Campo v. Am. Corrective Counseling Servs., Inc.*, 2010 WL 4696558, at *2 (N.D. Cal. Nov. 9, 2010) (ordering further interrogatory responses but denying sanctions because initially withholding information "[o]n privacy grounds" was "substantially justified").

In this case, Google's conduct was even more justified because its review revealed that the vast majority of documents EY initially identified were *not* within the scope of the Court's order, including because they do not show the valuation of user data. Plaintiffs have since confirmed that

1  Google's review correctly withheld only non-responsive documents. *See* Tse Decl. ¶ 3; Dkt. 579-2
2  at 20 (ordering Plaintiffs to identify documents concerning valuation of user data by March 31, in
3  response to which Plaintiffs identified no documents).
4        Google is aware of only one case addressing a party's right to review a nonparty's production
5  for responsiveness, and Google's conduct here is consistent with that authority. In *General Electric*
6  *Co. v. United States*, nonparties delegated their responsibility to conduct a relevance review to
7  counsel for litigant GE. 119 F. Supp. 3d 17, 19 (D. Conn. 2015). When the party requesting
8  discovery raised concerns about the neutrality and permissibility of GE's responsiveness review,
9  the court held that the nonparty's delegation was proper because, *inter alia*, the requesting party
10 "has no right to over-production of materials beyond the scope of its subpoenas," nor "to have a
11 completely neutral party review and decide what documents are responsive." *Id.* at 20.
12       The circumstances here raise even fewer neutrality concerns than those the court endorsed
13 in *General Electric*. EY conducted its own review and made its own decision about what documents
14 ultimately to produce to Plaintiffs, a decision that was informed—but not dictated or coerced—by
15 Google's secondary review. And here, as in *General Electric*, no order was violated because the
16 documents withheld were the kind of "over-production of materials beyond the scope of [the]
17 subpoena[]" that Plaintiffs were never entitled to in the first place. *Id.* at 20.
18       Google respectfully submits that, under the full set of facts recited above, at a minimum,
19 reasonable parties could have disagreed on the appropriateness of Google's responsiveness review
20 under the EY Protective Order. *See Uschold v. Carriage Servs., Inc.*, 2019 WL 8275629 (N.D. Cal.
21 Oct. 11, 2019) (granting in part motion for sanctions but denying attorneys' fees "[b]ecause of the
22 uncertainty as to some of the issues"); *Cunha v. Chico Produce, Inc.*, 2018 WL 11348748, at *6
23 (N.D. Cal. Sep. 5, 2018) ("[S]anctions [including monetary sanctions] are not designed for close
24 cases."). In light of the ruling in *General Electric*, Google's "interpretation of [the Court's] order
25 was not wholly untenable." *Perez*, 2019 WL 289831, at *1; *see also Surgical Techniques, Inc.*, 2014
26 WL 1095591, at *4 (holding that where a party's contentions "were ultimately found to be
27 insufficient" in violation of a discovery order, but it had not "failed to serve any contentions by the
28 deadline", "'reasonable people could differ' as to whether plaintiff complied with the court's []

order, and as a result, . . . plaintiff was 'substantially justified'"); *Sanchez v. County of Sacramento*, 2022 WL 866057, at *6 n.5 (compelling production but denying fees because "reasonable people could disagree" as to losing party's position); *Mollica v. County of Sacramento*, 2022 WL 317004, at *6 (E.D. Cal. Feb. 2, 2022) (same).

### B. Google Acted in Good Faith and Caused No Harm to Plaintiffs

Sanctioning Google despite its good-faith belief that its actions aligned with the law and the EY Protective Order would be unjust. *See GoPro, Inc. v. 360Heros, Inc.*, 291 F. Supp. 3d 1060, 1075 (N.D. Cal. 2017) (granting order to compel and warning that "[i]n the future, if the parties have any disputes regarding the meaning of the Court's orders, they should seek prompt clarification from the Court," but rejecting fee-shifting sanctions "[i]n light of the seeming confusion over the . . . Court's prior order"). Google conducted its secondary review in good faith—and not to deprive Plaintiffs of information relevant to their case. Plaintiffs' own inability to identify relevant documents concerning user data valuations in EY's production confirms Google's good faith. Google's secondary review did nothing more than give force to the EY Protective Order necessitated by Plaintiff's overreaching subpoena, and its decision was not sanctionable misconduct. *See Vinteractive, LLC v. Optirev, LLC*, 2016 WL 3361810, at *2 (N.D. Cal. June 17, 2016) (granting order to compel over objections concerning work product doctrine but "find[ing] that monetary sanctions are unjustified as [the resisting party] displayed good faith in its beliefs and supplementary responses").

Sanctions are also inappropriate because Google's transparent secondary review did not prejudice Plaintiffs. Plaintiffs had months to dispute Google's interpretation of the EY Protective Order in December, well before the close of fact discovery in March. Plaintiffs *chose* to wait until a week before the close of fact discovery to request leave to file a motion to compel on this issue; Google never took any action to obstruct or delay Plaintiffs' access to relief from the Court. *Cf. Rojas v. Bosch Solar Energy Corp.*, 2020 WL 8617414, at *3 (N.D. Cal. Aug. 28, 2020) (unjust to award sanctions where nonmoving party has not "engaged in bad faith" or made "disingenuous assertions," and the moving party could have "advanced discovery" at an earlier stage).

Google has already been punished—EY has now produced thousands of documents that are neither responsive nor relevant, but contain Google's highly sensitive and confidential information. *See* Dkt. 541-1 at ¶ 5 (listing 12 categories of nonresponsive documents included in EY's production). And as Google's post-order conduct (*i.e.*, immediately serving the order on EY as instructed and facilitating a rapid production) demonstrates, Google has always sought to follow the Court's orders fully and faithfully. Google's behavior in this litigation generally and in this particular dispute is in no way similar to the brazen obstruction that typically merits an award of sanctions. *See, e.g.*, *Cuviello v. Feld Ent. Inc.*, 2015 WL 877688, at *3 (N.D. Cal. Feb. 27, 2015) (granting Rule 37 sanctions where party "simply chose not to produce" ordered discovery and admitted "he had [not] complied with the court's . . . ruling"); *Toppan Photomasks, Inc. v. Park*, 2014 WL 2567914, at *11 (N.D. Cal. May 29, 2014) (finding "that it is proper to impose monetary sanctions under Rule 37" where a party admittedly deleted files in violation of orders to preserve them).

For all the same reasons, it would also be inappropriate to sanction Google under the Court's inherent power. Such sanctions necessitate an express finding of bad faith, and a level of vexatious conduct that is absent here. *See, e.g.*, *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 2012 WL 5372477, at *7 (imposing inherent-power sanctions on a party who "has been unreasonably dilatory in discovery, failed to appear at hearings and to respond to discovery orders, and . . . has made repeated misrepresentations to the Court").

## V.   CONCLUSION

In sum, although Google should have done things differently, it made an honest effort to follow the Court's order consistent with legal authority. Google takes the Court's response seriously, and will seek the Court's intervention in attempting to enforce its prior orders in the future. No further sanction is necessary or appropriate here.

| | | |
|---|---|---|
| 1 | DATED: April 15, 2022 | QUINN EMANUEL URQUHART & SULLIVAN, LLP |

By   */s/ Andrew H. Schapiro*
Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Stephen A. Broome (CA Bar No. 314605)
stephenbroome@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Diane M. Doolittle (CA Bar No. 142046)
dianedoolittle@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Josef Ansorge (admitted *pro hac vice*)
josefansorge@quinnemanuel.com
Carl Spilly (admitted *pro hac vice*)
carlspilly@quinnemanuel.com
1300 I. Street, N.W., Suite 900
Washington, D.C. 20005
Telephone: 202-538-8000
Facsimile: 202-538-81005000

Jomaire A. Crawford (admitted *pro hac vice*)
jomairecrawford@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600

Facsimile: (415) 875-6700

*Attorneys for Defendant Google LLC*