# PLAINTIFFS' OBJECTIONS TO (AND MOTION TO MODIFY) THE SPECIAL MASTER'S RECOMMENDATIONS

# Redacted Version of Document Sought to be Sealed

**BLEICHMAR FONTI & AULD LLP**
Lesley Weaver (Cal. Bar No.191305)
Angelica M. Ornelas (Cal. Bar No. 285929)
Joshua D. Samra (Cal. Bar No. 313050)
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
*lweaver@bfalaw.com*
*aornelas@bfalaw.com*
*jsamra@bfalaw.com*

**SIMMONS HANLY CONROY LLC**
Jason 'Jay' Barnes (admitted *pro hac vice*)
An Truong (admitted *pro hac vice*)
Eric Johnson (admitted *pro hac vice*)
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel.: (212) 784-6400
Fax: (212) 213-5949
*jaybarnes@simmonsfirm.com*
*atruong@simmonsfirm.com*
*ejohnson@simmonsfirm.com*

*Counsel for Plaintiffs*

**DiCELLO LEVITT GUTZLER LLC**
David A. Straite (admitted *pro hac vice*)
Corban Rhodes (pro hac vice pending)
One Grand Central Place
69 East 42nd Street, Suite 2400
New York, NY 10165
Tel.: (646) 933-1000
*dstraite@dicellolevitt.com*
*crhodes@dicellolevitt.com*

Amy E. Keller (admitted *pro hac vice*)
Adam Prom (admitted *pro hac vice*)
Sharon Cruz (admitted *pro hac vice*)
Ten North Dearborn St., Sixth Floor
Chicago, IL 60602
Tel.: (312) 214-7900
*akeller@dicellolevitt.com*
*aprom@dicellolevitt.com*
*scruz@dicellolevitt.com*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| PATRICK CALHOUN, et al., on behalf of themselves and all others similarly situated,<br><br>               Plaintiffs,<br><br>   v.<br><br>GOOGLE LLC,<br><br>               Defendant. | Case No. 4:20-cv-5146-YGR-SVK<br><br>PLAINTIFFS' OBJECTIONS TO (AND MOTION TO MODIFY) THE SPECIAL MASTER'S SEALED RECOMMENDATIONS AND ORDER DATED APRIL 4, 2022 (DKT NO. 604)<br><br>Fed. R. Civ. P. 53(f)(2)<br><br>Referral:         Hon. Susan van Keulen, USMJ<br>Special Master:  Douglas A. Brush<br>Hearing Set:    May 3, 2022, 2:00pm PT |

**UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

## I.   PRELIMINARY STATEMENT; NOTICE OF MOTION AND MOTION

Pursuant to Fed. R. Civ. P. 53(f), the *Calhoun* Plaintiffs respectfully move to modify the Special Master's Sealed Report and Recommendations dated April 4, 2022 related to the preservation of relevant class member data (the "R&R," *Calhoun* Dkt. No. 604).

At its core, the R&R adopts Google's preference to *sample* a small portion (here, $1/100^{th}$ of a percent) of the data Google collects from class members every day, and rejects Plaintiffs' plan to preserve a small, targeted subset of logs and fields likely to contain the most relevant class member data. But Google has provided no evidence that preservation of the relevant subset of logs (and limited subset of relevant fields therein) would be so unduly burdensome that the Court should relieve Google of its normal obligation to preserve relevant class-wide data. Indeed, as noted below, discovery has revealed that some of the data is stored in logs with infinite retention periods, and continued preservation of those logs would impose zero extra burdens on Google. Full preservation of relevant data only imposes extra burdens to the extent that it uniquely exists in logs with shorter retention periods, but Google has elected not to engage with Plaintiffs regarding the reduced burdens associated with these more limited data sets.

In the alternative, to the extent the Court determines Google has met its burden to demonstrate undue burdens associated with Plaintiffs' preservation plan and adopts the Special Master's sampling recommendation, Plaintiffs raise several objections below and respectfully request modifications to the R&R to ensure that the sample is in its most useful form. Plaintiffs also request full preservation of logs containing signals from which sync status could be inferred, which is the most appropriate way to determine class membership, in parallel to the sampling plan. The Court just last month ordered full preservation of two sync signals after Google agreed to do so, Dkt. No. 579-1, Ex. 2, a fact ignored by the R&R. Plaintiffs also request other modifications to clarify certain ambiguities to ensure smooth implementation of any order adopting the R&R.

Plaintiffs' proposed form of order with these alternative forms of proposed relief accompanies this motion.  Also accompanying this motion is the expert declaration of Dr. Zubair Shafiq dated April 15, 2022 (regarding the specific data logs) (the "Shafiq Decl."), which is attached to the Declaration of David Straite dated April 15, 2022 (the "Straite Decl.").

**II.    STATEMENT OF ISSUE TO BE DECIDED**

1.    Whether the Special Master's April 4, 2022 Sealed Report and Recommendations should be modified as proposed the Plaintiffs' form of order accompanying these objections and motion.

**III.    MEMORANDUM OF POINTS AND AUTHORITIES**

**A.    Legal Standard**

"A party may file objections to – or a motion to adopt or modify – the master's order, report or recommendations no later than 21 days after a copy is served, unless the court sets a different time." Fed. R. Civ. P. 53(f)(2).  On April 4, 2022, the Court ordered objections to be filed on an expedited schedule. Dkt. No. 606. Findings of fact and legal conclusions are reviewed *de novo*. Fed. R. Civ. P. 53(f)(3). In addition, a party filing objections or moving to modify a special master order may submit evidence. Fed. R. Civ. P. 53(f)(1); *accord*, *United States v. High Plains Livestock*, 2017 WL 3052269, at *7 (July 10, 2017, D.N.M.) (allowing evidence).

**B.    The Court Should Reject the Sampling Plan and Instead Order Preservation**

Google has failed to demonstrate "good cause" to deviate from its obligation to preserve relevant class-wide data. Federal courts may issue a protective order "for good cause ... to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c).  But the party seeking a protective order pursuant to Rule 26(c) bears the burden to establish the existence of good cause necessitating the order. *See Gambale v. Deutsche Bank AG*, 377 F.3d 133, 142 (2d Cir. 2004). "Good cause exists when a party seeking the protective order can articulate 'a clearly defined, specific and serious injury' that will result in the absence of the order." *Pippins v. KPMG LLP*, No. 11 CIV. 0377 CM JLC, 2011 WL 4701849, at *4–5 (S.D.N.Y. Oct. 7, 2011); *aff'd* 2012 WL 370321 (S.D.N.Y. Feb. 3, 2012) (citation omitted). "[T]he court must weigh the interests of both parties in considering the necessity and scope of the order." *Id*. (citing *Mitchell v. Fishbein*, 227 F.R.D. 239, 245 (S.D.N.Y. 2005) ("[U]nder Rule 26(c), the appropriateness of protective relief from discovery depends upon a balancing of the litigation needs of the discovering party and any countervailing protectable interests of the party from whom discovery is sought.").

1    Here, Google has made no attempt to quantify the actual burdens associated with

2    preservation of relevant class-wide data, nor are there any findings of fact or citations to evidence

3    in the R&R. Over a year ago, Google obtained a protective order relieving it from the obligation

4    to suspend its ordinary data deletion policies on more than ▆ data logs that Google admitted were

5    relevant. Dkt. Nos. 109, 174. Since then, however, discovery has revealed that several of the logs

6    are already being preserved indefinitely, Shafiq Decl. ¶ 10, and a full preservation order would only

7    impose extra burdens on Google to the extent data uniquely existed in other logs with shorter

8    retention periods. In addition, the Special Master only identified ▆ data logs in his sampling

9    recommendation, Dkt. 604-1, at 2-3, far fewer than the number of logs that Google included in its

10   original motion for protective order. Google's original motion now substantially overstates the

11   preservation burdens. During the Special Master process, however, Google never offered any

12   evidence to quantify the lower burdens associated with preserving a more limited universe of logs.

13   During the Special Master process, Plaintiffs also repeatedly proposed a three-part process

14   to negotiate a narrow preservation plan in light of these developments: first, Plaintiffs asked Google

15   to identify all logs that are already being indefinitely preserved and work cooperatively with

16   Plaintiffs determine the extent to which relevant data is stored therein; second, Plaintiffs asked

17   Google to identify the logs that uniquely contain data missing from the indefinitely retained logs;

18   and third, Plaintiffs asked Google to quantify the burdens only associated with preserving the more

19   limited data set. Straite Decl. ¶ 5 and Ex. 1 thereto. The Special Master said that Plaintiffs' proposal

20   made sense and was "constructive," *id*. ¶ 6, but Google refused to engage on any of these three

21   steps, instead continuing to insist on sampling. *Id*. The R&R does not address this background and

22   does not explain the basis for rejecting a process that was earlier considered "constructive."

23   Regardless of the reasoning, Google has not even attempted to quantify the actual burdens

24   associated with preserving the narrowed scope of relevant data, and therefore should not be relieved

25   of its ordinary course preservation obligations.

26   //

27   //

28   //

### C.    Numbered Objections

In the alternative, if the Court were to accept the sampling plan in the R&R (or some version thereof), Plaintiffs raise a number of specific objections and respectfully request several related modifications to ensure fairness and reduce ambiguity.

**1.    First Objection: Plaintiffs Do Not Agree That "Sampling" of the Sort Envisioned by the R&R is Appropriate:** Even if the Court found that sampling is appropriate generally, as opposed to straightforward preservation, the Supreme Court held in *Tyson Foods, Inc. v. Bouaphakeo* that statistical sampling can be used to prove liability, but the ***reliability*** of the sample will depend on the specific facts of the case:

> A representative or statistical sample, like all evidence, is a means to establish or defend against liability. Its permissibility turns not on the form a proceeding takes—be it a class or individual action—but on the degree to which the evidence is reliable in proving or disproving the elements of the relevant cause of action. *See* Fed. Rules Evid. 401, 403, and 702.

> It follows that the Court would reach too far were it to establish general rules governing the use of statistical evidence, or so-called representative evidence, in all class-action cases. Evidence of this type is used in various substantive realms of the law. . . . Whether and when statistical evidence can be used to establish classwide liability will depend on the purpose for which the evidence is being introduced and on "the elements of the underlying cause of action," *Erica P. John Fund, Inc. v. Halliburton Co*., 563 U.S. 804, 809, 131 S.Ct. 2179, 180 L.Ed.2d 24 (2011). . . .

> One way for respondents to show, then, that the sample relied upon here is a permissible method of proving classwide liability is by showing that each class member could have relied on that sample to establish liability if he or she had brought an individual action. If the sample could have sustained a reasonable jury finding as to hours worked in each employee's individual action, that sample is a permissible means of establishing the employees' hours worked in a class action.

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 454–55, 136 S. Ct. 1036, 1046–47, 194 L. Ed. 2d 124 (2016).

Here, the R&R proposes a random sample of 10,000 U.S.-based Chrome users, less than 1/100[th] of 1% of the proposed class. Dkt No. 604-1 at 1, Item No. 2.  But there is no finding of fact, and no finding of law by the Court, and certainly no stipulation from Google, that sampling is appropriate in this case.  Moreover, even if it were, there is no evidence that this sample will be scientifically reliable to make inferences related to any relevant population of US Chrome users, as

the Supreme Court required in *Tyson Foods*. A sampling plan makes no sense without a finding *a priori* that Plaintiffs will not be prejudiced by the deletion of the non-sampled data.

  **2.**  **Second Objection: Logs Containing "Sync Signals" Should Be Preserved in Their Entirety**. Google may argue that the sampling proposal in the R&R could not be used to draw inferences about class membership of any Chrome user whose data is not included in the sample. *See, e.g., Jama v. State Farm Fire & Cas. Co.*, 339 F.R.D. 255, 272 (W.D. Wash. 2021) (approving representative evidence where "sampling is proposed only to calculate damages, not to prove liability"). The R&R should therefore be modified to require continued preservation of <u>all</u> logs from which sync status could be inferred. The declaration of Dr. Shafiq identifies ███ such logs out of the ███ recommended by the Special Master. *See* Shafiq Decl. ¶ 5.

  Indeed, the Court just last month ordered that Google preserve two of the sync signals, the "Signed In But Not Synced" signal and the "Disable Sync" signal. *See* Sealed Order dated March 18, 2022, Ex. 2 (ruling on dispute related to RFP 92). Google can comply with this prior order by preserving in their entirety the ███ logs identified by Dr. Shafiq.

  **3.**  **Third Objection: Additional Data Sources Should be Preserved in Their Entirety**. In addition to preservation of sync status logs, Plaintiffs also request that several additional data sources be preserved in their entirety. One data source should be preserved to assist with damages calculations, as explained in the declaration of Dr. Shafiq. *See* Shafiq Decl. ¶ 6. In addition, several other data sources are already subject to indefinite retention periods, and the R&R should not give license to Google to alter those preservation periods.

  **4.**  **Fourth Objection: Google Should Produce the Protos for All Relevant Logs to Evaluate Whether the list of ██ Logs in the R&R is Sufficient.** Plaintiffs (and Google) first saw the list of ██ logs last week when we received the R&R on April 4; there was no previous identification of this specific list, nor do we know the precise reasoning behind why more than ██ other relevant logs were omitted. That said, Google has produced some discovery from which Plaintiffs can evaluate the list, and it appears the selection is appropriate, with two caveats.

//

//

1    First, Plaintiffs are aware of ▮ logs that must be added.  It is possible that ▮ of them

2    might be the same as Index Nos. 20 and 21 (we will need confirmation from Google), but the ▮

3    other logs are clearly missing and should be added. *See* Shafiq Decl. ¶ 7.

4    Second, Plaintiffs request that Google be ordered to produce the protos for all relevant logs.

5    Plaintiffs have received some discovery related to the fields contained in each log, and with the

6    benefit of that discovery will be able to update the Court before the May 3rd hearing if the discovery

7    suggests additional logs to be added.  But without the actual ***protos***, Plaintiffs' ability to complete

8    the analysis is substantially hampered.  Google, on the other hand, does have the protos.  It is deeply

9    prejudicial for Plaintiffs not to have the same information that Google has when evaluating the

10    Special Master's list of ▮ logs, and thus Plaintiffs request that Google produce them and Plaintiffs

11    be given sufficient time to review and evaluate.[1]

12        5.       **Fifth Objection: The Sample Population Should Remain Consistent Across All**

13    **Data Sources, and Rotated Weekly**.  The Special Master recommends that 10,000 random UIDs

14    be used across ▮ data sources each day, but does not specify whether the same UIDs should used

15    each day or even whether the same 10,000 IDs are used consistently across all data logs.  If the

16    Court were to adopt the sampling plan, Plaintiffs believe it essential that the same IDs be used each

17    day, rotated weekly, so that the sample will show Chrome use over at least a week for the same

18    users.  If a different set of IDs were randomly selected each day, we would lose any temporal

19    insight.  Plaintiffs also believe that the same 10,000 UIDs should be used across all data sources.

20        6.       **Sixth Objection: The Sample Population Should be Keyed to Three Types of**

21    **IDs, Not Just UIDs.**  The Special Master ordered that Google preserve records for 10,000 randomly

22    selected US based UIDs, but does not define "UID."  Plaintiffs understand UID to mean a GAIA

23    or account ID, but Google also keys data to Biscotti IDs, and Zwieback IDs, which are ostensibly

24    not keyed to user accounts when a Chrome user is signed out and not synced.  It is essential that

---

[1]  There are also five data sources for which the Special Master identifies uncertainties, as shown
in the R&R in Index Nos. 1, 20, 32, 37 and 59, including some that the Special Master says are a
"best guess."  Plaintiffs request that the Parties confer and resolve these uncertainties prior to the
entry of any preservation plan. In addition, 11 of the data sources in the index were never previously
discussed with the Special Master in the *Calhoun* action (Index Nos. 26, 27, 29, 30, 31, 33-35, 39,
40 and 59).

signed out and not synched Chrome users be represented in the sample, and limiting the sampling to UIDs may not sufficiently reflect the composition of the proposed class. *See* Shafiq Decl. ¶ 8. While this objection is related to the broader sampling issue discussed above, it is important enough to warrant a separate objection.

7.    **Seventh Objection: Data Dictionaries and Schemas Should be Produced, not Just Preserved.**  The Special Master ordered preservation of all data dictionaries and schemas, including any changes thereto, for each preserved data source. But *production* was not ordered, just *preservation*.  Plaintiffs request both preservation and production.

8.    **Eighth Objection: The Preservation Period Should Extend back to 2014, not 2016.**  The Special Master recommends preservation of the sample from July 27, **2016** through the end of litigation.  But the ESI Protocol dated Jan. 7, 2021, Dkt. No. 96, at 5(a), has a preservation period of July 27, **2014** to the present.  The R&R should conform to the date in the ESI Protocol. The distinction between 2014 and 2016 is likely only relevant with respect to data sources with very long or indefinite retention periods, and thus this objection is only relevant if the Court rejects Plaintiffs' proposal in Objection No. 4 above to preserve those data sources.

9.    **Ninth Objection: Google's Obligation to Preserve Named Plaintiff Data Should Not be Altered by the Sampling Plan.**  The R&R does not explicitly mention data related specifically to the Named Plaintiffs, their identifiers or devices, a portion of which Google is currently preserving. Plaintiffs request that the Court expressly confirm that Google will continue to preserve such data.

10.    **Tenth Objection: Google Should Be Ordered to Inform Putative Class Members that Wipeout Instructions Will Be Honored.**  The R&R recommends that "Wipeout instructions are to be honored (without regards to Google identifying or not identifying account as a class member)." *See* Dkt. No. 604-1 at 1, Item No. 5.  If accepted, however, this would violate the Court's duty under Rule 23 to supervise Google's communications with class members.  Google currently instructs account holders how they can manage (and delete) certain data related to their accounts, including how to delete the account entirely, and also advises them about the consequences of such deletion. *See* Google Motion for Protective Order dated February 17, 2021

1    (Dkt. No. 108-4), at 4-5; Exs 5 & 6 thereto (Dkt Nos. 109-9 and 109-10). But if the R&R were

2    adopted in its current form, Google's instructions would be misleading: Chrome users would not

3    be told that deletion might impact their ability to participate in this action. Plaintiffs therefore

4    propose that Google process a wipeout instruction by moving the data to a litigation platform, rather

5    than deleting the data. In the alternative, Google must inform Chrome users that deletion could

6    impact their participation in this action, following Court review of the proposed disclosure.

7         **11.    Eleventh Objection: Google Should Preserve Data in Unencrypted Form or**

8    **Alternatively Preserve the Decryption Keys.** Discovery has revealed that Google sometimes

9    stores UIDs in certain logs in an encrypted format, and it is thus important to preserve the decrypted

10   version of any preserved data. Alternatively, Google should preserve the encryption/decryption

11   keys that are used to encrypt these UIDs alongside the preserved logs so that the encrypted UIDs

12   can be readily decrypted later when necessary. If these UIDs are not preserved in the unencrypted

13   format or the encryption/decryption keys are not appropriately preserved, it may not be possible to

14   accurately identify a specific user in the preserved logs over time and draw accurate population-

15   level inferences.

16        **12.    Twelfth Objection: Google Should Preserve Mapping Tables.** The *Calhoun*

17   Plaintiffs learned last month during the deposition of a Google employee that Google maintains

18   "linking tables" that allow for the mapping of publisher IDs, Biscotti IDs, GAIA IDs and other

19   identifiers. *See* Straite Decl., Ex. 1, at 2. Plaintiffs then requested the preservation of these mapping

20   tables in the joint submission provided to the Special Master, *id.*, and Google never provided any

21   reason why preservation would be unduly burdensome, but they are not included in the R&R.

22   **IV.    CONCLUSION**

23        Plaintiffs respectfully request that the Court enter the attached proposed form of order

24   rejecting the Special Master's Report and Recommendations, and instead order to preserve all

25   relevant data sources on a class-wide basis. In the alternative, Plaintiffs request that the Court

26   entered the attached alternative form of order adopting the R&R in modified form.

27

28

1

2

Dated: April 15, 2022

3

**BLEICHMAR FONTI & AULD LLP**

4

By:    */s/ Lesley E. Weaver*
Lesley E. Weaver (Cal. Bar No. 191305)
Angelica M. Ornelas (Cal. Bar No. 285929)
Joshua D. Samra (Cal. Bar No. 313050)
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
*lweaver@bfalaw.com*
*aornelas@bfalaw.com*
*jsamra@bfalaw.com*

5

6

7

8

9

**SIMMONS HANLY CONROY LLC**

10

By:    */s/ Jay Barnes*
Jason 'Jay' Barnes (admitted *pro hac vice*)
An Truong (admitted *pro hac vice*)
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel.: (212) 784-6400
Fax: (212) 213-5949
*jaybarnes@simmonsfirm.com*
*atruong@simmonsfirm.com*

11

12

13

14

15

*Counsel for Plaintiffs*

16

**DICELLO LEVITT GUTZLER LLC**

By:    */s/ David A. Straite*
David A. Straite (admitted *pro hac vice*)
One Grand Central Place
60 E. 42nd St., Suite 2400
New York, NY 10165 Telephone:
(646) 933-1000
*dstraite@dicellolevitt.com*

Amy E. Keller (admitted *pro hac vice*)
Adam Prom (admitted *pro hac vice*)
Sharon Cruz (admitted *pro hac vice*)
Ten North Dearborn Street, 6th Fl.
Chicago, Illinois 60602
Tel.: (312) 214-7900
*akeller@dicellolevitt.com*
*aprom@dicellolevitt.com*
*scruz@dicellolevitt.com*

17

18

19

20

21

22

23

24

25

26

27

28

1

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)

2

      I, David Straite, attest that concurrence in the filing of this document has been obtained

3

from the other signatories. I declare under penalty of perjury that the foregoing is true and correct.

4

Executed this 15th Day of April, 2022, at Marbletown, New York.

5

6
                            */s/ David Straite*
                            David Straite

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OBJECTIONS AND MOTION TO MODIFY REPORT AND RECOMMENDATIONS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

  I hereby certify that on April 15, 2022, I caused to be electronically filed the foregoing document using the CM/ECF system, which will send notification of such filing to all counsel of record registered in the CM/ECF system.

             */s/ David Straite*
             David Straite