# EXHIBIT A1
# Redacted Version of Document Sought to be Sealed

HIGHLY CONFIDENTIAL - SPECIAL MASTER AND ATTORNEY'S EYES ONLY

*Calhoun v. Google* – Joint Preservation Proposal

**Google's Proposal**

Google proposes to preserve:

    1. A one-way hash of the Gaia_id (Information identifying Google Accounts);

    2. Information showing whether user had sync enabled at the time of the log entry (including "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮");

    3. ▮▮▮▮▮▮▮ (information used to identify log entries);

    4. ▮▮▮▮▮▮▮▮▮▮▮ (information showing time of the log entry);

    5. referer (referer header information identified in First Amended Complaint (Dkt. 162-3) at ¶¶ 141, 153);

    6. url (uniform resource locator identified in First Amended Complaint (Dkt. 162-3) at ¶ 141); and useragent (part of standard HTTP headers identified in First Amended Complaint (Dkt. 162-3) at ¶ 141).

The log entries to be preserved (the "Preserved Logs") would be selected via random sampling of 1,000 log events per day from the display ads logs network for U.S.-based Chrome browser users (based on IP address associated with user activity). Google's Wipeout feature would be applicable to the Preserved Logs, which means that a deletion request submitted by a user will be honored and will therefore trigger removal of GAIA identifiers from the Preserved Logs.

In addition, the parties also propose to preserve all the Gaia IDs stored in ▮▮▮▮▮▮▮▮▮: ChromeSync for inferred U.S. residents (based on IP address associated with user activity), where "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" in ▮▮▮▮▮▮▮▮▮: ChromeSync is set to "▮▮▮▮▮", from March 2020 to the present, in a privacy preserving manner in which data is minimized and user deletion requests are honored.

The preservation plan would apply to data received after the Court orders this preservation and the engineering work is completed.

**Plaintiffs' Proposal and Response to Google's Proposal**

**I.        Introduction**

       Plaintiffs respectfully propose the following data log preservation plan. Consistent with earlier proposals, Plaintiffs do not seek (and have never sought) wholesale preservation of all data logs at Google, and do not even seek wholesale preservation of all logs relevant to this litigation. Instead, Plaintiffs are willing to accept a compromise, as they have for several months, to preserve the narrowest subset of data logs possible (and only the relevant fields within those logs) to ensure

**HIGHLY CONFIDENTIAL - SPECIAL MASTER AND ATTORNEY'S EYES ONLY**

that class-wide data is preserved. To achieve this goal, Plaintiffs have proposed a **three-step process**:

**First**, agree on the universe of all data logs where Plaintiff data is stored, including any logs or tables that relate to mapping or linking PPIDs and Biscotti identifiers.

**Second**, identify the relevant fields or parameters that should be preserved, which Plaintiffs list below.

**Third**, review the logs *in order of retention period*. Any relevant data stored in logs with indefinite retention periods is already being preserved and would require no additional burdens if also preserved for this case. To the extent any fields or parameters below do not appear in the indefinitely retained logs, we then examine logs in order of retention period to determine if preservation could be accomplished with minimal burdens. Finally, to the extent any remaining data is stored exclusively in logs with short retention periods, the parties would confer after Google quantifies the burdens associated with preservation of that remaining data set.

**II.     Data to be Preserved**

**Fields and Parameters**: As noted above, Plaintiffs request preservation of a small number of fields or parameters relevant to this litigation. These fall into seven categories:

A. Identifiers (GAIA, Zwieback, Biscotti, Addresses, and Geo-Location)
B. Browser-State Signals
C. Web Browsing and Content, including relevant URLs
D. Location
E. Browser and version
F. Revenue Information
G. Inferred Data, Including Profiles

**Mapping Tables**: Plaintiffs also request that Google preserve any mapping table that allows for linking of PPIDs, Biscotti, Gaia, or other unique identifiers. The *Calhoun* Plaintiffs were able to observe today's deposition of Glen Bernston, and he testified that there should also be linking tables for other third-party identifiers and Biscotti identifiers in ▮▮▮▮, but we are just learning about these for the first time today.

**Encryption Keys**: Any data stored in encrypted form will naturally need to be decrypted on a later date, and Plaintiffs therefore request that any and all necessary encryption keys be preserved.

**Historically Preserved Plaintiff Data**: Plaintiffs also understand that any "Historically Preserved Plaintiff Data," as that term has been defined previously in the Special Master process, would continue to be preserved throughout the litigation even if not expressly falling into the plan.

**HIGHLY CONFIDENTIAL - SPECIAL MASTER AND ATTORNEY'S EYES ONLY**

Below is a discussion of each of the seven relevant categories of fields or data parameters that Plaintiffs propose be preserved, in addition to the mapping tables, Historically Preserved Plaintiff Data and encryption keys:

| A. Identifiers | |
|---|---|
| Gaia | The user's Google Account identifier |
| Zwieback | The user's device identifier cookie associated with Google Ads |
| Biscotti | The user's device identifier cookie associated with DoubleClick |
| Address Information | ZWBK [redacted] includes a column that contains addresses. |
| Precise Geo-location | Several logs contain precise latitude and longitude, including [redacted] logs (not previously disclosed by Google in this process) and backend revenue logs for which Google has refused to produce Plaintiffs' data that it has already searched, segregated, and preserved. |
| **B. Not Synced and Incognito Signals** | |
| Plaintiffs propose that Google identify and preserve communications with class members, i.e. personal information that Chrome re-directs to Google for users who are not synced and not incognito. The following signals can be used for identification of a transmission as being from a class member. However, Google need not preserve all of the signals. Instead, it is sufficient for Google to use the signals to determine which transmissions to preserve and then stipulate that the preserved transmissions for Gaia, Zwieback, and Biscotti users all fit the class definition. Thus, while this constitutes the "most signals" of any part of Plaintiffs' proposals, we believe it is the least burdensome for preservation purposes. | |
| Sync-Feature-Enabled<br><br>Locations<br>[redacted]<br>[redacted] | When false, indicates the user is Signed In But Not Consented for Sync, also called "[redacted]." This signal is sent when a user (1) signs into a Google Account (which automatically signs them in to Chrome), but does not enable sync; (2) opens the browser while it is in the Signed In But Not Consented for Sync mode; and (3) approximately every four hours of browser usage when a user is in Signed In But Not Consented for Sync mode. The existence and details of this signal were admitted by Tim Schumann, the Google product manager for the sync server, on January 13, 2022. |
| Sync-Disabled<br><br>Location<br>[redacted] | "When a Chrome user stops sync, the Chrome client sends a '[redacted]' signal to the Chrome Sync server. ... The signal is recorded in Chrome Sync's [redacted] data store, [redacted] where the record is retained until the user clears the |

**HIGHLY CONFIDENTIAL - SPECIAL MASTER AND ATTORNEY'S EYES ONLY**

| | |
|---|---|
| ▮▮▮▮ | sync data associated with that Google Account or deletes that Google Account. The signal is also recorded in ▮▮▮▮." Google Response to Interrogatory No. 34, as amended at 11:52 p.m. on March 4, 2022. This signal is also recorded in ▮▮▮▮. On March 18, 2022, the Court ordered Google to preserve this signal in connection with Plaintiffs' motion to compel identification of class members. |
| ▮▮▮▮ | The following data parameters from the column titled ▮▮▮▮ in Zwieback ▮▮▮▮: (1) ▮▮▮▮; (2) ▮▮▮▮; and (3) ▮▮▮▮. The existence of these sync signals was revealed in GOOG-CALH-01170421, produced by Google on Feb. 25, 2022. |
| Privacy Signals WAA-off | ▮▮▮▮ Several logs contain a "Privacy Signals" field that identifies users who have Web & App Activity turned off (e.g., ▮▮▮▮ is stored in ▮▮▮▮ with Biscotti information). This is important because Google has maintained that ▮▮▮▮ may contain some data from synced users because a user who is synced but has WAA-off would have their transmissions stored in ▮▮▮▮. Plaintiffs believe the percentage of such transmissions is de minimis. Nevertheless, this concern can be addressed by excluding ▮▮▮▮ from the preserved data. By excluding ▮▮▮▮, the preserved ▮▮▮▮ will not have any potential synced transmissions. In the alternative, Plaintiffs are willing to accept Google's stipulation that the ▮▮▮▮ are de minimis. |
| | ▮▮▮▮ Based on internal Google documents, Google appears to maintain ▮▮▮▮ that do not have the WAA-off issue identified by Google for ▮▮▮▮. For example, GOOG-CALH-00351059 indicates that a user who is signed-in with WAA-off, does not have their data recorded in ▮▮▮▮. As a result, those ▮▮▮▮ consist entirely of logged-out users – i.e. people who are, by definition, class members. |
| maybe_chrome_incognito | There is a maybe_chrome_incognito bit stored in several logs (e.g., ▮▮▮▮). Plaintiffs only learned of the signal through the joint participation in the *Brown* Special Master proceedings. It is relevant to *Calhoun* in that our case expressly excludes Incognito Chrome usage. |

| | |
|---|---|
| is_chrome_incognito and is_non_chrome_incognito | These are two additional incognito signals that the *Calhoun* Plaintiffs only learned of the signal through the joint participation in the *Brown* Special Master proceedings. It is relevant to *Calhoun* in that our case expressly excludes Incognito Chrome usage. |
| **C. Web-Browsing and Content** ||
| The Electronic Communications Privacy Act defines content to "include[] any information concerning the substance, purport, or meaning of that communication." Web browsing information is also statutorily defined as Personal Information under California law. Google thus has the obligation to preserve the following data points which can be used to show content by absent class members during a claims administration process to determine (1) the scope of Google's misconduct; and (2) their damages. ||
| URLs, GET, POST, or button clicks | Nearly every log contains URLs – which also contain the content of GET or POST transmissions that have been re-directed to Google's servers – and which contain or identify some information about the substance, purport, or meaning of the communication at issue. In addition, several logs contain button clicks, such as "SET APPOINTMENT" – which, like the GET or POST requests, includes information about the substance, purport, or meaning of the communication at issue. In the absence of a stipulation on "content," Google must preserve sufficient information for absent class members to determine the transmissions that contain such information. |
| Referer header | Referrer header is the previous page on which the user was present or the one that "referred" the user to the current page. Like URLs, the referrer header will often contain information about the substance, purport, or meaning of a communication. In the absence of a stipulation on "content," Google must preserve sufficient information for absent class members to determine the transmissions that contain such information. For example, this information is contained in fields such as ▆▆▆▆ and ▆▆▆▆ in ▆▆▆▆. |
| ▆ cluster information | Google defines ▆ clusters as "[t]he major topics on the page." GOOG-CABR-00893711. ▆ clusters are saved in several logs, including logs that Google contends contain "publisher information" that it has refused to produce for the Named Plaintiffs. For example, this information is contained in fields such as ▆▆▆▆ and ▆▆▆▆ in ▆▆▆▆. |

| | |
|---|---|
| Content verticals | Google defines "content verticals" as the "primary topics of a page and the site." GOOG-CABR-00893711. Content verticals are saved in several logs, including logs that Google contends contain "publisher information" that it has refused to produce for the Named Plaintiffs. For example, this information is contained in fields such as ▇▇▇▇▇▇▇ in ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. |
| ▇▇ criteria | Google defines "▇▇ criteria" as the "keywords on the page or related to the page." GOOG-CABR-00893711. ▇▇ criteria are saved in several logs, including logs that Google contends contain "publisher information" that it has refused to produce for the Named Plaintiffs. For example, this information is contained in fields such as ▇▇▇▇▇▇▇ in ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. |
| Label classifiers | Google defines "label classifiers" as "the tone of the page (e.g., negative, porn)." GOOG-CABR-00893711. For example, this information is contained in fields such as content_labels, ▇▇▇▇▇▇▇ and ▇▇▇▇▇▇ in ▇▇▇▇▇▇▇▇▇▇▇▇▇. |
| **D. Location** | |
| IP address – user | IP address is stored in nearly every log and can be used to determine the user's general location. For example, this information is contained in field such as ▇▇▇▇▇, ▇▇▇▇▇, and ▇▇▇▇ in ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. |
| IP address – publisher | IP address is stored in nearly every log and can be used to determine the general location of the publisher's server. |
| California user | Google offers services to publishers and advertisers to treat California users different. Plaintiffs propose using these same technologies to identify California users. |
| California publisher | Google also identifies certain publishers as being located in California. Plaintiffs propose using these same technologies to identify California publishers. |
| Latitude and Longitude | Several logs contain specific latitude and longitude information, including "▇▇▇▇▇" and backend logs that Google claims contain "publisher" information. These latitude and longitude signals (e.g., ▇▇▇▇, ▇▇▇▇▇▇▇, ▇▇▇▇▇, ▇▇▇▇▇ in ▇▇▇▇▇▇▇▇▇▇▇▇▇) should be preserved. |

HIGHLY CONFIDENTIAL - SPECIAL MASTER AND ATTORNEY'S EYES ONLY

|  |  |
|---|---|
| **E. Browser and Version** ||
| User-Agent | The user-agent identifies the browser and its version. Plaintiffs propose that Google preserve transmissions that it receives from Chrome browsers and can discard others. |
| **F. Revenue Information** ||
| Google maintains several backend logs that contain revenue information keyed to Gaia, Biscotti, and Zwieback-identifiers. A few of these fields are listed below. However, Plaintiffs are not in a position to make a final preservation proposal for field names because Google has (1) not yet provided data for the named Plaintiffs from any backend revenue logs, and (2) not yet disclosed any backend logs with revenue information for Google Ads. ||
| **G. Inferred Data, Including Profile Information** ||
| Plaintiffs propose that Google preserve the inferred data, including profile information, that it has associated with not synced Gaia, Biscotti, and Zwieback identifiers. This includes historical profile information that is maintained in backend revenue logs for which Google has not yet provided data for the named Plaintiffs, despite having previously searched, segregated, and preserved it. ||

### III. Plaintiffs' Response to Google's Proposed Plan

Google does not propose a plan for data preservation, but instead proposes a limited "sampling" plan that would then give Google the right to delete any data not sampled. Google also rejects disclosure of what logs and fields contain users' data prior to agreeing to the terms of a preservation plan. Respectfully, Google's proposal is unworkable, for eight reasons.

**First**, Google only proposes limited sampling, not class-wide preservation. But counsel for the *Calhoun* Plaintiffs have fiduciary responsibilities to absent class members. *Staton v. Boeing Co.*, 327 F.3d 938, 960 (9th Cir. 2003) ("Class counsel ultimately owe their fiduciary responsibility to the class as a whole."), citing *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 801 (3d Cir. 1995) (duties owed to absent class members "once the class complaint is filed.")

Because this is a class action, Plaintiffs cannot agree to preservation plan that permits Google to destroy the vast majority of relevant data. The absence of the data could be used later to argue against class certification, or in an argument against various claims including the ECPA claim. Class members who opt out of this litigation might seek to use this data. As class counsel has not been appointed, counsel has no authority to permit Google to fail to preserve data for the putative class. And, if a class is certified, destruction of the data also may impede ascertainment of class membership in a claims process, quantification of damages, and the scope of Google's misconduct with respect to absent class members.

**HIGHLY CONFIDENTIAL - SPECIAL MASTER AND ATTORNEY'S EYES ONLY**

**Second**, Google proposes to limit its sampling just to the display ads logs network, which not only excludes other logs that the Court has already found relevant, but even excludes analytics which even Google admits is relevant.

**Third**, Google's proposal excludes preservation of Biscotti-keyed and Zwieback-keyed data, and instead is limited to GAIA-keyed data even though it already stores GAIA ID alongside encrypted Biscotti and Zwieback IDs in multiple backend logs.

**Fourth**, Google's proposal excludes preservation of any revenue information.

**Fifth**, Google's proposal excludes preservation of any geo-location information.

**Sixth**, Google's proposal excludes preservation of any inferred data, including profiles.

**Seventh**, Google's proposal does not include preservation of browser state (sync signal) information, other than one signal showing whether user had sync enabled at the time of the log entry – limited to Gaia, or Signed In But Not Consented for Sync.  But Google has recently acknowledged the existence of sync state signals in other logs, which would not be preserved under Google's proposal. Ironically, the Court ordered preservation of the Disabled Sync signal on March 18, 2022, but Google's proposal is to violate the Court's order.

**Eighth**, Google expressly requests that its preservation proposal only apply to data it receives after the plan is approved and after "engineering work is completed." This goes far beyond anything discussed during any meet-and-confer or Special Master conference, and presumably would give Google license to delete years' worth of data at its discretion, even if required to be retained under current policies, and even if previously undisclosed and tested in discovery.

Below is a chart comparing Google's proposal to Plaintiffs' Proposal.

**HIGHLY CONFIDENTIAL - SPECIAL MASTER AND ATTORNEY'S EYES ONLY**

| Issue | Google – 1,000 daily events | Plaintiffs – class-wide |
|---|---|---|
| Identifiers | Google proposes only to preserve a one-way hash of Gaia-ID | Gaia ID<br>Zwieback ID<br>Biscotti ID<br>Addresses<br>Precise Geo-location |
| Sync Status | Google proposes to preserve information showing whether user had sync enabled at the time of the log entry (including "▇▇▇▇▇▇▇▇").<br><br>Google also proposes to preserve just the Gaia IDs stored in ▇▇▇▇▇: ChromeSync for inferred U.S. residents (based on IP address associated with user activity), where "▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇" in ▇▇▇▇▇: ChromeSync is set to "▇▇▇▇", from March 2020 to the present, in a privacy preserving manner in which data is minimized and user deletion requests are honored. | Plaintiffs propose to preserve all signals showing sync status, including:<br><br>• Signed In But Not Consented for Sync<br>• Basic browser – i.e. Signed Out<br>• Sync enabled<br>• ▇▇▇▇ – i.e. Signed In But Not Consented for Sync<br>• sync disabled<br>• zwbk ▇▇▇▇<br>• biscotti + waa-off<br>• ▇▇▇▇ |
| Content | • Referer header<br>• URL | • Referer header<br>• URL<br>• ▇▇ cluster<br>• ▇▇<br>• Verticals<br>• Label classifiers |
| User-Agent | User-Agent | User-Agent |
| Metadata | Time, Event ID | Time, Event ID |
| Location | Does not propose preservation. | • User location<br>• Publisher location<br>• Precise geo-location |
| Profile Info. | Does not propose preservation. | Google to preserve profile information. |
| Revenue Info. | Does not propose preservation. | Google to preserve revenue information. OR Google must stipulate to average revenue or profit per ad view and that apportionment of average revenue or profit per ad revenue is sufficient for apportionment of damages. |

**HIGHLY CONFIDENTIAL - SPECIAL MASTER AND ATTORNEY'S EYES ONLY**

| Issue | Google – 1,000 daily events | Plaintiffs – class-wide |
|---|---|---|
| Historically Preserved Plaintiff Info. | Does not propose preservation | Google to preserve this information. |
| Encryption Keys | Does not propose preservation | Google to preserve this information. |
| Mapping Tables | Does not propose preservation | Google to preserve this information. |
| Effective Date | Google asks for the preservation plan to apply only prospectively, and only after certain "engineering work" is completed. | Google to preserve existing data covered by the preservation plan if received by Google during the class period. |