# GOOGLE LLC'S RESPONSE TO PLAINTIFFS' OBJECTIONS - CALHOUN

# Redacted Version of Document Sought to be Sealed

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Diane M. Doolittle (CA Bar No. 142046)
dianedoolittle@quinnemanuel.com
Sara Jenkins (CA Bar No. 230097)
sarajenkins@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
Teuta Fani (admitted *pro hac vice*)
teutafani@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Stephen A. Broome (CA Bar No. 314605)
stephenbroome@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
Crystal Nix-Hines (Bar No. 326971)
crystalnixhines@quinnemanuel.com
Alyssa G. Olson (CA Bar No. 305705)
alyolson@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Josef Ansorge (admitted *pro hac vice*)
josefansorge@quinnemanuel.com
Xi ("Tracy") Gao (CA Bar No. 326266)
tracygao@quinnemanuel.com
Carl Spilly (admitted *pro hac vice*)
carlspilly@quinnemanuel.com
1300 I Street NW, Suite 900
Washington D.C., 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

Jomaire Crawford (admitted *pro hac vice*)
jomairecrawford@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

*Counsel for Defendant Google LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| PATRICK CALHOUN, et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 4:20-cv-05146-YGR-SVK<br><br>**GOOGLE LLC'S RESPONSE TO PLAINTIFFS' OBJECTIONS TO SPECIAL MASTER'S REPORT AND RECOMMENDATION ON REFERRED DISCOVERY ISSUES (PRESERVATION PLAN)**<br><br>Referral: Hon. Susan van Keulen, USMJ |

01980-00178/13330575

Case No. 4:20-cv-05146-YGR-SVK
GOOGLE LLC'S RESPONSE TO PLAINTIFFS' OBJECTIONS TO SPECIAL MASTER'S REPORT AND RECOMMENDATION ON REFERRED DISCOVERY ISSUES (PRESERVATION PLAN)

Pursuant to the Court's April 4, 2022 Order (Dkt. 606), Google hereby responds to Plaintiffs' objections to the Special Master's Report and Recommendation on Referred Discovery Issues (Preservation Plan). Dkt. 622.

## I. THE COURT SHOULD ADOPT THE SPECIAL MASTER'S SAMPLING RECOMMENDATION

Plaintiffs' core objection to the Special Master's preservation as one of "sampling" versus "preservation" is fundamentally flawed.

As an initial matter, it is incorrect to frame the issue as one of "sampling" versus "preservation"—the Special Master has recommended *preservation of a sample* (as opposed to wholesale preservation) as the only reasonable path here. In fact, when opposing Google's motion for protective order, Plaintiffs themselves proposed "alternatives to wholesale preservation, such as sampling or running of scripts to isolate particular data points that would reduce the data size and also omit certain information." Dkt. 118 at 11. Plaintiffs' expert's sworn declaration states "I have testified in over 100 cases about the efficacy and reliability of sampling in investigations of very large data sets. Courts routinely accept samples to draw conclusions when the volume of data is large and production is 'extraordinarily burdensome to preserve, search, and manage.'" Dkt. 118-5, ¶ 18. Preserving a sample is an accepted and appropriate methodology in cases, such as here, where the preservation would otherwise be extremely burdensome.

The universe of data sources the Special Master selected for preservation is immense: ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████, and all columns pertaining to Display Ads, Google Analytics, Google Ads, YouTube, and Google APIs in five keyspaces: ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. Sampling is the only practical solution for preserving event-level data from the more than 65 relevant data sources the Special Master selected.

| | |
|---|---|
| 1 | Plaintiffs' claim that the burden is on Google to demonstrate "good cause" for a "protective |
| 2 | order," Plts. Obj. at 2, is also wrong. Google already moved for a protective order a year ago. After |
| 3 | full briefing and a hearing, the Court granted Google's motion. Dkt. 174. The Court's decision was |
| 4 | supported by a full record showing that the wholesale preservation Plaintiffs demanded would be |
| 5 | extremely burdensome. Dkts. 109, 120. On the basis of that record, the Court tasked the Special |
| 6 | Master with assisting the parties to arrive at a more measured preservation plan. *See* Hr. Tr. at 60:17- |
| 7 | 20, February 28, 2022 ("And to Special Master Brush's point of, is there a subset of data – and I |
| 8 | know that the preservation issue in particular [was] referred to the Special Master."). The Special |
| 9 | Master's proposed solution that allows for preservation of a sample from the identified data sources |
| 10 | strikes the right balance. As the Special Master stated at the February 28, 2022 discovery hearing, a |
| 11 | preservation plan should be one that "balance[s] the need of the litigation preservation needs, but |
| 12 | also is within reasonable scope of the technology and capabilities of Google's team[.]" Hr. Tr. at |
| 13 | 61:15-19, February 28, 2022. |
| 14 | Plaintiffs' demand that Google preserve *all* entries in *all* identified data sources is the |
| 15 | antithesis of the proportionality the Court required. It is not the case, as Plaintiffs suggest, that the |
| 16 | sources the Special Master selected are a subset of the sources that were the subject of Google's |
| 17 | motion for a protective order. Google's motion for protective order focused on relevant ███████ |
| 18 | Ad Manager, and Analytics logs. The Special Master process narrowed the number of data sources |
| 19 | from those three products, but broadened the scope to *other* types of products. The data sources the |
| 20 | Special Master selected record many billions of entries a day. Harting Decl. ¶ 3. The ███████ |
| 21 | ███ logs that are not currently ████████████ alone consist of ███████ of data as of |
| 22 | April 24, 2022, and continues to record more than ████████ per day. *Id.* ¶ 6. Preserving all data |
| 23 | in these ████████ logs would require Google to store at least an additional ████████ of |
| 24 | additional data every 30 days. Plaintiffs' demand that Google preserve *all* data in the more than 65 |
| 25 | data sources implicates many multiples of these amounts. This additional preservation burden would |
| 26 | be unduly burdensome for the same reasons that Google already explained in sworn declarations |
| 27 | more than a year ago. Dkts. 109-2, 109-3. Even if feasible, it would require immense engineering |
| 28 | effort and cost to store *all* data in the selected data sources and safely host the ever-increasing |

-2-    Case No. 4:20-cv-05146-YGR-SVK
GOOGLE LLC'S RESPONSE TO PLAINTIFFS' OBJECTIONS TO SPECIAL MASTER'S REPORT AND
RECOMMENDATION ON REFERRED DISCOVERY ISSUES (PRESERVATION PLAN)

01980-00178/13330575

1  amount of data. Harting Decl. ¶ 3.

2    Such unprecedented and costly preservation effort would be grossly disproportionate to the
3  needs of a case in which Plaintiffs allege no monetary harm. *Lord Abbett Mun. Income Fund, Inc.*
4  *v. Asami*, 2014 WL 5477639, at *3 (N.D. Cal. Oct. 29, 2014) ("[T]he proportionality principle
5  applies to the duty to preserve potential sources of evidence" in the same way it applies to the scope
6  of discovery obligations under Rule 26."); Fed. R. Civ. P. 37(e) Adv. Comm. Notes (2015)
7  ("perfection in preserving all relevant electronically stored information is often impossible."). Even
8  the sampling proposal that the Special Master has recommended necessitates a significant
9  engineering feat. It will require ███████████ of engineering hours to ideate it, accomplish
10 it, and to maintain it for the remainder of the litigation. Harting Decl. ¶ 10. But Google is willing to
11 undertake the cost to resolve the preservation dispute as a reasonable solution tailored to the realities
12 of this litigation.

13 **II.   THE COURT SHOULD DENY PLAINTIFFS' NUMBERED OBJECTIONS**

14   Each of Plaintiffs' numbered objections is meritless. Google responds in brief below.

15   ***Plaintiffs' Objection 1: Plaintiffs do not agree that "sampling" of the sort envisioned by
16 the R&R is appropriate.***

17   If the Court orders the Special Master's current preservation plan, Google will agree to
18 stipulate that neither party can rely on the absence of preserved Google data to support or oppose
19 any argument in subsequent proceedings.

20   ***Plaintiffs' Objection 2: Logs containing "sync signals" should be preserved in their
21 entirety.***

22   Per the Court's March 18, 2022 Order adopting Google's compromise proposal regarding
23 RFP 92, Google is prepared to preserve the two potentially relevant signals: (a) the "███" signal;
24 and (2) the "█████████" signal, which contain information regarding sync status at the time
25 of the log entry. It is not warranted to preserve *all* data in the eight data sources Plaintiffs identified
26 just because "sync status *could* be inferred" from them. Obj. at 5 (emphasis added). Plaintiffs do not
27 articulate why it is necessary, let alone proportional, to preserve these sources in addition to what
28 Google has already agreed to do. Further, the burden of this preservation would be enormous: just

1  the four ▇▇▇ and sync traffic logs alone consist of more than ▇▇▇ of data and
2  continue to record more than ▇▇▇ per day. Harting Decl. ¶ 7.

   *Plaintiffs' Objection 3: Additional data sources should be preserved in their entirety.*

4  Plaintiffs have no basis to require the wholesale preservation of ▇▇▇
5  ▇▇▇ table. As evidenced by various documents produced throughout discovery,
6  ▇▇▇ is limited to the revenue of Google's owned and operated properties, *not* Display Ads
7  revenue Google receives from advertisements shown on third party websites. Dkt. 572-4 at 12. For
8  that reason alone, the relevance of ▇▇▇ is extremely limited. Plaintiffs fail to explain why
9  preserving a daily sample of events from the ▇▇▇ table would not be
10 sufficient for purposes of their damages calculations.

11 Plaintiffs' additional request that the Court issue a moratorium on any changes Google may
12 need to make in the future to the preservation periods of the identified logs is likewise inappropriate.
13 Once the sample is preserved, there is no reason to hamstring Google's ability to make decisions
14 regarding preservation unconnected to this litigation. In fact, for the precise reasons articulated
15 during the motion for protective order briefing, Google regularly encounters space constraints and
16 needs to re-evaluate preservation periods for logs it currently retains. Harting Decl. ¶ 9.

   *Plaintiffs' Objection 4: Google should produce the protos for all relevant logs to evaluate whether the list of 65 logs in the R&R is sufficient.*

19 Plaintiffs' Objection 4 makes two equally unmeritorious demands.

20 *First*, Plaintiffs demand that two additional data sources be preserved on a sample basis:
21 ▇▇▇ and ▇▇▇. Google agrees to preserve data from
22 a ▇▇▇ (Index #15 in the Special Master's Report and
23 Recommendation). As to ▇▇▇ Plaintiffs do not explain why it is necessary to preserve data
24 from this additional keyspace. Google provided descriptions and annotations for all the ▇▇▇
25 columns, and the Special Master made an informed decision to leave it out of the preservation
26 recommendation, as did the Court in its March 1, 2022 Order. Dkt. 516-1 at 8 ("Google is ordered
27 to search the following data sources: ▇▇▇
28 ▇▇▇ … at the direction of Special Master Brush"). Plaintiffs' unsupported statement that

1 "the two other logs are clearly missing and should be added" is insufficient to undermine that decision.

*Second*, Plaintiffs demand that Google produce the protos for all relevant logs. But proto files related to the selected data sources are sensitive and highly confidential source code: they are drafted as source code, reviewed as source code, and run as source code. As the Court found in its November 12, 2021 Order, production of proprietary source code is unwarranted in this case. Dkt. 377 ("[T]he Court finds that the Special Master's factual conclusions regarding the overbreadth of the Plaintiffs' requests for access to nonpublic source code … [is] well taken and adopts those findings … Plaintiffs have not demonstrated the requisite factual basis of necessity …"). Furthermore, the logs in question have fields and message files from multiple protocol buffer files; in turn, each proto file imports other proto files and use subsections of those files. Harting Decl. ¶ 5. Therefore, Google cannot produce a single ".proto" file, but rather would be required to compile a list of hundreds of files—a complex exercise that would require an inordinate amount of software engineering hours. Plaintiffs' demand is particularly unreasonable because here, as Plaintiffs acknowledge, Google has produced extensive discovery related to the fields contained in each log. For these reasons, the additional production of Google's source code is ***not*** necessary or warranted. *Id.*; *see also*, *In re Apple and AT&T Antitrust Litig.*, 2010 WL 1240295, at *2, *3 (N.D. Cal. Mar. 26, 2010) (rejecting plaintiffs' request for source code discovery because Plaintiffs "have not met their burden and have not established that the … source code sought is relevant and necessary").

**Plaintiffs' Objection 5: The sample population should remain consistent across all data sources, and rotated weekly.**

The Special Master's recommendation is clear that Google should "[f]or each data source, preserve all records for 10,000 randomly selected US based UIDs from each data source for each day for which there is data." Dkt. 603-1 at 7. In accordance with this instruction, Google is prepared to preserve a daily sample of events associated with 10,000 UIDs randomly selected each day, for each selected data source for which there is data. Plaintiffs' revised approach—namely, that the same UIDs across all data sources be used each day and rotated only weekly—is not feasible because different data sources are keyed by different identifiers: ▮

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████ As Plaintiffs know after the extensive discovery in this matter, Google does not "fingerprint," or join pseudonymous data with authenticated data. Therefore, Google cannot do what Plaintiffs suggest, which is to identify a random sample of users and associate all pseudonymous identifiers to use them to search across logs. The approach Plaintiffs seek is also far more privacy-invasive because it would entail preserving seven times the time period the Special Master proposed (seven consecutive days instead of just one) for *each* of the 10,000 users who may not even be putative class members. Plaintiffs fail to explain why this privacy-invasive approach is necessary or warranted.

*Plaintiffs' Objection 6: The sample population should be keyed to three types of IDs, not just UIDs.*

Google agrees to preserve a daily sample of events associated with 10,000 randomly selected UIDs for each source, including ████████████████████████████████████████████████████████████████████████████████████████.

*Plaintiffs' Objection 7: Data dictionaries and schemas should be produced, not just preserved.*

Google has produced to Plaintiffs more than 6.4 million pages through discovery; in addition, through the Special Master process, Google has produced tens of thousands of pages of decrypted cookies, scripts, and more than 20 gigabytes of data. The parties have extensively discussed data dictionaries and schema for the relevant fields during the Special Master process, and these have also been the subject of orders and a negotiated process for production. To the extent that such documents were relevant and reasonably accessible, they have been produced. As the Court has recognized, "[t]he requests for production from Google must and will come to an end." Dkt. 377 at 6. The only outstanding discovery item under the Special Master process is the final round of searches. There is no basis to require Google to produce additional documents.

*Plaintiffs' Objection 8: The preservation period should extend back to 2014, not 2016.*

Google agreed to a preservation period extending back to 2014 for internal documents,

because Plaintiffs argued that documents from 2014 and 2015 may impact how Google treated data in 2016. For event-level user data, however, there is no reason to preserve records that fall outside the class period.

***Plaintiffs' Objection 9: Google's obligation to preserve named Plaintiff data should not be altered by the sampling plan.***

Google agrees to continue to preserve named Plaintiff data, consistent with preservation done to date.

***Plaintiffs' Objection 10: Google should be ordered to inform putative class members that wipeout instructions will be honored.***

Plaintiffs' objection is unclear. To the extent Google understands the objection, Google agrees to move the sampled data subject to wipeout instructions to a litigation platform.

***Plaintiffs' Objection 11: Google should preserve data in unencrypted form or alternatively preserve the decryption keys.***

Google will preserve data as it is maintained in the ordinary course of business. As Dr. Glenn Berntson explained at a Rule 30(b)(6) deposition in *Brown*, encryption keys are a cornerstone of Google's privacy program: ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Berntson Depo Tr., 175:12-21, March 18, 2022. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Id.* at 177:19-22. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Harting Decl. ¶11. Preserving encryption keys could compromise privacy protections for users worldwide.

***Plaintiffs' Objection 12: Google should preserve mapping tables.***

Plaintiffs claim that they learned last month during the Rule 30(b)(6) deposition of Dr. Berntson in *Brown* that Google purportedly "maintains 'linking tables' that allow for the mapping of publisher IDs, Biscotti IDs, GAIA IDs and other identifiers." Plaintiffs misstate Dr. Berntson's testimony. Dr. Berntson simply testified that Google maintains a ▇▇▇▇▇▇▇▇▇▇▇▇, which Plaintiffs have known for months. *See, e.g.*, Liao Depo Tr., 44:19-21, Dec. 3, 2021 ("▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇").

PPIDs are identifiers that publishers provide to Google in a hashed or encrypted format,

1  "such that it is meaningless to Google."[1] As Dr. Glenn Berntson testified, when Google receives the
2  PPID value from the publishers, ▮
3  ▮. Berntson Depo Tr. at 120:12-16, Mar. 18, 2022. Notably, this Biscotti ID is not stored in a
4  cookie on the user's browser. *Id.* at 122:23-24. ▮
5  ▮. *Id.* at 121:9-11. ▮
6  ▮.
7  Preserving these tables indefinitely for ***all*** users is too extreme and privacy-violative a measure and
8  should not be ordered. In any event, it would also be meaningless because the mapping table does
9  not record the original PPID input.

---

[1] https://support.google.com/admanager/answer/2880055?hl=en.

| | | |
|---|---|---|
| 1 | DATED: April 25, 2022 | QUINN EMANUEL URQUHART & SULLIVAN, LLP |

By     /s/ Andrew H. Schapiro
           Andrew H. Schapiro

Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
Teuta Fani (admitted *pro hac vice*)
teutafani@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Diane M. Doolittle (CA Bar No. 142046)
dianedoolittle@quinnemanuel.com
Sara Jenkins (CA Bar No. 230097)
sarajenkins@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Stephen A. Broome (CA Bar No. 314605)
stephenbroome@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
Crystal Nix-Hines (Bar No. 326971)
crystalnixhines@quinnemanuel.com
Alyssa G. Olson (CA Bar No. 305705)
alyolson@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Jomaire A. Crawford (admitted *pro hac vice*)
jomairecrawford@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

01980-00178/13330575.1

-9-     Case No. 4:20-cv-05146-YGR-SVK
GOOGLE LLC'S RESPONSE TO PLAINTIFFS' OBJECTIONS TO SPECIAL MASTER'S REPORT AND
RECOMMENDATION ON REFERRED DISCOVERY ISSUES (PRESERVATION PLAN)

Josef Ansorge (admitted *pro hac vice*)
josefansorge@quinnemanuel.com
Xi ("Tracy") Gao (CA Bar No. 326266)
tracygao@quinnemanuel.com
Carl Spilly (admitted *pro hac vice*)
carlspilly@quinnemanuel.com
1300 I Street NW, Suite 900
Washington D.C., 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

*Attorneys for Defendant Google LLC*

01980-00178/13330575.1

-10-   Case No. 4:20-cv-05146-YGR-SVK
GOOGLE LLC'S RESPONSE TO PLAINTIFFS' OBJECTIONS TO SPECIAL MASTER'S REPORT AND
RECOMMENDATION ON REFERRED DISCOVERY ISSUES (PRESERVATION PLAN)