**BLEICHMAR FONTI & AULD LLP**
Lesley Weaver (Cal. Bar No.191305)
Angelica M. Ornelas (Cal. Bar No. 285929)
Joshua D. Samra (Cal. Bar No. 313050)
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
*lweaver@bfalaw.com*
*aornelas@bfalaw.com*
*jsamra@bfalaw.com*

**SIMMONS HANLY CONROY LLC**
Jason 'Jay' Barnes (admitted *pro hac vice*)
An Truong (admitted *pro hac vice*)
Eric Johnson (admitted *pro hac vice*)
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel.: (212) 784-6400
Fax: (212) 213-5949
*jaybarnes@simmonsfirm.com*
*atruong@simmonsfirm.com*
*ejohnson@simmonsfirm.com*

**DICELLO LEVITT GUTZLER LLC**
David A. Straite (admitted *pro hac vice*)
Corban Rhodes (admitted *pro hac vice*)
One Grand Central Place
69 East 42nd Street, Suite 2400
New York, NY 10165
Tel.: (646) 933-1000
*dstraite@dicellolevitt.com*
*crhodes@dicellolevitt.com*

Amy E. Keller (admitted *pro hac vice*)
Adam Prom (admitted *pro hac vice*)
Sharon Cruz (admitted *pro hac vice*)
Ten North Dearborn St., Sixth Floor
Chicago, IL 60602
Tel.: (312) 214-7900
*akeller@dicellolevitt.com*
*aprom@dicellolevitt.com*
*scruz@dicellolevitt.com*

*Counsel for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION

| | |
|---|---|
| PATRICK CALHOUN, et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 4:20-cv-5146-YGR-SVK<br><br>MOTION FOR LEAVE TO SUPPLEMENT PLAINTIFFS' APRIL 15, 2022 RESPONSE TO GOOGLE'S OBJECTIONS TO THE SPECIAL MASTER'S SEALED RECOMMENDATIONS AND ORDER DATED APRIL 4, 2022 (DKT NO. 604) BASED ON NEWLY PRODUCED EVIDENCE<br><br>Fed. R. Civ. P. 53(f)(2)<br><br>Referral:         Hon. Susan van Keulen, USMJ<br>Special Master:  Douglas A. Brush<br>Hearing Set:     May 3, 2022, 2:00pm PT |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

**TABLE OF CONTENTS**

I. Introduction and Summary of Relief Requested ................................................................1

II. Legal Standard ....................................................................................................................2

III. Argument: The Court Should Admit the New Evidence ...................................................2

    A. The New Evidence is Highly Relevant and Will Assist at the Hearing ................... 2

    B. Good Cause Exists to Admit the New Evidence ...................................................... 4

        1. January 2021: Google falsely told Plaintiffs in writing that ███████████████████████████████ ................................. 6

        2. February and March 2021: Google Secured a Protective Order from this Court Through False Statements ....................................... 7

        3. Google Opposed Class Certification by Making False Statements Regarding the Sync Logs ................................................................ 8

        4. Google Gets Caught Red-Handed -- TWICE ............................................ 10

        5. The New Evidence Supports Plaintiffs' Request for Full Preservation ..... 12

IV. CONCLUSION .................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Goodwin v. John*,
　No. 2:19-CV-01642-APG-DJA, 2020 WL 6947690 (D. Nev. Sept. 21, 2020) ......................... 2

*Optional Cap., Inc. v. Kim*,
　No. CV 04-3866 ABS PLAX, 2008 WL 2986660 (C.D. Cal. Aug. 1, 2008),
　*aff'd*, 414 F. App'x 12 (9th Cir. 2011); ....................................................................................... 2

**Other Authorities**

Fed. R. Civ. P. 23(f) ....................................................................................................................... 2

Fed. R. Civ. P. 53(f)(1) .................................................................................................................. 2

## I. INTRODUCTION AND SUMMARY OF RELIEF REQUESTED

Plaintiffs respectfully seek leave to enter the attached May 2, 2022 Supplemental Report of Dr. Zubair Shafiq, associate professor of computer science at the University of California, Davis (the "Supplemental Shafiq Report"), into the record, and for the Court to consider the contents therein when evaluating Plaintiffs' objections and motion to modify the Special Master's April 4, 2022 Sealed Report and Recommendation ("R&R") regarding a preservation plan for the data logs.

Earlier today, May 2, 2022, the Court issued an order directing the parties, in advance of tomorrow's discovery hearing, to be prepared to address how the data log preservation plan effects support for (or challenges to) class certification, liability and damages, and whether any specific alternatives ameliorate any identified issues. *See* Order re May 3, 2022 Discovery Hearing (*Calhoun* Dkt. No. 639). The Supplemental Shafiq Report will assist because it provides the Court with a summary of critical new evidence just produced by Google that bears directly on the Court's evaluation of a data log preservation plan.

Specifically, as directed by the Special Master, Google produced data related to ▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋ This new evidence conclusively proves that ▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋ And good cause exists to admit the new evidence because Google did not produce it until April 22, 2022, a full week after Plaintiffs' deadline to file objections to the R&R. ***The new evidence also proves that Google's prior representations to the Court and to Plaintiffs regarding its inability to track not-synched Chrome usage were false and misleading***.

Accompanying this motion is a joint declaration of David Straite, Lesley Weaver and Jay Barnes (the "Joint Declaration") briefly outlining the background of Google's prior false statements made regarding the sync signals, to help establish good cause for granting this motion. Attached as **Exhibit A** to the Joint Declaration is the Supplemental Shafiq Report explaining the April 22, 2022 production of test data from Google and why it is so important to the question of data log preservation.

## II. LEGAL STANDARD

When hearing objections to a Special Master order, report or recommendations, the Court may receive evidence. Fed. R. Civ. P. 53(f)(1); *see also* Advisory Committee Notes to 2003 Amendments to Subdivision (f) ("The master should provide all portions of the record preserved under Rule 53(b)(2)(C) that the master deems relevant to the report. The parties may designate additional materials from the record, and may seek permission to supplement the record with evidence."). Where new, material evidence has been discovered after an issue has been presented to the Court for determination, "the appropriate procedure [is] to seek leave of court to file supplemental briefing, a request far less extraordinary than reconsideration based upon evidence known but not presented prior to the decision." *Optional Cap., Inc. v. Kim*, No. CV 04-3866 ABS PLAX, 2008 WL 2986660, at *3 (C.D. Cal. Aug. 1, 2008), *aff'd*, 414 F. App'x 12 (9th Cir. 2011); *see also Goodwin v. John*, No. 2:19-CV-01642-APG-DJA, 2020 WL 6947690, at *1 (D. Nev. Sept. 21, 2020) (discussing the court's granting of "leave to file supplemental briefs so [the parties] could address any new evidence obtained in discovery while the motion was pending.").

## III. ARGUMENT: THE COURT SHOULD ADMIT THE NEW EVIDENCE

### A. The New Evidence is Highly Relevant and Will Assist at the Hearing

As the prior briefing makes clear, Plaintiffs object to the Special Master's recommendation that the Court relieve Google of its ordinary course obligation to preserve all relevant data logs. The Special Master identified a limited number of relevant logs (65) from which Google should preserve data, a recommendation that (with the addition of two additional logs) Plaintiffs can accept. But the Special Master did not recommend preservation at all – instead recommending that the Court permit Google to take a small sample from the 65 logs, which Plaintiffs opposed in their objections on April 15, 2022, see Dkt. Nos. 622 (public redacted) and 621-3 (sealed), using evidence available at that time.

Sampling as proposed by the Special Master is not workable for many reasons, most importantly because the putative class only includes Chrome users who do *not* sync their browsers with their Google accounts at the time of the collection; but the R&R, if accepted, *would allow Google to discard the most useful evidence of class membership – both retroactively, and*

*prospectively* – two months after Google told this Court that it was willing to (and had already started to) preserve certain sync information unless the Court were to order otherwise. Google said:

> "Barring any contrary instructions from this Court or Special Master Brush, Google intends to begin preservation of the following data to not waste any more time while the parties are at impasse . . .
>
> 2.  Information showing whether user had sync enabled at the time of the log entry (including "▮▮▮▮▮▮▮▮▮▮") . . .
>
> . . . In addition, Google also proposes to preserve all the Gaia IDs stored in ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ . . .

*See* Joint Discovery Dispute Chart dated March 11, 2022, at Dispute 2.1 (Google's Position). A week later, with respect to a different discovery dispute (Dispute RFP No. 92), the Court issued an order requiring the preservation of at least two not-synced signals in their entirety. *See* Court's Sealed Discovery Order dated March 18, 2022, Dkt. No. 579-2, Ex. 2 at Dispute RFP No. 92 (adopting Google's proposal to preserve the "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" and the "▮▮▮▮▮▮▮").

Google's April 22, 2022 production of new data (and Dr. Shafiq's May 2, 2022 summary thereof) followed the Special Master's order that Google conduct "second round" searches of all relevant logs for data associated with the Named Plaintiffs and associated with ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Supp. Shafiq Report ¶ 4. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Google produced the first batch of results of these searches to Plaintiffs on April 22, 2022 and the results were analyzed during the week of April 25, 2022. Supp. Shafiq Report ¶ 8.

The results are undeniable: as detailed in the Supplemental Shafiq Report and below, the data confirmed that Google ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Supp. Shafiq Report

1  ¶ 11. Google's April 22, 2022 production also revealed ████████████████

2  ████████████████████████ – for example, "sync_feature_enabled███." Supp.

3  Shafiq Report ¶ 12.

4      Google's new evidence and Dr. Shafiq's summary thereof is thus the strongest evidence yet

5  supporting full preservation: it provides the first evidence directly confirming how the ████

6  ████████████████████████████████████████████████████████████████

7  ████████████████████████████████████. It also confirms the existence of

8  ████████████████████████████████████████████████████████████████

9  ████████████████████. This new evidence will thus better inform what must be preserved

10  for this litigation.

11      **B.**    **Good Cause Exists to Admit the New Evidence**

12      Good cause exists for the Court to accept the late, non-duplicative evidence given that

13  Google did not produce it until a full week *after* the April 15, 2022 deadline for Plaintiffs to file

14  objections to the R&R. Supp. Shafiq Report ¶ 6. It was thus unavailable to Plaintiffs on April 15,

15  2022 – ***and unavailable to the Special Master when he wrote his recommendations***. It was then

16  reviewed by Plaintiffs' counsel and by Dr. Shafiq during the week of April 25, 2022. Supp. Shafiq

17  Report ¶ 8.

18      Google's April 22, 2022 production also finally proves the ugly extent of Google's strategic

19  misdirection on the sync log issue. Google falsely represented to the Court early in this case that

20  sync traffic logs do not reveal whether a Chrome user is ***not*** synced, only whether she is synced.

21  But Plaintiffs' own investigation and Google's last-minute admissions revealed that Google's

22  representations were false; in fact ████████████████. In addition, at the direction of the

23  Special Master, Google also recently produced ████████████████████████████

24  ████████████████████████████████. Using this discovery, Plaintiffs

25  then argued in their April 15, 2022 objections that full preservation of the data logs is required,

26  particularly for ████████████████████.

27      Google's prior representations were always suspect, even before Google started to correct

28  some of them. The Chrome browser is spyware. Google's ability to collect the most intimate details

Case 4:20-cv-05146-YGR   Document 641   Filed 05/02/22   Page 8 of 20

of our online lives and ability to make frighteningly accurate inferences about our beliefs, thoughts and preferences is not seriously contested in this case. Indeed so perversive is the data collection that Google's counsel claims preserving just a slice of that data for litigation would be unduly burdensome (even for the largest tech company in history). Google is also able to ▮▮▮▮▮▮▮▮▮▮ using Orwellian-named tools like "▮▮▮▮▮▮" and "▮▮▮▮" and "▮▮▮▮." The data sent by Chrome to Google includes ▮▮▮▮▮▮▮▮▮▮▮▮▮▮; and information that uniquely identifies you, your device, and your household. In the browser's "omnibar," when Chrome's default settings are not changed, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. From this information, Google derives detailed dossiers that it accesses and analyzes in milliseconds every time a user sends a communication on a page where Google has an ad opportunity. And yet Google originally told the Court that the one thing it *doesn't* know is whether the browser is not synced.

      Discovery slowly revealed that Google's representations were false. Although the Special Master "should provide all portions of the record preserved under Rule 53(b)(2)(C) that the master deems relevant to the report," Advisory Committee Notes to 2003 Amendments to Subsection (f), Plaintiffs are in the dark as to what factual record the Court will consider when evaluating Plaintiffs' objections. It is thus appropriate to briefly outline Google' false statements in the record regarding its ability to discern sync status of Chrome users based on data. These facts are included here to establish good cause for today's motion, in light of the April 22, 2022 production from Google conclusively establishing the falsity of each of these representations:

- 5 -   Case No. 4:20-cv-05146-YGR-SVK
PLAINTIFFS' MOT. TO SUPP. ITS OPP. TO GOOGLE'S OBJECTIONS TO REPORT AND RECOMMENDATIONS

1. **January 2021: Google falsely told Plaintiffs <u>in writing</u> that** ██████████████████████████████████████████████████

On January 20, 2021, six months after the complaint was filed,[1] Google first informed Plaintiffs that it had not been preserving data logs beyond the normal retention periods, see Joint Decl. ¶ 5, in violation of explicit, negotiated and Court-ordered obligations to do so under the ESI Protocol. Plaintiffs immediately asked if any of these data sources included sync signals, and on January 29, 2021, Google explicitly represented in writing that ████████████████████ ████████████████████████ Joint Decl. ¶ 7 and Ex. B thereto (letter from Google Counsel dated Jan. 29, 2021, at 5). Google also stated that sync traffic logs only ████████████ ████████████████████████████ *Id*.

Late discovery has proven Google's representations to Plaintiffs in January 2021 to be undeniably false and misleading. Google actually ████████████████████████████ ███████ including specifically the following:

- First, Google maintains ████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████.

- Second, ██████████████████████████████████████████████████ ██████████████████████████████████████ ██████████████████████████

- Third, ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ██████████████████████████████████

- Fourth, certain ██████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ███ *and thus, by definition, not synced*.

---

[1] As Plaintiffs only learned later in the case, Google's decision to wait <u>until precisely six months was spectacularly convenient: many of the critical data logs in this case</u> ███████████ ████████████████████████ efore the Court had an opportunity to weigh in.

**2. February and March 2021: Google Secured a Protective Order from this Court Through False Statements**

Plaintiffs rejected Google's January 2021 request to be relieved of its obligations to comply with the ESI Protocol. In response, on February 5, 2021, Google filed a formal motion for protective order. Dkt. No. 102. Google provided declarations detailing the ostensible burdens associated with preserving Analytics Logs, Display Ads Logs and Activity Logs, but omitted ***sync server logs*** from discussion, and never mentioned whether any fields in any other logs record sync status. In response, among other things, Plaintiffs noted the conspicuous absence of sync logs in the motion, stating that this "omission is alarming[.]" Dkt. 118 at 2. On March 1, 2021, Google filed its Reply, clarifying that its motion had "excluded from its estimates … Chrome sync logs, ***which show sync traffic only for users that have sync enabled***." Dkt. 120 at 4 (emphasis added).

On March 5, 2021, at the hearing on Google's motion, Google counsel repeated the false claim that "the sync traffic logs will not show data for that user who has not enabled sync." Hrg. Tr. 14:13-20. In response to the Court's question whether Google could "identify the number of unsynced users who were using chrome … for an identified period of time," Google told the Court, "that is not a figure that's readily available to Google." *Id.* at 23:22-24:9.

These statements were false because the ▮▮▮▮▮▮▮▮▮▮ specifically:

- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Google first admitted to this ▮▮▮▮ at a deposition a few months ago (see Section 4 below) and quietly disclosed it to the Court on March 11, 2022 in the joint discovery dispute chart (discussed above), without clarifying that prior representations were no longer accurate. The Court then ordered the preservation of this very signal on March 18, 2022 when resolving Dispute RFP No. 92, likely without knowing that the existence of ▮▮▮▮▮▮ flatly contradicted Google's earlier representations to the Court.

- Second, the ██████████████████
████████████████████████████
████████████████████████████
████. As with the ████ signal, the Court on March 18, 2022 accepted Google's offer to preserve the ████████ signal (also in its resolution of Dispute RFP No. 92), but again likely without knowing that Google's quiet admission of the existence of this signal contradicted its earlier representations to the Court the year before.

Google also failed to inform that Court that ████████████████████
████████████████████████████, including:

- In the ████████████, there are at least two fields that we now know ████ ████████ █ ████████ █
████████████████████████ backup.
- In the ████████████████, there are at least three fields that ██
████████████████████████████
████████████████████████████
████████████████████████. See Joint Decl. ¶ 8 and Ex. C thereto (GOOG-CALH-01170421).
- There are also multiple ████████████████
████████████████████████████
████████████████████████████
████████████████████████████
a fact Google failed to disclose to the Court in its motion for protective order and during oral argument.

### 3. Google Opposed Class Certification by Making False Statements Regarding the Sync Logs

When Plaintiffs moved for class certification on October 14, 2021, they still naïvely thought Google had been truthful on January 21, 2021 when it told Plaintiffs: ████████████████

1    ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ So when Plaintiffs' expert Richard Smith independently tested the Chrome browser and observed no fewer than five signals[2] that suggested Google could track not-synced status, he naturally suggested that Google could easily *start* to record the signals somewhere and use that record to identify class members prospectively. Specifically, he identified "a specific signal that Chrome sends to the Google Sync Service to indicate to Google that the user is not Synced and which is accompanied by the specific Google account to which the user has signed-in – for example, an email address." Dkt. 339-22 at 36, ¶ 113. Smith further stated that, "***it would be straightforward for Google to keep a record of these incoming signals*** attached to specific account holders if Google has not done so already." *Id*. ¶ 114 (emphasis added).

One of the signals identified by Smith is the "is_sync_feature_enabled" signal and Smith testified that it indicates "[w]hether the client has full sync (or, sync the feature) enabled or not." *Id*. ¶¶ 139-40. Smith observed that the "is_sync_feature_enabled" signal "is set to zero" when a user is "signed in with sync off." *Id*. ¶ 144. Smith then observed that "[a]fter sync has been turned on," the "is_sync_feature_enabled" value "is now 1 which appears to indicate that Sync has been enabled." *Id*. ¶ 149. He then concluded that "it would be straightforward" for Google to *start* preserving these signals, unaware ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Smith was supported by Dr. Shafiq who opined that it would be technically straightforward for Google to start preserving the signals observed by Smith – and identified ▓▓▓▓ as a location for some storage.

On December 22, 2022, Google opposed the motion for class certification, but never disclosed that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Google also failed to disclose that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ For example, Google offered the Declaration of Tim Schumann, Dkt. 430-16, to rebut Dr. Shafiq's opinion regarding the ease of preserving the sync signals. Schumann claimed that "▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓." *Id*. ¶ 2. Schumann stated that Shafiq's approach would fail because it "▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓"

---

[2] "▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

1  and █████████████████████████████████████
2  ████████████████████████████████████████
3  ████████████████████████." *Id*. ¶ 5. Schumann makes the same statement for Google's
4  Takeout product. *Id*. ¶ 6. Schumann further explains that ████████████████████
5  ████████████████████████████████████████
6  ████████████████████████" *Id*. ¶ 6. The Schumann Declaration thus takes aim at Plaintiffs'
7  suggestions based on public information, but failed to disclose ███████████████
8  ████████████████████████████████████████.

9      **4.**    **Google Gets Caught Red-Handed -- TWICE**

10      There were two times over the past few months where Google partially – and apparently
11  accidentally – disclosed the truth regarding its ability to record not-synced status.
12      First, on January 13, 2022, Google senior engineer Tim Schumann testified at his deposition
13  in Switzerland that ████████████████████████████████████
14  ████████████████████ Joint Decl. ¶ 9 and Ex. D thereto (Schumann Dep. Tr.) at 38:7-
15  25. These signals include the ████ signal discussed above, as well as "█████████████."
16  *Id*. at 58:1-8; 125:10-16. Google admitted through Schumann's testimony that ████████
17  ████████████████████████████████████████
18  ████████████████████████████████████████." *Id*. 131:18-
19  132:9. Google has also created ████████████████████████████
20  ████████████████████████████████████████
21  ████████████████████████████████." *Id*. 189:6-10; Exs. 10-15. The
22  second ████████████████████████████████████
23  ████████████████████████████████████████
24  ████████████████████████████████████████
25  ████████████████████████████████. *Id*. 129:18-130:20; Ex.
26  7. Schumann further admitted that ██████████████████████████████
27  ████████████████████████████████████████. *Id*.
28  94:25-97:14; Depo Ex. 4.  That is a shocking admission which Google has yet to reveal to the Court:

| What Google Told the Court on March 5, 2021 | What Google's Senior Engineer Admitted at Deposition on January 13, 2022 |
|---|---|
| **Court**: Can Google "identify the number of unsynced users who were using chrome … for an identified period of time?"<br><br>**Google**: "that is not a figure that's readily available to Google."<br><br>Hr'g Tr. 23:22-24:9 | **Mr. Schumann**: ███████████████████████████████████████████████.<br><br>Depo Tr. 94:25-97:14 |

Second, Plaintiffs learned of ███████████████ on the very last day of fact discovery (March 4, 2022), almost certainly by accident. Plaintiffs served written discovery requesting that Google fully disclose all logs that record not-synced traffic. In ROG 34, Plaintiffs requested that Google "Identify all Signals sent from Chrome to Google reflecting when a user is not synced." In its initial responses, Google ███████████████████████████████, contrary to Google's prior representations to Plaintiff and to the Court a year earlier:

███████████████████████████████████████████████████████████████████████████████████████████████████████████"

See Joint Decl. ¶ 10 and Ex. E thereto (Google Suppl. Response to ROG 34). This ██████████████████████████████████████████████████████████████████ But Google failed to reveal whether ██████████████████████████████████████████. And Google used the ███████████████████████████████████████████████ Even Google's corrective disclosure was false and misleading.

Then on March 4, 2022, the very last day of fact discovery, Plaintiffs' counsel and their expert Dr. Shafiq ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

▇▇▇▇▇▇▇. Supp. Shafiq Report ¶ 16. Later that evening, at 11:52pm, **literally with *eight minutes* left before the deadline to complete fact discovery**, Google served a surprise amended response to ROG 34 ▇▇▇▇▇▇▇ revealed earlier in the day:

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

*See* Joint Decl. ¶ 10 and Ex. E thereto (Google Suppl. Response to ROG 34).

Google's last-minute disclosure of the "▇▇▇▇▇" signal is deeply suspicious in light of ▇▇▇▇▇▇▇▇▇▇▇▇▇▇. But it's actually far worse: months earlier, as ordered by the Special Master, Google ▇▇▇▇▇▇ the "▇▇▇▇▇" weblog, but, to the best of Plaintiffs' review, there is no record of a field called "▇▇▇▇▇." Google has provided no explanation for ▇▇▇▇▇▇ ▇▇▇▇▇ nor its sudden inclusion in the amended response to ROG 34 ▇▇▇▇▇▇.

One week later, in the March 11, 2022, joint discovery chart submitted to this Court, Google offered to preserve ▇▇▇▇▇▇▇▇▇▇▇ a step welcomed by Plaintiffs. But Google never told the Court that Google had concealed this signal's existence for the entirety of fact discovery. It is a fair question to ask: would Google have ever revealed this signal with eight minutes to spare if Google's ▇▇▇▇▇▇▇ ▇ Are there other sync signals still concealed because Plaintiffs did not have the good fortune to stumble across them?

### 5. The New Evidence Supports Plaintiffs' Request for Full Preservation

The April 22, 2022 production ▇▇▇▇▇▇ establishes conclusively what was starting to be revealed above. Contrary to Google's representations to Plaintiffs and the Court for a year, (i) ▇▇▇▇▇▇▇▇▇▇▇, (ii) ▇▇▇▇▇▇▇ and (iii) ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ microsecond-level precision.

Plaintiffs have already detailed to the Court the myriad ways in which the data was largely obscured because of Google's repeated refusal to produce schema, protos and field descriptions.[3] Because of this, and because Google has repeatedly provided false and misleading information about the signals it collects from synced and not synced users, as of the time of filing their objections to the Special Master R&R, Plaintiffs were forced to make reasoned inferences about many aspects of the logs and how the data therein could be used. Often with only ████████ ████████, neither Plaintiffs, the Special Master nor the Court have ever been able to see precisely what activity is actually recorded by Google and how. For example, we have never before been able to see how frequently this information is logged, ████████████████████████ ████████████████████████████████████████ – providing a rich data set that can support class member identification and damages calculations with precision. For example:

- We knew before April 22 that the ████████████" weblog contains a field called "████████████████." But with the ████████████ produced on April 22, we can now confirm with real-world data, not just charts and testimony, that Google tracks ████████████████████████████████. A ████████ ████████████████████████████████████████████████████ ████████████████████████████ *See* Supplemental Shafiq Report, ¶ 12.
- We knew from earlier-produced field descriptions that the "████████ ████████████████████████████████████████, which is triggered when ████████████████████████████████████████

---

[3] *See, e.g.,* Pls' April 15, 2022 Objections to R&R at Fourth Objection: "Plaintiffs request that Google be ordered to produce the protos for all relevant logs … and with the benefit of that discovery will be able to update the Court before the May 3rd hearing if the discovery suggests additional logs to be added. But without the actual *protos*, Plaintiffs' ability to complete the analysis is substantially hampered. Google, on the other hand, does have the protos. It is deeply prejudicial for Plaintiffs not to have the same information that Google has when evaluating the Special Master's list of 65 logs, and thus Plaintiffs request that Google produce them and Plaintiffs be given sufficient time to review and evaluate." *See also* Plaintiffs Seventh Objection: "The Special Master ordered preservation of all data dictionaries and schemas, including any changes thereto, for each preserved data source. But *production* was not ordered, just *preservation*. Plaintiffs request both preservation and production." *Accord,* Joint Discovery Dispute Chart filed March 11, 2022 at Dispute 2.1 (Plaintiffs' Position): "Unfortunately, Plaintiffs are unable to tell the Court exactly what these fields contain because Google refuses to produce full schemas or protos for ████ such that Plaintiffs would be able to answer that question."

███████████████████████, we can use it identify a subset of the not signed in members of our class. Unfortunately, Google's retention period for this log is ███████████████ Dr. Shafiq's tests in March turned off sync in early March, and thus the related signal ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████, not just sampling. *See* Supplemental Shafiq Report, ¶ 13.

- In ██████████ (one of the two most important data sources in this case), there is a field called "████████████████," which we knew. But in the April 22 production from Google, we now see that this field records ███████████████████████████████████. For example, in the April 22 production, we see ████████████████████████████████████████████████████████████ include the attribute ████████████." The timestamp for these ██████ is March 5, 2022, which perfectly matches the time when █████████████████████████████████ between 9:48am -10:00am on March 5, 2022. █████████████████████████████████████████████ ██████████ should be preserved in its entirety. *See* Supplemental Shafiq Report, ¶ 14.

The Supplemental Shafiq Report contains no argument, just a summary of the new facts learned this week following review of Google's April 22, 2022 test account data. Plaintiffs are also not changing their objections in any way: Plaintiffs still ask the Court to reject the Special Master's recommended sampling and that the Court order full preservation, particularly of all logs that contain signals from which Google could infer sync status. Plaintiffs today only ask that the Court accept the new evidence into the record as support for the previously made arguments and to counter previous false statements Google made that have now been disproven. The April 22, 2022 test account data by all rights should have been produced well before April 15, 2022, and it would

be unfairly prejudicial to Plaintiffs if the Court did not accept this important new evidence into the record.

## IV.   CONCLUSION

Plaintiffs respectfully request that the Court grant Plaintiffs leave to supplement the record with respect to their objections to the Special Master R&R and accept the Supplemental Shafiq Report into evidence. To comply with the Court's Order re: May 3, 2022 Discovery Hearing (Dkt. No. 639, Plaintiffs will need to refer to the new evidence, and good cause exists to receive it into the record.

Dated: May 2, 2022

| | |
|---|---|
| **BLEICHMAR FONTI & AULD LLP** | **DICELLO LEVITT GUTZLER LLC** |
| By:   */s/ Lesley E. Weaver* <br> Lesley E. Weaver (Cal. Bar No. 191305) <br> Angelica M. Ornelas (Cal. Bar No. 285929) <br> Joshua D. Samra (Cal. Bar No. 313050) <br> 555 12th Street, Suite 1600 <br> Oakland, CA 94607 <br> Tel.: (415) 445-4003 <br> Fax: (415) 445-4020 <br> lweaver@bfalaw.com <br> aornelas@bfalaw.com <br> jsamra@bfalaw.com | By:   */s/ David A. Straite* <br> David A. Straite (admitted *pro hac vice*) <br> Corban Rhodes (admitted *pro hac vice*) <br> One Grand Central Place <br> 60 E. 42nd St., Suite 2400 <br> New York, NY 10165 Telephone: <br> (646) 933-1000 <br> dstraite@dicellolevitt.com <br> crhodes@dicellolevitt.com <br> <br> Amy E. Keller (admitted *pro hac vice*) <br> Adam Prom (admitted *pro hac vice*) <br> Sharon Cruz (admitted *pro hac vice*) <br> Ten North Dearborn Street, 6th Fl. <br> Chicago, Illinois 60602 <br> Tel.: (312) 214-7900 <br> akeller@dicellolevitt.com <br> aprom@dicellolevitt.com <br> scruz@dicellolevitt.com <br> <br> *Counsel for Plaintiffs* |
| **SIMMONS HANLY CONROY LLC** | |
| By:   */s/ Jay Barnes* <br> Jason 'Jay' Barnes (admitted *pro hac vice*) <br> An Truong (admitted *pro hac vice*) <br> 112 Madison Avenue, 7th Floor <br> New York, NY 10016 <br> Tel.: (212) 784-6400 <br> Fax: (212) 213-5949 <br> jaybarnes@simmonsfirm.com <br> atruong@simmonsfirm.com | |

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

I, David Straite, attest that concurrence in the filing of this document has been obtained from the other signatories. I declare under penalty of perjury that the foregoing is true and correct. Executed this 2nd Day of May, 2022, at New York, New York.

*/s/ David Straite*

David Straite

## CERTIFICATE OF SERVICE

I hereby certify that on May 2, 2022, I caused to be electronically filed the foregoing document using the CM/ECF system, which will send notification of such filing to all counsel of record registered in the CM/ECF system.

*/s/ David Straite*

David Straite