# EXHIBIT A

UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**BLEICHMAR FONTI & AULD LLP**
Lesley Weaver (Cal. Bar No.191305)
Angelica M. Ornelas (Cal. Bar No. 285929)
Joshua D. Samra (Cal. Bar No. 313050)
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
*lweaver@bfalaw.com*
*aornelas@bfalaw.com*
*jsamra@bfalaw.com*

**SIMMONS HANLY CONROY LLC**
Jason 'Jay' Barnes (admitted *pro hac vice*)
An Truong (admitted *pro hac vice*)
Eric Johnson (admitted *pro hac vice*)
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel.: (212) 784-6400
Fax: (212) 213-5949
*jaybarnes@simmonsfirm.com*
*atruong@simmonsfirm.com*
*ejohnson@simmonsfirm.com*

*Counsel for Plaintiffs*

**DiCELLO LEVITT GUTZLER LLC**
David A. Straite (admitted *pro hac vice*)
Corban Rhodes (admitted *pro hac vice*)
One Grand Central Place
60 East 42nd Street, Suite 2400
New York, NY 10165
Tel.: (646) 933-1000
*dstraite@dicellolevitt.com*
*crhodes@dicellolevitt.com*

Amy E. Keller (admitted *pro hac vice*)
Adam Prom (admitted *pro hac vice*)
Sharon Cruz (admitted *pro hac vice*)
Ten North Dearborn St., Sixth Floor
Chicago, IL 60602
Tel.: (312) 214-7900
*akeller@dicellolevitt.com*
*aprom@dicellolevitt.com*
*scruz@dicellolevitt.com*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

PATRICK CALHOUN, et al., on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

GOOGLE LLC,

Defendant.

Case No. 4:20-cv-5146-YGR-SVK

**PLAINTIFFS' RESPONSE TO GOOGLE'S OBJECTIONS TO THE SPECIAL MASTER'S SEALED RECOMMENDATIONS AND ORDER DATED APRIL 4, 2022 (DKT NO. 604)**

Fed. R. Civ. P. 53(f)(2)

Referral:         Hon. Susan van Keulen, USMJ
Special Master:   Douglas A. Brush
Hearing Set:      May 3, 2022, 2:00pm PT

**UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

## I.    INTRODUCTION

The flip side of a preservation order is a license to *delete*.  No matter how relevant the data – whether to prove class membership, or to establish liability, or to quantify damages – Google will argue that it is free to delete any data not specifically included in the Court's plan for preservation. It is important to get it right.

At the start of this case, Google argued that ███████ were relevant to the litigation. With the assistance of the Special Master, we learned that the real number ███████ (in Plaintiffs' view), and even Google eventually admitted that true number approached ██ relevant logs. But only 65 of them, appearing in Exhibit A to the Special Master's Report and Recommendations dated April 4, 2022 (Dkt. No. 604, the "R&R"), are now recommended for sampling and limited preservation.  These 65 data sources are ███████ of the total number of relevant logs.  No matter whether preserved in their entirety (as Plaintiffs propose) or merely sampled (as proposed in the R&R), these 65 are the bare minimum to ensure class-wide preservation of relevant data.

The Special Master clearly put substantial thought into the selection. With only a couple of necessary additions (for example, logs that reveal sync state), see Dkt. No. 622, Third Objection, and Ex. 2 thereto (the April 15, 2022 declaration of Dr. Shafiq, ¶¶6-7), Plaintiffs can live with the Special Master's selection. Google however, takes aim at the two most important data sources – GAIA ████ and Zwieback ████ – arguing that preservation of these two sources would be overbroad and burdensome. But as shown below, it is only because of the inclusion of GAIA ████ and Zwieback ████ that the exclusion of so many other logs can work. ***They are the two most important logs in this case***.  Without them, a preservation plan cannot work.

Google also argues that the "████ infrastructure does not allow for the independent determination of whether a user ID is linked to a user in the United States.  As discussed in Plaintiffs' objections, Dkt. No. 622 (Fifth Objection), it is essential that the same user IDs (Gaia, Biscotti and Zwieback) be used to search all 65 data sources.  If a user ID is known to be associated with a US user when searching ████ corpora, it remains a US user ID when used in ████. But even if the Court were to adopt Google's plan to use different user IDs across different logs,

1  Google absolutely can identify US users in ███ Google's request to use IDs from across the

2  globe is unnecessary and should be rejected.

3      Finally, Google has made several "adjustments" to the R&R on a line-by-line basis, but

4  without calling them objections (in fact, the adjustment is usually preceded by the statement, "no

5  objection"). Plaintiffs ask for clarification of some of these instances, as discussed below.

6      This response is supported by the Supplemental Declaration of Dr. Zubair Shafiq dated

7  April 25, 2022 (the "Supp. Shafiq Decl.").

8  II.    ARGUMENT

9      A.    **GAIA** ███ **and Zwieback** ███ **Are the Two Most Important Data Sources**

10      The R&R recommends that Google preserve data from Gaia ███ and Zwieback ███

11  linked to 10,000 user IDs, no matter which column in ███ the data resides. *See* R&R, Ex. A,

12  Index Nos. 28 and 36. That recommendation follows months work done by the Special Master and

13  the parties to identify data relevant to Plaintiffs' claims, including the production of schema and

14  field names for many of the relevant logs. It also included the (belated) production of Named

15  Plaintiff data from these very sources, which functions as a roadmap for preservation. Nevertheless,

16  while acknowledging the fact that the ███ data was "specifically discussed by the parties and

17  the Special Master," *see* objection to Index No. 36, Google rejects the recommendation that all

18  ZWBK- ███ and GAIA- ███ data be sampled, and instead offers its own "more nuanced

19  approach," *id.*, by which Google means that only a handful columns be searched. Effectively,

20  Google wants ███ of the two most important data sources to be off-limits to preservation. Google's

21  objections and proposed modification should be rejected for two reasons.

22      1.    **Google Proposes to Exclude the Most Important Data Sources**

23      First, Google's "nuanced approach" to search just a few ███ columns will exclude

24  critical class member data that will not exist anywhere else. For example, on March 31, 2022 (a

25  month after the conclusion of fact discovery), Google finally produced data from ███ related to

26  the Named Plaintiffs. Shafiq Decl. ¶ 10. It was illuminating, but only because Google was required

27  to (and presumably did) search across all ███ columns. Specifically, for ZWBK- ███ the

28  Plaintiff data produced by Google on March 31, 2022 was found in ████████

PLAINTIFFS' OPP. TO GOOGLE'S OBJECTIONS TO REPORT AND RECOMMENDATIONS

1    █████ but none of these █████████████ is included in Google's proposal. ***Not a single one.***

2    Shafiq Decl. ¶ 11.  For GAIA-████ the Plaintiff data produced by Google on March 31, 2022

3    was found in ██████████████████████, but only █ of these columns are included in

4    Google's proposal. Shafiq Decl. ¶ 12.  And none of this data had been produced in prior productions

5    sourced from ████████ – if it had not been for the Court's order requiring the production of data

6    specifically from ██████ substantial volumes of data related to the Named Plaintiffs would have

7    remained hidden. Shafiq Decl. ¶ 13. Plaintiffs now have this data only because Google searched

8    for the Plaintiff IDs across all of the █████ columns, and the Special Master its ordered production.

9    And Google should now preserve it class-wide.

10       To be clear, the ██████ columns that Google wants to exclude from Special Master's

11   preservation proposal uniquely contain class member data that is highly relevant to this case. For

12   example, the column "██████████████" contains critical URLs of websites from where Google

13   Analytics source code caused Chrome transmissions to Google. Shafiq Decl. ¶ 8. The ██████

14   columns that Google is proposing to exclude also contain pertinent information such as:

15       1.   **user profile** (*e.g.*, "████████████████████████████

16   ██████████████████)

17       2.   **location**  (*e.g.*, "███████████████ ████████ ███████

18   ███████████████)

19       3.   **browser information** (*e.g.*, ██████████ █████████████████

20   ███████████), and

21       4.   **revenue information** ("████████████").

22   Shafiq Decl. ¶ 9. Furthermore, Zwieback ██████ contains Gaia information (i.e., personal

23   information collected by Google is linked to actual user identity).  For example, here are the

24   annotations explaining the data stored in one Zwieback ███████ column called

25   ██████████████████," a column that Google hopes not to preserve but which clearly identifies

26   the Gaia ID:

27

28



Shafiq Decl. ¶ 15 (row 134).  And that is just one example. The following Zwieback

columns also specifically mention Gaia:



Shafiq Decl. ¶ 16.  Respectfully, before the Court entertains a request from Google to exclude ▉

of the columns in Zwieback ▉ and Gaia ▉ Google should have first informed the Court

specifically what type of class member data is in those columns, and provide a basis for excluding

that data from preservation. Google makes no effort to justify its artificially narrow approach, and

the Special Master's recommendation to include all of Zwieback ▉ and Gaia ▉ should

be adopted.

### 2. Google Does Not Demonstrate Undue Burden

Second, Google has not even attempted to satisfy its burden of showing that the preservation

it objects to would be unduly burdensome or disproportionate.  Google's claim of burden here is

entirely unsupported by any evidence or even a plausible explanation.  Instead, Google only claims

that multiple columns in ▉ are "owned and controlled by different teams."  But the origin of

the information is a red herring since the information now resides in a single infrastructure – ▉

– that can be searched ▉. Shafiq Decl. ¶ 19. Google also

has the ability to search the logs with "▉", also known as "

▉" or "▉

▉. GOOG-CALH-00027774; *see also* Shafiq

Decl. ¶ 19.

**B.    U.S. Users are Readily Identifiable in**

With respect to logs contained within ████,[1] Google objects that "████ does not have a way of identifying U.S. users," and therefore, Google proposes "to preserve a daily sample of events associated with 10,000 randomly selected UIDs worldwide."  *See* Google Objections to Index Nos. 26-37. Google provides absolutely no explanation, evidence or other support for its position beyond the single declaratory sentence stating that "████ does not have a way of identifying U.S. users," and in fact, that statement is demonstrably false.

Both ZWBK-and GAIA-████ each contain *many* fields that explicitly identify users as U.S. vs. non-U.S. based.  For example, in a recent production of data related to just one Named Plaintiff, Google provided data related to ██ different fields in which Google ████████ ██e in Gaia-████ Shafiq Decl. ¶ 21:



---

[1]Specifically, the Logs in R&R, Ex. A., Index Nos. 26, 27, and 29-35.



Similarly, in her Zwieback-██████ production, there were at least ██████████

██████████ (Shafiq Decl. ¶ 22):

Regardless, even if it were true that the ██████ databases did not themselves contain any signals from which US/non-US location can be identified or inferred (even though it is abundantly clear that they do in fact contain many such signals), that is entirely beside the point. If a sample of UIDs is to be drawn over Plaintiffs' objections, it must be drawn using *the same 10,000 UIDs across all logs* in order for it to be a reliable way to make inferences about the behavior of Chrome users. Therefore, once the sample of 10,000 UIDs are identified as US-based UIDs—whether from ██████ data or elsewhere—it does not matter whether that information exists in ██████ because

1   the relevant data associated with those 10,000 UIDs will simply be preserved from ███ without

2   any need to look to the US/non-US signals within ███

3       **C.**    **Plaintiffs Request Clarification of Several Points**

4       Google makes several "clarifying" comments after representing that it has "no objection"

5   to the R&R, which themselves require clarification.  Respectfully, Plaintiffs request as follows:

6       **1.**    **Index No. 1, Analytics Log**: the R&R says, "This Data source name may

7       have been truncated. If there are more than 3 data sources with this 'root',

8       please advise Plaintiffs and they may select up to three of these data sources

9       for preservation in the same manner as the other data sources identified

10      herein."  Google's response does not definitively state whether there are in

11      fact more than 3 data sources with this root; instead, Google says it agrees

12      to preserve data from three "relevant" log sources with this root.  Plaintiffs

13      request that Google definitively state whether there are more than three; if

14      so, the R&R says Plaintiffs (not Google) may choose the three to preserve.

15      **2.**    **Index No. 11,** ███ the R&R log name does not match what Google

16      agrees to preserve.  Plaintiffs request clarification.

17      **3.**    **Index No. 13,** ███ the R&R said the Display Ads logs should

18      include content from DoubleClick and Google Ad Manager.  Plaintiffs

19      request that Google confirm that the logs identified in its response conform

20      to the R&R requirement.

21  **III.**    **CONCLUSION**

22      Plaintiffs respectfully request that the Court enter Plaintiffs' proposed form of order (Dkt.

23  No. 622-2) modifying the Special Master's Report and Recommendations to preserve all relevant

24  data sources on a class-wide basis.  In the alternative, Plaintiffs request that at a minimum, the

25  Court reject Google's objections that would significantly narrow the sampling that the Special

26  Master has recommended.

27

28

Dated: April 25, 2022

**BLEICHMAR FONTI & AULD LLP**

By:    /s/ Lesley E. Weaver
Lesley E. Weaver (Cal. Bar No. 191305)
Angelica M. Ornelas (Cal. Bar No. 285929)
Joshua D. Samra (Cal. Bar No. 313050)
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
*lweaver@bfalaw.com*
*aornelas@bfalaw.com*
*jsamra@bfalaw.com*

**SIMMONS HANLY CONROY LLC**

By:    /s/ Jay Barnes
Jason 'Jay' Barnes (admitted *pro hac vice*)
An Truong (admitted *pro hac vice*)
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel.: (212) 784-6400
Fax: (212) 213-5949
*jaybarnes@simmonsfirm.com*
*atruong@simmonsfirm.com*

**DICELLO LEVITT GUTZLER LLC**

By:    /s/ David A. Straite
David A. Straite (admitted *pro hac vice*)
One Grand Central Place
60 E. 42nd St., Suite 2400
New York, NY 10165 Telephone:
(646) 933-1000
*dstraite@dicellolevitt.com*

Amy E. Keller (admitted *pro hac vice*)
Adam Prom (admitted *pro hac vice*)
Sharon Cruz (admitted *pro hac vice*)
Ten North Dearborn Street, 6th Fl.
Chicago, Illinois 60602
Tel.: (312) 214-7900
*akeller@dicellolevitt.com*
*aprom@dicellolevitt.com*
*scruz@dicellolevitt.com*

*Counsel for Plaintiffs*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)

I, Jay Barnes, attest that concurrence in the filing of this document has been obtained from the other signatories. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 25th Day of April, 2022, at New York, New York.


*/s/ Jay Barnes*
_____

Jay Barnes

1

## **CERTIFICATE OF SERVICE**

2          I hereby certify that on April 25, 2022, I caused to be electronically filed the foregoing

3    document using the CM/ECF system, which will send notification of such filing to all counsel of

4    record registered in the CM/ECF system.

5

6                                                              */s/ Jay Barnes*

7                                                              Jay Barnes

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28