# EXHIBIT B

# Redacted Version of Document Sought to be Sealed

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

quinn emanuel trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543 | TEL (213) 443-3000 FAX (213) 443-3100

WRITER'S DIRECT DIAL NO.
**(213) 443-3243**

WRITER'S EMAIL ADDRESS
**violatrebicka@quinnemanuel.com**

January 29, 2021

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
**VIA E-MAIL**

David A. Straite
KAPLAN FOX & KILSHEIMER LLP
850 Third Avenue
NEW YORK, NY 10022
E-Mail: dstraite@kaplanfox.com

Lesley A. Weaver
BLEICHMAR FONTI & AULD LLP
555 12TH ST., SUITE 1600
OAKLAND, CA 94607
E-Mail: lweaver@bfalaw.com

Jay Barnes
SIMMONS HANLY CONROY LLC
112 MADISON AVENUE, 7TH FL.
NEW YORK, NY 10016
E-Mail: jbarnes@simmonsfirm.com

Re:   *Calhoun, et al. v. Google LLC*, 5:20-cv-5146-LHK-SVK (N.D. Cal.)

Dear Counsel,

Thank you for continuing to meet and confer on ESI preservation with us. As you will recall, the parties discussed logs during our ESI Protocol meet-and-confers in October. At that time, we informed you that Google has not changed the regular course of business retention periods of logs as that would be entirely disproportionate to its obligations under the Rules. The parties decided to defer further discussions on this issue to a meet and confer on the ESI Checklist.

Plaintiffs allege they understood certain Google disclosures concerning Chrome to mean that when they browsed the Internet on Chrome without sync enabled, Google would not receive the basic browsing data it collects on behalf of websites to provide Google Analytics and Ad Manager web-services. Thus, Plaintiffs' claims turn on the narrow issue of how Google's disclosures in its Privacy Policy and Chrome Privacy Notice may reasonably be interpreted.

As we explain in this letter, Google is already fulfilling its preservation obligations in this litigation. Among other information, Google is preserving data related to the Google Accounts you have indicated are associated with the Named Plaintiffs. Plaintiffs now ask Google to suspend the

quinn emanuel urquhart & sullivan, llp

LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE | BOSTON | SALT LAKE CITY
LONDON | TOKYO | MANNHEIM | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS | ZURICH | SHANGHAI | PERTH | STUTTGART

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

regular retention policies of all logs that may record any event-level data of Chrome users in the United States. Plaintiffs' request is grossly disproportionate to the needs of the case.

**Information About the Logs Implicated By Plaintiffs' Preservation Demand**

Plaintiffs' preservation demand implicates certain Identity logs, Analytics logs, and Display Ad logs. These logs contain information about user website visits. The Identity logs are linked to a user's Google Account. The Analytics and Display Ad logs are of two types: either linked to a user's Google Account ("Google Account keyed logs") or linked to another identifier ("non-Google Account keyed logs").

The log data is not limited by geographic region, by browser, or by browser mode (for example, for users browsing on Chrome, the logs record activity of users whether they are synced or browsing without Sync enabled). For that reason, Plaintiffs' preservation request sweeps in a plethora of event-level data for millions of individuals who are not putative class members.

Moreover, the data in Google Account-keyed logs is subject to user controls. At the "My Activity" page,[1] a user can set auto-deletion periods (3 months, 18 months, or 36 months), as well as review and delete individual entries of the data Google received when that user visited a website that used Google services. Those deletion requests are then propagated to the relevant Google Account keyed logs.

In addition, the data in the Google Analytics logs is subject to the control of the Google Analytics' customers on whose behalf Google collects the data. The retention periods on the data collected on those logs is therefore set by each website on whose behalf the data is collected.

Of the logs described above, the only category of logs for which the retention periods are not subject to user or website control are the non-Google Account keyed Display Ad logs. As explained in Google's privacy policy, when a user is not signed in, Google stores the information it collects with unique identifiers tied to the browser, application or device. These logs are keyed to cookies that identify the browser. Those cookies expire in ▓▓▓▓ on a user's browser and the logs are processed after ▓▓▓▓ by hashing the user ids. The logs are not deleted. Google hashes the cookie values on these logs to protect user privacy.

**Suspending the Retention Periods On These Logs Is Not Feasible**

Plaintiffs ask Google to suspend "any further destruction of this data until the Court has an opportunity to weigh in." Ltr. at 1. To be clear, Google is not "destroying" data. As explained above, the data is subject to retention periods that are largely controlled either by users or Google's customers. The only category of logs that is not subject to such controls (non-Google Account keyed Display Ad logs) is being preserved.

---

[1] *See* https://myactivity.google.com/activitycontrols/webandapp.

2

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

Plaintiffs' demand that Google suspend retention policies and override user and customer retention decisions is an unrealistic one. Google's retention periods for the logs at issue are carefully calibrated to address many factors, including the massive size of the logs and the amount of data they contain and Google's data privacy commitments and legal obligations.

*First*, the sheer size of these logs makes Plaintiffs' demand unworkable. These logs cover ▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and include data reflecting the activity of ▮▮▮▮ of users, many of whom are not putative class members. Google estimates that suspending preservation of these logs—even if possible—would result in an additional ▮▮▮▮▮▮ of data needing to be stored *every* ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Further, any suspension of the retention periods is complex—it is not as simple as an on/off switch. The effort involved with suspending the retention periods would entail ▮▮▮▮▮▮▮▮ of work by teams of engineers. Further, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮—which would continue increasing throughout the life of the case. By way of example, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. It defies reason to believe that Plaintiffs will spend the resources necessary to host, manage, review, and actually use in this litigation *many multiples* of that amount of data.

Simply put, such substantial costs just for preservation are grossly disproportionate to the needs of a case in which Plaintiffs allege no monetary harm, and where they have yet to articulate a need for all of the data at issue. *See Lord Abbett Mun. Income Fund, Inc. v. Asami*, 2014 WL 5477639, at *3 (N.D. Cal. Oct. 29, 2014) (stating "[t]his district recognizes that the proportionality principle applies to the duty to preserve potential sources of evidence" and holding that requiring a party to continue to pay $500 per month to store computers outweighed the likely benefit of maintaining the computers.) As explained above, the logs Plaintiffs demand Google preserve are overly inclusive and implicate a substantial amount of information that is irrelevant here because not limited by geographic region, by browser, or by browser state. Since there is no reason to think that even a fraction of this data will ever be used in litigation, Plaintiffs' demand that it all be preserved is disproportionate to the needs of the case. N.D. Cal. Guideline 1.03 (proportionality standard set forth in Rule 26(b)(1) applies to preservation of information); see also Fed. R. Civ. P. 37(e) Adv. Comm. Notes (2015) ("[P]erfection in preserving all relevant electronically stored information is often impossible."). Preservation should not be required here because it is unworkable and Plaintiffs have failed to articulate a need for the information.

*Second*, the preservation you demand is also unfeasible because it would undermine Google's compliance with its legal obligations, its public commitment to user privacy, and compliance with its contractual obligations. Google's procedures and processes are designed to comply with a complex array of applicable data privacy laws and regulations. Similarly, its retention periods and data privacy policies are carefully crafted to abide by Google's legal obligations under laws in various jurisdictions in which it operates, including EU General Data Protection Regulation 2016/679, the California Consumer Privacy Act (CCPA), and Lei Geral de Proteção de Dados

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

(LGPD).[2] The retention policies at issue here reflect the requirements in these laws and regulations. The logs record data not limited by geographic region, by browser, or by browser mode (synced versus without sync enabled) and therefore implicate event-level data for ▮▮▮ of individuals who are not putative class members. Google's preservation obligation is not so broad as to compel it to put aside its obligations to respect users' deletions and our data retention policies for data beyond what is strictly necessary to the litigation.

Beyond its compliance obligations, Google constantly strives to implement strong privacy protections that reflect additional guidance of data protection authorities. Suspending the ability of all U.S.-based users to control the data associated with their accounts would cause Google to run against its representations to users, and is inconsistent with Plaintiffs' ostensible goal of preserving users' privacy and control over their data. Similarly, Google maintains and processes data it receives through Google Analytics on behalf of the websites that use Google Analytics. Those websites, just like Google users, have the ability to set retention periods and delete data. Suspending the ability of all Analytics customers—whose websites may have been visited by Chrome users without sync enabled—to delete data that Google stores on Analytics customers' behalf is unduly burdensome, not proportional to the needs of the case and may be inconsistent with our contractual obligations.

Google's commitments to data privacy make suspending the regular retention periods for the Logs even more burdensome and disproportionate to the needs of the case. In fact, citing similar privacy concerns, Plaintiffs have themselves refused to produce any of their own data relating to their internet activity unrelated to Chrome. In our meet and confer this week regarding deficiencies in Plaintiffs' discovery responses, Plaintiffs took the position that they would not even produce a list of the non-Chrome apps and programs through which they access the Internet and share data on the ground that such a list would invade their privacy. Yet, at the same time, Plaintiffs demand that Google preserve the browsing data generated by ▮▮▮ of Chrome users. Plaintiffs cannot have carte blanche to demand that Google preserve the browsing data of all Chrome users while simultaneously refusing to provide similar data reflecting their own internet activity based on purported privacy concerns—particularly given that the Named Plaintiffs, unlike the users whose activity is reflected in the logs, have chosen to participate in litigation and to undertake the same discovery obligations that apply to Google.

**Google's Proposal**

Google is willing to work with Plaintiffs to resolve this preservation dispute. But the solution must be practical and tailored to the realities of this litigation. There is no reasonable justification for preserving ▮▮▮ of entries (encompassing much irrelevant information) to the tune of ▮▮▮ ▮▮▮ in costs. The far more reasonable path to a compromise is to identify categories of data collected by Google Analytics and Ad Manager that are potentially relevant to Plaintiffs' claims. Google is willing to provide Plaintiffs the following: (1) Google Account subscriber information Google has already preserved for each of the Named Plaintiffs, which will contain, among other information, Plaintiffs' Google Account name, Google Account ID, date of account

---

[2] *See* https://privacy.google.com/businesses/compliance/.

4

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

creation, email address, alternate email address, IP logs that will contain IP addresses and User Agents, cookie values related to Plaintiffs' sign-ins; and (2) My Activity information Google has similarly preserved for each of the Named Plaintiffs, which will include URL information on browsing activity and time stamps (if not deleted by Plaintiffs), and additional data related to Plaintiffs' activity on websites that used Ad Manager or Analytics services, provided that Plaintiffs are willing to agree to a stipulated consent order permitting Google to produce that information. This information will provide Plaintiffs with categories of data collected by the Analytics and Ad Manager logs.

As a further compromise, and if it will aid the parties in resolving this dispute without Court intervention, Google is also willing to make available to Plaintiffs, subject to a stipulated consent order, the underlying data associated with Named Plaintiffs' Google Accounts as recorded in the Ad Manager logs that are keyed to Google Accounts. This will satisfy Plaintiffs' demand for a sample without undermining Google's legal obligations and privacy commitments to its other users.

Google is also preserving data associated with the cookie values you have identified for each Named Plaintiff as recorded in the Analytics and Ad Manager logs that are not keyed to Google Accounts. However, because the cookie values are unauthenticated, there are additional privacy concerns associated with providing this information to Plaintiffs. For example, the data associated with these cookies could show browsing activity by non-Plaintiffs who are using Plaintiffs' devices. Google goes to great lengths to prevent identification of users who choose not to sign in to their Google Accounts while browsing the web. That said, Google is willing to preserve this information to address Plaintiffs' purported preservation concerns, but does not otherwise waive arguments relating to the propriety of any production.

**Miscellaneous**

In your letter, you also asked about "logs reflecting synced and unsynced browser states." Disabling sync is a client-side action that is not visible server-side (i.e., to Google). Therefore, Google does not have any logs showing when a user is not synced. We also refer you to Google's responses to Plaintiffs' Interrogatory Numbers 3 and 4: "Google does not maintain information showing the number of Chrome users in the United States who did not sync their Chrome browser with a Google Account. . . . Google maintains information in the ordinary course of business that can be used to show sync-traffic—[REDACTED]—from Google Accounts that had sync enabled and appeared to be in the United States." Google confirms this statistical information is not subject to any auto delete function. Google bases this statistical information on sync traffic logs that are retained for [REDACTED], with some signals stored for [REDACTED]. These logs show sync traffic Google received from users who had sync enabled.

Finally, Plaintiffs' request for a Rule 30(b)(6) deposition is premature (as Google is already providing the relevant information), and the list of topics is objectionable on grounds that will be explained in Google's Objections to the Notice shortly. In light of the information provided above, please let us know what additional questions, if any, Plaintiffs have.

5

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

\*   \*   \*

If helpful, we are available to meet and confer with you on these issues Monday, February 1 at 3 p.m. Pacific or Tuesday, February 2 at 9 a.m. Pacific.

Very truly yours,

QUINN EMANUEL URQUHART & SULLIVAN, LLP


*/s/ Viola Trebicka*
Viola Trebicka