# EXHIBIT A

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUNE BENNETT, on behalf of herself and all others similarly situated, and GERALD MCGHEE,<br><br>Plaintiffs,<br><br>v.<br><br>NORTH AMERICAN BANCARD, LLC,<br>Defendant. | Case No.:  17-cv-00586-AJB-KSC<br><br>**ORDER DENYING PLAINTIFF JUNE BENNETT'S MOTION FOR CLASS CERTIFICATION**<br>**(Doc. No. 165)** |

Presently before the Court is Plaintiff June Bennett's ("Bennett") motion for class certification. (Doc. No. 165.) On April 14, 2022, the Court heard oral arguments and took the matter under submission. For the reasons set forth below, the Court **DENIES** the motion for class certification.

## I.     BACKGROUND

This action arises out of an alleged "bait and switch" scheme by Defendant North American Bancard, LLC ("Defendant"). The theory of Bennett's case is that Defendant promised its customers a specific pay-as-you-go service but failed to deliver by eventually assessing fees.

Defendant offers mobile payment solutions that provide nationwide customers, including individuals, small business owners, and merchants, "convenient, low cost point

1

of sale credit card payment processing services, including credit card readers that can be connected to mobile devices." (Doc. No. 165-1 at 8.) Between 2011 and May 2018, Defendant offered one "pay-as-you-go" program under two brand names: "PayAnywhere" and "PhoneSwipe" (the "Service" or, collectively, the "Services"). These two brands were ultimately combined under the "PayAnywhere" name in May 2018. Both Services were originally sold as a purely no out-of-pocket or pay-as-you-go offering. To obtain the credit card processing services, merchants were required to apply on either payanywhere.com or phoneswipe.com. This application required prospective merchants, such as Bennett, to agree to either PhoneSwipe or PayAnywhere's Terms and Conditions of Merchant Service Agreement ("the MSA").

In May 2011, Bennett signed up for the PhoneSwipe service and a credit card reader for a small business she and her husband owned and operated called "Santa Rocks." Before applying for the Service, Bennett understood there would be no recurring or setup charges, and that she would only be charged a fee for each transaction processed using the Service.

Toward the end of 2015, Defendant decided to add a new monthly non-use or "Inactivity Fee" to PayAnywhere and PhoneSwipe. It was and still is a monthly $3.99 fee automatically debited from the bank accounts of "inactive" merchants, i.e., those who had not processed a transaction in twelve months. Prior to rolling out the new Inactivity Fee, Defendant notified existing customers by email about the new fee. The email blast also provided a "live" link the merchants could click if they chose to cancel the service. Defendant continued to provide "inactive" merchants with such monthly email notices through January 2018. Defendant also provided information about the Inactivity Fee on its websites.

Around February 2017, Defendant began charging Bennett monthly Inactivity Fees, which she did not notice until mid-2018. Upon noticing the charges, Bennett called Defendant and cancelled her account. Defendant refunded the last Inactivity Fee it deducted but has refused to refund any others.

///

Plaintiff Gerald McGhee ("McGhee") instituted this lawsuit on March 24, 2017, by filing the class action complaint. (Doc. No. 1.) McGhee thereafter filed a motion to certify the class in October 2020, (Doc. No. 84), which the Court denied without prejudice, (Doc. No. 126). On October 1, 2021, McGhee filed the First Amended Complaint ("FAC"), which added Bennett as a named plaintiff. (Doc. No. 156.) Plaintiffs argue Defendant falsely promised its hundreds of thousands of PayAnywhere and PhoneSwipe customers a no out-of-pocket cost, "pay-as-you-go" service plan. Plaintiffs assert claims for (1) fraudulent concealment; (2) intentional misrepresentation; (3) restitution/unjust enrichment; (4) violations of California's Unfair Competition Law ("UCL"); (5) violations of California's False Advertising Law ("FAL"); and (6) conversion.

## II. LEGAL STANDARD

A plaintiff seeking to represent a class must satisfy the threshold requirements of Rule 23(a) as well as the requirements for certification under one of the subsections of Rule 23(b). Rule 23(a) provides a case is appropriate for certification as a class action if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

A plaintiff must also establish that one of the subsections of Rule 23(b) is met. In the instant matter, Bennett seeks to certify a class pursuant to Rule 23(b)(3). Under Rule 23(b)(3), Bennett must demonstrate that (1) the questions common to the class predominate over any questions that affect only individual members; and (2) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. *See* Fed. R. Civ. P. 23(b)(3). These requirements are commonly known as predominance and superiority.

A plaintiff bears the burden of demonstrating that each element of Rule 23 is satisfied, and a district court may certify a class only if it determines the plaintiffs have borne their burden. *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158–61 (1982);

*Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1308 (9th Cir. 1977). The court must conduct a "rigorous analysis," which may require it "to probe behind the pleadings before coming to rest on the certification question . . . ." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (internal citations omitted). "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." *Id.* at 351.

"[T]he merits of the class members' substantive claims are often highly relevant when determining whether to certify a class. More importantly, it is not correct to say a district court may consider the merits to the extent that they overlap with class certification issues; rather, a district court must consider the merits if they overlap with Rule 23(a) requirements." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011). Nonetheless, the district court does not conduct a mini-trial to determine if the class "could actually prevail on the merits of their claims." *Id.* at 983 n.8; *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO v. ConocoPhillips Co.*, 593 F.3d 802, 808 (9th Cir. 2010) (citation omitted) (court may inquire into substance of case to apply the Rule 23 factors, however, "[t]he court may not go so far . . . as to judge the validity of these claims."). When the court must determine the merits of an individual claim to determine who is a member of the class, then class treatment is not appropriate. *Herrera v. LCS Fin. Servs. Corp.*, 274 F.R.D. 666, 672–73 (N.D. Cal. 2011); 5 James W. Moore, *Moore's Fed. Practice* § 23.21[3][c] (2011).

## III.   DISCUSSION

Bennett seeks to certify the following classes:

"All persons in California who became NAB's pay-as-you-go merchants prior to September 1, 2017, and who were debited at least one $3.99 inactivity fee prior to September 1, 2017;" and

"All persons in California who became NAB's pay-as-you-go merchants prior to September 1, 2017, who were debited at least one $3.99 inactivity fee after September 1, 2017, and did not agree to a contract authorizing debit of the

4

"$3.99 inactivity fee."

### A.    Rule 23(a) Requirements

Defendant first contends Bennett cannot satisfy her burdens under Rule 23(a) because she has not satisfied the typicality requirement. (Doc. No. 187-1 at 7.) Defendant further asserts Bennett and her counsel are inadequate to represent the class. (*Id.*) As discussed below, the Court ultimately finds Bennett has met all of the requirements of Rule 23(a).

### 1.    Ascertainability

As a preliminary note, while not delineated in Rule 23, courts have generally required a party seeking class certification to demonstrate the putative class is ascertainable. *See McCrary v. Elations Co.*, No. EDCV 13-00242 JGB (OPx), 2014 WL 1779243, at *3 (C.D. Cal. Jan. 13, 2014). A class is ascertainable if it is "administratively feasible for the court to determine whether a particular individual is a member" using objective criteria. *See Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 521 (C.D. Cal. 2012) (quoting *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998)).

Here, the Court concludes the proposed class is ascertainable. As Bennett explains, the proposed class is identifiable based on objective criteria—all persons who signed up for Defendant's service before September 1, 2017 and were charged at least one inactivity fee prior to September 1, 2017, or were charged at least one activity fee after September 1, 2017 and did not agree to a contract authorizing debit of the inactivity fee. The Court may determine whether a particular individual is a class member by reference to Defendant's records, which provide both the date a class member became a merchant and the number of monthly inactivity fees assessed against each class member. (Doc. No. 165-1 at 14–15.) Defendant does not dispute this, and so, the Court concludes ascertainability has been met.

### 2.    Numerosity

Rule 23(a)(1) requires the proposed class to be "so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1). "'[I]mpracticability' does not mean 'impossibility'"; rather, the inquiry focuses on the "difficulty or inconvenience of joining

all members of the class." *Harris v. Palm Springs Alpine Ests., Inc.*, 329 F.2d 909, 913–14 (9th Cir. 1964) (citation omitted). In determining whether numerosity is satisfied, the court may draw reasonable inferences from the facts before it. *See Gay v. Waiters' & Dairy Lunchmen's Union*, 549 F.2d 1330, 1332 n.5 (9th Cir. 1977); *Astiana v. Kashi Co.*, 291 F.R.D. 493, 501 (S.D. Cal. 2013).

Here, Bennett points out "over 500,000 individuals successfully applied for a its [sic] pay-as-you-go credit card processing services." (Doc. No. 165-1 at 15.) Defendant does not dispute this element. As such, drawing reasonable inferences from Bennett's assertions, the Court finds she has satisfied the requirement of numerosity.

### 3. Commonality

Rule 23(a)(2) requires there be "questions of law or fact common to the class[.]" Fed. R. Civ. P. 23(a)(2). Commonality is satisfied where claims "depend upon a common contention of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. The plaintiff's burden for showing commonality is "minimal." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998), *overruled on other grounds by id.* at 338. Accordingly, "[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.* at 1019.

Here, Bennett identifies the following as questions common to the proposed class: (1) whether Defendant's representations and advertisements that its pay-as-you-go credit card processing services had no monthly fees and no monthly minimums are true;

(2) whether the representations are misleading;

(3) whether the representations are likely to deceive a reasonable consumer;

(4) whether Defendant's implementation and assessment of Inactivity Fees unjustly enriched Defendant at the expense of the class members;

(5) whether Defendant's assessment of Inactivity Fees comported with any contract between Defendant and class members;

(6) whether Defendant had consent to debit the Inactivity Fees from the class members' bank accounts (i.e., whether the Inactivity Fees constitute conversion); and

(7) whether Defendant's assessment of Inactivity Fees was otherwise lawful.

(Doc. No. 165-1 at 16.) Defendant does not dispute this element. As such, drawing reasonable inferences from Bennett's assertions, the Court finds Bennett has satisfied the requirement of commonality.

### 4. Typicality

Rule 23(a)(3)'s typicality requirement provides that "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Falcon*, 457 U.S. at 156 (quoting *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)) (internal quotation marks omitted). The purpose of the requirement is "to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "[T]he typicality requirement is 'permissive' and requires only that the representative's claims are 'reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (quoting *Hanlon*, 150 F.3d at 1020). However, a court should not certify a class if "there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." *Hanon*, 976 F.2d at 508 (internal quotation marks and citation omitted).

Bennett argues the requirement is met because her claims arise from the same "event, practice, or course of conduct that forms the basis of the class claims"—namely, Defendant charging the purported class members a monthly $3.99 Inactivity Fee and retaining those fees. (Doc. No. 165-1 at 17.) Additionally, Bennett explains the legal theory applicable to the entire class is the same because Defendant's conduct constituted conversion, fraudulent and unfair business practices in violation of the UCL, and unjust enrichment. (*Id.*) In

opposition, Defendant asserts Bennett's claims are materially different from the class claims asserted in the FAC. (Doc. No. 187-1 at 18.) Specifically, Defendant contends Bennett did not rely on either the PayAnywhere or PhoneSwipe websites, but rather on the verbal representations of Defendant's employee. (*Id.*) Defendant further argues Bennett cannot be a class representative because she applied for the PhoneSwipe service, rather than PayAnywhere. (*Id.*)

The Court finds Bennett's claims are typical of those of the putative class. Under the typicality element, the named plaintiff must "suffer the same injury as the class members." *Dukes*, 564 U.S. at 348–49. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon*, 976 F.2d at 508 (internal quotation marks omitted).

The gravamen of Bennett's claims is that in signing up with Defendant for a pay-as-you-go credit card processing service, the putative class members relied on representations by Defendant that merchants would not be charged setup, monthly, or hidden fees. (Doc. No. 165-1 at 16.) Bennett claims those representations proved "false" because Defendant eventually introduced a $3.99 Inactivity Fee to encourage inactive merchants to close their account if they were not going to use the service.

First, the proposed classes include all California merchants of the Service, including those who signed up for either PayAnywhere or PhoneSwipe. (*See* Doc. No. 165-1 at 12–13.) Although Defendant attempts to distinguish between the two services because only PayAnywhere is explicitly referenced in the operative complaint, Defendant has not argued it will be prejudiced by the inclusion of its PhoneSwipe merchants. As such, the Court does not limit its analysis to the class definition set forth in the First Amended Class Action Complaint. *See Fuentes v. DISH Network L.L.C.*, No. 16-cv-02001-JSW, 2021 WL 4916754, at *2 n.2 (N.D. Cal. June 24, 2021) (noting that although courts may limit their consideration to the class definition proposed by the plaintiff in a complaint, it declined to do so where the defendant did not argue it was prejudiced by the modification of the

8

proposed class). Because Defendant has not argued prejudice or lack of notice of the scope of the proposed class, the Court allows broadening the class definition to include PhoneSwipe merchants.

Next, Defendant argues Bennett does not meet the typicality requirement because she has no recollection of seeing or relying on the alleged false representations on the PayAnywhere website "or any other website on which the FAC is based . . . ." (Doc. No. 187-1 at 18.) However, Bennett's proposed classes do not require its members to rely upon Defendant's websites. Rather, Bennett's operative complaint broadly asserts she and the class members were "subjected to Defendant's illegal practice of charging inactivity fees despite representing that such charges would not occur." (Doc. No. 156 ¶ 18(c).) While some purported class members may have relied on either of Defendant's websites, others relied on statements by Defendant's representatives by phone. Thus, Bennett's injury remains typical of the class—she was allegedly promised one uniform pay-as-you-go price but was later charged the monthly Inactivity Fee. Defendant's representations were allegedly uniform, though the representation's medium may have differed. For these reasons, the fact that Bennett did not visit the PayAnywhere website is unpersuasive.

Third, Defendant asserts Bennett admitted she could not remember any specific representation made on her phone call with the PhoneSwipe representative. (Doc. No. 187-1 at 18.) However, Bennett counters with her own testimony that she was both aware of the pay-as-you-go pricing and relied upon it. (Doc. No. 188-1 at 8–9.) For example, Bennett stated she was looking for a company that did not charge "during the off season" because Santa Rocks only operated one month a year. (Deposition of June Bennett ("Bennett Depo."), Doc. No. 188-3, at 8.) Bennett further testified she told the PhoneSwipe representative that her "main concern was that [she] wouldn't be charged a service fee during the off months" "because that's specifically what [she] was looking for." (*Id.* at 9–10.) Based on the foregoing, the Court finds Bennett relied upon Defendant's representation of a pay-as-you-go service, typical of the purported class she seeks to represent.

Finally, Defendant argues Bennett's injury is not typical of the class because she is subject to unique defenses, including lack of reliance, mitigation, waiver, and consent. (Doc. No. 187-1 at 18.) The Ninth Circuit has held "class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of litigation." *Hanon*, 976 F.2d at 508.

Defendant first asserts Bennett admitted she agreed to the PS MSA, which contained an express class action waiver provision and a provision permitting the debiting of her account for fees, with the latter provision barring her conversion claim. (*Id.*) As to this, Bennett counters this does not defeat typicality because these defenses are common to the classes—namely, because *all* class members necessarily agreed to those same terms and conditions. (Doc. No. 188-1 at 7.) Bennett points to the PhoneSwipe MSA, where agreement to the terms and conditions was a necessary condition to becoming a merchant. (*Id.*; *see* Declaration of Darren McCaffrey ("McCaffrey Decl."), Doc. No. 187-2, ¶¶ 12, 13 (stating applicants for the service are "required to affirmatively represent that [they] had both read and agreed to the PhoneSwipe Terms and Conditions in order to apply for and be accepted as a PhoneSwipe merchant").) The same agreement was required for the PayAnywhere service. (*See* Declaration of Terri Harwood, Doc. No. 19, ¶ 6 ("Every prospective merchant [of PayAnywhere] . . . applying for use of the Service must click on the box indicating acceptance of the terms and conditions.").) The Court finds this persuasive. Defendant further argues Bennett does not deny receiving its December 20, 2016 Inactivity Fee Notice informing her Santa Rocks would be charged a monthly $3.99 Inactivity Fee. (*Id.*) However, Defendant does not detail why this would place Bennett in an atypical situation apart from the class members.

Based on the foregoing, the Court finds Bennett has carried her burden in establishing typicality.

### 5. Adequacy

Rule 23(a)(4) requires the class representative to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In assessing this requirement, courts within

17-cv-00586-AJB-KSC

the Ninth Circuit apply a two-part test, asking: (1) does the named plaintiff and her counsel have any conflicts of interest with other class members?; and (2) will the named plaintiff and her counsel prosecute the action vigorously on behalf of the class? *See Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (citing *Hanlon*, 150 F.3d at 1020).

Bennett asserts she is an adequate named plaintiff because she does not have any conflicts of interest with other class members. (Doc. No. 165-1 at 18.) Bennett maintains she shares common injuries with and seeks relief for the entire class. (*Id.*) Further, Bennett explains her counsel is experienced in complex class action wage and hour litigation and has prosecuted this case vigorously. (*Id.*) In opposition, Defendant challenges the adequacy of Bennett and her ability to rigorously prosecute the class action, and of her counsel. (Doc. No. 187-1 at 20–22.)

### i. **Adequacy of Plaintiff**

In considering the involvement and knowledge of a prospective class representative, "the Court must feel ***certain*** that the class representative will discharge his fiduciary obligations by fairly and adequately protecting the interests of the class." *Koenig v. Benson*, 117 F.R.D. 330, 333–34 (E.D. N.Y. 1987) (emphasis added). The court also must ensure that class representatives do "not simply lend[] their names to a suit controlled entirely by the class attorney." *Alberghetti v. Corbis Corp.*, 263 F.R.D. 571, 580 (C.D. Cal. 2010) (internal quotation marks omitted). Thus, courts have refused to allow a person to represent a class when, for example, she "appeared unaware of even the most material aspects of [her] action . . . [not knowing] why these particular defendants are being sued . . . [and having] no conception of the class of people she purportedly represents." *Burkhalter Travel Agency v. MacFarms Int'l, Inc.*, 141 F.R.D. 144, 153–54 (N.D. Cal. 1991) (quoting *In re Storage Tech. Corp. Sec. Litig.*, 113 F.R.D. 113 (D. Colo. 1986)).

First, Defendant cites several examples of Bennett's declarations and deposition testimony in which she did not remember the specific date of her application or the name of the service she applied for. (Doc. No. 187-1 at 20–21.) However, Bennett explains these inconsistencies. For instance, Bennett asserts that her prior declaration, in which she

declared she signed up for Defendant's service "on or about 2009," was her best recollection and stated that after reviewing documents, she recollected she actually signed up for the service in May 2011. (Declaration of June Bennett ("Bennett Decl."), Doc. No. 165-29, ¶ 3.) Moreover, Bennett explains she inadvertently identified the service she applied for as "PayAnywhere," rather than "PhoneSwipe," because of a phone call from her present attorney Eric LaGuardia, who informed her he "believed [she] might be a potential class member in [this] lawsuit . . . [and] asked if [she] ever used a . . . service product called PayAnywhere . . . ." (*Id.*) After reviewing her bank statements to confirm the monthly $3.99 Inactivity Fee deductions, she noted the charges were under the name "Global Payments" prior to 2018 and "Epx St" after 2018, rather than either "PhoneSwipe" or "PayAnywhere." (*Id.*) Bennett's inability to remember the specific year of purchase or the name of the service she applied for does not equate to an unawareness of the most material aspects of action.

Additionally, Defendant fails to cite any specific evidence where Bennett allegedly did not know when this action or the FAC were filed, or what her supposed damages are. (*See* Doc. No. 187-1 at 21.) Although Bennett did not initially recall what the FAC was during her deposition, Defendant did not show her the document at that time. (Bennett Depo. at 18–19.) When the FAC was later shown to Bennett, she stated, "I believe I have seen it" and that "[w]hen I see it, I recall seeing it." (*Id.* at 35.) As to Defendant's assertion she had failed to review the FAC before her deposition, Bennett stated she last read the document "within the last week or two[,]" and believed she had reviewed it more than once. (*Id.* at 36.) Bennett further understood her role as class representative, stating her role was to gather evidence, sit for depositions, and attend court hearings. (*Id.* at 5–6.) Last, Bennett was aware of the class of people she purportedly represents, contending she became a class representative "because of all the other people that have been hurt from this." (*Id.* at 7.)

The Court finds Bennett is an adequate class representative because she is aware of material aspects of her action, understands why Defendant is being sued, and recognizes

12

the class of people she purportedly represents. *Burkhalter Travel Agency*, 141 F.R.D. at 153–54. As such, the Court concludes Bennett has demonstrated she is an adequate class representative.

### ii. Adequacy of Counsel

Next, Defendant argues Bennett's counsel is unsuitable to represent the classes because certain unethical conduct disqualifies him. (Doc. No. 187-1 at 21.) Specifically, Defendant claims Bennett's counsel has submitted false declarations not made in good faith and has recently been admonished for similar misconduct in *Area 55, LLC v. Nicholas & Tomasevic, LLP*, 61 Cal. App. 5th 136, 156 (2021). (*Id.* at 22.) The Court finds counsel is adequate, has vigorously prosecuted this action, and has no conflicts of interest.

Adequate representation depends upon "an absence of antagonism [and] a sharing of interests between representatives and absentees . . . ." *Molski v. Gleich*, 318 F.3d 937, 955 (9th Cir. 2003), *overruled on other grounds by Dukes*, 603 F.3d 571. In *Wrighten v. Metropolitan Hospitals, Inc.*, 726 F.2d 1346, 1351–52 (9th Cir. 1984), the Ninth Circuit held the class representative was inadequate because he missed deadlines to file motions, impeded discovery, disrupted depositions, did not follow local rules, and failed to vigorously approach pleadings and interrogatories. Unlike the plaintiffs' counsel in *Wrighten*, Bennett's counsel here has not shown deficiencies in their representation.

First, the Court does not find Bennett's counsel has submitted false declarations regarding typicality and suitability of the class representative. As discussed above, Bennett has explained the minor inconsistencies within her declarations and deposition regarding events that took place roughly eleven years ago.

Next, Defendant points to a recent California Court of Appeal lawsuit which was filed against Bennett's counsel for malicious prosecution. *See Area 55*, 61 Cal. App. 5th at 156. In *Area 55*, the court reversed the lower court's order granting Bennett's counsel's special motion to strike the complaint for malicious prosecution against them. However, the court did not reach the merits of the malicious prosecution claim, but rather found that appellants "made a sufficient prima facie showing of the remaining elements of their claim

13

and that [Bennett's counsel] . . . did not defeat Appellants' claim as a matter of law." *Id.* at 145. Ultimately, the Court finds this case has no bearing on the matter at hand and finds counsel adequate to serve as class counsel.

### B.     Rule 23(b)(3) Requirements

"In addition to meeting the conditions imposed by Rule 23(a), the party seeking class certification must also show that the action is appropriate under Rule 23(b)(1), (2) or (3)." *Astiana*, 291 F.R.D. at 503 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997)). Certification under Rule 23(b)(3)—the subsection under which Bennett seeks certification—is appropriate only where the plaintiff establishes that (1) issues common to the class predominate over issues affecting individual class members; and (2) the class action device is superior to other methods available for adjudicating the dispute. *See* Fed. R. Civ. P. 23(b)(3).

#### 1.     Predominance

The predominance requirement is "far more demanding" than the commonality requirement of Rule 23(a). *Amchem Prods.*, 521 U.S. at 623–24. If common questions "present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication," then "there is clear justification for handling the dispute on a representative rather than on an individual basis," and the predominance test is satisfied. *Hanlon*, 150 F.3d at 1022 (internal quotation marks omitted). "[I]f the main issues in a case require the separate adjudication of each class member's individual claim or defense, [however,] a Rule 23(b)(3) action would be inappropriate . . . ." *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001), *amended by* 273 F.3d 1266 (9th Cir. 2001) (internal quotation marks omitted). This is because, among other reasons, "the economy and efficiency of class action treatment are lost and the need for judicial supervision and the risk of confusion are magnified." *Id.*

Bennett argues the same core set of common questions present a significant aspect of her claims for violations of California's UCL, unjust enrichment, and conversion. (Doc. No. 165-1 at 18–19.) Bennett points out Defendant originally advertised a true "pay-as-

14

you-go program," but then in late 2015, added the Inactivity Fee. (*Id.* at 19.) Bennett explains that to become a PayAnywhere or PhoneSwipe merchant, every class member was allegedly required to visit one of Defendant's websites, such as www.PayAnywhere.com or www.PhoneSwipe.com, and fill out an application. (*Id.*) She further asserts this application required merchants to view the representations regarding the "pay-as-you-go" program, including "Monthly Fees $0.00" and "Monthly Minimum $0.00." (*Id.*)

In disputing the predominance element, Defendant argues Bennett cannot establish that every purported class member was exposed to the same alleged wrongful business practice. (Doc. No. 187-1 at 22–23.) Defendant further maintains the putative class was potentially exposed to monthly emails explaining the Inactivity Fee before it was adopted, and also a multitude of notices on Defendant's websites—calling into question what each merchant was exposed to regarding the Inactivity Fee. (*Id.* at 24.)

### i. Predominance of Bennett's UCL Claim Under the "Fraud" Prong

A district court's assessment of predominance "begins, of course, with the elements of the underlying cause of action." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir. 2011), *abrogated by Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) (quoting *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011)). The focus of the inquiry accordingly varies depending on the nature of the underlying claims. "In UCL cases, district courts must consider whether class members were exposed to the defendant's alleged misrepresentations, but for a single, critical purpose: establishing reliance." *Walker v. Life Ins. Co.*, 953 F.3d 624, 630 (9th Cir. 2020).

### a. Standing

First, although not explicitly argued under the predominance requirement, Defendant argues the proposed class is overly broad because many of the putative class members were informed of the facts Defendant allegedly concealed—specifically, that an inactivity fee would be charged if no transactions were processed over a 12-month period.

///

(Doc. No. 187-1 at 31.) Thus, asserts Defendant, these class members could not have suffered an injury and therefore lack Article III standing. (*Id.*)

The plaintiff class bears the burden to show Article III standing is met, which requires that plaintiffs have: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). In a class action, named plaintiffs must demonstrate they have Article III standing but not "other, unidentified members of the class to which they belong." *Id.* at 1547 n.6. The Ninth Circuit has held that in a class action, Article III standing is satisfied if at least one named plaintiff meets the requirements. *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 865 (9th Cir. 2014).

Here, it is undisputed that Bennett has standing and thus Article III standing is satisfied. Instead, Defendant relies upon *Tietsworth v. Sears, Roebuck & Co.*, No. 5:09-cv-00288-JF (HRL), 2012 WL 1595112, at *14 (N.D. Cal. May 4, 2012), which cites *Mazza v. American Honda*, 666 F.3d 581, 594 (9th Cir. 2012) *overruled in part by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, No. 19-56514, 2022 WL 1053459, at *19 (9th Cir. Apr. 8, 2022), for the proposition that "no class may be certified that contains members lacking Article III standing." However, the issue of "whether or not the proposed class includes class members who have not suffered an injury" is addressed under Rule 23. *Moore*, 309 F.R.D. at 542; *see also Bruno v. Quten Rsch. Inst., LLC*, 280 F.R.D. 524, 533 (C.D. Cal. 2011) (adopting the rule that "where the class representative has established standing and defendants argue that class certification is inappropriate because unnamed class members' claims would require individualized analysis of injury, . . . a court should analyze these arguments through Rule 23 and not by examining the Article III standing of the class representative or unnamed class members.").

The Court therefore addresses whether Bennett's proposed class definition is overbroad under Rule 23 because it contains members who potentially were not harmed. ///

16

*See Andren v. Alere, Inc.*, No. 16cv1255-GPC(AGS), 2017 WL 6509550, at *20 (S.D. Cal. Dec. 20, 2017) (citing *Moore*, 309 F.R.D. at 542).

Here, Bennett claims all class members have suffered economic damages in the form of Defendant's debiting of inactivity fees without authorization or consent. However, as discussed below, the Court agrees the proposed class definitions are overbroad insofar as they encompass class members who either never saw the alleged misrepresentation, or viewed Defendant's email notification and/or website regarding the Inactivity Fee charges. For this reason, common questions of fact and law do not predominate as to this claim.

### b. Reliance

The UCL bans "unlawful, unfair or fraudulent business act[s] or practice[s] and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. A plaintiff must establish she suffered "as a result of" the defendant's conduct in order to bring a UCL claim. *Walker*, 953 F.3d at 630 (citing *id.* § 17204). Relying on *In re Tobacco II Cases*, 46 Cal. 4th 298 (2009), the Ninth Circuit has repeatedly recognized a presumption of reliance in UCL cases. In *Tobacco II*, the defendants moved to decertify a UCL class, asserting individualized issues—i.e., whether all class members were exposed to, relied on, and were injured by allegedly false and deceptive advertisements—predominated over common ones. *See id.* The California Supreme Court interpreted the UCL to mean that named plaintiffs, but not absent ones, must show proof of "actual reliance" at the certification stage. *Id*. The court reasoned that "requiring all unnamed members of a class action to individually establish standing would effectively eliminate the class action lawsuit as a vehicle for the vindication" of rights under the UCL. *Id.*

However, the presumption of reliance will not arise in every UCL case. *Walker*, 953 F.3d at 631. "For example, it might well be that there was no cohesion among the members because they were exposed to quite disparate information from various representatives of the defendant." *Id.* (quoting *Stearns*, 655 F.3d at 1020) (internal quotation marks omitted).

Here, the Court agrees with Defendant that the alleged misrepresentations at issue here do not justify a presumption of reliance. Although Bennett is correct that the "pay-as-

17

you-go" advertising scheme was the same nationwide, she has not established that every, or even most, class member was exposed to the same alleged misrepresentation. Specifically, Bennett has failed to assert that purchasers of the Service were *required* to view the "pay-as-you-go" pricing plan to sign up for the Service. Bennett offers historic PhoneSwipe and PayAnywhere website captures which include Defendant's pricing messages.[1] (Doc. No 165-3 at 5 (Historic PayAnywhere website capture); Doc. No. 165-11 at 2–6 (Historic PhoneSwipe website captures).) However, each pricing message appears to be buried on Defendant's websites, neither of which need to be viewed by a purchaser to apply for the Service. Moreover, Bennett has failed to show that each PhoneSwipe or PayAnywhere merchant relied upon the same representation. Specifically, Bennett relied on a telephone call with a PhoneSwipe representative but has failed to assert that communications with PhoneSwipe or PayAnywhere's representatives would mirror statements on Defendant's websites, or that Defendant's representatives were directed to verbally provide the same or similar information to potential merchants. Moreover, the purported class necessarily includes those who applied for the Service online, without the assistance of a representative, and while some class members may have viewed the pricing plan, others will not have. Thus, common questions would not predominate as to what messages the purported class members were exposed to.

Next, Bennett asserts class members were required to view the following excerpt on the application page:

---

[1] Defendant asserts Plaintiff fails to establish the admissibility and relevance of these historic website captures from the "Internet Archive" because she did not "offer authentication testimony that these selected webpages were actually reviewed and relied upon by any putative class member." (Doc. No. 187-1 at 29.) "Moreover, Bennett fails to provide the Court with the voluminous additional webpages containing representations and explanations on the PA and PS websites about the very inactivity fee that Bennett argues was foisted on unsuspecting merchants." (*Id.*) However, all of the PayAnywhere website printouts were accompanied by an affidavit from the "Internet Archive" Records Request Processor providing relevant information about the database, and as such, have been properly authenticated. *See Memory Lane, Inc. v. Classmates, Inc.*, 646 Fed. Appx. 502, 504 (9th Cir. 2016). Moreover, the Alex Tomasevic asserts in his declaration that the PhoneSwipe website pages were also accessed from the Internet Archive, and are thus authenticated. (Doc. No. 165-2 ¶¶ 7–9.)

18

| | |
|---|---|
| Swiped Transactions | 2.69% |
| Keyed Transactions | 3.49% |
| Transaction Fee | $0.00 swiped/$0.19 keyed |
| Setup Fee | $0.00 |
| Cancellation Fee | $0.00 |
| Monthly Fees | $0.00 |
| Monthly Minimum | $0.00 |
| Chargeback Fee | $25.00 |
| Retrieval Fee | $15.00 |
| NSF Fee | $25.00 |

(Doc. No. 19 at 8.) However, Defendant contests this, claiming this is an internal document which reflects the information that merchants provide in completing the online PhoneSwipe application. (Doc. No. 187-1 at 24.) This is further supported by Darren McCaffrey, Director of Partner Relations at NAB. (McCaffrey Decl. ¶ 25.) Although Bennett asserts this is contradicted by McCaffrey's 30(b)(6) testimony, the Court disagrees. (Doc. No. 188-1 at 13 n.9.) In his deposition, McCaffrey confirms Exhibit 21 (reflecting the same or similar document as above) is "a reflection of completed application data submitted by the Plaintiff or in connection with the account associated with the Plaintiff," but at no point states this document was publicly available. (Doc. No. 165-4 at 16–18.)

Thus, without exposure to the alleged misstatements, a purchaser could not rely on those alleged misstatements. *See Mazza*, 666 F.3d at 596 ("In the absence of the kind of massive advertising campaign at issue in *Tobacco II*, the relevant class must be defined in such a way as to include only members who were exposed to advertising that is alleged to be misleading."); *Walker*, 953 F.3d at 631 ("To establish a reliance presumption, the operative question has become whether the defendant so pervasively disseminated material representations that all plaintiffs must have been exposed to them."); *Singh v. Google LLC*, No. 16-cv-03734-BLF, 2022 WL 94985, at *11 (N.D. Cal. Jan. 10, 2022) (same).

### c. Subsequent Disclosures

Next, Defendant asserts that before the Inactivity Fee was charged, each purported class member, or "Inactive Merchant," received at least one email from Defendant via an outside vendor, MailChimp, stating it would begin charging Inactivity Fees, and that each

Inactive Merchant could avoid these charges by processing a single charge or canceling the Service within thirty days of notice. (Doc. No. 187-1 at 9–11, 27–30.) Specifically, beginning in late October 2015 and continuing monthly until after September 2017, Defendant sent each Inactive Merchant one or more emails at the email address they provided to Defendant, stating that beginning December 1, 2015, a Monthly Inactivity Fee would be charged to Inactive Merchants. (*Id.* at 9–10.) Moreover, Defendant states that since December 2015, Defendant's websites began including notices regarding the Inactivity Fee, including a page on PayAnywhere's website entitled "Merchant FAQ: What Is An Inactivity Fee?" (*Id.* at 11.) Lastly, beginning April 2016, all PhoneSwipe and PayAnywhere applicants were required to agree to a User Agreement that included notice of and assent to the Inactivity Fee. (*Id.*) Defendant relies on *Roley v. Google LLC*, No. 18-cv-07537-BLF, 2020 WL 8675968, at *8 (N.D. Cal. July 20, 2020), which held in line with the Ninth Circuit that certain disclosures negate any alleged misrepresentation. The Court agrees.

In *Roley*, the plaintiff's UCL fraud claim was predicated on Google's representations that certain Google users who joined the Local Guides program were eligible for 1 free TB of additional Google Drive storage. *Id.* at *2. Upon joining the Local Guides program, Google emailed the plaintiff and other purported class members that the 1 TB Benefit would only be active for two years. *Id.* The court found that although Google omitted the two-year time limit from certain emails and terms, "the time limit was included in Google's social media posts, Google's own Local Guide's help page, and on third-party blogs and posts." *Id.* at *8. Because of Google's disclosure, "Plaintiff . . . failed to allege that each putative class member was exposed to the same misrepresentation . . . ." *Id.* at *9.

Similarly, in *Mazza*, the plaintiff asserted violations of the UCL based on defendant's alleged misrepresentation of the characteristics of the Collision Mitigation Braking System ("CMBS"). 666 F.3d at 585. However, the defendant disclosed the allegedly omitted limitations to the CMBS at dealership kiosks, online, and in certain owner's manuals. *Id.* at 586–87. The Ninth Circuit ultimately held a class should "include

only members who were exposed to advertising that is alleged to be materially misleading" and that "any relevant class must also exclude those members who learned of the CMBS's allegedly omitted limitations before they purchased or leased the CMBS system." *Id.* at 596.

The Ninth Circuit again held in *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061 (9th Cir. 2014), *abrogated on other grounds by Microsoft Corp. v. Baker*, 137 S. Ct. 1702 (2017), that predominance was not met for UCL claims when individuals were given notice about the alleged misrepresentations or deceptions. *Id.* at 1069. The court noted that "any oral notice given by Home Depot employees about the optional nature of the damage waiver during a rental transaction would necessarily be a unique occurrence." *Id.* at 1069–70. The Ninth Circuit further stated:

> Because the signs and oral representations are a fundamental part of the alleged misrepresentation, in that explicit signs or explicit verbal advice would negate the claimed misrepresentation, the district court sensibly held that the individualized determination of the nature of those statements supported denial of class certification of the CLRA claim.

*Id.* at 1070.

Under *Mazza* and *Berger*, the Court finds that any reliance on the alleged misrepresentation here—that Defendant was a pay-as-you-go service—is negated by Defendant's disclosures of the Inactivity Fee by email and on its website. Thus, putative class members who saw the Inactivity Fee before they purchased the Service cannot be members of the class.

Bennett counters this is a merits-based inquiry that is inappropriate at the class certification stage. (Doc. No. 188-1 at 14–15.) However, the Court finds that determining the information available to the putative class members here requires individual inquiries into those who received a notice regarding the Inactivity Fee and who saw Defendant's web page regarding the Inactivity Fee. *See Robinson v. OnStar, LLC*, No. 15-CV-1731 JLS (MSB), 2020 WL 364221, at *21 (S.D. Cal. Jan. 22, 2020).

Accordingly, the Court finds predominance is not met for Bennett's UCL claim predicated on the "fraud" prong.

### ii. Predominance of Bennett's UCL Claim Under the "Unfair" Prong

Bennett also proceeds under the unfair prong of the UCL. Although there are several ways to satisfy the unfairness prong, Bennett here relies on the balancing test. (Doc. No. 165 at 23); *see Grace v. Apple Inc.*, No. 17-CV-00551, 2017 WL 3232464, at *7 (N.D. Cal. July 28, 2017) (discussing different tests used to satisfy unfairness prong and finding the plaintiffs proceeded under the balancing test). The "balancing test" "asks whether the alleged business practice is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim.'" *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1115 (N.D. Cal. 2015) (quoting *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 257 (2010)).

However, courts require a showing of reliance from named plaintiffs asserting UCL claims based on alleged misrepresentations irrespective of which of the UCL's prongs the claims are brought under. *See, e.g.*, *Rahman v. Mott's LLP*, No. 13-cv-03482-SI, 2014 WL 5282106, at *7 (N.D. Cal. Oct. 15, 2014) ("The reliance requirement is also applied to the UCL's unfair prong, when—as is the case here—the underlying conduct is alleged to misrepresent or deceive."). As such, for the same reasons applicable to the "fraud" prong, Bennett has not shown she has met the predominance requirement for her UCL claim under the "unfairness" prong.

### iii. Predominance of Plaintiff's Unjust Enrichment Claim

Regarding Bennett's unjust enrichment claim, she alleges Defendant was enriched by collecting millions of dollars from the Class without their consent and to their detriment. (Doc. No. 165-1 at 25.) Bennett's claim for unjust enrichment is predicated upon the same course of conduct described above. (*Id.*)

///

The California Court of Appeal has explained: "An individual is required to make restitution if he or she is unjustly enriched at the expense of another. A person is enriched if the person receives a benefit at another's expense." *First Nationwide Sav. v. Perry*, 11 Cal. App. 4th 1657, 1662–63 (1992) (citations omitted). An unjust enrichment claim, however, will lie only where there is no valid express contractual relationship between the parties. *See Gerlinger v. Amazon.com, Inc.*, 311 F. Supp. 2d 838, 856 (N.D. Cal. 2004).

Here, Bennett's theory of liability appears to be premised on the fact that class members were induced into contracting to become a PayAnywhere or PhoneSwipe merchant. Because of these contractual relationships, Bennett has not shown a viability of her unjust enrichment claim.

### iv.    Predominance of Bennett's Conversion Claim

Bennett newly raises a conversion claim, alleging Defendant did not have consent from the class members to debit the Inactivity Fee from their respective bank accounts until it modified its terms after September 2017. (Doc. No. 165-1 at 21.) Specifically, Bennett asserts that because Defendant was not a party to the PhoneSwipe or PayAnywhere MSA, it did not have contractual authorization to debit its inactivity fees. (*Id.*) Defendant counters that Bennett and class members agreed to the PhoneSwipe or PayAnywhere MSA, thus consenting to debiting their accounts for fees such as the Inactivity Fee, which bars her conversion claim. (Doc. No. 187-1 at 19.)

"The elements of a conversion are the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages." *Spates v. Dameron Hosp. Assn.*, 114 Cal. App. 4th 208, 221 (2003).

The Court agrees with Defendant that common questions do not predominate. Under California law, plaintiffs suing for conversion must also show they did not consent to having their property taken. *Bank of N.Y. v. Fremont Gen'l Corp.*, 523 F.3d 902, 914 (9th Cir. 2008).

///

23

Consent need not take any particular form and can be implied by a plaintiff's action or inaction. *Id.* (citing *Farrington v. A. Teichert & Son, Inc.*, 59 Cal. App. 2d 468, 474 (1943)). For example, if class members realized they knew they were being charged the Inactivity Fee and did nothing, they would fail to establish the element of non-consent. Another issue is whether class members received, opened, and read the emails Defendant sent to class members notifying them of the Inactivity Fee, or viewed statements regarding the Inactivity Fee on Defendant's website.

Because the class does not exclude those who saw Defendant's emails or website regarding the Inactivity Fee, there is likely a number of people who were given adequate disclosures, which they may have seen prior to Defendant charging the Inactivity Fee. Bennett has not suggested a reasonable way these people could be excluded from the class without individualized fact-finding. As such, she has not established the predominance requirement of her conversion claim.

### 2. Superiority

Superiority requires consideration of the following: (1) the interest of individuals within the class in controlling their own litigation; (2) the extent and nature of any pending litigation commenced by or against the class involving the same issues; (3) the convenience and desirability of concentrating the litigation in the particular forum; and (4) the manageability of the class action. *See* Fed. R. Civ. P. 23(b)(3)(A)–(D); *Amchem Prods., Inc.*, 521 U.S. at 615–16.

Bennett argues she has met the superiority requirement because there are thousands of members in the class, and the individual damages only range from $3.99 to a potential maximum of approximately $290. (Doc. No. 165-1 at 25.) She explains there is a strong presumption in favor of a finding of superiority when the alternative to a class action is likely to be no action at all for the majority of class members because of the small amount in recovery. *See Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) ("Where recovery on an individual basis would be dwarfed by the cost of litigating

on an individual basis, this factor weighs in favor of class certification."). Defendant does not contest superiority here.

There is no suggestion that other lawsuits have been filed against Defendant for the conduct at issue in this case. Furthermore, this "case involves multiple claims for relatively small individual sums." *Astiana*, 291 F.R.D. at 507. These facts suggest a class action is the superior method of adjudication. Moreover, the Court finds no management difficulties that would preclude this action from being maintained as a class action. On the other hand, there is nothing to suggest it is convenient or desirable to concentrate the litigation in the Southern District of California.

On balance, the Court finds a class action here would be the superior method of adjudication. The alternative to class action would likely result in an abandonment of claims by most class members since the amount of individual recovery is so small. *See Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 515 (9th Cir. 2013) ("In light of the small size of the putative class members' potential individual monetary recovery, class certification may be the only feasible means for them to adjudicate their claims.").

## IV. CONCLUSION

For the reasons set forth above, the Court **DENIES** Bennett's motion for class certification. (Doc. No. 165.)


**IT IS SO ORDERED.**

Dated:  May 25, 2022

Hon. Anthony J. Battaglia
United States District Judge

17-cv-00586-AJB-KSC