# GOOGLE LLC'S OBJECTIONS TO SPECIAL MASTER'S REPORT

# Redacted Version of Document Sought to be Sealed

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Diane M. Doolittle (CA Bar No. 142046)
dianedoolittle@quinnemanuel.com
Sara Jenkins (CA Bar No. 230097)
sarajenkins@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
Teuta Fani (admitted *pro hac vice*)
teutafani@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Stephen A. Broome (CA Bar No. 314605)
stephenbroome@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
Crystal Nix-Hines (Bar No. 326971)
crystalnixhines@quinnemanuel.com
Alyssa G. Olson (CA Bar No. 305705)
alyolson@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Josef Ansorge (admitted *pro hac vice*)
josefansorge@quinnemanuel.com
Xi ("Tracy") Gao (CA Bar No. 326266)
tracygao@quinnemanuel.com
Carl Spilly (admitted *pro hac vice*)
carlspilly@quinnemanuel.com
1300 I Street NW, Suite 900
Washington D.C., 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

Jomaire Crawford (admitted *pro hac vice*)
jomairecrawford@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

*Counsel for Defendant Google LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| PATRICK CALHOUN, et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 4:20-cv-05146-YGR-SVK<br><br>**GOOGLE LLC'S OBJECTIONS TO SPECIAL MASTER'S REPORT AND RECOMMENDATION RE CALHOUN MODIFIED PRESERVATION PLAN (DKTS. 665, 666)**<br><br>Referral: Hon. Susan van Keulen, USMJ |

1  Pursuant to the Court's May 23, 2022 Order (Dkt. 667), Google hereby provides its
2  objections to the "Special Master's Report and Recommendation re *Calhoun* Modified Preservation
3  Plan" (Dkts. 665, 666) (the "R&R").
4  The Court referred the preservation dispute to the Special Master on October 1, 2021. Dkt.
5  329 at 1. In the eight months since, the Special Master has convened more than ten party
6  conferences, and reviewed multiple rounds of briefing on the complex issues raised by the parties.
7  Throughout the process, the Special Master asked questions and demanded clear answers, from both
8  sides. The Special Master gave the parties ample and repeated opportunities to articulate arguments
9  related to relevance and burden. With the benefit of his technical experience, the information
10 obtained over the past eight months of extensive discovery, and the parties' interpretation of that
11 information, the Special Master recommended: (i) sampled preservation of 40 data sources
12 (including 26 ▓▓▓▓ logs, seven ▓▓▓▓▓▓▓▓, two ▓▓▓▓▓▓▓▓, two ▓▓▓▓▓▓▓▓,
13 and three ▓▓▓▓▓▓); (ii) full field-based preservation of 12 data sources (including 10 ▓▓▓▓
14 logs and two ▓▓▓▓ keyspaces), and (iii) one-time full snapshot of three data sources (▓▓
15 ▓▓▓▓▓▓▓▓▓▓▓▓▓). Google recognizes the substantial work that the Special Master
16 did in arriving at these Recommendations and that the outcome of this intensive process would be a
17 compromise satisfying neither party. Accordingly, Google objects to just two discrete aspects of the
18 Special Master's recommendations on the basis that they are unduly burdensome and not
19 proportional to the needs of this litigation: (i) full field-based preservation of ▓▓▓▓▓▓
20 ▓▓▓▓▓▓; and (ii) one-time snapshot of the entire ▓▓▓▓▓▓ keyspace. Google also seeks
21 clarification with respect to the preservation of sensitive rotation keys.
22 **Objection 1: Google Objects to Full Ongoing Preservation of Field Values in ▓▓▓**
23 **▓▓▓▓ (R&R Index #28) and ▓▓▓▓▓▓▓▓ (R&R Index #36):** The R&R proposes full ongoing
24 preservation of the following field values in ▓▓▓▓▓▓ and ▓▓▓▓▓▓: "sync state,
25 Incognito Bit(s), ***Any ID Not mentioned below***, IP v4& v6, ▓▓▓▓▓▓, query, Referrer,
26 Useragent, Biscotti – Encrypted UID, Biscotti – UID, Rewritten Page URL, ▓▓▓▓▓▓
27 ▓▓▓▓▓▓ Client Country." Dkt. 661-1 at 20-21, 29-30 (emphasis added). This
28 recommendation is based on the mistaken assumption that field-based preservation is appropriate

1  for ▮▮ (because it was appropriate for ▮▮ logs). Field-based preservation is not appropriate
2  or feasible for ▮▮, however, because it would mean the preservation of the entirety of these two
3  large scale key-value databases to the tune of millions of dollars a month. Such an expense is neither
4  necessary nor proportional to the needs of the case. This is especially so considering that Google
5  does not object to the sampled preservation from these two databases, and to the significant quantity
6  of other log data the R&R requires Google to preserve.

7  The Special Master based his decision to recommend field-based preservation for ▮▮ on
8  the fact that "Google agreed to this type of sampling in #62 ▮▮ log]." Dkt. 661-1 at 21, 30.
9  That Google proposed field-based sampling for ▮▮ logs, however, does not mean that field-
10 based sampling is appropriate or feasible for ▮▮ sources. It is not. Unlike ▮▮ logs, ▮▮
11 ▮▮▮▮▮▮▮▮ are large scale key-value databases that store data keyed to GAIA IDs
12 and ZWBK IDs in columns. Quaid Decl. ¶ 3. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
13 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
14 ▮▮; in fact, each column is really an independent data source that contains a collection of rows,
15 and each row contains a limited number of fields and values written to it. *Id.* ¶¶ 3, 4. Every entry in
16 every column in the ▮▮ keyspace is keyed to a GAIA ID. *Id.* ¶ 5. Similarly, every entry
17 in every column in the ▮▮ keyspace is keyed to a Zwieback ID. *Id.* For that reason, the
18 instruction in the R&R requiring Google to preserve "Any ID Not mentioned below" would sweep
19 in *all* GAIA IDs and ZWBK IDs and their associated entries—that is, the *entire* ▮▮
20 ▮▮ keyspaces. *Id.*

21 Simply removing the catch-all instruction that "Any ID Not mentioned below" from the
22 R&R will not cure its overbreadth. Data entries in ▮▮ can be retrieved by the key-value (GAIA
23 ID for ▮▮ and Zwieback ID for ▮▮). *Id.* ¶ 7. However, these large key-value
24 databases cannot be filtered by field names or field-values. *Id.* Therefore, Google cannot simply
25 search or filter by the field values in the R&R to target preservation. The only way to ensure
26 preservation of the requested field-values is, again, to preserve the *entire* ▮▮▮▮▮▮
27 ▮▮ keyspaces. There is no realistic alternative; the task of preserving the columns that contain
28 each of the requested field-values would require extreme efforts to accomplish: Google would have

to (i) determine which specific columns within the keyspaces contain the requested field-values, if any; and (ii) preserve such columns in their entirety. ▇ does not maintain a list of specific fields in each ▇ column, and does not have a way of generating such a list. *Id.* ¶ 8. Therefore, Google cannot readily determine whether any ▇ ▇ columns contain any of the requested field-values. *Id.* The only way to determine whether a ▇ column contains the requested field-values would be to survey the more than ▇ engineering teams that own a column in ▇. *Id.* ¶¶ 8, 9. That cannot be accomplished quickly with any precision.

Further, unlike ▇ log sources, many of which contain six or more of the fields the Special Master included on his list, based on the ▇ data produced to Plaintiffs, the ▇ columns are likely to contain the ID and zero or perhaps one or two of the fields the Special Master included on his list. There is no incremental value in Google preserving a column where the only relevant fields are GAIA ID and Country Code, for example. The resulting preservation would have no relationship to the class of Chrome users; it would merely be a snapshot of Google's global user base.

On the other side of the equation is the immense burden that comes with preserving any significant portion of ▇. As of June 7, 2022, ▇ stores about ▇ of data and the compressed daily average of new data written to it is around ▇; ▇ stores about ▇ of data and the compressed daily average of new data written to it is about ▇. *Id.* ¶ 6. It is neither fair nor reasonable to make any defendant preserve data at this prohibitively expensive orders of magnitude. The process should not be the punishment.

That such a preservation is very costly is not in dispute. In their submissions to the Special Master, Plaintiffs proposed to calculate the storage cost on the basis of Google's Cloud Storage pricing, and they assumed: (1) Google charges customers $0.01 per gigabyte per month; and (2) Google's internal costs are 50% of what it charges customers.[1] Adopting Plaintiffs' assumptions

---

[1] *See* Dkt. 666-1 at 29 ▇ has only ▇ of data and using Google's own cloud storage pricing as a metric (adjust as noted above), it would only cost about ▇ to

4

Case No. 5:20-cv-05146-YGR
GOOGLE'S OBJECTIONS TO SPECIAL MASTER REPORT

about Google's Cloud Storage costs, preserving just the the data stored in ▇▇▇ as of June 7, 2022 would cost about ▇▇▇ per month;[2] the cost would continue to increase every day as new data is written to the keyspace, totaling approximately ▇▇▇ for the first year,[3] ▇▇▇ for the first two years,[4] and ▇▇▇ for the first three years.[5] Similarly, preserving just the data stored in ▇▇▇ as of June 7, 2022 would cost about ▇▇▇ per month; the cost would continue to increase every day as new data in written to the keyspace, totaling approximately ▇▇▇ for the first year, ▇▇▇ for the first two years, and ▇▇▇ for the first three years. That is far outside the realm of ordinary litigation preservation costs. *Rodriguez v. Google LLC*, 2021 WL 8085492, at *1 (N.D. Cal. Dec. 1, 2021) (denying Plaintiffs' request to preserve data because "storing two years' worth of such data would cost $3 million," which are "sizable sums that would be above and beyond ordinary litigation costs.").

For these reasons, the large-scale, indiscriminate preservation that the R&R requires fails the proportionality principle. *Lord Abbett Mun. Income Fund, Inc. v. Asami*, 2014 WL 5477639, at *3 (N.D. Cal. Oct. 29, 2014) ("[T]he proportionality principle applies to the duty to preserve potential sources of evidence" in the same way it applies to the scope of discovery obligations under Rule 26."); Fed. R. Civ. P. 37(e) Adv. Comm. Notes (2015) ("perfection in preserving all relevant electronically stored information is often impossible."). Plaintiffs have not articulated the need for the entirety (or a large portion of) these extremely large key-value databases. This is particularly the case given that Google does not object to the R&R's proposed sample

---



preserve this entire data source."); *see also* Plaintiffs' May 15, 2022 Submission to the Special Master ("Google charges its customers exactly one cent ($0.010) per gigabyte for large-volume cloud storage, or $1,028 per 100 terabytes. Assuming Google's internal costs are 50% of what it charges customers . . . preserving the entirety of the ▇▇▇ data source (consisting of only ▇▇▇), assuming 50% of the retail price charged by Google, would cost only ▇▇▇ in storage costs.").

[2]
[3]

[4]

[5]

1  preservation of the ▮▮▮▮ databases (Index ## 28, 36) and the preservation of
2  38 other data sources.
3  **Objection 2: Google Objects to "One Full Preservation" from** ▮▮▮▮: The
4  R&R recommends that Google perform "One Full Preservation" from the entire ▮▮▮▮
5  keyspace. Google objects because the minimal utility of such an exercise is far outweighed by the
6  steep cost and burden on Google.
7  The usefulness of this one-time full snapshot of the entire ▮▮▮▮ is dubious at best.
8  Plaintiffs have not even asked for it. In fact, there is no reason to incur the cost of preserving a one-
9  time snapshot of the entire ▮▮▮▮ database at this particular point in time when the same
10  type of data will be equally available at *any* given time. There is no special relevance to the data as
11  of June 2022 that would be lost if the snapshot is taken in, for example, November 2022 or whenever
12  the need arises (if ever).
13  Also undermining the usefulness of a full snapshot is the vast amount of irrelevant data it
14  would encompass. More than ▮▮ different Google product teams store data within ▮▮, Quaid
15  Decl. ¶ 9, and ▮▮▮▮
16  ▮▮▮▮
17  ▮▮▮▮
18  ▮▮▮▮
19  This scant utility is far outweighed by the undue burden of a one-time full preservation of
20  ▮▮▮▮. As of June 7, 2022, ▮▮▮▮ holds ▮▮▮▮ of data. Adopting Plaintiffs'
21  method of calculating Google's purported storage costs, the bill to store this data for just *one month*
22  would be ▮▮▮▮ Storing this data for two years would cost around ▮▮▮▮
23  This Court has recognized that "[l]itigation of the size and magnitude of this action requires
24  selection of discovery targets which allow the Parties the opportunity to provide their claims or
25  defenses to a trier of fact within the bounds of Federal Rules of Civil Procedure 26." Dkt. 329 at 2.
26  Massive, indiscriminate preservation serves little utility at great cost, and therefore violates the
27  bounds of Rule 26. This is especially so given that Google has not objected to the recommendation
28

that Google preserve 40 sources (including ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓) on a sampled basis, 10 sources with full field-based preservation, and two sources with one-time full snapshot.

**Request for Clarification**: **Google Seeks Clarification that the Preservation Order Does Not Require Google to Preserve All Sensitive Rotating Encryption Keys if It Is Able to Preserve the Data in a Safe, Secure, and Accessible Manner that Does Not Require Such Keys.** The R&R recommends that for "[f]ull ongoing preservation of certain fields … all decryption keys are to be preserved that will allow any encrypted preserved data to be decrypted." Dkt. 666-2 at 1. The R&R further requires Google to preserve both the Biscotti – Encrypted UID and Biscotti – UID. Google understands the need to preserve data in a format that can be decrypted, and intends to encrypt the preserved dataset in a safe and secured manner while preserving all encryption keys necessary to decrypt the preserved data. Google seeks to clarify that it need not preserve the sensitive rotating encryption keys to decrypt the Biscotti – Encrypted UID at the time of sampling and preservation, so that it can be decrypted again at some later date, given that the associated decrypted Biscotti value will be contained in the preserved dataset as recommended by the Special Master. In other words, Google's clarification would satisfy the R&R's objective of preserving relevant data that can be accessed in an unencrypted form without preserving sensitive rotating encryption keys.

Google seeks this clarification because rotating encryption keys used to decrypt Biscotti values are essential to Google's privacy program and consistent with the industry best practice. Berntson Depo Tr., 175:12-21, March 18, 2022. As Dr. Berntson, Engineer Director at Google, explained: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓." *Id.* at 177:19-22. De-anonymizing these logs with one fell swoop would be a significant privacy-affecting event that would impact millions of users, including millions of users who are not putative class members. That is because ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Dkt. 634-6 (Harting Decl.) ¶ 11. Given Google's reasonable clarification that it will store the preserved data in an accessible manner that does not necessitate the preservation of the encryption keys, there is very little reason to preserve sensitive encryption keys that could compromise privacy protections for users ▓▓▓▓▓▓.

| | | |
|---|---|---|
| 1 | DATED: June 8, 2022 | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| 2 | | |
| 3 | | |
| 4 | | By  /s/ Andrew H. Schapiro<br>Andrew H. Schapiro |

Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
Teuta Fani (admitted *pro hac vice*)
teutafani@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Diane M. Doolittle (CA Bar No. 142046)
dianedoolittle@quinnemanuel.com
Sara Jenkins (CA Bar No. 230097)
sarajenkins@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Stephen A. Broome (CA Bar No. 314605)
stephenbroome@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
Crystal Nix-Hines (Bar No. 326971)
crystalnixhines@quinnemanuel.com
Alyssa G. Olson (CA Bar No. 305705)
alyolson@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Jomaire A. Crawford (admitted *pro hac vice*)
jomairecrawford@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Josef Ansorge (admitted *pro hac vice*)
josefansorge@quinnemanuel.com
Xi ("Tracy") Gao (CA Bar No. 326266)
tracygao@quinnemanuel.com
Carl Spilly (admitted *pro hac vice*)
carlspilly@quinnemanuel.com
1300 I Street NW, Suite 900
Washington D.C., 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

*Attorneys for Defendant Google LLC*