# EXHIBIT 9

# REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

```
 1              IN THE UNITED STATES DISTRICT COURT
 2           FOR THE NORTHERN DISTRICT OF CALIFORNIA
 3                       SAN JOSE DIVISION
 4
 5
                                        )
 6    PATRICK CALHOUN, ET AL., ON       )
      BEHALF OF THEMSELVES AND ALL      )
 7    OTHER SIMILARLY SITUATED,         )
                                        )
 8                  PLAINTIFFS,         )
                                        )
 9        VS.                           )  CASE NO.
                                        )  5:20-CV-05146-LHK-SVK
10    GOOGLE LLC,                       )
                                        )
11                  DEFENDANT.          )
      _____)
12
13
              ** CONFIDENTIAL  - ATTORNEYS EYES ONLY **
14
15                    REMOTE PROCEEDINGS OF
16              VIDEOTAPED 30(B)(6) DEPOSITION OF
17                      MEDIHA ABDULHAY
18                   TUESDAY, APRIL 12, 2022
19
20
21
22    JOB NO. SF 5180827
23    REPORTED BY:  REAGAN EVANS, RPR, RMR, CRR, CCRR,
                    CLR, CRC, CA CSR NO. 8176
24
25
```

Page 1

```
 1   VIDEOTAPED 30(B)(6) DEPOSITION OF MEDIHA ABDULHAY,
 2   TAKEN REMOTELY ON BEHALF OF THE PLAINTIFFS AT
 3   9:03 A.M., TUESDAY, APRIL 12, 2022, AT
 4   SAN FRANCISCO, CALIFORNIA, BEFORE REAGAN EVANS, CA
 5   CSR NO. 8176, RPR, RMR, CRR, CCRR, CLR, CRC.
 6
 7
 8   APPEARANCES OF COUNSEL
 9
10   FOR THE PLAINTIFFS:
11       SIMMONS HANLY CONROY
12       BY:  JASON 'JAY' BARNES, ESQ.
13       BY:  ERIC JOHNSON, ESQ.
14            (APPEARING REMOTELY)
15       112 MADISON AVENUE
16       7TH FLOOR
17       NEW YORK, NEW YORK 10016
18       (212) 784-6400
19       JAYBARNES@SIMMONSFIRM.COM
20       EJOHNSON@SIMMONSFIRM.COM
21
22
23
24
25
```

Page 2

| | | |
|---|---|---|
| 1 | of Google's PDPO as well. | |
| 2 | So, no, I'm not familiar with the entire | |
| 3 | landscape of our organizational structure at Google, | |
| 4 | but I would say it's fair to say that there are | |
| 5 | other teams dedicated to trust and safety. | 09:30:20 |
| 6 | Q   Is the Privacy and Data Protection Office | |
| 7 | the primary team with a focus on privacy and data | |
| 8 | protection? | |
| 9 | MS. CRAWFORD:  Objection to the form of the | |
| 10 | question.  Foundation. | 09:30:33 |
| 11 | You can answer to the extent possible. | |
| 12 | THE WITNESS:  Yeah.  I would say it is -- | |
| 13 | it is one of the primary teams, yes. | |
| 14 | BY MR. BARNES: | |
| 15 | Q   Okay. | 09:30:43 |
| 16 | The sentence says (as read and/or | |
| 17 | reflected:) | |
| 18 | We need to address the privacy | |
| 19 | challenges inherent in our ads | |
| 20 | business. | 09:30:50 |
| 21 | Do you see that? | |
| 22 | A   I see that. | |
| 23 | Q   What are the privacy challenges inherent in | |
| 24 | Google's ads business? | |
| 25 | MS. CRAWFORD:  Objection.  Foundation. | 09:31:01 |

Page 20

1        You can answer, Med.
2        THE WITNESS: So the perspective that you
3   see here was based on kind of a broad literature
4   review and research analysis that uncovered a number
5   of common misperceptions that the team identified as   09:31:23
6   being trust eroding for Google.
7        And broadly, the goal of ███████████, of
8   course, is to identify pathways to continue to build
9   and earn trust.
10       And so one of those misperceptions -- and   09:31:49
11  I'm sure you've seen that across some of the other
12  docs -- is that some users, not all users, but there
13  are some users, and also key opinion formers, who
14  have deep misperceptions about our ads business.
15       And so I think that is what the team here   09:32:16
16  is pointing towards.
17  BY MR. BARNES:
18    Q   Does Google ads business rely on personal
19  information?
20       MS. CRAWFORD: Objection insofar as that   09:32:29
21  question's outside the scope of the noticed topic
22  for which this.
23       THE WITNESS: I'm sorry.  --
24       MS. CRAWFORD: Sorry about that. Let me
25  just get the objection on the record.   09:32:41

Page 21

```
 1   of privacy safety and security.
 2   BY MR. BARNES:
 3       Q   In the context of ▮▮▮▮▮▮▮▮, did Google
 4   consider the extent to which user information was
 5   sent to Google for the purposes of its ads business?   09:36:32
 6           MS. CRAWFORD:  Objection to the form of the
 7   question.  Vague and overbroad.
 8           Ms. Abdulhay, you can answer.
 9           THE WITNESS:  This -- I think it's an
10   important clarification that this work stream,         09:36:45
11   ▮▮▮▮▮▮▮▮, was driven primarily by our UX teams.
12   UX -- one specific UX team.
13           And the position that you see here,
14   strategy documents, storyboards with, you know, a
15   future-looking solution set, are very much divorced    09:37:03
16   from any technical realities.
17           And so if there is a reference to a data
18   flow or a data exchange, the reality is, is that the
19   individuals authoring these documents are very
20   unfamiliar with the ac -- the realities of the text    09:37:27
21   stack.
22           And so the team leaned on broad -- broad
23   understandings of user sentiments and misperceptions
24   to develop this position paper.
25           This position paper is not meant to be a       09:37:47
```

Page 25

```
1    product roadmap or a mandate for other teams.
2           MR. BARNES:  Mr. Johnson, please publish
3    Exhibit A2, which -- please publish what's been
4    marked as A2 as Exhibit 2.
5           (Whereupon Abdulhay Exhibit 2 was              09:38:10
6           marked for identification.)
7    BY MR. BARNES:
8       Q   While that's pulling up.  It says, "UFP
9    Review:  ██████████."
10          What does the acronym "UFP" typically stand    09:38:24
11   for?
12      A   User-facing privacy.
13      Q   Okay.
14          And who is Tal Herman?
15      A   Tal Herman is a director on the UX team.      09:38:37
16      Q   Who is Kalle Buschmann?
17      A   Kalle Buschmann is a UX researcher.
18      Q   Do you work with her?
19          MS. CRAWFORD:  Sorry.  I was just noting
20   that the exhibit has now been published and is       09:38:59
21   available for the witness.
22          MR. BARNES:  Thank you, Ms. Crawford.
23          MS. CRAWFORD:  You're welcome.
24   BY MR. BARNES:
25      Q   I will end my time-killing questions.         09:39:05
```

Page 26