# Google's Response

# Redacted Version of Document Sought to be Sealed

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

Diane M. Doolittle (CA Bar No. 142046)
dianedoolittle@quinnemanuel.com
Sara Jenkins (CA Bar No. 230097)
sarajenkins@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
Teuta Fani (admitted *pro hac vice*)
teutafani@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Stephen A. Broome (CA Bar No. 314605)
stephenbroome@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
Crystal Nix-Hines (Bar No. 326971)
crystalnixhines@quinnemanuel.com
Alyssa G. Olson (CA Bar No. 305705)
alyolson@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Josef Ansorge (admitted *pro hac vice*)
josefansorge@quinnemanuel.com
Xi ("Tracy") Gao (CA Bar No. 326266)
tracygao@quinnemanuel.com
Carl Spilly (admitted *pro hac vice*)
carlspilly@quinnemanuel.com
1300 I Street NW, Suite 900
Washington D.C., 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

Jomaire Crawford (admitted *pro hac vice*)
jomairecrawford@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

*Counsel for Defendant Google LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| PATRICK CALHOUN, et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 4:20-cv-05146-YGR-SVK<br><br>**GOOGLE LLC'S RESPONSE TO PLAINTIFFS' OBJECTIONS TO SPECIAL MASTER'S REPORT AND RECOMMENDATION RE CALHOUN MODIFIED PRESERVATION PLAN**<br><br>Referral: Hon. Susan van Keulen, USMJ |

Pursuant to the Court's May 23, 2022 Order (the "Order") (Dkt. 667), Google hereby responds to Plaintiffs' objections ("Plaintiffs' Objections") to the "Special Master's Report and Recommendation re *Calhoun* Modified Preservation Plan" (Dkts. 665, 666) (the "Modified Preservation Plan").

The Court instructed the parties to focus their objections on "ONLY the 14 data sources for which the Modified Plan reflects substantive changes." Dkt. 667 (caps in original). Instead, Plaintiffs submitted a brief that improperly amplifies their meritless motion for sanctions, which is being briefed on a separate schedule. Because the baseless nature of these and other accusations are outside of the Order's scope, they will be addressed in Google's forthcoming opposition. One example, however, illustrates how Plaintiffs continue to perpetuate misstatements, even after being corrected and proven wrong, which is the reason that the same disputes continue to be raised and re-litigated endlessly: Plaintiffs claim that when ▇▇▇▇▇▇▇" is set to zero or false, it shows that "a Chrome user is not signed in (and thus not consented for sync)." Dkt. 690-1 at 1:11-12. That's incorrect. The recent searches conducted pursuant to the Special Master process confirm that the field



cannot be used to reliably detect logged-out traffic: ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Google explained this already, repeatedly, in submissions and letters to the Special Master and Plaintiffs, yet Plaintiffs continue to introduce unsupported, contradictory statements into the record. Gao Decl. ¶¶ 7-8.

From a process standpoint, Plaintiffs also claim that they hope to discover more not-synced signals "because the Special Master log-search process has not yet concluded." Dkt. 690-1 at 2:3. That is also wrong. Plaintiffs submitted their final search request on April 6, 2022 pursuant to the Special Master's request. Gao Decl. ¶ 4 (quoting Special Master Brush's April 1, 2022 email to Plaintiffs, cc'ing Google: "Final searches are to be submitted today. I am unsure what is missing for you to supply the final searches."). Plaintiffs provided their final searches, Google ran the requested searches, Google made rolling productions on April 22, April 28, April 29, 2022, and Google

1    concluded such efforts on May 20, 2022 when it produced the last batch of data that contained

2    confidential third-party data and required reasonable publisher notice. *Id.* ¶ 5.

3        Google responds to Plaintiffs' numbered objections as follows:

4        ***Plaintiffs' Objection Nos. 1, 2, 4, 5, 7–10: Objections Incorporated by Reference***

5        Plaintiffs incorporated by reference their Objection Nos. 1, 2, 4, 5, 7–10 asserted on April

6    15, 2022 (Dkt. 622). Dkt. 690-1 at 4. Google hereby incorporates its response to these objections

7    submitted on April 25, 2022 (Dkt. 635), and thus no further response is necessary.

8        ***Plaintiffs' Objection No. 3: Altering Log Structure***

9        In this objection, Plaintiffs: (1) incorporated their request for "full preservation of logs

10    already being retained indefinitely" (Dkt. 690-1 at 3:5); (2) requested that Google seek the Court's

11    permission before shortening the existing retention period for any data source identified in the

12    Modified Preservation Plan (*id.* at 4:15–17); and (3) requested that "the Court also order Google not

13    to alter the structure of any relevant data logs … without express permission of the Court" (*id.* at

14    4:20–21). None of these requests is appropriate or proportional to the needs of this litigation.

15        *First*, there is no reason to restrict Google's ability to alter the retention period for data

16    sources it already retains given the breadth of the Modified Preservation Plan, which encompasses:

17    (i) sampled preservation of 40 data sources; (ii) full field-based preservation of 12 data sources; and

18    (iii) one-time full snapshot of three data sources. All seven relevant logs listed in "AEO 2021-09-

19    17 Calhoun v. Google -Google Submission" that are currently retained permanently have already

20    been incorporated into the Modified Preservation Plan and are subject to sampled or both sampled

21    and          field-based          preservation          (i.e.,          ████████████████

22    ███████████████████████████  █████████ ████████████ ████████

23    ███████████████). Many of these logs store data that fall out of the class

24    period. Not allowing Google to alter the retention period may result in Google having to preserve

25    years of data that have no bearing on this matter. Indeed, as the Special Master has already

26    acknowledged, the preservation period should extend back only to July 27, 2016, the first day of the

27    class period. Dkt. 666-2 at 1-2. There is no reason to preserve records that fall outside of this period.

28

1    Moreover, requiring Google to seek permission from the Court before shortening retention periods
2    for these logs would impose substantial and unnecessary burdens on Google and the Court.

3        *Second*, there is no basis for Plaintiffs' demand that Google be ordered not to alter "the
4    structure of any relevant data logs." Dkt. 690-1 at 4:18. Plaintiffs recognize that Google "alters the
5    structure of data logs in the ordinary course," but nonetheless request that Google cease such
6    necessary and important business functions for a large number of logs for an indefinite period of
7    time. *Id.* at 4:22. That would be untenable. The log sources included in the Modified Preservation
8    Plan and "AEO 2021-09-17 Calhoun v. Google -Google Submission" represent a substantial subset
9    of Google's complex data logging infrastructure. ████████████████████████████████
10   ████████████████████████████████████████████████████████████████████████
11   ██████████████████████████████████  Numerous engineering teams across the globe
12   use and manage these logs for different business purposes, which range from ██████████████
13   ██████████████████████████████████
14        Although ████████████████████████████████████████████████████████████████
15   ██████████████████████████  Google engineers may alter one or more of the ██████████ of
16   fields written to the identified logs for business and technical reasons that are driven by the needs
17   of their respective teams. For instance, an engineer may add a field that logs the clicks of a new ad
18   type, or alter the way Google logs fields about an ad's appearance (e.g., its size in pixels, whether it
19   is a video ad, text ad, or graphic ad, etc.). However, under Plaintiffs' proposal, *every* time that
20   Google wishes to introduce new features that necessitate writing information to a log, Google would
21   have to seek the Court's permission.

22        In addition, Google engineers may occasionally delete an obsolete field, or move a field
23   from a longer-retained log to a shorter-retained log, to save space within Google's data logs.
24   Conserving space is a crucial business need, and Google will be severely prejudiced if it has to seek
25   Court approval to make routine business decisions that need to be made in real time. Nor is a broad
26   prohibition against changes to any field justified here, where the Special Master has already
27   identified 15 fields that are relevant to this litigation for *full* preservation and also recommended
28   sampled preservation of *all* fields in relevant logs.

1    An order precluding Google from "alter[ing] the structure of any relevant data logs" would

2 significantly impair Google's ability to conduct its business, impair decision-making processes that

3 have no effect whatsoever on this litigation, and drag the Court into micromanagement of Google's

4 log structure. Plaintiffs' request should be denied.[1]

5    ***Plaintiffs' Objection No. 11: The Preservation of Rotating Keys***

6    Plaintiffs claim they seek a "slight mofic[ication]" to the Modified Preservation Plan to

7 include unidentified "rotating keys." Dkt. 690-1 at 4–5. That modification is neither "slight" nor

8 warranted.

9    First, Google uses many types of "rotating keys" for various purposes, including keys that

10 have nothing to do with this litigation or the steps that Google was ordered to follow in accordance

11 with the Modified Preservation Plan. *See* Chan Decl. ¶ 4.

12    Second, there are undue risks associated with preserving the one rotating key relevant to this

13 litigation: the ███████████████████████████████████████████. ¶¶ 5-6.

14 ████████████████████████████████████████████████████████████████

15 ██████████████████████████████ *Id.* As designed, ███████████████

16 ██████████████████████████████ *Id.* ¶ 7. ████████████

17 ████████████████████████████████████████████████████████████████

18 ████ *Id.*

19    ████████████████████████████████████████████████████████████

20 ████████████████████████████ (which Google's policies prohibit) and thus

21 compromise the privacy protection that Google has implemented for users worldwide. *Id.* ¶ 9.

22 Simply put, preserving keys stored in a ***rotating*** keystore would circumvent the purpose of storing

23 them in a rotating keystore. *Id.* ¶ 8.

24    Copying the keys to a separate litigation hold platform for preservation is also not feasible.

25 ████████████████████████████████████████████████████████████████

26

27 ─────────────────────

28 [1]  If it would aid the Court, Google can provide a supporting declaration concerning the types of changes made to its logs, how such changes are handled in different data storage spaces, and the anticipated frequency of such changes.

GOOGLE LLC'S RESPONSE TO PLAINTIFFS' OBJECTIONS TO SPECIAL MASTER'S REPORT AND
RECOMMENDATION RE CALHOUN MODIFIED PRESERVATION PLAN

1    *Id.* As a result, copying all the keys stored in ██████ would sweep in more than ██ other keys

2    irrelevant to this case and expose Google and users worldwide to unnecessarily increased security

3    and privacy risks.

4         As reflected in Google's response to the Modified Preservation Plan, Google proposes to

5    perform the following three steps, which together are more than sufficient to ensure that the relevant

6    data is capable of decryption: ████████████████

7    ████████████████████████████████████

8    ████████████████████████████████████

9    ████████████████████. *See* Dkt. 694-4 at 7. Even Plaintiffs' expert

10    said it was unnecessary to preserve rotating keys if the data was kept unencrypted. Dkt. 621-4

11    (Shafiq Dec.) ¶ 9 ("Since Google stores these UIDs in certain logs sometimes in an encrypted

12    format, it is important to preserve the decrypted version of these UIDs when applicable.

13    Alternatively, Google should preserve the encryption/decryption keys[.]"). Google proposes an

14    additional encryption step to store preserved user data securely. For these reasons, Plaintiffs' request

15    that Google also preserve "rotating keys" is unwarranted and should be denied.

16         ***Plaintiffs' Objection No. 12: Preservation of Mapping Tables***

17         Google agrees to preserve the ██████████ mapping table, which is the only mapping table

18    discussed in the Special Master process to date. Google does not have a master list of additional

19    identifiers (i.e., ████████████████████████), which

20    Plaintiffs generically refer to as "mapping tables." Dkt. 690-1 at 5:9. *See generally* Dkt. 634-4 at

21    7:21-8:9 (explaining same and correcting Plaintiffs' assertion that generic "mapping tables" exist).

22         ***Plaintiffs' Objection No. 13 : Clarification of "Sync State" As a Defined Term***

23         The Modified Preservation Plan recommended "full ongoing preservation" of "[Chrome]

24    sync state" field(s) from ████████████████████ces "where they are present." Dkt.

25    666-1. Consistent with that recommendation, Google intends to preserve the fields

26    "████████████████████████████" and

27    ████████████" from ██████████████. The remaining nine logs do not contain any

28

GOOGLE LLC'S RESPONSE TO PLAINTIFFS' OBJECTIONS TO SPECIAL MASTER'S REPORT AND
RECOMMENDATION RE CALHOUN MODIFIED PRESERVATION PLAN

1  "sync state" field (Dkt. 690-1 at 5:15); and as explained in Google's objections, field-based

2  preservation is neither appropriate nor feasible for ███████ (*see generally* Dkt. 695 at 2–5).

3        Plaintiffs seek clarification that "sync state" encompasses "████████████" and any fields

4  that record a Biscotti or Zwieback ID. *Id.* Although Google agrees to preserve these additional fields,

5  Plaintiffs' claim that these are "sync state" fields is wrong.  Requesting that "sync state" be read to

6  subsume these ID fields runs contrary to the Special Master's recommendations and common sense.

7  If the Special Master intended for "sync state" to encompass "████████████" or the Biscotti or

8  Zwieback ID fields, there would have been no  reason for him to separately itemize "Any ID Not

9  mentioned below," "Biscotti -Encrypted UID," "Biscotti -UID," "████████████," *and "sync*

10  *state."*

11        ***Plaintiffs' Objection No. 14: Clarification of "Any ID Not Mentioned Below"***

12        Pursuant to the Special Master's recommendation that Google preserve "[a]ny ID Not

13  mentioned below," Dkt. 665, Google identifies the following IDs from the ███████████ that are

14  subject to field-based preservation, and is prepared to preserve these corresponding fields where

15  present:



27        Plaintiffs also seek the preservation of unidentified data sources where GAIA IDs and

28  Zwieback IDs are "comingled" [sic]. Dkt. 690-1 at 6. But such IDs are never commingled or joined.

1  *See, e.g.*, Dkt. 482-22 ¶ 10 ("Google engages in the following practices to ensure that

2  unauthenticated data are not used to uniquely identify individual users including … ensuring that

3  'unauthenticated identifiers such as … Zwieback must never be stored with personally-identifying

4  information (PII) such as GAIA IDs [Google Account IDs].'").  The troves of data that Google

5  produced through the Special Master process also proves that GAIA IDs and Zwieback IDs are

6  never commingled. In addition to disclosing all ▆▆▆▆▆▆▆▆ columns on February 25, 2022

7  and all ▆▆▆▆▆▆▆ columns on March 7, 2022,[2] Google also produced gigabytes of data

8  associated with identifiers provided by the Named Plaintiffs and Dr. Shafiq from ▆▆▆▆▆▆▆

9  ▆▆▆▆▆▆ keyspaces on March 10, March 31, and April 22, 2022. Gao Decl. ¶ 3. Yet, Plaintiffs

10  have not and cannot cite *any* produced data to support their claim that Google joins GAIA IDs with

11  Zwieback IDs. Plaintiffs' *only* support for their claim that GAIA IDs and Zwieback IDs are

12  commingled is that ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

13  ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆. But the names of these

14  columns is not evidence that the actual data in these columns commingle GAIA IDs and Zwieback

15  ID. ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

16  ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

17  ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

18  ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

19  ▆▆▆▆▆▆▆▆▆▆▆▆▆

20      Remarkably, Plaintiffs go on to claim that they also "believe the Special Master's order

21  incorporates street addresses, phone numbers, and precise geolocation." Dkt. 690-1 at 6:9-10. Yet

22  again, Plaintiffs attempt to improperly expand the scope of Google's obligations under the Modified

23

24

25  [2]  Plaintiffs state that they received ▆▆▆▆▆▆▆ columns information on May 9, 2022. *See* Dkt.
    690-1 at 7:2-3. But as Plaintiffs know, Google provided the list of all ▆▆▆▆▆▆▆▆

26  columns with annotations to the Special Master for review on March 7, 2022 pursuant to the
    Special Master's instruction, and noted that Google would "defer to the Special Master if this

27  comprehensive list … should be produced to Calhoun counsel." Gao Decl. ¶ 2. The Special Master
    did not direct Google to send the production to Plaintiffs until May 9, 2022. *Id.* ¶ 6.

28  [3]  Google would provide a supporting declaration on this issue if it would aid the Court.



1  Preservation Plan, citing nothing more than barebones ███ column names. Google responds to

2  each identified column in brief:

3      • ████████████████████████████████████████████████████

4          █████████████████████████████████████████████████████

5          █████████████████████████████████████████████████████

6          ████████████████████████

7      • █████████████████████████████████████████████████████

8          █████████████████████████████████████████████████████

9          ████████████████████████████.[4] This column has nothing to do with any

10          of the products at issue.

11      • ██████████ columns that allegedly contain "precise geo-location" (including

12          █████████████████████████████████████████████████████

13          ████████████ █████████████████ ██████ ██████

14          ███████████████ all store data for the ██████ team, which focus on

15          geolocation information connected with various Google products, most of which

16          have no bearing on this case. Further, the Special Master made clear in the Modified

17          Preservation Plan that Google should preserve "any ID." Geolocation is not an ID.

18      Plaintiffs also contend that ████████████████████████

19  contain a "sync signal" because the word "sync" appears in the name of those columns. Dkt. 690-1

20  at 7:1-5. Plaintiffs are mistaken. That the word "sync" appears in the column name does not indicate

21  that the column contains a "sync signal." For instance, ████ ████ █████

22  █████████████████████████████████████████████████████████

23  █████████████████████████████████████████████████, which is

24  outside the scope of this case. ██████████████████████

25  █████████████████████████████████████████████████████████

26  ██████████████████████████████████ (see Dkt. 669-11 at 19),

27  _____

28  [4]  *See generally* "Set up a recovery phone number or email address," available at
     https://support.google.com/accounts/answer/183723?hl=en (last accessed June 15, 2022).

which is already subject to both sampled preservation of all fields as well as field-based full preservation under the Modified Preservation Plan. Further, all synced data is subject to individual user controls, *see* Dkt. 108-4 at 4:27–5:4, which is significant because the Special Master has already made clear that users' "[w]ipeout instructions are to be honored." Dkt. 666-2 at 2. Requiring Google to preserve all of these columns would effectively prevent Google from complying with millions of account holders' personal data retention and deletion preferences and run afoul of the Special Master's recommendation.

### Plaintiffs' Objection No. 15: Relevant Fields

Plaintiffs ask that Google "identify all fields that it believes are implicated by the preservation order." Dkt. 690-1 at 7:12-13. Pursuant to the Special Master's recommendation, Google is prepared to preserve the following fields from the ten ███ logs that are subject to field-based preservation:

| Log | Field |
|---|---|
| ███ | ███ |



GOOGLE LLC'S RESPONSE TO PLAINTIFFS' OBJECTIONS TO SPECIAL MASTER'S REPORT AND
RECOMMENDATION RE CALHOUN MODIFIED PRESERVATION PLAN





| Log | Field |
|---|---|
| | • ▓▓▓▓▓▓ |

Plaintiffs' further request for "full transparency" in the form of "field names, descriptions, data dictionaries and schema for these data sources," *id.* at 7–8, is beyond the scope of the Modified Preservation Plan and should be rejected. This request has already been extensively litigated and resolved by the Special Master. Through the Special Master alone, Google has produced more than 20 gigabytes of data. The parties have extensively discussed field names, descriptions, and data dictionaries and schema during that process, and these have been the subject of orders and a negotiated process for production. Google engineers even wrote hundreds of field descriptions for Plaintiffs. As the Court has recognized, "[t]he requests for production from Google must and will come to an end." Dkt. 377 at 6. There is no basis to require Google to further search for or create additional information that falls outside the scope of what the Special Master has previously ordered.

Plaintiffs also seek "clarification" that Google must preserve all ▓▓▓ columns that contain the field information specified in the Modified Preservation Plan. Dkt. 690-1 at 8:2. But as Google already explained in its objections, Google cannot readily determine whether any ▓▓▓ columns contain any of the requested field values; preserving any significant portion of ▓▓▓▓▓ ▓▓▓▓▓ would be infeasible given the size of data it stores. *See* Dkt. 695 at 4.[5] Moreover, there is little incremental value in Google preserving any column in its entirety because—unlike ▓▓▓ log sources—▓▓▓ columns are likely to contain at most only one or two of the 15

_____

[5]  As stated in Google's Objections to the Special Master's Report and Recommendation re *Calhoun* Modified Preservation Plan (Dkt. 694-4 at 4), ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

GOOGLE LLC'S RESPONSE TO PLAINTIFFS' OBJECTIONS TO SPECIAL MASTER'S REPORT AND
RECOMMENDATION RE CALHOUN MODIFIED PRESERVATION PLAN

1    requested fields in addition to the ID. *Id.* Notably, Plaintiffs have not cited *any* produced data to

2    support their request for preservation of ████ columns despite having received multiple

3    productions from the *entire* ████████████████████████████████████

4    ████████████ of data associated with identifiers provided by the Named Plaintiffs and Dr. Shafiq.

5    As a result, preserving any ████ column in its entirety would fail the proportionality analysis that

6    Rule 26(b)(1) requires.

7                  ***Plaintiffs' Objection No. 16: Arguments Concerning the Availability of Certain Data***

8            To resolve this dispute, Google agrees that it will not seek to oppose class certification or

9    Plaintiffs' claims on the basis that data that once existed is no longer available because it fell outside

10   of the preservation order.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   DATED: June 15, 2022                QUINN EMANUEL URQUHART & SULLIVAN,
                                        LLP
2

3
                                        By_____/s/ Andrew H. Schapiro_____
4                                              Andrew H. Schapiro

5                                       Andrew H. Schapiro (admitted *pro hac vice*)
                                        andrewschapiro@quinnemanuel.com
6                                       Teuta Fani (admitted *pro hac vice*)
                                        teutafani@quinnemanuel.com
7                                       191 N. Wacker Drive, Suite 2700
                                        Chicago, IL 60606
8                                       Telephone: (312) 705-7400
                                        Facsimile: (312) 705-7401
9

10                                      Diane M. Doolittle (CA Bar No. 142046)
                                        dianedoolittle@quinnemanuel.com
11                                      Sara Jenkins (CA Bar No. 230097)
                                        sarajenkins@quinnemanuel.com
12                                      555 Twin Dolphin Drive, 5th Floor
                                        Redwood Shores, CA 94065
13                                      Telephone: (650) 801-5000
                                        Facsimile: (650) 801-5100
14

15                                      Stephen A. Broome (CA Bar No. 314605)
                                        stephenbroome@quinnemanuel.com
16                                      Viola Trebicka (CA Bar No. 269526)
                                        violatrebicka@quinnemanuel.com
17                                      Crystal Nix-Hines (Bar No. 326971)
                                        crystalnixhines@quinnemanuel.com
18                                      Alyssa G. Olson (CA Bar No. 305705)
                                        alyolson@quinnemanuel.com
19                                      865 S. Figueroa Street, 10th Floor
                                        Los Angeles, CA 90017
20                                      Telephone: (213) 443-3000
                                        Facsimile: (213) 443-3100
21

22                                      Jomaire A. Crawford (admitted *pro hac vice*)
                                        jomairecrawford@quinnemanuel.com
23                                      51 Madison Avenue, 22nd Floor
                                        New York, NY 10010
24                                      Telephone: (212) 849-7000
                                        Facsimile: (212) 849-7100
25

26

27

28
                                            -15-                Case No. 4:20-cv-05146-YGR-SVK

Josef Ansorge (admitted *pro hac vice*)
josefansorge@quinnemanuel.com
Xi ("Tracy") Gao (CA Bar No. 326266)
tracygao@quinnemanuel.com
Carl Spilly (admitted *pro hac vice*)
carlspilly@quinnemanuel.com
1300 I Street NW, Suite 900
Washington D.C., 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

*Attorneys for Defendant Google LLC*

GOOGLE LLC'S RESPONSE TO PLAINTIFFS' OBJECTIONS TO SPECIAL MASTER'S REPORT AND
RECOMMENDATION RE CALHOUN MODIFIED PRESERVATION PLAN