# Exhibit A

# Redacted Version of Document Sought to be Sealed

```
 1    UNITED STATES DISTRICT COURT
 2    NORTHERN DISTRICT OF CALIFORNIA
 3    SAN JOSE DIVISION
 4    -----------------------------------------X
 5    PATRICK CALHOUN, ELAINE CRESPO,
 6    HADIYAH JACKSON and CLAUDIA KINDLER,
 7    on behalf of all others similarly
 8    situated,
 9                          Plaintiffs,
10        - against -
11    GOOGLE LLC,
12                          Defendant.
13    CASE NO.: 5:20-cv-5146-LHK
      -----------------------------------------X
14
15         PORTIONS OF THIS TRANSCRIPT CONTAIN
16      TESTIMONY DESIGNATED AS ATTORNEYS' EYES ONLY
17                ZOOM VIDEOCONFERENCE
18
                          August 4, 2021
19                        9:02 a.m.
20
21             VIDEOTAPED DEPOSITION of CURT
22    HARTING, before Melissa Gilmore, a Stenographic
23    Reporter and Notary Public of the State of New
24    York.
25    Job No. SF4741357
```

Page 1

```
 1      A P P E A R A N C E S:
 2      DICELLO LEVITT & GUTZLER
 3      Attorneys for Plaintiffs
 4           60 East 42nd Street, Suite 2400
 5           New York, New York 10165
 6      BY:  DAVID A. STRAITE, ESQ.
 7           ADAM PROM, ESQ.
 8           E-MAIL dstraite@dicellolevitt.com
 9                  aprom@dicellolevitt.com
10
11
12      SIMMONS HANLY CONROY LLC
13      Attorneys for Plaintiffs
14           112 Madison Avenue, 7th Floor
15           New York, New York 10016
16      BY:  JASON BARNES, ESQ.
17           AN TRUONG, ESQ.
18           E-MAIL jaybarnes@simmonsfirm.com
19                  atruong@simmonsfirm.com
20
21
22
23
24
25
```

Page 2

```
 1      A P P E A R A N C E S:  (Cont'd)
 2      QUINN EMANUEL URQUHART & SULLIVAN
 3      Attorneys for Defendant
 4             191 N. Wacker Drive, Suite 2700
 5             Chicago, Illinois 60606
 6      BY:    ANDREW H. SCHAPIRO, ESQ.
 7             JOSEF ANSORGE, ESQ.
 8             E-MAIL andrewschapiro@quinnemanuel.com
 9                    josefansorge@quinnemanuel.com
10
11
12      ALSO PRESENT:
13             ALEXANDER ZBROZEK, ESQ., Google
14             KEVIN ASPINWALL, Videographer
15
16
17
18
19
20
21
22
23
24
25
```

Page 3

1       my binder is tab 2.
2            Q.   Tab 2.  Thank you.
3            A.   It is not dated July 27.
4            Q.   What's the date on that document?
5            A.   May 2, 2021.
6            Q.   May 2?
7            A.   Correct.
8            Q.   Thank you.  We will stick with my
9       Exhibit 1.
10           A.   Okay.
11           Q.   Have you seen this document before?
12           A.   (Document review.)
13                I believe I've seen at least a
14      variant of this document before.  I didn't look
15      at the specific date of the version that I've
16      seen before.
17           Q.   Possibly you saw this version, but
18      it's possible you saw another variant?
19           A.   Correct.
20           Q.   Okay.  Could you please turn to
21      page 2 of this document?
22           A.   Yes.
23           Q.   These are the topics for today's
24      deposition.
25                Do you recall seeing these topics?

Page 14

```
 1         A.    Yes.
 2         Q.    Topic D, and just so you're aware,
 3   there was a topic C -- there were topics A, B
 4   and C, but they were covered at a prior
 5   deposition.
 6               You're starting with topic D at the
 7   top of page D, reads, "Google's retention
 8   practices and protocols relating to ▇▇▇▇ and
 9   other datapols that contain unstructured data,"
10   et cetera.
11               Do you see that paragraph?
12         A.    Yes.
13         Q.    Are you prepared and did you prepare
14   to testify as to this topic today?
15         A.    Yes.
16         Q.    Below that is topic E, "All steps
17   taken by Google to preserve information
18   relating to the main plaintiffs."
19               Do you see that paragraph?
20         A.    Yes.
21         Q.    Did you prepare to testify as to
22   this topic today?
23         A.    Yes.
24         Q.    You see F, "General retention
25   practices and protocols," and then there's a
```

Page 15

1    strike-through.
2            Do you see that?
3        A.  Yes.
4        Q.  Did you prepare to testify as to
5    this topic as modified by the strike-through?
6        A.  Let me reread it one more time.
7    (Document review.)
8            Yes.
9        Q.  Below that is topic G, "All
10   identifiers and cookies that could be used to
11   search for information relating to members of
12   plaintiffs' class of users who were not synced,
13   including zwieback, biscotti or any other such
14   identifiers."
15           Do you see that?
16       A.  Yes.
17       Q.  Did you prepare to testify as to
18   this topic today?
19       A.  Yes.
20       Q.  Below that is topic H, "The process
21   by which Google identifies or deletes
22   information to comply with data deletion
23   requests by users."
24           Do you see that topic?
25       A.  Yes.

Page 16

```
 1                MR. STRAITE:  No.  This is
 2        Exhibit 4.  This is Monsees 11.  We have
 3        entered it as Exhibit 4 here.
 4        A.    I see it labeled as, yeah,
 5   Exhibit 11.  The file name is Exhibit D -
 6   Monsees Ex. 11, correct.
 7        Q.    Do you have that in front of you?
 8        A.    Yes.
 9        Q.    On page 1, towards the bottom, it
10   says, "Burden to copy potentially relevant
11   ▓▓▓▓▓ logs in toto."
12              Do you see that?
13        A.    I do.
14        Q.    Does that mean in total or is that a
15   ▓▓▓▓ reference?
16                MR. SCHAPIRO:  Objection to the bad
17        joke.
18        A.    It means in total.
19        Q.    It says, "Storage:  We currently
20   store ▓▓▓▓▓▓▓ of data in these ▓▓ logs."
21              Do you see that line?
22        A.    I do.
23        Q.    Is that referring to that line, the
24   ▓▓ logs, is that referring to Exhibit 8?
25        A.    I did not put together this fact
```

Page 139

```
 1    sheet, so I don't know for certain.
 2          Q.    What's Google's position?
 3                MR. SCHAPIRO:  Objection.  Google's
 4    position about what?
 5          Q.    What is Google's position on whether
 6    the estimate of ▮▮▮▮▮▮▮ appearing in
 7    Monsees fact sheet number 1, if that
 8    corresponds to the ▮▮▮ logs identified in
 9    Exhibit 8?
10                MR. SCHAPIRO:  Objection, scope.
11          A.    I don't know.
12          Q.    The estimate of ▮▮▮▮▮▮▮
13    appearing in the Monsees fact sheet number 1,
14    does that reflect compressed or encoded data?
15                MR. SCHAPIRO:  Objection, scope.
16          A.    I don't know.
17          Q.    The second bullet point says,
18    "Costs."  It says, "Storing a lit hold copy of
19    those ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
20    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
21    ▮▮▮▮▮"
22                Do you see that line?
23          A.    I do.
24          Q.    Is it Google's position that it
25    would cost ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
```

Page 140

1   ███████████████████████████████████
2   ████████████████████████
3              MR. SCHAPIRO:  Objection, beyond the
4        scope of this deposition.  Objection,
5        asked and answered by the 30(b)(6)
6        deponent for whom this was prepared.
7        A.   I don't have this -- I would give
8   you the answer as written here.
9        Q.   ████████████  estimate on this page,
10  does it include or exclude those logs where the
11  retention period is designated permanently?
12             MR. SCHAPIRO:  Objection as beyond
13       the scope of this deposition.  Objection,
14       asked and answered by the 30(b)(6)
15       deponent for whom this was prepared.
16       A.   I don't know to which logs the ████
17  ████████ refers, and so I don't know which of
18  the permanent logs would be included in that.
19       Q.   Thank you.  One second.
20            MS. TRUONG:  Counsel, we're going to
21       be introducing two exhibits.  We'll start
22       with 9, but I'm going to go ahead and add
23       Exhibit 10 because it's fairly large
24       showing.  So we want to start working on
25       getting that over to Mr. Harting.

```
 1              THE WITNESS:  Would this be a good
 2        time to take five?
 3              MR. STRAITE:  Yes, we can always
 4        take a break whenever you need, as long as
 5        there's not a pending question.  This is a
 6        perfect time.
 7              How much time do you need?
 8              THE WITNESS:  I'm happy with ten
 9        minutes right now.
10              MR. STRAITE:  Okay.
11              MR. SCHAPIRO:  Can we go off the
12        record for the rest of this discussion?
13              THE VIDEOGRAPHER:  This concludes
14        Media Number 2.  Going off record,
15        12:13 p.m.  Thank you.
16              (Recess taken.)
17              (Harting Exhibit 9, CSV File, Bates
18        Stamped GOOG-CALH-00039126, marked for
19        identification.)
20              (Harting Exhibit 10, CSV File, Bates
21        Stamped GOOG-CALH-00039128, marked for
22        identification.)
23              THE VIDEOGRAPHER:  Back on the
24        record.  This marks the beginning of Media
25        Unit 3, 12:28 p.m.  Thank you.
```

Page 142

```
 1        Q.   And would it surprise you to learn
 2   that ID number 2 -- I'm going to pause for a
 3   second.
 4             What would you look at to find out
 5   what these segment IDs mean?
 6        A.   I don't know.
 7        Q.   Who would know?
 8        A.   I don't know.
 9             MR. STRAITE:  Could we upload the
10        next document, please?
11             MS. TRUONG:  Just one moment.  Okay.
12        Exhibit 20 should now be up.
13             (Harting Exhibit 20, Profile Data,
14        Bates Stamped GOOG-CALH-00072886, marked
15        for identification.)
16        A.   I have Exhibit 20.
17        Q.   Mr. Harting, in front of you, marked
18   Exhibit 20, the document should bear Bates
19   number ending in 72886.
20             Is that the document you have in
21   front of you?
22        A.   That is correct.
23        Q.   Have you seen this document before?
24        A.   At first glance, no.  I'm happy to
25   go back to my table of contents to confirm
```

Page 263

1   that.
2        Q.   Please.
3        A.   (Document review.)
4             There's nothing in my table of
5   contents that match that Bates number.
6        Q.   Okay.  Does this document look
7   familiar?  Other than the fact that you haven't
8   seen this particular document, have you seen
9   documents like this?
10       A.   I'm going back to the binder
11  briefly.  (Document review.)
12            No, I have not.
13       Q.   Okay.  So this document starts at
14  the top.  It says, ▇▇▇▇▇▇▇▇▇▇
15  ▇▇▇▇▇▇▇▇▇▇
16            What is ▇▇▇▇▇▇▇?
17       A.   I don't know.
18       Q.   Data source is indicated as
19  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇
20            What is that?
21       A.   I don't know.
22       Q.   You testified earlier that plaintiff
23  profiles are pulled from ▇▇▇; is that right?
24       A.   I believe so, yes.
25       Q.   And here it says data source is

```
 1                ███████████████████████ .
 2                Is that the same thing as ███████ ?
 3        A.    I don't know.
 4        Q.    And do you know whether the
 5   plaintiffs -- the named plaintiffs' information
 6   is being preserved in ████████████████████████ ?
 7        A.    I don't know what
 8   ████████████████████████████ , and I don't know if
 9   it is a data store that would have data that
10   could be preserved.
11        Q.    But it seems to be a data source.
12   Doesn't it say data source?
13              MR. SCHAPIRO:  Objection, calls for
14         speculation.
15        A.    Yeah, I don't know exactly what
16   ████████████████████████████ means.
17        Q.    Right.  Who would know?
18        A.    I don't know.
19        Q.    Here it says, ████████████████████████
20              Do you see that?
21        A.    Yes.
22        Q.    How many segment IDs are there in
23   these profiles used to target users?
24              MR. SCHAPIRO:  Objection to the
25         clause built into the question.
```

```
 1                    C E R T I F I C A T E

 2

 3       STATE OF NEW YORK )

                                   :ss

 4       COUNTY OF RICHMOND)

 5

 6                 I, MELISSA GILMORE, a Notary Public

 7       within and for the State of New York, do hereby

 8       certify:

 9                 That CURT HARTING, the witness whose

10       deposition is hereinbefore set forth, was duly

11       placed under oath by me and that such

12       deposition is a true record of the testimony

13       given by such witness.

14                 I further certify that I am not

15       related to any of the parties to this action by

16       blood or marriage; and that I am in no way

17       interested in the outcome of this matter.

18                 IN WITNESS WHEREOF, I have hereunto

19       set my hand this 6th day of August, 2021.

20

21

22                        [signature: Melissa Gilmore]

23

24                          MELISSA GILMORE

25
```

Page 309