# EXHIBIT N
**Redacted Version of**

**Document Sought to be Sealed**

```
 1              IN THE UNITED STATES DISTRICT COURT

 2          FOR THE NORTHERN DISTRICT OF CALIFORNIA

 3                     SAN JOSE DIVISION

                         ---oOo---

 4    PATRICK CALHOUN, et al., on

 5    behalf of themselves and all

 6    others similarly situated,

 7                      Plaintiffs,

 8    vs.                          No. 4:20-cv-5146-YGR-SVK

 9    GOOGLE LLC,

10                      Defendant.

11    _____/

12

13                      CONFIDENTIAL

14

15      REMOTE 30(B)(6) DEPOSITION OF GLENN BERNTSON, Ph.D.

16          WITNESS LOCATION:  NEW YORK, NEW YORK

17                 THURSDAY, APRIL 14, 2022

18

19

20    Stenographically Reported by:

21    ANDREA M. IGNACIO, CSR, RPR, CRR, CCRR, CLR

22    California CSR No. 9830

23    Job No. 5190546

24

25

                                              Page 1
```

```
1                IN THE UNITED STATES DISTRICT COURT

2              FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                       SAN JOSE DIVISION

                          ---oOo---

4    PATRICK CALHOUN, et al., on

5    behalf of themselves and all

6    others similarly situated,

7                        Plaintiffs,

8    vs.                        No. 4:20-cv-5146-YGR-SVK

9    GOOGLE LLC,

10                       Defendant.

11   _____/

12

13

14        REMOTE 30(b)(6) DEPOSITION OF GLENN BERNTSON,

15     Ph.D., taken on behalf of the Plaintiffs, on

16     Thursday, April 14, 2022, beginning at 12:05 p.m.,

17     Eastern Time, and ending at 2:31 p.m., Eastern

18     Time, Pursuant to Notice, and remotely before me,

19     ANDREA M. IGNACIO, CSR, RPR, CRR, CLR ~ License

20     No. 9830.

21

22

23

24

25

                                                  Page 2
```

```
 1     R E M O T E   A P P E A R A N C E S:

 2

 3        COUNSEL FOR THE PLAINTIFFS:

 4            SIMMONS HANLEY CONROY

 5            BY: JASON "JAY" BARNES, Esq.

 6                ERIC JOHNSON, Esq.

 7            112 Madison Avenue, Seventh Floor

 8            New York, NY 10016

 9            (618) 693-3104   jaybarnes@simmonsfirm.com

10

11            BLEICHMAR FONTI & AULD LLP

12            BY: LESLEY WEAVER, Esq.

13                ANGELICA ORNELAS, Esq.

14            555 12th Street, Suite 1600

15            Oakland, CA 94607

16            (415) 445-4003   lweaver@bfalaw.com

17

18            DICELLO LEVITT GUTZLER

19            BY: DAVID A. STRAITE, ESQ.

20            One Grand Central Place

21            East 42nd Street, Suite 2400

22            New York, NY 10165

23            (646) 933-1000   dstraite@dicellolevitt.com

24

25
```

Page 3

CONFIDENTIAL

```
 1    R E M O T E   A P P E A R A N C E S:   (Cont.)

 2

 3        COUNSEL FOR THE BROWN PLAINTIFFS:

 4            SUSMAN GODFREY LLP

 5            By:  AMANDA BONN, Esq.

 6                 ALEX P. FRAWLEY, Esq.

 7            1900 Avenue of the Stars, Suite 1400

 8            Los Angeles, California 90067-6029

 9            (310) 789-3150  abonn@susmangodfrey.com

10

11            BOIES SCHILLER FLEXNER

12            By:  HSIAO (MARK) C. MAO, Esq.

13            44 Montgomery Street, 41st Floor

14            San Francisco, California 94104

15            (415) 293-6800  mmao@bsfllp.com

16

17        COUNSEL FOR THE DEFENDANT:

18            QUINN EMANUEL URQUHART & SULLIVAN

19            By:  JOSEF ANSORGE, Esq.

20                 XI "TRACY" GAO, Esq.

21            1300 Street NW, Suite 900

22            Washington, D.C.  20005

23            (202) 538-8000  josefansorge@quinnemanuel.com

24

25
```

Veritext Legal Solutions
866 299-5127

1   R E M O T E   A P P E A R A N C E S:   (Cont.)

2

3       ALSO PRESENT:   Toni Baker, Google

4                       David West, Videographer

5                       Eric Matolo, Cirque Analytics

6                       ---oOo---

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                              Page 5

| | | |
|---|---|---|
| 1 | cookies; is that right? | 09:09 |
| 2 | A   Yes. | 09:09 |
| 3 | Q   And then you're also here available to | 09:09 |
| 4 | testify regarding the creation of user profiles, | 09:09 |
| 5 | content verticals, as well as the individuals | 09:09 |
| 6 | overseeing the process, and how profiles, verticals, | 09:09 |
| 7 | and demographics are used in display ads; is that | 09:09 |
| 8 | right? | 09:10 |
| 9 | A   Yes. | 09:10 |
| 10 | Q   And are you also testifying regarding data | 09:10 |
| 11 | flow for the data we just referenced used in display | 09:10 |
| 12 | ads? | 09:10 |
| 13 | A   I believe so. | 09:10 |
| 14 | Q   Okay.  Were you provided a fact sheet or some | 09:10 |
| 15 | kind of document to prepare for your deposition by | 09:10 |
| 16 | your counsel? | 09:10 |
| 17 | A   I received a listing of the topics you just | 09:10 |
| 18 | listed out.  If that's what you mean by a fact sheet, | 09:10 |
| 19 | then yes. | 09:10 |
| 20 | Q   Okay.  Did you receive any other documents | 09:10 |
| 21 | from counsel to prepare for your deposition today that | 09:10 |
| 22 | you have with you in front of you? | 09:10 |
| 23 | A   I received a set of documents that had been | 09:10 |
| 24 | produced, and I looked through those documents.  I | 09:10 |
| 25 | received a set of those documents yesterday, and I | 09:10 |

Page 11

| | | |
|---|---|---|
| 1 | with somebody who is interested in sports, because | 09:52 |
| 2 | they're looking at content that is about sports, then | 09:52 |
| 3 | I -- I -- I would like to have my ad shown to that | 09:52 |
| 4 | person. | 09:52 |
| 5 | And so content verticals, generally speaking, | 09:52 |
| 6 | correspond to supporting advertising where the | 09:52 |
| 7 | targeting is associated with a given interest group. | 09:52 |
| 8 | Content verticals are derived from the | 09:53 |
| 9 | content that the user is looking at.  And the example | 09:53 |
| 10 | of the sports page is a good -- it's a simple one, but | 09:53 |
| 11 | a good one. | 09:53 |
| 12 | How Google uses them is, Google will take the | 09:53 |
| 13 | URLs we receive on ad requests and look at that URL | 09:53 |
| 14 | and go and visit that site, download the content, and | 09:53 |
| 15 | start applying analyses to try to figure out, what | 09:53 |
| 16 | kind of content are we looking at?  Like, is this | 09:53 |
| 17 | sports? | 09:53 |
| 18 | And so internally, Google has sort of a | 09:53 |
| 19 | representation of content on the Internet that | 09:53 |
| 20 | corresponds to the ad requests we get from our | 09:53 |
| 21 | customers. | 09:54 |
| 22 | And internally -- | 09:54 |
| 23 | MS. WEAVER:  Q.  And when -- | 09:54 |
| 24 | A   Go ahead. | 09:54 |
| 25 | Q   Is -- when Google takes the URLs that they | 09:54 |

Page 40

| | | |
|---|---|---|
| 1 | receive about ad requests and downloads the content to | 09:54 |
| 2 | apply analyses, do they then use that to create | 09:54 |
| 3 | profiles about users? | 09:54 |
| 4 | A    This is one source of information that can be | 09:54 |
| 5 | used to build profiles on users, such as, there is a | 09:54 |
| 6 | history of a user visiting sites that are about | 09:54 |
| 7 | sports.  You could then -- rather in -- for a user who | 09:54 |
| 8 | has visited lots of sites about sports, an example of | 09:54 |
| 9 | their profile would be somebody who is interested in | 09:54 |
| 10 | sports. | 09:54 |
| 11 | So you could take a content vertical and say, | 09:54 |
| 12 | Oh, this applies to a characterization of the content | 09:55 |
| 13 | that's being looked at.  And if it's a user that's | 09:55 |
| 14 | seen it, a simple profile is, they've seen that | 09:55 |
| 15 | content, and therefore, they're interested in this | 09:55 |
| 16 | content. | 09:55 |
| 17 | So I believe that's a way of saying "yes." | 09:55 |
| 18 | Q    You said it's one source of information to be | 09:55 |
| 19 | able to build profiles on users. | 09:55 |
| 20 | What are other sources? | 09:55 |
| 21 | A    I -- if you have an Android phone or an | 09:55 |
| 22 | iPhone, information that we get on the ad requests, | 09:55 |
| 23 | let's say, about the environment or the kind of device | 09:55 |
| 24 | or the content they're looking at that's not | 09:55 |
| 25 | specifically about a user, you can look at it as | 09:55 |

Page 41

CONFIDENTIAL

```
 1    contextual.                                              09:55

 2          And then any contextual information that you       09:55

 3    have that you can then associate to some kind of         09:55

 4    identifier that represents a user, I would classify      09:55

 5    all of that as profile for a user.                       09:56

 6       Q   I interrupted you to ask about profiles, and      09:56

 7    I apologize.  You were saying, "Internally, Google has   09:56

 8    a sort of representation of content on the Internet      09:56

 9    that corresponds to the ad requests we get from our      09:56

10    customers."  And you started to say "and internally."    09:56

11          What were you going to continue to say, if         09:56

12    you recall?                                              09:56

13       A   I don't recall that particular --                 09:56

14       Q   Okay.  That's -- that's my fault.  I'm trying     09:56

15    to stop you to get things defined for the record.        09:56

16       A   Sure.                                             09:56

17       Q   And I don't know how to do it, because I          09:56

18    don't want to interrupt your train of thought at all.    09:56

19          And since we have you, "SDK" stands for            09:56

20    software development kit; is that right?                 09:56

21       A   That is correct.                                  09:56

22       Q   And Google develops those SDKs; is that           09:56

23    right?                                                   09:56

24          MR. ANSORGE:  Objection; vague.                    09:56

25          THE WITNESS:  Goo- -- Google has a number of       09:56
```

Page 42

| | | |
|---|---|---|
| 1 | products where there is some interaction or support | 09:56 |
| 2 | that needs to happen in a client environment.  And | 09:56 |
| 3 | software development kits from a number of Google | 09:57 |
| 4 | products, inside ads, outside of ads, are provided to | 09:57 |
| 5 | app developers or website developers to make it easier | 09:57 |
| 6 | for them to achieve some particular end. | 09:57 |
| 7 |        My specific product that I support, Google Ad | 09:57 |
| 8 | Manager, has a particular SDK that we make available | 09:57 |
| 9 | to web developers and publishers so that they can much | 09:57 |
| 10 | more easily generate ad requests and manage their | 09:57 |
| 11 | integration with Ad Manager. | 09:57 |
| 12 |        MS. WEAVER:  Q.  When you were talking about | 09:57 |
| 13 | content verticals, is that the same -- are you | 09:57 |
| 14 | familiar with the term ████████ █? | 09:57 |
| 15 |        MR. ANSORGE:  Objection; vague. | 09:57 |
| 16 |        THE WITNESS:  Not specifically. | 09:57 |
| 17 |        MS. WEAVER:  Q.  Like, the verticals -- okay. | 09:57 |
| 18 |        Are there lists of -- | 09:58 |
| 19 | A   Do you mean -- is that the ████ █? | 09:58 |
| 20 | Q   Yes. | 09:58 |
| 21 | A   Or ████? | 09:58 |
| 22 | Q   It's ██████, and then the ██████? | 09:58 |
| 23 |        Have you seen a listing of content verticals | 09:58 |
| 24 | called ██████ █? | 09:58 |
| 25 | A   No. | 09:58 |

Page 43



1    Q                                                        09:58

2                                                             09:58

3    A                                                        09:58

4                                                             09:58

5                                                             09:58

6                                                             09:58

7                                                             09:58

8                                                             09:58

9                                                             09:58

10                                                            09:58

11                                                            09:59

12                                                            09:59

13                                                            09:59

14                                                            09:59

15                                                            09:59

16                                                            09:59

17                                                            09:59

18                                                            09:59

19                                                            09:59

20                                                            09:59

21   Q    Is that called the                    ?            09:59

22   A    I -- I think if we use the term                    09:59

23            we -- we might need to be a bit more specific.   09:59

24   It's -- it's -- let's call it the                         09:59

25            because              I think, might be a little   09:59

Page 44

1    vague.                                                          10:00

2         I can't remember what the specific name of          10:00

3    the team is.  It's a group I don't interact with          10:00

4    directly.                                                      10:00

5       Q   And how long has that -- the [redacted]            10:00

6    [redacted] or whatever team you're thinking of, how long has  10:00

7    it been in existence?                                      10:00

8       A   I have been working in ads for seven years.         10:00

9    The -- the existence of this team predates me.             10:00

10      Q   [redacted]                                            10:00

11   [redacted]                                                   10:00

12   [redacted]                                                   10:00

13   [redacted]                                                   10:00

14         MR. ANSORGE:  [redacted]                               10:00

15   [redacted]                                                   10:00

16         THE WITNESS:  [redacted]                               10:00

17   [redacted]                                                   10:01

18   [redacted]                                                   10:01

19   [redacted] --                                                10:01

20   [redacted] --                                               10:01

21   [redacted]                                                   10:01

22   [redacted]                                                   10:01

23   [redacted]                                                   10:01

24   [redacted]                                                   10:01

25   [redacted]                                                   10:01

CONFIDENTIAL



| | | |
|---|---|---|
| 1 | ███████████████████████ | 10:01 |
| 2 | ███████████████████████ | 10:01 |
| 3 | ████████████████████ | 10:02 |
| 4 | ████ | 10:02 |
| 5 | ██████████████████ | 10:02 |
| 6 | ███████████████████ | 10:02 |
| 7 | █████████████████████ | 10:02 |
| 8 | ████████████████ | 10:02 |
| 9 | ██████████████████████ | 10:02 |
| 10 | █████████████████ | 10:02 |
| 11 | ███████████████ | 10:02 |
| 12 | █████████████████ | 10:02 |
| 13 | ████ | 10:02 |

```
14          MR. ANSORGE:  And --                        10:02

15          THE WITNESS:  So we have --                 10:02

16          MR. ANSORGE:  -- Ms. Weaver -- oh, I'm sorry, 10:02

17    Dr. Berntson.                                     10:02

18          THE WITNESS:  Yeah.  Go ahead.              10:02

19          MR. ANSORGE:  No.  I was just going to say,  10:02

20    we're close to an hour.  So if you come to a natural 10:02

21    stopping point, that would be great to -- to have that 10:02

22    break.                                            10:02

23          MS. WEAVER:  Okay.  That's fine.  We can     10:02

24    take -- we can take a break now.                  10:02

25          MR. ANSORGE:  Should we reconvene at ten past 10:02
```

Page 46

CONFIDENTIAL

| | | |
|---|---|---|
| 1 | publishers that want to start exploring.  That | 11:25 |
| 2 | experiment was fairly recently started. | 11:25 |
| 3 | And there are a number of products -- | 11:25 |
| 4 | advertising products within Google that have started | 11:25 |
| 5 | running some experiments in sort of this experimental | 11:25 |
| 6 | feature that Chrome has now launched as an origin | 11:25 |
| 7 | trial.  So I think that qualifies as an experiment. | 11:25 |
| 8 | There are a number of other experiments that | 11:26 |
| 9 | are being run within my group that's really exploring, | 11:26 |
| 10 | if third-party cookies go away, how helpful will | 11:26 |
| 11 | first-party cookies be? | 11:26 |
| 12 | And that is, we no longer have IDs that can | 11:26 |
| 13 | be used to track users across sites.  Now, publishers | 11:26 |
| 14 | are in a better position to sort of own their | 11:26 |
| 15 | relationship to users.  How much information, from an | 11:26 |
| 16 | ads monetization perspective, can be introduced?  It's | 11:26 |
| 17 | really based on publisher's direct relationships with | 11:26 |
| 18 | users. | 11:26 |
| 19 | And so we're running experiments to basically | 11:26 |
| 20 | see, if we get rid of all third-party cookies and we | 11:26 |
| 21 | start leaning more, the publisher is directly | 11:26 |
| 22 | controlling that ads monetization. | 11:26 |
| 23 | ███████████████████████████ | 11:26 |
| 24 | ███████████████████████████ | 11:26 |
| 25 | ███████████████████████████ | 11:27 |

Page 85

CONFIDENTIAL



| | | |
|---|---|---|
| 1 | | 11:27 |
| 2 | | 11:27 |
| 3 | | 11:27 |
| 4 | | 11:27 |
| 5 | | 11:27 |
| 6 | | 11:27 |
| 7 | | 11:27 |
| 8 | | 11:27 |
| 9 | | 11:27 |
| 10 | | 11:27 |
| 11 | | 11:27 |
| 12 | | 11:27 |
| 13 | | 11:27 |
| 14 | | 11:27 |
| 15 | | 11:27 |
| 16 | | 11:27 |
| 17 | | 11:28 |
| 18 | | 11:28 |
| 19 | | 11:28 |
| 20 | | 11:28 |
| 21 | | 11:28 |
| 22 | | 11:28 |

23      Q    Are there experiments that run without a          11:28

24    replacement for third-party cookies?                     11:28

25           MR. ANSORGE:   Objection; vague and out of the     11:28

Page 86

CONFIDENTIAL

```
 1   record.                                          11:31

 2           THE REPORTER:  Going off the record at    11:31

 3   2:31 p.m.                                         11:31

 4           (WHEREUPON, the deposition ended          11:31

 5             at 2:31 p.m.)                           11:32

 6                      ---oOo---

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                              Page 89
```

```
1              CERTIFICATE OF STENOGRAPHER

2

3          I, ANDREA M. IGNACIO, hereby certify that the

4    witness in the foregoing remote deposition was by me

5    remotely sworn to tell the truth, the whole truth, and

6    nothing but the truth in the within-entitled cause;

7          That said deposition was taken in shorthand

8    by me, a disinterested person, at the time and place

9    therein stated, and that the testimony of the said

10   witness was thereafter reduced to typewriting, by

11   computer, under my direction and supervision;

12         That before completion of the deposition,

13   review of the transcript [ ] was [x] was not

14   requested.  If requested, any changes made by the

15   deponent (and provided to the reporter) during the

16   period allowed are appended hereto.

17         I further certify that I am not of counsel or

18   attorney for either or any of the parties to the said

19   deposition, nor in any way interested in the event of

20   this cause, and that I am not related to any of the

21   parties thereto.

22   Dated: April 19, 2022

23

24

25    ANDREA M. IGNACIO, RPR, CRR, CCRR, CLR, CSR No. 9830

                                                  Page 90
```

**Deposition Errata**
**Case: *Calhoun, et al. v. Google LLC***
**Deponent: Glenn Berntson 30(b)(6)**
**Date of Deposition: April 14, 2022**

I, Glenn Berntson, hereby certify that I have read the transcript of my testimony taken under oath in my Rule 30(b)(6) deposition on the 14th day of April, 2022; that the transcript is a true, complete record of my testimony and that the answers on the record as given by me are true and correct, with the following exceptions:

| Pg. and Ln. | Now reads | Should read | Reason |
|---|---|---|---|
| Pg: 23 Ln: 2 | as -- as peach content. | as page content. | Transcription Error |
| Pg: 31 Ln: 25 | log file s | log files | Transcription Error |

*Glenn Berntson*                                    5/31/2022
Glenn Berntson                                       DATE