# Plaintiffs Reply Brief Redacted Version of Document Sought to be Sealed

**BLEICHMAR FONTI & AULD LLP**
Lesley E. Weaver (SBN 191305)
Anne K. Davis (SBN 267909)
Joshua D. Samra (SBN 313050)
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
*lweaver@bfalaw.com*

**SIMMONS HANLY CONROY LLC**
Jason 'Jay' Barnes (admitted *pro hac vice*)
An Truong (admitted *pro hac vice*)
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel.: (212) 784-6400
Fax: (212) 213-5949
*jaybarnes@simmonsfirm.com*

*Counsel for Plaintiffs*

**DICELLO LEVITT GUTZLER LLC**
David A. Straite (admitted *pro hac vice*)
Corban Rhodes (admitted *pro hac vice*)
One Grand Central Place
60 East 42nd Street, Suite 2400
New York, NY 10165
Tel.: (646) 933-1000
*dstraite@dicellolevitt.com*

Amy Keller (admitted *pro hac vice*)
Ten North Dearborn St., Sixth Floor
Chicago, IL 60602
Tel.: (31) 214-7900
*akeller@dicellolevitt.com*

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| PATRICK CALHOUN, *et al.*, on behalf of themselves and all others similarly situated,<br><br>  Plaintiffs,<br><br>  v.<br><br>GOOGLE LLC,<br><br>  Defendant. | Case No. 4:20-cv-05146-YGR-SVK[1]<br><br>**PLAINTIFFS' REPLY BRIEF RE: TARGETED USE OF *CALHOUN* DISCOVERY IN *IN RE GOOGLE CONSUMER RTB PRIVACY LITIGATION*, PURSUANT TO DKT. 683**<br><br>Hon. Yvonne Gonzalez Rogers |

**UNREDACTED VERSION OF DOCUMENT FILED UNDER SEAL**

---

[1] In accordance with the Court's instructions, this brief is filed under seal on the *Calhoun* docket only, in its entirety, and served separately upon counsel for Google in both actions.

---

**INTRODUCTION**

Google agrees that much of the evidence Plaintiffs identify in their opening brief is relevant to *RTB*, but says it is "nonsubstantive." Google also admits that at least 100,000 documents that hit on terms like "RTB" have been withheld while Google has only produced 51,052 documents in total in this case. Google's opposition rests largely on procedural grounds, arguing that because Judge DeMarchi has issued more than five substantive discovery orders in this case, Plaintiffs should not be able to share information and evidence already adduced in *Calhoun* with each other or the Court. (Google, of course, is playing it both ways, giving its counsel in this case access when it suits Google.) Google says such common-sense use is not proportional because allowing Plaintiffs to share what they know will undermine Judge DeMarchi's discovery rulings.

Google's arguments fail, for at least two reasons. ***First***, Judge DeMarchi's discovery rulings have focused on burden and proportionality.[2] Here, there is no undue burden. Plaintiffs are not seeking *production* of this discovery, which is already in Plaintiffs' possession. Rather, Plaintiffs simply seek permission to *access* a defined sub-set of the discovery. *See* Pls.' Proposed Order, *RTB* Dkt. 206-4. Further, this Court has since issued its ruling on Google's Motion to Dismiss ("MTD Order," *RTB* Dkt. 233), upholding nearly all claims affecting hundreds of millions of users whose information is sold in a multi-billion-dollar auction process. When viewed in context of the scope and size of the case, the slow pace of discovery in this action, and upcoming case deadlines, there are compelling reasons to permit this practical, and proportional, solution.

***Second***, Judge DeMarchi has issued her rulings without the benefit of a full record. At least one of these is subject to further briefing. *RTB* Dkt. 236. If discovery regarding data collection and storage discovery is not allowed, it will fundamentally prejudice Plaintiffs' ability to present this case to a jury. That ruling, and others, were direct results of Google's decision to withhold discovery in this case. The Court and its Magistrate Judges deserve the benefit of a full record, as do Plaintiffs. If Plaintiffs are not permitted to use relevant discovery produced in *Calhoun* to refute Google's contrary

---

[2] *See RTB* Dkt. 184 at 4, 5-6 (excusing compliance with Plaintiffs' RFPs Nos. 3-4, and 7-9 due to burden and proportionality); *RTB* Dkt. 188 at 3, 4 (declining to require Google to run proposed search terms or add disputed ESI custodians on similar grounds).

Plaintiffs' Reply Brief re Targeted Use of *Calhoun* Discovery in *RTB*          Case No. 4:20-CV-05146-YGR-SVK

1    positions, Plaintiffs are prejudiced, and this Court and its Magistrates are at risk of issuing

2    contradictory rulings in two related cases on the same subject matters. Plaintiffs' proposal for targeted

3    use and access is a fair, reasonable remedy.

4                                    **ARGUMENT**

5    **I.    THE EVIDENCE PLAINTIFFS SEEK TO SHARE WITH THE COURT AND CO-
          COUNSEL IS DIRECTLY PROBATIVE OF CORE CLAIMS AND DEFENSES IN
6          THIS ACTION**

7           **A.    The Targeted Evidence Falls Squarely Within the Contours of the Court's Order
                    Denying Google's Motion to Dismiss.**

8           The Court's succinct and clear order resolving Google's motion to dismiss crystallizes the

9    core facts, beginning with "Google collects, observes, and analyzes data from everyone using any of

10   its services and platforms. This data is then disseminated and sold through Google's Real-Time

11   Bidding system ("RTB"), which functions as an auction (*Id.* ¶¶ 3, 6.)." MTD Order at 2. Those Google

12   services include "Google.com, Chrome, Gmail, YouTube, Android, Google Maps, Google Play,

13   Google Docs, Google Calendars, Google Drive, Google Chat, Google Flights, Google Fit, Google

14   Meet, Google Pay, Google Pixel, Chromebooks, and YouTube TV." *Id.* at 6 (citing (CCAC ¶¶ 9-10)).

15   The Order notes "Plaintiffs are Google account holders who frequently use various web browsers,

16   including Google Chrome, Safari, and Edge to request, obtain, and watch audio-visual materials and

17   whose personal information was allegedly shared and sold through Google's RTB process. (*Id.* ¶¶ 9,

18   37- 68.)." *Id.* at 3. These core facts relate directly to "front-end" collection of information by Google.

19   The Order notes that "Google sold and shared plaintiffs' personal information through Google RTB.

20   This data includes information about the websites plaintiffs visited, the content of those sites, photos,

21   videos, and communications." *Id.* at 7. This is the "back-end" of the data flow. All of these topics are

22   clearly relevant and squarely within the categories of discovery withheld from production in *RTB*.

23          **B.    Google Concedes the Relevance of Much of the Evidence Plaintiffs Seek to Use,
                    and Has No Explanation for Failing to Produce it in *RTB*.**

24          Google argues that the overlap between *Calhoun* and *RTB* evidence is "smoke and mirrors."

25   The facts show otherwise. For example, Google says that "out of the over one million documents

26   produced in *Calhoun*, Plaintiffs identify only two exhibits that include the words 'Real-Time

27   Bidding' or 'RTB.'" Def. Br. at 7, *Calhoun* Dkt. 711-4. This is false, contradicted by Google's

28

1    admission in the very next sentence that even using its own narrowed search terms, **Google has**

2    **identified at least 100,0000 Calhoun documents relevant in this case that have not been produced**.[3]

3    *Id.* Google has produced only 51,052 documents in *RTB*. *See* Supplemental Declaration of Lesley E.

4    Weaver ("Suppl. Weaver Decl.") ¶ 4. That is, there are more RTB documents produced in *Calhoun*

5    than in *RTB*. How can Google honestly argue that these documents should be off-limits here? In fact,

6    while complaining generally that the evidence Plaintiffs seek to access and use is not relevant, Google

7    concedes the probative value of much of the discovery. There are at least five ways in which Google's

8    brief concedes relevance:

9         **First**, Google admits that deposition testimony in *Calhoun* discussed RTB, but Google's

10   counsel determined it to be "passing" and "nonsubstantive." Def. Br. at 7. "Passing" and

11   "nonsubstantive" are not discovery standards. Plaintiffs question whether Google should be permitted

12   to withhold relevant evidence based on *RTB* counsel's assessment of its "weight." For example,

13   deposition testimony from three engineers challenge counsel's conclusions:

14   - Dr. Hyewon Jun—who Google counsel directly told Judge DeMarchi in a hearing lacks any
         meaningful knowledge about RTB—testified at length about how Google tracks users. *See* Suppl.

15       Weaver Decl. ¶ 5.d., Ex. S (Jun Dep. Tr.) at 103:15–116:8 ████████████████████████████

16       ████████████████████████████████████████████

17       ████████████████████). *See also* Suppl. Weaver Decl. ¶ 5.e., Ex. T (Exhibit 3 to Jun
         Dep. Tr.) at -175 to -176.

18   - Dr. Deepak Ravichandran, deposed in *Calhoun*, "wrote an external white paper on Google ad
         managers RTB bidding on top 500 publishers." Suppl. Weaver Decl. ¶ 5.a., Ex. P (Ravichandran

19       Dep. Tr.) at 231:11–17. The paper was the subject of extensive testimony.

20   - Chetna Bindra testified in *Calhoun* that the "overall real-time bidding ecosystem…does operate
         in a way that it appears, you know, yes, a lot of the players within the ecosystem rely on user

21       identifiers. They do all the things that are mentioned there." *See* Suppl. Weaver Decl. ¶ 5.b., Ex.
         Q (Bindra Dep. Tr.) at 293:23–295:12 (testifying regarding Exhibit 41, ████████████████████

22       ██████████████████████████████████████████████

23       ████████████████).[4] *See also* Suppl. Weaver
         Decl. ¶ 5.c., Ex. R (Ex. 41 to Bindra Dep. Tr.) at -040.

24

25   [3] Google's documents calculations are unclear. Searches using relevant terms hit on at least 321,956

26   documents withheld from *RTB* relating to data flow, personal information, consent and damages.
     Suppl. Weaver Decl. ¶ 3. And evidence discussed in the briefing are *examples*.

27   [4] Google suggests that Judge DeMarchi dispositively ruled that the damages information relating to
     what Google pays users for their data is irrelevant (the "Screenwise" program). This is not true. Judge

28   DeMarchi instead ordered the parties to confer. *RTB* Dkt. 189 at 4-5. This issue is pending.

Plaintiffs' Reply Brief re Targeted Use of *Calhoun* Discovery in *RTB*          Case No. 4:20-CV-05146-YGR-SVK

1  Google's assertion that such testimony is "nonsubstantive" cannot be squared with the transcripts.

2      **Second**, the search terms Google used to identify *Calhoun* documents were overly narrow,

3  but the *topics* are admissions by Google that the Ad Exchange ecosystem is relevant in *RTB*. Ad

4  Exchange relates directly to how ads are created and placed; how Google analytics reports success

5  rates to publishers and advertisers; what revenues are generated; how to improve targeting so that

6  publishers, advertisers and Google can generate more revenue, etc. Inexplicably, 50,206 documents

7  relating to these topics were produced in *Calhoun* but not in *RTB*. Suppl. Weaver Decl. ¶ 3.

8      **Third**, Google admits that the "RTB Privacy Risk – data flows" document is relevant, saying

9  Google has already produced "documents that reflect similar information, and various other

10  documents reflecting descriptions and diagrams of RTB data flow." Def. Br. at 8. Google does not

11  explain how or why it has limited its production to this incomplete subset.

12      **Fourth**, the documents Google cites demonstrate the relevance of data flow. Def. Ex. 2 notes

13  that "[w]hether user_vertical should be cleared or not depends on the allow_user_verticals field"

14  which is determined "per bidder configuration." *Id.* at -909. This "user vertical" field is created by

15  Google in the data flow, and how Google categorizes data into verticals from the front end is directly

16  relevant. Googler engineer Stanislav Belov declares, with no citations, that "Google's RTB products

17  do not share with third parties any form of user 'profile,' 'segment,' or 'vertical' information that

18  Google links to its users." Belov Decl. ¶ 11. But Plaintiffs' expert Prof. Zubair Shafiq cites Google's

19  documents to show that Mr. Belov is wrong on this key issue. *See* Supplemental Declaration of Prof.

20  Zubair Shafiq ("Suppl. Shafiq Decl.") ¶¶ 8-16; 20-26. All evidence on this topic should be made

21  available to Plaintiffs in *RTB*.

22      **Fifth**, Google admits the relevance of the "████████" log, stating in the June 1, 2022

23  hearing that it is the *only* log that Google needs to produce in this case. June 1, 2022 Hr'g Tr. at 24:23-

24  25:2. However, Google has not yet produced it, and has only produced seven documents referring to

25  it. Suppl. Weaver Decl. ¶ 4. Mr. Belov effectively concedes (as he must) that the "████████

26  ████████████" log contains information directly relevant to RTB. Belov Decl. ¶ 12. It does. Prof.

27  Shafiq notes that for just one *Calhoun* plaintiff there are ██████ explicit mentions of RTB in one

28  such log, and ██████ explicit mentions of RTB in ████████ logs. Suppl. Shafiq Decl. ¶¶ 21-24.

1    Google has not produced a single Named Plaintiff document or log in *RTB*. Suppl. Weaver Decl. ¶ 4.

2    ***Finally***, Google agrees storage and collection is relevant, but only when *Google* is seeking

3    discovery related to them. On Google's motion, Judge DeMarchi ordered Plaintiffs to produce

4    account, device settings, and browsing histories stored on Named Plaintiffs' personal devices,

5    including. *RTB* Dkts. 185, 190. Unbeknownst to Judge DeMarchi, Google maintains storage systems

6    with detailed records of this information, but it did not inform Judge DeMarchi, even when Plaintiffs

7    inquired. Thus, Plaintiffs produced significant productions of evidence to Google containing

8    information Google already possesses. This is an absurd outcome.

9         **C.    Google's Arguments that Similar Discovery Is Not Probative of Key Issues in This Case Is Whimsical.**

10        **1.    Data Flow, Front-End Logs, and Collection and Storage of User Information Should Not Be Produced Piecemeal.**

11

12   Among the swathes of evidence Google refuses to produce are logs of data that show precisely

13   what Google collects about users and what it does with it. Prof. Shafiq counters Mr. Belov's

14   conclusions with evidence, not opinion. Google's own documents describe how Google shared

15   verticals in bid request and targets users based on personal information. Suppl. Shafiq Decl. ¶¶ 8-16;

16   20-26. These logs also show that Google connects data to account holders even when they are signed

17   out, a major privacy breach. *Id.* ¶¶ 17-20. They are critically important.

18        **2.    Evidence Relating to the Privacy Projects Bear Directly on Google's Consent Defenses, and Google's Argument Otherwise Is Specious.**

19   Google grossly misleads by suggesting that its consent defenses are so different in *RTB* that

20   *Calhoun* consent discovery is irrelevant. There is no document that obtains consent specifically for

21   the real time bidding auction; Google does not even attempt to point to one. As the Court noted, the

22   operative consent documents are Google's terms of service and privacy policies, MTD Order at 7,

23   which apply in both *Calhoun* and *RTB*. Documents relating to them are relevant in both cases.

24   Google challenges the probative value of the " ███████████ " study to *RTB*. Google's

25   corporate designee, Michael Kleber, testified that the impetus for Privacy Sandbox was a peer-

26   reviewed article titled "Diffusion of User Identity in the Ads Ecosystem." Suppl. Weaver Decl. ¶ 5.f.,

27   Ex. U (Kleber Dep. Tr.) at 30:19–25. This paper, authored by Plaintiffs' expert Christo Wilson, is

28   specifically referenced in the *RTB* CCAC ¶¶ 181. ***It focuses on disclosures made about users in the***

1    ***RTB auction***. Thus, through the Kleber 30(b)(6) deposition, ████████████

2    ████████████████████████████████████████████████████████████

3    ██████. That evidence is directly relevant in this action.

4              **3.      Granting Access and Use of Evidence Will Streamline Disputes.**

5    Discovery of the revenues that Google makes through advertising in the RTB is relevant in

6    both *Calhoun* and *RTB*. ████████████████████████████████████

7    ████████████████████████████████████████████████████████████

8    Plaintiffs can establish and apportion Google's unjust enrichment using them. But Google has

9    withheld that evidence and, through repeated threats and warnings, prevented Plaintiffs from

10   informing the Court of the truth as it considered discovery briefing.[5]

11   **II.    GOOGLE'S PROCEDURAL ARGUMENTS FAIL**

         **A.     Judge DeMarchi Has Not Decided This Issue Already.**

12   As discussed in the hearing, Judge DeMarchi has not adjudicated this issue. Plaintiffs seek

13   relief from the Protective Order in *Calhoun* to share information and evidence, subject to the parties'

14   negotiations, from that related matter in this case. It is more efficient for this Court, which is

15   overseeing both related actions, to grant that permission, rather than Judge DeMarchi, who is not

16   assigned to *Calhoun*. The less efficient alternative was for Plaintiffs to seek relief from both

17   Magistrate Judges DeMarchi and van Keulen, who would consult with this Court in any event.

18            **B.     This Court Has the Authority to Manage Its Docket.**

19   Google claims simultaneously that Plaintiffs have already briefed this issue, and that this

20   motion is untimely. Neither argument is serious. For over a year, Plaintiffs have attempted to resolve

21   disputes with Google without troubling the Court. But now, with a substantial discovery completion

22   deadline currently set for July 11, 2022, intransigence from Google to providing even basic discovery,

23   and clear knowledge of what Google is withholding, it is well within the Court's discretion to grant

24   the relief sought.

25

26

27   ---
     [5] Google suggests that Judge DeMarchi dispositively ruled that the damages information relating to
28   what Google pays users for their data is irrelevant (the "Screenwise" program). This is not true. Judge
     DeMarchi instead ordered the parties to confer. *RTB* Dkt. 189 at 4-5. This issue is pending.

Plaintiffs' Reply Brief re Targeted Use of *Calhoun* Discovery in *RTB*    Case No. 4:20-CV-05146-YGR-SVK

1 | DATED: June 18, 2022

Respectfully submitted,

**BLEICHMAR FONTI & AULD LLP**

*/s/ Lesley E. Weaver*
Lesley E. Weaver (SBN 191305)
Anne K. Davis (SBN 267909)
Joshua D. Samra (SBN 313050)
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com
adavis@bfalaw.com
jsamra@bfalaw.com

**SIMONS HANLY CONROY LLC**

*/s/ Jay Barnes*
Jason 'Jay' Barnes (admitted *pro hac vice*)
An Truong (admitted *pro hac vice*)
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel.: (212) 784-6400
Fax: (212) 213-5949
jaybarnes@simmonsfirm.com
atruong@simmonsfirm.com

**DICELLO LEVITT GUTZLER LLC**

*/s/ David A. Straite*
David A. Straite (admitted *pro hac vice*)
One Grand Central Place
60 E. 42nd Street, Suite 2400
Tel.: (212) 784-6400
Fax: (212) 213-5949
New York, NY 10165
Tel: (646) 993-1000
dstraite@dicellolevitt.com

Amy Keller (admitted *pro hac vice*)
Ten North Dearborn St., Sixth Floor
Chicago, IL 60602
Tel.: (31) 214-7900
akeller@dicellolevitt.com

*Counsel for Plaintiffs in RTB and Calhoun*

- 7 -

Plaintiffs' Reply Brief re Targeted Use of *Calhoun* Discovery in *RTB*    Case No. 4:20-CV-05146-YGR-SVK