# DECLARATION OF JOSEF ANSORGE ISO GOOGLE LLC'S OPPOSITION TO PLAINTIFFS' MOTION FOR AN ORDER OF SANCTIONS FOR GOOGLE'S DISCOVERY MISCONDUCT

# Redacted Version of Document Sought to be Sealed

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

Diane M. Doolittle (CA Bar No. 142046)
dianedoolittle@quinnemanuel.com
Sara Jenkins (CA Bar No. 230097)
sarajenkins@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
Teuta Fani (admitted *pro hac vice*)
teutafani@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Stephen A. Broome (CA Bar No. 314605)
stephenbroome@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
Crystal Nix-Hines (CA Bar No. 326971)
crystalnixhines@quinnemanuel.com
Alyssa G. Olson (CA Bar No. 305705)
alyolson@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Josef Ansorge (admitted *pro hac vice*)
josefansorge@quinnemanuel.com
Xi ("Tracy") Gao (CA Bar No. 326266)
tracygao@quinnemanuel.com
Carl Spilly (admitted *pro hac vice*)
carlspilly@quinnemanuel.com
1300 I Street NW, Suite 900
Washington D.C., 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

Jomaire Crawford (admitted *pro hac vice*)
jomairecrawford@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

*Counsel for Defendant Google LLC*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| PATRICK CALHOUN, *et al*., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 4:20-cv-05146-YGR-SVK<br><br>**DECLARATION OF JOSEF ANSORGE IN SUPPORT OF GOOGLE LLC'S OPPOSITION TO PLAINTIFFS' MOTION FOR AN ORDER OF SANCTIONS FOR GOOGLE'S DISCOVERY MISCONDUCT**<br><br>The Honorable Susan van Keulen<br>Date: August 11, 2022<br>Time: 9:30 a.m.<br><br>Trial Date: None Set |

I, Josef Ansorge, declare as follows:

1.    I am of counsel at Quinn Emanuel Urquhart & Sullivan LLP, which serves as Google's outside counsel in this litigation. I submit this declaration in support of Google's Opposition to Plaintiffs' Motion for an Order of Sanctions for Google's Discovery Misconduct.

2.    I make this declaration of my own personal, firsthand knowledge, and if called as a witness, I could and would testify competently thereto.

**Preservation and Production of Plaintiff Data Prior to the Special Master's Appointment**

3.    In September 2020, Google preserved data related to the Google Accounts Plaintiffs indicated were associated with the Named Plaintiffs in the Complaint, including: (1) Google Account subscriber information, which contains, among other information, Google Account name, Google Account ID, date of account creation, email address, alternative email address, IP addresses and User Agents related to the Account holder's sign-ins; and (2) My Activity information, which includes URL information on browsing activity and time stamps (if not deleted by the Account holder), and additional data related to Plaintiffs' activity on websites that used Ad Manager or Analytics services.

4.    On September 30, 2020, Google served upon Plaintiffs its Objections and Responses to Plaintiffs' Request for Production No. 5 requesting "[d]ocuments, data and information related to or associated with the Plaintiffs." In its response, Google stated: "Google will produce non-privileged, non-work product, relevant information associated with Plaintiffs' Google Account names and email addresses identified in the Complaint, so long as Plaintiffs can identify specific relevant information associated with their Accounts and email addresses." Dkt. 166 at 3. Google objected to the extent Plaintiffs' request also sought data that is not keyed to a Google Account, but rather keyed to pseudonymous cookies set on a browser, stating that "browsing data could relate to an individual who was using the same device as Plaintiffs," and "[a]ccordingly, Plaintiffs would not be able to provide lawful consent." Dkt. 151-4 at 7.

5.    During the ESI protocol negotiations from October 2020 through January 2021, Plaintiffs requested that Google categorically preserve log data from "system, server, and network logs". *See* Dkt. 109-4 ¶¶ 3–6. Google objected to Plaintiffs' demand because of the technical and

1  financial burden it would impose on Google. *Id.* On January 21, 2021, Plaintiffs sent Google a letter

2  claiming that Google's position constituted a "spoliation issue". *Id.* ¶ 7; Dkt. 109-5 at 1.

3      6.      Google was concerned by Plaintiffs' accusations of spoliation and the substantial

4  challenges involved in meeting the preservation obligations Plaintiffs requested. In response,

5  Google: (1) engineered pipelines to preserve event-level data associated with the Named Plaintiffs'

6  GAIA IDs in February 2021 (the "Litigation Hold Data"); and (2) filed an emergency Motion for A

7  Protective Order on February 17, 2021 (Dkt. 108-4). The engineering work was completed in March

8  2021. The data was preserved in a raw format, which is not optimized for, *e.g.*, searching or

9  analyzing, to ensure prompt preservation.

10      7.      Following the March 5, 2021 hearing on the Motion for A Protective Order, the Court

11  ordered the parties to meet and confer regarding "a narrow production of documents" regarding data

12  dictionaries, database architecture documentation, and technical documentation in advance of a Rule

13  30(b)(6) deposition on the relevant logs and retention practices ("March 5, 2021 Order"). Dkt. 129.

14  Google produced the requested documents on March 30, 2021 (GOOG-CALH-00027166–GOOG-

15  CALH-00027457).

16      8.      On April 1, 2021, the parties submitted a joint letter brief regarding the production

17  of documents pursuant to the March 5, 2021 Order. Dkt. 151-4. On April 5, 2021, the Court ordered

18  Plaintiffs to email consent forms from their Google Accounts, and Google to provide "a sample

19  from each of the four categories of logs discussed at the hearing for each named Plaintiff." Dkt.

20  155.

21      9.      Pursuant to the April 5, 2021 Order, Plaintiffs provided consent forms for various

22  Google Accounts on April 5, April 6, May 17, June 23, July 15, August 9, and September 8, 2021.

23  Google produced the requested sampled data, additional technical documentation, and Plaintiffs'

24  Google Account subscriber information and My Activity information on April 6 and April 7, 2022

25  (GOOG-CALH-00027458–GOOG-CALH-00027821).

26      10.    On April 9, 2021, Google produced a Rule 30(b)(6) witness to testify on the relevant

27  logs and retention practices. Attached hereto as Exhibit 1 is a true and correct copy of excerpts from

28

the transcript of the April 9, 2021 Rule 30(b)(6) deposition of Google's corporate designee David Monsees.

11.     On April 20, 2021, the parties submitted a joint chart regarding various discovery disputes, including Dispute 1.3 regarding "Plaintiffs' RFP No. 5, request for data associated with Plaintiffs or their PI." Dkt. 164 at 3.

12.     The Court held a discovery hearing on April 29, 2021. At the hearing, Plaintiffs acknowledged that "a device that's linked to a named Plaintiff . . . may also be [associated with activity by] your spouse if there's two people sharing the same device." Plaintiffs maintained the position that the data at issue must be produced. 4/29/21 Hr'g Tr. at 44:24–45:6. A true and correct copy of excerpts of the April 29, 2021 hearing transcript is attached hereto as Exhibit 2.

13.     On April 30, 2021, the Court ordered Google to produce data associated with Named Plaintiffs, including, "device data associated with any Plaintiff," and "recogniz[ed] that additional disputes regarding the available data may arise." Dkt. 173-1 at 1–2 (Disputes Nos. 1.3, 2.2).

14.     On the same day, the Court entered the Protective Order, which provided that "Google need not suspend its standard retention periods applicable to data logs that reflect event-level data of Chrome users in the United States." Dkt. 174.

15.     On May 6, 2021, the parties submitted a joint discovery chart, in which Plaintiffs took the position that "Google represents that it will produce plaintiff profiles, web browsing history and other information associated with their Google accounts and associated with the small universe of other identifiers that Plaintiffs happened to discover during the investigation of claims in this case. But Google refuses to disclose the other identifiers (likely the vast majority of Plaintiffs' identifiers) and produce plaintiff information associated with those as well." Dkt. 178 at 3 (Dispute No. 1.3). Google stated that "Google is identifying data associated with the authenticated and unauthenticated identifiers that Plaintiffs provided . . . and will produce by May 12. Plaintiffs have failed to identify or describe with any precision the 'other identifiers' Google refuses to produce." *Id.*

16.     On May 12, 2021, Google produced ███████ data associated with Plaintiffs' Google Accounts (data tied to authenticated identifiers), Analytics data associated with the CID

ANSORGE DECL. ISO OF GOOGLE'S OPPOSITION TO MOTION FOR AN ORDER OF SANCTIONS

1  values Plaintiffs provided (data tied to unauthenticated identifiers), and ███ Ads log data

2  associated with Biscottis extracted from the IDE cookie values Plaintiffs provided (data tied to

3  unauthenticated identifiers) (GOOG-CALH-00039102–GOOG-CALH-00039130). On May 14,

4  2022, Google produced X-Client Data Header information associated with ad events associated with

5  Plaintiffs' Google Accounts in Ads logs (GOOG-CALH-00045178).

6       17.    On May 26, 2021, the parties submitted another joint discovery chart. Dkt. 206.

7  Plaintiffs stated that "Plaintiffs are aware of only a narrow slice of these identifiers, for example,

8  those they happened to see during the investigation of claims in this case, and those have been

9  provided to Google. Google has additional identifiers that should be used to find relevant

10 information, but refuses to do so. . . . Plaintiffs therefore ask for an order compelling Google to

11 search for any identifiers associated with the Plaintiffs, and then in turn produce documents or

12 information associated with them." *Id.* at 4. Google stated that "Google has produced reasonably

13 available data tied to the authenticated and unauthenticated identifiers Plaintiffs provided, and that

14 production included data associated with Plaintiffs' devices/browsers. Because unauthenticated

15 identifiers are pseudonymous, not designed to uniquely identify a user, and may relate to multiple

16 users, Google uses authenticated identifiers (Google Accounts) to determine whether information is

17 associated with any specific individual. And, as Mr. Monsees testified (Tr. 184:12–16), Google fully

18 segregates authenticated from unauthenticated data. Ignoring these facts, Plaintiffs ask this Court to

19 order Google to violate various anti-fingerprinting policies to infer a second order of unauthenticated

20 identifiers that may have come from devices Plaintiffs (in addition to other individuals) may have

21 used. But, because authenticated and unauthenticated data are fully segregated, such information

22 does not exist in the ordinary course of business and is outside scope of Rule 34. Google should not

23 be ordered to create new information at Plaintiffs' behest." *Id.*

24      18.    At the June 2, 2021 hearing, Google repeated that it segregates authenticated and

25 unauthenticated data for privacy reasons, stating that "these are policies that are implemented in

26 Google's data architecture," and that "the systems are . . . built to prevent the joining of [the]

27 authenticated and unauthenticated data." *Id.* 46:5–9. Plaintiffs maintained the position that Google

28 should override its policy and attempt to identify unauthenticated identifiers that may be associated

1    with the devices Plaintiffs used to log into their Google Accounts. 6/2/21 Hrg. Tr. at 38:3–5. A true

2    and correct copy of excerpts of the June 2, 2021 hearing transcript is attached hereto as Exhibit 3.

3         19.    On June 4, 2021, Google produced Plaintiffs' Web and App Activity ("WAA") and

4    Supplemental Web and App Activity ("sWAA") settings (GOOG-CALH-00047632– GOOG-

5    CALH-00047701).

6         20.    On June 8, 2021, the Court issued an Order requesting: (1) additional briefing on the

7    issue regarding production of Plaintiffs' data following two 30(b)(6) depositions on relevant logs

8    and retention practices; and (2) briefing with regard to the appointment of a Special Master. Dkt.

9    220-1 at 1 (Dispute No. 1.3).

10         21.    On June 11, 2021, Google produced a Rule 30(b)(6) witness to testify on the relevant

11    logs. Attached hereto as Exhibit 4 is a true and correct copy of excerpts from the transcript of the

12    June 11, 2021 Rule 30(b)(6) deposition of Google's corporate designee David Monsees.

13         22.    On June 16, 2021, Google produced additional Google Account subscriber

14    information and My Activity information associated with Plaintiffs' Google Accounts (GOOG-

15    CALH-00050659–GOOG-CALH-00052098).

16         23.    On June 18, 2021, the parties submitted a Joint Submission re Possible Appointment

17    of A Special Master. Dkt. 222.

18         24.    On June 22, 2021, Google produced additional ███████ data associated with

19    Plaintiffs' Google Accounts (GOOG-CALH-00052099–GOOG-CALH-00052101).

20         25.    On June 23, 2021, in response to the June 8, 2021 Order, Plaintiffs submitted a

21    Motion to Compel Production of Plaintiffs' Information. Dkt. 226. Google submitted its Opposition

22    to that Motion to Compel on July 1, 2021. Dkt. 232-4. In the Opposition, Google stated again that

23    "to comply [with Plaintiffs' request], Google would have to reverse engineer unauthenticated

24    identifiers from Google Account-keyed information. But Google need not create new information

25    to satisfy Plaintiffs." *Id.* at 1.

26         26.    On June 28, 2021, Google produced additional Google Account subscriber

27    information associated with Plaintiff Guzman's belatedly provided Google Account information

28    (GOOG-CALH-00061943 - GOOG-CALH-00061945).

27.    On June 29, 2021, Google produced inferred interests and ads personalization data associated with Plaintiffs' Google Accounts (GOOG-CALH-00061946–GOOG-CALH-00061976).

28.    On July 1, 2021, Google produced gCases data associated with Plaintiff Kindler's Google Account (GOOG-CALH-00061977–GOOG-CALH-00061978).

29.    On July 2, 2021, the parties filed a Joint Submission re: Nominations for a Special Master and Proposed Orders. Dkt. 235.

30.    On July 13, 2021, the Court issued an Order Appointing Special Master, Dkt. 246, and referred the dispute regarding production of Plaintiffs' data to Special Master Brush. Dkt. 247.

31.    On July 15, 2021, Google produced additional inferred interests and ads personalization data associated with Plaintiffs' Google Accounts (GOOG-CALH-00072863–GOOG-CALH-00072985).

32.    In July and August 2021, Google developed pipelines to preserve additional ███████ data associated with Plaintiffs' Google Accounts and Biscottis extracted from the cookie values Plaintiffs provided (adding to the Litigation Hold Data). Google did not preserve Zwieback-keyed data because Zwieback ID is not used to key the data at issue: data generated when users visit a third-party website that uses Google Analytics or Ad Manager; it is set in cookies by google.com domains, such as Google Search. *See Brown* 6/16/21 Berntson Depo Tr. at 77:23–78:4 (Q. Does Google Analytics use Zwieback? A. It's slightly complicated, but the answer is they leverage Zwieback but they're not keying data off the Zwieback like searches."); 82:4–8 ("Google Ad Manager doesn't use Zwieback[.]"); *see also Brown* 11/19/21 Adhya Depo Tr. at 167:10–17 (Q You said [Zwieback ID is] used on the google.com domain. I'm just wondering if you know if it's used anywhere else? A It's used in any of the kind of the -- what we call country code top-level domains, CCTLD. So Google.de, Google.fr, these country-specific domains. So anything that's kind of like Google asterisk star, any of those domains."). A true and correct copy of excerpts of the June 16, 2021 Berntson Deposition transcript is attached hereto as Exhibit 5. A true and correct copy of excerpts of the November 19, 2021 Adhya Deposition transcript is attached hereto as Exhibit 6.

33.    On August 9, 2021, Google produced additional gCases data associated with Plaintiffs' Google Accounts (GOOG-CALH-00430027–GOOG-CALH-00430035);

34.     On August 24, 2021, for a newly added Plaintiff, Google produced additional Google Account subscriber information, My Activity information, ███████ data, inferred interests and ads personalization data, and X-Client Data Header information (GOOG-CALH-00492265– GOOG-CALH-00492852).

35.     On September 29, 2021, Google produced records of Plaintiffs' consent to various Google disclosures (GOOG-CALH-00592132–GOOG-CALH-00592280).

36.     On October 6, 2021, for a newly added Plaintiff, Google produced additional My Activity information, ███████ data, and inferred interests and ads personalization data (GOOG-CALH-00648520–GOOG-CALH-00651646).

37.     On October 15, 2021, for a newly added Plaintiff, Google produced additional Google Account subscriber information, My Activity information, ███████ data, and inferred interests and ads personalization data (GOOG-CALH-00651649–GOOG-CALH-00652279).

38.     On October 20, 2021, Google produced Plaintiffs' Google Account activity controls record (GOOG-CALH-00652283).

39.     On October 22, 2021, Google produced Plaintiffs' Google Account privacy checkup record (GOOG-CALH-00652284–GOOG-CALH-00652285).

40.     On November 4, 2021, Google produced additional records of Plaintiffs' consent to various Google disclosures (GOOG-CALH-00660110–GOOG-CALH-00660116).

**Production of Plaintiff Data Under the Special Master Process**

41.     Following Mr. Brush's appointment on July 13, 2021 as Special Master (Dkt. 220), on July 30 and September 15, 2021, Google participated in Zoom conferences with Plaintiffs before the Special Master.

42.     On September 16, 2021, the Court issued an Order setting forth a funneled three-step process for the Special Master discovery whereby (1) potentially relevant sources are identified, (2) additional information is provided for a subset of those sources, and (3) a further subset of those sources is then searched. Dkt. 309.

43.    Pursuant to the order and the Special Master's instructions, on September 17, 2021, Google identified ██ potentially relevant data sources, including the name of the data source, a description of each data source's purpose and function, and information about their retention status.

44.    On September 23, 2021, Google participated in a Zoom conference with Plaintiffs before the Special Master.

45.    Pursuant to the Special Master's instruction, on September 27, 2021, Google identified the ██ Litigation Hold Data sources from the ██ potentially relevant data sources, and provided additional information regarding sources Plaintiffs selected, including schema/fields, field descriptions, and documents relevant to searching and working with the requested sources.

46.    On September 30, 2021, Plaintiffs asked the Special Master to order Google to produce the Named Plaintiff data Google "has preserved but not yet produced." Attached hereto as Exhibit 7 is a true and correct copy of Plaintiffs' September 30, 2021 letter to the Special Master.

47.    On October 5 and October 12, 2021, Google participated in Zoom conferences with Plaintiffs before the Special Master. During the conferences, Plaintiffs again requested the production of the Litigation Hold Data. The Special Master consistently denied Plaintiffs' request.

48.    On October 8 and October 16, 2021, Google produced ██████, ██████, and UMA data associated with Plaintiffs' Google Accounts and UMA identifiers (GOOG-CALH-00651647–GOOG-CALH-00651648;        GOOG-CALH-00652280–GOOG-CALH-00652282). Google also ran searches across several additional data sources pursuant to Plaintiffs' request, which did not return data.

49.    On October 20, 2021, the Special Master issued a report finding that "Google has engaged in and is, at the time of this Special Master's Report and Recommendation, in the process of producing relevant, responsive materials for the respective Plaintiffs under the supervision and as a direct result of the Special Master's intervention in resolving disputes referred to the Special Master" ("October 20 R&R"). Dkt. 351 ¶ 50.

50.    On November 4, 2021, the parties had a live in-person hearing before this Court regarding the Special Master's report and recommendation. At the hearing, the Court stated: "To the extent my Orders predate referral to the Special Master, I view those as a starting point, and then

ANSORGE DECL. ISO OF GOOGLE'S OPPOSITION TO MOTION FOR AN ORDER OF SANCTIONS

1    I referred the matter to the Special Master, expecting the application of his expertise and his work

2    and time with you all, to really hone and fine tune my Order as his expertise determines, to frankly,

3    better hone it and bring it within any parameters with regards to what is relevant and proportional."

4    *Brown* 11/4/21 Hrg. Tr. at 6:10–16. A true and correct copy of excerpts of the November 4, 2021

5    hearing transcript is attached hereto as Exhibit 8.

6         51.    On November 12, 2021, the Court issued an Order laying out steps to conclude the

7    Special Master process. *See* Dkt. 377 at 6 ("The requests for production from Google must and will

8    come to an end as provided for in Exhibit 1.") Among other things, the Court adopted the Special

9    Master's October 20, 2021 recommendation, and directed Google to provide "a full list of all data

10   sources which have been searched during the overall discovery process, . . . includ[ing] . . . a list of

11   all bates ranges in the production(s) associated with each searched data source identified specifically

12   by data source." Dkt. 377 at 10. The Court also directed Google to provide a declaration that "[a]ll

13   responsive data related to the Named Plaintiffs have been produced from all searched data sources

14   in the respective prior searches." *Id.*

15        52.    On November 18, 2021, Google provided the list of data sources and declaration

16   required by the November 12 Order. Dkt. 383. Because the Special Master had denied Plaintiffs'

17   request for production of the Litigation Hold Data, Google understood the relevant provisions of the

18   October 20 R&R and November 12 Order to refer to the data Google searched for purposes of

19   production, *not* the Litigation Hold Data.

20        53.    On November 22, 2021, the Special Master team confirmed that the documents

21   Google provided "satisfy the [November 12 Order's] requirements." Attached hereto as Exhibit 9

22   is a true and correct copy of the Special Master team's November 22, 2021 email to the parties.

23        54.    On December 6, 2021, Google produced DBL ■ data related to Plaintiffs (GOOG-

24   CALH-00797544–GOOG-CALH-00804951).

25        55.    On December 29, 2021, pursuant to the Special Master's request, Plaintiffs submitted

26   their first rounds of search requests, requesting Google to search ■ GAIA IDs and more than ■

27   unauthenticated identifiers across ■ selected data sources, including ■ data sources from which

28   the Litigation Hold Data was preserved, a fact Google disclosed on September 27, 2021. Plaintiffs

1    also repeated their request that "Google produce all data that it has previously identified as being

2    'preserved' for Plaintiffs but not produced," and attached an Excel spreadsheet labeled "G - List of

3    Data Sources Google States are Preserved But Not Produced." Attached hereto as Exhibits 10 and

4    11 are true and correct copies of the Plaintiffs' December 29, 2021 letter to the Special Master team

5    and the attached Excel spreadsheet, respectively.

6        56.    The Special Master team confirmed on December 30, 2021 that "Special Master

7    Brush has determined that [Plaintiffs' request for 'Production of Data Google Has Preserved But

8    Not Produced' is] outside the scope of Exhibit 1, Section 4 [of the November 12, 2021 Order.]").

9    Attached hereto as Exhibit 12 is a true and correct copy of the Special Master team's December 30,

10    2021 email to the parties.

11        57.    Pursuant to the Special Master's instruction, Google ran the requested searches

12    (including searches on identifiers provided by Plaintiffs' expert, Dr. Shafiq, because Plaintiffs

13    claimed they may get only null sets for the identifiers provided by Plaintiffs), and produced all

14    responsive data on January 7, January 8, January 11, January 12, January 13, January 31, and

15    February 7, 2022 (including data from logs that contain confidential third-party information, which

16    was produced after all relevant publishers received reasonable notice).

17        58.    For the selected ████ logs (██ of the ██ selected sources), Google ran searches

18    using the Dremel tool pursuant to the Special Master's instruction. *See, e.g.*, 2/26/22 email from the

19    Special Master team ("Special Master Brush orders the Parties to hold an initial meeting with their

20    respective experts to design a methodology for finishing Dremel tool searches. Additionally, the

21    Dremel tool results will aid and create searches of historical data sets for sources identified by Brown

22    and Calhoun Plaintiffs."). Attached hereto as Exhibit 13 is a true and correct copy of the

23    Special Master team's February 26, 2022 email to the parties. The searches and production of data

24    in ████ logs were limited to the data generated during the most recent ████████ window because

25    that is the data queryable by Dremel. *See* Dkt. 361-6 at 4.

26        59.    From December 2021 to February 23, 2022, Plaintiffs repeatedly renewed their

27    request for the Litigation Hold Data, and the Special Master denied that request each time. *See, e.g.*,

28    Dkt. 669-12 at 6 (Google's January 25, 2022 letter) ("At the January 19, 2022 meeting, the Special

Master responded to Plaintiffs' request that Google produce all preserved data by noting that there is a difference between preserving, searching, and producing data.").

60.    At the February 24, 2022 meeting before the Special Master, Plaintiffs renewed their request again, and the Special Master stated, "So we have the issue of preservation, searching, and production. If there are things that were withheld, the respondent has the right under certain circumstances not to produce it." 2/24/22 SM Hrg. Tr. at 93:9–13. A true and correct copy of excerpts of the February 24, 2022 Special Master hearing transcript is attached hereto as Exhibit 14.

61.    On February 25, 2022, the parties discussed the issue of production of the Litigation Hold Data in a joint discovery chart. Dkt. 510 at 3–6 (Dispute 1.3).

62.    At the February 28, 2022 discovery hearing, Google again explained that "there is data that is keyed off certain IDs that were provided, and that data was preserved." 2/28/22 Hrg. Tr at 25:18–19. The Court ordered Plaintiffs "to have that conversation with the Special Master." *Id.* at 80:2–3. A true and correct copy of excerpts of the February 28, 2022 hearing transcript is attached hereto as Exhibit 15.

63.    On March 2, 2022, pursuant to the Court's Order, relevant Google engineers participated in a Zoom conference with Plaintiffs before the Special Master and explained the status of the Litigation Hold Data.

64.    During the March 3, 2022 Zoom conference before the Special Master, the Special Master ordered Google to prioritize production of the Litigation Hold Data from data sources that do not contain confidential publisher information. 3/3/22 SM Hrg. Tr at 83:2–6. A true and correct copy of excerpts of the March 3, 2022 Special Master hearing transcript is attached hereto as Exhibit 16.

65.    On the same day, Google wrote to the Special Master and Plaintiffs: "As requested by the Special Master, Google will be producing the preserved but not yet produced ▇▇▇▇ log data for both *Brown* and *Calhoun* Plaintiffs as soon as practicable. Google is in the process of parsing out data in the logs that do not contain confidential third party publisher information and do not require publisher notification. Given the volume of data Google preserved, we are still trying to determine how long it will take to produce and the mechanism by which we can make such data

available to Plaintiffs." Attached hereto as Exhibit 17 is a true and correct copy of Google's March 3, 2022 letter.

66.     On March 5, 2022, in a joint submission to the Special Master, Google stated: "Pursuant to the Special Master's instructions earlier this week, Google will be producing the preserved data from ███████ logs that do not contain confidential third party information no later than Thursday, March 10." Attached hereto as Exhibit 18 is a true and correct copy of the March 5, 2022 joint submission.

67.     On the same day, in a Zoom conference with Plaintiffs before the Special Master, Google further explained the burden associated with producing the data: "what we were told by Ben [Kornacki], the -- one of the engineers who, you guys all had a chance to spend time with, over this last week with regard to this data, and he wrote the preserved data is not in an optimized format. And since each log has a different configuration I have to manually go through each one to make sure I am processing it correctly . . . For example, I had to write lines of [SQL] code, yesterday, just to get some information for you and that wasn't the full data set, because some of the preserved data records can't be read through Dremel. Meaning, I will have to write a Python or C++ script to get the exact data size, and to do any further processing to produce the data. So, it's just -- they're all out of steps here that -- because of the way this data is subject, you know, was being held, essentially, subject to a litigation hold." 3/5/22 SM Hrg. Tr. at 44:18-45:12. A true and correct copy of excerpts of the March 5, 2022 Special Master hearing transcript is attached hereto as Exhibit 19.

68.     On March 8, 2022, in a joint submission to the Special Master, Google provided a list of all Litigation Hold Data sources. A true and correct copy of the March 8, 2022 submission to the Special Master is attached hereto as Exhibit 20.

69.     During the March 8, 2022 Zoom conference before the Special Master, Google explained that it would be unduly burdensome to produce data from all sources that contain confidential third-party information, and proposed "identifying a subset of the most relevant third-party publishers . . . for which the majority of information is tied to . . . And then once they've had reasonable notice," Google will produce that information to Plaintiffs. 3/8/22 SM Hrg. Tr. at 14:20–

15:3. Plaintiffs asked Google to put the proposal in writing. *Id.* at 21:10–12. A true and correct copy of excerpts of the March 8, 2022 Special Master hearing transcript is attached hereto as Exhibit 21.

70.     On the same day, Google sent a letter proposal to Plaintiffs and the Special Master, which states: "1. Google provides to Plaintiffs and the Special Master lists of all fields that have data in the logs containing publisher confidential information. . . . 3. Under the Special Master's guidance, the parties will cooperate to select a subset of 10 publishers no later than March 18, 2022. This will allow Google to complete the notification process in a timely and less burdensome manner and complete production prior to March 31, 2022. . . ." Attached hereto as Exhibit 22 is a true and correct copy of Google's March 8, 2022 letter.

71.     On March 9, 2022, Google produced all the Litigation Hold Data from ▮▮▮▮ logs that do not contain confidential third-party data (GOOG-CALH-01192189–GOOG-CALH-01192190). On March 10, 2022, Google produced all the Litigation Hold Data from ▮▮▮▮ corpora.

72.     At the March 13, 2022 Zoom conference before the Special Master, Google explained that: "I think where we are is our offer of this compromise of the 10 has been rejected, so it's over to you. We have two different positions. We still need some guidance on the preservation -- sorry, the publisher point." 3/13/22 SM Hrg. Tr. at 52:13–17. The Special Master noted that: "I think we're going to have to reconvene. . . . And I would like, in the meantime, to re -- to have Plaintiffs talk to [their expert] and come up with a better solution than everything, because you're not getting everything." *Id.* at 53:6–19. A true and correct copy of excerpts of the March 13, 2022 Special Master hearing transcript is attached hereto as Exhibit 23.

73.     At the March 14, 2022 Zoom conference before the Special Master, Google reiterated that: "We simply ask that we don't have to provide notice to ▮▮▮▮ of different publishers. You can focus on […] the publishers that would be most important." 3/14/22 SM Hrg. Tr. at 29:4–7. The Special Master stated: "We have a subset of data that was preserved that did not need publisher consent that is now produced to Plaintiff. That should provide enough information to allow us to key more targeted searches for Plaintiff data. My suggestion is that we come up with a set of search criteria that can then be run on the preserved data that has not been produced that needs third-party

1    consent." *Id.* at 69:15–24. A true and correct copy of excerpts of the March 14, 2022 Special Master

2    hearing transcript is attached hereto as Exhibit 24.

3       74.    On the same day, the parties submitted another joint discovery chart, in which Google

4    stated that "The only outstanding item now is production of the preserved data from logs that contain

5    confidential publisher information, for which Google has submitted a proposal for the Special

6    Master. Specifically, in response to the Special Master's request, Google submitted a reasonable

7    and practical proposal that Google target notice and production of logs that contain confidential

8    publisher information to a sample of publishers. For Google to contact and provide notice to

9    ████    of publishers would be impossible to accomplish within the timelines the parties need to

10   close out this process. Google awaits the Special Master's guidance on this last outstanding item."

11   Dkt 559-3 at 6.

12      75.    On March 15, 2022, Google participated in a Zoom conference with Plaintiffs before

13   the Special Master. At the conference, the Special Master noted that "[j]ust because they're

14   preserved doesn't mean they get produced," and that the Litigation Hold Data "had not been

15   searched really at a level that would meet the standard threshold that I would allow for production

16   until it's using search criteria that's agreed upon and responsive before it gets produced. . . . The

17   judge and I have already conferred on it. I mean, this is the direction of where we're going because

18   it's built around a set of parameters we've been doing in this case." 3/15/22 SM Hrg. Tr. at 30:23–

19   24, 31:21–25, 53:10–13. Plaintiffs agreed to follow the Special Master's instruction and stated: "We

20   are going to work with our expert to come up with additional search proposals for the historical logs

21   that need publisher notice." *Id*. at 57:22–24. A true and correct copy of excerpts of the March 15,

22   2022 Special Master hearing transcript is attached hereto as Exhibit 25.

23      76.    On March 22, 2022, Google sent to Plaintiffs and the Special Master a list of all

24   publishers associated with the Litigation Hold Data that had not been produced because it required

25   publisher consent, and proposed to target notice and productions to a selected subset of 20

26   publishers, which contributed more than ████ of the data. Attached hereto as Exhibit 26 is a

27   true and correct copy of Google's March 22, 2022 email with attachment.

28

77.    On March 23, 2022, Google participated in a Zoom conference with Plaintiffs before the Special Master. At the conference, the Special Master reiterated that "a large subset of [the Litigation Hold Data] in both matters were produced in respect of Plaintiffs. And the only thing that was held back was anything that needed publisher consent . . . this was data identified and put on a litigation hold . . . it should follow a process of search and production . . . really kind of follows all the standards by which we would want to do discovery . . . I'm just trying to strike that balance." 3/23/22 SM Hrg. Tr. at 6:6–7, 9:22–25, 12:16–24. The Special Master also asked Google to provide information as to "what proportion of that data is there in gigabytes in size as well as some of the field information . . . [so that Plaintiffs] know what is missing." *Id.* at 8:11–13. A true and correct copy of excerpts of the March 23, 2022 Special Master hearing transcript is attached hereto as Exhibit 27.

78.    On the same day, Google provided additional descriptive statistics comparing produced preserved data to preserved data that would require reasonable publisher notice before it can be produced. Attached hereto as Exhibit 28 is a true and correct copy of Google's March 23, 2022 email.



79.    In February and March 2022, pursuant to the Special Master's instruction, Google made several additional productions on February 17, February 18, February 22, February 25, March 2, March 3, March 4, March 5, and March 7, 2022, including a list of all ███ ZWBK ███ columns and relevant annotations (produced on February 25, 2022), and a list of all all ███ GAIA ███ columns, as well as relevant annotations (produced to the Special Master on March 7, 2022).

80.    Following several orders by the Special Master, on April 6, 2022 Plaintiffs provided search terms for Google to conduct the final round of searches under the Special Master process. *See, e.g.*, March 18, 2022 email from Mr. Schmidt ("Search terms and criteria for historical searches of what was previously searched using only the Dremel tool need to be put together by Plaintiffs using information thus far provided by Google. The search terms need to be provided prior to business opening Monday EDT, March 21, 2022."); April 1, 2022 email from the Special Master ("Final searches are to be submitted today. I am unsure what is missing for you to supply the final searches."). A true and correct copy of the Special Master team's March 18, 2022 email is attached hereto as Exhibit 29. A true and correct copy of the Special Master's April 1, 2022 email is attached hereto as Exhibit 30.

81.    Google ran the provided GAIA IDs and unauthenticated identifiers across ██ ███ corpora, ██ ███ logs, and ███ of ███ columns Plaintiffs selected, and produced all search results that do not contain confidential third-party information on April 22, April 28, and April 29, 2022. In its April 28 and April 29, 2022 letters to the Special Master and Plaintiffs, Google also noted that, "as communicated during various Special Master hearings, Google will produce log records that contain confidential third-party data once the implicated publishers have had reasonable notice. In order to minimize undue burden, Google will initiate the third-party notification process once Google has a list of implicated publishers for both *Calhoun* and *Brown* Plaintiffs' final round of searches under the Special Master process." Attached hereto as Exhibits 31 and 32 are true and correct copies of Google's April 28, 2022 and April 29, 2022 letters, respectively. On May 14, 2022, the Special Master noted that "I now also understand that Google unilaterally decided to make third-party notifications in the Calhoun matter, combined with those made in the Brown matter," and ordered Google to produce the search results that contain

confidential publisher information by May 20, 2022. Google complied and produced the data on May 20, 2022.

82. On April 22, 2022, Google participated in another Zoom conference with Plaintiffs before the Special Master. During the conference, the Special Master again ordered Plaintiffs to "put together just as you've done with everything else the search requests that will be against the historically preserved litigation held data." 4/2/22 SM Hrg. Tr. at 48:18–21. Plaintiffs agreed to follow the Special Master's order. *Id.* at 7:3–9 ("MR. STRAITE: [Y]ou are asking us to be reasonable regarding the search process. We, as Plaintiffs, thought it was smarter to get all of the historically preserved Plaintiffs' data to inform future searches. We understand that's been rejected. You said the perfect is the enemy of the good."); *id.* at 52:10–53:11 ("MR. STRAITE: I know we have a lot on the Plaintiffs' side . . . finally, it's the searches for across the historically preserved data for which notice is required. You're asking for additional search parameters."). A true and correct copy of excerpts of the April 2, 2022 Special Master hearing transcript is attached hereto as Exhibit 33.

83. Plaintiffs never provided search parameters for Google to search across the Litigation Hold Data as ordered by the Special Master.

84. On May 27, 2022, Plaintiffs brought the issue before the Court, "seek[ing] production of Named Plaintiffs data that Google searched and preserved long ago," Dkt. 678 at 1, in response to which the Court ordered Google to produce by June 30, 2022. (Dkts. 700, 722, 746).

85. On June 30, 2022, Google produced all of the Named Plaintiffs' data that Google had preserved pursuant to the litigation hold but not yet produced.

**Sync Signal and Schumann Deposition**

86. I attended almost all of the conferences before the Special Master, including all conferences in October 2021. I had the main speaking role for Google. I do not recall myself or anyone else denying the existence of "not-synced" signals. However, I recall repeated conversations with Plaintiffs relating to there being no universal un-synced signal that could be used to identify all purported class members.

87.    On November 23, 2021, Google produced a list of the data sources containing sync-state signals. Attached hereto as Exhibit 34 is a true and correct copy of Google's November 23, 2022 submission to the Special Master.

88.    On March 3, 2022, Plaintiffs asked that Google "[c]reate a Do Not Sync (DNS or X-Not-Synced) signal that Google can store in its existing logs." Attached hereto as Exhibit 35 is a true and correct copy of Plaintiffs' March 3, 2022 correspondence to Special Master Brush.

89.    Plaintiffs requested the deposition of Tim Schumann, Engineering Manager for Google responsible for the Chrome browser, on May 26, 2021. Because German law prohibits remote video depositions outside of the Hague Convention procedures, Mr. Schumann could not sit for his remote video deposition in Munich, Germany, where he resides. Due to COVID-19 travel restrictions and precautions, Mr. Schumann could also not travel to the United States to sit for his deposition. On July 26, 2021, the parties met and conferred to discuss this logistical challenge and Plaintiffs proposed Mr. Schumann travel to Zurich, Switzerland to sit for his remote video deposition. Attached hereto as Exhibit 36 is a true and correct copy of Plaintiffs' July 27, 2021 letter to Google, which describes the parties' meet-and-confer regarding Mr. Schumann's deposition.

90.    Google agreed to have Mr. Schumann sit for his remote video deposition in Zurich, Switzerland and then took on the burden of preparing the Joint Motion for Issuance of Letter of Request for International Judicial Assistance and Appointment of Commissioners to Take Evidence Pursuant to Chapter II, Article 17 of the Hague Convention of 18 March 1970 on the Take of Evidence Abroad in Civil of Commercial Matters, filed on September 7, 2021. Dkt. 298. On September 9, 2021, the Court issued its order appointing commissioners to take evidence for the requested Schumann deposition. *See* Dkt. 301.

91.    On the same day—September 9, 2021—Plaintiffs served Google with a Rule 30(b)(6) notice covering topics related to sync signals, including the signals: "sync_feature_enabled", "is_sync_feature_enabled", ███████, and ███████ Plaintiffs' Sept. 9, 2021 Rule 30(b)(6) Deposition Notice. at 3. Attached hereto as Exhibit 37 is a true and correct copy of Plaintiffs' September 9, 2021 Rule 30(b)(6) Deposition Notice.

92.     As a result of Mr. Schumann's role and familiarity with the Chrome browser sync infrastructure and Google's data logging systems as they relate to Chrome sync, Google selected Mr. Schumann as the corporate designee and offered that the deposition be taken at the same time as Mr. Schumann's individual deposition in Switzerland. Plaintiffs agreed. Attached hereto as Exhibit 38 is a true and correct copy of Plaintiffs' September 22, 2021 letter to Google communicating their agreement.

93.     Plaintiffs took the position that it was important to depose Mr. Schumann before their motion for class certification was due on October 14, 2021 in order "to discover the ways Google tracks the sync status of Chrome users." *Id.* Plaintiffs stated that Google had conceded in a meet-and-confer that it records "sync flag[s]" that may dictate whether Chrome traffic is collected from synced users and expressed that they understand that Google "may also track whether and when a Chrome user elects to sync (and later un-sync) her browser." *Id.*

94.     On October 1, 2021, the Swiss authorities approved Mr. Schumann's deposition in Zurich, Switzerland. I made arrangements to travel to and stay in Zurich, Switzerland for Mr. Schumann's remote deposition to take place on either October 8 or October 11, 2022.

95.     On October 4, 2021, Plaintiffs informed Google during a meet and confer that Plaintiffs were not prepared to proceed with Mr. Schumann's deposition prior to submitting their class certification motion. Plaintiffs then requested a January 2022 date for Mr. Schumann's deposition. Google proposed January 13, 2022 after confirming the Swiss Commissioner's availability.

96.     Plaintiffs took Mr. Schumann's individual deposition on January 13, 2022, but never took the Rule 30(b)(6) deposition regarding sync signals. Plaintiffs objected to conducting a Rule 30(b)(6) deposition under the Hague process, with Mr. Schumann as the corporate designee. Google had provided repeated assurances that Plaintiffs could ask the same questions as if Mr. Schumann were being deposed in the U.S., and this Court had provided in an order that the deposition could proceed "in accordance with United States law." Dkt. 301-1. Attached hereto as Exhibit 39 is a true and correct copy of the transcript of Mr. Schumann's individual deposition.

1         I declare under penalty of perjury of the laws of the United States that the foregoing is true

2    and correct. Executed in Washington, D.C. on July 1, 2022.

3

4

5                                  By:    */s/ Josef Ansorge*

6                                     Josef Ansorge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ANSORGE DECL. ISO OF GOOGLE'S OPPOSITION TO MOTION FOR AN ORDER OF SANCTIONS