# DECLARATION OF ALYSSA OLSON ISO GOOGLE LLC'S OPPOSITION TO PLAINTIFFS' MOTION FOR AN ORDER OF SANCTIONS FOR GOOGLE'S DISCOVERY MISCONDUCT

## Redacted Version of Document Sought to be Sealed

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

Diane M. Doolittle (CA Bar No. 142046)
dianedoolittle@quinnemanuel.com
Sara Jenkins (CA Bar No. 230097)
sarajenkins@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
Teuta Fani (admitted *pro hac vice*)
teutafani@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Stephen A. Broome (CA Bar No. 314605)
stephenbroome@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
Crystal Nix-Hines (CA Bar No. 326971)
crystalnixhines@quinnemanuel.com
Alyssa G. Olson (CA Bar No. 305705)
alyolson@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Josef Ansorge (admitted *pro hac vice*)
josefansorge@quinnemanuel.com
Xi ("Tracy") Gao (CA Bar No. 326266)
tracygao@quinnemanuel.com
Carl Spilly (admitted *pro hac vice*)
carlspilly@quinnemanuel.com
1300 I Street NW, Suite 900
Washington D.C., 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

Jomaire Crawford (admitted *pro hac vice*)
jomairecrawford@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

*Counsel for Defendant Google LLC*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| PATRICK CALHOUN, *et al.*, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 4:20-cv-05146-YGR-SVK<br><br>**DECLARATION OF ALYSSA G. OLSON IN SUPPORT OF GOOGLE LLC'S OPPOSITION TO PLAINTIFFS' MOTION FOR AN ORDER OF SANCTIONS FOR GOOGLE'S DISCOVERY MISCONDUCT**<br><br>The Honorable Susan van Keulen<br>Date: August 11, 2022<br>Time: 9:30 a.m.<br><br>Trial Date: None Set |

I, Alyssa G. Olson, declare as follows:

1. I am a member of the bar of the State of California and an associate with Quinn Emanuel Urquhart & Sullivan, LLP, attorneys for Defendant Google LLC ("Google") in this action. I submit this declaration in support of Google's Opposition to Plaintiffs' Motion For An Order Of Sanctions For Google's Discovery Misconduct. I make this declaration of my own personal, firsthand knowledge, and if called and sworn as a witness, I could and would testify competently thereto.

*Discovery of Signals in Sync Traffic Logs:*

2. From April 15, 2021 through May 31, 2021, Google produced more than one hundred documents discussing the "▮▮▮▮" signal. Attached hereto as **Exhibit 1** is a true and correct copy of one such document produced by Google on April 15, 2021, bearing the Bates label GOOG-CALH-00028133.

3. Google produced documents discussing ▮▮▮▮▮▮▮▮ on July 30, 2021 and December 17, 2021. Attached hereto as **Exhibit 2** is a true and correct copy of a document produced by Google on July 30, 2021, bearing the Bates label GOOG-CALH-00201175. Attached hereto as **Exhibit 3** is a true and correct copy of a document produced by Google on December 17, 2021, bearing the Bates label GOOG-CALH-00850593.

4. Attached hereto as **Exhibit 4** is a true and correct copy of Google's Responses and Objections to Plaintiffs' First Set of Requests for Admission (Nos. 1-45), served by Google, on October 12, 2021.

5. Attached hereto as **Exhibit 5** is a true and correct copy of Google's Responses and Objections to Plaintiffs' Fifth Set of Interrogatories (No. 21-24), served by Google on January 31, 2022.

▮▮▮▮▮▮

6. Google first produced documents referencing ▮▮▮▮▮▮ on April 26, 2021. Attached hereto as **Exhibit 6** is a true and correct copy of one such document produced by Google on April 26, 2021, bearing the Bates label GOOG-CALH-00035438.

7. Attached hereto as **Exhibit 7** is a true and correct copy of a document produced by Google on September 24, 2021, bearing Bates number GOOG-CABR-03674612, which describes the "[g]reat interview with Rahul [Roy-Chowdhury] today."

8. Attached hereto as **Exhibit 8** is a true and correct copy of a document produced by Google on October 5, 2021, bearing Bates number GOOG-CABR-04342734. This document is titled " ▮▮▮▮▮▮▮ Stakeholder Interview Summary," and includes "a summary of themes and key quotes from the stakeholder interviews that informed our Perspective document." Ex. 8 at -734. It also lists the nine interviewees from the "first round" of interviews, including Rahul Roy-Chowdhury, Keith Enright, Yooki Park, Sarah Hammond, Other Hansson, Micah Laaker, Josh Stickler, Bresonna Rodriguez, and Bryan Horling. *Id.* at -734-35. Plaintiffs' Motion quotes primarily from the interviews of Rahul Roy-Chowdhury and Other Hansson.

9. Attached hereto as **Exhibit 9** is a true and correct copy of a document produced by Google on October 26, 2021, bearing Bates number GOOG-CABR-04833494. This document is titled "Notes from interview with Rahul [Roy-Chowdhury]" and contains notes from the same interview as the notes in Plaintiffs' Exhibit 11 (*i.e.* notes from the August 5, 2020 stakeholder interview of Rahul Roy-Chowdhury). Plaintiffs' Exhibit 11 states that there are "additional and better <u>notes</u> from [Mimosa Lynch]." Pls.' Ex. 11 at -931. The word "notes" is hyperlinked, and leads to Exhibit 9.

10. Attached hereto as **Exhibit 10** is a true and correct copy of a document produced by Google on October 26, 2021, bearing Bates number GOOG-CABR-04754257. This document is titled " ▮▮▮▮▮▮▮ Perspective readout," and identifies the names of the first nine interviewees. *Id.* at -282. Plaintiffs asked Mr. Heft-Luthy about this page of the presentation at his deposition. Ex. 16 at 88:21-93:11.

11. Attached hereto as **Exhibit 11** is a true and correct copy of a document produced by Google on October 26, 2021, bearing Bates number GOOG-CABR-04780646, which notes that the "[f]irst stakeholder interviews" were "[c]ompleted this week" and the "[g]oals for next week" includes "[f]urther stakeholder interviews." *Id.* at -650.

12. Attached hereto as **Exhibit 12** is a true and correct copy of a document produced by Google on November 16, 2021, bearing Bates number GOOG-CABR-05243994. This document is titled "▓▓▓▓ Meeting Notes," and includes a hyperlink to the "Stakeholder Interview Notes," *id.* at -994, and references the stakeholder interviews on numerous occasions, *id.* at -013, -019, -020, -021, -026, -032, -033, -043, -046. The document also discusses some interviewees by name:

    a. August 3, 2020 notes discussing "the interview with Troy [Stram]" (-036)

    b. August 4, 2020 notes discussing topics to discuss "tomorrow when we interview Rahul [Roy-Chowdhury]" (-033)

    c. August 25, 2020 notes discussing the "[t]hree interviews this week" with "Al [Verney]," "David [Monsees]," and "Cassidy [Morgan]" (-024).

    d. August 27, 2020 notes discussing what "Cassidy [Morgan] has mentioned during the interview" (-021)

    e. September 15, 2020 notes discussing the "interview with [Jonathan] McPhie" (-016)

13. Attached hereto as **Exhibit 13** is a true and correct copy of a document produced by Google on November 16, 2021, bearing Bates number GOOG-CABR-05157097, which reports that "[f]urther stakeholder interviews" were "[c]ompleted this week" and links to the interview notes (Plaintiffs' Exhibit 11) at "go/▓▓▓▓-conversations." *Id.* at -102.

14. Attached hereto as **Exhibit 14** is a true and correct copy of a document produced by Google on November 16, 2021, bearing Bates number GOOG-CABR-05153724. This document is a spreadsheet containing the "Detailed Plan" for ▓▓▓▓, including a list of the "Stakeholder Interviews" and the status of those interviews. The list included, among others, Sarah Hammond, Othar Hansson, Stephan Micklitz, Rahul Roy-Chowdhury, Keith Enright, Micah Laaker, Cassidy Morgan, Kate Charlet, Troy Sauro, Breonna Rodriquez, Mark Risher, Guemmy Kim, Bryan Horling, David Monsees, Josh Stickler, Al Verney, Ian Alexander, Giles Hogben, and Priscilla Penha. This list included 19 of the 25 interviewees whose interviews were documented in Plaintiffs' Exhibit 11.

15.    Attached hereto as **Exhibit 15** is a true and correct copy of a document produced by Google on November 16, 2021, bearing Bates number GOOG-CABR-05154805, titled "▊▊▊▊ ▊▊ Workbench."

16.    By November 30, 2021, Google had produced approximately 265 documents that referenced ▊▊▊▊▊▊▊, including more than 30 that explicitly referenced the stakeholder interviews.

17.    On December 20, 2021, Plaintiffs took the deposition of Sam Heft-Luthy, where they asked him about the stakeholder interviews and Mr. Heft-Luthy testified there were written notes of those interviews. Attached hereto as **Exhibit 16** is a true and correct copy of excerpts from the transcript of the December 20, 2021 deposition of Sam Heft-Luthy.

18.    Plaintiffs did not request the interview notes at Mr. Heft-Luthy's deposition.

19.    On December 30, 2021, months after Plaintiffs' first search term proposal, Plaintiffs requested "▊▊▊▊▊▊▊▊" and "▊▊▊▊▊▊▊▊" be added as search terms. Attached hereto as **Exhibit 17** is a true and correct copy of Plaintiffs' December 30, 2021 correspondence.

20.    On December 31, 2021, Google agreed to run both search terms. Attached hereto as **Exhibit 18** is a true and correct copy of Google's December 31, 2021 correspondence.

21.    Plaintiffs did not request an extension to file their opposition to Google's motion for summary judgment ("MSJ Opposition"), which was due on January 10, 2022, to review and incorporate documents Google would produce hitting on these newly added search terms.

22.    On January 6, 2022, Plaintiffs deposed Greg Fair, who served as Google's declarant concerning the factual bases of Google's motion for summary judgment on consent, and was the custodian for nearly a quarter of the already produced ▊▊▊▊▊▊▊ documents. I attended that deposition. Plaintiffs did not ask Mr. Fair questions about ▊▊▊▊▊▊▊ or the related interviews. Plaintiffs questioned Mr. Fair on such topics as the Universal Declaration of Human Rights, the complaint, and certain hypotheticals about data flow.

23.    On January 10, 2022, Plaintiffs filed their opposition to Google's motion for summary judgment. By that date, Google had produced an additional 82 documents that contained the terms "▊▊▊▊▊▊▊" or "▊▊▊▊▊▊▊"

1  24. Of the 347 documents produced prior to Plaintiffs filing the MSJ opposition, Sam Heft-Luthy was a custodian of approximately half, Greg Fair was the custodian of approximately a quarter, and 19 other custodians made up the rest, including four of the interviewees: David Monsees (26 documents), Emil Ochotta (13 documents), Othar Hansson (8 documents), and Rahul Roy-Chowdhury (1 document).

25. Between January 11, 2022 and March 4, 2022 (the close of fact discovery), Google produced another 530 documents regarding ▮▮▮▮▮▮▮▮ 508 of which were produced by the end of January.

26. Attached hereto as **Exhibit 19** is a true and correct copy of a document produced by Google on January 21, 2022, bearing Bates number GOOG-CABR-05742155, titled "Privacy Experience Vignettes: Draft Agency Brief."

27. Attached hereto as **Exhibit 20** is a true and correct copy of an email produced by Google on January 21, 2022, bearing Bates number GOOG-CABR-05753834, with the subject "▮▮▮▮▮▮▮▮ project intro."

28. These productions also included meeting invitations for ▮▮▮▮▮▮▮▮ stakeholder interviews.

29. Attached hereto as **Exhibit 21** is a true and correct copy of a document produced by Google on January 21, 2022, bearing Bates number GOOG-CABR-05753851, which is an invitation for a "▮▮▮▮▮▮▮▮ Sync" with Kate Charlet scheduled for July 31, 2020.

30. Attached hereto as **Exhibit 22** is a true and correct copy of a document produced by Google on January 21, 2022, bearing Bates number GOOG-CABR-05753839, which is an invitation for a "▮▮▮▮▮▮▮▮ Chat" with Breonna Rodriguez-Delgrosso scheduled for August 3, 2020.

31. Attached hereto as **Exhibit 23** is a true and correct copy of a document produced by Google on January 21, 2022, bearing Bates number GOOG-CABR-05753832, which is an invitation for a "[▮▮▮▮▮▮▮▮ Stakeholder Interview" with Micah Laaker scheduled for August 5, 2020.

32. Attached hereto as **Exhibit 24** is a true and correct copy of a document produced by Google on January 21, 2022, bearing Bates number GOOG-CABR-05753875, which is an invitation for a "[▮▮▮▮▮▮▮▮ Interview" with Ian Alexander scheduled for August 12, 2020.

33. Attached hereto as **Exhibit 25** is a true and correct copy of a document produced by Google on January 21, 2022, bearing Bates number GOOG-CABR-05753874, which is an invitation for a "[          ]...Sync" with Yooki Park scheduled for August 12, 2020.

34. Attached hereto as **Exhibit 26** is a true and correct copy of a document produced by Google on January 21, 2022, bearing Bates number GOOG-CABR-05753847, which is an invitation for a "Stakeholder Interview" with Keith Enright scheduled for August 17, 2020.

35. Attached hereto as **Exhibit 27** is a true and correct copy of a document produced by Google on January 21, 2022, bearing Bates number GOOG-CABR-05753881, which is an invitation to "discuss [          ] with Priscila Penha scheduled for August 19, 2020.

36. Attached hereto as **Exhibit 28** is a true and correct copy of a document produced by Google on January 21, 2022, bearing Bates number GOOG-CABR-05753889, which is an invitation for a "[          ]...Stakeholder Interview" with Al Verney scheduled for August 25, 2020.

37. Attached hereto as **Exhibit 29** is a true and correct copy of a document produced by Google on January 21, 2022, bearing Bates number GOOG-CABR-05747697, which is an invitation for a "[          ] Stakeholder Interview request" with David Monsees scheduled for August 26, 2020.

38. Attached hereto as **Exhibit 30** is a true and correct copy of a document produced by Google on January 21, 2022, bearing Bates number GOOG-CABR-05747710, which is an invitation for a "[          ]...Stakeholder Interview" with David Monsees scheduled for August 31, 2020.

39. Attached hereto as **Exhibit 31** is a true and correct copy of a document produced by Google on January 21, 2022, bearing Bates number GOOG-CABR-05753915, which is an invitation for a "[          ] Stakeholder Interview" with Giles Hogben scheduled for September 1, 2020.

40. Attached hereto as **Exhibit 32** is a true and correct copy of a document produced by Google on January 21, 2022, bearing Bates number GOOG-CABR-05753967, which is an invitation for a "chat re: [          ] with Jonathan McPhie scheduled for September 16, 2020.

41. Attached hereto as **Exhibit 33** is a true and correct copy of a document produced by Google on January 21 2022, bearing Bates number GOOG-CABR-05754210, which is an invitation

1 for an invitation for "Privacy Narrative + ▮▮▮▮ Follow Up" with, among others, Othar
2 Hansson, Mark Risher, and Sarah Hammond scheduled for October 20, 2020.

3   42.   Attached hereto as **Exhibit 34** is a true and correct copy of a document produced by
4 Google on January 21 2022, bearing Bates number GOOG-CABR-05754222, which is an invitation
5 for "Privacy Narrative + ▮▮▮▮ Follow Up" with, among others, Othar Hansson, Mark
6 Risher, and Sarah Hammond scheduled for November 4, 2020.

7   43.   Attached hereto as **Exhibit 35** is a true and correct copy of a document produced by
8 Google on January 21 2022, bearing Bates number GOOG-CABR-05754276, which is an invitation
9 for a "Privacy Narrative + ▮▮▮▮ Follow Up" with Mark Risher scheduled for November 4,
10 2020.

11   44.   Attached hereto as **Exhibit 36** is a true and correct copy of a document produced by
12 Google on January 21, 2022, bearing Bates number GOOG-CABR-05754367, which is an invitation
13 for a "▮▮▮▮ Experience Articulation" with Jonathan McPhie scheduled for December 9,
14 2020.

15   45.   A summary of Google's production of ▮▮▮▮ documents is below:

| Date | Case Event | Total Number of Documents Produced Containing the Terms <▮▮▮▮ or "▮▮▮▮"> by that Date |
|---|---|---|
| 11/30/2021 | Google Files Motion for Summary Judgment | 265 |
| 12/20/2021 | Plaintiffs Depose Sam Heft-Luthy | 345 |
| 1/10/2022 | Plaintiffs File Opposition to Google's Motion for Summary Judgment | 347 |
| 3/4/2022 | End of Fact Discovery | 877 |
| 4/13/2022 | ▮▮▮▮ 30(b)(6) Deposition | 904 |

46. Plaintiffs did not seek to supplement their briefing with any of the additional documents produced.

47. On January 18, 2022, Plaintiffs sent a letter requesting "all transcripts, notes, and emails regarding interviews taken for ▊▊▊▊ and all documents, research and 'inputs' that pertain to ▊▊▊▊ Attached hereto as **Exhibit 37** is a true and correct copy of Plaintiffs' January 18, 2022 correspondence.

48. In response to this request, Google identified 24 additional documents that had not yet been produced, and subsequently produced these documents on April 5 and 6, 2022 after conducting a privilege review since a number of them had previously been identified as containing attorney-client information.

49. These documents were produced in advance of Plaintiff's Rule 30(b)(6) deposition on ▊▊▊▊ Attached hereto as **Exhibit 38** is a true and correct copy of excerpts from the transcript of the April 12, 2022 Rule 30(b)(6) deposition of Google's corporate designee Mediha Abdulhay.

50. Plaintiffs address three documents produced in April 2022 in their brief.

*Joint Declaration Paragraph 62*

51. The Joint Declaration Paragraph 62 describes "[t]he 'final' paper from the PDPO…titled '▊▊▊▊ Perspective: Toward a ▊▊▊▊ Google experience.'" Although Plaintiffs did not include a Bates number, or attach the document as an exhibit, Google believes the referenced document is GOOG-CABR-05885987. Attached hereto as **Exhibit 39** is a true and correct copy of a document produced by Google on April 6, 2022, bearing the Bates number GOOG-CABR-05885987.

52. This document was initially withheld as privileged and included as Entry 533 on Google's Privilege Log 001, served on October 8, 2021, because one of the reviewers was Senior Privacy Counsel at Google. After Plaintiffs requested additional ▊▊▊▊ documents on January 18, 2022, and in preparation for Google's Rule 30(b)(6) deposition on ▊▊▊▊ Google re-reviewed this document and produced it without redactions.

53. Plaintiffs' MSJ Opposition cites GOOG-CABR-04754627 as Exhibit 49 to the Declaration of Jay Barnes In Support of Plaintiffs' Opposition to Google's Motion for Summary Judgment. This document is a prior version of GOOG-CABR-05885987.

54. Plaintiffs MSJ Opposition also cites GOOG-CABR-04624698 as Exhibit 19 to the Declaration of Jay Barnes In Support of Plaintiffs' Opposition to Google's Motion for Summary Judgment. This document is a presentation titled "The Changing Digital Ads Ecosystem."

55. Below is a chart comparing the language from GOOG-CABR-05885987 identified in Plaintiffs' Motion and supporting declaration, with the language from Plaintiffs' MSJ Opposition and the exhibits attached thereto:

| "Final" ▇▇▇ Perspective Paper (Plaintiffs' May 24, 2022 Mot.) | Draft ▇▇▇ Perspective Paper (Plaintiffs' January 10, 2022 MSJ Opp.) |
|---|---|
| ▇▇▇ would "*require[] an approach that* makes respecting *user privacy the default – or native – state of our relationship with users*." (Jt. Decl. ¶ 62.a.) | "To meet, and exceed these expectations *requires an approach that* puts protecting *user* ▇▇▇ —*state of our relationship with our users*." (MSJ Opp. Ex. 49 at -628) |
| "*In this new* ▇▇▇ *approach, Google will ask for personal data only for specific, limited purposes that provide clear benefits to users*." (Jt. Decl. ¶ 62.b.) | "*In this new* ▇▇▇ *approach, we will only ask for personal data for specific, limited purposes that provide clear benefits to users* individually, and we'll make those requests through easy-to-understand, meaningful choices at the times and in the moments when that value can be clearly and directly communicated." (MSJ Opp. Ex. 49 at -628) |
| "At Google, we *believe privacy is a universal right*[.]" (Jt. Decl. ¶ 62.c.) | "Google *believes privacy is a universal right*." (MSJ Opp. Ex. 49 at -632) |
| "*Our* research *analysis* and stakeholder interviews *have shown that Google's consent approach*, enabling the *broad collection and use of personal data*, is a *root cause for our systemic privacy challenges*." (Jt. Decl. ¶ 62.d) | "*Our analysis shows that our* monolithic *consent approach*, allowing us extremely *broad collection and use of personal data*, has become out-of-step with user expectations, and thereby the *root cause for many of our privacy challenges*." (MSJ Opp. Ex. 49 at -629) |
| "*Our approach* [to consent] has become *out-of-step with user expectations and regulations. It makes it difficult for people* | "Yet another acknowledged that *Google's approach* to privacy is '*out-of-step with user expectations and regulations … mak[ing] it* |

| "Final" ▓▓▓ Perspective Paper (Plaintiffs' May 24, 2022 Mot.) | Draft ▓▓▓ Perspective Paper (Plaintiffs' January 10, 2022 MSJ Opp.) |
|---|---|
| *to understand how we use their data in all circumstances, to make the right choices for them*, and for us to take clear positions and *distinguish ourselves among competitors*." (Jt. Decl. ¶ 62.e.; Mot. at 16) | difficult for people to understand how we use their data in all circumstances [and] to make the right choices for them[.]" (MSJ Opp. at 16; MSJ Opp. Ex. 19)<br><br>"Our approach also makes it difficult for us to *distinguish ourselves among competitors*." (MSJ Opp. Ex. 49 at -629) |
| "*People often face significantly complex consents when they are creating a Google Account, or trying to accomplish a particular task, and don't have the time or capacity to absorb all the details, let alone understand the precise impact their choices might have on the particular services they use*." (Jt. Decl. ¶ 62.f; Mot. at 16) | "*People often face these significant consents when they are creating a Google Account, or trying to accomplish a particular task - and don't have the time or capacity to absorb all the information we're putting in front of them, let alone understand the precise impact their choices might have on the services they use*." (MSJ Opp. Ex. 49 at -629; MSJ Opp. at 13) |

**Exhibit 11 & Joint Declaration Paragraph 64**

56.     Exhibit 11 of the Joint Declaration is GOOG-CABR-05885871.

57.     This document contains notes from various interviews conducted by members of the ▓▓▓ project team of other Google employees, referred to as "stakeholders," about, among other things, "privacy challenges that users have today" and opportunities for improvement over the next five years. *See, e.g.*, Pls.' Ex. 11 at -877, -886, -891, -892, -894, -898, -899, -901, -903, -907, -910, -911, -915-17, -921, -923, -924, -927, -928, -932, -933.

58.     This document was initially withheld as privileged and included as Entry CABR 6303 on Google's Cross-Use Privilege Log 002, served on November 16, 2021, because some of the interviews in GOOG-CABR-05885871 were with attorneys, and the notes contained attorney-client communications.

59.     After Plaintiffs specifically requested "all transcripts, notes, and emails regarding interviews taken for ▓▓▓ on January 18, 2022, Google conducted a re-review and produced the document with only the attorney interview notes redacted.

60. As described above in Paragraphs 7-14, 16, 28-44, Google produced dozens of documents referencing these interviews throughout the discovery period.

61. By October 5, 2021, Plaintiffs had the names of 9 of 25 ▓▓▓▓ interviews. *See supra* Paragraph 8. At that time, Plaintiffs had selected only two out of 20 fact witnesses to be deposed, Alexei Svitkine and Tim Schuman. Plaintiffs did not elect to use any of their remaining deposition slots on those nine interviewees.

62. By November 16, 2021, Plaintiffs had the names of 21 of 25 interviewees for ▓▓▓▓. *See supra* Paragraph 7-14.

63. Plaintiffs did not select their final three fact witness depositions until February 24, 2022. They did not choose any of the ▓▓▓▓ "stakeholders" as witnesses.

64. Below is a chart comparing some of the language from GOOG-CABR-05885871 identified in Plaintiffs' Motion, with the additional context provided in that document or other produced documents:

| Quotes from Plaintiffs' Motion and Joint Declaration | Additional Context |
|---|---|
| Describing interview notes as including "views on Google's consumer disclosures." (Mot. at 15, 16, 18, 21) | The term "disclosure" appears in one bullet point in reference to a theoretical "progessive disclosure," *i.e.*, delaying more detailed disclosures until they become salient, such as highlighting duplicate photos so that the user does not waste storage space on identical photos. (Pls.' Ex. 11 at -874) |
| Quoting from the interview notes of a data protection officer who purportedly "admitted Google's ads system 'doesn't really give the user choice.'" (Mot at 3, 16, 22; Jt. Decl. ¶ 64(b)). | The "choice" was paying for a version of the internet without ads, not a choice relevant to any topic at issue in Google's motion for summary judgment. (Pls.' Ex. 11 at -872). |
| Quoting from the interview notes of Rahul Roy-Chowdhury who purportedly stated that "if people were the deciders, they wouldn't take the deal, but they are not the deciders." (Mot. at 3, 16, 22; Jt. Decl. ¶ 64(a)) | Plaintiffs' Exhibit 11 references "additional and better notes" from the Rahul Roy-Chowdhury interview. (Pls.' Ex. 11 at -931). The word "notes" is a hyperlink and leads to a document titled "Notes from interview with Rahul" that Google produced on October 26, 2021. (Ex. 9). This document shows that the quoted portion of |

| Quotes from Plaintiffs' Motion and Joint Declaration | Additional Context |
|---|---|
| | the interview was discussing economic game theory, and not any particular "deal" Google offered. (Ex. 9 at -494). |
| Describing interview notes as showing "how widely Google senior management understood that consent was illusory." (Mot. 3) | No such statements exist. The word "illusory" does not appear anywhere in Plaintiffs' Exhibit 11. |
| Describing interview notes as showing "disagree[ment] with the notion…that users 'consented' to Google's collection of their personal information." (Mot. 21–22) | No such statements exist. |
| Describing interview notes as demonstrating an "overwhelming consensus that Google's disclosures were confusing." (Mot. 16) | The only reference to consumers being "confused" in Plaintiffs' Exhibit 11 was not about Google's disclosures, but about the difference between "no tracking" and "no ads." (Pls.' Ex. 11 at -935) |
| Describing interview notes as demonstrating that Google "failed to adequately advise users of the full nature and scope of Google's collection practices." (Mot. 16) | No such statements exist. |

**Exhibit 12 & Joint Declaration Paragraph 6**

65. Exhibit 12 of the Joint Declaration is GOOG-CABR-05885181.

66. This document was inadvertently tagged not-responsive upon initial review, but near duplicates had already been produced on September 24, 2021 and November 16, 2021.

67. After Plaintiffs requested "all documents, research and 'inputs' that pertain to ███████" on January 18, 2022, Google re-reviewed the document and produced it.

68. Attached hereto as **Exhibit 40** is a true and correct copy of a product strategy review presentation produced by Google on September 24, 2021, bearing the Bates number GOOG-CABR-03685246.

69.  Attached hereto as **Exhibit 41** is a true and correct copy of a presentation titled "From consent to pleasant surprise" produced by Google on November 16, 2021, bearing the Bates number GOOG-CABR-05156774.

70.  Attached hereto as **Exhibit 42** is a true and correct copy of a presentation titled "From consent to pleasant surprise" produced by Google on November 16, 2021, bearing the Bates number GOOG-CABR-05150938.

71.  Attached hereto as **Exhibit 43** is a true and correct copy of a product strategy review presentation produced by Google on November 16, 2021, bearing the Bates number GOOG-CABR-05263537.

72.  Below is a side-by-side comparison of the portions of Plaintiffs' Exhibit 12 that are quoted in Joint Declaration Paragraph 63, and the first Consent UXR Presentation Google produced in September 2021:

| Consent UXR Presentation Produced in April 2022 and Highlighted in Plaintiffs' May 24, 2022 Motion | Consent UXR Presentation Produced in September 2021 |
|---|---|
| "Google's few consent moments alone, very early in the relationship are not enough to help users form accurate expectations about risks involved and benefits gained when engaging in a data-sharing relationship with Google." (Jt. Decl. ¶ 63.a; Pls.' Ex. 12 at -183) | "Google's few consent moments alone, very early in the relationship, are not enough to help users form accurate expectations about risks involved and benefits gained when engaging in a data-sharing relationship with Google." (Ex. 40 at -249) |
| *Eight seconds* is the "*median time for consent*." ■ of users "*spent* ■ *or less and* ■ *spent* ■ *or less*." (Jt. Decl. ¶ 63.b; Pls.' Ex. 12 at -198).<br><br>"*Both in live experiments, log data and in scaled qual,* ■ *of users take* ■ *or less to take a decision on a consent. I don't know about you but I can't even get past the first sentence in that Time.*" (Jt. Decl. ¶ 63.b; Pls.' Ex. 12 at -198). | "■ *Median time for consent*[;] ■ *spent* ■ *or less and* ■ *spent* ■ *or less*" (Ex. 40 at -264)<br><br>"*Both in live experiments, log data and in scaled qual,* ■ *of users take* ■ *or less to take a decision on a consent*[.] *I don't know about you but I can't even get past the first sentence in that time*" (Ex. 40 at -264) |
| "Engagement is low because consent is not a users' primary goal and they perceive consent as overwhelming." (Jt. Decl. ¶ 63.c; Pls.' Ex. 12 at -199) | "Engagement is low because consent is not a users' primary goal and they perceive consent as overwhelming." (Ex. 40 at -265) |

OLSON DECL. ISO OF GOOGLE'S OPPOSITION TO MOTION FOR AN ORDER OF SANCTIONS

| Consent UXR Presentation Produced in April 2022 and Highlighted in Plaintiffs' May 24, 2022 Motion | Consent UXR Presentation Produced in September 2021 |
|---|---|
| "*When people do engage with consent, we see that many don't understand the effect of their choice on risk and benefits*," include WAA controls. (Jt. Decl. ¶ 63.d; Pls.' Ex. 12 at -200) | "*When people do engage with consent, we see that many don't understand the effect of their choice on risks and benefits*" (Ex. 40 at -266) |
| "*[I]t is clear that even when reviewing the text [of WAA], most people will not figure out the exact outcome of their consent choice on data collection and usage.*" (Jt. Decl. ¶ 63.e; Pls.' Ex. 12 at -263) | "Some version[s] had better results but *it is clear that even when reviewing the text, most people will not figure out the exact outcome of their consent choice on data collection and usage*." (Ex. 40 at -329) |
| "*Among other things, consent needs to be freely given, specific, and informed. This primary means that a person knows: data – what data will be collected; purpose – what it will be used for*" and "*that they can: decline, not say yes to use a service; change: that consent can always be revoked/changed*" and that "*for the above, the choice & control need to be specific.*" (Jt. Decl. ¶ 63.f; Pls.' Ex. 12 at -290) | "*Among other things consent needs to be freely given , specific and informed. This primarily means that a person knows: [] Data : what data will be collected [] Purpose : what it will be used for [] And that they can: [] Decline : not say yes to use a service [] Change : that consent can always be revoked/changed[.] And that for the above, the choice & control need to be specific.*" (Ex. 40 at -356) |
| "*Consent*" is "*a very bad place for people to form accurate expectations about how their data will be used. … To many participants, it is not clear what the effect of their consent choice is on things like: data collected, purpose of the data collection including its value, amount of ads they will see.*" (Jt. Decl. ¶ 63.g; Pls.' Ex. 12 at -301). | "...which makes *consent a very bad place for people to form accurate expectations about how their data will be used*[.] Because of these existing expectations and the low engagement, we've seen that *to many participants, it is not clear what the effect of their consent choice is on things like: [] Data collected[,] Purpose of data collection incl. its value[,] Amount of ads they will see.*" (Ex. 40 at -367) |

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

| | |
|---|---|
| 1 | I declare under penalty of perjury of the laws of the United States that the foregoing is true |
| 2 | and correct. Executed in Culver City, California on July 1, 2022. |
| 3 | |
| 4 | |
| 5 | |
| 6 | By      /s/ Alyssa G. Olson<br>         Alyssa G. Olson |