# EXHIBIT 20
## Redacted Version of Document Filed Under Seal

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION**

| | |
|---|---|
| PATRICK CALHOUN, *et al.*, *on behalf of themselves and all others similarly situated,*<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 4:20-cv-05146-YGR-SVK<br><br>**REBUTTAL DECLARATION OF PROF. ZUBAIR SHAFIQ IN SUPPORT OF PLAINTIFFS' MOTION FOR SANCTIONS** |

**REDACTED VERSION OF DOCUMENT FILED UNDER SEAL**

I, Zubair Shafiq, Ph.D., hereby declare under penalty of perjury:

1. I am an associate professor of computer science at University of California, Davis. My research focuses on making the Internet private, secure, and performant.[1]

2. I have been retained by Counsel for Plaintiffs as an expert in this matter. I have previously submitted declarations in support of Plaintiffs' motion for class certification and to assist with the Special Master discovery process.

3. On July 1, 2022, Google submitted a response to Plaintiffs' *Motion for an Order of Sanctions for Google's Discovery Misconduct*, which included a declaration from Google engineer Tim Schumann.

4. I have reviewed Google's response ("Google Resp.") as well as the declaration of Mr. Schumann ("Schumann Decl."). I understand Google gave me permission to review "highly confidential" documents and so I reviewed the full documents not just the redacted ones.

5. I submit this rebuttal declaration to address the assertions made in Google's response and accompanying Schumann Decl. regarding: (**A**) the "Not Synced" signals, (**B**) significant problems in the production of Plaintiff data – specifically Zwieback-keyed information, and (**C**) Google's false claim that it does not link authenticated (i.e., signed-in) and unauthenticated (i.e., signed-out) identifiers such as GAIA, Biscotti, and Zwieback.

6. I reserve the right to supplement and amend this rebuttal declaration based on additional materials and information that become available to me.

A. **REBUTTAL REGARDING THE NOT SYNCED SIGNALS**

7. Google says that "sync traffic logs record a signal that *may* indicate when a user is signed-in but not consented to sync" (emphasis in original; Google Resp. 2:10-11). The accompanying Schumann Decl. also acknowledges that these signals (e.g., ▮ and ▮) will identify Not Synced users, but he claims that they won't capture *all* Not Synced users. More specifically, Mr. Schumann states that "the ▮ signal records *some (but not all)* users who are browsing while signed into their Google Account but have not enabled the sync

---

[1] For additional qualifications and background information, please refer to my curriculum vitae which was previously submitted to the Court in April 2022. *See Calhoun* Dkt. 622.

1  feature" and that "the ▓▓▓▓▓▓ signal records *some (but not all)* clients that were browsing while synced but then turned off sync" (Schumann Decl. ¶ 19; emphasis added).

8.   Mr. Schumann suggests that relying on two signals (▓▓ and ▓▓▓▓▓▓) may not capture the full universe of Not Synced Chrome users. He lists a few edge cases where these signals may be absent for Not Synced users (Schumann Decl. ¶¶ 14, 18). Crucially, however, he does not ever say that these signals will create false positives. He merely states that these two signals alone will not capture all Not Synced users.

9.   It is also noteworthy that the Schumann Decl. does not offer any specifics as to the prevalence of these apparently rare edge cases (e.g., "if sync is turned on, but disabled for each of the Categories, this user is not actually syncing any of the browser activity on their device, yet their traffic would not be marked as ▓▓ state; the logs will record sync_feature_enabled = true." (Schumann Decl. ¶ 18)). In my expert opinion, these edge cases are expected to be trivial as the fraction of the overall expected class size of millions of Not Synced Chrome users. Furthermore, my report in support of Plaintiffs' motion for class certification outlines multiple additional approaches that can address these outliers.

10.  Schumann Decl. states that ▓▓ and ▓▓▓▓▓▓ are not mutually exclusive (i.e., they may overlap and thus may identify some of the same Not Synced users) (Schumann Decl. ¶ 19). But Mr. Schumann fails to acknowledge that ▓▓ and ▓▓▓▓▓▓ are also non-overlapping. When used together, they can identify more Not Synced users as compared to when only one of them is used. Thus, it is important for Google to disclose all of the available Not Synced signals that can be leveraged together to identify class members.

11.  Schumann Decl. claims that these two Not Synced signals will not capture some categories of signed-out users such as "users without a Google Account" or "users who sign out of their Google Account" (Schumann Decl. ¶ 19). However, as Google acknowledged, "Google Account holders who are signed out of their Google Accounts" are "therefore not synced" and that "non-Google Account holders" are always in signed-out mode and therefore "unable to sync a

1  device" (Google Resp. 2:17-20). Thus, Google acknowledges that signed-out users are – by

2  definition – Not Synced and, therefore, do not need to be identified using the two signals (the ▇

3  and ▇▇▇▇ signals) in the sync traffic logs. As also explained in my reports in support

4  of class certification, the signed-out Chrome users can instead be identified using dozens of other

5  logs that Google maintains keyed to Zwieback and Biscotti identifiers.[2] As I explain later in Section

6  C of this report, for Google Account holders, these identifiers can then be mapped or linked to

7  Google accounts (i.e., GAIA identifier). For non-Google Account holders, Google has admitted

8  that Zwieback ▇ contains ▇▇▇ and precise ▇▇. Also, the Zwieback ▇

9  ▇ data indicates that it also contains ▇▇▇ and ▇▇ information.

10   12.   In summary, Google's statement that Plaintiffs "could not rely on [not synced]

11  signals to identify their class [which comprises of Not Synced Chrome users]" (Google Resp. 7:15-

12  16) is false. These two Not Synced signals accurately identify when specific users are using Chrome

13  while Not Synced:

14   A. The ▇ signal identifies specific times when specific Chrome users are using

15   Chrome while signed-in but not consented for sync.

16   B. The ▇▇▇ signal identifies specific times when specific Chrome

17   users were moved to signed-out mode based on how Chrome is designed to send

18   users to signed-out mode when they click to "Turn off" sync.

19   C. I agree with Mr. Schumann that these two signals alone are insufficient to capture

20   *all* Not Synced Chrome use, because it will not capture Chrome users who never

21   synced or signed in. But this supports my opinions that the Zwieback and Biscotti

22   identifiers (and other signals that identify when a user is not signed in) are useful

23   to identify the remaining Not Synced Chrome users. See Dkt. 340-19, Expert of

24   Report of Zubair Shafiq ISO Class Certification, ¶¶ 100-113.

---

[2] Any arguments Google has about NAC signals causing signed-in communications to be present in signed out logs can be fully disaggregated by the use of the NAC signals themselves, which I have observed in Google's productions of Plaintiff data in back-end logs.

13. I also do not agree with Google's argument that Plaintiffs' suggestion that "Google build and preserve a new 'Do Not Sync (DNS or X-Not-Synced) signal that Google can store in its existing logs'" is an acknowledgement that "Google has no logs showing every instance in which a Chrome user browses without sync enabled" (Google Resp. 6:15-17). I advised Plaintiffs on this suggestion and know first-hand that it was proposed as a way to reduce Google's preservation burdens. In my opinion, this approach would have been far more efficient and reduced Google's preservation burdens dramatically.

**B.   OPINIONS INFORMED BY THE PRODUCTION OF PLAINTIFF DATA**

14. It is my understanding that Google was ordered by the Special Master to produce Zwieback-keyed (by definition Not Synced) Plaintiff data stored in ▮▮▮. On March 10, 2022, Google produced Plaintiff data from only ▮ out of the ▮▮▮. Furthermore, the data that Google did produce from ▮▮▮ was incomprehensible because Google did not produce the data in the standard decoded form as it had done for previous productions. The field names and their values in this ▮ production were unintelligible because they were encoded.

15. It is my understanding that, after Plaintiffs petitioned the Court, Google eventually produced an "Updated" ▮ data on March 31, 2022. However, based on my review, Google's "Updated" ▮ production was not the decoded version of the "Original" ▮ production dated March 10, 2022. The "Updated" ▮ production was different and much more limited as compared to the "Original" ▮ production.

16. The "Updated" ▮ production was 80.3% smaller in volume as compared to the "Original" ▮ production. The "Updated" ▮ production was missing data that was present in the "Original" ▮ production. Specifically, the "Updated" ▮ production did not contain data from ▮ of the ▮▮▮ that were present the "Original" production.

17. It is my understanding that Plaintiffs further submitted targeted search requests to Google, including logs that contained Zweiback-keyed data. However, based on my review, many of those searches resulted in null sets because Google did not conduct the searches in a timely

1  manner. Google conducted the searches after the retention periods of some logs elapsed. For
2  example, Plaintiffs submitted the second round of searches for ▮▮▮▮▮ on April 6, 2022
3  but Google did not conduct the search until May 20, 2022 (a delay of 44 days that meant that the
4  ▮▮▮▮▮ retention period had already expired by the time Google conducted the search).

5       18.    From the Zwieback-keyed data that Google did produce, it is evident that it contains
6  Plaintiffs' personal information. For example, in "▮▮▮▮▮
7  ▮▮▮▮▮".[3]
8  ▮▮▮▮▮
9  ▮▮▮▮▮
10 ▮▮▮▮▮
11 ▮▮▮▮▮
12 ▮▮▮▮▮
13 ▮▮▮▮▮
14 ▮▮▮▮▮
15 ▮▮▮▮▮
16 ▮▮▮▮▮
17 ▮▮▮▮▮
18 ▮▮▮▮▮

19      19.    I understand that it is too late for Google to fully search and produce Zwieback-
20 keyed data for the Named Plaintiffs. Internal Google documentation specifies that Zwieback-keyed
21 data is deleted after ▮▮▮▮▮ of inactivity. "▮▮▮▮▮
22 ▮▮▮▮▮
23 ▮▮▮▮▮
24 ▮▮▮▮▮
25 ▮▮▮▮▮."
26 [GOOG-CABR-04796222 at -23].

---

[3] Due to the massive volume of the cited documents, out of respect for the limited resources of the Court, they have not been attached to this declaration. I will of course provide them upon request.

20. On March 31, 2022, Google produced "Updated" Zwieback ▓▓ data for one Plaintiff that consisted entirely of a Zwieback tombstone for the Named Plaintiff's Zwieback identifier. While Google has not provided a translation for what "▓▓▓▓▓▓" means, this appears to show that on April 30, 2021 Google deleted Zwieback-keyed information for this Named Plaintiff.

21. Zwieback-keyed data is different than Biscotti. As outlined in my earlier declaration



22. Google's production from the ▓▓▓▓▓▓▓▓▓▓ log on June 30, 2022 also shows that Zwieback and Gaia-keyed information that Chrome sends to Google.com from non-Google webpages are used by Google to profit from and inform search results at Google.com. For example,

[REDACTED]

### C. REBUTTAL OPINION REGARDING LINKING AUTHENTICATED AND UNAUTHENTICATED IDENTIFIERS

23. I understand that Google makes the argument that it does not link authenticated (GAIA) and unauthenticated (Biscotti and Zwieback) information. In the opposition to the sanctions motion, Google says that "Google documents and testimony demonstrate that this linking does not occur" (Google Resp. ¶ 9:22-26). As extensively explained, and summarized below, and in my declaration and rebuttal in support of Plaintiffs' motion for class certification, Google can and does link authenticated and unauthenticated data.



//
//
//
//
//
//
//
//
//
//



**Excerpt from GOOG-CABR-03666182 at -182 - Annotated**

24.

25. [REDACTED]

**Excerpt from "**[REDACTED]**"**

[GOOG-CABR-03665962 at -67]

26. Further documents describe the specifics of linking (or mapping) various authenticated and unauthenticated identifiers to each other.

27. [REDACTED]

28. [REDACTED]

29. [REDACTED]

1  ███████████████████████████████████████████████████████████
2  ██████████
3      30.    Google's production of data from the GAIA and Zwieback ████ data sources also
4  provides evidence that Google links unauthenticated (i.e., signed-out) identifiers to authenticated
5  (i.e., signed-in) identifiers as well as ████████████████████████████████████████
6  ██████.
7      31.    Google's recent production of ████████████████ (GOOG-CALH-
8  01170421) revealed dozens of such ██████:
9  ███████████████████████████████████████████
10 ███████████████████████████████
11 ███████████████████████████████████████████
12 ████ ████████████████████ █████████
13 █████████████████
14 ███████████████████████████████████████████
15 ████████████████████
16 ███████████████████████████████████████████
17 ███████████████████████████████████████████
18 █████████████████████████████
19 ███████████████████████████████████████████
20 ████████████
21 ███████████████████████████████████████████
22 █████████████████████
23     32.    Google's production of ████████████████ revealed dozens of such ██████:
24 ███████████████████████████████████████████
25 ███████████████████████████████████████████
26 ███████████████████████████████████████████
27 ███████████████████████████████████████████
28

[Paragraphs 31–32 redacted]

33. The first round of searches in the Special Master process were limited to a ▇▇▇ and generated almost entirely null results for the Named Plaintiffs.

34. In the second round of searches in the Special Master process, Google produced Named Plaintiff data from ▇▇▇. The second round of searches resulted in production of Plaintiff data from outside the ▇▇▇ window Google arbitrarily placed on the first round of searches.

35. The fact that Google was able to search and extract the data for the Named Plaintiff demonstrates that Google has and always had the technical ability to search and extract data for the Named Plaintiffs for each log going back through the log's entire retention period. It simply chose not to do so.

***

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 21st Day of July 2022, at Davis, California.

By: *Zubair*
Zubair Shafiq, Ph. D.