**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

| | |
|---|---|
| Diane M. Doolittle (CA Bar No. 142046) | Andrew H. Schapiro (admitted *pro hac vice*) |
| dianedoolittle@quinnemanuel.com | andrewschapiro@quinnemanuel.com |
| 555 Twin Dolphin Drive, 5th Floor | 191 N. Wacker Drive, Suite 2700 |
| Redwood Shores, CA 94065 | Chicago, IL 60606 |
| Telephone: (650) 801-5000 | Telephone: (312) 705-7400 |
| Facsimile: (650) 801-5100 | Facsimile: (312) 705-7401 |
| | |
| Stephen A. Broome (CA Bar No. 314605) | Josef Ansorge (admitted *pro hac vice*) |
| stephenbroome@quinnemanuel.com | josefansorge@quinnemanuel.com |
| Viola Trebicka (CA Bar No. 269526) | Xi ("Tracy") Gao (CA Bar No. 326266) |
| violatrebicka@quinnemanuel.com | tracygao@quinnemanuel.com |
| Crystal Nix-Hines (CA Bar No. 326971) | Carl Spilly (admitted *pro hac vice*) |
| crystalnixhines@quinnemanuel.com | carlspilly@quinnemanuel.com |
| Alyssa G. Olson (CA Bar No. 305705) | 1300 I. Street, N.W., Suite 900 |
| alyolson@quinnemanuel.com | Washington, D.C. 20005 |
| Marie Hayrapetian (CA Bar No. 315797) | Telephone: 202-538-8000 |
| mariehayrapetian@quinnemanuel.com | Facsimile: 202-538-8100 |
| 865 S. Figueroa Street, 10th Floor | |
| Los Angeles, CA 90017 | |
| Telephone: (213) 443-3000 | |
| Facsimile: (213) 443-3100 | |
| | |
| Jomaire A. Crawford (admitted *pro hac vice*) | Jonathan Tse (CA Bar No. 305468) |
| jomairecrawford@quinnemanuel.com | jonathantse@quinnemanuel.com |
| 51 Madison Avenue, 22nd Floor | 50 California Street, 22nd Floor |
| New York, NY 10010 | San Francisco, CA 94111 |
| Telephone: (212) 849-7000 | Telephone: (415) 875-6600 |
| Facsimile: (212) 849-7100 | Facsimile: (415) 875-6700 |

*Attorneys for Defendant Google LLC*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION**

| | |
|---|---|
| PATRICK CALHOUN, et al., on behalf of themselves and all others similarly situated, | Case No. 4:20-cv-05416-YGR-SVK |
| Plaintiffs, | **GOOGLE LLC'S ADMINISTRATIVE MOTION FOR LEAVE TO SUPPLEMENT THE RECORD** |
| vs. | Judge: Hon. Yvonne Gonzalez Rogers |
| GOOGLE LLC, | |
| Defendant. | |

## I. INTRODUCTION

Pursuant to Local Rule 7-11, Google respectfully files this administrative motion to supplement the class certification and summary judgment records in this action with certain deposition transcripts from the related action *Brown v. Google LLC*, No. 4:20-cv-03364. On March 15, 2022, Judge van Keulen ordered that in both the *Brown* and *Calhoun* actions, "parties are to cross-produce . . . the deposition transcripts of named plaintiffs in the other related action." Dkt. 565-1 at 4 (Ruling on Dispute 1.5). By that time, however, the pending motions for class certification and summary judgment in *Calhoun* had already been fully briefed, without the benefit of the deposition testimony of the *Brown* Plaintiffs and their experts.

That testimony is highly material to the pending motions. Plaintiffs and their experts contend that, based on Google's disclosures, "reasonable users" uniformly believed that using the Chrome browser in any mode other than "Sync" would prevent Google's web-services from receiving the data used to provide those services. But post-briefing testimony of the *Brown* Plaintiffs, who are also Chrome users and members of the *Calhoun* Plaintiffs' putative class, directly rebuts that assertion. The *Brown* Plaintiffs freely admit that the data collection at issue in both cases is "common knowledge" and clearly disclosed in the same disclosures at issue here, and that they consented to that collection in "regular mode" because it was part of their "deal" with Google. Both Plaintiff groups' theories cannot be true.[1] The full record must be before the Court to avoid the risk of inconsistent decisions in related cases involving overlapping classes and concerning the same data and disclosures. Google therefore requests leave to supplement the records on Plaintiffs' class certification motion (Dkt. 340) and Google's summary judgment motion (Dkt. 395) with certain deposition transcripts from *Brown*.[2]

## II. BACKGROUND

Both *Brown* and *Calhoun* concern routine data transmissions that Google receives through the provision of advertising, analytics, and other services ("Services") to websites that choose to

---

[1] In fact, neither is true. Google will address the *Brown* Plaintiffs' flawed theories in its forthcoming opposition to their class certification motion.

[2] The deposition transcripts are attached as Exhibits 1 through 6 to the Broome Declaration.

install specific Google scripts. *See* Dkt. 302-4 ("*Calhoun* SAC") ¶¶ 112–159; *Brown*, Dkt. 395-2 ("*Brown* TAC") ¶¶ 63–83. Plaintiffs in both cases are Chrome users who allege Google improperly collected IP addresses, URLs, cookies and other allegedly "personal" or "identifying" information (the "Data") when they visited third-party websites that use the Services. *Id.* Plaintiffs in each case claim they believed that using Chrome in a particular browsing mode[3]—Incognito in *Brown* and *any* mode other than Sync in *Calhoun*—should have prevented Google from receiving the Data. *Id.*

Based on these common allegations, Plaintiffs in each case advance a set of overlapping claims under state and federal wiretapping and unfair competition laws as well as common-law claims for privacy violations and breaches of Google's Terms of Service, Chrome Terms of Service, Privacy Policy, and Chrome Privacy Notice, in the period from 2016 to 2020.[4] *See Calhoun* SAC ¶¶ 264–423; *Brown* TAC ¶¶ 202–284.

The *Brown* Plaintiffs are Chrome users, *Brown* TAC ¶¶ 168, 173, 178, 183, 188, and members of the putative class in *Calhoun*.[5] In stark contrast to Plaintiffs here, the *Brown* Plaintiffs readily admit it is "common knowledge" that Google receives the Data when users browse in a Chrome mode other than Incognito:

---

[3] Chrome has five modes: Basic, Sign-In, Sync, Guest, and Incognito.

[4] Reflecting these substantial similarities, the records in *Brown* and *Calhoun* have been developed in close coordination. Judge van Keulen has repeatedly held combined discovery hearings, *see, e.g.*, Dkt. 379-3; Dkt. 639, ordered cross-production of documents, *see* Dkt. 263, and permitted attendance at depositions by counsel in both actions, *see id.* Likewise, the Special Master processes—supervised in both cases by Special Master Douglas Brush—have frequently proceeded in tandem. *See, e.g.*, Dkt. 246 (Order appointing Special Master); Dkt. 247 (Order referring *Brown* and *Calhoun* disputes to Special Master Brush); Dkt. 351 (Report and Orders for *Brown* and *Calhoun*); Dkt. 604 (Report and Recommendation on *Brown* and *Calhoun* preservation plans).

[5] In tacit recognition that the allegations in the two cases cannot be reconciled, Plaintiffs have artificially carved out Incognito browsing from their class definition, notwithstanding the fact that Incognito indisputably is what Plaintiffs call a "Not-Synced" or "Un-Synced" mode. *See* Dkt. 339-3 (Plaintiffs' Class Certification Mot.) at 1. Nevertheless, under Plaintiffs' class definitions, users browsing in *both* regular and private browsing modes are still members of the putative classes in both actions. This includes the *Brown* Plaintiffs. *See, e.g.*, Ex. 4 (Castillo Tr.) at 70:12–14; Ex. 5 (Trujillo Tr.) at 56:11–12.

- "Q: And do you have any belief that just using plain old Chrome right out of the box, without Sync enabled, gives you privacy protection so that Google won't see what you're doing? . . . A: I don't assume privacy in, quote/unquote, 'normal Chrome sessions.'" Ex. 2 (Davis Tr.) at 70:23–71:2.

- "I understand when I am not in Incognito mode that Google will intercept my communications . . . it's my understanding that Google collects that kind of data when I am not in Incognito mode, per the statements that are written in the Google Privacy Policy." Ex. 4 (Castillo Tr.) at 100:3–25.

- "It's clear to me that when I'm searching Google in regular mode, and not Incognito mode, that [Google] collect[s] this data." *Id.* at 70:12–14.

- "I understand that, hey, if I go do normal browsing, I'm . . . giving up data and . . . my data's being collected, and that's the deal we have." Ex. 3 (Brown Tr.) at 61:3–5.

- "[I]n general, I think targeted advertising is a good thing. And normal browsing mode, I think that . . . I've given consent. We have a deal. I get the deal." *Id.* 158:8–11.

- "[I]f I'm in regular mode, then I am aware that information is being collected," Ex. 5 (Trujillo Tr.) at 56:11–12.

- "I know that in regular mode I am consenting to Google Analytics collecting my information." *Id.* 62:12–14.

- "It's common knowledge [that Google collects and monetizes browsing data] . . . . everyone knows that that's Google's business model." Ex. 1 (Byatt Tr.) at 153:15–21.

Expert testimony in *Brown* also bears on the claims in this case. Plaintiffs' expert Russell Mangum has opined that compensation for participants in Google's Ipsos Screenwise Panel—a research study in which Google pays qualifying panelists to analyze their online activity—can be used to determine the market value of class members' personal information. Dkt. 340-18 ¶¶ 92, 96; Dkt. 482-9 ¶¶ 76–92. But on July 20, 2022, Michael Lasinski, the *Brown* Plaintiffs' damages expert who *also* bases his damages estimates on the Ipsos Screenwise Panel, *see* Dkt. 609-13 ¶ 138, admitted that he determined the Ipsos data to be "quantitatively and qualitatively different" from the Data that the parties' experts purport to value because it also includes, among other things, comprehensive demographic and background information. Ex. 6 (Lasinski Tr.) 114:13–15. Mr. Lasinski also testified that the Ipsos payments are meant to compensate users not only for collecting their data, but also for, *e.g.*, maintaining a minimum level of online activity, filling out surveys, and

giving up the option to enable or disable features and services that limit data transmission. *Id.* at 114:2–122:15.

## III. ARGUMENT

The post-briefing testimony in the related *Brown* case undermines several of Plaintiffs' claims, including that (1) Google's disclosures uniformly led class members to believe that Google would not receive the Data if they simply used Chrome in any mode other than Sync, *see* Dkt. 340 (Plaintiffs' Class Certification Mot.) at 10–11, and (2) class members did not consent to Google's receipt of the Data because it allegedly is not disclosed in the Privacy Policy, *see* Dkt. 462 (Plaintiffs' MSJ Opp.) at 20 ("Google did not disclose its activity to users . . . ."). The testimony of the *Brown* Plaintiffs is particularly relevant because, unlike Plaintiffs here—who admit they did not read *any* of the Google disclosures on which they base their claims—the *Brown* Plaintiffs all claim they read the Privacy Policy, and three of them claim to have read the Chrome Privacy Notice.[6] Their testimony thus provides evidence from *actual* class members who read the disclosures at issue and understood Google generally receives the Data in the modes at issue here. The testimony also (1) supports the survey results Google's expert Tulin Erdem submitted in support of Google's opposition to class certification, Dkt. 430-1 at 80–446, (2) contradicts the opinions of Plaintiffs' experts Leslie John and Joseph Turow regarding purported "reasonable user" expectations, Dkt. 340-17; Dkt. 340-20, and (3) confirms several of Google's summary judgment and class certification arguments.

And just last week, the damages expert in *Brown* admitted that a study *both* sets of Plaintiffs rely on to measure restitution damages concerns data not comparable to the Data they purport to value. The testimony bears directly on the adequacy of Plaintiffs damages model and thus the appropriateness of certifying a class.

This evidence should be before the Court when ruling on the pending motions; its absence would present an unacceptable risk of inconsistent decisions. *Cf.* L.R. 3-12 (establishing a mechanism for related cases in part to avoid "conflicting results"); *Twigger v. Local 48 Int'l Broth.*

---

[6] Ex. 1 (Byatt Tr.) 99:23–100:1; Ex. 2 (Davis Tr.) 106:13–24; Ex. 5 (Trujillo Tr.) 206:21–207:23.

*Elec. Workers*, 35 F. App'x 460, 463 (9th Cir. 2002) (affirming importance of "ensur[ing] consistency between the judgments in" related cases). Plaintiffs claim they can show that all putative class members believe "[t]he *default* is that Chrome will not send and Google is not permitted to collect [the Data] unless the user finds the Sync toggle and enables it," Dkt. 340 at 1, while the recent testimony of putative class members consistently acknowledges the same collection to be "common knowledge" and disclosed in Google's Privacy Policy. Indeed, the claims in the related *Brown* case *rely* on the assumption that Google receives the Data *unless* they use a private browsing mode like Incognito. *See, e.g.*, *Brown v. Google LLC*, No. 4:20-cv-03664, Dkt. 395-2 at ¶¶ 39–50 (alleging that Google represented private browsing modes as a means of preventing Google from "continu[ing] to intercept, track, and collect" browser communications); *id.* at ¶ 163 ("It is common knowledge that Google collects information about the web-browsing activity of users who are not in 'private browsing mode'.").

The Court is entitled to consider these admissions. Ruling on Plaintiffs' motion for class certification and Google's motion for summary judgment without considering the *Brown* Plaintiffs' testimony runs the risk of inconsistent decisions in related cases involving overlapping classes and claims. Accordingly, Google respectfully requests leave to supplement the record in Plaintiffs' pending motion for class certification and Google's motion for summary judgment with Exhibits 1 through 6 to the Broome Declaration.

DATED:  July 29, 2022

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By   */s/ Andrew H. Schapiro*
Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Stephen A. Broome (CA Bar No. 314605)
stephenbroome@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com

|    |    |
|----|----|
| 1  | Crystal Nix-Hines (Bar No. 326971) |
| 2  | crystalnixhines@quinnemanuel.com<br>Alyssa G. Olson (CA Bar No. 305705) |
| 3  | alyolson@quinnemanuel.com<br>Marie Hayrapetian (CA Bar No. 315797) |
| 4  | mariehayrapetian@quinnemanuel.com<br>865 S. Figueroa Street, 10th Floor |
| 5  | Los Angeles, CA 90017<br>Telephone: (213) 443-3000 |
| 6  | Facsimile: (213) 443-3100 |
| 7  |    |
| 8  | Diane M. Doolittle (CA Bar No. 142046)<br>dianedoolittle@quinnemanuel.com |
| 9  | 555 Twin Dolphin Drive, 5th Floor<br>Redwood Shores, CA 94065 |
| 10 | Telephone: (650) 801-5000<br>Facsimile: (650) 801-5100 |
| 11 |    |
| 12 | Josef Ansorge (admitted *pro hac vice*)<br>josefansorge@quinnemanuel.com |
| 13 | Xi ("Tracy") Gao (CA Bar No. 326266)<br>tracygao@quinnemanuel.com |
| 14 | Carl Spilly (admitted *pro hac vice*)<br>carlspilly@quinnemanuel.com |
| 15 | 1300 I. Street, N.W., Suite 900<br>Washington, D.C. 20005 |
| 16 | Telephone: 202-538-8000<br>Facsimile: 202-538-8100 |
| 17 |    |
| 18 | Jomaire A. Crawford (admitted *pro hac vice*)<br>jomairecrawford@quinnemanuel.com |
| 19 | 51 Madison Avenue, 22nd Floor<br>New York, NY 10010 |
| 20 | Telephone: (212) 849-7000<br>Facsimile: (212) 849-7100 |
| 21 |    |
| 22 | Jonathan Tse (CA Bar No. 305468)<br>jonathantse@quinnemanuel.com |
| 23 | 50 California Street, 22nd Floor<br>San Francisco, CA 94111 |
| 24 | Telephone: (415) 875-6600<br>Facsimile: (415) 875-6700 |
| 25 |    |
| 26 | *Attorneys for Defendant Google LLC* |
| 27 |    |
| 28 |    |