# Plaintiffs' Reply in Further Support of Motion for an Order of Sanctions for Google's Discovery Misconduct

## Redacted Version of Document Sought to be Sealed

**BLEICHMAR FONTI & AULD LLP**
Lesley Weaver (Cal. Bar No.191305)
Angelica M. Ornelas (Cal. Bar No. 285929)
Joshua D. Samra (Cal. Bar No. 313050)
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
*lweaver@bfalaw.com*
*aornelas@bfalaw.com*
*jsamra@bfalaw.com*

**SIMMONS HANLY CONROY LLC**
Jason 'Jay' Barnes (admitted *pro hac vice*)
An Truong (admitted *pro hac vice*)
Eric Johnson (admitted *pro hac vice*)
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel.: (212) 784-6400
Fax: (212) 213-5949
*jaybarnes@simmonsfirm.com*
*atruong@simmonsfirm.com*
*ejohnson@simmonsfirm.com*

*Counsel for Plaintiffs*

**DICELLO LEVITT GUTZLER LLC**
David A. Straite (admitted *pro hac vice*)
Corban Rhodes (admitted *pro hac vice*)
One Grand Central Place
60 East 42nd Street, Suite 2400
New York, NY 10165
Tel.: (646) 933-1000
*dstraite@dicellolevitt.com*
*crhodes@dicellolevitt.com*

Amy Keller (admitted *pro hac vice*)
Adam Prom (admitted *pro hac vice*)
Sharon Cruz (admitted *pro hac vice*)
Ten North Dearborn St., 6th Floor
Chicago, IL 60602
Tel.: (312) 214-7900
*akeller@dicellolevitt.com*
*aprom@dicellolevitt.com*
*scruz@dicellolevitt.com*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

PATRICK CALHOUN, *et al.*, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

GOOGLE LLC,

Defendant.

Case No. 4:20-cv-05146-YGR-SVK

**PLAINTIFFS' REPLY IN FURTHER SUPPPORT OF MOTION FOR AN ORDER OF SANCTIONS FOR GOOGLE'S DISCOVERY MISCONDUCT**

Hr'g Date:   August 11, 2022
Time:            9:30AM PT
Courtroom: 6, 4th Floor

Referral:      Honorable Susan van Keulen

**UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................... ii

I.    INTRODUCTION ........................................................................................................ 1

II.   ARGUMENT ............................................................................................................... 1

   A.   Google Engaged in Sanctionable Discovery Misconduct ....................................... 1

      1.   Google Made False Representations About Not Synced Signals and Withheld
           Relevant Information ...................................................................................... 1

      2.   Google Failed to Produce Named Plaintiff Data ............................................ 5

         a.   Google Failed to Timely Disclose and Produce Already Searched, Segregated
              and Preserved Named Plaintiff Data ..................................................... 5

         b.   Google Failed to Preserve Biscotti-Keyed Information ....................... 7

         c.   Google Failed to Preserve Zwieback-Keyed Information ..................... 7

         d.   The Special Master Process Should Not Have Been Necessary .......... 9

      3.   Google Withheld ████████ Documents ............................................. 10

   B.   Evidentiary and Monetary Sanctions Are Appropriate ....................................... 12

      1.   Proposed Sanction for Discovery Misconduct Related to Not Synced Signals is
           Appropriate ................................................................................................ 13

      2.   Proposed Sanctions for Failure to Preserve and Produce Named Plaintiff Information
           are Appropriate ........................................................................................... 13

      3.   Proposed Sanction for ████████ Misconduct is Appropriate ........... 14

      4.   Plaintiffs' Other Requested Relief Is Appropriate ..................................... 15

      5.   Google's Opposition Concedes Additional Misconduct on Zwieback ...... 15

III.  CONCLUSION ........................................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**

*Apple Inc. v. Samsung Elecs. Co., Ltd.,*
   888 F. Supp. 2d 976 (N.D. Cal. 2012) .............................................................. 7, 13

*Brown v. Google, LLC,*
   Case No. 4:20-cv-03664-YGR-SVK, Dkt. 593-3,
   *Order on Sanctions* (N.D. Cal. Feb. 26, 2022)...................................................... 12

*First Fin. Sec., Inc. v. Freedom Equity Grp. LLC,*
   2016 WL 5870219 (N.D. Cal. Oct. 7, 2016) .......................................................... 13

*In re Facebook Internet Tracking,*
   956 F.3d 589 (9th Cir. 2020).................................................................................. 14

*In re Google RTB Consumer Privacy Litig.,*
   2022 WL 2165489 (N.D. Cal. Jun. 13, 2022) ........................................................ 14

*In re Lavender,*
   180 F.3d 1114 (9th Cir. 1991)................................................................................... 4

*Kennedy v. Allied Mut. Ins. Co.,*
   952 F.2d 262 (9th Cir. 1991)..................................................................................... 2

*Lanier v. San Joaquin Valley Offs. Ass'n,*
   2016 WL 4764669 (E.D. Cal. Sept. 12, 2016)........................................................ 15

*North American Watch Corp. v. Princess Ermine Jewels,*
   786 F.2d 1447 (9th Cir. 1986)................................................................................... 4

*See Synapsis, LLC v. Evergreen Data Sys., Inc.,*
   2006 WL 2884413 (N.D. Cal. Oct. 10, 2006)......................................................... 11

*Shanghai Weiyi Int'l Trade Co. v. Focus 2000 Corp.,*
   2017 WL 2840279 (S.D.N.Y. Jun. 27, 2017) ......................................................... 12

*Shillitani v. U.S.,*
   384 U.S. 364 (1966) ................................................................................................ 15

*U.S. v. Sumitomo,*
   617 F.2d 1365 (9th Cir. 1980).................................................................................. 12

**Rules**

Fed. R. Civ. P. 37(b)(2)(C)............................................................................................ 13

## I.    **INTRODUCTION**

The evidence shows that Google: (1) falsely told the Court that there was no such thing as Not Synced signals; (2) failed to produce Named Plaintiff data as ordered by the Court on numerous occasions, leading to serious abuses of the Special Master process; (3) failed to search for and preserve Biscotti-keyed and Zwieback-keyed Plaintiff data until most of it had already been deleted; and (4) concealed key evidence relating to its false defense of consent and asking the Court to find consent as a matter of law when it knew the opposite to be true. Google's opposition concedes that the underlying facts are not in dispute. Google should be sanctioned for this misconduct.

## II.    **ARGUMENT**

### A.    **GOOGLE ENGAGED IN SANCTIONABLE DISCOVERY MISCONDUCT**

#### 1.    **Google Made False Representations About Not Synced Signals and Withheld Relevant Information**

Google does not dispute that it made false statements to the Court and to Plaintiffs regarding the Not Synced signals.  Instead, Google asks the Court to be excused for three reasons: (1) Google's misrepresentations to the Court could be viewed as somewhat accurate in "context"; (2) that no prejudice exists because Plaintiffs eventually learned of the existence of Not Synced Signals through their own investigation; and (3) that its misconduct is shielded from censure under the Court's April 30, 2021 Protective Order. As set forth below, each argument should be rejected.

Google argues that "context is critical" for the misrepresentations made about Not Synced signals. Opp. at 1. But Google's supposed "context" is illogical and not supported by the record. The March 5, 2021 hearing focused on whether relevant data, including Not Synced signals, existed in logs maintained by Google, including Sync Traffic Logs.  Google made material misrepresentations to the Court in this hearing.  Specifically, Google falsely stated:

> (1) Sync Traffic Logs do not contain any relevant information, *see* Dkt. 120 at 4 (falsely representing that sync traffic logs show "traffic only for users that have sync enabled"); Mar. 5, 2021 Hr'g Tr. 21:9-11 ("So sync traffic logs, your honor, … are not relevant here");

> (2) Not Synced Signals *did not exist*, *see, e.g.* Joint Decl. Ex. 3 at 5 (Google's correspondence asserting "==Google does not have any logs showing when a user is not synced=="); *see also* Joint Decl. ¶¶ 7-17; and

> (3) the number of not synced users "is not a figure that's readily available to Google;" Mar. 5, 2021 Hr'g Tr. 23:14-23.

Only through Plaintiffs' investigation and hard-fought discovery efforts have Plaintiffs

learned that these statements are undeniably false. There are, in fact, multiple Not Synced signals, and sync traffic logs *do* contain data for users who have not enabled sync. Specifically, sync traffic logs contain records of when Not Synced Chrome users sign-in to a Google account ▮▮▮, continue using Chrome while Not Synced ▮▮▮, and pause or turn off Sync ▮▮▮▮▮▮▮. *See* Joint Decl. ¶¶ 28-39. While Google now defends its misconduct by arguing that "the difficulty of identifying a portion of class members only confirms that Google cannot identify all Chrome users browsing without syncing," Opp. at 2, Google's own declarant, Tim Schumann, testified to the opposite: compiling a list of not synced users via the ▮▮▮ signal would "be quick" and involve "[m]aybe a day or two of work" related to the "approval process to compile such list[.]" Joint Decl. ¶ 30 (quoting Joint Decl. Ex. 5, Schumann Dep., 94:25-97:14); Joint Rebuttal Decl. ¶ 23; Joint Rebuttal Decl. Ex. 18.[1] There is no "context" in which Google's representations can be reconciled with Schumann's testimony.

Google also argues that Plaintiffs eventually learned of Google's false statements, almost a year ago. Opp. at 4-5. Even if true, it cannot excuse the earlier false statements, and Google's argument is belied by the record in any event. Google denied that Not Synced signals existed. *See* Joint Decl. ¶¶ 1-20. Even if Plaintiffs started to suspect Google's malfeasance last summer, there was no way to deduce the whether, how, where, and for how long Google retained those signals. That was all the subject of discovery which, due to Google's misrepresentations and delay tactics, Plaintiffs had no insight into.[2]  Specifically, in reply to Google's request to put its conduct in "context":

- First, Google contends that it should get a pass for its false statements because Plaintiffs could have discovered the truth by searching a haystack of "public documents," Opp. at 4. This defense is facially absurd and, as detailed in the rebuttal declaration of Richard Smith ("Smith Rebuttal"), the public documents do not actually cure Google's

---

[1] Schumann's declaration in support of Google's opposition to sanctions conveniently walks back prior sworn testimony, though his counsel had ample opportunity to conduct re-direct. It should be stricken on that basis. *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991) ("[A] party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony"). Should the Court be inclined to consider the declaration, Plaintiffs respectfully submit that Schumann should be available in-person for cross-examination at the in-person August 11 hearing.

[2] As the Court noted early on, Plaintiffs operated on an "uneven playing field in that Google has a map to that terrain, while Plaintiffs do not[.]" Dkt. 192-1. Google consistently failed to provide Plaintiffs or the Court with basic information about the map, or, as the Court put it, Google's M.O. was to "mete out as little information as [it] needed to[,] … see what the special master does with it and then [] argue from there. That is not the way the process works and that has taken up a lot of time and resources of the parties, of the special master and of the Court." Jun. 30, 2022 Hr'g Tr. 29:3-13.

misrepresentations. *See* Joint Rebuttal Decl. Ex. 13, Smith Rebuttal, at ¶¶ 9-25.

- Second, Google argues that it "produced hundreds of documents about [Not Synced] signals beginning in April 2021[.]" Opp. at 4. Even if true, such productions cannot excuse false statements to the Court the month *prior*, nor do they excuse Google's Interrogatory responses that continued to be false until 8 minutes before the end of fact discovery. *See infra*. Google did not and cannot find a single federal judge who ever excused false statements to the Court and in Interrogatory responses simply because the truth was buried in 7 million pages of documents produced *later*. Google also only identifies *two documents* from the production that reference ▇▇ and ▇▇▇▇▇▇▇ signals. Such claimed "disclosure" cannot excuse the fact that Google continued to disavow the existence and the storage of these signals and cannot excuse the uncontroverted false statements made to the Court in March and April 2021.

- Third, Google falsely asserts that it "confirmed" the existence of Not Synced signals on October 12, 2021 (six months after telling the Court the opposite), in response to Request for Admission Nos. 13 and 18.[3]  But the purported "responses" were vague (failing to identify any specific Not Synced signals) and contradicted Google's Interrogatory responses, and disclosures pursuant to this Court's November 12, 2021 sealed order; when Plaintiffs sought clarity on these responses, Google refused. *See* Joint Rebuttal Decl. § I.B.; *see also* Dkt. 429, Class Cert. Opp. (arguing that no signals could ever identify not synced users).

- Fourth, Google asserts that it produced "a list of data sources containing ▇▇▇▇▇ signals on November 23, 2021." Opp. at 4. *First*, even if true, this is an admission that Google withheld such information *until November 2021*, and that its representations to the Court in March 2021 – as to the non-existence of Not Synced signals and relevance (or lack thereof) of sync traffic logs – were false. *Second*, the November 23, 2021 production provided little to no transparency into the existence of Not Synced signals. Rather, the limited information provided suggested that these data sources contained only information of sync *enabled*. *See* Joint Rebuttal Decl. § I.C. Insofar as Google now asserts that these were, in fact, sources for Not Synced signals, it is clear that Google used ambiguous and misleading language to obscure that information and misdirect Plaintiffs. Google's November 23 disclosures thus support Plaintiffs' argument, not Google's.

- Fifth, Google claims that it "inadvertently" left out the ▇▇▇▇▇▇▇▇ signal from discovery responses, but fixed this omission in a March 4, 2022 supplement just 8 minutes before the conclusion of fact discovery. This is not a cure for prejudice. *See North American Watch Corp. v. Princess Ermine Jewels*, 786 F.2d 1447, 1451 (9th Cir. 1986) ("[l]ast-

---

[3] Google's opposition admits that signed-out users are by definition Not Synced. *See* Opp. at 2. Thus, it concedes that any log that identifies when a Chrome user is signed-out must also expressly identify a Not Synced user. This admission reveals yet another set of false statements made to the Court regarding whether Google's signed-out logs can identify Not Synced Chrome users, and thus should be preserved. *See* Dkt. 713-4, Jun. 15, 2022 Preservation Order, at 7:18-19 (excluding "fields that indicate a user is not signed-in" from not synced signals, based on Google prior argument, Jun. 30, 2022 Hr'g Tr. 31:1-13, that signed-out status is ▇▇▇▇▇▇▇▇▇▇▇▇ and Plaintiffs' contention that signed-out equals not-synced is an "inference"). However, the next line of the same order suggests that the Court (correctly) found the Zwieback UID is a Not Synced signal. Dkt. 713-4 at 7:20-21. Plaintiffs will seek leave to clarify based on the apparent conflict and Google's admission of July 1, 2022 that contradicts its arguments on preservation.

> minute tender of documents does not cure the prejudice to opponents"). Further still, the timing of its corrected response is telling. Google supplemented responses in March 2022, after the Schumann deposition and at the close of fact discovery, at which time Google's attempts to cover up Not Synced signals were finally unraveling.

Repeatedly, Google has demonstrated that it was well-aware of the existence and storage of Not Synced signals, and yet repeatedly and actively concealed the truth from the Court and Plaintiffs.

Google disingenuously claims that it "offered additional discovery on [Not Synced] signals that Plaintiffs failed to accept." Opp. at 5. The first supposed "offer" was Google's August 27, 2021 preservation proposal (Dkt. 293-4). Leaving aside the fact that a data preservation offer is not an offer of "additional discovery," Google's opposition manufactures an argument by misquoting the offer; Google did not offer to preserve evidence of "whether" a user had enabled the sync feature, but instead only offered to preserve data of synced users. Google's adulteration of the language of its own offer is inexcusable and deeply unsettling in a brief arguing against sanctions for discovery misconduct. To ensure an accurate record, Plaintiffs include a screenshot of the preservation offer in the accompanying Joint Rebuttal Declaration of Counsel, at ¶ 32. The second supposed "offer" was the deposition of Tim Schumann originally scheduled for October 2021, which Google now claims would have revealed the existence of Not Synced signals earlier had that deposition been taken earlier. This remarkable argument might be a first: a defendant misrepresents the truth to the Court, but argues that Plaintiffs could have learned the truth if only they had deposed a key witness earlier. But Plaintiffs deferred the Schumann deposition precisely because Google was refusing to produce discovery relating to Not Sync signals. *Id.* at ¶ 33. It was not until after the original October 2021 deposition date that certain key documents were produced, which, in turn, enabled Plaintiffs to obtain critical admissions from Schumann, in January 2022, regarding Not Synced signals. *Id*. at ¶ 33.

Google also argues that the April 30, 2021 Protective Order (Dkt. 129) precludes a sanctions motion, *see* Opp. at 5, but it is precisely because Google obtained its protective order through false statements that Google should be sanctioned. The Court can (and did) amend the order when new evidence reveals the original order to have been secured through fraud. This is common sense, and the law of the Ninth Circuit. *See In re Lavender*, 180 F.3d 1114, 1118 (9th Cir. 1991) (a "federal court may amend a[n] … order under its inherent power when the original … order was obtained through fraud on the court").

Finally, Google argues that its misconduct should be excused because (1) Not Synced signals cannot identify the Class because they are not related to users visiting a non-Google website that has installed Google's services; and (2) Not Synced signals might not completely capture each and every absent class member and thus, Google had no duty to disclose the existence of signals that would identify most absent class members. Opp. at 5.[4] But Google cannot withhold information that it has been expressly ordered to produce based on its own judgment as to the value of the data. Indeed, on this and all other misconduct that resulted in destruction of evidence, Google *cannot* deny relevance in order to avoid sanctions.

### 2.  Google Failed to Produce Named Plaintiff Data

Google falsely claims to have "immediately complied" with the April 30, 2021 order by "searching *both* the authenticated and unauthenticated identifiers the Named Plaintiffs provided, and producing the associated data." Opp. at 10.[5] As the court knows, it took multiple Court orders to force Google to comply, including an order to produce historically preserved Named Plaintiff data by *June 30, 2022*. And that is just data already compiled and stored on a litigation platform. Google does not dispute that it failed  to complete a full search for Plaintiff data in the most relevant (i.e., ███) logs and failed to preserve and produce Named Plaintiff data keyed to Biscotti and Zwieback.

### a.  Google Failed to Timely Disclose and Produce Already Searched, Segregated and Preserved Named Plaintiff Data

It is undisputed that following the April 30, 2021 Order, Google did not produce the already, searched, segregated, and preserved Named Plaintiff Data. Rather, it produced Gaia-keyed information from only one data source – ███. In subsequent motion practice, Google claimed that the withheld information "would contain duplicative and cumulative information." Dkt. 233 at 5-6. This statement was false. Plaintiffs now know that Google was withholding Gaia ███ and Gaia ███ information, which contains records with highly relevant data points for this case, including profile and revenue information. Google only finished producing this Gaia ███

---

[4] On the merits, Google's position is incorrect. *See* Dkt, 340-19, Shafiq Rep. ISO Class Cert., § V; Dkt. 484-5, Shafiq Rebuttal Rep. ISO Class Cert., §§ III-V.

[5] Google's "authenticated" (e.g. Gaia) versus "unauthenticated" (e.g. Biscotti and Zwieback) nomenclature is misleading for the reasons set forth in the accompanying declaration of Zubair Shafiq. *See* Joint Rebuttal Decl. Ex. 20, Rebuttal Declaration of Zubair Shafiq ISO Sanctions ("Shafiq Rebuttal") § C.

information on June 30, 2022 because the Court ordered it.

This production (months after fact discovery concluded) confirmed that the ██████ ████████████ and ███████████ logs are among the most important for the Display Ad portion of the case. These logs contain: (1) ███████████████; (2) ███████████████████; (3) ███████████████████; (4) ████████████████████████ (5) ████████████████████████; and (6) ███████. *See* Joint Rebuttal Decl. ¶ 35. This information was not present in the limited ██████ production. It should have been produced at the outset, rather than withheld until three months after the close of fact discovery.

**Gaia ██████** – Google withheld Gaia ██████ information until after the close of fact discovery. *See id.* at ¶ 34. Upon review, it is clear why. ██ of the Gaia ██████ columns contained ███████████████, ██ columns related to ████████, ██ columns with ████████, and ██ columns with ██████████. *See* Shafiq Rebuttal ¶ 31. This eviscerates Google's claim that there is no Gaia-Zwieback connection. *See* Opp. at 9, n.9. Further, that Google continues to dispute this factual issue only illustrates the prejudice – this is a point of contention, discovery which goes to establishing or refuting the position is relevant, and Google had an obligation to produce it.

**Gaia ██████ Logs** – Google's late production of Plaintiff data and its admissions in Opposition demonstrate that Google had the ability to preserve and produce the most important Plaintiff Information at the outset of this case. In the Special Master process, Google searched and produced ██████ of Plaintiff Information from a subset of Gaia ██████ logs. Google's production demonstrated that it is and has always been capable of searching and producing all of the relevant Plaintiff Information. *See* Shafiq Rebuttal ¶¶ 33-35. It simply chose not to do so. In addition, Google's Opposition admits that it created pipelines in July and August 2021 to preserve Gaia-keyed data. *See* Ansorge Decl. ¶ 32. But Google chose to withhold the preserved Gaia ██████ log data, and, in the process, forced the Court and Plaintiffs into a search process that was designed to return null sets.

Had Google identified what it already searched, segregated and preserved, a Special Master would not have been necessary. Instead, Google withheld this data and engaged in tactics intended to

impede and delay disclosure of relevant information. *See* Jun. 30, 2022 Hr'g Tr. 27:7-28:4 (Special Master Brush explaining the difficulties in working with limited information from Google, stating "it's imperative that as we go forward…we have great cooperation on the Google side").

### b.    Google Failed to Preserve Biscotti-Keyed Information

As it must, Google acknowledges that the April 30, 2021 Order required production of Named Plaintiff data, including "device data [e.g. Biscotti- and Zwieback-keyed information] associated with any Plaintiff." Opp. at 10 (*citing* April 30, 2021 Order).[6] Moreover, Google's opposition concedes that it can "quickly produce" this information. Opp. at 11, n.12.[7] But despite the clear Court order, and the efficiency with which it could have been done, Google chose not to timely preserve and produce Named Plaintiffs' Biscotti-keyed information. *See* Joint Decl. ¶¶ 78-83. Google concedes that it did not *begin* to "develop pipelines to preserve" Biscotti-keyed information until July and August 2021. Ansorge Decl. ¶ 32.  By delaying preservation, Google knowingly destroyed most of the relevant Biscotti-keyed data. *See* Joint Decl. ¶ 79 (Biscotti-keyed data has only a nine-month retention period). The destruction of evidence, and prejudice to Plaintiffs, is reflected in the fact that Biscotti-keyed information that has been produced to date consists largely of null sets. *See* Joint Decl. ¶ 83.

### c.    Google Failed to Preserve Zwieback-Keyed Information

Google concedes that it neither produced nor preserved Named Plaintiffs' Zwieback-keyed Information, Opp. at 10, thus destroying the best records of Named Plaintiffs' web browsing when they were not synced. *See* Joint Decl. ¶ 95 (Zwieback-keyed data is destroyed after ███ of

---

[6] Beyond the plain language of the Court's order, Google implicitly acknowledges the importance and relevance of Biscotti-keyed information in its opposition. Specifically, Google asserts that, although it was ostensibly *not required to do so*, it nonetheless "developed pipelines in ████ to preserve data associated with Biscotti IDs[.]" Opp. at 5-9. Given the struggle to procure *any* information from Google throughout this litigation, the purported *voluntary* preservation merely underscores the fact that Google was and is well-aware that Biscotti-keyed data is relevant to the claims in this case and well within the scope of its discovery obligations. *See, generally Apple Inc. v. Samsung Elecs. Co., Ltd.*, 888 F. Supp. 2d 976, 990-991 (N.D. Cal. 2012) (preservation obligation pertains to relevant evidence and exists irrespective of a specific discovery request).

[7] In this respect, Google's "reverse-engineering" arguments, i.e. purported burdens, Opp. at 10-11, are beside the point.  Nevertheless, internal Google documents show that Google could easily have preserved and produced information from all devices associated with the Named Plaintiffs – even without the Plaintiffs providing any device identifiers to Google. *See* Shafiq Rebuttal § C. Google's failures to do so are additional grounds for sanctions.

1    inactivity). In fact, the recent production, on June 30, 2022, includes incontrovertible proof that

2    Google deleted all Zwieback-keyed data for one Named Plaintiff *on the very date that the Court*

3    *ordered it to be produced.* *See* Shafiq Rebuttal ¶ 20. Google's belated production of a small subset

4    of Zwieback ████ data does not cure its misconduct; Google improperly produced most of it in

5    unreadable encoded format (and later making false statements about efforts to decode it, *see* Joint

6    Rebuttal Decl. § II.D), and worse, due to Google's inexplicable delay in searching, the belated

7    production consisted of mostly null sets. *See* Shafiq Rebuttal ¶¶ 17, 19.

8            Google's argument that it "did not preserve Zwieback-keyed data" in response to the Court's

9    April 30, 2021 Order "because Zwieback ID is not used to key the data at issue[,]" (Opp. at 10, n.11)

10   has already been vetted (and rejected) by the Court and the Special Master. The record is clear that

11   the April 30, 2021 Order encompassed Zwieback. Under that order, "device data" expressly includes

12   any data "detailed at the hearing" – which, in turn, expressly included Gaia, Biscotti, *and Zwieback*.

13   *See* Apr. 29, 2021 Hr'g Tr. 38-41. Google did not object to the inclusion of Zwieback as out-of-scope;

14   instead, it acknowledged that Zwieback is an *identifier* that is "tied to the device … like it's a license

15   plate … on a browser." *Id.* at 43:5-12. Irrespective of Google's protestations to the contrary, the Court

16   confirmed that Zwieback is within the scope of production of Named Plaintiff Data in at least *six*

17   other orders. *See* Joint Rebuttal Decl. ¶ 41 *citing* Dkt. 329 (Oct. 21, 2021, order acknowledging that

18   Zwieback transmissions were alleged in Plaintiffs' complaint); Dkt. 378 (Nov. 12, 2021 Order

19   expressly including Zwieback identifiers as relevant to production of Named Plaintiff Data), Joint

20   Rebuttal Decl. Ex. 26 (Jan. 5, 2022 Special Master Order expressly including Zwieback ████ and

21   Zwieback ██ in list of relevant data sources), Joint Rebuttal Decl. Ex. 27 (Feb. 27, 2022 Special

22   Master Order requiring Google to "search[] [] [Zwieback ████] in [its] entirety without regard to

23   product or service or any other subdivision of these data sources"), Dkt. 749 (July 5, 2022 Order

24   directing the parties to discuss preservation of Zwieback-related information), Dkt. 766 (July 15,

25   2022 Preservation Order which included requirement that Google preserve certain Zwieback columns

26   in ████). Google does not get to "resort to self-help … in direct contravention of this Court's

27   order[.]" Dkt. 558, Order to Show Cause.

28           Google's opposition continues to mislead regarding the nature – and thus relevance – of

Zwieback-keyed information. Google claims that (1) Zwieback is not relevant to Google's tracking of Not Synced users on non-Google properties; and, (2) direct Search logs are not relevant to this action. Opp. at 11, n.11. Testimony obtained by Plaintiffs, and documents produced by Google on June 30, 2022, conclusively demonstrate that these misrepresentations are false. *See* Joint Rebuttal Decl. ¶¶ 42, 44.

The reasons for Google's Zwieback misconduct has recently become clear: Google wished to avoid production of Zwieback evidence because (1) a substantial portion of Google's unjust enrichment is derived from Zwieback and disclosures to Google.com from non-Google websites, *see* Joint Rebuttal Decl. ¶ 44, and (2) it destroys Google's defense that Zwieback is not personally identifiable information, *see id.* at ¶ 43.

- On February 25, 2022, Google produced Zwieback ██████ columns information th██ revealed Google had concealed the fact that Zwieback ██████ contains (1) at least columns with ██████; (2) at least ██████ columns with ██████; (3) at least ██████ column with ██████; (4) at least ██████ columns with ██████ and another ██████ with ██████; (5) at least ██████ columns with ██████; and (6) at least ██████ columns related to ██████. *See* Shafiq Rebuttal ¶ 31.

- On May 9, 2022, Plaintiffs received a spreadsheet of Ga██ ██████ columns that reveal██ Google had previously concealed the fact that Gaia ██████ contains (1) at least ██████ columns with ██████; (2) at least ██████ columns relating to ██████; (3) at least ██████ columns with ██████; and (4) at least ██████ columns with ██████. *See* Shafiq Rebuttal ¶ 32.

- ██████ gle admitted th██ ██████ ogle stores ██████ ██████ in Zwieback ██████. *See* Dkt. 713-4 at 8. It attempted to retract its admission regarding ██████ on June 29, 2022. *See* Dkt. 740. In the same June 15, 2022 filing, Google disputed that it comingled Zwieback and Gaia.

- On June 30, 2022, Google produced long concealed Plaintiff data demonstrating how its eponymous search engine uses and profits from the personal information that Chrome sends to Google.com without authorization for not synced users on non-Google websites.

Combined, these late revelations show that (1) Google's arguments about the nature of Zwieback-keyed information were incorrect; and (2) that Google has concealed the full scope of its misconduct and profits therefrom. At this late stage, additional discovery will not cure the prejudice.

### d.    The Special Master Process Should Not Have Been Necessary

Although the Special Master was appointed to resolve "technical" disputes, Google waited nearly a year before it conceded there was *no technical impediment* to production of Named Plaintiff data it had already searched, segregated, and preserved. In addition, Google's limited searches eventually revealed that there was never a technical impediment to searching for Named Plaintiff

data. *See* Shafiq Rebuttal ¶¶ 33-35. As a final abuse, Google ran out the clock after, on May 17, 2022, the Special Master finally ordered Google to conduct a search for Plaintiff data from the beginning of the class period or the maximum retention period for a limited set of logs. *See* Joint Rebuttal Decl. ¶¶ 60-64. Rather than comply, Google falsely claimed it had already done so. It then permitted Plaintiffs, the Court, and the Special Master to believe that the Court's order for production of already searched, segregated and preserved data would provide a complete picture. It did not. Google only searched two months prior to the date of the filing of the Complaint. In short, the Special Master would have never been necessary had Google simply complied with its discovery obligations – and, even after a full year and more than a million dollars, Google never complied.

### 3.    Google Withheld ▮▮▮▮▮ Documents

Google does not dispute that it withheld key ▮▮▮▮▮ documents. The late-produced documents refute Google's primary defense of consent and prevented discovery into the damning evidence contained therein. Google's conduct is willful, in bad faith, and prejudicial to Plaintiffs.

Google's opposition argues ▮▮▮▮▮ is merely an ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ (Opp. at 14) and "is not a study about the adequacy or meaning of the disclosures at issue in this case" (*id.* at 24). But this broad description in no way refutes the relevance of the information Google withheld. There is no dispute that Google concealed key documents that memorialized statements made by Google executives *related to user consent*, whether that be under the broad umbrella of an ▮▮▮▮▮▮▮ ▮▮▮ or otherwise is of no consequence. The concealed documents included damning internal admissions that Google knew it did not have consent. *See, e.g.,* Joint Decl. ¶ 64 (admission that <mark>"[a]t Google, we still seem to believe in that fantasy that users agreed to this[]"</mark>). There can be no dispute that such information was relevant.

Next, Google argues "no harm" because it previously produced documents *generally* discussing ▮▮▮▮▮. Opp. at 15. But this concedes that ▮▮▮▮▮ documents were relevant *from the outset*, and begs the question as to why Google withheld the most critical of these

documents.[8] And, when it became apparent that information was withheld, Google still delayed production for four months, until after the close of fact discovery. *See* Joint Decl. ¶¶ 51-60.[9] Google did so intentionally, knowing that the information undermined its position on consent.

Moreover, the withheld information was not duplicative as suggested by Google. Rather, it contained information material to the claims and defenses in this case. The late produced documents contained interview notes from *key stakeholders* – high level executives with decision-making authority – who *agreed* with Plaintiffs regarding the *lack of user consent*. *See, e.g.,* Joint Decl. ¶¶ 64 (quoting an executive as conceding that Google's ad systems, "as design[ed][,] doesn't really give the user choice"). In this respect, the mere identification of interviewees in prior production, does not (as Google asserts) cure the prejudice to Plaintiffs that resulted from Google withholding the interview notes. That is, identification of interviewees is not the same as *the transcription of actual statements made during the interviews and attributable to specific interviewees*. It is the latter which fully informs a party's decision to depose certain witnesses, not merely their name and position, and it is the withholding of the latter which prejudiced Plaintiffs.

Google's opposition points to specifics documents for which it incorrectly contends that the "nearly" duplicative information was produced earlier. Opp. at 16-18. But, as noted above, this reasoning acknowledges that these late produced documents *should have been produced at the outset.*

---

[8] Google asserts that had Plaintiffs believed the initial production to be insufficient they should have sought a discovery extension or motion to compel. Opp. at 24. But this ignores that Google has a good faith obligation to produce the information *in the first instance*. And Plaintiffs *did* promptly request production of the information when they learned of it in December 2022, ***and had to request it repeatedly over several weeks*** and threaten to move to compel before Google would comply. *See* Joint Decl. ¶¶ 51-60. Further, Google's reasoning on this point highlights its fundamental misunderstanding of discovery obligations. In Google's world, there is no obligation to produce responsive documents unless it is forced to by the knife of a Court order. Not So. *See Synapsis, LLC v. Evergreen Data Sys., Inc.,* 2006 WL 2884413, at *1 (N.D. Cal. Oct. 10, 2006) ("discovery rules are designed to be largely self-executing; the system relies on counsel's integrity as members of the bar and officers of the Court to act with professionalism and reasonable diligence in meeting their obligations under the rules and under any specific court orders that may issue in a case.").

[9] Google's claim that "two of the documents…were inadvertently withheld as privileged and the third was inadvertently marked as not responsive" (Opp. at 18) is disingenuous. Even if that were to be believed, Plaintiffs requested production of all responsive ████████ documents on January 18, 2022, February 4, 2022, March 21, 2022, March 23, 2022, March 25, 2022, March 31, 2022, and April 1, 2022. *See* Joint Decl. ¶¶ 51, 53, 55-60. Google delayed its production until April 6, 2022, which was one month after the close of fact and after the briefing on its motion for summary judgment was completed. *See id.* at ¶¶ 52, 54, 60.

In any event, "*nearly*" duplicative concedes the existence of new and additional information, withheld from Plaintiffs until after the close of fact discovery. A review of the belated production demonstrates the clear prejudice. For example, Google argues GOOG-CABR-05885987 is "identical in virtually all material respects" to a document cited in Plaintiffs' opposition to summary judgment. Opp. at 16 (emphasis omitted). But Google ignores that it argued that the document cited in Plaintiffs' opposition was a draft that Google asserted was non-probative to the issue of consent. *See* Dkt. 475 at 12-14 (arguing draft documents have no probative value). Late produced GOOG-CABR-05885987 is a final version of the draft document. *See* Joint Decl. ¶ 62. Thus, at the same time Google was arguing that the document cited by Plaintiffs was a non-probative draft, Google was improperly withholding the final version that was reviewed and endorsed by stakeholders. Likewise, Google mistakenly argues that belated production of GOOG-CABR-05885871 (a summary of *specific statements* by Google stakeholders related to user consent) is of no consequence, as it had previously produced information regarding the identification of the stakeholders. But the fact that Google deigned to produce only peripheral information – identification of individuals and reference to the interviews – does not negate the prejudice from withholding the *interview notes themselves*. There is no excuse for Google to parse the information in this matter and withhold the substance of the interviews; particularly, as the concessions made during the interviews contradict Google's primary defense of consent.

## B.    EVIDENTIARY AND MONETARY SANCTIONS ARE APPROPRIATE

Where, as here, "'discovery misconduct has deprived the opposing party of key evidence needed to litigate a contested issue, an order prohibiting the disobedient party from contesting that issue…is appropriate.'" *Brown v. Google, LLC*, Dkt. 593-3 at ¶ 34 (*quoting Shanghai Weiyi Int'l Trade Co. v. Focus 2000 Corp.*, 2017 WL 2840279, at * 11 (S.D.N.Y. Jun. 27, 2017)). Such "[p]reclusionary orders ensure that a party will not be able to product from its own failure to comply." *Id.* ¶ 26 *citing U.S. v. Sumitomo*, 617 F.2d 1365, 1369 (9th Cir. 1980). An adverse inference instruction is appropriate when "bad faith or gross negligence has resulted in either the spoliation of evidence or failure to turn over relevant evidence." *Id.* ¶ 42 (*quoting First Fin. Sec., Inc. v. Freedom Equity Grp. LLC*, 2016 WL 5870219, a *3 (N.D. Cal. Oct. 7, 2016)) (quotations omitted). For an adverse inference instruction based on spoliation, the Court need only find that a party acted with "conscious disregard"

of its obligations. *See Apple Inc. v. Samsung Elecs., Co., Ltd.*, 888 F. Supp. 2d at 998 (citations omitted). The offending party is then required to "pay the reasonable expenses … caused by the failure." Fed. R. Civ. P. 37(b)(2)(C). Applying these authorities, Plaintiffs' requested relief is appropriate to address each category of Google's willful and bad faith misconduct.

### 1.    Proposed Sanction for Discovery Misconduct Related to Not Synced Signals is Appropriate

With respect to the relief requested for Google's failure to preserve and produce Not Sync signals, as set forth above, Google's opposition to this relief lacks merit. Moreover, insofar as Google insists that it will not be raising arguments related to Not Synced signals, i.e. the preclusion of arguments related to Not Synced signals will have no practical consequence on Google, this requested relief appears to be uncontested. Further, the preclusion of arguments predicated on data that Google failed to preserve has already been conceded by Google and endorsed by the Court. *See* Jun. 30, 2022 Hr'g Tr. 13:6-14 (with respect to the pending preservation plan, the Court noted "Google w[ill] not use the fact that certain data had not been preserved to oppose any motion. And Google has agreed to that"); Dkt. 766 at 8 (ruling that Google cannot use the absence of any data not subject to the preservation plan to oppose any motion or claims). Google should be precluded from arguing that the absence of signals from which browser state can be determined may not be used as evidence or argument that the proposed Class cannot be ascertained, damages appropriately apportioned, or that the proposed Class definition, which is defined to include only users who are not synced, contains any "uninjured" class members by reason of an inability to identify users who are not synced. *See* Dkt. 670-14, Proposed Order.

### 2.    Proposed Sanctions for Failure to Preserve and Produce Named Plaintiff Information are Appropriate

With respect to the relief requested for Google's failure to preserve and produce Named Plaintiff Information, as set forth above, Google's Opposition lacks merit. Google's misconduct was undeniably designed to impede discovery into the nature and volume of the collected information, thereby prejudicing Plaintiffs' ability to litigate key elements – e.g. reasonable expectations of privacy and highly offensive conduct. *See In re Facebook Internet Tracking*, 956 F.3d 589 (9th Cir. 2020); *In re Google RTB Consumer Privacy Litig.*, 2022 WL 2165489, at *8 (N.D. Cal. Jun. 13,

2022). Google incorrectly argues that its belated production of limited information of purportedly "the exact same *type* of Biscotti- and Zwieback-keyed data that Plaintiffs allege Google spoliated" is sufficient. Opp. at 22 (emphasis added). Not so. Google does not get to dictate how Plaintiffs will try their case and it certainly cannot do so by limiting the evidence that it will deign to provide. Production of *limited subsets of incomplete* information directly undermines the ability to show the actual *nature and volume* of Google's unauthorized tracking, and there is no proof that the production contained "exactly" the same type of data in any event. The requested adverse inferences (*see* Proposed Order) are narrowly tailored to address that harm, and aligns with what the Court has already entered with respect to precluding arguments where Google failed to preserve evidence. *See* Dkt. 766 at 8. Google's contention that any prejudice is mitigated by the fact that "highly offensive" requires a "holistic consideration of factors" is baseless. Google seeks to impede discovery into factors which do not weigh in its favor, while amplifying those of Google's choosing. The jury is entitled to examine all relevant evidence, not just the evidence that Google has cherry-picked.

### 3.    Proposed Sanction for ███████ Misconduct is Appropriate

With respect to the relief requested for Google's misconduct related to ███████ (*see* Proposed Order), as set forth above, Google's opposition to this relief lacks merit. Google's focus on prejudice with respect to its motion for summary judgment is misplaced. The prejudice is not cabined to Google's motion. Google's ███████ misconduct prejudices Plaintiffs through dispositive motions and trial. By its misconduct, Google concealed internal knowledge that it lacked consent. Google's arguments about the meaning of the ███████ documents underscores the relevance and the prejudice. Had Google properly disclosed, Plaintiffs would have had the opportunity to obtain further discovery on these issues. Plaintiffs' requested relief will ensure that Google cannot "impermissibly benefit from evidentiary gaps that it has created" by refusing to cooperate in discovery and timely produce ███████ documents. *See Lanier v. San Joaquin Valley Offs. Ass'n,* 2016 WL 4764669, at *8 (E.D. Cal. Sept. 12, 2016) (precluding introduction of further facts and evidence on response to issues where party failed to comply with discovery deadlines and thwarted opposing party's efforts to understand the basis of evidence and allegations).

#### 4.   Plaintiffs' Other Requested Relief Is Appropriate

Google wrongly asserts that civil contempt is "mentioned nowhere" in Plaintiffs' opening brief, Opp. at 25, but Plaintiffs clearly argued that the facts at issue here "are more egregious than those found in other cases" where Google was found in contempt, Mot. at 25. Further, Google ignores that the Court repeatedly reiterated the directives of its April 30, 2021 Order, most recently coming full circle with the Preservation Order on June 15, 2021 (Dkt. 766). The remedy for non-compliance with a court order is not another court order. It is contempt, and "[i]t is well settled that the court has inherent power to enforce compliance with its lawful orders through contempt." *Shillitani v. U.S.*, 384 U.S. 364, 370 (1966). Google's argument that Plaintiffs' request for monetary sanctions exceeds the scope of appropriate relief ignores the fact that *but for* Google's discovery misconduct, the Special Masters fees in this case would not have been incurred. *Cf. Brown,* Dkt. 593-3.

#### 5.   Google's Opposition Concedes Additional Misconduct on Zwieback

Google's opposition illustrates the prejudice from its failure to produce Zwieback discovery. Despite seven orders confirming the relevance of Zwieback-keyed information, Google steadfastly refused to comply. Now, after almost two-years, Google has finally produced piecemeal and limited subsets of Zwieback-related information. That limited production confirms that Zwieback is tied to ███████████████████████████████████████████████████. Zwieback is personally identifiable information.[10] Google should not, after having destroyed this evidence for Named Plaintiffs and concealed general evidence of its nature, benefit from that misconduct by denying that Zwieback has the qualities described on the face of the late produced documents, i.e. that it is identifi-*able*. For this misconduct, Google should be precluded from disputing that Zwieback is Personally Identifiable Information.

### III.   <u>CONCLUSION</u>

For the reasons stated above and in their opening brief, Plaintiffs request that the Court impose evidentiary and monetary sanctions against Google.

---

[10] Personally Identifi-*able* Information is a subset of Personal Information as defined in Google's contract and California law.

DATED: July 21, 2022                                    Respectfully submitted,

**BLEICHMAR FONTI & AULD LLP**                          **DICELLO LEVITT GUTZLER LLC**

By:    */s/ Lesley E. Weaver*                           By:        */s/ David A. Straite*
Lesley Weaver (Cal. Bar No. 191305)                     David A. Straite (admitted *pro hac vice*)
Angelica M. Ornelas (Cal. Bar No. 285929)               One Grand Central Place
Joshua D. Samra (Cal. Bar No. 313050)                   60 E. 42nd Street, Suite 2400
555 12th Street, Suite 1600                             New York, NY 10165
Oakland, CA 94607                                       Tel.: (646) 993-1000
Tel.: (415) 445-4003                                    *dstraite@dicellolevitt.com*
Fax: (415) 445-4020
*lweaver@bfalaw.com*                                    Amy Keller (admitted *pro hac vice*)
*aornelas@bfalaw.com*                                   Adam Prom (admitted *pro hac vice*)
*jsamra@bfalaw.com*                                     Sharon Cruz (admitted *pro hac vice*)
                                                        Ten North Dearborn St., 6th Floor
**SIMMONS HANLY CONROY LLC**                            Chicago, IL 60602
                                                        Tel.: (312) 214-7900
By:    */s/ Jay Barnes*                                 *akeller@dicellolevitt.com*
Jason 'Jay' Barnes (admitted *pro hac vice*)            *aprom@dicellolevitt.com*
An Truong (admitted *pro hac vice*)                     *scruz@dicellolevitt.com*
Eric Johnson (admitted *pro hac vice*)
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel.: (212) 784-6400
Fax: (212) 213-5949
*jaybarnes@simmonsfirm.com*
*atruong@simmonsfirm.com*
*ejohnson@simmonsfirm.com*

*Counsel for Plaintiffs*

## <u>ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(h)(3)</u>

I, Jay Barnes, attest that concurrence in the filing of this document has been obtained from the other signatories. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 21st day of July, 2022, at Jefferson City, Missouri.


By */s/ Jay Barnes*
Jay Barnes

## CERTIFICATE OF SERVICE

I, Jay Barnes, hereby certify that on July 21, 2022, I electronically filed the foregoing document with the Clerk of the United States District Court for the Northern District of California using the CM/ECF system, which will send electronic notification to all counsel of record. I also caused a copy of the under seal filings to be provided to counsel for Defendant.

*/s/ Jay Barnes*
Jay Barnes