CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1              IN THE UNITED STATES DISTRICT COURT
 2            FOR THE NORTHERN DISTRICT OF CALIFORNIA
 3                       SAN JOSE DIVISION
 4                          ---oOo---
 5    PATRICK CALHOUN, et al.,        )
      on behalf of themselves and     )
 6    all others similarly            )
      situated,                       )
 7                                    )
              Plaintiffs,             )Case No.
 8                                    )5:20-cv-5146-LHK-SVK
      vs.                             )
 9                                    )
      GOOGLE LLC,                     )
10                                    )
              Defendant.              )
11    _____)
12
13                          ---oOo---
14              Videotaped Zoom Deposition of
15                   DR. RUSSELL MANGUM
16           CONFIDENTIAL, ATTORNEYS' EYES ONLY
17              Tuesday, December 7, 2021
18                          ---oOo---
19
20
21
22
23    Katy E. Schmidt
24    RPR, RMR, CRR, CSR 13096
25    Veritext Job No.: 4893187
```

Page 1

```
 1        IN THE UNITED STATES DISTRICT COURT
 2      FOR THE NORTHERN DISTRICT OF CALIFORNIA
 3              SAN JOSE DIVISION
 4                  ---o0o---
 5  PATRICK CALHOUN, et al.,    )
    on behalf of themselves and )
 6  all others similarly        )
    situated,                   )
 7                              )
            Plaintiffs,         )Case No.
 8                              )5:20-cv-5146-LHK-SVK
    vs.                         )
 9                              )
    GOOGLE LLC,                 )
10                              )
            Defendant.          )
11  _____)
12
13      BE IT REMEMBERED that, pursuant to Notice, and
14  on Tuesday, the 7th day of December, 2021, commencing at
15  the hour of 9:04 a.m., thereof, in Irvine, California,
16  before me, KATY E. SCHMIDT, a Certified Shorthand
17  Reporter in and for the County of Yolo, State of
18  California, there virtually personally appeared
19
              DR. RUSSELL MANGUM
20
21  called as a witness herein, who, being by me first duly
22  sworn, was thereupon examined and interrogated as
23  hereinafter set forth.
24
25
                                                    Page 2
```

```
 1  APPEARANCES:
 2  For The Plaintiffs:
 3        (Appeared via Zoom)
 4     BLEICHMAR FONTI & AULD LLP
       BY: LESLEY WEAVER, Esq.
 5     BY: ANGELICA ORNELAS, Esq.
       555 12th Street, Suite 1600
 6     Oakland, California 994607
       415.445.4003
 7     lweaver@bfalaw.com
 8     DICELLO LEVITT GUTZLER
       BY: DAVID, STRAITE, Esq. (pro hac vice)
 9     One Grand Central Place
       60 East 42nd Street, Suite 2400
10     New York, New York 10165
       646.933.1000
11     dstraite@dicellolevitt.com
12
    For The Defendants:
13
          (Appeared via Zoom)
14
       Quinn Emanuel Urquhart & Sullivan LLP
15     BY: VIOLA TRIBECKA, Esq.
       BY: TEUTA FANI, Esq.
16     865 S Figueroa Street, 10th Floor
       Los Angeles, California 90017
17     violatrebicka@quinnemanuel.com
18  Also present:
19     David West, videographer
20     Bartlett, consultant
21
22          ---o0o---
23
24
25
                                                    Page 3
```

```
 1               INDEX OF EXAMINATION
 2                    ---o0o---
 3                                          Page
 4  Examination by Ms. Tribecka                 08
 5  Examination by Ms. Weaver                  307
 6                    ---o0o---
 7
 8         QUESTIONS INSTRUCTED NOT TO ANSWER
 9
10         Page      Line
11          248       13
12
                      ---o0o---
13
14
15
16
17
18
19
20
21
22
23
24
25
                                                    Page 4
```

```
 1               INDEX OF EXHIBITS
 2                    ---o0o---
 3                                          Page
 4  Exhibit 1        Expert Report of Dr. Mangum   06
 5
 6                    ---o0o---
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
                                                    Page 5
```

**Page 234**

1  ongoing; right?                                    03:24
2       I think online data, I mention at the end of  03:24
3  the first sentence.  Also online behavior is mentioned  03:24
4  at the beginning of the first sentence; right?  They're  03:24
5  related.  So behavior, the only way that could be  03:24
6  captured is by data on that behavior so that's what's  03:24
7  been there.                                        03:24
8       But I'm not meaning to distinguish three, you  03:24
9  know, distinct things or three different things.  03:24
10 BY MS. TREBICKA:                                   03:24
11      Q.  And what you are talking about here, the  03:24
12 online data or online behavior or ongoing online   03:24
13 activity, how does that relate to the personal     03:25
14 information that's at issue in this case that you are  03:25
15 attempting to value?                               03:25
16      A.  Well, the section was included because it is  03:25
17 one in which I could look at actual market transactions  03:25
18 where firms are paying for collecting personal     03:25
19 information.  So -- and not in the way that's alleged  03:25
20 by Google with a contract, with alleged breach, but, you  03:25
21 know, up front, "Hey, we would like your permission up  03:25
22 front to get something.  We'll pay you.  Consumers agree  03:25
23 to give that up."                                  03:25
24      So I was -- I thought it was helpful to have  03:25
25 examples in this of actual market measures directly of  03:25

**Page 235**

1  what is at issue here of the information.          03:25
2       I included various types, different things I  03:25
3  mention here.  But that was why I included it; right?  03:25
4       I'm not claiming that these are specifically  03:25
5  programs that relate to the sync or not sync question.  03:25
6  We're not getting it that precise, right, as far as the  03:26
7  Chrome browser.  But I wanted to find something where we  03:26
8  could see that individuals had a chance to agree or not  03:26
9  agree to provide personal information about online  03:26
10 activity.  That's why this section is here.        03:26
11      Q.  Let's turn to paragraph 16 of your report,  03:26
12 which is page 5.                                   03:26
13      A.  Yeah.                                     03:26
14      Q.  You say here:                             03:26
15      "According to plaintiffs, the                  03:26
16      personal information collected by Google      03:26
17      from class members includes but is not        03:26
18      necessarily limited to information on IP      03:26
19      addresses, unique cookie identifiers,         03:26
20      browser identifiers, and other internet       03:26
21      browsing history data."                       03:26
22      Is what you describe here, that's according to  03:26
23 plaintiffs, the same as what you describe here as online  03:26
24 behavior or online data?                           03:26
25      A.  I don't think it's co-existent.  I think it's  03:26

**Page 236**

1  a subset.                                          03:26
2       Q.  Which is a --                             03:27
3       MS. WEAVER:  I'm sorry.  I was on mute there.  03:27
4       Objection.  Vague.                            03:27
5       I apologize.  I want to object to the last    03:27
6  question.                                          03:27
7       Objection.  Vague.  Form.                     03:27
8       Go ahead.                                     03:27
9  BY MS. TREBICKA:                                   03:27
10      Q.  If you could just explain which one is the  03:27
11 subset of which, that would be helpful.            03:27
12      A.  Yeah --                                   03:27
13      MS. WEAVER:  Objection.  Form.                03:27
14      THE WITNESS:  They're not co-existent; right?  03:27
15 There's overlap.  And I believe maybe subset is not the  03:27
16 exact way to phrase it.  But I think that -- depending  03:27
17 on the program I mentioned at the end under section V.B,  03:27
18 I believe not as much is being agreed to be shared in  03:27
19 these programs as what is available from at least what  03:27
20 is captured, allegedly wrongfully captured by Chrome.  03:27
21 BY MS. TREBICKA:                                   03:27
22      Q.  So I'd like to go through each of these   03:27
23 programs -- you're calling them programs.          03:27
24      So, for example, SavvyConnect, Ipsos,         03:27
25 et cetera; right?  When you say programs, that's what  03:27

**Page 237**

1  you're referring to?                               03:28
2       A.  Yes.  Although I wasn't necessarily meaning  03:28
3  computer program, although that's related.  I meant more  03:28
4  of arrangement.                                    03:28
5       Q.  Right.                                    03:28
6       A.  Yeah.                                     03:28
7       Q.  Right.                                    03:28
8       So if -- so now let's switch back to          03:28
9  section V.B, which is page 33 of your report.      03:28
10      A.  Okay.  Back to paragraph 33.              03:28
11      Q.  No.  Page 33.  Let's say paragraph 90.    03:28
12      A.  Okay.  Got it.                            03:28
13      Q.  So you mention -- paragraph 91, actually, you  03:28
14 mention one example of these what you call actual  03:28
15 marketplace examples, which is SavvyConnect.       03:28
16      Do you see that?                              03:28
17      A.  Yes.                                      03:28
18      Q.  And it's -- you call it "a desktop        03:28
19      application launched in 2009 by                03:28
20      SurveySavvy, an online survey platform to    03:28
21      conduct behavioral market research while      03:28
22      users browse the internet."                   03:28
23      Do you see that?                              03:28
24      A.  Yes.                                      03:28
25      Q.  So in your opinion, is the data that Google  03:28

**Page 238**

```
 1  improperly -- is alleged to improperly collect smaller   03:29
 2  in volume than the data collected by -- that users        03:29
 3  agreed to have collected by SavvyConnect or larger?       03:29
 4        MS. WEAVER:  Objection.  Form.  Vague.              03:29
 5        THE WITNESS:  I don't have a technical opinion      03:29
 6  about everything that's collected, but I understand that  03:29
 7  the way that Google, through collecting data, what it's   03:29
 8  able to collect, how it can also look at trends and do    03:29
 9  relationships between one user's data and find            03:29
10  algorithms where they seem similar to other ones, these   03:29
11  information I don't believe is available through          03:29
12  SavvyConnect the same way that information is used.       03:29
13        It is about collecting online behavior, right,      03:29
14  about browsing behavior, but I don't believe it includes  03:29
15  all of what Google has.                                   03:29
16  BY MS. TREBICKA:                                          03:29
17    Q.  What about Ipsos, 9 -- paragraph 92.                03:30
18        You write here:                                     03:30
19        "Google launched a similar study of                 03:30
20     online behavior.  Ipsos, a large global                03:30
21     market research company, conducted a                   03:30
22     consumer research study for Google."                   03:30
23        And you provide here additional information         03:30
24  about how much users were allegedly paid.                 03:30
25        Is your opinion that the data that Google           03:30
```

**Page 239**

```
 1  allegedly improperly collects is co-existent with the     03:30
 2  data that's described here users provided to Ipsos in     03:30
 3  paragraph 92?                                             03:30
 4        MS. WEAVER:  Objection.  Form.                      03:30
 5        THE WITNESS:  Again, without a technical            03:30
 6  opinion about everything that's collected, which I don't  03:30
 7  have, I believe there is overlap.  There's, you know,     03:30
 8  browsing, you know, online behavior I think is uncommon.  03:30
 9  But I don't think the way it was described in this        03:30
10  service, that it also has the ability to do what Google   03:30
11  has in relating data across multiple users.               03:31
12        I believe what Google has got and that              03:31
13  information on the use is larger.                         03:31
14        I will say I don't fully understand -- I think      03:31
15  it's a technical question.  I don't fully understand      03:31
16  what's gained in this program, in the Ipsos program, by   03:31
17  adding the wifi router.  Just technically I don't         03:31
18  know -- I don't know what why that would be necessarily   03:31
19  beneficial and what they gain for that, but they pay      03:31
20  more for that.  And so that's one part I don't know.      03:31
21  BY MS. TREBICKA:                                          03:31
22    Q.  So you haven't arrived at an opinion as to          03:31
23  whether the data that Google is allegedly improperly      03:31
24  collecting is comparable to the data that is at issue     03:31
25  in -- or that is allegedly collected in what you          03:31
```

**Page 240**

```
 1  describe in paragraph 92?                                 03:31
 2        MS. WEAVER:  Objection.  Form.  Misstates the       03:31
 3  record.                                                   03:31
 4        THE WITNESS:  As I stated, I do believe this        03:32
 5  both relates to personal information and both relates to  03:32
 6  information that can be gained why someone is online      03:32
 7  browsing.  That's the nature of this Chrome data          03:32
 8  dispute.  There's that commonality.                       03:32
 9        What I understand about what can happen with        03:32
10  Google Chrome and Google in pulling in information, I     03:32
11  think it's more than what is allowed by these programs.   03:32
12  I did mention with regard to Ipsos.  I don't know about   03:32
13  the wifi router part.  I believe it, but, you know, I'm   03:32
14  treating them as well -- they're essentially the same     03:32
15  for at least the numbers I've come up with because it     03:32
16  relates to this personal information, right, about        03:32
17  online activity, which is the essence of what is also     03:32
18  related to the Chrome dispute here.                       03:32
19  BY MS. TREBICKA:                                          03:32
20    Q.  You say that you understand that the                03:32
21  information at issue in this case is more than what is    03:32
22  collected, for example, by Ipsos, as explained in         03:32
23  paragraph 92.                                             03:32
24        What do you base that understanding on?             03:32
25    A.  Things I've reviewed in this case.  Documents       03:33
```

**Page 241**

```
 1  that I've looked at.  We've got the -- I can't remember   03:33
 2  the term -- the X-Client header I think is something      03:33
 3  involved in the Google data, which I have not seen a      03:33
 4  reference to that type of thing in these other programs.  03:33
 5        But, again, these are getting into technical        03:33
 6  areas that I could be incorrect about.                    03:33
 7        Just from what I've read, I've seen a lot of        03:33
 8  information that seems more than what I could see from    03:33
 9  looking into these programs.  I've treated them as        03:33
10  essentially co-existent for the purposes of showing a     03:33
11  methodology that could be used across all class members   03:33
12  and can show that there is market evidence of value;      03:33
13  right?                                                    03:33
14        Beyond what Google's value is, you know, the        03:33
15  idea of in a marketplace what consumers could get but --  03:33
16  and I don't have technical opinions, but I just know a    03:33
17  lot more about the Google Chrome, which doesn't seem to   03:33
18  be applicable to these instances.                         03:33
19    Q.  You also have two more marketplace examples,        03:33
20  "BrandTotal" in paragraph 93 and "Nielsen" in             03:34
21  paragraph 94.                                             03:34
22        Do you recall that?                                 03:34
23    A.  I do.                                               03:34
24    Q.  Is your understanding that the information          03:34
25  that users supply to BrandTotal and Nielsen -- let me     03:34
```