**BLEICHMAR FONTI & AULD LLP**
Lesley Weaver (Cal. Bar No.191305)
Angelica M. Ornelas (Cal. Bar No. 285929)
Joshua D. Samra (Cal. Bar No. 313050)
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
*lweaver@bfalaw.com*
*aornelas@bfalaw.com*
*jsamra@bfalaw.com*

**SIMMONS HANLY CONROY LLC**
Jason 'Jay' Barnes (admitted *pro hac vice*)
An Truong (admitted *pro hac vice*)
Eric Johnson (admitted *pro hac vice*)
Jenny Paulson (admitted *pro hac vice*)
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel.: (212) 784-6400
Fax: (212) 213-5949
*jaybarnes@simmonsfirm.com*
*atruong@simmonsfirm.com*
*ejohnson@simmonsfirm.com*
*jpaulson@simmonsfirm.com*

*Counsel for Plaintiffs*

**DɪCELLO LEVITT LLC**
David A. Straite (admitted *pro hac vice*)
Corban Rhodes (admitted *pro hac vice*)
485 Lexington Ave., Tenth Floor
New York, NY 10017
Tel.: (646) 933-1000
Fax: (646) 494-9648
*dstraite@dicellolevitt.com*
*crhodes@dicellolevitt.com*

Amy E. Keller (admitted *pro hac vice*)
Adam Prom (admitted *pro hac vice*)
Sharon Cruz (admitted *pro hac vice*)
Ten North Dearborn St., Sixth Floor
Chicago, IL 60602
Tel.: (312) 214-7900
*akeller@dicellolevitt.com*
*aprom@dicellolevitt.com*
*scruz@dicellolevitt.com*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

PATRICK CALHOUN, et al., on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

GOOGLE LLC,

Defendant.

Case No. 4:20-cv-5146-YGR-SVK

**PLAINTIFFS' OPPOSITION TO GOOGLE'S MOTION FOR RELIEF (DKT. NO. 898) FROM THE COURT'S MODIFIED PRESERVATION PLAN DATED JULY 15, 2022 (DKT NO. 766) AS MODIFIED AGAIN ON AUGUST 5, 2022 (DKT NO. 815)**

Referral:  Hon. Susan van Keulen, USMJ
Hearing:  January 10, 2023, 10:00am[1]

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

---

[1] Per Dkt. No. 906, the hearing set for January 10, 2023 is "if needed."

1

## <u>TABLE OF CONTENTS</u>

2

I.    INTRODUCTION ................................................................................................... 1

II.   LEGAL STANDARD .......................................................................................... 3

III.  FACTUAL AND PROCEDURAL BACKGROUND ............................................ 3

IV.   ARGUMENT ....................................................................................................... 4

    A.    Google's Failure to Comply with Civil Local Rule 7-9 Calls the Credibility of the
         Basis for the Motion into Question. ......................................................... 4

         1.   Google's Motion Is a Motion for Reconsideration ...................................... 4

         2.   Google Failed to Obtain Leave of Court ...................................................... 5

         3.   Google Failed to Demonstrate "Reasonable Diligence" .............................. 6

    B.    Granting Google's Motion Would be Unfairly Prejudicial to Plaintiffs .................. 8

    C.    Google's Request for Relief from Preservation ███████████ Should Be
         Denied ...................................................................................................... 11

    D.    Google's Request for Relief from Preservation of Mapping and Linking Tables
         Should Be Denied .................................................................................... 12

         1.   Google's Interpretation Regarding Preservation of Mapping and Linking
             Tables Is Not Consistent with the Court's Preservation Orders ................ 13

         2.   Google Should Not Be Relieved from Preserving ████████████
             Tables ██████████ Tables ........................................................... 16

    E.    Google's Request for ██████████ Cost-Shifting Should Be Rejected .............. 17

V.    CONCLUSION AND RELIEF REQUESTED ................................................... 20

1

**<u>TABLE OF AUTHORITIES</u>**

2

**Page(s)**

3

**Cases**

4

*Alkutkar v. Bumble Inc.*,
    No. 22-cv-00422-PJH, 2022 WL 16973253 (N.D. Cal. Nov. 16, 2022) ................................. 3

5

*Ankele v. Johnson*,
    No. C 04-04811 JW, 2005 WL 1459553 (N.D. Cal. Jun. 21, 2005)........................................ 6

6

7

*Far Out Prods., Inc. v. Oskar*,
    247 F.3d 986 (9th Cir. 2001)................................................................................................... 7

8

9

*Finjan, Inc. v. Cisco Sys. Inc.*,
    No. 17-cv-00072-BLF (SVK), 2020 WL 13180006 (N.D. Cal. Jun. 18, 2020) ..................... 6

10

*Fisher v. Roe*,
    263 F.3d 906 (9th Cir. 2001), *overruled on other grounds by*

11

    *Payton v. Woodford*, 346 F.3d 1204 (9th Cir. 2003) ............................................................ 3

12

13

*Iglesia Ni Cristo v. Cayabyab*,
    No. 18-cv-00561-BLF, 2020 WL 3833281 (N.D. Cal. Jul. 8, 2020)...................................... 6

14

*John B. v. Goetz*,
    879 F. Supp. 2d 787 (M.D. Tenn. 2010) .............................................................................. 19

15

16

*Kona Enters., Inc. v. Estate of Bishop*,
    229 F.3d 877 (9th Cir. 2000).................................................................................................. 3

17

18

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
    571 F.3d 873 (9th Cir. 2009).................................................................................................. 6

19

*Micron Tech., Inc. v. Factory Mut. Ins. Co.*,
    No. 3:18-cv-07689-LB, 2022 WL 3083713 (N.D. Cal. Aug. 3, 2022)................................... 8

20

21

*Moriarty v. Am. Gen. Life Ins. Co.*,
    No. 17-CV-1709-BTM-WVG, 2018 WL 11453817 (S.D. Cal. Dec. 31, 2018)...................... 5

22

*Oliver v. City and Cnty. of San Francisco*,
    No. C 07-2460 JL, 2009 WL 10736489 (N.D. Cal., Mar. 23, 2009) ...................................... 5

23

24

*Oppenheimer Fund, Inc. v. Sanders*,
    437 U.S. 340 (1978)............................................................................................................ 18

25

26

*Price v. Synapse Grp., Inc.*,
    No. 16-CV-1524-BAS (BLM), 2018 WL 9517276 (S.D. Cal. Sept. 12, 2018) .............. 17, 18

27

*Sch. Dist. No. IJ v. AC & S, Inc.*,
    5 F.3d 1255 (9th Cir. 1993).................................................................................................... 6

28

*Taylor v. Costco Wholesale Corp.*,
    No. 3:18-cv-00586-MMD-CBC, 2020 WL 1430540 (D. Nev. Mar. 23, 2020)........................ 5

*Tierno v. Rite Aid Corp.*,
    No. C-05-02520 TEH, 2008 WL 3287035 (N.D. Cal. July 31, 2008)................................... 17

*U.S. ex rel. v. Renown Health*,
    No. 3:12-cv-00295-LRH-VPC, 2015 WL 5056726 (D. Nev. Aug. 25, 2015)........................ 18

*U.S. ex rel. v. TL Peterson, Inc.*,
    No. 4:17-cv-2277-KAW, 2018 WL 11436319 (N.D. Cal. Nov. 1, 2018) ............................... 4

*U.S. v. Rosas-Ramirez*,
    No. 18-CR-00053-LHK-1, 2019 WL 1518162 (N.D. Cal. Apr. 8, 2019)............................... 6

*ViaSat, Inc. v. Space Sys./Loral, Inc.*,
    No. 12-CV-0260-H (WVG), 2013 WL 3467413 (S.D. Cal. July 10, 2013) ............................ 5

*Woods v. Google LLC*,
    No. 5:11-cv-01263-EJD, 2019 WL 1936241 (N.D. Cal. May 1, 2019) ............................ 9, 11

*Zubulake v. UBS Warburg LLC*,
    217 F.R.D. 309 (S.D.N.Y. 2003) ................................................................ 17, 18, 19

**Statutes**

Fed. R. Civ. P. 26 ............................................................................................ 4, 5, 18

Fed. R. Civ. P. 37(c)(1) ............................................................................................ 9

Fed. R. Civ. P. 59(e) ............................................................................................... 4

**Other Authorities**

Local Rule 7-9 ............................................................................................... *passim*

Local Rule 26(a) ..................................................................................................... 8

Local Rule 37(c) ..................................................................................................... 9

1

2

## I.     INTRODUCTION

3

4

On October 26, 2022, Google filed a motion (the "Motion" or "Mot.", Dkt. No. 898) asking

the Court to reconsider the scope of the prior data log preservation orders dated July 15, 2022, Dkt.

5

766, and August 5, 2022, Dkt. 815 (together, the "Preservation Orders"). These Preservation Orders

6

adopted in part and modified in part the earlier April 4, 2022 and May 23, 2022 preservation

7

recommendations from the Special Master (Dkt. Nos. 604 and 665, respectively), and the Court

8

already ruled that it "will not reconsider the scope of the Preservation Orders but is now focused

9

solely on achieving implementation of those orders within fixed time frames with firm deadlines."

10

Dkt. No. 815 at 3.

11

Google has not come close to meeting its burden to demonstrate that reconsideration is

12

appropriate. Procedurally, Google failed to comply with Civil L.R. 7-9, which requires that Google

13

1) obtain leave of Court prior to filing the motion; 2) demonstrate "reasonable diligence" in

14

bringing the motion; and 3) show the emergence of a new fact previously unavailable.[2] While

15

Google introduces nine new fact witnesses, Google makes no showing as to why the untested facts

16

these witnesses advance could not have been provided previously. Substantively, Google's Motion

17

is also deficient. Although Google's motion rests almost entirely on burden, Google has not

18

submitted evidence of the actual costs associated with preservation. Rather, Google only provides

19

illustrations based on retail cloud storage costs that Google charges to individuals and small

20

businesses.  Google fails to tell the Court what its actual costs are, a deficiency plaguing Google's

21

prior submissions as well. Google also fails to provide any details that could inform the Court's

22

evaluation of relevance—even the "linking" or "mapping" tables that Google wants license to

23

delete are nowhere identified, let alone described in sufficient detail. The Motion should be denied.

24

Google's failure to offer Plaintiffs any opportunity to discuss, let alone test, its assertions,

25

are alternative procedural and substantive grounds for denying the Motion.  Google neither tried to

26

confer with Plaintiffs nor offered any opportunity to test the assertions of its declarants.  Thus, if

27

28

---

[2] Reconsideration can also be appropriate following a change in governing law and/or when the movant demonstrates manifest error by the deciding judge, Civil L.R. 7-9(b), but Google did not raise these bases in its Motion.

the Court were to consider Google's motion for reconsideration (in whole in or in part), it would be deeply prejudicial to render any ruling based only on Google's say-so. Not only does Google attempt to put into evidence new declarations from employees never previously identified, but the credibility of the declarants' assertions is further undermined because Google **counsel** also just revised Google's one-year ▮▮▮▮▮▮▮▮ cost illustrations down from ▮▮▮▮▮▮ ▮▮▮▮ during the pendency of this Motion. *See* Google LLC's November 29, 2022 Administrative Motion to Supplement Motion for Relief at 2 ("Supp. Mot.", Dkt. No. 929-3 (sealed); 930 (public redacted)). An even more dramatic reduction was made to the three-year illustrations – counsel now say that the cost would be ▮▮▮▮▮▮▮▮▮▮ claimed just last month. *Id*. Worse, Google's declarants elected not to update the sworn testimony of any of the nine Google employee declarants in Google's prior submissions, which these contradict. Not a single Google declarant explains how such huge cost estimate reductions could have happened just in the past few weeks. The untested, and controverted, declarations by Google do not satisfy the procedural or substantive standards for a motion for reconsideration.  In the event the Court is inclined to consider them, Plaintiffs should be afforded the opportunity to take discovery of them.

The prejudice to Plaintiffs lies not only in Google's repeated re-litigation of these issues. The relief Google seeks in this Motion is substantively dangerous.  First, Google asks the court to relieve it of its obligation to preserve how it has mapped activity of users when they are signed and signed out.  This is a critical piece of Plaintiffs' case:  that Google is surveilling Chrome users even when they are signed out, an issue which this Court has noted is hotly contested, and a practice Plaintiffs are sure a jury will find quite troubling.  If evidence relating to this issue is not preserved, Plaintiffs will be deeply prejudiced at trial. Second, Google now claims that Plaintiffs should bear costs of this preservation, with no opportunity to test Google's contradictory, non-specific and suspect assertions made by nine new declarations never previously identified as having any knowledge of anything related to this case.  Imposing this kind of financial burden on Plaintiffs - particularly when Google had so many opportunities to offer these witnesses during discovery - would penalize Plaintiffs for Google's vexatious discovery tactics. Thus, the relief Google now seeks should be denied.

1

## II.     LEGAL STANDARD

A motion for reconsideration is governed by Civil Local Rule 7-9, which in turn requires leave of Court, see Rule 7-9(a). Leave of Court may only be granted if the movant "specifically show[s] reasonable diligence in bringing the motion" and one or more of the following:

> (1) That at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought. The party also must show that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order; or

> (2) The emergence of new material facts or a change of law occurring after the time of such order; or

> (3) A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order.

Civil L.R. 7-9(b).

Whether or not subject to Civil Local Rule 7-9's leave requirement, reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000); *see also Alkutkar v. Bumble Inc.*, No. 22-cv-00422-PJH, 2022 WL 16973253, at *1 (N.D. Cal. Nov. 16, 2022) (reconsideration should be "granted only in 'highly unusual circumstances'") (quoting *Kona*). Absent a change in controlling law, a District Court may only reconsider a prior order if it was "clearly erroneous.". "To be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must, as one member of this court recently stated during oral argument, strike us as wrong with the force of a five-week old, unrefrigerated dead fish." *Fisher v. Roe*, 263 F.3d 906, 912 (9th Cir. 2001), *overruled on other grounds by Payton v. Woodford*, 346 F.3d 1204 (9th Cir. 2003).

## III.    FACTUAL AND PROCEDURAL BACKGROUND

On April 4, 2022, the Special Master, after months of discovery and briefing, submitted to the Court a Report and Recommendation for a data log preservation plan. Dkt. No. 604. The Court then set a schedule for formal, written objections, due by April 25, 2022, *see* Dkt. No. 606, and

1    held a sealed hearing on the objections on May 4, 2022. Dkt. No. 648. The Court then ordered the

2    Parties back to the Special Master to address certain of the objections and set an additional hearing

3    on June 30, 2022. Dkt. No. 667. The Court requested additional process with the Special Master,

4    Dkt. No. 749, and finally approved a modified preservation plan on July 15, 2022. Dkt. No. 766

5    (sealed); Dkt. No. 778-3 (public redacted). The Court specifically found that the Special Master

6    "appropriately took into account the burden of preserving the relevant data sources." Dkt. 778-3 at

7    5. The Court also found that the preservation plan does impose burdens, but not "undue burdens."

8    *Id*. at 6. The Court also held a hearing on August 4, 2022, giving Google yet another opportunity

9    to address burdens, including testimony from Google employees live at the hearing. On August 5,

10   2022, the Court issued an order on (1) Google's Administrative Motions for Extension/Clarification

11   of Preservation Plan Orders; and (2) *Calhoun* Plaintiffs' Administrative Motion for Clarification of

12   Preservation Plan Order. Dkt. No. 815.

13   **IV.    ARGUMENT**

14       **A.    Google's Failure to Comply with Civil Local Rule 7-9 Calls the Credibility of
15            the Basis for the Motion into Question.**

16           **1.    *Google's Motion Is a Motion for Reconsideration***

17           Despite the fulsome evidentiary record before the Court from multiple rounds of briefing

18   and oral argument, and months after the Court issued its final orders, Google now moves this Court

19   for relief from the July 15 and August 5 Orders by submitting an entirely new, and contradictory,

20   factual record.[3]

21           Google claims to proceed under Fed. R. Civ. P. 26—arguing that preservation of certain

22   ▮▮▮▮▮▮▮▮▮ would not be proportionate to the needs of the case. Mot. at 11–17.[4] This is the exact

23   argument, based on the exact Federal Rule, repeatedly raised by Google in the past. *See, e.g.*,

24   ───────────────

25   [3] In the November 3, 2022 Order setting the initial briefing schedule for this motion, the Court
     permitted Plaintiffs to raise this argument in today's opposition brief. *See* Dkt. No. 906, at 1.

26   [4] Google's failure to correctly identify the governing rules that applies to its motion for
     reconsideration does not change that this is the standard that applies. *See, e.g., U.S. ex rel. v. TL*
27   *Peterson, Inc.*, No. 4:17-cv-2277-KAW, 2018 WL 11436319, at *2 (N.D. Cal. Nov. 1, 2018) (Court
     applied Civil Local Rule 7-9, disregarding movant's assertion that it was proceeding under Fed. R.
28   Civ. P. 59(e)).

Google's Objections to Special Master Report and Recommendations, Dkt. No. 695 (Objection No. 1). The Court then repeatedly referenced the proportionality provisions of Rule 26 in its July 15, 2022 Preservation Order. *See, e.g.*, Dkt. No. 766 at 2, 5, 6; *see also id*. at 7 (overruling Google's objection as to proportionality). Google's motion is therefore plainly a motion for reconsideration.

The recent decision in *Moriarty v. Am. Gen. Life Ins. Co.*, No. 17-CV-1709-BTM-WVG, 2018 WL 11453817 (S.D. Cal. Dec. 31, 2018) is instructive. Plaintiffs moved to compel testimony relating to specific deposition topics. The Court allowed briefing, held a hearing for more than an hour and allowed objections, ultimately ruling that the requested topics "were relevant and proportional to the needs of the case[,] and that Defendant had failed to demonstrate the deposition on these topics was unduly burdensome." *Id.* \*1, 7. Defendant thereafter filed a motion for a protective order under Rule 26 and argued that the deposition topics were "duplicative, cumulative, and burdensome." *Id.* at \*7. The Court found that "that the ***present Motion is a thinly veiled motion for reconsideration***" because the Court already addressed Defendant's arguments on these topics. *Id.* at \*1, 7 (emphasis added). Further, "the Court already addressed and rejected the ***exact*** arguments Defendant now offers and Defendant has not provided sufficient reason for the Court to reconsider its previous order," including failing to offer an intervening change of controlling law, new evidence, clear error, or manifest injustice." *Id.* at \*7 (emphasis added); *see also Taylor v. Costco Wholesale Corp.*, No. 3:18-cv-00586-MMD-CBC, 2020 WL 1430540 (D. Nev. Mar. 23, 2020) (construing motion for relief as a motion for reconsideration); *ViaSat, Inc. v. Space Sys./Loral, Inc.*, No. 12-CV-0260-H (WVG), 2013 WL 3467413 (S.D. Cal. July 10, 2013) ("Defendants' argument is a barely veiled motion for reconsideration.").

## 2.   *Google Failed to Obtain Leave of Court*

The Northern District Local Rules prohibit any party from noticing "a motion for reconsideration without first obtaining leave of court to file the motion." Civil L.R. 7-9. "The Local Rules do not permit any deviation from this requirement." *Oliver v. City and Cnty. of San Francisco*, No. C 07-2460 JL, 2009 WL 10736489, at \*1 (N.D. Cal., Mar. 23, 2009). If a movant fails to obtain leave of Court prior to filing, denial of the motion is mandatory. *Id*. at \*2 (citing *Liao v. Quidachay*, No. C 05-1888 CW, 2007 WL 196672, at \*2 (N.D. Cal. Jan. 24, 2007)) ("a motion

for reconsideration which fails to satisfy the requirements of Local Rule 7-9 must be denied");
*Ankele v. Johnson*, No. C 04-04811 JW, 2005 WL 1459553, at *2 (N.D. Cal. Jun. 21, 2005) (failure to obtain leave of court before filing a motion to reconsider "alone warrants dismissal" of the motion); *accord, U.S. v. Rosas-Ramirez*, No. 18-CR-00053-LHK-1, 2019 WL 1518162, at *1–2 (N.D. Cal. Apr. 8, 2019) (applying Civil Rules). The reason for this Rule is to spare the Court from repeated attacks on matters already adjudicated, which waste the Court's valuable resources.  Here, Google engages in precisely the same tactics that give rise to the Rule.

### 3.    *Google Failed to Demonstrate "Reasonable Diligence"*

When seeking reconsideration of a prior interlocutory order based on new evidence, Civil Local Rule 7-9 provides:

> The moving party must specifically show reasonable diligence in bringing the motion and one of the following: . . . (1) That at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought. The party also must show that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order.

Civil L.R. 7-9(b)(1).

"A motion for reconsideration may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co*., 571 F.3d 873, 880 (9th Cir. 2009) (internal citation omitted); *accord, Finjan, Inc. v. Cisco Sys. Inc*., No. 17-cv-00072-BLF (SVK), 2020 WL 13180006, at *1 (N.D. Cal. Jun. 18, 2020). New facts presented in a motion for reconsideration "do not provide a basis for reconsideration" if they "could have been presented to the Court prior to" the interlocutory order. *Iglesia Ni Cristo v. Cayabyab*, No. 18-cv-00561-BLF, 2020 WL 3833281, at *2 (N.D. Cal. Jul. 8, 2020); *see also Sch. Dist. No. IJ v. AC & S, Inc*., 5 F.3d 1255, 1263 (9th Cir. 1993) ("The overwhelming weight of authority is that failure to file documents in an original motion or opposition does not turn the late filed documents into 'newly discovered evidence.'"). Furthermore, the movant has the burden to explain why it was unable to "discover[] the evidence

sooner through the exercise of reasonable diligence." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 998 (9th Cir. 2001).

Here, the Preservation Orders did not come out of the blue. They were crafted with months of input from both sides under the supervision of the Special Master. *See* Dkt. No. 815 at 2 ("The process of developing a preservation plan . . . began in earnest in early January 2022"). After the Special Master recommended the first preservation plan on April 4, 2022, each side submitted objections, and the Court held a hearing on May 3, 2022. The Special Master then modified his recommendation on May 23, 2022, with input from both sides. As the Court found on July 15, 2022, through this process Google established "the extraordinary burden to Google associated with preserving, in their entirety, the wide range of data sources that have been identified in these cases." Dkt. No. 766 at 5. Nevertheless, the Court found that the current plan "strikes an appropriate and necessary balance between the need to preserve relevant data in an immense universe of data, without imposing undue burden with careful consideration for the practical challenges to both Parties to manage vast data sets." *Id*. at 6. Google specifically made arguments regarding undue burdens associated with the exact data sources at issue in today's Motion, and the Court accepted some and rejected some. *Id*. at 8; *see also id*. at 9–10 (specifically addressing burdens associated with ███████████████). Google had the opportunity to present the "new facts" prior to the issuance of the July 15, 2022 Order, and failed to do so.

On July 27, 2022, Google filed an administrative motion to extend the preservation compliance deadline, originally set for July 30, 2022. The basis for the motion was the "extraordinary engineering efforts" required to comply. Order of August 5, 2022, Dkt. No. 815 at 2. The Court ordered Google to provide additional factual support for the motion, which Google did on July 29, 2022. The Court then set a Zoom hearing for August 4, 2022, and even permitted Google to bring "several Google representatives with personal knowledge of the data preservation issues to the hearing." Dkt. No. 815 at 2–3.

Following the hearing, the Court issued a ruling on Google's motion for extension of time to comply with the July 15, 2022 preservation order. The Court extended the deadline to October 28, 2022, expressly ruling that "*the Court will not reconsider the scope of the Preservation Orders*

*but is now focused solely on achieving implementation of those orders within fixed time frames with firm deadlines*." Dkt. No. 815 at 3 (emphasis added). The Court further expressly held that the order granting the extension was based on Google's express representation that the extended deadline would be met, on pain of sanctions:

> the Court finds the extensions are acceptable in light of Google's repeated representations on the record that the vast majority of data that would have been preserved if Google had complied with the original July 30, 2022 implementation deadline will be preserved if implementation is completed by the new deadlines. A further significant factor in the Court granting certain extensions is Google's representation that the proposed deadlines, while challenging, will be met. *The Court will not entertain further requests for extensions. Missed deadlines will be met with sanctions pursuant to this Court's authority.*

*Id.* (emphasis added).

Google provides no reason why the evidence in support of the Motion could not have been provided two years ago when it first sought its data log protective order; or during fact discovery; or during the Special Master-directed process specifically focused on the preservation dispute; or at the August 4, 2022 hearing when the Court permitted Google to present live witnesses on this very topic.

This Court's recent ruling in *Micron Tech., Inc. v. Factory Mut. Ins. Co.*, No. 3:18-cv-07689-LB, 2022 WL 3083713, at *4 (N.D. Cal. Aug. 3, 2022) applies. There, the defendant presented arguments regarding the burdens associated with a discovery order, which the Court rejected. In the motion for reconsideration, the defendant included updated facts detailing the resources and attorney hours needed to comply. *Id.* The Court denied the motion, noting that the updated facts "are not new or different facts relative to what the court previously considered. And—as the court noted in its order—burdens that resulted from [defendant's] own record-keeping practices cannot be used to shield it from discovery." *Id.*

### B. Granting Google's Motion Would be Unfairly Prejudicial to Plaintiffs

Google's belated evidence is improper and prejudicial. "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the

1  failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1) (failure to disclose or

2  supplement).

3         Early in this case Plaintiffs served RFPs asking Google to produce documents sufficient to

4  identify all witnesses likely to have information relevant to this action. In response, on January 20,

5  2021, Google provided a chart ████████████████████████████████████████████████████

6  ██████████████████████████████████████████████████████████████████████████████████

7  ███████████████████████████████████████ ' *See* Joint Decl., ¶¶ 3-4; Ex. A thereto

8  (GOOG-CALH-00024734); and Ex. B thereto (transmittal letter). This chart was the starting point

9  for the parties' negotiations over who would be formal ESI custodians, and eventually who would

10 be deposed. But Google's new evidence comes from nine Google employees, none of whom were

11 ESI custodians, none were deposed, and seven were not even identified by Google as relevant

12 employees ████████████████████████████ Joint Decl. ¶ 5. Google also failed to update the

13 chart at any time, and most of the declarants are not the same ones that Google used originally

14 during the Special Master process. Plaintiffs are thus seeing some of these names for the very first

15 time. Rule 37(c), therefore, bars Google's from presenting these new declarants to support a motion

16 for reconsideration. *Woods v. Google LLC*, No. 5:11-cv-01263-EJD, 2019 WL 1936241, at *2–3

17 (N.D. Cal. May 1, 2019) (new evidence in support of motion for reconsideration deemed

18 "inadmissible" where late production violated Rule 37(c)). And because these new declarants are

19 not ESI custodians, there are almost no documents authored by them in the documents produced

20 by Google; Plaintiffs are in the dark about their roles and bases of knowledge. Specifically:

| Declarant | Previously Identified as a Relevant Employee? | ESI custodian? | Emails in Production Authored by Declarant |
|---|---|---|---|
| Lawrence Greenfield | | █ | █ |
| Joshua Halstead | | | █ |
| Jifei Gao | | | █ |
| Benjamin Kornacki | | | █ |
| Julian Kranz | | | █ |
| Srilakshmi Pothana | | | █ |
| Patrick Quaid | | | █ |
| Daryl Seah | | | █ |
| Danny Talavera | | | █ |

1    *See* Joint Decl. ¶ 6.

2         As this data shows, Plaintiffs have no insight into most of these declarants, including: who

3    communicates with whom, and about which topics, and on what dates—all of which are useful

4    when evaluating the declarations. For example, because declarant █████████████████████

5    ███████████████████████████████████████████████████████████████████████████████████

6    ███████████████████████████████████████████████████████████████████████████████████

7    (Joint Decl. ¶ 7), and we also know what key words are most likely to appear in his emails (for Mr.

8    Seah, these include "████████████████████████"), and we even know when the key words

9    are different in emails sent off-hours (for Mr. Seah, these include specifically █████████████).

10   *Id.* But for seven of the declarants, Plaintiffs are denied any corresponding data and would need at

11   least limited document discovery.

12        Plaintiffs are also concerned that the declarations raise more questions than they answer—

13   and there is no better proof than Google's last-minute admission that ███████████ illustrations

14   were off by ██████████████. Specifically, Google told this Court in the Motion that preservation

15   of the ██████████████████████████████████████████████████████████████ Motion

16   at 8. These illustrations were based on the declaration of Mr. Greenfield, which in turn relied on

17   the declaration of Mr. Quaid. *Id.* A few weeks later, Google counsel filed a supplement saying that

18   Google is able █████████████████████████████████████████████████████████████████

19   ███████████████████████████████████████████████████████████████████████████████████

20   ██████████████████████████████████████████ *Cf.* Mot. at 8 with Supp. Motion at

21   2. Google does not fully explain how or why this happened, and also elected not to file updated

22   declarations for Mr. Quaid and Mr. Greenfield.

23        The contents of these declarations further call their credibility into question.  For example,

24   Mr. Quaid says that ███████████████████████████████ *see* Quaid Decl. ¶ 9, but no

25   details are provided ██████████████████████████████████. There are also unexplained

26   inconsistencies in the declarations. For example, Mr. Quaid reports that ████████████████████

27   █████████████████████████████████ *see* Quaid Decl. ¶ 10, but he does not use a

28   comparable "████████████████████████████████—figures which declarant

1   Lawrence Greenfield uses in his sole basis for the cost estimates that appear in the Motion. *See*

2   Greenfield Decl. ¶¶ 14–15. Plaintiffs have a right to know why Google ████████████████████

3   ████████████████████████████████████████ If the Court were to consider the substance of

4   Google's late-raised arguments regarding proportionality and relevance, Plaintiffs must have an

5   opportunity to conduct discovery and to depose some or all of the declarants. "To allow

6   consideration of the [new declarations] now would require (a) reopening discovery . . . (b)

7   permitting additional rounds of motion practice, and (c) having the court revisit issues that have

8   already been fully briefed and decided after years of litigation. The prejudice to [opponent] if the

9   court were to allow these further proceedings is manifest." *Woods*, 2019 WL 1936241, at *3.

10       **C.**     **Google's Request for Relief from Preservation ████████████ Should Be**
         **Denied**

11

12       Leaving aside the procedural deficiencies noted above and leaving aside that the Court

13   already held that it will not reconsider the scope of the Preservation Orders, Google's request to stop

14   preserving ████████████ should be rejected on its face. Google "estimates" that preservation of

15   ████████████████████████████████████████████████████████████████████████████

16   by the end of three years. *See* Supp. Mot. at 2 (revising the estimates in Mot. at 8). But Google

17   presents no *evidence* to support these estimates—instead, Google provides *illustrations*. The only

18   basis for the cost estimates comes from the declaration of Lawrence Greenfield (an employee never

19   before revealed to Plaintiffs) who shrugs off the failure by saying, "[e]stimating the cost of storing

20   a given amount of data for a given length of time by attempting to calculate all of those associated

21   costs would be a highly complex exercise." Greenfield Decl. ¶ 5. He therefore instead uses the rates

22   that Google charges to its Google Cloud Storage retail customers including businesses and

23   individuals. *Id.* ¶ 6. This sleight of hand is not revealed in the Motion itself, which simply asserts

24   that the "cost" would ████████████ (Mot. at 1), ████████████ (Mot. at 8), and a bare cite to the

25   Greenfield Declaration. This is remarkable because Google provides detailed footnotes explaining

26   the math for the *data volume* estimates (*see, e.g.,* Mot. at 6, n. 4, 5 and 6), but the *cost* estimate is

27   not similarly explained. Google counsel then admit that the one-year estimate should actually be

28   reduced ████████████ (and the three-year estimate should ████████████), Supp. Mot. at

2, but without fully explaining why, and without filing any corrected declarations. *See* Supp. Mot. at 1 n.1 (offering to submit an updated factual declaration at the Court's request – denying Plaintiffs the ability to consider them in this brief).

Google's argument regarding the relevance or necessity of ███████████ should also be rejected—because it already has been rejected, both by the Special Master and the Court, many times before. Between May 4 and 17, 2022, "the Special Master held a series of conferences and received additional submissions from the Calhoun Parties, culminating in" the Special Master's revised recommended preservation plan. Dkt. No. 766 at 3. The Court stated that a "key feature" of the modifications was the addition of "full preservation" of 14 data sources (26 would remain as sampled, and 25 were removed entirely). *Id.* As the Court noted, the "[p]arties had an opportunity to object to the modifications . . . and to respond to their opponents' objections." *Id.* The Court then further modified the order with respect to the 14 data sources (███████████) in light of evidence and argument submitted by both sides. The Court then issued *de novo* findings and specifically found these data sources to be "relevant." *Id.* at 5; *see also id.* at 6 ("the Court finds that the preservation plan . . . strikes an appropriate and necessary balance between the need to preserve relevant data in an immense universe of data, without imposing undue burden and with careful consideration for the practical challenges to both Parties to manage vast sets of data.") The Special Master, the Parties, their experts and declarants have all trod this path many times before. The Court ruled. Google's recycled arguments regarding relevance and burdens should again be rejected.

### D.     Google's Request for Relief from Preservation of Mapping and Linking Tables Should Be Denied

This is Google's third attempt at reconsideration of an order requiring preservation of mapping and linking tables , and, as with all prior attempts, it should be rejected.[5]

---

[5] Google first sought relief from this portion of the Preservation Orders in the Objections briefing to the Special Master's Report and Recommendation re Calhoun Modified Preservation Plan. *See* Dkt. 713-3 (Sealed); 714 (Public Version), Google's Resp. to Pls' Objections to Special Master's Report and Recommendation re Calhoun Modified Preservation Plan at 5 (arguing that it should only be required to ███████████). The request was denied. *See* Dkt. 766. Thereafter, Google again sought relief from preservation of mapping and linking tables, seeking leave to ███████████████████████. *See* Dkt. 786-3 (Sealed), Google's Admin. Mot. Updating the Court on its Preservation Efforts and Seeking Relief at 2). This request was again denied. Dkt. 815.

1

2

          **1.**    ***Google's Interpretation Regarding Preservation of Mapping and Linking Tables Is Not Consistent with the Court's Preservation Orders***

3

      On July 15, 2022, the Court ordered that "[m]apping tables are to be preserved in their

4

entirety." Dkt. 766 at 8. Thereafter, Google moved to, in effect, clarify and limit this order, reporting

5

to the Court that it was only preserving one mapping table, ██████████████████. *See*

6

Dkt. 786-3 (Sealed) at 2. On August 5, 2022, the Court denied Google's request, stating: "Google's

7

submission indicates that it is preserving only a single mapping table, despite this Court having

8

previously ruled on objections specifically directed to mapping tables. [*See* Dkt. 766]. The Court's

9

Preservation Orders require Google to preserve **all** mapping and linking tables. Google's request to

10

limit or clarify this aspect of the Preservation Order is denied." Dkt. 815 (Sealed) at 13 (emphasis

11

in original).

12

      Critically, prior to denying Google's request, the Court held a hearing on August 4, 2022,

13

during which Google was given ample opportunity to plead its case. *See* Aug. 4, 2022 Hr'g Tr. at

14

48:5–52:2, 90:5–91:12, 100:14–107:15. At the conclusion of that hearing, the Court clarified that

15

its order applied to all mapping tables that "map[] the IDs" and that "relate to the logs and fields

16

that [][] the parties have worked with so intimately over these last 18 months." Aug. 4, 2022 Hr'g

17

Tr. at 104:2–22. The Court further engaged in the following colloquy with Plaintiffs' counsel:

18

19

| The Court: | I think – the order is clear. It's not limited to just one table. The mapping tables – if you would need a mapping table to work with any of the data that is being exchanged in this case, that table has to be preserved. … |
|---|---|

20

21

22

23

| Mr. Barnes: | I'm concerned that once you reiterate that you are not allowing Google to decide what is relevant with that last comment because I know you didn't intend to, but I know the way these things go. They parse every comment you make and say, "Oh, she said 'all,' but then at the end she said the data in this case. I'm sorry to jump in, Your Honor, but. |
|---|---|

24

| The Court: | Mr. Barnes, I think my order again is perfectly clear. |
|---|---|

25

| Mr. Barnes: | Thank you. I do too. |
|---|---|

26

| The Court: | If it doesn't relate to the data in this case, it is never going to come up. If it relates to the data in this case, it does. |
|---|---|

27

28

| | | |
|---|---|---|
| 1 | Mr. Barnes: | Well, Your Honor, on that point, Mr. Ansorge just gave you an example of things they are claiming does not relate to the data in this case that absolutely does relate to the data in this case. The issue. |
| 2 | | |
| 3 | The Court: | All right, Mr. Barnes. That's fine. That's fine. It's all mapping tables. Okay? |
| 4 | Mr. Barnes: | Thank you. |
| 5 | The Court: | I can't make it any more clear. The order is written. |

Aug. 4, 2022 Hr'g Tr. at 106:13–107:17.

Notwithstanding this clarification, Google now asserts that it "does not understand the phrase 'all mapping and linking tables' to refer to *any* table that provides a map or link between any type of value, including *non-identifier* values, and any other value stored in Google's systems." Mot. at 20:5–7 (emphasis in original). Rather, Google contends that the Court's order calls for preservation of only mapping and linking tables that relate to the subset of logs that the Court has ordered be preserved. But Google's interpretation directly contradicts the Court's ruling. By limiting preservation to only the subset of preserved logs Google is excluding mapping and linking tables that "map[] the IDs" and "relate to the logs *and fields*[.]" Aug. 4, 2022 Hr'g Tr. 104:9–14 (emphasis added).

Google has, in effect, unilaterally amended the Court's preservation order. It has decided that "all" means "some," ignored the Court's limiters that preserved tables be mapped to IDs and relate to not just logs but also fields, and has done so without specifying what is being excluded from preservation, *e.g.,* which mapping tables Google has failed to preserve.[6] Google rationalizes its decision by arguing that the only key to relevance is that preserved mapping tables must be tethered to the preserved logs; otherwise, in Google's view, the preservation order would be too attenuated and thus neither relevant nor proportional. *See* Mot. at 19–20. But this scope argument has already been briefed, argued, and decided (repeatedly) by the Court. *See, e.g.*, Dkt. 766 (Sealed) at 9 (holding that "mapping tables are to be preserved in their entirety"); Dkt. 815 (Sealed) at 13 (rejecting Google's request to limit or clarify its duty to preserve mapping tables to only ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ and reiterating that duty to preseve extended to "**all** mapping and linking tables")

---

[6] Google's motion does not specify the mappings it will preserve, nor has Google informed Plaintiffs of them either.

1   (emphasis in original); Aug. 4, 2022 Hr'g Tr. at 51:21–24 (noting that "the time to argue about the

2   scope of mapping tables is at the objection phase. I read the parties' papers. I heard the argument.

3   I sustained [Plaintiffs'] objection. The order stands."); Aug. 4, 2022 Hr'g Tr. at 105:18–106:2

4   (noting that the "ship has sailed" on Google's request for further limitations on preservation of

5   mapping tables).[7] And, during the August 4, 2022 hearing, the Court aptly addressed relevance and

6   proportionality by expressly stating that the mapping and linking tables at issue must relate to logs

7   *and fields*, and they must *map the identifiers* to each other, regardless of the specific log or data

8   source where it is stored. *See* Aug. 4, 2022 Hr'g Tr. at 100:14-107:14. Google's current attempt is

9   nothing more than another iteration of the same scope arguments and it should be rejected.

10          Moreover, Google's self-serving interpretation of the Court's order is highly prejudicial to

11  Plaintiffs. For example, Google's interpretation of the Court's order would exclude mapping tables

12  from key data sets that have been at issue throughout this case. By way of example, Google's ability

13  to tie signed in data to signed out data is a critical element of Plaintiffs' arguments that Google is

14  surveillance class members across the web. But Google is proposing to exclude:

15          • mapping tables from ████████████████████████████████████████

16            ██████████████████████████ );

17          • mapping tables from ████████████████████████████████████████

18            ██████████████████ (a data set that is specifically alleged in Plaintiff's
              complaint, *see, e.g.,* Dkt. 3-3 ¶¶ 155–167, 170–172, 176–178, 182–192);
              and

19          • mapping tables ████████████████████████████████████████████

20            ██████████████████████████████████████████████ .

21
    ───────────────────
22  [7] Google also argues that Plaintiffs have not identified specific mapping tables. Mot. at 4. But the
    Court has already rejected this argument:

23
            That's part of the frustration is you're asking Plaintiffs to – 'Well, you tell us what
24          – you tell us what in our trove of data is relevant' and that's not an appropriate
            approach, Mr. Ansorge. We have had this conversation. How are they to know?
25          They don't have insight into – to be able to identify the relevant mapping tables
            particularly where they asked and there was not an answer given. … The time to
26          argue about the scope of mapping tables is at the objection papers. I read the parties'
            papers. I heard the argument. I sustained the objection. The order stands.

27
    Aug. 4, 2022 Hr'g Tr. at 51:6–24.
28

As to the last bullet point, this dispute has been previously framed as a distinction between authenticated verses unauthenticated identifiers. This Court previously noted that the "issue of whether these [authenticated and unauthenticated] identifiers can be linked to a specific user, and hence qualify as authenticated data, is, and has been throughout this case, hotly disputed by the parties." Dkt. 862-1 (Sealed), Order on Plaintiffs' Motion for Sacntions for Discovery Misconduct, Findings of Fact at 22, ¶ 84. Thus, Google's attempt to exclude "non-identifiers" from the scope of mapping tables appears to be another run as this authenticated versus unauthenticated dispute[8]— one which Google should not be permitted to relitigate under the guise of new evidence and reconsideration.

Compounding the prejudice is the fact that Google provides no transparency into what it is preserving as opposed to what it has deemed irrelevant. As highlighted in past discovery disputes, and discussed further below, Google continues to engage in a practice of providing piecemeal information that only advances its own positions wihtout affording any real insight into what Google is doing. These tactics have caused unnecessary delays, time-consuming briefing, and prolonged discovery. Absent transparency, it is impossible to evaluate and credit any claims made in Google's current motion.

Google's attempt to narrow the scope of the Court's preservation order as to mapping and linking tables should be rejected.

2. ***Google Should Not Be Relieved from Preserving*** ▮▮▮▮  ***Tables*** ▮▮▮▮ ***Tables***

Google's motion seeks relief from preservation of ▮▮▮▮ Tables and ▮▮ Analytics Tables on the basis that these tables are irrelevant and preservation overly burdensome. *See* Mot. at § B.1. As discussed above, issues of relevance, portionality and burdens have already been addessed and resolved during prior hearings.

---

[8] Discovery from Google reveals that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1       Moreover, Google's motion creates more confusion than answers. With respect to its

2  request for relief from preservation of ████████████ tables, Google argues that preservation is

3  not warranted because "the links contained in those tables are derived from *other* tables that Google

4  is separately preserving." Mot. at 17 *citing* Seah Decl. ¶ 5. But the Seah declaration provides no

5  specificity as to what identifiers are linked in the ████████ tables or which underlying

6  tables (which Google claims it is separately preserving) are sources of these ████████

7  tables. Without this information, Plaintiffs are unable to substantiate Google's claim that the

8  information is derivative or otherwise unnecessary.

9       With respect to Google's request for relief from preservation of ██ Analytics tables,

10  Plaintiffs dispute Google's claim that these tables would not be relevant. Google's relevancy

11  argument is based on the claim that the ██ Analytics tables do not map Gaia IDs. *See* Mot. at 18

12  *citing* Pothana Decl. ¶ 5. But the Pothana declaration acknowledges that the ██ Analytics tables

13  ████████████████████████████████████████████████████

14  ███ . *See* Pothana Decl. ¶ 5. These mapping tables are relevant for two reasons: (1)

15  ████████████████████████████████████████████████████

16  (*see* Dkt. 339-20 (Sealed), Shafiq Report ISO Class Cert., § VI); and (2)

17  ████████████████ (*e.g.,* through ██████ logs[9] that

18  ████████████████████ ) for the identification of the Signed-in-But-Not-Consented-For-Sync subset

19  of Plaintiffs' proposed class (*see id.*).

20      **E.**    **Google's Request for** ████████ **Cost-Shifting Should Be Rejected**

21       In the Ninth Circuit, courts follow the seven-factor test imported from *Zubulake v. UBS*

22  *Warburg LLC*, 217 F.R.D. 309 (S.D.N.Y. 2003) when considering a request for cost-shifting. *See*

23  *Price v. Synapse Grp., Inc.*, No. 16-CV-1524-BAS (BLM), 2018 WL 9517276, at *10 (S.D. Cal.

24  Sept. 12, 2018) ("When considering cost shifting, courts in this circuit rely on the

25  seminal *Zubulake* factors."); *see also Tierno v. Rite Aid Corp.*, No. C-05-02520 TEH, 2008 WL

26

27

28  [9] Sawmill logs are being preserved and decryption keys for encrypted Biscotti IDs in there are also being preserved.

3287035, at *4 (N.D. Cal. July 31, 2008) (characterizing the *Zubulake* factors as a "gold standard" in ESI discovery disputes).

Google does not address nor even mention the *Zubulake* factors in its Motion. But under a *Zubulake* analysis, the starting place is "the presumption is that the responding party must bear the expense of complying with discovery requests." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 358 (1978); *see also Price*, 2018 WL 9517276, at *10 ("[t]he responding party generally bears the expense of complying with discovery requests."). In *Zubulake*, "Judge Scheindlin remarked that '[a]ny principled approach to electronic evidence must respect this presumption.'" *U.S. ex rel. v. Renown Health*, No. 3:12-cv-00295-LRH-VPC, 2015 WL 5056726, at *9 (D. Nev. Aug. 25, 2015) (quoting *Zubulake,* 217 F.R.D. at 317–18). Further, to overcome the presumption, *Zubulake* says that the movant must demonstrate that the ESI is not reasonable accessible, which Google has not done: "cost-shifting is appropriate *only* when the ESI is not reasonably accessible" due to undue burden or undue cost. *U.S. ex rel.*, 2015 WL 5056726, at *9–10 (collecting cases) (emphasis in original). Court then consider the seven factors set forth in *Zubulake*:

1. Extent to which the request is specifically tailored to discover relevant information;

2. Availability of such information from other sources;

3. Total cost of production, compared to the amount in controversy;

4. Total cost of production, compared to the resources available to each party;

5. Relative ability of each party to control costs and its incentive to do so;

6. Importance of the issues at stake in the litigation; and

7. Relative benefits to the parties of obtaining the information.

*Price*, 2018 WL 9517276, at *10–11. Without mentioning the seven-factor test by name, Google's argument seems to be based only on a raw cost estimate, Mot. at 15–16, ignoring how these costs should be analyzed under *Zubulake*.[10]

---

[10] In its Rule 26 proportionality discussion, Mot. at 11, n.16, Google mentions the "parties' relative access to relevant information," which finds an analogue in the second *Zubulake* factor. Google states, without any evidence, that putative class members have "access" to "much" of the relevant ██████████████ It is unclear what information Google is talking about (other than IP ████████ addresses), or whether Google is suggesting that preservation burdens be shifted to millions of putative class members, or how that could even be accomplished. Google also says that putative

1    Applying all factors (or indeed, any of them), Google cannot make a case for cost-shifting.

2    Take, for example, factor 4, which requires that we compare the alleged costs to the resources

3    available to each party. In *John B. v. Goetz*, 879 F. Supp. 2d 787 (M.D. Tenn. 2010), the Court

4    rejected a cost-shifting request because "Defendant's resources are extensive and Plaintiffs'

5    resources are miniscule." *Id.* at 899 n. 42. Similarly, factor 3 instructs us to compare alleged costs

6    to the amount in controversy, which Google also did not do. But in *Goetz*, cost-shifting was further

7    rejected because "the amount in controversy is literally *billions* of federal funds that the Defendants

8    agreed to administer," the funds "dwarf the State's estimated $10 million cost of their ESI

9    production." *Id.*

10    Even if Google's raw cost estimates alone were sufficient under *Zubulake*, Google has not

11    provided the Court with any <u>evidence</u> of actual preservation costs (as noted above), instead using

12    an illustration of costs based on retail cloud storage prices that Google charges to individuals and

13    small businesses. Dkt. No. 897-4 (Greenfield Decl.). And even if such illustrations were acceptable

14    in concept, the details keep changing. Google originally told this Court that ███████████

15    ████████████████████████████████ (Mot. at 8), but during briefing, Google

16    revised that estimate ██████████████. *See* Supp. Mot. at 2. Similarly, Google's original three-

17    year cost estimate ██████████████████████████████████████████

18    (*cf.* Motion at 8 to Supp. Mot. at 2), far below the costs at issue in *Goetz*. Google did not even

19    provide a supplemental declaration to explain how such radical changes could have happened (or

20    why the one-year estimates and the three-year estimates changed disproportionately) simply saying

21    that "Google is prepared to submit a supplemental factual declaration" if requested by the Court.

22    Supp. *See* Supp. Mot. at 1, n.1. Google's request for cost-shifting should therefore be denied.

23

24

25

26    class members "have access" to the URLs of web pages they visit through the
      myactivity.google.com feature. Plaintiffs vigorously dispute this contention -- "My Activity" will

27    █████████████████████████████████████████████████. Google does not explain how "My

28    Activity" could possibly be a substitute for ███████████.

1

**V.   CONCLUSION AND RELIEF REQUESTED**

2

Plaintiffs respectfully request that the Court deny the Motion. In the alternative, if the Court

3

were to consider the substance of Google's new facts asserted in support of its Motion and accept

4

them for their truth, Plaintiffs respectfully request a fair opportunity to explore whether Google's

5

cost-shifting estimates are credible or reliable, especially in light of Google's demand that Plaintiffs

6

bear those costs.

7

Respectfully Submitted this 9th day of December, 2022.

8

9

**BLEICHMAR FONTI & AULD LLP**

**DICELLO LEVITT LLC**

10

By: */s/ Lesley E. Weaver*

By: */s/ David A. Straite*

11

Lesley E. Weaver (Cal. Bar No. 191305)
Angelica M. Ornelas (Cal. Bar No. 285929)

David A. Straite (admitted *pro hac vice*)
Corban Rhodes (admitted *pro hac vice*)

12

Joshua D. Samra (Cal. Bar No. 313050)
555 12th Street, Suite 1600

485 Lexington Ave., Tenth Floor
New York, NY 10017

13

Oakland, CA 94607
Tel.: (415) 445-4003

Tel.: (646) 933-1000
Fax: (646) 494-9648

14

Fax: (415) 445-4020
*lweaver@bfalaw.com*

*dstraite@dicellolevitt.com*
*crhodes@dicellolevitt.com*

15

*aornelas@bfalaw.com*
*jsamra@bfalaw.com*

16

Amy E. Keller (admitted *pro hac vice*)
Adam Prom (admitted *pro hac vice*)

17

**SIMMONS HANLY CONROY LLC**

Sharon Cruz (admitted *pro hac vice*)
Ten North Dearborn Street, 6th Fl.

18

By: */s/ Jay Barnes*

Chicago, Illinois 60602
Tel.: (312) 214-7900

19

Jason 'Jay' Barnes (admitted *pro hac vice*)
An Truong (admitted *pro hac vice*)

*akeller@dicellolevitt.com*
*aprom@dicellolevitt.com*

20

Eric Johnson (admitted *pro hac vice*)
Jenny Paulson (admitted *pro hac vice*)

*scruz@dicellolevitt.com*

21

112 Madison Avenue, 7th Floor
New York, NY 10016

22

Tel.: (212) 784-6400
Fax: (212) 213-5949

23

*jaybarnes@simmonsfirm.com*
*atruong@simmonsfirm.com*

24

*ejohnson@simmonsfirm.com*
*jpaulson@simmonsfirm.com*

25

26

*Counsel for Plaintiffs*

27

28

1
2
## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)
3
     I, David Straite, attest that concurrence in the filing of this document has been obtained
4
from the other signatories. I declare under penalty of perjury that the foregoing is true and
correct.
5
     Executed this 9th Day of December, 2022, at San Francisco, California.
6
7
                               */s/ David Straite*
8
                                David Straite
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 9, 2022, I caused to be electronically filed the foregoing

3

document using the CM/ECF system, which will send notification of such filing to all counsel of

4

record registered in the CM/ECF system. Also, I caused to be served unredacted versions of all

5

electronically filed documents on Google counsel via a file share link sent to the following

6

recipients:

7

Alyssa G Olson
Quinn Emanuel Urquhart Sullivan LLP

8

alyolson@quinnemanuel.com

9

Andrew H. Schapiro
Quinn Emanuel Urquhart and Sullivan, LLP

10

andrewschapiro@quinnemanuel.com

11

Brett Watkins
Quinn Emanuel Urquhart and Sullivan LLP

12

brettwatkins@quinnemanuel.com

13

Carl Spilly
Quinn Emanuel Urquhart and Sullivan LLP

14

carlspilly@quinnemanuel.com

15

Crystal Nix-Hines
Quinn Emamnual Urquhart & Sullivan LLP

16

crystalnixhines@quinnemanuel.com

17

Diane M. Doolittle
Quinn Emanuel Urquhart & Sullivan, LLP

18

dianedoolittle@quinnemanuel.com

19

Donald Seth Fortenbery
Quinn Emanuel Urquhart & Sullivan, LLP

20

sethfortenbery@quinnemanuel.com

21

Jomaire Alicia Crawford
Quinn Emanuel Urquhart and Sullivan,

22

LLP jomairecrawford@quinnemanuel.com

23

Jonathan Sze Ming Tse
Quinn Emanuel Urquhart and Sullivan LLP

24

jonathantse@quinnemanuel.com

25

Josef Teboho Ansorge
Quinn Emanuel Urquhart Sullivan LLP

26

josefansorge@quinnemanuel.com

27

28

Plaintiffs' Opposition to Google's Motion for Relief
Case No.: 4:20-cv-05146-YGR-SVK

Joseph H Margolies
Quinn Emanuel Urquhart & Sullivan, LLP
josephmargolies@quinnemanuel.com

Marie M Hayrapetian
Quinn Emanuel
mariehayrapetian@quinnemanuel.com

Sara E. Jenkins
Quinn Emanuel Urquhart & Sullivan, LLP
sarajenkins@quinnemanuel.com

Stephen Andrew Broome
Quinn Emanuel Urquhart & Sullivan LLP
stephenbroome@quinnemanuel.com

Teuta Fani
Quinn Emanuel Urquhart Sullivan, LLP
teutafani@quinnemanuel.com

Viola Trebicka
Quinn Emanuel Urquhart & Sullivan, LLP
violatrebicka@quinnemanuel.com

Xi Gao
Quinn Emanuel Urquhart Sullivan, LLP
tracygao@quinnemanuel.com




*/s/ David Straite*
David Straite