# Google's Reply

# Redacted Version of Document Sought to be Sealed

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

Diane M. Doolittle (CA Bar No. 142046)
dianedoolittle@quinnemanuel.com
Sara Jenkins (CA Bar No. 230097)
sarajenkins@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
Teuta Fani (admitted *pro hac vice*)
teutafani@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Stephen A. Broome (CA Bar No. 314605)
stephenbroome@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
Crystal Nix-Hines (Bar No. 326971)
crystalnixhines@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Josef Ansorge (admitted *pro hac vice*)
josefansorge@quinnemanuel.com
Xi ("Tracy") Gao (CA Bar No. 326266)
tracygao@quinnemanuel.com
Carl Spilly (admitted *pro hac vice*)
carlspilly@quinnemanuel.com
1300 I Street NW, Suite 900
Washington D.C., 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

Jomaire Crawford (admitted *pro hac vice*)
jomairecrawford@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

*Counsel for Defendant Google LLC*

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| PATRICK CALHOUN, *et al.*, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>GOOGLE LLC,<br><br>    Defendant. | Case No. 4:20-cv-05146-YGR-SVK<br><br>**GOOGLE LLC'S REPLY IN SUPPORT OF GOOGLE'S MOTION FOR RELIEF REGARDING PRESERVATION**<br><br>Judge: Hon. Susan van Keulen, USMJ |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................1

II.   ARGUMENT ......................................................................................................2

    A.   Google's Request for Relief from Preservation of the ▮▮▮▮ Fields Should Be Granted ..................................................................................................2

    B.   Google's Request for Relief from Preservation of the Tables Should Be Granted ............................................................................................................4

        1.   Google's Preservation of the Tables Is Consistent with the Court's Guidance and Orders ........................................................................4

        2.   Relief from Preservation of the Tables Is Warranted ...................................5

    C.   Plaintiffs Would Not Be Prejudiced by the Court's Grant of Google's Motion .........................................................................................................7

    D.   Plaintiffs Should Be Required to Bear the Cost of Preservation ...........................10

    E.   Google Appropriately Filed a Motion to Seek Relief ...........................................13

    F.   If the Court Finds a Motion for Reconsideration Was Necessary, Google Seeks Leave for the Motion to be Considered ........................................................14

III.   CONCLUSION ................................................................................................15

# TABLE OF AUTHORITIES

**Page**

## CASES

*Alkutkar v. Bumble Inc.*,
　2022 WL 16973253 (N.D. Cal. Nov. 16, 2021) ................................................................... 15

*Apple Inc. v. Samsung Elecs. Co.*,
　2013 WL 4426512 (N.D. Cal. Aug. 14, 2013) ..................................................................... 2

*Boeynaems v. LA Fitness Int'l, LLC*,
　285 F.R.D. 331 (E.D. Pa. 2012) ........................................................................................ 10

*Corcera Sols., LLC v. Razor, Inc.*,
　2014 WL 12712256 (N.D. Cal. July 22, 2014) ................................................................. 14

*Elgindy v. Aga Serv. Co.*,
　2021 WL 5083761 (N.D. PCal. Nov. 2, 2021) .................................................................... 2

*Finjan, Inc. v. Cisco Sys. Inc.*,
　2020 WL 13180006 (N.D. Cal. June 18, 2020) ................................................................. 15

*Fisher v. Roe*,
　263 F.3d 906 (9th Cir. 2001) ............................................................................................ 15

*Iglesia Ni Cristo v. Cayabyab*,
　2020 WL 3833281 (N.D. Cal. July 8, 2020) ..................................................................... 15

*In re Intuitive Surgical Sec. Litig.*,
　2014 WL 7146215 (N.D. Cal. Dec. 15, 2014) .................................................................. 15

*In re Yasuda*,
　2020 WL 759404 (N.D. Cal. Feb. 14, 2020) .................................................................... 15

*John B. v. Goetz*,
　879 F. Supp. 2d 787 (M.D. Tenn. 2010) ........................................................................... 10

*Kona Enters., Inc. v. Estate of Bishop*,
　229 F.3d 877 (9th Cir. 2000) ............................................................................................ 15

*Lickerish, Inc. v. PicClick, Inc.*,
　2022 WL 2812174 (N.D. Cal. July 18, 2022) ............................................................... 2, 12

*Lopez v. United States*,
　2017 WL 1062581 (S.D. Cal. Mar. 21, 2017) ................................................................... 11

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
　571 F.3d 873 (9th Cir. 2009) ............................................................................................ 15

*Micron Tech., Inc. v. Factory Mut. Ins. Co.*,
　2022 WL 3083713 (N.D. Cal. Aug. 3, 2022) .................................................................... 15

*Moriarty v. Am. Gen. Life Ins. Co.*,
　2018 WL 11453817 (S.D. Cal. Dec. 31, 2018) ................................................................. 13

*Nyberg v. Zurich Am. Ins. Co.*,
    2016 WL 11671468 (D. Kan. June 21, 2016) ................................................................. 12

*Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*,
    5 F.3d 1255 (9th Cir. 1993) ......................................................................................... 15

*Taylor v. Costco Wholesale Corp.*,
    2020 WL 1430540 (D. Nev. Mar. 23, 2020) ................................................................. 13

*U.S. ex rel. Carter v. Bridgepoint Educ., Inc.*,
    305 F.R.D. 225 (S.D. Cal. 2015) ......................................................................... 3, 10, 11

*U.S. ex rel. Guardiola v. Renown Health*,
    2015 WL 5056726 (D. Nev. Aug. 25, 2015) ................................................................. 10

*ViaSat, Inc. v. Space Sys./Loral, Inc.*,
    2013 WL 3467413 (S.D. Cal. July 10, 2013) ................................................................. 13

*Woods v. Google LLC*,
    2019 WL 1936241 (N.D. Cal. May 1, 2019) ................................................................... 9

*Zubulake v. UBS Warburg LLC*,
    217 F.R.D. 309 (S.D.N.Y. 2003) ................................................................................... 11

## RULES

Fed. R. Civ. P. 26 ....................................................................................................... 7, 8, 11

Fed. R. Civ. P. 37 ............................................................................................................... 7

Local Rule 7-9 ............................................................................................................. 13, 14

1    **I.      INTRODUCTION**

2           Judge Gonzalez-Rogers' December 12 Order granting Google's Motion for Summary

3    Judgment has significantly changed the landscape in which the Court issued the July 15 and August

4    5 Preservation Orders ("Preservation Orders"). But even without such an order validating Google's

5    merits arguments, the immense burden of fully preserving the ███████ fields and the ███████

6    ███████ and ███████ mapping/linking tables (the "Tables")—totaling more than ███

7    ███████ of data and ███████ over the course of a single year—far outweighs the purported

8    benefits of such data. *See* Mot. 10, Supp. Mot. 2. Plaintiffs fail to plausibly rebut the substantial

9    financial cost, human capital and storage resources required to comply with such preservation, on

10   top of the immense resources Google is already expending to comply with other aspects of the

11   Preservation Orders. *See* Mot. 5–7. Moreover, Plaintiffs have not shown that the Tables or ███████

12   fields are of any use to them or how they would be prejudiced if the Court grants Google the relief

13   it seeks. Indeed, without preservation of the Tables, Plaintiffs would still be able to read and interpret

14   the data Google is preserving. Similarly, without full ███████ field-based preservation, Plaintiffs

15   would still have the one-time full snapshot of Zwieback ███████ and the sampling of ███████ data,

16   the preservation of which is ongoing. Given Google's compelling proportionality arguments, and

17   Plaintiffs' failure to make any plausible rebuttal, the relief Google seeks should be granted.[1]

18          Rather than offer a substantive response to Google's motion for relief, Plaintiffs seek to

19   distract the Court by manufacturing a procedural loophole. They argue that Google's Motion for

20   Relief Regarding Preservation (the "Motion") is a motion for reconsideration for which Google

21   failed to obtain leave. But they ignore that the Motion seeks relief as a result of *newly-discovered*

22   burdens, not re-litigation of this Court's Preservation Orders. Google need not obtain leave to file a

23   motion for relief. And even if the Court construes the Motion as one seeking reconsideration, Google

24   satisfies the requirements for obtaining leave and for relief under such a motion. Finally, if the Court

25

26   _____

27   [1] In fact, now that Judge Gonzalez Rogers has denied Plaintiffs' motion for class certification as
     moot and closed this case in light of Plaintiffs' consent to the data collection at issue, Dkts. 935,
     937, there is no valid reason for Google to have to undergo the enormous burdens and expense of
28   preserving any of the class-wide data, and Google plans to seek relief on this issue in a separate
     request to the Court.

1    determines that preservation of the ▮▮▮ field data or Tables is still required, Plaintiffs should

2    bear the costs of preservation.

3    **II.    ARGUMENT**

4        **A.    Google's Request for Relief from Preservation of the ▮▮▮ Fields Should Be
         Granted**

5

6        Google has demonstrated that the actual burden of the preservation outweighs any purported

7    benefit. Plaintiffs' Opposition fails to properly rebut the undue burden the ▮▮▮ field-based

8    preservation imposes on Google or establish that its purported benefit outweighs the burden. This

9    deficiency is fatal to Plaintiffs' Opposition. *See, e.g.*, *Elgindy v. Aga Serv. Co.*, 2021 WL 5083761,

10   at *2 (N.D. PCal. Nov. 2, 2021) ("[C]ourts are required to limit discovery if its burden or expense

11   outweighs its likely benefit"); *Apple Inc. v. Samsung Elecs. Co.*, 2013 WL 4426512, at *3 (N.D.

12   Cal. Aug. 14, 2013) (The "essence of proportionality" is determining if "the burden or expense of

13   the proposed discovery outweighs its likely benefit.").

14       Google's supplemental motion established that the ▮▮▮ field-based preservation would

15   require storage of more than ▮▮▮ of data and cost approximately ▮▮▮ over the

16   course of three years. Supp. Mot. 2. These costs are separate and apart from the costs of Google's

17   other, already momentous, preservation obligations under the Court's Orders. *Id*. Significantly,

18   Plaintiffs do not dispute the storage amount or cost estimates. Instead, they bizarrely argue that the

19   cost estimates on the basis of Google's Cloud Storage service presents only "illustrations" and there

20   is no "evidence" to support these costs. Opp. 11. That makes little sense. A Google Area Tech Lead

21   for Storage explained the many costs associated with storing the data, and that the "lowest-cost

22   storage option available on Google's Cloud Storage service [], which is priced at … ▮▮▮ per

23   gigabyte per month … can be used as a *conservative* estimate of the cost to Google of storing a large

24   amount of data." Dkt. 897–4 ¶¶ 5, 6 (emphasis added). Plaintiffs offer *no* explanation as to why the

25   ▮▮▮ rate is not a conservative storage cost estimate, compelling rejection of their unfounded

26   position. *See Lickerish, Inc. v. PicClick, Inc.*, 2022 WL 2812174, at *4 (N.D. Cal. July 18, 2022)

27   (holding that undue burden was established and noting that "[a]gainst this concrete and significant

28   burden, the plaintiffs offer almost no substantive response."); *U.S. ex rel. Carter v. Bridgepoint*

1  *Educ., Inc.*, 305 F.R.D. 225, 243 (S.D. Cal. 2015) (holding $2 million for production of ESI in

2  format requested by plaintiffs to be unduly burdensome where plaintiffs failed to "cogently counter

3  [d]efendants' substantial cost estimates" as laid out in "a declaration from an actual expert detailing

4  these possible financial burdens").[2]

5       Plaintiffs also make much of Google's voluntarily-filed supplemental motion that reduced

6  the one-year and three-year estimate for ██████ field-based preservation to ██████ and ██████

7  ██████ respectively. Opp. 11, 12. That the burden is reduced to "only" ██████ dollars for the

8  first year alone does not undermine the immensity of the burden. Further, Google's evidence with

9  its opening submission specifically envisioned the possibility that the cost estimate could be further

10  reduced by filtering the data to the required fields and geography, and there was nothing inconsistent

11  to "correct". Dkt. 897–8 (Quaid Decl.) ("if [Google] can successfully optimize the pipelines to target

12  preservation to just the requested fields and U.S. users, I expect the mound of data to be preserved

13  daily will be less, but still on the order of ██████ per day.); *see also* Greenfield Decl.

14  ¶ 12 (the method for calculating the cost estimate remains the same).[3]

15       Plaintiffs fare no better on the relevance inquiry. They claim that Google's relevance

16  argument "already has been rejected, both by the Special Master and the Court," Opp. 12, but that

17  is false. The Special Master did not consider the ██████ field-based data to be relevant and did not

18  recommend preservation of such data in the original preservation protocol. Dkt. 604. The modified

19  plan recommending full field-based preservation of ██ data sources, including GAIA and ZWBK

20  ██████ was subsequently submitted only in response to Plaintiffs' generic argument at the May 3,

21  2022 hearing that certain fields *may* speak to identification of class members. Dkt. 750 (6/30/22

22  H'rg Tr.), at 26:20-25 ("THE COURT: … the whole point of returning to the special master after

23  our previous round was that an across-the-board sample-based preservation plan may not be

24

_____

25  [2] Plaintiffs take issue with the fact that "Google provides detailed footnotes explaining the math for
the *data volume* estimates [], but the *cost* estimate is not similarly explained." Opp. 11 (emphasis in

26  original). But the math regarding the cost estimate was explained *in detail* in the Declaration of
Lawrence Greenfield, which Google cited in the Motion. *See* Mot. 8; Dkt. 897–4 (Greenfield Decl.)

27  ¶¶ 12, 15 (describing calculations used to generate cost estimates for field-based ██████
preservation).
[3] Google offered to promptly submit supplemental declarations at the Court's request, but the Court

28  has so far not sought them. Supp. Mot. 1 n.1.

appropriate in this case, as distinguished from <u>Brown</u> where there are fields that speak to identification of class members.") (emphasis in original). But this conjecture cannot support the burden here.

    **B.**    **Google's Request for Relief from Preservation of the Tables Should Be Granted**

        **1.**    **Google's Preservation of the Tables Is Consistent with the Court's Guidance and Orders**

Plaintiffs acknowledge that "the Court clarified that its order applied to all mapping tables that 'map[] the IDs' and that 'relate to the logs and fields that [][] the parties have worked with so intimately over these last 18 months." Opp. 13. They claim, however, that Google seeks to limit preservation "[n]otwithstanding this clarification." *Id*. 14–16. That is profoundly mistaken. Contrary to Plaintiffs' assertion, Google merely seeks to confirm that Google will be in compliance with the Court's guidance and Preservation Orders by preserving the mapping and linking tables related to the data at issue (including relevant logs and fields) in this case,[4] which does not appear to be in dispute based on Plaintiffs' Opposition. All of Plaintiffs' arguments are premised on a mistaken reading of Google's Motion:

*First,* Plaintiffs argue that Google "ignored the Court's limiters that preserved tables be mapped to IDs and relate to not just logs but also fields." Opp. 14. That is incorrect. Google does not seek to exclude mapping or linking tables that relate to relevant fields that "the parties have worked with [] intimately over [the] last 18 months." *Id*. 13.

*Second*, Plaintiffs misinterpret Google's argument that "[r]equiring preservation of all tables that provide a mapping or linking of identifiers (or other non-identifier value) that fall outside the scope of the Court's preservation orders would be neither proportional nor reasonable" to mean Google is limiting preservation to mapping/linking tables "tethered to the preserved logs." Opp. 14. That is not Google's argument. Google simply seeks confirmation that it is not required to undertake

---

[4] As explained in the Motion, Google conducted an extensive investigation to identify and preserve "all mapping and linking tables," which involved investigating tables maintained by the teams that work with Ads and Analytics data, examining the documents and testimony on which Plaintiffs relied to justify their request for preservation of this information, and analyzing the evidentiary record in this case to identify instances in which mapping or linking tables were addressed in depositions or produced documents. Mot. 3.

1    extremely broad and burdensome actions to investigate and preserve tables that link or map: (1)

2    non-identifier values (e.g. a table that links a user's GAIA ID to their payment information); or (2)

3    identifiers that are nowhere to be found in the preserved data, like account IDs for Stadia (Google's

4    gaming platform) or Nest (a Google division that makes thermostats and home security devices).

5    Preserving such a table would serve no purpose. Mot. 9.

6        *Third*, Plaintiffs accuse Google of hiding which mapping tables Google has "deemed

7    irrelevant" and "failed to preserve." *Id.* 14, 16. To the contrary, although Google disputes the

8    relevance of most of the tables it has identified, it is still preserving them.

9        *Finally*, contrary to Plaintiffs' mistaken assertion, Google's definition includes all three

10   categories of mapping/linking tables that Plaintiffs accuse Google of "proposing to exclude." Opp.

11   15.

12   • *"mapping tables from the ███████████████"*: As explained in detail in the Declaration
         of Daryl Seah, the ████████████████ (previously known as ██████████
13       ███████ and other Ads teams "identified and [were] working on preserving █ tables." Dkt.
         897–11 (Seah Decl.) ¶¶ 1, 4.

14
     • *"mapping tables from Google Ads logs relating to data that Chrome sends to Google.com"*:
15       As explained in the Declaration of Daryl Seah, his team, whose responsibilities include
         support for Google Search Ads, has worked to identify and preserve all tables that contain a
16       mapping or linking of user or device identifiers. *Id.* ¶¶ 3, 4.

17   • *"mapping tables between identifiers and those that Google has categorized to be 'non-
         identifiers,' which are often contained as fields within relevant logs), e.g. Biscotti to Gaia,*
18       *IDFA to Biscotti, IDF (sic) to Gaia."*: Google has never taken the position that Biscottis or
         IDFAs are not identifiers. As Plaintiffs recognize, Google has consistently referred to
19       Biscotti IDs as unauthenticated identifiers. Opp. 16. And there should be no dispute that
         IDFA and AdID values are device identifiers. Google has confirmed in the Motion that
20       existing tables that map or link these identifiers are being preserved. Mot. 9.[5]

21       In short, Google's preservation of mapping and linking tables is consistent with the Court's

22   guidance, and Plaintiffs appear to be in agreement. *See* Opp. 15 ("the mapping and linking tables at

23   issue must relate to logs *and fields*, and they must map *the identifiers* to each other.") (emphasis in

24   original).

25           **2.    Relief from Preservation of the Tables Is Warranted**

26       Plaintiffs' additional responses to the relief Google seeks are similarly misplaced.

27

28   [5] As explained in the Motion and the Seah Declaration, Google does not maintain any mapping from
     Biscotti to GAIA. *See* Mot. 9 n.11; Seah Decl. ¶ 7.

1      ███████████████ **Tables**: Plaintiffs' only argument is that they are "unable to substantiate

2   Google's claim that the information is derivative." Opp. 17. But Google provided a sworn

3   declaration explaining that ██████████████████████████████████████████████

4   ████████████████████████ that we are separately preserving," Seah Decl. ¶ 5, and

5   Plaintiffs do not claim that the declarant has no personal knowledge, or that the declaration is

6   otherwise deficient.

7      Plaintiffs have more than enough information to "substantiate Google's claim" because the

8   answers to all of their questions regarding these tables—"what identifiers are linked in the ███

9   ██████████ tables or which underlying tables [] are sources of these [] tables)" (Opp. 17)—are

10  readily available in the more than 6,000 documents regarding █████████ Google has produced.

11  These documents discuss ██████████ in detail: what ██████████ is, what information is stored

12  in the ██████████ tables, from what sources the ██████████ tables draw data, how the

13  ██████████ pipelines work, the purpose, design details, and use case of ██████████ etc. As one

14  example, one exhibit about which Plaintiffs questioned a Google witness during a deposition ███

15  ████████████████████████████████████████████████████████████████████████████

16  ████████████████████████████████████████████████████████████████████████████

17  ████████████████████████████████████████████████████████████. Trebicka Dec.

18  Ex. 1 (Liao Dep. Ex. 4, GOOG-CALH-00374314) at -338, -353–55. *See also, id.* Ex. 2 (GOOG-

19  CALH-00696086) at -087, 089 ██████████████████████████████████████████████

20  ████████████████████████████████████████████████████████████████████████████

21  ████████████████████████████████████████████████████████████████████████████

22  ██████████  ██████████  ██████████  ████████  ███  ████████  ████████  ████████

23  ████████████████████ Ex. 3 (GOOG-CABR-05290579) at -579 ████████████████████

24  ████████████████████████████████████████████████████████████████████████████

25  ████████████████████████████████████████████████████████████████████████████

26  ████.

27      ███████████ **Tables**: The mappings the ██████████ Tables contain are limited to

28  ████████████████████████████████████████████████████████████████████████████

1   ████   Dkt. 897–12 (Pothana Decl.) ¶ 5. These ████ mapping tables do not include any mappings

2   to GAIA, and are thus not needed for Plaintiffs to work with the Analytics data subject to

3   preservation if they were produced, which is all keyed to GAIA. Mot. 18. Dkt. 897–13 (8/4/22 Hr'g

4   Tr.) at 106:16-18 ("[I]f you would need a mapping table to work with any of the data that is being

5   exchanged in this case, that table has to be preserved.").

6         Plaintiffs do not dispute this, but rather claim the tables are relevant because "Biscotti and

7   Device IDs are crucial to the identification of the Not Signed-In subset of Plaintiffs' proposed

8   Class)" and "Biscotti IDs can further be linked to GAIA IDs … for the identification of the Sign-in-

9   But-Not-Consented-For-Sync subset of Plaintiffs' proposed class." Even assuming this

10  identification were possible based on Plaintiffs' supposition (it is not, *see e.g.* Dkt. 429 at 23, 24)

11  and the argument had not been mooted by this Court's December 12, 2022 Order denying Plaintiffs'

12  motion for class certification, this assertion does not explain why the mappings between ████

13  ████████████████████ should be preserved despite the substantial, unrebutted burden.

14  Ultimately, Plaintiffs' arguments boil down to one untenable conclusion: anything that contains a

15  Biscotti ID or a device ID in Google's system should be preserved because these identifiers are

16  "crucial to the identification … of Plaintiffs' proposed Class." That simply cannot be the standard,

17  particularly in light of the enormous burdens the preservation requirements already impose.

18        **C.    Plaintiffs Would Not Be Prejudiced by the Court's Grant of Google's Motion**

19        Google clearly showed in its Motion why there is no prejudice if the Court grants the relief

20  it requests, Mot. 13-14, 15, and nothing in Plaintiffs' Opposition proves otherwise. In fact, Plaintiffs

21  do not even attempt to mount a rebuttal, and instead make a series of scattershot arguments that lack

22  merit and fail to establish prejudice.

23        *First*, Plaintiffs claim that Google's new evidence emanates from employees who were not

24  identified as likely to have relevant information and is therefore inadmissible under Federal Rule of

25  Civil Procedure 37(c). This assertion strains credulity. Rule 37(c) applies only if a party fails to

26  provide information that a party may use to support its claims or defenses or identify a witness likely

27  to have discoverable information. Fed. R. Civ. P. 37(c) (stating consequences of failure to disclose

28  or supplement pursuant to Rules 26(a) or (e)); Fed. R. Civ. P. 26(a) (listing disclosure requirements);

1    Fed. R. Civ. P. 26(e) (requiring supplement to initial disclosures or discovery responses if incorrect

2    or incomplete). Each of the declarations supporting the Motion are by Google engineers working to

3    implement Google's recent preservation obligations, not employees who are "likely to have

4    discoverable information" about the substantive issues relevant to Plaintiffs' claims or Google's

5    defenses. Fed. R. Civ. P. 26(a). Plaintiffs' own chart only confirms that these engineers are unlikely

6    to have information that is otherwise relevant to this case: in the nearly one million documents

7    Google produced, the names of three declarants do not appear at all, most of the declarants appear

8    in no more than a dozen documents, and two others appear in fewer than 450 documents, *see* Chart

9    at Opp. 9. That some of these documents happen to hit on words such as "experiments" and "device,"

10   Opp. 10, is no indication that any declarant is likely to have relevant information. If that were the

11   standard for disclosure, the list of document custodians would be limitless. Further, Plaintiffs' claim

12   that they are "in the dark" about the roles of the declarants is squarely contradicted by the very first

13   paragraph of each of the sworn statements Google submitted, which details their role and

14   responsibilities. *See* Dkts. 897-4, 897-5, 897-7–897-12. Google's declarations are therefore

15   admissible for purposes of resolving the issues the Motion raises.

16         *Second*, Plaintiffs claim, with no support, that the declarations "raise more questions than

17   they answer" because they purportedly do not "explain" why or how Google updated the cost

18   estimates for the ▆▆▆▆ field-based preservation. Opp. 10. Google's Motion proves otherwise. At

19   the time Google filed its Motion, Google engineers had not yet been able to filter the ▆▆▆ data

20   by field or geography, resulting in the estimated daily preservation of ▆▆▆▆▆ of data at a cost

21   of ▆▆▆▆ over the course of three years. Mot. 1, 2; *see also* Dkt. 897-8, (Quaid Decl.) ¶ 9. In

22   the interest of transparency, as soon as more filtering down was achieved, Google filed a

23   Supplemental Motion to accurately explain to the Court that the costs for preservation were reduced

24   because, "[s]ince the filing of the original Motion, Google engineers have managed to: (1) filter the

25   data to the required fields for a subset of the ▆▆▆ columns that contain one or more of the

26   specified fields for field-based preservation, and (2) filtered the data to only U.S. users, which has

27   reduced the estimated daily average of new data written to the preservation pipelines from ▆▆

28

1    ███████ to approximately ████████." Supp. Mot. 1. This is hardly a failure to explain; in fact,

2    Google did so twice, including with updated real-time information.

3        Plaintiffs also seek to cast doubt on the "tests" referred to in the Quaid Declaration, including

4    who conducted them and when. Opp. 10. But Google has already provided the information necessary

5    to answer these questions. Mr. Quaid explained that he oversees a team of six engineers on the

6    ██████ team, who have designed and implemented the preservation pipelines to comply with the

7    Court's Orders. Quaid Decl. ¶ 4. His team then tested the sampling and field-based preservation

8    pipelines to determine how much storage would be necessary to store new data written daily into

9    the pipelines. *Id.* ¶¶ 6, 9. Plaintiffs have failed to establish prejudice or the need for more discovery

10   regarding Google's cost estimates.

11       Nor are there any "unexplained inconsistencies," as Plaintiffs claim. Opp. 10–11. Plaintiffs

12   argue that Mr. Quaid used compressed data figures for the ZWBK ██████ snapshot and in a

13   purported "inconsistent" manner, did not use compressed data figures for the field-based ██████

14   preservation pipelines. *Id*. That is plainly mistaken. All the figures in Mr. Quaid's declaration

15   represented compressed data figures: some described as "compressed size" of *data* subject to

16   preservation, and others described as the amounts of *storage space* required to store the

17   (compressed) data subject to preservation—but of course, it would make no sense to refer to

18   "compressed storage space." Quaid Decl. ¶¶ 9–10.

19       Tellingly, Plaintiffs can cite no relevant authority in support of their untenable position that

20   granting Google the necessary relief would prejudice them. The only case Plaintiffs cite to establish

21   prejudice, *Woods v. Google LLC*, 2019 WL 1936241, at *2–3 (N.D. Cal. May 1, 2019), is

22   unavailing. In *Woods*, the court denied plaintiff's motion to reconsider the court's granting of

23   Google's motion to dismiss because it would be prejudicial to Google. The purported new evidence

24   at issue was substantively relevant, would allegedly cure plaintiff's standing defect, and would

25   require reopening discovery and additional rounds of motions. *Id.* By contrast, here, the Motion

26   seeks relief from discovery orders, not an order on a dispositive motion. Moreover, the relevant

27   information is already before the Court, so resolution of the Motion does not require reopening

28

1    discovery or additional motion practice. Plaintiffs cannot point to any prejudice they would suffer

2    if the Motion is granted.

3    **D.    Plaintiffs Should Be Required to Bear the Cost of Preservation**

4    Should the Court require ███████ field-based preservation and/or preservation of the Tables

5    despite the substantial, unrebutted burden and minimal benefit associated with such preservation,

6    Plaintiffs should be required to assume the costs. Plaintiffs mischaracterize the burden for cost-

7    shifting as "only appropriate" when ESI is not reasonably accessible. Opp. 18. What they ignore is

8    that cost may render ESI not reasonably accessible, a concept recognized even in the case they cite.

9    *See U.S. ex rel. Guardiola v. Renown Health*, 2015 WL 5056726, at *2 (D. Nev. Aug. 25, 2015)

10   (assessing cost to determine whether ESI is reasonably accessible). Furthermore, Plaintiffs ignore

11   the various cases cited in the Motion at 16, which found that "the cost of even accessible ESI's

12   production may be shifted to a party that has not shown its peculiar relevance to the claims and

13   defenses at hand." *U.S. ex rel. Carter*, 305 F.R.D. at 240; *Boeynaems v. LA Fitness Int'l, LLC,* 285

14   F.R.D. 331, 341 (E.D. Pa. 2012) (where "the plaintiffs have asked for very extensive discovery,

15   compliance with which will be very expensive,[] absent compelling equitable circumstances to the

16   contrary, the plaintiffs should pay for the discovery they seek."). Here, Google should not be forced

17   to bear the entire burden of ███████████ in preservation costs where preservation of certain

18   ██████ fields and the Tables adds little, if any, value.[6] If Plaintiffs insist that this preservation is

19   necessary despite evidence to the contrary, they should bear the cost.

20   Plaintiffs' reliance on a single out-of-state decision, *John B. v. Goetz*, 879 F. Supp. 2d 787,

21   883 (M.D. Tenn. 2010), is misplaced. There, the court held that $10 million for ESI discovery from

22   key custodians and targeted search terms was not unduly burdensome because much of the costs

23   were for privilege review and could therefore be "significantly reduce[d]." *Id.* Here, the issue is

24   preservation of a subset of data with minimal benefit. Not counting the exorbitant costs Google has

25   already undertaken in discovery to date, the additional ███████████ to preserve ███████ fields and

26

27

28   ───────────────────────────────
[6] Repeating the same arguments made throughout the Opposition, Plaintiffs again attack the validity of Google's cost estimates because they use "illustrations of costs" and "keep changing." Opp. 19. These arguments are meritless, as Google has already explained in Sections A and C.

1    ███████    to preserve the Tables over the course of three years is simply unjustifiable. *U.S. ex*

2    *rel. Carter*, 305 F.R.D. at 243 ("Projected to cross $2 million, these ostensible costs cannot be

3    deemed as insubstantial, with at least partial shifting having been repeatedly ordered when similar

4    sums have been alleged.") (collecting cases).

5        Plaintiffs stress the importance of the *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309

6    (S.D.N.Y. 2003) factors in determining cost-shifting, Opp. 17-18, yet fail to apply the factors. As

7    the Motion demonstrates, each of the proportionality factors of Federal Rule of Civil Procedure 26,

8    which are substantially similar to the *Zubulake* factors, weigh in favor of granting Google relief or,

9    alternatively, shifting cost to Plaintiffs. *See* Mot. 11-16, n.16. Although Plaintiffs have not, Google

10   addresses each *Zubulake* factor:

11       ***Extent to which the request is specifically tailored to discover relevant information***. As

12   Google demonstrated in both the Motion (at 13-15) and Sections A and B here, large swaths of

13   ██████  data and the Tables are irrelevant to this litigation. Much of the  █████  data pertains to

14   products that Plaintiffs have never alleged to be part of the data flow for this case, and the Tables

15   are not necessary for the only purpose they were ordered to be preserved.

16       ***Availability of such information from other sources***. Google has already committed to

17   saving an enormous amount of data, including ongoing sampling of  █████  data and a one-time

18   snapshot of Zwieback ██████ .[7] Plaintiffs have not articulated what they would gain from field-based

19   preservation that they would not already get from sampled preservation. Additionally, Google has

20   demonstrated that Plaintiffs can interpret the data Google is preserving without the Tables.

21       ***Total cost of production, compared to the amount in controversy***. Judge Gonzalez-Rogers'

22   December 12 Order granting Google's summary judgment motion mooted the damages figures

23   Plaintiffs have presented to date. Even if there still were significant damages in dispute, discovery

24   must be proportional to the needs of the case. *See Lopez v. United States*, 2017 WL 1062581, at *4

25   (S.D. Cal. Mar. 21, 2017) (finding requested discovery was not proportional and stating "the amount

---

[7] Moreover, putative class members have access to much of the relevant information subject to ██████  field-based preservation, like their own IP address and URLs they visit through tools provided by Google to its users. *See* Mot. 11 n.16.

1  in controversy, while substantial, is just one factor to be considered and weighed against the other

2  factors."). Here, too, Plaintiffs' overstated damages claims do not justify the staggering ████

3  ████████████ dollars, storage space or human capital Google would need to expend to preserve

4  ████ fields and the Tables, on top of the already burdensome preservation it is already

5  undertaking.

6        ***Total cost of production, compared to the resources available to each party***. Plaintiffs

7  cannot fall back on their parroted argument that Google's resources are extensive and Plaintiffs' are

8  miniscule. Opp. 19. It is well-established that "consideration of the parties' resources 'does not …

9  justify unlimited discovery requests addressed to a wealthy party.'" *Nyberg v. Zurich Am. Ins. Co.*,

10  2016 WL 11671468, at *4 (D. Kan. June 21, 2016) (citing Fed. R. Civ. P. 26(b)(1) advisory

11  committee's note to the 2015 amendment)); *see also Lickerish, Inc.*, 2022 WL 2812174, at *4

12  (rejecting argument that discovery sought would not be a "heavy burden" because defendant is a

13  "multibillion dollar Internet-based business"). Plaintiffs' conclusory claims do not justify the

14  burdensome preservation here.

15        ***Relative ability of each party to control costs and its incentive to do so***. Google is already

16  spending over ██████ over the course of three years to comply with the Preservation Orders,

17  excluding the relief sought in the Motion. Mot. 5-7, Table 2. That amount does not include the cost

18  of engineering talent being diverted from core work to develop and maintain these pipelines.

19  Further, ██████████████████████████████████████████████

20  ██████████████████████████████████████████. Greenfield. Decl.

21  ¶¶ 3, 4. For these reasons, it is particularly important that Plaintiffs' preservation requests are

22  narrowly tailored to relevant information, unlike those here.

23        ***Importance of the issues at stake in the litigation***. Even assuming that Google's receipt of

24  data to which users have consented raises an issue of great importance, preservation of ████ fields

25  or the Tables does not facilitate its resolution—and Plaintiffs have not shown otherwise.

26        ***Relative benefits to the parties of obtaining the information***. Google has extensively

27  covered this topic in its Motion. Mot. 13-15; 17-19; *see also supra* Sections A and B. Plaintiffs have

28

1   failed to explain how they would use the ██████ field data or what benefit they would derive from

2   the Tables that they are not already receiving.

3        As the totality of these factors demonstrates, cost-shifting would have been appropriate here

4   even without a summary judgment decision denying Plaintiffs' claims. As Google will point out in

5   its forthcoming motion, Judge Gonzalez-Rogers' cogent and thorough decision, denying all of

6   Plaintiffs' claims and mooting their bid to certify a class, doubly favors shifting of the costs.

7        **E.     Google Appropriately Filed a Motion to Seek Relief**

8        Failing to make any credible substantive responses to Google's Motion, Plaintiffs resort to

9   the baseless procedural assertion that Google's Motion is improper because it should have sought

10  leave to file a motion for reconsideration under Local Rule 7-9. Unlike a motion for reconsideration,

11  Google's Motion does not seek to relitigate the validity of the Court's Preservation Orders or the

12  identified data sources. Rather, it seeks *relief* from the Orders on the basis of new information about

13  the burden of preserving certain ██████ fields and the Tables. Indeed, Google had neither the time

14  nor opportunity to determine the size of the ██████ data or identify the mapping and linking tables

15  encompassed by the Order in order to present its burden to the Court at an earlier time. Accordingly,

16  Google's Motion does not fall within the purview of Local Rule 7-9.

17       Tellingly, the authorities Plaintiffs cite do not support their contention. Plaintiffs

18  mischaracterize *ViaSat, Inc. v. Space Sys./Loral, Inc.*, 2013 WL 3467413, at *3-4 (S.D. Cal. July

19  10, 2013). There, plaintiffs argued that "[d]efendants' argument is a barely veiled [sic] motion for

20  reconsideration," but the court actually refused to construe defendants' motion to compel as a

21  motion for reconsideration because it "had not ruled on" the arguments defendants raised. *Id.* The

22  other two cases Plaintiffs cite merely stand for the proposition that where a party seeks to relitigate

23  an existing order without new evidence or arguments it should be construed as a motion for

24  reconsideration. *Moriarty v. Am. Gen. Life Ins. Co*., 2018 WL 11453817, at *4 (S.D. Cal. Dec. 31,

25  2018) (construed as a motion for reconsideration because it sought to revisit the court's order, raising

26  the same arguments and evidence that were previously before the court); *Taylor v. Costco Wholesale

27  Corp*., 2020 WL 1430540, at *2 (D. Nev. Mar. 23, 2020) (construed as a motion for reconsideration

28  where the plaintiff "attempt[ed] to relitigate the validity" of the court's orders for a *fourth* time).

Here, in contrast, Google does not seek to argue that the Preservation Orders were erroneous, and certainly has not challenged the orders multiple times. Rather, Google seeks relief from a burden it did not and could not fully know until it sought to implement the Court's orders and discovered the enormous burdens the preservation requirements would impose.[8]

### F.    If the Court Finds a Motion for Reconsideration Was Necessary, Google Seeks Leave for the Motion to be Considered

Finally, if the Court construes the Motion as seeking reconsideration under Local Rule 7-9, Google respectfully requests permission for reconsideration since it satisfies all of the requirements for leave and substantive relief.

Google's motion easily satisfies the standard for leave since Google exercised reasonable diligence in bringing the Motion and did so based on new, material evidence that was unavailable when the Court issued its Preservation Orders. *See* L.R 7-9(b) (listing requirements for leave). Plaintiffs concede that Google submitted "an entirely new" factual record. Opp. 4. Moreover, during the briefing and hearings preceding the Preservation Orders, Google could not have presented evidence regarding its burden. Indeed, prior to the Court's Orders, the Special Master had only recommended limited ███ preservation, Dkt. 666, and did not require preservation of the Tables, Dkt. 604, Dkt. 666. Therefore, Google had not fully investigated the resources necessary to comply with the preservation obligations the Court ultimately ordered. Compliance with the Preservation Orders has required Google to design entirely new preservation pipelines and perform extensive investigations into mapping and linking tables. *See, e.g.*, Quaid Decl. ¶ 4. Google could not have reasonably presented evidence regarding its burden when the protocols and systems for preserving such data had not yet been designed or identified at the time the Preservation Orders were entered. Once it had the new information and understood the severity of its burden, Google timely moved for relief. This record is sufficient to obtain leave for reconsideration. *See Corcera Sols., LLC v. Razor, Inc.,* 2014 WL 12712256, at *1 (N.D. Cal. July 22, 2014) (granting leave to file motion for

---

[8] Leave of court pursuant to Local Rule 7-9 is only required to bring a motion for reconsideration. Because Google properly filed a motion for relief, it did not need to satisfy Local Rule 7-9. Accordingly, each of the cases Plaintiffs cite to support the argument that the Motion should be dismissed for failure to seek leave, Opp. 5, are inapplicable.

1  reconsideration where motion was based on "newly discovered evidence," plaintiff "was not able to

2  conduct the necessary investigation within the response time [] for filing an opposition," and timely

3  brought the motion once it did).

4        Finally, Google clearly satisfies the requirements for granting a motion for reconsideration.

5  Contrary to Plaintiffs' assertions that securing reconsideration is virtually impossible, Opp. 3, it is

6  well settled that a court has the inherent power to reconsider and modify an interlocutory order for

7  "any cause it deems sufficient." *In re Intuitive Surgical Sec. Litig.*, 2014 WL 7146215, at *2 (N.D.

8  Cal. Dec. 15, 2014); *Johnson v. United States*, 2022 WL 1524602, at *2 (E.D. Cal. May 13, 2022)

9  (granting reconsideration and noting that a "court may reconsider and reverse a previous

10  interlocutory decision for any reason it deems sufficient");  Fed. R. Civ. P.60(b)(2) (a court may

11  relieve a party from an order if there is "newly discovered evidence"); *In re Yasuda*, 2020 WL

12  759404, at *3 (N.D. Cal. Feb. 14, 2020) ("Rule 60(b) is remedial in nature and ... must be liberally

13  applied."). In light of the new evidence on burden, *see* Mot 11, 17, Google need not, as Plaintiffs

14  claim, Opp. 3, show "highly unusual circumstances" or that the Court's Preservation Orders were

15  "clearly erroneous" in order to obtain the relief it seeks. Each of the cases Plaintiffs cite where the

16  court denies reconsideration or articulates a heightened standard for relief, Opp. 3-6, are

17  distinguishable because they either do not involve new evidence,[9] or deal with a situation where the

18  movant could have previously raised the relevant evidence earlier in the litigation.[10] As

19  demonstrated above, neither is the case here. Therefore, even if the Court construes the Motion as

20  seeking reconsideration of the Preservation Orders, it should grant the relief Google seeks.

21  **III.    CONCLUSION**

22        For the foregoing reasons, the Court should grant Google's Motion.

23

24

---

25  [9] *See Fisher v. Roe*, 263 F.3d 906, 912 (9th Cir. 2001); *Alkutkar v. Bumble Inc*., 2022 WL 16973253,
   at *1 (N.D. Cal. Nov. 16, 2021); *Micron Tech., Inc. v. Factory Mut. Ins. Co*., 2022 WL 3083713, at

26  *4 (N.D. Cal. Aug. 3, 2022); *Finjan, Inc. v. Cisco Sys. Inc*., 2020 WL 13180006, at *8 (N.D. Cal.
   June 18, 2020))

27  [10] *See Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir.
   2009); *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000); *Sch. Dist. No. 1J,*

28  *Multnomah Cnty., Or. v. ACandS, Inc*., 5 F.3d 1255, 1263 (9th Cir. 1993); *Iglesia Ni Cristo v.
   Cayabyab*, 2020 WL 3833281, at *2 (N.D. Cal. July 8, 2020)).

| | |
|---|---|
| 1 | DATED: December 23, 2022 |

QUINN          EMANUEL          URQUHART          &
SULLIVAN, LLP

By          _/s/ Andrew H. Schapiro_

Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Stephen A. Broome (CA Bar No. 314605)
stephenbroome@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Diane M. Doolittle (CA Bar No. 142046)
dianedoolittle@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Josef Ansorge (admitted *pro hac vice*)
josefansorge@quinnemanuel.com
1300 I. Street, N.W., Suite 900
Washington, D.C. 20005
Telephone: 202-538-8000
Facsimile: 202-538-8100

Jomaire A. Crawford (admitted *pro hac vice*)
jomairecrawford@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111

-16-                                    Case No. 4:20-cv-05146-YGR-SVK
GOOGLE LLC'S REPLY IN SUPPORT OF GOOGLE'S MOTION FOR RELIEF REGARDING PRESERVATION

Telephone: (415) 875-6600
Facsimile: (415) 875-6700

*Attorneys for Defendant Google LLC*