# GOOGLE LLC'S SUPPLEMENTAL SUBMISSION RE PRESERVATION PURSUANT TO DKT. 947

# Redacted Version of Document Sought to be Sealed

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Diane M. Doolittle (Bar No. 142046)
dianedoolittle@quinnemanuel.com
Sara Jenkins (Bar No. 230097)
sarajenkins@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2139
Telephone:    (650) 801-5000
Facsimile:    (650) 801-5100

Andrew H. Schapiro (admitted pro hac vice)
andrewschapiro@quinnemanuel.com
Teuta Fani (admitted pro hac vice)
teutafani@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Stephen A. Broome (CA Bar No. 314605)
stephenbroome@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
Crystal Nix-Hines (Bar No. 326971)
crystalnixhines@quinnemanuel.com
Alyssa G. Olson (CA Bar No. 305705)
alyolson@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Josef Ansorge (admitted pro hac vice)
josefansorge@quinnemanuel.com
Xi ("Tracy") Gao (CA Bar No. 326266)
tracygao@quinnemanuel.com
Carl Spilly (admitted pro hac vice)
carlspilly@quinnemanuel.com
1300 I Street NW, Suite 900
Washington D.C., 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

Jomaire Crawford (admitted pro hac vice)
jomairecrawford@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

*Counsel for Defendant Google LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| PATRICK CALHOUN, *et al.*, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 4:20-cv-05146-YGR-SVK<br><br>**GOOGLE LLC'S SUPPLEMENTAL SUBMISSION RE PRESERVATION PURSUANT TO DKT. 947**<br><br>Referral:    Hon. Susan van Keulen |

Throughout this litigation, Plaintiffs have sought extensive preservation of data related to the claims of the putative class members, culminating in the Court's July 15 and August 5, 2022 Orders on preservation, *see* Dkts. 766, 815 ("Preservation Orders"). Pursuant to the Preservation Orders, Google has preserved an enormous quantity of log-based event-level data, and it continues to preserve large amounts of data daily, at a significant monetary, human, and business cost (estimated to equate to ▓▓▓▓ of dollars over the next few years).

On December 12, 2022, the Court granted Google's motion for summary judgment and closed the case file. Dkt. Nos. 935 ("Summary Judgment Order"), 937. Plaintiffs' attempt to overturn Judge Gonzalez Rogers' well-reasoned summary judgment order on appeal cannot justify continuing to impose on Google these tremendous preservation costs. *See* Dkt. 897-3 (Google's Motion for Relief Regarding Preservation). Google respectfully seeks an order (i) releasing Google from ongoing preservation (*i.e.*, the obligation to preserve new data that has not yet been written to the preservation pipelines); and (ii) either (a) allowing Google to delete the data it has already collected and is preserving pursuant to the Preservation Orders; or (b) shifting the cost of the preservation of such data to Plaintiffs.

**The Court Has Jurisdiction to Address Google's Preservation Obligations.** "The filing of a notice of appeal divests the district court of jurisdiction over *aspects of a case involved in the appeal*." *Ashker v. Newsom*, 2019 WL 11880374, at *7 (N.D. Cal. June 26, 2019) (emphasis added). A district court retains jurisdiction over issues that are "collateral to the main action." *Lord Abbett Mun. Income Fund, Inc. v. Asami*, 2014 WL 5477639, at *2 (N.D. Cal. Oct. 29, 2014) (exercising jurisdiction over preservation dispute after plaintiffs appealed order granting defendants' motion for summary judgment). Here, determining whether Google must continue to preserve data going forward and which party should bear the costs of preservation (including the costs associated with

the storage of the data it has already amassed) has no bearing on (and is therefore collateral to) Plaintiffs' appeal.

*Lord Abbett* is instructive. There, as here, the magistrate judge had ordered the preservation of certain computers "at a cost of $500 per month, with the parties sharing the storage costs." *Id.* at *1. When the court granted summary judgment in favor of the defendants, the defendants refused to continue paying their share of the cost of preserving those computers and sought an order permitting their disposal. *Id.* The district court determined that it retained jurisdiction over the preservation dispute, as (i) it "is not divested of jurisdiction over matters collateral to a determination of the merits of the case," *id.* at *2 (citing *United States ex rel Shutt v. Cmty. Home & Health Care Servs., Inc.*, 550 F.3d 764, 766 (9th Cir. 2008) (factual issues are "collateral to the main action" when they involve a "factual inquiry distinct from one addressing the merits")); and (ii) the preservation dispute "d[id] not relate to the merits of the lawsuit" because it "pertain[ed] solely to whether any party has a duty to continue to preserve the . . . computers pending a potential trial on remand," *id.*

Google's preservation-related request presents precisely the same scenario, as Google's preservation of certain data has no bearing on Plaintiffs' appeal of the Court's order granting summary judgment.

***Plaintiffs' Claims and Motion for Class Certification Have Been Denied.*** Plaintiffs have repeatedly argued that sweeping preservation is justified in light of (i) Google's alleged improper collection of user data; and (ii) Google's alleged misrepresentations in the course of discovery. *See, e.g.*, Dkt. 933-2 at 2 (asserting—incorrectly—that preservation of all mapping tables and broad swaths of user data are justified because they allegedly show "that Google is surveilling Chrome users even when they are signed out . . . a practice Plaintiffs are sure a jury will find quite troubling" and that cost-shifting would "penalize Plaintiffs for Google's vexatious discovery tactics"). Neither

of those grounds can justify the continued preservation. As to the first claim, Judge Gonzalez Rogers concluded that the data collection at issue in this case was not improper because Plaintiffs consented to it. Thus, Google has not engaged in any improper collection of any user data, and there is no factual dispute for a jury to decide. Dkt. 935 at 18–22. Plaintiffs' allegations of discovery misconduct are also unsubstantiated; discovery in this case was a hard-fought battle in which *Plaintiffs' counsel* have "repeatedly mischaracterize[d] the record," Dkt. 871-3 at 4, "misstate[d] or exaggerate[d] the record," *id*. at 6, "completely ignore[d] critical text and read others out of context," Dkt. 935 at 24, and "misquote[d] and cherry-pick[ed]" statements from Google documents, *id.* at 26.

***The Preservation Burden Is Immensely Large, and Plaintiffs' Likelihood of Success Immensely Low.*** The relevance of the data covered by the Preservation Orders diminishes with each passing day: even if the Ninth Circuit reversed Judge Gonzalez Rogers' well-reasoned summary judgment order,[1] Plaintiffs would likely not succeed in certifying a Rule 23(b)(3) class given Judge Gonzalez Rogers' *Brown* class certification opinion based on issues equally applicable in *Calhoun*. *See Brown* Dkt. 803. The current Preservation Orders require field-based preservation for log data involving dozens of Google products that are not at issue for all U. S.-based log events. *See* Dkt. 897-3 at 7 ("▬▬▬ is an infrastructure that serves all of Google and stores an enormous amount of data."). However, in the related *Brown* litigation, Judge Gonzalez Rogers found that individualized issues regarding implied consent precluded certifying a damages class for users who are not signed in. *Brown* Dkt 803 at 32. In light of these facts, the field-based preservation requirement for all U.S.-based log events is greatly disproportionate to any class Plaintiffs could likely certify, even if Plaintiffs were successful on appeal.

---

[1] *See, e.g.*, Administrative Office of the U.S. Courts, *Federal Judiciary Statistical Tables*, https://www.uscourts.gov/statistics/table/b-5/statistical-tables-federal-judiciary/2022/06/30 (June 30, 2022) (only 9.1% of 9th Circuit appeals resulted in a reversal of the district court decision in the twelve month period ending June 30, 2022).

If the Court were to maintain the status quo while the appeal is pending (likely longer than a year[2]) and Plaintiffs' counsel attempts to advance a new theory of class certification if their appeal is successful, the burden on Google would be immense. Google has preserved an enormous quantity of data and estimates that continued preservation will require storage of more than ██████ of data and cost more than ██████ in the first three years. Dkt. 897-3 at 6–7. This is in addition to preservation of field-based ██ data and ██ mapping/linking tables that are the subject of Google's Motion for Relief filed on October 27, 2022, which alone would total more than ██ ██ of data and ██████ over the course of three years. *See Id.* at 10; Dkt. 929–3 at 2. ████████████████████████████████████████████████████████████████ Dkt 897-4, ¶¶ 3, 4; Dkt. 929-3 at 2. Further, the impact on Google's U.S.-based users is also immense. Google is being required to preserve a vast amount of data that it has no business purpose to retain, for users who will likely never be a part of any certified class.

**The Relief Google Seeks is Justified.** First, Google respectfully asks that Google's future preservation obligations (accrual of new data) be lifted. Maintaining the preservation pipelines to continue the sampling and other preservation work is labor-intensive and takes a disproportionate toll on Google's business operations. *See e.g.* Dkts. 897–5 ¶ 5; 897–7 ¶ 3; 897–9 ¶ 3. Even *if* some of this data could be relevant (if Plaintiffs were successful on appeal), accruing new data from the preservation pipelines is neither justified nor reasonable.

Second, as to the data that has already been sampled/segregated and preserved, Google respectfully asks the Court to order Plaintiffs to bear the costs of preservation while their appeal is

---

[2] *See, e.g.*, Federal Court Management Statistics, Administrative Office of the U.S. Courts, https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_appsumary0331.2022.pdf (March 2022) (median time from filing notice of appeal to disposition in Ninth Circuit is 12.9 months).

pending if they insist that it has some value to them.[3] Courts have ordered the cost of discovery to be shifted to the plaintiffs where, as here, "the discovery is asymmetrical," "the cost . . . is very significant," and the plaintiffs' decision to pursue a class action causes "the scope of discovery from Defendant [to be] greatly enlarged." *Boeynaems v. LA Fitness Int'l, LLC*, 285 F.R.D. 331, 335 (E.D. Pa. 2012). This case is directly analogous to the situation addressed in *Boeynaems*, where (i) the plaintiffs sought discovery of vast amounts of information related to putative class members that would require substantial resources to produce; (ii) the plaintiffs were "individuals [with] very few documents" who insisted that the defendant produce "millions of documents and millions of items of electronically stored information"; and (iii) the plaintiffs were represented by an experienced class action law firm that "has had outstanding successes for many years in prosecuting class actions, winning hundreds of millions of dollars for their clients, and undoubtedly and deservedly, substantial fees for [it]sel[f]." *Id.* In light of these factors, the court determined that costs should be shifted to the plaintiffs because "[i]f Plaintiffs' counsel has confidence in the merits of its case, they should not object to making an investment in the cost of securing documents from Defendant and sharing costs with Defendant." *Id.*

Plaintiffs have noticed an appeal and—despite the low probability that their appeal will succeed—have refused to share any preservation costs that Google will incur while their appeal is pending. Plaintiffs are represented by "Class Counsel [with] extensive experience litigating internet privacy cases," Dkt. 339-4 at 12, who have won many millions of dollars for their clients in other class actions and recouped significant fees for themselves in the process. *See, e.g.*, Dicello Levitt & Gutzler LLP, "Facebook Agrees to Pay $90 Million to Settle Decade-Long Data Privacy Class

---

[3] Google respectfully requests that Plaintiffs pay the commercial cost of archive Google Cloud Storage for the data amounts Google is ordered to preserve. As Google previously explained (Dkt. 897-4 ¶¶ 4–9), this represents income Google is losing by not storing data for another enterprise client. Google is not attempting to recover the significant engineering costs or processing costs it has already expended.

Action Involving Secret Internet Tracking," https://dicellolevitt.com/case-study/facebook-agrees-to-pay-90-million-to-settle-decade-long-data-privacy-class-action-involving-facebooks-secret-internet-tracking/; Bleichmar Fonti & Auld LLP, "CT Insider Article Praises History Making Teva Settlement," https://www.bfalaw.com/news/ct-insider-article-praises-history-making-teva-settlement (Dec. 15, 2022) ("Connecticut-based newspaper CT Insider published an article praising BFA's success in *obtaining a $420 million settlement* for investors in Teva Pharmaceuticals Ltd . . . . CT Insider reported that BFA and its Connecticut counsel Carmody Torrance, 'put in 77,000 hours investigating and *spent $10 million on outside consultants and experts'* [sic] to assemble evidence of 'a pattern of collusion between Teva and its competitors that drove up prices of at least 12 drugs and generated profits that would never have otherwise existed.'" (emphasis added)); Simmons Hanly Conroy, "Verdicts and Settlements," https://www.simmonsfirm.com/about-us/verdicts-settlements/ ("Simmons Hanly Conroy has represented thousands of clients throughout the country and recovered over *$9.6 billion* in verdicts and settlements — from mesothelioma cases and other areas of litigation — on their behalf." (emphasis added)). In short, "if [Plaintiffs' law firms] believe that this case is meritorious, [they] ha[ve] the financial ability to make an investment" in the cost of preserving data while their appeal is pending. *Boeynaems*, 285 F.R.D. at 335.

Declining to shift costs in this case would effectively force Google to pay for Plaintiffs' appeal—whether it succeeds or not—despite the reality that *they lost the case*. To avoid this unjust result, Google respectfully seeks an order (i) releasing Google from ongoing preservation (*i.e.*, the obligation to preserve new data that has not yet been written into the preservation pipelines); and (ii) either (a) allowing Google to delete the data it is has already collected and is preserving pursuant to the Preservation Orders; or (b) shifting the cost of the preservation of such data to Plaintiffs.

| | | |
|---|---|---|
| 1 | DATED: January 3, 2023 | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| 2 | | By  /s/ *Andrew H. Schapiro* |
| 3 | | Andrew H. Schapiro (admitted *pro hac vice*) |
| | | andrewschapiro@quinnemanuel.com |
| 4 | | Teuta Fani (admitted *pro hac vice*) |
| | | teutafani@quinnemanuel.com |
| 5 | | 191 N. Wacker Drive, Suite 2700 |
| | | Chicago, IL 60606 |
| 6 | | Telephone: (312) 705-7400 |
| 7 | | Facsimile: (312) 705-7401 |
| 8 | | Stephen A. Broome (CA Bar No. 314605) |
| | | stephenbroome@quinnemanuel.com |
| 9 | | Viola Trebicka (CA Bar No. 269526) |
| | | violatrebicka@quinnemanuel.com |
| 10 | | Crystal Nix-Hines (CA Bar No. 326971) |
| | | crystalnixhines@quinnemanuel.com |
| 11 | | Alyssa G. Olson (CA Bar No. 305705) |
| 12 | | alyolson@quinnemanuel.com |
| | | Maria Hayrapetian (CA Bar No. 315797) |
| 13 | | mariehayrapetian@quinnemanuel.com |
| | | 865 S. Figueroa Street, 10th Floor |
| 14 | | Los Angeles, CA 90017 |
| 15 | | Telephone: (213) 443-3000 |
| | | Facsimile: (213) 443-3100 |
| 16 | | |
| 17 | | Diane M. Doolittle (CA Bar No. 142046) |
| | | dianedoolittle@quinnemanuel.com |
| 18 | | Sara Jenkins (CA Bar No. 230097) |
| | | sarajenkins@quinnemanuel.com |
| 19 | | 555 Twin Dolphin Drive, 5th Floor |
| | | Redwood Shores, CA 94065 |
| 20 | | Telephone: (650) 801-5000 |
| 21 | | Facsimile: (650) 801-5100 |
| 22 | | Josef Ansorge (admitted *pro hac vice*) |
| | | josefansorge@quinnemanuel.com |
| 23 | | Xi ("Tracy") Gao (CA Bar No. 326266) |
| | | tracygao@quinnemanuel.com |
| 24 | | Carl Spilly (admitted *pro hac vice)* |
| 25 | | carlspilly@quinnemanuel.com |
| | | 1300 I Street NW, Suite 900 |
| 26 | | Washington D.C., 20005 |
| | | Telephone: (202) 538-8000 |
| 27 | | Facsimile: (202) 538-8100 |
| 28 | | Jomaire A. Crawford (admitted *pro hac vice*) |

|    |                                                                 |
|----|-----------------------------------------------------------------|
| 1  | jomairecrawford@quinnemanuel.com                                |
|    | 51 Madison Avenue, 22nd Floor                                   |
| 2  | New York, NY 10010                                              |
|    | Telephone: (212) 849-7000                                       |
| 3  | Facsimile: (212) 849-7100                                       |
| 4  | Jonathan Tse (CA Bar No. 305468)                                |
|    | jonathantse@quinnemanuel.com                                    |
| 5  | 50 California Street, 22nd Floor                                |
|    | San Francisco, CA 94111                                         |
| 6  | Telephone: (415) 875-6600                                       |
| 7  | Facsimile: (415) 875-6700                                       |
| 8  | *Attorneys for Defendant Google LLC*                            |