# JOINT STATUS REPORT PURSUANT TO BROWN DKT. NO. 830 AND CALHOUN DKT NO. 930

# Redacted Version of Document Sought to Be Sealed

1

**BOIES SCHILLER FLEXNER LLP**
Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293 6858
Facsimile: (415) 999 9695

*Attorneys for Brown Plaintiffs; additional
counsel listed in signature blocks below*

**DiCELLO LEVITT LLC**
David A. Straite (admitted *pro hac vice*)
485 Lexington Ave., Tenth Floor
New York, NY 10017
Tel.: (646) 933-1000
Fax: (646) 494-9648
*dstraite@dicellolevitt.com*

*Attorneys for Calhoun Plaintiffs; additional
counsel listed in signature blocks below*

**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
Andrew H. Schapiro (*pro hac vice*)
andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Stephen A. Broome (CA Bar No. 314605)
stephenbroome@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

*Attorneys for Defendant; additional counsel
listed in signature blocks below*

2

3

4

5

6

7

8

9

10

11

12

13

UNITED STATES DISTRICT COURT

14

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

15

CHASOM BROWN, et al., on behalf of
themselves and all others similarly situated,

16

Plaintiffs,

Case No. 4:20-cv-03664-YGR-SVK

17

vs.

**JOINT STATUS REPORT PURSUANT
TO DKT. NO. 830**

18

GOOGLE LLC,

Referral: Hon. Susan van Keulen, USMJ

19

Defendant.

20

PATRICK CALHOUN, et al., on behalf of
themselves and all others similarly situated,

21

22

Plaintiffs,

Case No. 4:20-cv-05146-YGR-SVK

23

vs.

**JOINT STATUS REPORT PURSUANT
TO DKT. NO. 960**

24

GOOGLE LLC,

Referral: Hon. Susan van Keulen, USMJ

25

Defendant.

26

27

28

The *Brown* Plaintiffs, *Calhoun* Plaintiffs, and Defendant Google LLC (together, the "Parties"), by and through undersigned counsel, respectfully submit this Joint Status Report in response to the January 17, 2023 Order in both *Brown* and *Calhoun*, instructing the Parties to "file a joint status report and proposed path forward on the issue of preservation of the relevant tables by **January 31, 2023**." *Brown* Dkt. 830 at 2; *Calhoun* Dkt. 960 at 3 (emphasis in original).

## I.   GOOGLE'S STATEMENT

### A.   Status Report

The Court ordered the Parties to "engage in a meet and confer for the purpose of Google demonstrating to Plaintiffs how the information in the tables that are the subject of the Motion is contained in or may be derived from other information that Google is preserving." *Id.*  Prior to the meet and confer, Google provided the following to Plaintiffs: (1) sampled data from all fields in ▮▮ of the ▮▮▮▮▮ tables and sampled mapping entries from ▮▮ Analytics tables; (2) relevant source code and code comments; and (3) information regarding the tables, including the source tables from which the ▮▮▮▮ tables derive identifier linkages. Trebicka Decl. Ex. 2 (1/26/23 Letter).

Google's counsel then walked Plaintiffs through the sampled data, source code, and other relevant information, provided explanations and demonstrations of how the mappings/linkages in the tables can be found in or derived from other information that Google is separately preserving, and responded to most of Plaintiffs' questions. A video recording of the meet and confer is available upon request. Thereafter, Google consulted with its engineers to provide answers to Plaintiffs' remaining questions, and agreed to produce additional data. *See id.* Ex. 3 (1/28/23 Letter), Ex. 4 (1/30/23 Letter). Set forth below is a summary of the information Google provided to show Plaintiffs that the linkages in the ▮▮ tables can be found in or be derived from other information that Google is separately preserving.

**▮▮▮▮▮ Tables**. Google produced sampled data to demonstrate that the ▮▮▮▮ tables contain Biscotti ID linkages that are identified as possibly belonging to the same user/device. *See Calhoun* Dkt. 942-5 (GOOG-CALH-00374314) at -353. The sampled data showed a "▮▮▮▮" field containing information of the source tables from which the Biscotti linkages in

1   █████████ are derived. Trebicka Decl. Ex. 2 (1/26/23 Letter) at 3, 4. Google also produced the

2   source code used to define the "███████" field as well as the corresponding comment, which

3   indicate the Biscotti linkages are derived from ████ source mapping/linking tables, which Google is

4   separately preserving. *Id.; see also Calhoun* Dkt. 942-5 (GOOG-CALH-00374314) at -354, -355.

5   The█████████████████████████████████████████████

6   ████. *Brown* Dkt. 781-9; *Calhoun* Dkt. 897-11 (Seah Decl.) ¶ 5; *Calhoun* Dkt. 742-7 (GOOG-

7   CALH-00696086) at -090. Because the underlying mappings/linkings between Biscotti and other

8   identifiers are all being separately preserved, custom pipelines could be built to recreate the Biscotti

9   linkages contained in the ████████ tables. Trebicka Decl. Ex. 3 (1/28/23 Letter) at 1-2.

10      In any event, Plaintiffs' focus on ████████ is misplaced when viewed in the context of

11  their claims and the Court's admonition at the January 10 hearing that only tables "needed to work

12  with any of the data at issue" in *Brown* or *Calhoun* fall under the preservation orders. *Id*. Ex. 1

13  (1/10/23 Brown Hrg. Tr.) 8:4-6. The Biscotti linkages contained in the ████████ tables are

14  derived from ID mappings/linkings that involve either signed-in data (████-Biscotti linking and

15  ████████-Biscotti linking) or App activity data (████████ mapping, ████████ linking, and ████████

16  linking)—but neither of these data flows is at issue in *Brown*. *Id*. Ex. 2 (1/26/23 Letter) at 4; *id*. Ex.

17  4 (1/30/23 Letter) at 2; Dkt. 395-2 (TAC) ¶ 192; Dkt. 83-18. No Biscotti ID received as part of the

18  data flow in *Brown* (signed-out private web browsing data) is linked in the ████████ tables. *Id*.

19      Similarly, in *Calhoun*, Biscotti linkages contained in the ████████ tables derived from

20  ID mappings/linkings involving App activities are not relevant to the data at issue (signed-in and

21  signed-out site web browsing activity data). And the linkages that are derived from ID

22  mappings/linkings involving signed-in data (which may be relevant) are not "needed to work with"

23  the data at issue. The data is keyed to identifiers that are stored with the data (either Biscottis or

24  GAIAs). Neither ████████, nor any other linking table, is required to use those identifiers and

25  work with the keyed data.

26      **Analytics Tables**. Google's arguments why the Analytics tables do not need to be preserved

27  are case-specific. In *Brown*, Google showed that identifier mappings in the Analytics tables are

28  duplicated in Analytics logs preserved under the preservation plan. Specifically, produced entries

from the Analytics tables show mappings between UID/CID to Biscotti or device ID. *See* Trebicka Decl. Ex. 2 (1/26/23 Letter) at 4-6. Because Google Analytics does not receive device IDs (AdID, IDFA) when users visit websites, the only mapping at issue is between UID/CID and Biscotti. *Id.* The Analytics data Google is preserving in *Brown* pursuant to the preservation plan is sampled from the following ███ logs: ██████████████████████████████████████████████ and ████████████████████████████████████████████. Dkt. 587-1. Google demonstrated that for a given sampled entry in the ███ Analytics logs, any mapping of UID/CID to Biscotti (if it exists) will be self-contained within the sampled data because the mappings in the ███ Analytics table are sourced from data stored in Google Analytics logs sources, including the ███ preserved logs. *See Brown* Dkt. 781-10; *Calhoun* Dkt. 897-12 (Pothana Decl.) ¶ 6.

In *Calhoun*, the preserved data sources relating to Google Analytics are Google account-keyed (keyed to GAIA). The ███ Analytics mapping tables at issue in Google's motion do not include mappings to GAIA. *Id.* ¶ 5. Therefore, the Analytics Tables are not "needed to work with any of the data at issue." Trebicka Decl. Ex. 1 (1/10/23 Brown Hrg. Tr.) 8:4-6; *see also id.* 25:20-23 ("To ensure that there's not some – that they're not creating a situation where data is being preserved but ultimately can't be read because these tables were not preserved.").

**B.      Google's Response to Plaintiffs' Statements**

The Court instructed the parties that the meet and confer should be  a "fairly simplified and direct inquiry or demonstration" whereby Google shows Plaintiffs "this is the linking in the ███ tables at issue, and here's where you find it in what is already being preserved," *id.* 25:24-25, 31:22-24, the Court will not "reopen discovery and have a full review of everything in these tables," *id.* 23:9-10, and "[t]his is not an open it all up and have the Plaintiffs look around and see if there's anything that relates." *Id.* Ex. 5 (1/10/23 Calhoun Hrg. Tr.) 22:6-8. Plaintiffs nevertheless insisted on full review of everything in the tables.

Google answered all questions raised at the meet and confer and in the *Brown* Plaintiffs' January 19 email falling within the scope of the Court's January 17 Order. *See id.* Ex. 3 (1/28/23 Letter); *id.* Ex. 4 (1/30/23 Letter); *id.* Ex. 6 (1/23/23 Correspondence). As to the other questions,

1  including "how much data is added and deleted each day," Plaintiffs have not explained how the

2  answers to these questions are relevant. *See id.* Ex. 6 (1/23/23 Correspondence).

3    The *Brown* Plaintiffs tout as a revelation that "███████" identifies a user and claim it only

4  exists in the ████████ tables. That is baseless. Google explained that "███████" is just ██ of

5  the Biscotti IDs grouped together in the ████████ tables as possibly belonging to the same user

6  *or device*, and any linkage between the "███████" and other Biscotti IDs is derived from other

7  mapping/linking tables Google is separately preserving. *Id.* Ex. 4 (1/30/23 Letter) at 1-2. After

8  ████████ groups/links multiple Biscotti IDs, it defines ██ of them as the "███████." *Id.* at 2.

9    The *Calhoun* Plaintiffs argue that they need the mappings between CID to Device ID for

10 potential class members who only have their device IDs. But device IDs are only received from App

11 events; Google Analytics does not receive device IDs when users visit Google Analytics customer

12 websites. *Brown* Dkt. 781-10; *Calhoun* Dkt. 897-12 (Pothana Decl.) ¶ 5. Plaintiffs therefore would

13 not need any CID to Device ID mapping "to work with any of the data at issue." Trebicka Decl. Ex.

14 1 (1/10/23 Brown Hrg. Tr.) 8:4-6.

15    **C.    Proposed Path Forward**

16    Google has demonstrated that the ████████████ and Analytics mapping/linking tables are

17 not "needed to work with any of the data at issue." *Id*. Additional meet and confers are not likely to

18 further their intended purpose. To the contrary, the *Brown* Plaintiffs state they intend to use

19 information they learned in the meet and confers for an *improper* purpose: to further their separate

20 sanctions motion. The *Calhoun* Plaintiffs likewise seek information related to "what is in the table,"

21 which the Court specifically stated is not a proper inquiry. *Id.* 26:6-7 ("So it's a nonstarter to say

22 that we need to know what all of that data is."). Accordingly, the Court can rule on Google's motion

23 for relief.

24 **II.    BROWN PLAINTIFFS' STATEMENT**

25    The *Brown* Plaintiffs and Google have made some progress over the last three weeks, but

26 many questions remain unanswered. What is clear from the parties' January 27, 2023 meet and

27 confer is that the information contained in the ██ matching and linking tables (the "Data Sources")

28 *is not entirely duplicative* and Google has *again failed to disclose and preserve highly relevant*

1   *information*. Indeed, while Google has tried to evade further discovery of the Data Sources, which

2   Plaintiffs outline below, Google has confirmed that the Data Sources contain unique "███████"

3   *that identify users—not devices—based on a method that Google had not previously disclosed*.

4   Google overrepresents the "source code" and "samples" referenced in their letter, which are small

5   snippets, not complete examples. For the reasons set forth below, the Court should order Google to

6   make its engineers available in meet and confers to fully answer the questions ordered by this Court.

7       At the January 10, 2023 hearing, the Court determined that the Data Sources appeared to fall

8   under the prior preservation orders. *See* 1/10/23 Hrg. Tr. at 7:17–22. While the Court focused on the

9   cost and proportionality of preservation, the Court recognized that "there's not a lot of evidence"

10  and "Plaintiffs haven't had an opportunity to explore" the Data Sources Google seeks to delete. *Id.*

11  at 10:15–15. Recognizing that lack of evidence, the Court ordered the parties to meet and confer

12  with their respective engineers and experts so that Plaintiffs could confirm Google's representation

13  that "the ██ mapping tables that we have identified, all of the mapping or linking that is relevant

14  per Your Honor's Order is already duplicated elsewhere in the data" and "[e]verything that Your

15  Honor held is relevant as far as the mapping or linking is already being preserved." *Id.* at 12:4–13.

16      On January 19, 2023, after working with their consultants, the *Brown* Plaintiffs provided a

17  list of topics and issues they wished to address during the meet and confer. This included: the type

18  of information contained in the data sources (*e.g.*, identifiers, proto, schema, what the data sources

19  are keyed to); storage-related questions (*e.g.*, whether the data is sampled and, if so, at what rate,

20  the size of each data source, daily net gain/loss, retention periods); how the data sources fit into

21  Google's structure (*e.g.*, the upstream and downstream sources for each data source; the products,

22  services, and algorithms that use these data sources); whether the data is US-based or worldwide;

23  and whether Google would provide samples of the data contained in the data sources. The *Brown*

24  Plaintiffs requested Google's availability so that their consultants and Google's engineers could

25  meet and confer to discuss these matters and move toward any compromise the Court envisioned.

26      After follow-up, Google responded on January 23, 2023 and provided the names of the data

27  sources, confirmed that ██ identifier was stored in the ███████ tables, but otherwise

28  unilaterally determined that remaining questions the *Brown* Plaintiffs posed were irrelevant, a tactic

1    it has repeated throughout this litigation. Instead of arguing over Google's continued refusal to

2    provide basic information about the Data Sources, Plaintiffs nevertheless confirmed their

3    consultants would be available for a meet and confer with Google's engineers on January 27, 2023.

4           Fewer than 15 hours before that scheduled meet and confer, Google sent a seven-page,

5    highly technical document purportedly demonstrating how the Data Sources were duplicative. The

6    *Brown* Plaintiffs objected to this belated disclosure, but said they would still attend the meet and

7    confer with their consultants to achieve any practical progress. Notably, Google sent its lawyers—

8    but no engineers—to attempt to answer the highly technical questions. At the *Brown* Plaintiffs'

9    request, the meet and confer was recorded. The *Brown* Plaintiffs have no objection to submitting

10   that video for the Court's and Special Master's review. The *Brown* Plaintiffs' consultants are still

11   reviewing the substance of this letter and will provide Google with additional questions this week.

12          While Google's lawyers could not answer most of the consultants' questions, the few

13   questions they could answer were telling. For the ███████████ tables, Google produced data

14   from ███ (the contents of the others are unknown), which confirmed what Plaintiffs have long

15   suspected: Biscotti identifiers from different devices, browsers, and browsing sessions are

16   connected via a single, unified "████████" that ***identifies a user—not a device***. Those Biscottis are

17   also associated with other identifiers, such as Device IDs, PPIDs, and others. However, these ███

18   ███ and the overall linkages between the linked Biscottis have not been preserved at all, and they

19   ***only exist in the ███████████████ tables, not in the preserved logs and tables***. Google ***has not***

20   ***explained how different IDs belonging to a single user are linked under a*** ███████ (and could

21   not provide sufficient details as of this filing[1]). The data for these ███████████ tables is drawn

22   from myriad sources at Google, including: ███████, ███████, and what Google believes (but could

_____

23

24   [1] In its January 28, 2023 correspondence, Google provided a hypothetical example of using a "custom
     pipeline" to create a linkage between two Biscotti IDs using a common AdID. This hypothetical does not

25   nearly capture the various IDs (which may include ███████ IDs derived from GAIA IDs, ███████ IDs, and
     others) that may reside within and outside of any data sources nor how those IDs are linked under a ███

26   ███ within the ███████████ tables. Google provided neither sample entries from any of the upstream
     linking tables nor any code or "custom pipeline" that demonstrate that the linkages within the ███████████

27   tables can be efficiently recreated. On January 31 (2:48a ET) Google provided a letter addressing ███████
     ███ and IDs contained in Analytics tables that the *Brown* Plaintiffs' consultants are still reviewing.

28   Notably, the letter does not answer whether ███████████ tables contain private browsing detection bits.

1   not confirm) to be deprecated sources that were keyed to PPID, ███, third party IDs, and ███

2   IDs. Similarly, for the ███ Analytics tables Google confirmed that Biscottis are associated with UID

3   and CID, but also contain linkages to Device ID (*e.g.*, ADID) and other identifiers.

4   　　　　The *Brown* Plaintiffs are hopeful that Google will meaningfully participate further, but many

5   of the *Brown* Plaintiffs' questions remain unanswered: what is unique to the Data Sources and not

6   contained in the other data sources that Google has represented are being preserved; what other

7   identifiers are in the Data Sources (*e.g.*, IDFA, GAIA, Zwieback, ███, and others); whether the

8   Data Sources contain any private browsing bits or heuristics (disclosed or not); if and when other

9   data sources keyed to other identifiers (*e.g.*, PPID, ███, third party IDs, and ███ IDs) were

10  deprecated; whether Google is preserving the algorithm that establishes the linkages between IDs;

11  whether the Data Sources were written during the entire class period; whether the Biscottis

12  contained in the ███ tables are the same (or linked) to the Biscottis contained in the

13  Analytics tables; the difference (if any) between the Doubleclick User ID and the UID in the

14  Analytics tables; and whether Analytics tables combine identifiers (*e.g.* CIDs, UIDs, device IDs).

15  　　　　The simplest way to address many of these questions is for Google to provide a sample of

16  the data from each of the Data Sources. Google has refused—the "sample" that Google referenced

17  is a portion of an entry, and did not contain all columns and fields. Plaintiffs should not be compelled

18  to pay the cost of storage without knowing what is being stored. Google also should not be permitted

19  to delete this data without consequence (*e.g.*, waiving defenses to individual actions brought).

20  　　　　Plaintiffs at a minimum respectfully request that the Court order the parties to bring their

21  engineers and consultants to another meet and confer to cover the pending questions from the *Brown*

22  Plaintiffs. If the Court is not inclined to entertain this dispute further, the *Brown* Plaintiffs will rely

23  on the information gathered through this process to further support their pending sanctions request.

24  **III.     CALHOUN PLAINTIFFS' STATEMENT**

25  　　　　**A.     *Calhoun Plaintiffs' Status Update***:

26  　　　　On January 19, 2023, the *Calhoun* Plaintiffs wrote to Google counsel and asked for the

27  following information in preparation for the parties' joint meet and confer ordered by the Court:

28  　　　　　　1.   Transcript of *Brown* portion of the sealed Jan. 10, 2023 hearing;

2.   Full unredacted versions of certain sealed documents from the *Brown* docket; and

3.   All documents or other information provided to *Brown* counsel, or the Court, or the Special Master, regarding the mapping tables or regarding the identi[t]y of (and preservation periods for) any data source being preserved in *Brown*.  This would include transcripts of any *Brown*-only conference with the Special Master related to the same.

Google counsel provided the first two categories of documents on January 20, 2023, but refused to provide the rest.

On Friday, January 27, 2023, the Parties held a joint Zoom meet-and-confer.  The night before, Google transmitted a letter providing additional information about the mapping tables at issue.  Both the *Brown* Plaintiffs and the *Calhoun* Plaintiffs brought their experts to the call, but Google elected only to have two attorneys present (no experts, no engineers) and counsel were unable to answer many questions posed by the Plaintiffs and their experts. The Zoom call was recorded with the consent of all parties, and the Plaintiffs had it transcribed. A copy of the transcript can be provided to the Court upon request.

During the call, Plaintiffs asked multiple substantive questions about the mapping tables, 19 of which Google counsel said they could not answer and would need to get back to the parties.  In correspondence sent Saturday, January 28, 2023, Google provided answers to three of these 19 questions, and provided additional details about the mapping tables. Google also provided an additional letter last night, January 30, 2023 with some additional information.  But many questions remain unanswered.

In consultation with their expert, the *Calhoun* Plaintiffs are now digesting Google's letters of January 27, 28 and 30, and will have additional questions within the next few days.

**B.**   ***Calhoun Plaintiffs' Proposal for Next Steps***:

It is clear from the parties' efforts over the past few weeks that it may be possible to reduce the burdens associated with preserving **duplicate** data in the mapping tables. However, it is equally clear that the parties must undertake additional efforts to understand ways to eliminate burdens associated with **derived** data. In addition, there appears to be impasse with respect to whether

Google will disclose the categories of information contained in the mapping tables beyond just what Google deems to be the relevant categories of identifiers. If the *Calhoun* Plaintiffs are to agree to Google's deletion of a mapping table, we must first know what is in the table.

For example, during the January 27, 2023 Zoom conference, as Google counsel gave additional explanations for the content of the January 26, 2023 letter, it was clear that at least one table maps device IDs to Biscotti IDs. Plaintiffs asked "so, if this table were deleted, are you – is there another source where you're still able to map device ID to Biscotti and CID, or is this the only source that has this mapping?" Jan. 27, 2023 Zoom Conf. Tr. 35:7-11. Google counsel did not know the answer, and took the position that it wasn't even relevant. Zoom Tr. 35:12-25. But of course if a potential class member only has her device ID, and Google is only preserving data keyed to Biscotti IDs, or CIDs, or GAIAs, or Zwieback IDs, it is essential that Google not discard the only preserved source of device IDs mapped to these other IDs.

The *Calhoun* Plaintiffs therefore propose to proceed along the following schedule:

A.  The Plaintiffs to provide a list of questions to Google no later than Monday, February 6, 2023.

B.  The parties to meet and confer via Zoom (including all necessary experts and engineers) no later than one week later, unless Google represents that it needs more time to gather responses.

C.  The parties to provide a second joint status update promptly thereafter identifying any remaining areas of impasse and/or a proposal for modifying the Preservation Orders if agreement can be reached.

DATED: January 31, 2023

Respectfully submitted,

By: */s/ Mark Mao*
Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com

**BLEICHMAR FONTI & AULD LLP**

By:       */s/ Lesley Weaver*
Lesley Weaver (Cal. Bar No. 191305)

| | |
|---|---|
| 1 | Beko Reblitz-Richardson (CA Bar No. 238027) |
| 2 | brichardson@bsfllp.com<br>Erika Nyborg-Burch |
| 3 | enyborg-burch@bsfllp.com<br>44 Montgomery Street, 41st Floor |
| 4 | San Francisco, CA 94104<br>Tel: (415) 293 6858 |
| 5 | Fax: (415) 999 9695 |
| 6 | James W. Lee (*pro hac vice*) |
| 7 | jlee@bsfllp.com<br>Rossana Baeza (*pro hac vice*) |
| 8 | rbaeza@bsfllp.com<br>100 SE 2nd Street, Suite 2800 |
| 9 | Miami, FL 33130<br>Tel: (305) 539-8400 |
| 10 | Fax: (305) 539-1304 |
| 11 | William Christopher Carmody (*pro hac vice*)<br>bcarmody@susmangodfrey.com |
| 12 | Shawn J. Rabin (*pro hac vice*)<br>srabin@susmangodfrey.com |
| 13 | Steven Shepard (*pro hac vice*)<br>sshepard@susmangodfrey.com |
| 14 | Alexander P. Frawley (*pro hac vice*)<br>afrawley@susmangodfrey.com |
| 15 | SUSMAN GODFREY L.L.P.<br>1301 Avenue of the Americas, 32nd Floor |
| 16 | New York, NY 10019<br>Tel: (212) 336-8330 |
| 17 | Amanda Bonn (CA Bar No. 270891) |
| 18 | abonn@susmangodfrey.com<br>SUSMAN GODFREY L.L.P. |
| 19 | 1900 Avenue of the Stars, Suite 1400<br>Los Angeles, CA 90067 |
| 20 | Tel: (310) 789-3100 |
| 21 | John A. Yanchunis (*pro hac vice*)<br>jyanchunis@forthepeople.com |
| 22 | Ryan J. McGee (*pro hac vice*)<br>rmcgee@forthepeople.com |
| 23 | MORGAN & MORGAN, P.A.<br>201 N Franklin Street, 7th Floor |
| 24 | Tampa, FL 33602<br>Tel: (813) 223-5505 |
| 25 | Fax: (813) 222-4736 |
| 26 | Michael F. Ram (CA Bar No. 104805)<br>mram@forthepeople.com |
| 27 | MORGAN & MORGAN, P.A.<br>711 Van Ness Avenue, Suite 500 |
| 28 | San Francisco, CA 94102<br>Tel: (415) 358-6913 |

Angelica M. Ornelas (Cal. Bar No. 285929)
Joshua D. Samra (Cal. Bar No. 313050)
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
*lweaver@bfalaw.com*
*aornelas@bfalaw.com*
*jsamra@bfalaw.com*

**DiCELLO LEVITT LLC**

By:      */s/ David A. Straite*
David A. Straite (admitted *pro hac vice*)
Corban Rhodes (admitted *pro hac vice*)
485 Lexington Ave., Tenth Floor
New York, NY 10017 Tel.:
(646) 933-1000
Fax: (646) 494-9648
*dstraite@dicellolevitt.com*
*crhodes@dicellolevitt.com*

Amy E. Keller (admitted *pro hac vice*)
Adam Prom (admitted *pro hac vice*)
Sharon Cruz (admitted *pro hac vice*)
Ten North Dearborn Street, 6th Fl.
Chicago, Illinois 60602
Tel.: (312) 214-7900
*akeller@dicellolevitt.com*
*aprom@dicellolevitt.com*
*scruz@dicellolevitt.com*

**SIMMONS HANLY CONROY LLC**

By:      */s/ Jason 'Jay' Barnes*
Jason 'Jay' Barnes (admitted *pro hac vice*)
Jason 'Jay' Barnes (admitted *pro hac vice*)
An Truong (admitted *pro hac vice*)
Eric Johnson (admitted *pro hac vice*)
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel.: (212) 784-6400
Fax: (212) 213-5949
*jaybarnes@simmonsfirm.com*
*atruong@simmonsfirm.com*
*ejohnson@simmonsfirm.com*

*Attorneys for Calhoun Plaintiffs*

Case No. 4:20-cv-03664-YGR-SVK
Case No. 4:20-cv-05146-YGR-SVK
JOINT STATUS REPORT

*Attorneys for Brown Plaintiffs*

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

By: */s/ Andrew H. Schapiro*
Andrew H. Schapiro (admitted pro hac vice)
andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel: (312) 705-7400
Fax: (312) 705-7401

Stephen A. Broome (CA Bar No. 314605)
stephenbroome@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: (213) 443-3000
Fax: (213) 443-3100

Jomaire Crawford (admitted pro hac vice)
jomairecrawford@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Tel: (212) 849-7000
Fax: (212) 849-7100

Josef Ansorge (admitted pro hac vice)
josefansorge@quinnemanuel.com
1300 I Street NW, Suite 900
Washington D.C., 20005
Tel: (202) 538-8000
Fax: (202) 538-8100

Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: (415) 875-6600
Fax: (415) 875-6700

*Attorneys for Defendant Google LLC*

1

## **ATTESTATION OF CONCURRENCE**

2

I am the ECF user whose ID and password are being used to file this Joint Submission.

3

Pursuant to Civil L.R. 5-1(h)(3), I hereby attest that each of the signatories identified above has

4

concurred in the filing of this document.

5

6

Dated: January 31, 2023                           By_____*/s/ Andrew H. Schapiro*_____

7
                                                                                      Andrew H. Schapiro
8                                                                                     *Counsel on behalf of Google LLC*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28