**BLEICHMAR FONTI & AULD LLP**
Lesley E. Weaver (SBN 191305)
Anne K. Davis (SBN 267909)
Joshua D. Samra (SBN 313050)
1330 Broadway, Suite 630
Oakland, CA 94612
Tel.: (415) 445-4003
Fax: (415) 445-4020
*lweaver@bfalaw.com*

**SIMMONS HANLY CONROY LLP**
Jason 'Jay' Barnes (admitted *pro hac vice*)
Jayne Conroy (admitted *pro hac vice*)
An Truong (admitted *pro hac vice*)
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel.: (212) 784-6400
Fax: (212) 213-5949
*jaybarnes@simmonsfirm.com*

**DiCELLO LEVITT LLP**
David A. Straite (admitted *pro hac vice*)
Julia Veeser (admitted *pro hac vice*)
Adam Prom (admitted *pro hac vice*)
485 Lexington Avenue, Suite 1001
New York, NY 10017
Tel.: (646) 933-1000
*dstraite@dicellolevitt.com*

*Counsel for Plaintiffs*
*[Additional counsel on signature page]*

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION

| | |
|---|---|
| PATRICK CALHOUN, et al., *on behalf of themselves and all others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 4:20-cv-05146-YGR-SVK<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF RENEWED MOTION FOR CLASS CERTIFICATION**<br><br>Judge:      Hon. Yvonne Gonzalez Rogers<br>Date:       February 4, 2025<br>Time:       2:00 pm<br>Courtroom:  1, 4th Floor |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

# **TABLE OF CONTENTS**

**PAGE**

I.    INTRODUCTION ................................................................................................. 1

II.   ARGUMENT ....................................................................................................... 2

  A.    The Challenged Conduct Is Whether Chrome Sends PI to Google When a Person Has Not Enabled Sync ................................................................... 2

  B.    Common Issues Predominate for All Claims............................................... 4

    1.    Common Issues Predominate for the Breach of Contract Claim.................. 4

    2.    Common Issues Predominate for the UCL Claim ........................................ 9

    3.    Common Issues Predominate for the CIPA Claim ................................... 10

    4.    Common Issues Predominate for the Intrusion Claim................................ 12

  C.    The Requirements of Rule 23(a) Are Met. ................................................ 14

  D.    Alternatively, Rule 23(c)(4) Certification Is Appropriate ........................ 14

  E.    Certification Under Rule 23(b)(2) Is Appropriate .................................... 15

III.  CONCLUSION................................................................................................... 15

# TABLE OF AUTHORITIES

<b>PAGE(S)</b>

## CASES

*Allen v. Hylands*,
   300 F.R.D. 643 (C.D. Cal. 2014) ................................................................ 10

*Avilez v. Pinkerton Gov't Svcs, Inc.*,
   596 F. App'x 579 (9th Cir. 2015) .............................................................. 15

*Backhaut v. Apple*,
   2015 WL 4776427 (N.D. Cal. Aug. 13, 2015) ........................................... 6

*Brown v. Google LLC*,
   2021 WL 6064009 (N.D. Cal. Dec. 22, 2021) ............................................ 7

*Brown v. Google LLC*,
   685 F.Supp.3d 909 (N.D. Cal. 2023) ........................................................ 12

*Calhoun v. Google*,
   645 F.Supp.3d 916 (N.D. Cal. 2022) .......................................................... 1

*Calhoun v. Google, LLC*,
   113 F.4th 1141 (9th Cir. 2024) ........................................................ *passim*

*Calhoun v. Google, LLC*,
   2023 WL 11988490 (N.D. Cal. May 16, 2023) ..................................... 9, 14

*Campbell v. Facebook*,
   315 F.R.D. 250 (N.D. Cal. 2016) ............................................................... 6

*Cappello v. Walmart*,
   394 F.Supp.3d 1015 (N.D. Cal. 2019) ........................................................ 9

*Congdon v. Uber Techs., Inc.*,
   291 F.Supp.3d 1012 (N.D. Cal. 2018) ..................................................... 4, 5

*Daniel v. Ford Motor Co.*,
   806 F.3d 1217 (9th Cir. 2015) ................................................................... 5

*Epic Games, Inc. v. Apple, Inc.*,
   559 F.Supp.3d 898 (N.D. Cal. 2021) ........................................................ 10

*Fed. Trade Comm'n v. Neovi*,
   604 F.3d 1150 (9th Cir. 2010) ................................................................. 10

*Founding Members of the Newport Beach Country Club v.
   Newport Beach Country Club, Inc.*,
   109 Cal.App.4th 944 (2003) ...................................................................... 5

*Griffith v. TikTok, Inc.*,
   2024 WL 4308813 (C.D. Cal. Sept. 9, 2024) ...................................... 12, 13

*Hammerling v. Google LLC*,
   615 F.Supp.3d 1069 (N.D. Cal. 2022) ...................................................... 12

*Hart v. TWC Prod. and Tech LLC*,
   2023 WL 3568078 (N.D. Cal. Mar. 30, 2023) .......................................... 13

*In re Facebook, Inc. Internet Tracking Litig.*,
    956 F.3d 589 (9th Cir. 2020) ........................................................................ 12, 13

*In re Google Inc. Gmail Litig.*,
    2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) ............................................. 6

*In re Google Inc.*,
    2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ............................................ 3

*In re Google RTB Consumer Priv. Litig.*,
    606 F.Supp.3d 935 (N.D. Cal. 2022) ......................................................... 12

*In re Google RTB Consumer Privacy Litig.*,
    2024 WL 2242690 (N.D. Cal. Apr. 4, 2024) ............................................. 6

*In re Tobacco II Cases*,
    46 Cal.4th 298 (2009) ................................................................................ 10

*Javier v. Assurance IQ, LLC*,
    2022 WL 1744107 (9th Cir. 2022) ............................................................ 11

*Kearney v. Salomon Smith Barney, Inc.*,
    39 Cal.4th 95 (2006) .................................................................................. 12

*Martin v. Behr Dayton Thermal Prods. LLC*,
    896 F.3d 405 (6th Cir. 2018) ..................................................................... 15

*McCoy v. Alphabet, Inc.*,
    2021 WL 405816 (N.D. Cal. Feb. 2, 2021) ............................................... 12

*Mejdrech v. Met-Coil Systems Corp.*,
    319 F.3d 910 (7th Cir. 2003) ..................................................................... 14

*Norcia v. Samsung*,
    845 F.3d 1279 (9th Cir. 2017) ..................................................................... 7

*Opperman v. Path*,
    2016 WL 3844326 (N.D. Cal. July 15, 2016) ........................................... 13

*Parsons v. Ryan*,
    754 F.3d 657 (9th Cir. 2014) ..................................................................... 14

*Prouty v. Gores Tech. Grp.*,
    121 Cal.App.4th 1225 (2004) ...................................................................... 5

*Ribas v. Clark*,
    696 P.2d 637 (1985) ................................................................................... 12

*Rodriguez v. Google LLC*,
    2024 WL 38302 (N.D. Cal. Jan. 3, 2024) .................................................. 13

*Rodriguez v. Hayes*,
    591 F.3d 1105 (9th Cir. 2010) ................................................................... 15

*Ruiz Torres v. Mercer Canyons Inc.*,
    835 F.3d 1135 (9th Cir. 2016) ................................................................... 14

*Russell v. Educ. Comm'n for Foreign Med. Graduates*,
    15 F.4th 259 (7th Cir. 2021) ..................................................................... 15

*Smith v. Facebook, Inc.*,
    745 F.App'x 8 (9th Cir. 2018) ................................................................ 6, 7

*Svenson v. Google*,
    2015 WL 1503429 (N.D. Cal. Apr. 1, 2015) .......................................... 9

*Torres v. Prudential Financial, Inc.*,
    2024 WL 48942898 (N.D. Cal. Nov. 26, 2024) ................................*passim*

*True Health Chiro., Inc. v. McKesson Corp.*,
    896 F.3d 923 (9th Cir. 2018) ............................................................ 4, 10

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016) ...........................................................................*passim*

*Ward v. United Airlines*,
    2021 WL 534364 (N.D. Cal. Feb. 12, 2021) ........................................ 15

*Weatherby Locums Inc. v. Kern Cty. Hosp. Auth.*,
    2024 WL 4729057 (E.D. Cal. Nov. 8, 2024) ........................................ 5

**STATUTES**

Cal. Civ. Code § 1565 ........................................................................... 14

Cal. Civ. Code § 1641 ............................................................................. 5

Cal. Civ. Code § 3534 ............................................................................. 5

Cal. Civ. Proc. Code § 1859 ................................................................... 5

**OTHER AUTHORITIES**

Antonin Scalia & Bryan A. Garner,
    *Reading Law: The Interpretation of Legal Texts* 69 (2012) ................ 11

*In re Google Inc. Gmail Litig.*,
    Wong Declaration, 2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) ...... 11

Restatement (Second) of Contracts § 211 ........................................... 5, 6

## I.    INTRODUCTION

Google's opposition to class certification tries, unsuccessfully, to raise from the dead the arguments it lost before the Ninth Circuit and in other actions. First, Google rehashes losing arguments that it obtained actual consent for the challenged conduct: whether Chrome sends personal information to Google, violating its express contract promise not to. Second, Google argues that whether personal information ("PI") is sent is an individualized issue. But both of these merits inquiries turn on common facts.

As to consent, Google still has not identified any document that contradicts the core promise at issue: Chrome will not send users' "PI" to Google when users are Not Synced. There isn't one. Instead, Google points to vague—and common—disclosures that do not contradict that core promise. The Ninth Circuit considered these, and held that this question must go to a jury. *Calhoun v. Google, LLC*, 113 F.4th 1141, 1151 (9th Cir. 2024). Binding precedent is clear: class certification cannot be denied on a core question of fact (here, consent) unless the Court "conclude[s] that no reasonable juror could" side with the moving Plaintiff. *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 459 (2016). Because the law of this case is now that consent should go to a jury because a reasonable juror could find for plaintiffs, and common promises in the contract predominate, damages and injunctive classes should be certified on that issue. Those predominance arguments also apply to the three other causes of action. *See Torres v. Prudential Financial, Inc.*, 2024 WL 4894289, at *8 (N.D. Cal. Nov. 26, 2024) (Breyer, J.) (applying *Calhoun* to CIPA consent).

Second, Google argues whether the data sent is PI is individualized. Google now claims that (1) the data is not always "identical," and (2) Google does not link the data to each class member's Google Account, so it is not PI. But Google spent a considerable part of this case relying on a (now discredited) defense about "at-issue data." The "at-issue data," Google informed the Court, is the same data that Google repeatedly argued that was common not only to Google Accountholders who use Chrome, but *all web-browsers*, regardless of settings. *See Calhoun v. Google*, 645 F.Supp.3d 916, 930 (N.D. Cal. 2022) ("at-issue data transmissions are the same irrespective of the browser," even when "adjust[ing] the settings in Chrome."). Now Google reverses course, claiming that breach is not "common," because the data is not "identical." But it is the same core set of data for hundreds

of millions of Google Accountholders. Whether or not it is commonly "PI" is a different question than whether it is identical and will be resolved on common evidence.

Google's other defenses fail as well. On the contract claim, Google waives challenges to the uniformity of the promises and damages (which it vociferously challenged in 2021) but claims class members could have read third-party website disclosures to determine whether Google's promises were correct. This, says Google, demands an individualized inquiry into whether consent was "implied." However, an inquiry into what Google or others say without reference to Chrome or sync is not relevant, and there is no legal support for the argument that extrinsic evidence is admissible to provide consent to breach of an express contract of adhesion like this one. Instead, as the Ninth Circuit held, the question is whether a reasonably objective person, reading Google's disclosures, would think that Chrome would send PI to Google when users do not sync. *Calhoun*, 113 F.4th at 1151. And Google entirely ignores, and therefore waives, Plaintiffs' argument regarding the parol evidence rule. There is no persuasive argument for not certifying the contract claim here.

Google challenges typicality by asserting that not everyone read the contract. But every first-year law student knows this is not relevant to a contract claim. Equally without merit are Google's arguments on the other claims. On CIPA, Google challenges "contents" on the merits but ignores that it is a common question. On UCL, it claims "reliance" is required but ignores the only cases directly on point. And on intrusion, it resorts to inventing a new element. These concessions and contradictions support certification of (b)(3) damages classes for all four claims. Google mounts no serious defense to injunctive relief. Although Google removed the Chrome Privacy Notice ("CPN") from its website, Google cannot dispute that its conduct continues for class members who signed up before October 4, 2023. Plaintiffs' request for injunctive relief is live. Plaintiffs respectfully request that the Court grants (b)(3) and (b)(2) certification for each claim.

## II.    ARGUMENT[1]

### A.    The Challenged Conduct Is Whether Chrome Sends PI to Google When a Person Has Not Enabled Sync

---

[1] Google initially challenged Superiority, Damages, and the lack of a Trial Plan (Dkt. 429 at 20-25) but does not challenge them here. Nor does Google challenge commonality, numerosity, or adequacy. Plaintiffs have met their burden on these issues.

The challenged conduct here is whether "*Chrome … send[s] users' personal information to Google* regardless of whether a user elects to Sync." Dkt. 163 ¶ 3. Rather than address this claim head-on, Google misdirects by focusing exclusively on "*data collection*." This mis-framing, on its own, presents "a threshold common question whether any of the sources [identified by Google] provided notice of the challenged conduct in the first place." *Torres*, 2024 WL 4894289, at *8.

Identifying the "challenged conduct" here is critical because, "although consent can be express or implied," it must be "actual," which means that "the disclosures must 'explicitly notify' users of the conduct at issue." *Calhoun*, 113 F.4th at 1146 (quoting *In re Google Inc.*, 2013 WL 5423918, at *13 (N.D. Cal. Sept. 26, 2013)). The difference in focus is a core, common merits question: whether class members actually have the ability to control whether Chrome sends their PI to Google. Chrome promised users they could. But it is undisputed, as the Ninth Circuit noted, that Chrome is sending their PI to Google.[2]

 Having made these promises and specified that the CPN governs above all other documents when using Chrome, it is a threshold class-wide legal question whether Google can now point to extra-contractual documents or statements that do not address the "challenged conduct"—or garner explicit consent—to defeat the CPN promises. *See Torres*, 2024 WL 4894289, at *8. Even if the legal answer is yes—which it is not—it would be a class-wide issue of fact whether any such statement could defeat the uniform promises in the Chrome contract. In other words, even if the Court finds that statements which do not address whether Chrome sends PI to Google regardless of sync are admissible, Plaintiffs will make a common argument to the jury that none of it matters because such statements do not "provide[] notice of the challenged conduct in the first place." *Id.* As the Supreme Court has explained:

> [Even] [o]nce a district court finds evidence to be admissible, its persuasiveness is, in general, a matter for the jury. Reasonable minds may differ as to [a core question of fact]. Resolving that question, however, is the near-exclusive province of the jury. The District Court could have denied class certification on this ground only if it concluded that no reasonable juror could have [sided with the Plaintiffs].

---

[2] Google argues "Sync is not a privacy tool." Opp. at 4. But the CPN commonly promised otherwise, stating "Chrome has different modes that you can use to change or improve your browsing experience. Privacy practices are different depending on the mode that you're using." Ex. A19.

1    *Tyson Foods*, 577 U.S. at 459. Here, the Ninth Circuit already ruled that reasonable jurors could side

2    with Plaintiffs on consent, ordering that "the issue of consent—assuming a plaintiff class is

3    certified—is remanded to the district court for trial." *Calhoun*, 113 F.4th at 1151. Thus, per *Tyson*

4    *Foods*, the Court cannot deny certification based on Google's consent defense, express or implied.

5         **B.    Common Issues Predominate for All Claims**

6              **1.    <u>Common Issues Predominate for the Breach of Contract Claim</u>**

7         The elements for breach of contract are: (1) the existence of the contract; (2) plaintiff's

8    performance; (3) defendant's breach; and (4) damages. *See Congdon v. Uber Techs., Inc.*, 291

9    F.Supp.3d 1012, 1020 (N.D. Cal. 2018). Here, Google does not dispute that contract existence,

10   contents, formation, performance, and damages are capable of class-wide resolution. Instead, Google

11   limits its contract arguments to consent and breach, both of which fail.

12              a)    <u>Express Consent is a Common Question on the Contract Claim</u>

13        Google challenges "express consent" by arguing that the "Consent Bump" and New Account

14   Creation Agreement ("NACA") destroy predominance. Opp. at 15-16. But the Ninth Circuit already

15   rejected Google's arguments based on them. *Calhoun*, 113 F.4th at 1145-46. And Google admits the

16   documents are "similar" (Opp. at 5) and common (*see, e.g.*, Dkt. 1074, Fair Decl. at ¶ 22 ("Beginning

17   in July 2016, existing Google Accountholders were taken directly to the Consent Bump

18   Agreement."), ¶ 44 (After June 2016, NACA was "required … to create an account.")).[3] This

19   supports certification. *See True Health Chiro., Inc. v. McKesson Corp.*, 896 F.3d 923, 932 (9th Cir.

20   2018) (class-wide consent determined "by simply examining" common "agreements").

21        Google then argues, "even if an objective, reasonable user standard applie[s], individualized

22   questions … predominate because the Court would have to consider what a reasonable user would

23   understand from the particular sources of information to which each individual class member was

24   exposed." Opp. at 10, n.13. But Google's defense requires the Court to ignore four core rules of

25   contract interpretation. First, subjective understanding is not relevant. *See Founding Members of the*

---

26
27   [3] Google ignores that (1) Plaintiffs narrowed the class to Accountholders; and (2) Google maintains
     records of these events (Dkt. 1074, Fair Decl. ¶¶ 39-43, 57-62), each of which commonly point to
     the statement, "data saved in your Google Account may include … [y]our Chrome history (if Chrome
28   Sync is turned on)." *Id.* ¶¶ 54-55.

*Newport Beach Country Club v. Newport Beach Country Club, Inc.*, 109 Cal.App.4th 944, 956 (2003) ("California recognizes the objective theory of contracts."); Restatement (Second) of Contracts § 211. Second, "the whole of a contract is to be taken together, so as to give effect to every part[.]" *Weatherby Locums Inc. v. Kern Cty. Hosp. Auth.*, 2024 WL 4729057, at *14 (E.D. Cal. Nov. 8, 2024) (quoting Cal. Civ. Code § 1641). Here, Google's misleading defense is easily reconciled for the entire class. While Google "may" collect information in certain circumstances, that "may" is limited by the uniform promise that Chrome will not send PI to Google absent sync. That is, a reasonable user could expect that Google may receive data from third parties in some circumstances, but also that Chrome will not send PI to Google when they are not synced. Third, the rule that "ambiguous terms in a contract must be construed against the drafter applies 'with peculiar force' [to] standard form contracts," so any ambiguities here "would be resolved against [Google]." *Congdon*, 291 F.Supp.3d at 1024 n.14 (quoting *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1224 (9th Cir. 2015)). Fourth, "[p]articular expressions qualify [the] general," such that "a particular intent will control a general one that is inconsistent with it." Cal. Civ. Code § 3534; Cal. Civ. Proc. Code § 1859; *Prouty v. Gores Tech. Grp.*, 121 Cal.App.4th 1225, 1235 (2004) ("[W]hen a general and a particular provision are inconsistent, the particular and specific provision is paramount."). Here, the Chrome Privacy Notice is a common document specific and particular to Chrome. No matter what irrelevant information Google tries to throw at the jury, all roads lead back to the CPN and Google's consent defense for every claim runs afoul of all four rules.

Oddly, Google argues that "surveys" conducted by its hired expert can defeat certification. However, this fails for two reasons. First, Google itself offers these surveys as common evidence, arguing that three surveys of less than 250 people each raise questions that should apply to all class members beyond a "de minimis" level. That's an admission of common proof. Second, the surveys are inadmissible because they do not address the challenged conduct: whether Chrome sends PI to Google.[4] The question is what was actually, explicitly disclosed **and whether Google's conduct matched the disclosures.** *Torres*, 2024 WL 4894289, at *7 (rejecting survey evidence as irrelevant

---

[4] Prof. Erdem's methodology and foundation are also riddled with errors and bias, rendering her report unreliable. *See* Motion to Strike Erdem, filed concurrently.

to consent). Asking paid respondents to opine on doctored disclosures without informing participants of what occurred is meaningless. But here, Google's attempt shows it is a common question.[5]

b) <u>Implied Consent is Not a Defense to the Contract Claim</u>

Google claims that the express, common contract promise in the CPN can be negated by extra-contractual documents. However, "[f]or privacy claims sounding in breach of contract, only contractual disclosures, not extrinsic evidence, are relevant." *In re Google RTB Consumer Privacy Litig.*, 2024 WL 2242690, at *15 (N.D. Cal. Apr. 4, 2024) ("*RTB*") (*describing In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *19 (N.D. Cal. Mar. 18, 2014)). This is particularly true here, because "[s]tandardized agreements" are deemed "integrated" for "the terms included in the writing" and "interpreted wherever reasonable as treating alike all those similarly situated, without regard to their knowledge or understanding[.]" Restatement (Second) of Contracts § 211. Google does not address this and therefore waives it.

Google cites five cases for its proposition, but they do not say what Google claims they do. *See* Opp. at 13-14 & n.18. *Gmail* supports Plaintiffs because it "posits that … extrinsic evidence" is not relevant to breach of contract. *RTB*, 2024 WL 2242690, at *15 (citing *Gmail*, 2014 WL 1102660, at *19). The other cases do not apply. Two cases don't involve contract claims. *See Backhaut v. Apple*, 2015 WL 4776427 (N.D. Cal. Aug. 13, 2015) (no contract claim); *Campbell v. Facebook*, 315 F.R.D. 250 (N.D. Cal. 2016) (same).

That leaves only *RTB* and *Brown,* but these decisions are not binding here. First, these rulings were made pre-*Calhoun*, which held that consent was based on objective standards and should be determined by a jury. *Calhoun*, 113 F.4th at 1149. Second, the facts are different. In *RTB*, the alleged promise at issue was found in general documents, but the promise here is in the "service-specific" CPN (trumping the general documents). *See id.* (pointing to "service-specific privacy policies" in the "Chrome Privacy Policy that it would not" engage in the challenged conduct, "so Google may be 'bound by [those] promises'" (quoting *Smith v. Facebook, Inc.*, 745 F.App'x 8, 8-9 (9th Cir. 2018))).

---

[5] Chrome Developer Tools cannot save Google because they exist on every browser and designed for experts, contradicting Calhoun's rule that consent is judged by a reasonable user, not an expert. And "common knowledge" cannot save it either because it is common and the defense flies in the face of the fact that the Court held a 7.5 hour hearing with multiple experts to learn the facts.

1    Further, the contract specifies that, as a "service-specific additional term," the CPN governs in the

2    event of conflict. Google fails to identify any statement in the CPN that invites a reading of other

3    website disclosures on the issue here. *Brown* is inapposite because it was based on Google's promise

4    not to *collect* private browsing information when a user is in "Incognito" mode and on the

5    information Chrome stores, thus asking different questions. *Brown v. Google LLC*, 2021 WL

6    6064009, at *13 (N.D. Cal. Dec. 22, 2021). Here, the question is whether extra-contractual

7    documents that do not directly address the challenged conduct can prevail over an express contract

8    term in an adhesion contract that the defendant says governs use of that product. *Calhoun* addressed

9    the issue by distinguishing this case from *Smith v. Facebook*, explaining that *Smith* held that

10   "Facebook was not bound by the contrary assurances of other websites' policies because 'Facebook's

11   Terms and Policies make no such assurance, and Facebook is not bound by promises it did not

12   make.'" *Calhoun*, 113 F.4th at 1149 (quoting *Smith*, 745 F.App'x at 9). "By contrast [here], …

13   Google did make a promise in its Chrome Privacy Policy" that it would not engage in the challenged

14   conduct, "so Google may be 'bound by those promises.'" *Id*. Plaintiffs submit that, just as Google

15   "is not bound by promises it did not make," it also cannot be saved by statements it did not make.

16   To rule otherwise conflicts with *Calhoun*. And Judge Breyer ruled that *Calhoun* applies to implied

17   consent arguments. *Torres*, 2024 WL 4894289, at *8.[6]

18          As a throwaway, Google argues implied consent can defeat certification of the contract claim

19   because the Named Plaintiffs "admit they never *saw* the CPN." Opp. at 14. This is both distracting

20   and irrelevant. Failure to read a contract is not a defense. The contract terms apply to all class

21   members "whether or not [they were] aware of them" or "failed to read [them]." *Norcia v. Samsung*,

22   845 F.3d 1279, 1284 (9th Cir. 2017).[7]

---

[6] Chrome Developer Tools cannot save Google because they exist on every browser and are designed for experts, contradicting *Calhoun*'s rule that consent is judged by a reasonable user, not an expert. And "common knowledge" cannot save it either because it is common and the defense flies in the face of the fact that the Court held a 7.5 hour hearing with multiple experts to learn the facts.

[7] Indeed, failure to read and understand a privacy policy makes them typical. *See* Exs. D1 ¶ 28; F2 ¶ 26 ("[A]n overwhelming majority of Internet users do not read privacy policies").

1

c)    Contract Breach is a Common Issue

2      Google claims breach is not uniform. But Google knows that is not what Plaintiffs assert. *See*

3  Mot. at 5-7. It also conflicts with Google's prior evidentiary submissions that "at-issue data" is sent

4  by Chrome and every other browser to Google. *See* Dkt. 395, MTD at 9 ("The Google Services are

5  browser-agnostic—i.e. they are designed to receive the same data categories from all website visitors,

6  regardless of a user's browser."). Here, the question turns on common evidence on how Google's

7  systems operate: how, and if, Google's promised privacy controls function for users across the board.

8  Plaintiffs' common evidence shows there is no way to prevent Chrome from sending the core set of

9  PI to Google.[8] Similarly, whether Google is reasonably capable of linking the data to each class

10  members' Google Account is a common question. For the "Signed In, But Not Consented for Sync"

11  mode, Google admits to the linking. For "Basic" mode, there is no dispute that Google is *reasonably*

12  *capable* of linking the data to class member Google Accounts, which is challenged conduct. This

13  means not only is it common, but also that it is PI.[9] That, too, will be resolved by common evidence,

14  including (1) admissions by Google and its experts; (2) expert testing and analysis; and (3) Google's

15  internal data architecture documentation.[10] Per *Tyson Foods*, the Court cannot deny certification on

16  this issue—particularly in light of the Court's summary judgment order in Google's favor after a

17

18  [8] The "variables" make no difference. "Regardless of certain settings, transmission of these
categories of at-issue data happen and they go to Google third-party servers." Ex. B5 at 133; 56:15-
19  19 ("A cookie might be first party or third party, but it's still a cookie."); *see also* Ex. B6 at 139-141,
144; Ex. B2 ¶¶ 1-2, 4 (blocking methods don't work), ¶¶ 18-36 (cookie blockers), ¶¶ 37-48
20  (JavaScript), ¶¶ 49-57 (Analytics "opt-out"), ¶¶ 58-70 (ad blockers), ¶¶ 71-76 (VPN), ¶¶ 113-123
(Google ad personalization opt-out). Google speculates about a VPN-cookie-block combo but
21  provides no evidence, ignores first-party cookies, and that it would 0-0.93 percent of class members.

22  [9] *See* Ex. B1 ¶¶ 106-107 (identifiers sent in "Basic" mode, including IP address, User-Agent, X-
23  Client data header, and cookies for Google Ads, Display Ads, and Analytics—NID, IDE, and CID,
respectively—also sent from Chrome to Google alongside Google Account identifiers); Dkt. 1073-
24  1, Expert Report of Dr. Yiling Chen, submitted by Google (same regarding cookie testing).

25  [10] Not only is Google *reasonably capable* of linking Basic browser data to Google Accounts, but it
26  does so in the ordinary course and in this case. *See* Mot. at 6-7, n.3 (citing common evidence in
Exhibits C1-C16, C18, C20, and C38); Mot. to Strike Schwartz at 13-14 (summarizing admissions
27  and discovery produced after the close of fact discovery). Google's arguments that the class-wide
preserved data might show something different than its data architecture documents state on their
28  face is also a class-wide issue and not something on which the Court can deny certification.

1   hearing in which Google submitted evidence that "at-issue data" is always sent to Google. *Calhoun*

2   *v. Google, LLC*, 2023 WL 11988490, at *9 (N.D. Cal. May 16, 2023).[11]

3          Google also argues that removal of the CPN from its website on October 4, 2023 moots

4   injunctive relief. Opp. at 24. This is wrong. All class members signed up prior to October 4, 2023.

5   Thus, the harm is ongoing because they signed up pursuant to a contractual promise that Google still

6   violates. Nor did Google amend the contract by removing the CPN from its website, because this

7   was not a proper contractual amendment. Google's contract requires Google provide express notice

8   if a change in terms limits users' privacy rights in any way.[12] Google's quiet deletion of the CPN

9   does not fix the problem for new Accountholders or the other claims, because removing the promise

10  in the CPN does not create consent, particularly where similar promises are made elsewhere. As the

11  Ninth Circuit expressly highlighted with italics, the PP promises that "Chrome browsing history is

12  *only saved to your account if you've enabled Chrome synchronization with your Google Account*."

13  *Calhoun*, 113 F.4th at 1148 (emphasis in original).

14                    **2.    Common Issues Predominate for the UCL Claim**

15         Google does not challenge whether UCL "unfairness" is common, instead limiting its defense

16  to overlapping issues of "reliance" and "consent." On reliance, Google argues that the CPN is like

17  the "side of the box" for Chrome, for which it claims Plaintiffs must show actual reliance. Opp. at

18  14, 17. This is incorrect: UCL claims based on "contractual privacy protections … do[] not require

19  a showing of reliance." *Cappello v. Walmart*, 394 F.Supp.3d 1015, 1020 (N.D. Cal. 2019); *see*

20  *Svenson v. Google*, 2015 WL 1503429, at *10 (N.D. Cal. Apr. 1, 2015) ("[P]rivacy protections were

21  contract benefits to which [plaintiff] was entitled."). Google cites no case to the contrary specific to

22

23  _____

    [11] Google's argument about class member identification directly contradicts what it told the Court to

24  modify the preservation order while the case was on appeal. *See* Ex. C5 at 15:24-16:8 (Google
    counsel explaining that the preserved data "is all keyed by an identifier that is stored together with

25  the data … so … we can search the data that is associated with" those identifiers).

26  [12] Although Plaintiffs raised this issue in their opening motion, Google points to no evidence that, in

27  taking this action, it complied with binding, uniform contract provisions requiring that Google
    provide "prominent," "reasonable," and "advance notice" of any "material" changes to "service-

28  specific additional terms" and to obtain "explicit consent" and obtain "explicit consent" before it
    "reduce[s]" class member privacy rights. *See* Exs. A21, A39.

contracts. Here, the UCL claim encompasses the contract that governs use of Chrome and to which all class members agreed. It is not relevant if they "review[ed] the CPN." Opp. at 17-18.[13]

Because the privacy protections at issue are based on contract benefits, Google's express and implied consent arguments (Opp. at 14) fail for the reasons set forth above in the contract claim. They also fail because the "challenged conduct" on the UCL claim is whether it was unfair for Google to place and use self-serving surveillance software on class members' phones and computers without consent, thereby "preventing informed choice among users," a recognized unfair practice. *Epic Games, Inc. v. Apple, Inc.*, 559 F.Supp.3d 898, 1055 (N.D. Cal. 2021) (citing *Fed. Trade Comm'n v. Neovi*, 604 F.3d 1150, 1158 (9th Cir. 2010)). The extra-contractual documents are irrelevant because Google does not identify a single document addressing the challenged conduct for the claim.

### 3.    Common Issues Predominate for the CIPA Claim

Google does not challenge willfulness, "in transit," or damages for the CIPA claim, but does challenge certification on "consent," "contents," and California nexus. Opp. at 14, 19-20. The CIPA express consent defense fails for the same reasons set forth in the contract section. For implied consent, Google starts with speculation (Opp. at 14), which *True Health* prohibits. 896 F.3d at 931-32. It then points to extra-contractual documents and an inadmissible survey similar to statements the Ninth Circuit already rejected, such as that Google may collect data without any reference to whether Chrome will send PI to Google when a class member is not synced. However, to defeat class certification with the consent defense, Google may only rely on evidence it submitted (*True Health*) and must show that it is (1) relevant (*Torres*); (2) individualized (*True Health*); and (3) if relevant *and* individualized, sufficient to prevail on summary judgment (*Tyson Foods*).

Google's implied consent defense fails all three requirements. The extra-contractual documents are irrelevant because they do not address the challenged conduct, which presents "a threshold common question whether any of the sources provided notice of the challenged conduct in

---

[13] Even if required, Plaintiffs "need only demonstrate that one named plaintiff actually relied" (*Allen v. Hylands*, 300 F.R.D. 643, 666 (C.D. Cal. 2014)), and need not show "reliance on specific misrepresentations." *In re Tobacco II Cases*, 46 Cal.4th 298, 328 (2009); *see, e.g.*, Ex. G13 (Calhoun Tr.) at 20:14-21:4 (testifying understanding based on Google's privacy statements and that the common Chrome user interface that "says 'sync' really big in the corner, I … understood that to mean that my information would not be sent to anyone unless I pressed that button.").

the first place." *Torres*, 2024 WL 4894289, at *8. Here, Google has not identified any document addressing the challenged conduct. It cites just 31 third-party privacy statements or "news" articles that do not address Chrome sync at all.[14] In *Gmail*, by contrast, Google submitted 2,006 news articles and 13 million webpages that were published about the challenged conduct. *See* Decl. of Kyle C. Wong in Supp. of Google Inc.'s Opp'n to Pls.' Mot. for Class Certification ¶¶ 7-9, *In re Google Inc. Gmail Litig.*, 2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) (No. 5:13-md-02430). Next, Google points to MyActivity and "Help" pages that do not address the challenged conduct either. If relevant at all, MyActivity torpedoes Google's consent defense because it does not include any "Basic" browsing history information and only contains incomplete "Signed In, But Not Consented for Sync" history.[15] Ex. C2 ¶¶ 30-36; Dkt. 1076-6, Monsees Decl. ¶ 6.[16]

Regardless, the Ninth Circuit already ruled that statements which do not address the challenged conduct are insufficient for Google to prevail on summary judgment—directly rejecting Google's argument for consent based on data "collection" statements in the Privacy Policy, "Consent Bump," and NACA. Having lost on appeal with documents making similar statements, a ruling in Google's favor based on extra-contractual documents making similar statements would contradict *Tyson Foods* and *Calhoun*. Google then refuses to substantively address that CIPA prohibits conduct with "the consent of all parties … *or* in any *unauthorized manner*," arguing this is just "semantics." Opp. at 14. However, the Court must analyze the statute through the "ordinary meaning rule," which "is the most fundamental sematic rule of interpretation." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 69 (2012). Here, Plaintiffs prevail under rules of statutory interpretation and CIPA's intent as expressed by binding precedent. *See Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *2 (9th Cir. 2022) ("[A]ll CIPA provisions are to be interpreted in light of the

---

[14] Several of the documents also pre-date the change to the CPN which begins the Class Period.

[15] The fact that Google still denies it is reasonably capable of (and does) link Basic browsing history info and cookies to Google Accounts (*see* Opp. at 8-9) also destroys any argument of consent.

[16] Google acknowledges the extra-contractual documents are also common. *See* Opp. at 6 ("Google requires websites using its services to provide a Privacy Policy" with example of common language); Opp. at 12 ("Google routinely reminded Account Holders to review their MyActivity pages"); Dkt. 1074, Fair Decl. ¶ 84, Ex. 100.

broad privacy-protecting statutory purposes of CIPA." (citing *Ribas v. Clark*, 696 P.2d 637, 639-41 (1985))).

Google next makes a *merits* argument about "content" that this Court has twice rejected. Opp. at 19;[17] *see In re Google RTB Consumer Priv. Litig.*, 606 F.Supp.3d 935, 949 (N.D. Cal. 2022) (content categories and URLs); *Brown v. Google LLC*, 685 F.Supp.3d 909, 935-36 (N.D. Cal. 2023) (full-string URLs). Regardless, the issue is common because ██████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████. Ex. C12 ¶¶ 94-97 (██████████████████████████████ ████████████████████████████████ ██████████████████████████████████████████ ████████████████████████████ Ex. C11 ¶ 29).[18]

Finally, Google argues geo-location is individualized.[19] But Google's contract chooses California law, which *Kearney v. Salomon Smith Barney, Inc*., 39 Cal.4th 95, 119 (2006), does not address. And, even if Google's California-focus and choice of law are not enough, the ███████████ ███████████████████████████████████████████████████████████████. *See* Ex. C11, Ex. A at █████████████████████████████████████████████████.

### 4.  Common Issues Predominate for the Intrusion Claim

Google challenges both elements of intrusion: (1) intrusion into "a … matter as to which the plaintiff has a reasonable expectation of privacy," and (2) "in a manner highly offensive to a

---

[17] Google's cases do not support its position. *In re Facebook, Inc. Internet Tracking Litig.* distinguished *Zynga* from "full-string detailed URL[s] which contains the name of a website, folders on the web-server, and the name of the name of the precise file requested." 956 F.3d 589, 605 (9th Cir. 2020). *Hammerling* and *McCoy* involved data about use of smartphone apps. *Hammerling v. Google LLC*, 615 F.Supp.3d 1069 (N.D. Cal. 2022); *McCoy v. Alphabet, Inc.*, 2021 WL 405816 (N.D. Cal. Feb. 2, 2021). And in *Griffith v. TikTok, Inc.*, the court did not decide the limits of "contents," it held only that the "contents" question could not be resolved class-wide due to variations in what different websites shared via the Pixel, which is not a problem here where Chrome is the sole entity sharing information. 2024 WL 4308813, at *6-9 (C.D. Cal. Sept. 9, 2024).

[18] The Court should also disregard Google's argument that a class cannot be certified based on failure to analyze class-wide data because Google has refused to provide access to class-wide data.

[19] Plaintiffs concede that they overlooked Google's amended answer to Interrogatory No. 5. Regardless, Google's answer (which Plaintiffs' dispute) shows server location is a class-wide issue.

reasonable person." *Facebook Internet Tracking*, 956 F.3d at 601. But both fail because each is judged by a "reasonable" user standard. *See Rodriguez v. Google LLC*, 2024 WL 38302, at *4-5 (N.D. Cal. Jan. 3, 2024). Rather than address these elements, Google invents a third, *i.e.*, whether a user *maintains* an expectation of privacy. But this confuses intrusion with its sister-tort under the California Constitution. The torts remain distinct: intrusion does not require maintenance of a reasonable subjective expectation of privacy, while the Constitutional tort does. Two certification decisions by the same judge illustrate the point. In *Opperman v. Path*, 2016 WL 3844326 (N.D. Cal. July 15, 2016), Judge Tigar certified an intrusion class because "California law does not require Plaintiffs to prove subjective expectation." *Id*. at *11. But, in *Hart v. TWC Prod. and Tech LLC*, 2023 WL 3568078, at *9-11 (N.D. Cal. Mar. 30, 2023), Judge Tigar denied certification of a constitutional privacy claim. Naturally, Google relies on *Hart* and ignores *Opperman*.[20] But *Opperman* is the relevant authority.[21]

The "highly offensive manner" element is also based on a reasonable person. Google strains to argue that its uniform conduct would be subject to different subjective views. However, the "holistic consideration of factors" applies class-wide, regardless of personal feelings. *Facebook Internet Tracking*, 956 F.3d at 606; *see Opperman*, 2016 WL 3844326, at *11 ("This element is essentially a policy determination" and does not "require individualized determinations.").[22]

Finally, Google argues implied consent is individualized. Opp. at 15. Not so. Google again conflates intrusion with its sister-tort. Whether a reasonable person "actually" had an expectation of

---

[20] *TikTok* involved non-users with no contract, no "uniform representations," and no "user profiles," making offensiveness "depend on the nature of the information." 2024 WL 4308813, at *6. This case is the opposite and akin to *Facebook Internet Tracking*.

[21] "Maintenance" of a reasonable expectation can be proven here through common evidence anyway. In *Rodriguez*, Judge Seeborg found that a person's WAA setting was common evidence of "maintaining" a reasonable expectation of privacy—without individualized inquiries into subjective belief as to what the setting meant, or even whether they read any disclosures. *Rodriguez*, 2024 WL 38302, at *5. Here, the relevant setting is Sync, and the logic is the same.

[22] Google argues four of six plaintiffs "admit they continue" to use Chrome "and not just for work" while fully aware of data collection. This misrepresents the record. *See* Exs. G2, G3-G4, G6 (plaintiff declarations); Google's Ex. 18 (Crespo Tr.) at 51:1-14; Google's Ex. 20 (Henry Tr.) at 22:18-24; Google's Ex. 21 (Wilson Tr.) at 55:6-56:9; Suppl. Joint Decl., Ex. I1 (Johnson Tr.) at 137:3-23.

1    privacy is not impacted by individual class member expectations. And whether class members

2    voluntarily consented is to be determined class-wide based on Google's uniform disclosures to class

3    members, all of whom (by definition) elected to use the Chrome browser in a not-synced mode. The

4    affirmative defense of consent, therefore, like the elements of the claim, is an objective inquiry based

5    on common facts. *Calhoun*, 113 F.4th at 1151; *Torres*, 2024 WL 4894289, at *7.

6          **C.    The Requirements of Rule 23(a) Are Met.**

7          Typicality is the only contested issue under Rule 23(a). "Under the Rule's permissive

8    standards, representative claims are 'typical' if they are reasonably coextensive with those of absent

9    class members; they need not be substantially identical." *Ruiz Torres v. Mercer Canyons Inc*., 835

10   F.3d 1135, 1141 (9th Cir. 2016) (quoting *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014)).

11   "Typicality refers to the nature of the claim or defense … and not to the specific facts from which it

12   arose or the relief sought." *Id*. Google ignores the standard to make randomly placed, desperate

13   arguments. Google argues that the "Consent Bump" defeats typicality. However, this ignores that it

14   did not disclose the challenged conduct, reinforced the core promise, made similar statements as

15   NACA, and that Google kept all "Consent Bump" receipts. Next, Google argues that Named

16   Plaintiffs' failure to "review the CPN" makes them atypical, but this ignores that all class members

17   are legally deemed to have reviewed and agreed to the CPN, rendering the Named Plaintiffs' UCL

18   claims identical, even though that is not necessary. Finally, Google argues that the Named Plaintiffs

19   are atypical for the "highly offensive" element of the intrusion claim because of "knowing[] and

20   voluntar[y]" conduct, but that argument is contradicted by the record and inaccurately presumes that

21   Plaintiffs or any other class member have a meaningful choice. *See Calhoun*, 2023 WL 11988490,

22   at *10 ("[T]he undisputed evidence shows that the at-issue data collection is browser-agnostic); Cal.

23   Civ. Code § 1565 (Consent "must be: free[.]").

24         **D.    Alternatively, Rule 23(c)(4) Certification Is Appropriate**

25         Rule 23(c)(4) allows courts to "carv[e] at the joints" to resolve common issues "in one fell

26   swoop while leaving the remaining, claimant-specific issues to individual follow-on proceedings."

27   *Mejdrech v. Met-Coil Systems Corp*., 319 F.3d 910, 911 (7th Cir. 2003) (Posner, J.). No Circuit

28   requires class-wide liability before (c)(4) certification. *See, e.g.*, *Martin v. Behr Dayton Thermal*

*Prods. LLC*, 896 F.3d 405, 416 (6th Cir. 2018) (approving (c)(4) certification even though class adjudication would not fully resolve liability); *Russell v. Educ. Comm'n for Foreign Med. Graduates*, 15 F.4th 259, 270 (7th Cir. 2021) (similar). Google cites *Avilez v. Pinkerton Gov't Svcs, Inc.*, but that case did not hold that full adjudication of all liability was a precondition to certification. 596 F. App'x 579 (9th Cir. 2015). Next, Google disputes that it would be more efficient to address common issues in a single trial but ignores the 100,000+ *Brown*-related cases and fails to explain how litigating the same issues more than 100,000 times is superior. Finally, Google admits many core issues "are undisputed." Opp. at 23. Plaintiffs agree, but this supports Rule 23(c)(4) certification—in advance of trial on common issues, the parties could stipulate to the undisputed facts, and through the class certification process, these undisputed facts and jury resolved facts could then become binding in the individual cases, vastly enhancing efficiency.

## E.     Certification Under Rule 23(b)(2) Is Appropriate

In considering (b)(2) certification, courts only "look at whether class members seek uniform relief from a practice applicable to all of them." *Ward v. United Airlines*, 2021 WL 534364, at *7 (N.D. Cal. Feb. 12, 2021) (quoting *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010)). Here, Google does not challenge whether Plaintiffs seek uniform relief from uniform practices. Thus, a class should be certified. Google instead focuses on the merits, falsely arguing that it has mooted injunctive relief and that class members would not "benefit from" the relief sought. In doing so, Google ignores that Plaintiffs merely seek: (1) transparency; (2) choice; (3) the ability to view Google's dossiers and request data deletion; and (4) proper notice. Mot. at 24. As the CPN promises, the class would be given "control" over privacy in Chrome. That Google would misrepresent the relief illustrates why certification should be granted. Google's real concern is that, as one executive put it, "If people were the deciders, they wouldn't take the deal, but they are not the deciders." Ex. D3 at -5932. Injunctive relief would help right the wrong at issue here, giving all class members the control Google promises but refuses to provide.

## III.     CONCLUSION

Plaintiffs respectfully request that the Court grant their Renewed Motion for Class Certification, appoint class representatives, and appoint class counsel.

Dated: December 20, 2024                    Respectfully submitted,

**BLEICHMAR FONTI & AULD LLP**              **SIMMONS HANLY CONROY LLP**

By:   */s/ Lesley E. Weaver*                By:   */s/ Jay Barnes*
Lesley E. Weaver (SBN 191305)               Jason 'Jay' Barnes (admitted *pro hac vice*)
Anne K. Davis (SBN 267909)                  Jayne Conroy (admitted *pro hac vice*)
Joshua D. Samra (SBN 313050)                An Truong (admitted *pro hac vice*)
1330 Broadway, Suite 630                    112 Madison Avenue, 7th Floor
Oakland, CA 94612                           New York, NY 10016
Tel.: (415) 445-4003                        Tel.: (212) 784-6400
Fax: (415) 445-4020                         Fax: (212) 213-5949
*lweaver@bfalaw.com*                        *jaybarnes@simmonsfirm.com*
*adavis@bfalaw.com*                         *jconroy@simmonsfirm.com*
*jsamra@bfalaw.com*                         *atruong@simmonsfirm.com*

Gregory S. Mullens (admitted *pro hac vice*)  Eric Johnson (admitted *pro hac vice*)
75 Virginia Road, 2nd Floor                 Jennifer 'Jenny' Paulson (admitted *pro hac vice*)
White Plains, New York 10603                One Court Street
Tel.: (415) 445-4006                        Alton, IL 62002
*gmullens@bfalaw.com*                       Tel.: 618-693-3104
                                            *ejohnson@simmonsfirm.com*
**DiCELLO LEVITT LLP**                      *jpaulson@simmonsfirm.com*

By:   */s/ David A. Straite*
David A. Straite (admitted *pro hac vice*)
Corban Rhodes (admitted *pro hac vice*)
485 Lexington Avenue, Suite 1001
New York, NY 10017
Tel.: (646) 933-1000
*dstraite@dicellolevitt.com*
*crhodes@dicellolevitt.com*

Amy E. Keller (admitted *pro hac vice*)
Adam Prom (admitted *pro hac vice*)
Julia Veeser (admitted *pro hac vice*)
Ten North Dearborn St., Sixth Floor
Chicago, IL 60602
Tel.: (312) 214-7900
*akeller@dicellolevitt.com*
*aprom@dicellolevitt.com*
*jveeser@dicellolevitt.com*

*Counsel for Plaintiffs and the Proposed Class*

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)

I, Lesley E. Weaver, attest that concurrence in the filing of this document has been obtained from the other signatories. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 20th day of December, 2024, at Traverse City, Michigan.

*/s/ Lesley E. Weaver*
Lesley E. Weaver