# Exhibit 22

## to Omnibus Sealing Stipulation

## [Revised Redacted Version of Document Previously Filed Under Seal]

# EXHIBIT E10
## to Joint Attorney Declaration ISO Plaintiffs' Renewed Motion for Class Certification [Filed Under Seal]

Excerpts from the deposition of Google's 30(b)(6) designee David Monsees, conducted on April 9, 2021

```
 1              UNITED STATES DISTRICT COURT
 2            NORTHERN DISTRICT OF CALIFORNIA
 3                   SAN JOSE DIVISION
 4
 5    PATRICK CALHOUN, ELAINE CRESPO, )
      HADIYAH JACKSON and CLAUDIA     )
 6    KINDLER, on behalf of all       )
      others similarly situated,      )
 7                                    )
              Plaintiffs,             )
 8                                    )
              vs.                     ) Case No.
 9                                    ) 5:20-cv-5146-LHK
      GOOGLE LLC,                     )
10                                    )
              Defendant.              )
11    _____)
12
13
14
15        VIRTUAL VIDEOCONFERENCE VIDEO-RECORDED
16              DEPOSITION OF DAVID MONSEES
17
18              Friday, April 9, 2021
19       Testifying from San Francisco, California
20
21
22
23    Reported By:
24    Hanna Kim, CLR, CSR No. 13083
25    Job No. 4530995
```

Page 1

**Page 318**

```
 1        MR. SCHAPIRO: Objection. Assumes facts
 2   not in evidence.
 3        MS. WEAVER: It was actually put into
 4   evidence.
 5        MR. SCHAPIRO: It does not. Your question    04:19:09
 6   assumes facts not in evidence.
 7        MS. WEAVER: No, it doesn't.
 8   BY MS. WEAVER:
 9   Q.  Do you recall that when we looking at
10   Exhibit 10, it reflected the sync traffic log for    04:19:14
11   Ms. Crespo?
12   A.  Was -- was that -- that was the data where
13   sync was turned on for the Android device --
14   Q.  Yes.
15   A.  -- and the --                                   04:19:31
16        THE COURT REPORTER: I'm sorry, I'm sorry.
17   For the what device?
18        THE WITNESS: For the Android device,
19   which was synched to the plaintiff's Google account
20   because sync was on?                                04:19:33
21   BY MS. WEAVER:
22   Q.  Yes.
23   A.  Okay. Yes, I do.
24   Q.  Okay. So there is data in a Chrome
25   history sync traffic log for Ms. Crespo, a          04:19:41
```

**Page 319**

```
 1   plaintiff in this case, right?
 2   A.  For when Chrome sync was enabled?
 3   Q.  Yes. Okay.
 4        And so the question is: Is there a user
 5   profile built using Chrome history on Ms. Crespo?   04:19:56
 6   A.  I would not know definitively if there
 7   was.
 8   Q.  Okay. But in general, what is a user
 9   profile built using Chrome history?
10        MR. SCHAPIRO: Objection. Beyond the           04:20:10
11   scope. Vague.
12        THE WITNESS: A -- a user profile could
13   mean pretty much anything, depending on -- on the
14   purpose for which it is being constructed. But a
15   user profile, based on Chrome history, I would     04:20:28
16   expect to be derived or inferred data from the
17   content within the Chrome sync history if the user
18   is signed into the Chrome app with sync enable
19   non-encrypting and history feature enabled.
20   BY MS. WEAVER:                                      04:20:47
21   [REDACTED]
22   [REDACTED]
23   [REDACTED]
24   [REDACTED]
25                                                       04:20:57
```

**Page 320**

```
 1   [REDACTED]
 2   [REDACTED]
 3   [REDACTED]
 4   [REDACTED]
 5   [REDACTED]                                          04:21:12
 6   [REDACTED]
 7   [REDACTED]
 8   [REDACTED]
 9   [REDACTED]
10   [REDACTED]                                          04:21:26
11   [REDACTED]
12   [REDACTED]
13   [REDACTED]
14   [REDACTED]
15   [REDACTED]                                          04:21:42
16   [REDACTED]
17   [REDACTED]
18   [REDACTED]
19   Q.  [REDACTED]
20   [REDACTED]                                          04:21:57
21        MR. SCHAPIRO: Objection. I -- I haven't
22   objected for a while on this, but now, we're way
23   beyond the scope.
24        MS. WEAVER: We're really not. This is
25   the data that Google collects and infers from the   04:22:09
```

**Page 321**

```
 1   data that they collected and we want to know what
 2   is in possession and where it is stored so that we
 3   can seek its production in this case.
 4        Could you read my question back, please.
 5        (Record read back by the reporter.)            04:22:37
 6   [REDACTED]
 7   [REDACTED]
 8   [REDACTED]
 9   [REDACTED]
10   [REDACTED]
11   [REDACTED]
12   [REDACTED]
13   [REDACTED]
14   [REDACTED]
15   [REDACTED]                                          04:23:08
16   [REDACTED]
17   [REDACTED]
18   [REDACTED]
19   [REDACTED]
20   [REDACTED]                                          04:23:21
21   [REDACTED]
22   [REDACTED]
23   [REDACTED]
24   [REDACTED]
25   [REDACTED]                                          04:23:35
```

**Page 322**

1 [REDACTED]
2 [REDACTED]
3 [REDACTED]
4 [REDACTED]
5 [REDACTED] 04:23:49
6 [REDACTED]
7 [REDACTED]
8 [REDACTED]
9 [REDACTED]
10 [REDACTED] 04:23:58
11 [REDACTED]
12 [REDACTED]
13 [REDACTED]
14    Q. So for Ms. Kindler, for example, if she
15 was visiting medical websites, as alleged in the    04:24:14
16 Complaint, could profiles be built around her
17 visits to medical websites?
18    A. I think in the hypothetical that we're
19 talking about, I think it's important to reference
20 back to Google's stated policies around topic that  04:24:26
21 that we do not generate interest profiles for.
22 And so we may not don't generate a profile for
23 something like medical, but we may generate a not
24 profile for something like florists.
25    Q. And do you -- do you have the document in  04:24:38

**Page 323**

1 front of you that I -- delineates what profiles
2 may be generated by topic?
3    MR. SCHAPIRO: Objection. Misstates the
4 testimony.
5 BY MS. WEAVER:    04:24:56
6    Q. Perhaps I misunderstood you. I thought
7 you said that there are restrictions at Google
8 about what kinds of information can be used to
9 build profiles.
10    Is that what you said?    04:25:05
11    A. Oh, yes. I'm sorry, I was speaking
12 generally to Google policies. Policy.google.com,
13 I think, is the -- the destination where you can
14 find that information.
15    Q. Okay. Do you know if the user profiles   04:25:15
16 for the plaintiffs have been collected and
17 produced in this case?
18    MR. SCHAPIRO: Objection. Be- -- beyond
19 the explicit scope of the deposition.
20    THE WITNESS: I --    04:25:27
21    MS. WEAVER: It goes to what needs to be
22 collected and produced, Andrew.
23 BY MS. WEAVER:
24    Q. Go ahead.
25    A. I do not --    04:25:32

**Page 324**

1    MR. SCHAPIRO: The topic does not seek
2 retention efforts in this litigation.
3 BY MS. WEAVER:
4    Q. Go ahead. You may answer.
5    A. I do not know.    04:25:37
6    Q. Okay.
7    MS. WEAVER: I'll mark as Exhibit 18, a
8 doc -- a document that begins with Bates
9 number '2797 -- sorry -- '27297 through '27326.
10    MS. ORNELAS: One moment.    04:26:20
11    MS. WEAVER: I'm sorry, and I'll also mark
12 a second document, '27290 through '93.
13    (Monsees Deposition Exhibit 18 was
14    marked.)
15 BY MS. WEAVER:    04:26:58
16    Q. And I'd ask you, actually, to look at
17 Exhibit 19 first, once it's published.
18    A. Could -- could you confirm when these
19 are -- when -- when they're up?
20    Q. Yes.    04:27:09
21    A. I don't see them.
22    MS. ORNELAS: Exhibit 18 has been
23 published.
24    MR. SCHAPIRO: Sorry, you said start with
25 19?    04:27:19

**Page 325**

1    MS. WEAVER: Yes, sorry.
2    MS. ORNELAS: One more moment for that,
3 please.
4    (Monsees Deposition Exhibit 19 was
5    marked.)    04:27:36
6 BY MS. WEAVER:
7    Q. While we're waiting, Mr. Monsees, may I
8 ask you a question off topic?
9    Does logging out of a Google account turn
10 off sync?    04:27:45
11    A. Logging out of -- of Chrome or signing out
12 of Chrome would, yes, disable sync on that Chrome
13 app install.
14    Q. Does logging out of any other Google
15 account turn off sync?    04:28:02
16    A. No, since sync is managed within the
17 Chrome app, that is where you need to sign out and
18 manage sync.
19    Q. Okay. Thank you.
20    MS. ORNELAS: Exhibit 19's been published. 04:28:16
21    THE WITNESS: Okay.
22    Okay. I have it.
23 BY MS. WEAVER:
24    Q. What is Exhibit 19?
25    A. [REDACTED]    04:28:37

<mark>
<mark>
<mark>
<mark>

<mark>
<mark>
<mark>

<mark>

<mark>

<mark>

<mark>

<mark>

<mark>

<mark>

<mark>

<mark>

<mark>

<mark>

<mark>

<mark>

<mark>

<mark>

<mark>

<mark>

<mark>

<mark>

<mark>

<mark>
<mark>

<mark>

<mark>
<mark>

<mark>

<mark>

<mark>

<mark>

<mark>

<mark>

<mark>

<mark>

<mark>

<mark>

<mark>

**Page 354**

A. Oh, I -- I am -- I am not sure what a -- a per e-mail cost is. I believe it's quite low to send a -- an individual e-mail.

Q. Okay. Thank you.

MS. WEAVER: No further questions -- questions for this witness at this time. This deposition will remain open.

MR. SCHAPIRO: So we of course don't agree to holding it open, but we want to -- we'll take a few minutes and -- and come back and do some redirect if -- if we think we want to do that. So why don't we come back in five minutes.

MS. WEAVER: Sounds good.

MR. SCHAPIRO: 25 past.

THE VIDEOGRAPHER: We're now going off the record. The time is 5:20 p.m., Pacific Daylight Time.

(Short recess taken.)

THE VIDEOGRAPHER: We are now back on the record. The time is 5:33 p.m., Pacific Daylight Time.

MR. SCHAPIRO: So we have no questions for the witness.

Mr. Monsees, thank you very much for your time.

**Page 355**

Lesley, et al., wonderful to see you as always.

MS. WEAVER: Yeah, and I want to thank the witness very much. I know this isn't fun and especially not alone in your room. Thank you.

And thanks very much to all of you supporting the deposition. Ms. -- Ms. Kim and our videographer.

MR. SCHAPIRO: I second that.

MS. WEAVER: Okay. And --

THE VIDEOGRAPHER: This -- this concludes today's testimony given by David Monsees, 30(b)(6) witness, Google LLC.

The number of media units used was one and will be retained by Veritext. The time is 5:34 p.m., Pacific Daylight Time. We are now off the record.

(Proceedings concluded, 5:34 p.m.)

**Page 356**

JURAT

I, DAVID MONSEES, do hereby certify under penalty of perjury that I have read the foregoing transcript of my deposition taken on the 9th day of April, 2021; that I have made such corrections as appear noted herein in ink, initialed by me; that my testimony as contained herein, as corrected, is true and correct.

Dated this 19th day of May, 2021, at Dallas County, State of Texas.

_____
DAVID MONSEES

[Notary seal: GEORGE W POLETES, Notary Public, STATE OF TEXAS, Notary I.D. 13174447-9, My Comm. Exp. Oct. 2, 2022]

This notarial act was an online notarization.

**Page 357**

CERTIFICATE OF REPORTER

I, Hanna Kim, a Certified Shorthand Reporter, do hereby certify:

That prior to being examined, the witness in the foregoing proceedings was by me duly sworn to testify to the truth, the whole truth, and nothing but the truth;

That said proceedings were taken before me at the time and place therein set forth and were taken down by me in shorthand and thereafter transcribed into typewriting under my direction and supervision;

I further certify that I am neither counsel for, nor related to, any party to said proceedings, not in anywise interested in the outcome thereof.

Further, that if the foregoing pertains to the original t_____n a federal case,_____ proceedings, review of the_____s not requested.

In witn_____nto subscribed n_____
Dated: April_____

Hanna Kim, CLR, CSR No. 13083

```
 1      ERRATA SHEET FOR THE TRANSCRIPT OF:
 2  Case Name: CALHOUN, ET AL. vs. GOOGLE LLC
 3  Dep. Date: 04/09/2021
 4  Deponent: DAVID MONSEES
 5          CORRECTIONS:
 6  Pg. Ln.   Now Reads     Should Read    Reason
 7   22  23   Harding       Harting        Incorrect spelling
 8   25   7   Schumman      Schuman        Incorrect spelling
 9   26  18   Bob Kee       Bob Cui        Incorrect spelling
10   54  16   ■             ■              Full word used
11   89  10   ■             ■              Words used
12   94   2   ■             ■              Clarity
13  117  24   know if their users  know if they're users  Incorrect spelling
14  191   1   Schulman      Schuman        Incorrect spelling
15  192   6   Schulman      Schuman        Incorrect spelling
16  307   1   ■             ■              Incorrect spelling
17  327  11   ■             ■              Words used
18  353  14   for now error on  for now err on  Words used
19                   _____
20            Signature of Deponent
21  SUBSCRIBED AND SWORN BEFORE ME
22  THIS 19th DAY OF May, 2021.
23  _____
24  (Notary Public) MY COMMISSION EXPIRES:
25              October 2, 2022
    This notarial act was an online notarization.   Page 358
```



GEORGE W POLETES
Notary Public
STATE OF TEXAS
Notary I.D. 13174447-9
My Comm. Exp. Oct. 2, 2022