**BLEICHMAR FONTI & AULD LLP**
Lesley E. Weaver (SBN 191305)
Anne K. Davis (SBN 267909)
Joshua D. Samra (SBN 313050)
1330 Broadway, Suite 630
Oakland, CA 94612
Tel.: (415) 445-4003
Fax: (415) 445-4020
*lweaver@bfalaw.com*

**DiCELLO LEVITT LLP**
David A. Straite (admitted *pro hac vice*)
485 Lexington Avenue, Suite 1001
New York, NY 10017
Tel.: (646) 933-1000
*dstraite@dicellolevitt.com*

Amy E. Keller (admitted *pro hac vice*)
Adam Prom (admitted *pro hac vice*)
Ten North Dearborn Street, 6th Fl.
Chicago, IL 60602
Tel.: (312) 214-7900
*akeller@dicellolevitt.com*

**SIMMONS HANLY CONROY LLP**
Jason 'Jay' Barnes (admitted *pro hac vice*)
An Truong (admitted *pro hac vice*)
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel.: (212) 784-6400
Fax: (212) 213-5949
*jaybarnes@simmonsfirm.com*

*Counsel for Plaintiffs*
*Additional counsel appear on signature page*

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Andrew H. Schapiro (admitted *pro hac vice*)
*andrewschapiro@quinnemanuel.com*
Teuta Fani (admitted *pro hac vice*)
*teutafani@quinnemanuel.com*
Joseph H. Margolies (admitted *pro hac vice*)
*josephmargolies@quinnemanuel.com*
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel: (312) 705-7400
Fax: (312) 705-7401

Stephen A. Broome (CA Bar No. 314605)
*stephenbroome@quinnemanuel.com*
Viola Trebicka (CA Bar No. 269526)
*violatrebicka@quinnemanuel.com*
Crystal Nix-Hines (CA Bar No. 326971)
*crystalnixhines@quinnemanuel.com*
Alyssa G. Olson (CA Bar No. 305705)
*alyolson@quinnemanuel.com*
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: (213) 443-3000
Fax: (213) 443-3100

*Counsel for Defendant; additional counsel
listed in signature blocks below*

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION**

| | |
|---|---|
| PATRICK CALHOUN, *et al.*, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 4:20-cv-5146-YGR-SVK<br><br>**EIGHTH SUPPLEMENTAL JOINT CASE MANAGEMENT STATEMENT**<br><br>Hon. Yvonne Gonzalez Rogers<br><br>**Next CMC: July 14, 2025 at 1:30 p.m.** |

The Parties, having met and conferred, submit this Eighth Supplemental Joint Case Management Statement pursuant to Civil Local Rule 16-10(d), the Court's July 1, 2025 order (Dkt. 1108), and the Standing Order for All Judges of the Northern District of California, retaining the paragraph numbering used therein. Accompanying this Statement is a joint proposed Case Management Schedule pursuant to Civil Local Rule 16-10(b).

**1.    <u>JURISDICTION AND SERVICE</u>**

Google has been served and the Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332(d), and 1367.

**2.    <u>FACTS</u>**

a.    <u>Plaintiffs' Summary of their Allegations</u>:

As a previous court put it in a leading case against Google, "Whether or not data-based targeting is the Internet's pole star, users are entitled to deny consent, and they are entitled to rely on the public promises of the companies they deal with." *In re Google Cookie Placement Consumer Privacy Litigation*, 806 F.3d 125, 151 (3d Cir. 2015) (permitting privacy claims to go forward for Google's efforts to thwart default privacy protections in the Safari browser).  This case similarly centers on Google's public promise not to track their Internet communications on millions of websites. The outcome of this case is potentially immense, affecting the rights of millions of Chrome users.

At its core, the case is simple: Google made an express contractual promise to all Google Accountholders that Chrome would not send their personal information ("P.I.") to Google unless they affirmatively chose to sync their Chrome activity with their Google Account – i.e., the P.I. would not be sent when using Chrome in its default "Basic Browser" or in the "Signed In But Not Consented for Sync" modes.  But Google breaks this promise – and even Google's own expert admitted that when the data is associated with a Google Account, it is likely personal information. Dkt. 1073-4, ¶58. For users who did not choose to "sync" their browser with a Google Account, and whose personal information was nonetheless sent to Google, there is a clear breach of contract claim and related privacy claims.

If Google wanted to, it could honor its promises to not send personal information to Google in the absence of sync but Google does not wish to stop because of the revenues Google generates through the practice. Oct. 24, 2022, Hearing Tr. at 244:1-23. But Google also could not just do nothing, because as Google noted internally, privacy-based browser competition was becoming an "existential risk" to Google:

> . . . As the other browsers will continue to provide more privacy-safe features than Chrome can, users will eventually stop using Chrome in favor of those other, more privacy-safe browsers. This in turn will begin to create an existential risk for Google. As fewer and fewer users use Chrome, Google's relationship with its users will become more and more mediated by other browsers… Chrome's market share erosion thus poses a risk to Google. What happens if, in a fit of pique, or a corporate acquisition of a competitor, a large browser chooses to make a different search engine the default for hundreds of millions of users?
>
> Chrome is vitally important to Google, but if the arms race between the ad tech industry and the browsers escalates, Chrome will find itself falling inevitably behind.

GOOG-CABR-04840802, at -805-806.

Faced with the potential "existential threat" of losing market share to Apple Safari, Google added the promise that is at the heart of this case to the Chrome Privacy Notice. Until September 23, 2018, the Chrome Privacy Notice told users that Chrome would send their personal information to Google if they signed-in to the Chrome browser. After September 24, 2018, the Chrome Privacy Notice expressly promised that ***Chrome would only send personal information to Google if the user affirmatively chose to do so by signing-in and enabling Sync***:

| September 23, 2018 | September 24, 2018 |
|---|---|
| "The personal information that Chrome stores won't be sent to Google unless you choose to store that data in your Google Account by signing in to Chrome. | "The personal information that Chrome stores won't be sent to Google unless you choose to store that data in your Google Account by turning on Chrome sync." |

This updated promise—that Chrome will not send personal information to Google unless a user chooses to sync—was repeated throughout the Chrome Privacy Notice and the Google Privacy Policy. From September 24, 2018 to October 2023, the Chrome Privacy Notice made seven uniform promises: (1) that the CPN is where to "learn how to control the information that's collected, stored, and shared when you use the Google Chrome browser;" (2) "you don't need to provide any personal

information to use Chrome, but Chrome has different modes" and "privacy practices are different depending on the mode that you're using;" (3) "the personal information that Chrome stores won't be sent to Google unless you choose to store that data in your Google Account by turning on Chrome sync;" (4) "in general, the fact that you use Chrome to access Google services, such as Gmail, does not cause Google to receive any additional personally identifying information about you;" (5) "Sync is only enabled if you choose;" and (6) "when you sign in to the Chrome browser … and sync with your Google Account, your personal browsing data is saved on Google's servers and synced with your account [and] can include: browsing history;" and (7) in a section titled "How Chrome handles your synced information," Google promised that, unless one enabled sync and "also" opted to "allow your Chrome history to be included in your Google Web & App Activity," then "Google will only use your Chrome data after it's anonymized and aggregated with data from other users." FAC Ex. 25. The Chrome Privacy Notice also expressly incorporated the Google Privacy Policy by reference at all times.

The Google Privacy Policy made the same core promises, including promise that: (1) Google expressly incorporated the terms of the Chrome Privacy Notice via a hyperlinked reference under the heading, "Specific product practices" or "Specific Google services" and the statement that "the following privacy notices provide additional information about some Google services;" (2) "your Chrome browsing history is only saved to your account if you've enabled Chrome synchronization with your Google Account;" (3) "browser settings" are a "way[] to control the information Google collects;" and (4) although Google could "change this Privacy Policy from time to time," it "will not reduce your rights under this Privacy Policy without your explicit consent" and "if changes are significant," Google will "provide a more prominent notice (including, for certain services, email notification of Privacy Policy changes)."

For Google Accountholders, the Chrome Privacy Notice is an integrated contract. Under the Google TOS, the Chrome Privacy Notice was expressly incorporated as "part of" each Accountholder's agreement with Google and, in the event of a "conflict with service-specific additional terms" and more general terms, "the additional terms will govern for that service." The

Chrome Privacy Notice was specifically incorporated as a service-specific additional term. Google's TOS also promised that "if [Google] materially changes … service-specific additional terms," it will "provide … reasonable advance notice and the opportunity to review the changes."

Google uniformly breached these promises. By design, Chrome automatically sends personal information—including cookies, browsing history information, IP address, user agent, and identifiable device properties—to Google's advertising and other servers regardless of whether a user chooses to sync their Chrome browser to their Google Account. Google's surveillance is ubiquitous and unavoidable. After Chrome sends the personal information to Google's servers, Google processes it to create detailed user dossiers (starting with a project literally called "Project Dossier") that it uses for advertising and other purposes. The categories into which Google places Google Accountholders and/or their communications includes just about every categorization one could think of – including but not limited to highly sensitive categories relating to race, gender, religion, finances, political beliefs, health, sexual orientation, and pornographic interests.

The evidence will show that Google internally recognized that its consent model is broken. Perhaps recognizing that problem, Google attempted to "retire" the Chrome Privacy Notice while this case was on appeal. In its place, Google put the following notice on the page where it was previously located:

---

### The Chrome Privacy Notice is no longer available.

Your personal information will continue to be used and protected in accordance with the Google Privacy Policy.

The Chrome Help Center now has a "Privacy in Chrome" section with articles organized by topic. These articles provide details on how to manage information collected, stored, and shared when using Chrome.

To provide feedback, follow these instructions.

---

The "Privacy in Chrome" hyperlink sends users to a set of linked documents that are confusing at best, and still do not tell users the truth about how Chrome works. And despite Google's express contract promises that it would not "reduce" Google Accountholder rights or

"materially change" the TOS or Privacy Policy without "explicit consent" or advance notice, Google accompanied its purported elimination of the Chrome Privacy Notice by removing the provisions of the TOS and Privacy Policy that expressly incorporated the Chrome Privacy Notice by reference.

Google's prospective change to its contract, cannot undo the harm to Google accountholders whose personal information was sent to Google by Chrome in the face of a clear, contrary promise. Nor does it diminish the privacy rights of legacy Accountholders who have not yet been notified of (and consented to) the revised privacy rights. As a recent $314 million trial verdict in California state court demonstrates, jurors asked to interpret Google's convoluted and contradictory terms of service are readily capable of determining what a reasonable user would understand. Plaintiffs will try the claims of the Named Plaintiffs to a jury.[1]

b.    Defendant's Statement:

Google will not attempt to litigate the merits of the case in this Statement, as Plaintiffs have. Google disputes Plaintiffs' allegations, including that its disclosures were or are inaccurate, or that Google has violated any contractual promises to users; Plaintiffs' contrary allegations reflect that, as both the Court and Judge van Keulen have recognized, Plaintiffs have a "tendency to misstate or exaggerate the record." Dkt. 862 at 4, 6; *see also* Dkt. 935 at 26-27. Accordingly, Google focuses only on correcting specific misstatements that may be material to the upcoming conference:

*First*, Plaintiffs' argument that "users are entitled to deny consent" is a red herring; here, Plaintiffs did not "deny consent." They simply used Google Chrome in its default mode without

---

[1] In its statement, Google presents its perspective as to disputed issues of fact and their legal impact while characterizing Plaintiffs' contrary presentation as "misstatements." Plaintiffs disputing Google's view of the record is not a "misstatement" of the record. For example, Google argues that it is a "misstatement" to say that Plaintiffs denied consent; but that is in fact the legal consequence of a Chrome user electing to use the browser in the "Basic Browser" or "Signed in but not Consented for Sync" modes. Indeed, the Ninth Circuit held that the record "reveals disputes of material fact regarding whether 'reasonable' users of Google's product consented to Google's data collection practices." *Calhoun v. Google LLC*, 113 F.4th 1141, 1151 (9th Cir. 2024). Google's other attacks are equally just attempts to mischaracterize disputes of material fact and disputed legal conclusions as misstatements.

taking any steps to prevent the routine data collection. And as the Court has acknowledged, "[t]he specific claims at issue here differ significantly from" the claims in *Brown* and *RTB*. Dkt. 1105 at 1; *see also* 3/28/25 Hr'g Tr. at 13:16-23 (The Court: "[T]he problem I've always had with this case is it's too generic. It's -- you know, it's using -- it's using Chrome. It's using the internet, so to speak. That's -- that's the problem I've had with this case. It's not *RTB*. It is not *Brown*. It's a generic case. So how people think about using searches in browsers is very different than clicking on a button and saying you're going Incognito."). Other courts have similarly acknowledged that "[c]ontemporary internet browsing involves the collection of users' data, including by tracking users across the internet, <u>and a reasonable user should expect as much</u>." *Hubbard v. Google*, 2024 WL 3302066, at *7 (N.D. Cal. July 1, 2024) (emphasis in original).

*Second*, Plaintiffs assert that Google's expert agreed that the data at issue is "personal information" when it is associated with a Google Account, but neither Google nor any of its experts has ever adopted Plaintiffs' claim that the at-issue data (e.g., IP address, user agent, HTTP requests) is the same information "that Chrome stores" (e.g., "personal information and passwords, to help you fill out forms or sign in to sites you visit") that Google accurately represented it does not receive unless users enable Sync. Further, this alleged admission has no bearing on the claimed promise that Chrome would not send any PI to Google while users are in Chrome's "default 'Basic Browser' mode"—a mode in which, by definition, users are not signed into their Google Account, and therefore none of the data is associated with a Google Account.

*Third*, Plaintiffs' assertion that Google added the word "sync" to a portion of the September 24, 2018 CPN in order to mislead users further misstates the record. As explained in the Declaration of Gregory Fair, Google changed that language to reflect an update to Chrome's features. Prior to September 24, 2018, there was just one mode called "Signed-In Chrome;" there was no separate Sync mode or Sync button. Dkt. 1074 ¶ 4, 8 & nn. 1, 5.

*Finally*, contrary to Plaintiffs' suggestion that Google retired the CPN while the case was on appeal in recognition of a "problem," Google deprecated the CPN as part of the proposed settlement in *Brown v. Google LLC*. *See* No. 4:20-cv-03664, Dkt. 1097-04 at III.1.d (N.D. Cal.).

**3.    LEGAL ISSUES**

a.    <u>Joint Statement</u>:  ***Prioritized vs. Dormant Claims; Status of Each Claim***: Plaintiffs'
complaint (the "FAC," Dkt. Nos. 163 (sealed) and 162-2 (redacted)) asserts 16
claims.  Per Order dated September 18, 2020, Judge Koh permitted 10 of the 16
claims to be litigated "through trial" (the "prioritized claims"), "after which the
Court and the parties can discuss what to do about the remaining 6" (the "dormant
claims").  Dkt. 51.  Google moved to dismiss the 10 prioritized claims, of which the
Court dismissed 4, and allowed 6 to proceed (the 6 "live claims").  Dkt. No.
142.  Below is the status of each claim, given the procedural history above:

1. Count 1: unauthorized interception of electronic communications under
   the Wiretap Act, 18 U.S.C. § 2510.  Status: Dormant Claim.

2. Count 2: unauthorized electronic communication service ("ECS")
   disclosure under the Wiretap Act.  Status: Prioritized Claim; dismissed
   on MTD.

3. Count 3: unauthorized access to stored ECS communications under the
   Stored Communications Act ("SCA"), 18 U.S.C. § 2701. Status:
   Prioritized Claim; dismissed on MTD.

4. Count 4: unauthorized disclosures of stored communications under the
   SCA, 18 U.S.C. § 2701.  Status: Prioritized Claim; dismissed on MTD.

5. Count 5: violation of the California Invasion of Privacy Act ("CIPA"),
   Cal. Penal Code § 631.  Status: Prioritized Claim; MTD denied.

6. Count 6: invasion of privacy.  Status: Dormant Claim.

7. Count 7: intrusion upon seclusion.  Status: Prioritized Claim; MTD
   denied.

8. Count 8: breach of contract.  Status: Prioritized Claim; MTD denied.

9. Count 9: breach of the implied covenant of good faith and fair
   dealing.  Status: Prioritized Claim; MTD denied.

10. Count 10: quasi-contract (restitution and unjust enrichment). Status: Dormant Claim.

11. Count 11, violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030(g). Status: Prioritized Claim; MTD granted.

12. Count 12, violation of the California Computer Data Access and Fraud Act ("CDAFA"), Cal. Penal Code § 502. Status: Dormant Claim.

13. Count 13, statutory larceny, Cal. Penal Code §§ 484 and 496. Status: Prioritized Claim; MTD denied.

14. Count 14, violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq*. Status: Prioritized Claim; MTD denied.

15. Count 15, punitive damages under Cal. Civil Code § 3294. Status: Dormant Claim.

16. Count 16, declaratory relief under 28 U.S.C. § 2201. Status: Dormant Claim

Plaintiffs do not propose reviving the dormant claims at this time, but do not agree to their dismissal absent ordinary procedures.

b. Plaintiffs' Additional Statement:

1. ***Unresolved Legal Issues***: As noted above, there are six live claims for which the parties must now re-start expert discovery (breach of contract; breach of implied covenant; intrusion upon seclusion; larceny; UCL and CIPA). However, as listed below, there are numerous legal issues that Plaintiffs believe should be resolved first, in order for expert discovery (and preparation for trial) to proceed efficiently.

a. Class Certification– Plaintiffs have filed a petition for permission to appeal pursuant to Fed. R. Civ. P. 23(f). Given that the core issue in this appeal is the scope of consent, and that consent will play a large role in the trial of the

Named Plaintiffs' claims, Plaintiffs propose that expert discovery be stayed until disposition of the petition.

b. <u>Motion to Certify Order for Interlocutory Appeal Pursuant to 28 USC 1292(b)</u>: As discussed below in Section 4 ("Motions"), should the Rule 23(f) petition be denied, Plaintiffs will ask this Court to certify the class certification for interlocutory appeal. Two data privacy cases against Google in this District set for trial (and a third against Google in State Court that just concluded with a $314 million verdict) where summary judgment, class certification and jury instructions apply California law of contracts and implied consent differently than they have been applied in this action. Plaintiffs believe it more efficient to resolve these fundamental inconsistencies before proceeding to expert discovery.

c. <u>Implied Consent for Breach of Contract</u> – Regardless of whether and to what extent the "implied consent" defense impacts class certification, Plaintiffs dispute that "implied consent" is a valid defense to a breach of a consumer contract of adhesion under California law. *See, e.g., Harris v. comScore, Inc.*, 292 F.R.D. 579, 585 (N.D. Ill. 2013) (implied consent defense "has no place where a party manifested consent through the adoption of a form contract" because "subjective intentions are irrelevant" to evaluation of the "objective indicia of the contract's terms."); *WPP Luxembourg Gama Three Sarl v. Spot Runner, Inc.* 655 F.3d 1099, 1151 (9th Cir. 2011) (citing Cal. Civ. Code § 1639 ("When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible[.]")). Indeed, in a State Court class action against Google, the Santa Clara Superior Court granted class certification, rejecting Google's implied consent arguments, because even if individual users did know of the data flow at issue, Google "denied such practices" in the contract, eliminating individual

inquiries. *Csupo v. Google LLC*, 19-cv-352557 (Cal. Super. Ct., Santa Clara Cty), Order Denying Google's Motion to Decertify at 7 (June 2, 2025).

d. <u>Implied Consent – objective inquiry, or subjective inquiry</u>: To the extent that implied consent is a cognizable affirmative defense, and irrespective of its impact on class certification, the individual plaintiffs (and Google) need to know whether implied consent is objectively determined (a "reasonable person" standard) or subjectively (each plaintiff's subjective understanding governs). This determination will fundamentally impact how expert discovery proceeds, as all other Courts to have weighed in (post-*Calhoun*) have diverged from this Court's determination. *Frasco v. Flo Health, Inc.*, --- F.R.D. ---, 2025 WL 1433825, at *6–8 (N.D. Cal. May 19, 2025) (Donato, J.) (granting class certification, holding that "implied consent" is an objective inquiry, citing *Calhoun*); *Torres v. Prudential Fin., Inc.*, 2024 WL 4894289, at *4 (N.D. Cal. Nov. 26, 2024) (Breyer, J.) (same).

e. <u>Relevant Disclosures</u>: The class certification order held that first-party (non-Google) website disclosures might be relevant to a plaintiff's consent. Plaintiffs believe this is inconsistent with the Ninth Circuit's opinion which held that only Google's disclosures are relevant. Irrespective of how this issue impacts class certification, it would be more efficient to know prior to expert discovery whether and to what extent non-Google disclosures are relevant.

f. <u>The "Chrome Privacy Notice" and "Privacy in Chrome" Pages</u>: In denying Plaintiffs' motion for (b)(2) certification, based only on a limited record, the Court concluded as a matter of law that the deprecation of the Chrome Privacy Notice (the "CPN") vitiated any right to injunctive relief. In that ruling, the Court did not consider all of the evidence, which Plaintiffs will seek to present at trial. Google did not merely deprecate the CPN – it

replaced the CPN with a complex new set of disclosures called the "Privacy in Chrome" pages, which to this day continue to represent Chrome will send personal information to Google only if synced with a Google Account.[2] Regardless of whether and to what extent these documents impact class certification, they fundamentally impact the claims of the individual plaintiffs and it would be more efficient to know prior to the exchange of expert reports whether these documents are admissible and relevant.

    g.  <u>The Chrome Contract</u> – Whether the "Chrome Contract" for Google Accountholders who use Chrome consists of (1) the Google Terms of Service; (2) the Chrome Privacy Notice; and (3) the Google Privacy Policy. Plaintiffs' position is that these three documents, read together, form the "Chrome Contract" at-issue in this case.

  2.  ***Additional Legal Issues***:

    1.  <u>Integrated Portions of the Chrome Contract</u> – Whether the "Chrome Privacy Notice" is an "integrated" contract under California law. Plaintiffs' position is that the CPN is "integrated" under California law because (1) the Google Terms of Service stated that the Chrome Privacy Notice was a "service-specific additional term" that would control in the event of a conflict with more general provisions; (2) the Chrome Privacy Notice stated that it was the document to "learn how to control the information that's … shared when you use the Google Chrome browser" in its first sentence; and (3) the Google Privacy Policy expressly incorporated the Chrome Privacy Notice by reference and directed users to it as the first hyperlinked bullet-point under the heading, "Related

---

[2] In briefing class certification, Plaintiffs requested judicial notice of the CPN deprecation and the replacement "Privacy in Chrome" documents but the Court only considered the former. Dkt. 1105 at fn.1..

Privacy Practices – Specific Google services – The following privacy notice provide additional information about some Google services." See *Masterson v. Sine*, 68 Cal.2d 222, 225 (1968) (Integration possible even for "only part of the agreement.").

2. <u>Admissibility of Non-Party Statements for Contract Claims</u> – Whether, based on the parol evidence rule, statements made by non-parties are admissible for any purpose on Plaintiffs' breach of contract involving the Chrome Contract here, a consumer contract of adhesion. Plaintiffs' position is that statements of non-parties are rarely, if ever, admissible to prove the meaning of a contract term and are not admissible here under the parol evidence rule. See *Slivinsky v. Watkins-Johnson Co.*, 270 Cal.App.3d 799, 804 (1990).

3. <u>Admissibility of Other Google Documents/Statements for Contract Claims</u> – Whether, based on the parol evidence rule, statements made by Google outside of the Chrome Contract are admissible to prove the meaning of the terms of the Chrome Contract. Plaintiffs' position is that statements outside the Chrome Contract are not admissible for that purpose to alter or change the meaning of the Chrome Contract. See *Congdon v. Uber Technologies, Inc.*, 291 F.Supp.3d 1012, 1021 (N.D. Cal. 2018).

4. <u>Admissibility of Non-Party Statements for Non-Contract Claims</u> – Whether statements made by non-parties are admissible for any purpose for Plaintiffs' other claims, which are based on Google's breach of express contractual promises and related unfair conduct. Plaintiffs' position is that such evidence is inadmissible on all claims going forward because a non-party cannot alter the terms of Google's promises. (A non-

party's consent is relevant to liability under the federal ECPA. However, Plaintiffs are not moving forward on those claims.).

5. <u>Summary Judgment: Breach of Contract</u> – Plaintiffs' position is that the promises in the Chrome Privacy Notice are express and unequivocal. Google's position is that they are not. This raises the question of whether Plaintiffs are entitled to judgment as a matter of law on the breach of contract claim given the rule that even ambiguous provisions in a consumer contract of adhesion are to be construed against the drafter. Plaintiffs' position is that they should prevail on a motion for summary judgment regarding the breach of contract claim. See *Congdon v. Uber Technologies, Inc.*, 291 F.Supp.3d 1012, 1023 (N.D. Cal. 2018) (Defendant's "own post hoc conduct to justify its interpretation of the Agreement begs the question. Such extrinsic evidence is not relevant.").

6. <u>Summary Judgment: "Content"</u> – Whether file paths, GET/POST requests, content characterizations (called "verticals" by Google), and information beyond the .com or .org in a URL are "content" as a matter of law under the California Invasion of Privacy Act. Plaintiffs' position is that they are. See *Brown v. Google*, 685 F.Supp.3d 909, 935-36 (N.D. Cal. 2023).

7. <u>Summary Judgment: "Interception"</u> – Whether Google intercepted at-issue communications while they were in-transit or being sent or received. Plaintiffs' position is that they entitled to summary judgment because the technology in question results in Chrome sending the information to Google contemporaneous with each at-issue communication. Indeed, Google's ad-tech surveillance technology for the express purpose of acquiring and analyzing the content of a

communication while a person is still in the middle of that communication.

8. Summary Judgment: Location of the Interception – Whether Google intercepted the at-issue communications while they were in transit, being sent from, or received in the state of California. Plaintiffs' position is that they are entitled to summary judgment for a sub-set of at-issue communications because Google keeps perfect records of the geo-location for each (1) class member; (2) website server; and (3) Google server involved in the interception. Where Google's records show that the class member, website server, or Google server were located in California for the communication in question, Plaintiffs are entitled to summary judgment on that issue. This analysis can be done by programmatically querying the logs in an objective manner—such that it does not require any individual analysis.

9. Summary Judgment: "Personal Information" under the Chrome Contract – Whether cookies, browsing history information, IP address, User-Agents, device properties, and/or the X-client data header are "personal information" as a matter of law under Google's contract definition of "personal information," which includes "data that can be reasonably linked to" a person's name, email address, or billing information by Google, "such as information [Google] associate[s] with your Google Account". Plaintiffs' position is that they are, because it is not disputed that Google associates all of this information that Chrome sends to Google with the Google Account for each Accountholder who uses Chrome.

10. Damages: Plaintiffs will establish damages for Google's conduct, including but not limited to using Google Screenwise (a program through

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

which Google pays participants a market price of "$3 per month per device" that "does not decrease based on one's browsing activity" as a metric. *See Brown v. Google*, 2022 WL 17961497, at *3-5 (N.D. Cal. Dec. 12, 2022).

    c.  <u>Defendant's Statement</u>:

This case has been pending for five years.  The next steps are clear and straightforward: (1) complete any remaining expert discovery; (2) brief summary judgment; and (3) if any portion of the case is left after the Court rules on summary judgment, proceed to trial on what remains of Plaintiffs' individual claims.

Google disagrees that "there are numerous legal issues that … should be resolved first, in order for expert discovery (and preparation for trial) to proceed efficiently."  As an initial matter, several of the issues Plaintiffs raise have already been resolved by this Court or the Ninth Circuit or conceded by Plaintiffs. *See, e.g.*, *Calhoun v. Google, LLC*, 113 F.4th, 1141, 1147 (9th Cir. 2024) ("The parties do not dispute that consent is a valid defense to [all of Plaintiffs'] claims, and that the contours of the defense [include that] consent can be express or implied . . . ."); Dkt. 1105 ("Class Cert. Order") at 5-8 (implied consent defense "would be based on individual, and subjective, interactions of what certain class members knew, read, saw, or encountered" (quoting *Brown v. Google*, 2022 WL 17961497, at *19 (N.D. Cal. Dec. 12, 2022))). And some amount to an untimely motion for reconsideration. *See, e.g.*, Class Cert. Order 5-8 (recognizing that disclosures beyond the contract are relevant to implied consent).

In any event, the issues Plaintiffs identify above would more appropriately be raised (if at all) at summary judgment, or in motions in limine or other pre-trial motions.  The parties have negotiated—and the Court has ordered—various iterations of the schedule in this case.  The schedule has always contemplated that after the Court ruled on class certification, the parties would proceed to completing any merits expert discovery.  The schedule has never contemplated that after class certification and before expert discovery, Plaintiffs would be permitted to file a series of motions seeking reconsideration of issues already decided, plus a wish-list of arguments that

Plaintiffs would like the Court to resolve in their favor to make their case easier to prove. That is what Plaintiffs propose above. They provide no basis or authority for such an extraordinary deviation from standard (and previously agreed) procedure.

Ultimately, Plaintiffs simply seek an indefinite stay in hopes that the Ninth Circuit will reach a different resolution on legal issues that this Court decided. There is no basis for that.

*First,* in order to obtain a stay, Plaintiffs must move for one and show the *Nken* factors favor a stay. *People by & through Harrison v. Express Scripts, Inc.*, 139 F.4th 763, 768 (9th Cir. 2025). They have not made that showing.

*Second,* to the extent Plaintiffs' intention is for these issues to be resolved through an interlocutory appeal, Google disagrees that the standard for an interlocutory appeal has been met, including because there is no "substantial ground for difference of opinion." *See Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010) ("[a] party's strong disagreement with the Court's ruling is not sufficient for there to be a 'substantial ground for difference'" and "[t]hat settled law might be applied differently does not establish a substantial ground for difference of opinion").

*Third*, Plaintiffs have not explained how any of these legal issues bears on expert discovery. Even if it were true that the Rule 23(f) petition (or Plaintiffs' potential interlocutory appeal) had any bearing on the application of Google's consent defense to the named Plaintiffs, consent is a fact-specific inquiry, and both sides have already prepared expert reports on issues relating to consent. Google also expects the parties to prepare expert reports related to the at-issue technology and damages that are even further afield from anything at issue in the Rule 23(f) petition (or which might be raised by Plaintiffs' anticipated interlocutory appeal). Particularly given that "petitions for Rule 23(f) review should be granted sparingly," *Chamberlan v Ford Motor Co.*, 402 F.3d 952, 959 (9th Cir. 2005), and that the Ninth Circuit denied a Rule 23(f) Petition in the related *Brown* case in virtually identical circumstances, there is no sense indefinitely delaying further proceedings based on the small chance the Ninth Circuit grants the Rule 23(f) petition *and* reverses the class certification order. *See* Fed. R. Civ. P. 23(f) ("An appeal does not stay proceedings in the district court unless the district judge or the court of appeals so orders.").

As to the "Additional Legal Issues" identified by Plaintiffs, Plaintiffs should raise them (if at all) at summary judgment or in some other procedurally appropriate motion. At that point, Google will explain why Plaintiffs' positions are meritless.  There is no reason for the issues to be decided now.

Finally, Google intends to present additional legal issues in a motion for summary judgment on claims and defenses other than express consent.

**4.**    **MOTIONS**

a.    ***Prior Motions Decided Since the Prior Joint Case Management Statement***:[3]

1.  Three motions for admission *pro hac vice* were filed. Dkt Nos. 1035, 1037 and 1054.  All were granted. Dkt. Nos. 1040, 1041 and 1055.

2.  On September 27, 2024, Google moved to clarify the data log preservation orders (discussed *infra* at Section 6, "evidence preservation"). Dkt. No. 1039. Magistrate Judge van Keulen resolved the motion on November 1, 2024. Dkt. No. 1067.

3.  Two motions to seal materials related to Google's motion to clarify were filed (Dkt. Nos. 1038 and 1044).  Both were resolved by Magistrate Judge van Keulen on November 1, 2024 (Dkt. Nos. 1068 and 1069).

4.  Plaintiffs filed a renewed motion for class certification on October 30, 2024. Dkt. No. 1060.  The Court denied the motion on June 9, 2025. Dkt. 1105.

5.  Also on October 30, 2024, Plaintiffs filed a motion for leave to file a request for judicial notice of various public Google documents post-dating the end of (and not exchanged in) fact discovery. Dkt. 1058. The Court denied the motion in the class certification order. Dkt. 1105.

6.  On December 20, 2024, plaintiffs moved to strike the expert reports of Paul Schwartz and Tülim Erdem. Dkt. Nos. 1077 and 1081. The motions were

---

[3]  Seventh Supplemental Joint Case Management Statement dated September 23, 2024 (Dkt. 1034).

denied in the class certification order. Dkt. 1105.

b.  ***Pending Motions***:

    1.  <u>Sealing</u>: In the District Court, the parties filed various motions to seal materials related to the class certification and *Daubert* motion, briefing and declarations in support. Dkt. Nos. 1061, 1072, 1078, 1080 and 1088.  An omnibus stipulation jointly setting forth the parties' positions on each of these motions appears at 1094. The motions remain under submission.

    2.  <u>Rule 23(f) Petition</u>: In the Court of Appeals, on June 23, 2025, Plaintiffs filed a petition for permission to appeal pursuant to Fed. R. Civ. P. 23(f). Ninth Cir. Dkt. No. 8; District Court Dkt. No. 1109.

    3.  <u>Motion to Qualify Petition as Comeback Appeal</u>: Also in the Court of Appeals, on June 24, 2025, Plaintiffs filed a motion to qualify the 23(f) petition as a "comeback" appeal and assign to prior panel pursuant to Ninth Circuit general orders 1.12 and 3.6.  Ninth Cir. Dkt. No. 4. Google opposed the motion on June 26, 2025, and Plaintiffs replied on June 27, 2025. The motion remains under submission as of the date of this CMC Statement.

c.  ***Anticipated Motions***:

    1.  Plaintiffs anticipate filing the following motions:

        a.  <u>Motion to Certify Order for Interlocutory Appeal</u>: Plaintiffs anticipate moving to certify the class certification order for interlocutory appeal pursuant 28 U.S.C. § 1292(b), which may be sought in parallel during the pendency of a Rule 23(f) petition if the motion independently meets the 1292(b) criteria.  *See, e.g., Senne v. Kansas City Royals Baseball Corp.*, 14-CV-0608-JCS (N.D. Cal, May 5, 2017) (order granting 1292(b) motion to certify prior class certification order for interlocutory appeal during pendency of 23(f) review).  As discussed above in Section 3 ("legal issues"), Plaintiffs believe that the following questions meet the statutory criteria: 1)

whether "implied consent" is a defense to contract enforcement under California law; 2) whether "implied consent" is an objective, reasonable person inquiry or instead is a subjective, individual inquiry (i.e., whether Google's "liability in this case ultimately turns on each class member's subjective understanding of defendant's promises," Dkt. 1105 at 13); 3) whether disclosures on first-party websites are relevant to a jury's determination of Google's implied consent defense (or whether, instead, the jury may only consider Google's disclosures); and 4) whether the Court may take judicial notice of Google's deprecation of the Chrome Privacy Notice ("CPN"), refuse to take judicial notice of the Privacy in Chrome pages that replaced the CPN on the same day, and resolve disputed questions of fact regarding the impact of those changed disclosures.

b. <u>Motions in Limine</u> – Plaintiffs have set forth in Section 3 *supra* a preliminary set of motions in limine that may be filed.

c. <u>Motion for Partial Summary Judgment</u> – Plaintiffs anticipate seeking leave to file a motion for partial summary judgment on certain elements of claims in their breach of contract and CIPA claims. Plaintiffs note that Google is precluded from any further summary judgment motions on consent, both as a result of having previously moved and flowing from the Ninth Circuit's ruling on those issues.

2. Google anticipates filing the following motions:

a. <u>Motion for Summary Judgment</u> – Google anticipates filing a motion for summary judgment on issues other than express consent after expert discovery is complete. Plaintiffs are incorrect that Google is precluded from any further summary judgment motions on consent to the extent such motions do not rely on the express consent defense previously raised and ruled upon by this Court and the Ninth Circuit. *See* Dkt. 395 (expressly

limiting Google's prior motion to "express consent"); *In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *19. (N.D. Cal. Mar. 18, 2014) ("[E]xpress and implied consent are analytically distinct."). For example, Google would not be precluded from moving for summary judgment on the separate defense of implied consent with respect to the individual named Plaintiffs.

    b.    <u>Motions in Limine/*Daubert* Motions</u> – Google anticipates filing evidentiary motions in advance of trial.

## 5.    **AMENDMENT OF PLEADINGS**

The operative complaint is the First Amended Complaint dated April 16, 2021 (the "FAC," Dkt. No. 163). Google filed its Answer to the First Amended Complaint on April 16, 2021. Dkt No. 195. Plaintiffs do not presently anticipate moving to amend the Complaint further, pending resolution of the issues identified above regarding Google's replacement of the CPN with the "Privacy in Chrome" pages, and amending prior to trial to conform to proof. Google cannot take a position on Plaintiffs' potential amendments in the abstract, and will address any motions made to amend the Complaint should Plaintiffs file one.

## 6.    **EVIDENCE PRESERVATION**

The parties reviewed the ESI Guidelines and conferred regarding evidence preservation. The Court entered a stipulated protective order (Dkt. 61) and an ESI order (Dkt. 96). With the assistance of a Special Master and testimony taken in three Rule 30(b)(6) depositions, Magistrate Judge Susan van Keulen helped the parties to craft a detailed data preservation order to ensure that plaintiffs have sufficient data to identify class members, quantify damages and establish liability. The preservation order was issued on April 4, 2022 (Dkt. No. 604); revised on May 23, 2022 (Dkt. No. 665); and finalized on July 15, 2022 (Dkt No. 766). Google moved for clarification on July 27, 2022 (Dkt. No. 787) which was resolved on August 5, 2022 (Dkt. No. 810). Google then moved for partial relief from the preservation order, which was granted in part while the case was on appeal (as to duty to preserve new data) but denied as to obligations to preserve data already

preserved.  Dkt. No. 1011. Google moved for clarification of the preservation order in September 2024, and as discussed supra in Section 4 ("Motions"), the motion was resolved by Magistrate Judge van Keulen.

**7.    DISCLOSURES**

The Parties exchanged initial disclosures on September 9, 2020. Plaintiffs amended their initial disclosures on May 17, 2021, and again on March 4, 2022. Google amended their initial disclosures on February 21, 2022.

**8.    DISCOVERY**

Fact discovery in this action has closed. Expert discovery is expected to commence following the exchange of opening expert reports.  As set forth in the Joint Statement Regarding Case Schedule (Dkt. No. 1107) and in Section 15 below, the parties disagree on when expert discovery should begin.

**9.    CLASS ACTIONS**

Plaintiffs filed their renewed motion for class certification on October 30, 2024, as discussed supra in Section 4 ("Motions").  The Court denied the motion in full, Dkt. No. 1105, and Plaintiff filed a timely Rule 23(f) petition for permission to appeal the order with the Ninth Circuit, which remains pending.

**10.    RELATED CASES**

On August 4, 2020, this case was judicially related to, but not consolidated with, *Brown v. Google LLC*, Case No. 4:20-cv-03664-YGR-SVK. Dkt. No. 27.  On April 9, 2021, this case and the *Brown* case were judicially related to *In re: Google RTB Consumer Privacy Litigation*, Case No. 4:21-cv-02155-YGR-VKD, *see* Dkt. No. 158.

**11.    RELIEF**

Plaintiffs are seeking damages, restitution, disgorgement, injunctive and declaratory relief, as well as attorneys' fees and costs of suit. Plaintiffs seek damages in excess of $5,000,000. Google denies that Plaintiffs are entitled to any of the relief they seek.

**12.    SETTLEMENT AND ADR**

The Parties attended a full day mediation with Randall W. Wulff on May 15, 2023. The mediation was not successful. The Parties are happy to discuss ADR at the Case Management Conference if requested by the Court.

**13.    OTHER REFERENCES**

Discovery is being overseen by Magistrate Judge Susan van Keulen. The Court also appointed a Special Discovery Master to advise on several discrete discovery disputes, *see* Dkt. No. 246. The Special Master was released in this matter on May 30, 2024. The Parties do not believe re-appointment of a Special Master would be appropriate at this time.

**14.    NARROWING OF ISSUES**

At this time, the Parties are unaware of any issues that can be narrowed by agreement, pending their meet-and-confer obligations prior to any motions for summary judgment following the conclusion of expert discovery.

**15.    SCHEDULING**

Plaintiffs propose the following case schedule flowing from a decision on the pending Rule 23(f) petition and anticipated requested interlocutory appeal:

| EVENT | DEADLINE |
|---|---|
| Opening Expert Reports | 45 days after the Ninth Circuit resolves Plaintiffs' Rule 23(f) Petition (or issues an order on class certification if the Petition is granted) or Section 1292(b) interlocutory appeal |
| Rebuttal Expert Reports | 60 days after exchange of opening reports |
| Close of Expert Discovery | 45 days after exchange of rebuttal reports |
| Rule 56 Motions; *Daubert* Motions | **Motion:** 55 days after close of expert discovery <br> **Opp'n:** 45 days after opening briefs <br> **Reply:** 30 days after oppositions |

Defendant's proposal, subject to the Court's approval:

As explained in the Joint Statement Regarding Case Schedule (Dkt. No. 1107), Google disagrees that the rest of the case schedule should be triggered by the resolution of Plaintiffs' Rule 23(f) petition for leave to appeal the Court's class certification ruling (or an unfiled motion for

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

certification of an interlocutory appeal). Google believes that the parties would benefit from certainty in case deadlines, and proposes setting specific dates. Accordingly, Google proposes the following schedule, which allows approximately three months for the Ninth Circuit to rule on Plaintiffs' petition before opening expert reports are due:

| Event | Proposed Deadline |
|---|---|
| Opening Expert Reports | October 10, 2025 |
| Rebuttal Expert Reports | December 9, 2025 (60 days after exchange of opening reports) |
| Close of Expert Discovery | January 23, 2026 (45 days after exchange of rebuttal reports) |
| Rule 56 Motions; *Daubert* Motions | **Motion:** March 19, 2026 (55 days after close of expert discovery) **Opp'n:** May 4, 2026 (45 days after opening briefs) **Reply:** June 3, 2026 (30 days after oppositions) |

## 16.   TRIAL

Plaintiffs demanded a jury trial. Complaint, Dkt. Nos. 1 & 3-4. The Parties agree that it is premature to estimate trial length at this time and propose to revisit at a later CMC following the conclusion of expert discovery and any orders on summary judgment.

## 17.   DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

a.      Plaintiffs:  Plaintiffs filed their certifications pursuant to Civil L.R. 3-15 on July 27, 2020.  *See* Dkt. No. 5.

b.      Defendant:  Google filed its corporate disclosure statement on November 30, 2020. *See* Dkt. No. 79.

## 18.   PROFESSIONAL CONDUCT

All attorneys of record have reviewed the Guidelines for Professional Conduct for the Northern District of California.

## 19.   OTHER MATTERS

The Parties have no other matters to raise with the Court at this juncture.

Dated: July 7, 2025

**BLEICHMAR FONTI & AULD LLP**               **QUINN EMANUEL URQUHART & SULLIVAN, LLP**

1

2   By:    /s/ Lesley E. Weaver
    Lesley E. Weaver (SBN 191305)

3   Anne K. Davis (SBN 267909)
    Joshua D. Samra (SBN 313050)

4   1330 Broadway, Suite 630
    Oakland, CA 94612

5   Tel.: (415) 445-4003

6   Fax: (415) 445-4020
    lweaver@bfalaw.com

7   adavis@bfalaw.com
    jsamra@bfalaw.com

8

9   Gregory S. Mullens (pro hac vice forthcoming)
    75 Virginia Road, 2nd Floor

10  White Plains, New York 10603
    Tel.: (415) 445-4006

11  gmullens@bfalaw.com

12  DiCELLO LEVITT LLP

13  By:    /s/ David A. Straite

14  David A. Straite (admitted pro hac vice)
    Corban Rhodes (admitted pro hac vice)

15  485 Lexington Avenue, Suite 1001
    New York, NY 10017

16  Tel.: (646) 933-1000

17  dstraite@dicellolevitt.com
    crhodes@dicellolevitt.com

18

19  Amy E. Keller (admitted pro hac vice)
    Adam Prom (admitted pro hac vice)

20  Julia Veeser (admitted pro hac vice)
    Ten North Dearborn St., Sixth Floor

21  Chicago, IL 60602
    Tel.: (312) 214-7900

22  akeller@dicellolevitt.com
    aprom@dicellolevitt.com

23

24  SIMMONS HANLY CONROY LLP

25  By:    /s/ Jay Barnes
    Jason 'Jay' Barnes (admitted pro hac vice)

26  Jayne Conroy (admitted pro hac vice)
    An Truong (admitted pro hac vice)

27  112 Madison Avenue, 7th Floor
    New York, NY 10016

28

By:    /s/ Andrew H. Schapiro
Andrew H. Schapiro (admitted pro hac vice)
andrewschapiro@quinnemanuel.com
Teuta Fani (admitted pro hac vice)
teutafani@quinnemanuel.com
Joseph H. Margolies (admitted pro hac vice)
josephmargolies@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Stephen A. Broome (CA Bar No. 314605)
stephenbroome@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
Crystal Nix-Hines (CA Bar No. 326971)
crystalnixhines@quinnemanuel.com
Alyssa G. Olson (CA Bar No. 305705)
alyolson@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Xi ("Tracy") Gao (CA Bar No. 326266)
tracygao@quinnemanuel.com
Carl Spilly (admitted pro hac vice)
carlspilly@quinnemanuel.com
1300 I Street NW, Suite 900
Washington D.C., 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

Brett Watkins (admitted pro hac vice)
brettwatkins@quinnemanuel.com
700 Louisiana St., Suite 3900
Houston, TX 77002
Telephone: (713) 221-7000
Facsimile: (713) 221-7100

Counsel for Defendant

Tel.: (212) 784-6400
Fax: (212) 213-5949
*jaybarnes@simmonsfirm.com*
*atruong@simmonsfirm.com*

Eric Johnson (admitted *pro hac vice*)
Jennifer 'Jenny' Paulson (admitted *pro hac vice*)
One Court Street
Alton, IL 62002
Tel.: 618-693-3104
*ejohnson@simmonsfirm.com*
*jpaulson@simmonsfirm.com*

*Counsel for Plaintiffs*

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)

I, Andrew H. Schapiro, attest that concurrence in the filing of this document has been obtained from the other signatories. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 7th day of July, 2025, at Chicago, Illinois.

*/s/ Andrew H. Schapiro*
Andrew H. Schapiro

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# [PROPOSED] ORDER

Pursuant to stipulation of the Parties and for good cause shown, the Court ENTERS the following Case Management Schedule:

**Plaintiffs' Proposed Schedule:**

| Event | Proposed Deadline |
|---|---|
| Opening Expert Reports | 45 days after the Ninth Circuit resolves Plaintiffs' Rule 23(f) Petition (or issues an order on class certification if the Petition is granted) or Section 1292(b) interlocutory appeal |
| Rebuttal Expert Reports | 60 days after exchange of opening reports |
| Close of Expert Discovery | 45 days after exchange of rebuttal reports |
| Rule 56 Motions; *Daubert* Motions | **Motion:** 55 days after close of expert discovery<br>**Opp'n:** 45 days after opening briefs<br>**Reply:** 30 days after oppositions |

**Google's Proposed Schedule:**

| Event | Proposed Deadline |
|---|---|
| Opening Expert Reports | October 10, 2025 |
| Rebuttal Expert Reports | December 9, 2025 (60 days after exchange of opening reports) |
| Close of Expert Discovery | January 23, 2026 (45 days after exchange of rebuttal reports) |
| Rule 56 Motions; *Daubert* Motions | Motion: March 19, 2026 (55 days after close of expert discovery)<br>Opp'n: May 4, 2026 (45 days after opening briefs)<br>Reply: June 3, 2026 (30 days after oppositions) |

**IT IS SO ORDERED.**

Date: _____

_____
HON. YVONNE GONZALEZ ROGERS
United States District Court Judge