**BLEICHMAR FONTI & AULD LLP**
Lesley E. Weaver (SBN 191305)
Anne K. Davis (SBN 267909)
Joshua D. Samra (SBN 313050)
1330 Broadway, Suite 630
Oakland, CA 94612
Tel.: (415) 445-4003
Fax: (415) 445-4020
*lweaver@bfalaw.com*

**SIMMONS HANLY CONROY LLP**
Jason 'Jay' Barnes (admitted *pro hac vice*)
Jayne Conroy (admitted *pro hac vice*)
An Truong (admitted *pro hac vice*)
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel.: (212) 784-6400
Fax: (212) 213-5949
*jaybarnes@simmonsfirm.com*

**DiCELLO LEVITT LLP**
David A. Straite (admitted *pro hac vice*)
Julia Veeser (admitted *pro hac vice*)
Adam Prom (admitted *pro hac vice*)
485 Lexington Avenue, Suite 1001
New York, NY 10017
Tel.: (646) 933-1000
*dstraite@dicellolevitt.com*

*Counsel for Plaintiffs*
*[Additional counsel on signature page]*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

PATRICK CALHOUN, *et al.*, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

GOOGLE LLC,

Defendant.

Case No. 4:20-cv-05146-YGR-SVK

**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO CERTIFY ORDER FOR IMMEDIATE INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(B); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

MOTION HEARING:

DATE: August 19, 2025
TIME: 2:00 P.M.
PLACE: Courtroom 1
JUDGE: Hon. Yvonne Gonzalez Rogers

PLAINTIFFS' MOTION TO CERTIFY ORDER FOR IMMEDIATE INTERLOCUTORY APPEAL

1

## <u>TABLE OF CONTENTS</u>

NOTICE OF MOTION AND MOTION ....................................................................................1

STATEMENT OF ISSUES TO BE DECIDED ........................................................................2

MEMORANDUM OF POINTS AND AUTHORITIES ...........................................................3

I.      INTRODUCTION ........................................................................................................3

II.     RELEVANT PROCEDURAL HISTORY ....................................................................4

III.    ARGUMENT ................................................................................................................4

        A.      Legal Standard ................................................................................................. 4

        B.      The Court Should Certify Question 1……………………………………………5

        C.      The Court Should Certify Question 2……………………………………………7

        D.      The Court Should Certify Question 3……………………………………………9

        E.      The Court Should Certify Question 4……………………………………………10

        F.      The Court Should Certify Question 5……………………………………………13

IV.     CONCLUSION............................................................................................................15

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

*Am. Bldg. Maint. Co. v. Indem. Ins. Co. of N.A.*,
   214 Cal. 608 (1932) ................................................................................................ 14

4

*Bally v. State Farm Life Ins. Co.*,
   335 F.R.D. 288 (N.D. Cal. 2020) ............................................................................ 7

5

6

*Brown v. Google LLC*,
   2022 WL 17961497, at *18 (N.D. Cal. 2022) ...................................................... 10

7

*Calhoun v. Google LLC*,
   113 F.4th 1141 (9th Cir. 2024) ...................................................................... 4, 8, 12

8

9

*Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.*
   (2003) 109 Cal. App. 4th 944 ................................................................................. 8

10

*Frasco v. Flo Health, Inc.*,
   --- F.R.D. ---, 2025 WL 1433825  (N.D. Cal. May 19, 2025); ....................... 9, 10, 11

11

12

*Harris v. comScore, Inc.*,
   292 F.R.D. 579 (N.D. Ill. 2013) ............................................................................. 6

13

*Hewitt v. Joyce Beverages of Wisconsin, Inc.*, 7
   21 F.2d 625 (7th Cir.1983) ..................................................................................... 5

14

15

*Hoffman v. Citibank (South Dakota), N.A.*,
   2007 WL 5659406 (C.D. Cal. Feb. 15, 2007) ......................................................... 5

16

*In re Cement Antitrust Litig. (MDL No. 296)*,
   673 F.2d 1020 (9th Cir. 1981) ............................................................................ 4, 5

17

18

*In re Checking Acct. Overdraft Litig.*,
   286 F.R.D. 645 (S.D. Fla. 2012) ........................................................................... 8

19

*In re Google Inc. Gmail Litig.*,
   2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) ....................................................... 6

20

21

*Miles v. Kirkland's Stores Inc.*,
   89 F.4th 1217 (9th Cir. 2024) ............................................................................... 10

22

*NMSBPCLDHB v. Cnty. of Fresno*,
   152 Cal. App. 4th 954, 959 (2007) ...................................................................... 14

23

24

*Reese v. BP Expl. (Alaska) Inc.*,
   643 F.3d 681 (9th Cir. 2011) ............................................................................. 4, 7

25

*Roth v. Fortis Ventures, LLC*,
   2022 WL 21777087 (N.D. Cal. Aug. 19, 2022) ..................................................... 5

26

27

*Senne v. Kansas City Royals Baseball Corp.*,
   2017 WL 5973487 (N.D. Cal. May 5, 2017) .......................................................... 5

28

*Senne v. Kansas City Royals Baseball Corp*,
  934 F.3d 918 (9th Cir. 2019) .................................................................................... 5

*Torres v. Prudential Fin., Inc.*,
  2024 WL 4894289 (N.D. Cal. Nov. 26, 2024) ..................................................... 8, 11

*Transamerica Life Ins. Co.*,
  2016 WL 2851289 (C.D. Cal. May 13, 2016) ............................................................ 5

*True Health Chiropractic, Inc. v. McKesson Corp.*,
  896 F.3d 923 (9th Cir. 2018) ............................................................................. 7, 10

*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016) ....................................................................................... 12, 14

*Valentino v. Carter-Wallace, Inc.*,
  97 F.3d 1227 (9th Cir.1996) ..................................................................................... 5

*Williams v. Apple, Inc.*,
  338 F.R.D. 629 (N.D. Cal. 2021) ......................................................................... 6, 7

**Statutes**

28 U.S.C. § 1292 .............................................................................................. 1, 2, 4, 5

Cal. Civ. Code § 1689 ............................................................................................. 14

**Other Authorities**

Restatement (Second) of Contracts § 211(2) .................................................... 7, 8, 9

PLAINTIFFS' MOTION TO CERTIFY ORDER FOR IMMEDIATE INTERLOCUTORY APPEAL

1

## NOTICE OF MOTION AND MOTION

2

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

3          PLEASE TAKE NOTICE that on August 19, 2025, at 2:00pm, or as soon thereafter as this

4    matter may be heard before the Honorable Yvonne Gonzalez Rogers at the Oakland Federal District

5    Courthouse, 1301 Clay Street, Courtroom 1, Fourth Floor, Plaintiffs will and hereby do move this

6    Court for an order, pursuant 28 U.S.C. § 1292(b), certifying for interlocutory appeal this Court's

7    June 9, 2025 order denying Plaintiffs' motion to certify class (Dkt. No. 1105, the "Order"). This

8    Motion is based on this Notice, the following Memorandum of Points and Authorities, the complete

9    files and records in this action, and any additional material and arguments as may be considered in

10    connection with the hearing on the Motion.

11          In the Order, the Court denied the motion for 23(b)(3) and (c)(4) certification, holding that

12    "liability in this case ultimately turns on each class member's subjective understanding of

13    defendant's promises." Order at 13. The court also denied 23(b)(2) certification, holding that with

14    the deprecation of the Chrome Privacy Notice ("CPN") for new Google Accountholders, "there are

15    no contractual promises to be enforced," *id*. at 11, resolving a contested merits issue at class

16    certification. Plaintiffs seek certification for an interlocutory appeal of the following five issues:

17          1.    Whether "implied consent" is a cognizable defense to Plaintiffs' claim for breach

18                of express contract under California law.

19          2.    Whether the Ninth Circuit's "reasonable person" standard governing consent in a

20                breach of contract case is an *objective* inquiry rather than an *individualized* inquiry

21                as the District Court held.

22          3.    Whether the District Court was correct as a matter of law to presume that class

23                members might have been exposed to disclosures contradicting Google's express

24                promises without an evidentiary showing that such disclosures exist.

25          4.    Whether the District Court may take judicial notice of Google's deprecation of the

26                Chrome Privacy Notice but simultaneously deny a request for judicial notice of the

27                Privacy in Chrome pages that replaced the Chrome Privacy Notice.

28          5.    Whether the District Court may, on class certification, resolve disputed merits

questions regarding Google's continuing liability to existing Accountholders under the Chrome Privacy Notice in effect when they accepted the Terms of Service and deny Rule 23(b)(2) certification on the basis of that merits resolution.

Certification of the Order for an interlocutory appeal is appropriate because (i) the issues above are each "a controlling question of law"; (ii) "there is substantial ground for difference of opinion" for each; and (iii) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

## STATEMENT OF ISSUES TO BE DECIDED

Whether the Court should amend the June 9, 2025 Order, certifying the following questions for interlocutory appeal:

1.  Whether "implied consent" is a cognizable defense to Plaintiffs' claim for breach of express contract under California law.

2.  Whether the Ninth Circuit's "reasonable person" standard governing consent in a breach of contract case is an *objective* inquiry rather than an *individualized* inquiry as the District Court held.

3.  Whether the District Court was correct as a matter of law to presume that class members might have been exposed to disclosures contradicting Google's express promises without an evidentiary showing that such disclosures exist.

4.  Whether the District Court may take judicial notice of Google's deprecation of the Chrome Privacy Notice but simultaneously deny a request for judicial notice of the Privacy in Chrome pages that replaced the Chrome Privacy Notice.

5.   Whether the District Court may, on class certification, resolve disputed merits questions regarding Google's continuing liability to existing Accountholders under the Chrome Privacy Notice in effect when they accepted the Terms of Service and deny Rule 23(b)(2) certification on the basis of that merits resolution.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

In its June 9, 2025 Order denying Plaintiffs' motion for class certification (Dkt. No. 1105, the "Order"), the Court made several rulings that Plaintiffs believe conflict with settled California law and recent case law in this Circuit. While these rulings were made in the context of a class certification analysis, they fundamentally impact expert discovery and trial even for the individual claims of the six named plaintiffs. Any post-trial appeals, if successful, would require not only restarting trial, but also expert discovery. Getting clarity from the Court of Appeals now is therefore appropriate and efficient.

As argued below, Plaintiffs believe that five key legal questions are appropriate for interlocutory review. The first three relate to Google's "implied consent" defense, specifically, whether implied consent is a defense to a claim for breach of express contract; whether the Ninth Circuit's "reasonable person" standard involves an *objective, standardized* inquiry or a *subjective, individualized* inquiry; and whether the Court may presume the existence of third-party disclosures sufficiently putting users on notice that Google's promises were false, without specifically identifying any such disclosures. The fourth and fifth questions relate to the Court's denial of Plaintiffs' motion for a Rule 23(b)(2) class based on the Court's legal conclusion that Google's deprecation of the Chrome Privacy Notice ("CPN") means "there are no contractual promises to be enforced," effectively deciding retroactivity for existing Accountholders who accepted the Terms of Service prior to the deprecation. Order at 11. This legal finding is contested because the Terms of Service and Privacy Policy require Google to notify users and get their express consent before reducing privacy rights. Because Google did not do so, as a matter of law, the changes are not effective for Accountholders who signed up prior to the deprecation.

Because each of these issues are controlling questions of law in this case, there are substantial grounds for difference of opinion, and immediate appeal will undoubtedly help this case reach final resolution, Plaintiffs respectfully request that the Court certify the Order for interlocutory appeal.

## II.    RELEVANT PROCEDURAL HISTORY

Following this Court's summary judgment dismissal on Google's first affirmative defense ("consent"), the Ninth Circuit reversed, finding a material issue of disputed fact whether a "reasonable person" consented to Chrome sending personal information to Google even when not sync'd with a Google account, contrary to Google's express promises. *Calhoun v. Google LLC*, 113 F.4th 1141 (9th Cir. 2024) ("*Calhoun I*").[1] On remand, the District Court denied Plaintiffs' motion for class certification, finding Google's affirmative defense of implied consent to be an individualized inquiry. Order at 9 ("the implied consent inquiry permits a court to consider extrinsic evidence to the extent necessary to determine a party's subjective understanding of the terms to which they consented"); *id*. at 13 ("liability in this case ultimately turns on each class member's subjective understanding of defendant's promises"). The District Court further denied Plaintiffs' motion for 23(b)(2) certification, resolving in Google's favor the contested merits issue of whether quiet deprecation of the CPN eliminated Google's contractual obligations to existing accountholders—accountholders who received privacy promises in the CPN and who have never been told (let alone consented to) the loss of those promises.[2] On June 23, 2025, Plaintiffs filed a Rule 23(f) petition with the Ninth Circuit, which Google opposed on July 7, 2025. Plaintiffs anticipate moving for leave later today (July 14, 2025) to submit a reply.

## III.    ARGUMENT

### A.    Legal Standard

Certification under 28 U.S.C. § 1292(b) is proper when (1) there is "a controlling question of law"; (2) there are "substantial grounds for difference of opinion" on the question; and (3) "an immediate appeal may materially advance the ultimate termination of the litigation." *In re Cement Antitrust Litig. (MDL No. 296)*, 673 F.2d 1020, 1026 (9th Cir. 1981); *see also Reese v. BP Expl. (Alaska) Inc*., 643 F.3d 681, 687–88 (9th Cir. 2011).

Courts may grant 1292(b) certification of multiple issues. *Reese*, 643 F.3d at 688 (district court certified, and Ninth Circuit accepted, two questions for review); *accord*, *Santomenno v.*

---

[1] In the Court of Appeals, Plaintiffs and Google refer to the decision as "Calhoun I" for clarity.

1  *Transamerica Life Ins. Co.*, 2016 WL 2851289, at *9 (C.D. Cal. May 13, 2016. Also, a class

2  certification order is appropriate for consideration under Section 1292(b) where the three statutory

3  elements are met. *Hoffman v. Citibank (South Dakota), N.A.*, 2007 WL 5659406, at *2 (C.D. Cal.

4  Feb. 15, 2007) ("District Courts often allow orders granting or denying class certification to be

5  immediately appealed under 28 U.S.C. section 1292(b), even though the motion is not case

6  dispositive.") (citing *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir.1996) and *Hewitt v.*

7  *Joyce Beverages of Wisconsin, Inc.*, 721 F.2d 625 (7th Cir.1983)).

8         Section 1292(b) motions are also permissible during the pendency of a Rule 23(f) Petition.

9  *See, e.g., Senne v. Kansas City Royals Baseball Corp.*, 2017 WL 5973487, at *1 (N.D. Cal. May 5,

10  2017) (granting 1292(b) motion during pendency of 23(f) petition); *id.*, 934 F.3d 918, 926 (9th Cir.

11  2019) (granting 1292(b) petition for permission to appeal class certification order and reversing in

12  part and affirming in part District Court's class certification order).

13      **B.**    **The Court Should Certify Question 1:** Whether "implied consent" is a cognizable

14                     defense to Plaintiffs' claim for breach of express contract under California law.

15           1.    Controlling Question of Law

16         An issue is a "controlling question of law" when the "resolution of the issue on appeal could

17  materially affect the outcome of litigation in the district court." *Roth v. Fortis Ventures, LLC*, 21-

18  cv-4288-YGR, 2022 WL 21777087, at *1 (N.D. Cal. Aug. 19, 2022) (quoting *In re Cement*, 673

19  F.2d at 1026). Here, the question of whether consumers can impliedly consent to a practice

20  expressly forbidden by a contract of adhesion, either through extrinsic disclosures or by conduct,

21  is a controlling question of law. If Plaintiffs are correct, then expert discovery and evidence at trial

22  will be limited to how a reasonable person would understand Google's contract, without any extra-

23  contractual documents to consider, and without any inquiry into Google's or plaintiffs' subjective

24  understanding. But if Google is correct, its primary defense will require an entirely different

25  approach—indeed as noted below, it is not even clear whether any evidence in the record exists to

26  support an implied consent defense when the operative contract expressly promises the opposite.

27  But either way, this is a controlling question of law.

28

2.    Substantial Grounds for Difference of Opinion

This Court held that implied consent is a defense to a claim for breach of express contract, but no Court other than this one has ever done so. Where (as here) the express contract defines the contours of consent, then consent is a defense to Plaintiffs' claims per the express terms of the contract. But there cannot thereafter be implied consent to a practice forbidden by that contract. That is why, as discussed during oral argument on class certification, there are no CACI jury instructions for implied consent to a breach of contract. Mar. 28, 2025 Hr'g Tr. 22:15-18 ("THE COURT: And by the way, the other thing, I have looked for CACI instruction on implicit consent or implied consent in a contract case, and I can't find it. It's not there."). There are many defenses to enforcement of a contract, but implied consent is not one of them. Even outside California, Courts to have squarely addressed the question have held that implied consent is simply not a defense to a claim for breach of express contract.  For example:

| ***Harris v. comScore, Inc.***, 292 F.R.D. 579, 585 **(N.D. Ill. 2013)** (emphasis added) | ***Calhoun v. Google LLC***, Order |
|---|---|
| "ComScore [the intercepting entity] contends that the scope of consent will vary for each plaintiff depending on his subjective understanding of the agreement and the surrounding circumstances. In support, comScore notes that at least under the ECPA, consent need not be explicit, but can also be implied from the surrounding circumstances. **But that rule has no place where a party manifested consent through the adoption of a form contract**." | "the implied consent inquiry permits a court to consider extrinsic evidence to the extent necessary to determine a party's subjective understanding of the terms to which they consented." Order at 9.<br><br>"liability in this case ultimately turns on each class member's subjective understanding of defendant's promises."  Order at 13. |

Even cases cited by Google in the class certification briefing note the distinction between privacy claims that sound in contract (where implied consent is not a defense), and those that don't. *See, e.g., In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *19 (N.D. Cal. Mar. 18, 2014) (Koh, J.) (recognizing implied consent in non-contract cases, as opposed to contract law "under which *the subjective intent of the parties must give way to the terms of the contract* that embody the parties' mutual assent" (emphasis added)). In *Williams v. Apple, Inc.*, 338 F.R.D. 629 (N.D. Cal.

2021), the Court held that Apple's position (the same as Google's here) was "meritless" because "[i]t is an 'axiom of contract law[] that when there is a standardized agreement like the form contract at issue in this case, the agreement 'is interpreted wherever reasonable as treating alike all those similarly situated, *without regard to their knowledge or understanding of the standard terms of the writing*.''" *Id*. at 638 (emphasis in original). In support, *Williams* cited *Bally v. State Farm Life Ins. Co*., 335 F.R.D. 288, 302 (N.D. Cal. 2020) and the Restatement (Second) of Contracts § 211(2), and then further explained that California Courts of Appeal apply Restatement § 211 to the interpretation of 'standards forms of agreement' . . . Thus, under California law, the . . . Agreements should be interpreted 'without regard to [subscribers'] knowledge or understanding of the standard terms." *Id*. at 638-639; *see also True Health Chiropractic, Inc. v. McKesson Corp*., 896 F.3d 923, 932 (9th Cir. 2018) ("Consent or lack thereof, is ascertainable by simply examining the product registrations and the EULAs.").

3.    An immediate appeal may materially advance the ultimate termination of the litigation

Resolving the question of whether "implied consent" is a defense to a contract claim will undoubtedly advance the termination of this litigation. As the Ninth Circuit has noted, Section 1292(b) does not require that resolution of the question itself be case-dispositive. *Reese*, 643 F.3d at 688. Instead, it need only "advance" the litigation, including resolving a legal issue now that is a core defense, and would certainly be appealed post-trial.

C.    **The Court Should Certify Question 2:** Whether the Ninth Circuit's "reasonable person" standard governing consent in a breach of contract case is an *objective* inquiry rather than an *individualized* inquiry as the District Court held.

1.    Controlling Question of Law

Google admits that Chrome sends the data at issue to Google irrespective of whether the Chrome user chose to sync the browser with a Google account. Google's primary defense, therefore, is that Chrome users consented when they accepted the Terms of Service, including the linked Privacy Policy and CPN (together, the "contract"). The District Court applied *Calhoun I* to the consent inquiry (specifically the implied consent), and also facially applied the Ninth Circuit's

"reasonable person" standard, but defined "reasonable person" subjectively, triggering an individualized inquiry. Order at 9 ("The Ninth Circuit found that "when the disclosures are read together and in the light most favorable to Plaintiffs, a reasonable user would not *necessarily* understand that they were consenting to the data collection at issue." *Calhoun*, 113 F.4th at 1150 (emphasis added). It does not automatically follow, however, that *no* reasonable user would so understand.") (emphasis in original). But the "reasonable person" inquiry under California law is an objective, standardized inquiry, not subjective, particularly when consent is obtained contractually. *Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.* (2003) 109 Cal. App. 4th 944, 956 ("The parties' undisclosed intent or understanding is irrelevant to contract interpretation"). This is precisely why contract claims are routinely certified. *In re Checking Acct. Overdraft Litig.,* 286 F.R.D. 645, 657 (S.D. Fla. 2012) ("Since the reasonable expectations of a party to a standardized form contract are judged objectively, the entire class will win or lose on their contract claims based upon the same evidence and legal standards of contract construction"); *accord*, Restatement (Second) of Contracts § 211(2) (form contracts should be interpreted uniformly for all those "similarly situated").

Resolution of this question will impact the fundamental nature of the proof at trial in this case. If Plaintiffs must show a jury how an objective "reasonable person" would understand the disclosures, that will fundamentally define expert discovery and proof at trial; but if instead Plaintiffs must only prove what they individually understood, that's an entirely different set of evidence. It is therefore a controlling question of law.

### 2.   Substantial Grounds for Difference of Opinion

The Court's ruling that "liability in this case ultimately turns on each class member's subjective understanding of defendant's promises," Order at 13, is at odds with other Courts applying *Calhoun I* to an implied consent defense. For example, Judge Breyer (evaluating an implied consent defense to a CIPA claim) held that "how a reasonable user would understand Prudential's privacy policies is a common one that can be resolved with class-wide proof." *Torres v. Prudential Fin., Inc.*, 2024 WL 4894289, at *7 (N.D. Cal. Nov. 26, 2024). Similarly, Judge Donato applied *Calhoun I* to Google's (and other defendants') implied consent defense, and held:

PLAINTIFFS' MOTION TO CERTIFY ORDER FOR IMMEDIATE INTERLOCUTORY APPEAL

It also bears mention that the evidence of Flo's privacy disclosures is common to the class. The common disclosures will permit a jury to conclude in one fell swoop whether a reasonable person would have been on notice of, and so could impliedly consent to, "the particular conduct, or to substantially the same conduct." *Calhoun*, 113 F.4th at 1147 (citation omitted). The relevance of Google and Meta's privacy disclosures is not obvious in light of plaintiffs' evidence of secret data sharing, but those disclosures, too, are subject to common proof.

*Frasco v. Flo Health, Inc.*, --- F.R.D. ---, 2025 WL 1433825, at *8 (N.D. Cal. May 19, 2025); *see also* Restatement (Second) of Contracts § 211, cmt. e (directing courts to apply objective standard and "seek to effectuate the reasonable expectations of the average member of the public" when construing a standardized contract).

> 3.  An immediate appeal may materially advance the ultimate termination of the litigation

If interlocutory appeal were denied and Plaintiffs instead prevailed on this issue in-post trial appeals, the result is not just remand for re-trial. Instead, it would require completely restarting expert discovery, *Dauberts* and dispositive motions, which as Google proposed in the Eighth Supplemental CMC Statement, could last almost a year. Resolving the critical question of subjective inquiry vs. objective inquiry now would undoubtedly materially advance the termination of this litigation.

**D.    The Court Should Certify Question 3:** Whether the District Court was correct as a matter of law to presume that class members might have been exposed to disclosures contradicting Google's express promises without an evidentiary showing that such disclosures exist.

> 1.  Controlling Question of Law

If the Court were to permit an implied consent defense when privacy claims sound in contract, Google bears the burden of identifying disclosures that expressly contradict Google's promises in the CPN and other parts of the contract and proving that Plaintiffs actually viewed them.  The Court, however, *presumed* that such express disclosures might exist in light of Google's requirement that partner websites in turn generally disclose their data collection practices. Order at 8. But Google failed to put into evidence that any such disclosure ever mentioned transmission of

1   the data at issue in the un-sync'd state (contrary to the promises in the CPN), let alone evidence

2   that any Plaintiff actually saw it.  Because fact discovery has concluded without such evidence, the

3   question of whether a qualifying disclosure exists can only be proven by supposition, and this

4   question will be controlling at trial.

5              2.    Substantial Grounds for Difference of Opinion

6          This Court recognized that "the Ninth Circuit instructs that a defendant must present non-

7   speculative evidence that an affirmative defense would require individualized inquiries to defeat

8   the predominance inquiry." Order at 6 (citing *Brown v. Google LLC*, 2022 WL 17961497, at *18

9   (N.D. Cal. 2022)) (relying on *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923,

10  931-32 (9th Cir. 2018)); *see also* Mar. 28, 2025 Hr'g Tr. 22:4-6 ("So the Ninth Circuit does say,

11  for consent to be actual, the disclosures must explicitly notify users of the conduct at issue.");

12  *Frasco*, 2025 WL 1433825, at *7 ("Speculation about events or issues for which a defendant has

13  not offered evidence will not do.") (citing *Miles v. Kirkland's Stores Inc.*, 89 F.4th 1217, 1222 (9th

14  Cir. 2024)).

15         Despite this black-letter law, Google presented no evidence of a single disclosure advising

16  Chrome members that the CPN's privacy promises were false with respect to not-sync'd Chrome

17  users. Instead, Google only presented evidence that Google requires first-party websites, when

18  using Google tools, to post a privacy policy and *generally* disclose how those tools collect and

19  process data. Order at 8. But Google failed to introduce a single disclosure on any website warning

20  Chrome users that the data at issue will be transmitted to Google even when not sync'd with a

21  Google Account in violation of the CPN—and nor could it.  Nevertheless, the Court found that

22  Google met its burden to demonstrate that some class members *might* have been exposed to a

23  *hypothetical* disclosure "potentially providing notice that their use of Chrome meant their data

24  would be collected." Order at 8.

25         While the District Court acknowledged that the Ninth Circuit forbids speculation, it

26  nevertheless found that Google's general policy requiring its partner website to disclose their data

27  collection and processing was sufficiently "concrete" to raise individual inquiries.  But Plaintiffs

28  are not aware of any cases (and neither Google nor the Court cited any) that permitted an inference

of disclosure without proof of disclosure. This issue therefore presents a substantial ground for difference of opinion.

For example, in *Torres,* Judge Breyer applied *Calhoun I* to defendants' "implied consent" defense to the sole CIPA claim. 2024 WL 4894289, at *4 (N.D. Cal. Nov. 26, 2024). He considered defendants' submission of actual third-party sources that plaintiffs and class members might have been exposed to but concluded that none disclosed the challenged conduct in sufficient detail, as a matter of law. *Id*. at *7-8. To be sure, it is the job of the fact finder to examine the relevant sources of information and determine whether any were a sufficient basis for implied consent. But where a defendant fails to introduce any sources that explicitly provide notice of the challenged conduct, that is a threshold legal question barring the implied consent defense. *Id*. at *8. Similarly, Judge Donato considered Google's (and other defendants') implied consent defense and would only consider the language of actual third-party disclosures; there was no speculation of whether others not in the record "might" give rise to implied consent. *Frasco*, 2025 WL 1433825, at *8.

> 3. An immediate appeal may materially advance the ultimate termination of the litigation

As with the other issues above, Question 3 does not just impact trial, but fundamentally shapes expert discovery. If Plaintiffs were to prevail on this issue on appeal post-trial, it would not just require a re-trial, but a reopening of expert discovery. It would therefore be more efficient to solve the question now which would in turn materially advance the termination of the case.

**E.    The Court Should Certify Question 4:** Whether the District Court may take judicial notice of Google's deprecation of the Chrome Privacy Notice but simultaneously deny a request for judicial notice of the Privacy in Chrome pages that replaced the Chrome Privacy Notice.

> 1. Controlling Question of Law

Concurrent with the motion for class certification, Plaintiffs filed a Request for Judicial Notice of Google's deprecation of the CPN, and the "Privacy in Chrome" pages that replaced the CPN. The Court took notice of the deprecation (and denied (b)(2) certification based on legal conclusions drawn from the deprecation) but refused to take notice of the replacement pages. Order

at 1, n. 1. The Court also refused to consider Google's contractual promise that no privacy protection would be diminished without notice to (and express consent of) Accountholders. Leaving aside the impact of these rulings on class certification, the Court's ruling raises a controlling question of law for the case generally. The question of whether the Court may take notice of the deprecation (but not take notice of the replacement Privacy in Chrome pages) and whether the Court may resolve the material dispute regarding the status of the CPN for existing Accountholders will govern the scope of damages among other issues for the individual plaintiffs. Plaintiffs present this as two questions: first, as discussed here, is whether the Court may take notice of Google's documents but not Plaintiffs.  The second, discussed in Question 5 below, focuses on whether the Court, on class certification, may resolve material disputes related to the legal effect of the CPN changes, or the contractual rights for existing Accountholders.

### 2.    Substantial Grounds for Difference of Opinion

As the Ninth Circuit instructed in this case, "consent can be express or implied but any consent must be actual" and "to be actual, the disclosures must 'explicitly notify users of the conduct at issue." *Calhoun I*, 113 F.4th at 1147. Here, Google purported to "deprecate" the Chrome Privacy Notice—a piece of evidence that the Court chose to consider and use as the primary factual basis for its ruling (b)(2). But Google did only deprecate the CPN. It replaced it with the "Privacy in Chrome" documents that continued to make claims that Plaintiffs contend are misleading.

Plaintiffs respectfully submit that there are substantial grounds for difference of opinion in the Court's decision to issue a substantive ruling in Google's favor regarding the status of Plaintiffs' rights under the CPN, accepting only Google's evidence but not Plaintiffs, and refusing to consider Google's other contractual promise not to reduce privacy rights without express notice and consent. Plaintiffs believe that resolving this factual and legal dispute runs afoul of the Supreme Court's repeated admonitions against doing so on class certification. *See, e.g., Tyson Foods, Inc. v. Bouaphakeo,* 577 U.S. 442, 459 (2016).

### 3.    An immediate appeal may materially advance the ultimate termination of the litigation

Even for Plaintiffs' individual claims, it is important to know whether and to what extent

1    Google's new Privacy in Chrome pages may be judicially noticed (and permissible materials for

2    expert report), and important to know whether and to what extent the Court will permit experts and

3    counsel to use Google's contractual promises not to reduce privacy protections without notice and

4    consent. It is not just a question of prospective relief, as the Court discussed in the Order. If the

5    Court's denial of class certification were to be reversed, it is also a question of damages. In fact, if

6    this determination were postponed until post-trial appeals and then expert discovery re-started after

7    remand, it could extend the class period by several years.

8           **F.**      **The Court Should Certify Question 5:** Whether the District Court may, on class

9               certification, resolve disputed merits questions regarding Google's obligations to

10              existing Accountholders under the Chrome Privacy Notice in effect when they

11              accepted the Terms of Service and deny Rule 23(b)(2) certification on the basis of

12              that merits resolution.

13            1.     <u>Controlling Question of Law</u>

14   The Court denied Plaintiffs' motion for Rule 23(b)(2) certification because Google has

15   deprecated the CPN. As noted above, however, Google did not just deprecate the CPN—it replaced

16   them with the "Privacy in Chrome" pages.  It was not permissible to take judicial notice of portions

17   of the current terms of service, while simultaneously refusing to grant Plaintiffs' request for judicial

18   notice of the replacement pages (*see* Question 4, *supra*). This legal error was compounded by

19   resolving Google's merits argument as to the effect of the "deprecation" at class certification.

20   Plaintiffs argue that the changed disclosures present two material and disputed merits issues:

21   first, whether the CPN is still enforceable by *existing* accountholders who accepted the Terms of

22   Service prior to the depreciation; and second, whether the replacement Privacy in Chrome pages

23   (when read together with the Privacy Policy and Terms of Service) could still be understood by a

24   reasonable Chrome user as providing the same privacy protections for un-sync'd users. The Court's

25   resolution of this merits question at class certification was improper, as noted below, and impacts

26   whether Plaintiffs may proceed on a (b)(2) basis. But it is also a controlling question of law even

27   for these Plaintiffs' individual claims and proposed equitable relief. Does the Court's ruling

28   effectively foreclose prospective relief for the Plaintiffs (limiting equitable relief to remedies to

PLAINTIFFS' MOTION TO CERTIFY ORDER FOR IMMEDIATE INTERLOCUTORY APPEAL

those that address past harm, such as data deletion)?  If so, the Court has essentially issued a summary judgment ruling on the meaning of a change to the contract (changed that occurred after fact discovery, while this case was on appeal), without the benefit of any evidentiary record.

### 2. Substantial Grounds for Difference of Opinion

It is black letter law that District Court may not resolve merits disputes at class certification. *Tyson Foods,* 577 U.S. at 459.  Yet that is exactly what the Court did here—in two ways.

First, the Court ruled that class members have no ongoing rights to enforce the contract or to seek injunctive relief—without ever addressing the contract provisions cited by Plaintiffs in their motion. There are also substantial grounds for a difference of opinion on the merits of the ruling. Under California law, "[a] party to a contract cannot rescind at his pleasure, but only for some one or more of the causes enumerated in § 1689 of the Civil Code." *NMSBPCLDHB v. Cnty. of Fresno*, 152 Cal. App. 4th 954, 959 (2007). One such circumstances is "if all the parties thereto consent." Cal. Civ. Code § 1689. Similarly, a contract may be modified, but only if "the same elements essential to the validity of the original contract" are met, including consent to the modification and consideration. *Am. Bldg. Maint. Co. v. Indem. Ins. Co. of N.A.*, 214 Cal. 608, 615 (1932). The "consent" in a contract (and a purported modification) requires "two elements; namely, an offer or proposal, and an acceptance." *Id*.

Here, the Google contract made express promises that class member privacy rights would not be reduced or eliminated unless Google took specific actions. While this case was on appeal, Google purported to "deprecate" the promises at-issue in this case in the Chrome Privacy Notice. The Court then assumed, ipso facto, that Google's deprecation was effective against existing Accountholders (those who accepted the Terms of Service when the CPN was active) without permitting the Plaintiffs to submit evidence or evaluating whether the purported modification had effect under California contract law or the Google Terms of Service that govern when Google may reduce privacy rights.

### 3. An immediate appeal may materially advance the ultimate termination of the litigation

The question of whether *new* Accountholders benefited from the deprecated CPN was not

an issue at class certification or for any of the individual Plaintiffs' claims—Plaintiffs proposed a class period that ends on the date of the deprecation to simplify the inquiry. Thus, the only question is whether *legacy* Accountholders (*i.e.,* those who accepted the Terms of Service when the CPN was incorporated therein) could have their contract rights unilaterally diminished without notice and without their consent. That question applies equally to the named Plaintiffs, and as above, if the issue is resolved by the Court of Appeal in Plaintiffs' favor post-trial, the result is not just remand for a new trial; instead, expert discovery would have to be re-opened. Thus, an immediate appeal would materially advance termination of the litigation.

## IV.    CONCLUSION

For the reasons stated in this brief, Plaintiffs respectfully request that the Court certify the June 9, 2025 Order for interlocutory appeal.

Dated: July 14, 2025                                             Respectfully submitted,

**BLEICHMAR FONTI & AULD LLP**                  **SIMMONS HANLY CONROY LLP**

By:   */s/ Lesley E. Weaver*                              By:      */s/ Jay Barnes*
Lesley E. Weaver (SBN 191305)                      Jason 'Jay' Barnes (admitted *pro hac vice*)
Anne K. Davis (SBN 267909)                          Jayne Conroy (admitted *pro hac vice*)
Joshua D. Samra (SBN 313050)                       An Truong (admitted *pro hac vice*)
1330 Broadway, Suite 630                              112 Madison Avenue, 7th Floor
Oakland, CA 94612                                        New York, NY 10016
Tel.: (415) 445-4003                                      Tel.: (212) 784-6400
Fax: (415) 445-4020                                       Fax: (212) 213-5949
*lweaver@bfalaw.com*                                   *jaybarnes@simmonsfirm.com*
*adavis@bfalaw.com*                                     *jconroy@ simmonsfirm.com*
*jsamra@bfalaw.com*                                     *atruong@simmonsfirm.com*


Gregory S. Mullens (admitted *pro hac vice*)      Eric Johnson (admitted *pro hac vice*)
75 Virginia Road, 2nd Floor                           Jennifer 'Jenny' Paulson (admitted *pro hac vice*)
White Plains, New York 10603                         One Court Street
Tel.: (415) 445-4006                                      Alton, IL 62002
*gmullens@bfalaw.com*                                 Tel.: 618-693-3104
                                                              *ejohnson@simmonsfirm.com*
**DiCELLO LEVITT LLP**                             *jpaulson@simmonsfirm.com*

By:    */s/ David A. Straite*
David A. Straite (admitted *pro hac vice*)
Corban Rhodes (admitted *pro hac vice*)
485 Lexington Avenue, Suite 1001
New York, NY 10017

Tel.: (646) 933-1000
*dstraite@dicellolevitt.com*
*crhodes@dicellolevitt.com*

Amy E. Keller (admitted *pro hac vice*)
Adam Prom (admitted *pro hac vice*)
Julia Veeser (admitted *pro hac vice*)
Ten North Dearborn St., Sixth Floor
Chicago, IL 60602
Tel.: (312) 214-7900
*akeller@dicellolevitt.com*
*aprom@dicellolevitt.com*
*jveeser@dicellolevitt.com*

1

## <u>ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)</u>

2

I, David Straite, attest that concurrence in the filing of this document has been obtained from

3

the other signatories. I declare under penalty of perjury that the foregoing is true and correct.

4

Executed this 14th day of July, 2025, at New York, New York.

5

6                                                              _/s/ David Straite_
                                                                 David A. Straite
7                                                                DiCello Levitt LLP

8                                                                *Co-Counsel for Plaintiffs*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>CERTIFICATE OF SERVICE</u>

2

I hereby certify that on July 14, 2025, I caused to be electronically filed the foregoing

3

document using the CM/ECF system which will send notification of such filing to the e-mail

4

addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List.

5

_/s/ David Straite_____
David A. Straite
DiCello Levitt LLP

6

7

*Co-Counsel for Plaintiffs*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28