QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Stephen A. Broome (CA Bar No. 314605)
stephenbroome@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
Crystal Nix-Hines (CA Bar No. 326971)
crystalnixhines@quinnemanuel.com
Alyssa G. Olson (CA Bar No. 305705)
alyolson@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Xi ("Tracy") Gao (CA Bar No. 326266)
tracygao@quinnemanuel.com
Carl Spilly (admitted *pro hac vice*)
carlspilly@quinnemanuel.com
1300 I Street NW, Suite 900
Washington D.C., 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
Teuta Fani (admitted *pro hac vice*)
teutafani@quinnemanuel.com
Joseph H. Margolies (admitted *pro hac vice*)
josephmargolies@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

*Counsel for Defendant Google LLC*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION**

| | |
|---|---|
| PATRICK CALHOUN, et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 4:20-cv-05146-YGR-SVK<br><br>**GOOGLE LLC'S OPPOSITION TO MOTION TO CERTIFY ORDER FOR IMMEDIATE INTERLOCUTORY APPEAL**<br><br>The Honorable Yvonne Gonzalez Rogers<br>Courtroom: 1 – 4th Floor<br>Hearing Date: None Set (Dkt. 1115)<br>Amended Complaint Filed: April 16, 2021<br><br>Trial Date:        None Set |

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     PRELIMINARY STATEMENT ...................................................................................1

II.    BACKGROUND ........................................................................................................2

III.   LEGAL STANDARD .................................................................................................3

IV.    ARGUMENT .............................................................................................................4

     A.    Plaintiffs' Request For Interlocutory Review Should Stand Or Fall With Its
          23(f) Petition .................................................................................................4

     B.    None of Plaintiffs' Questions Merits Interlocutory Review .....................................6

          1.    That Implied Consent Is A Defense To Breach Of Contract Is Not
               An Appropriate Issue For Interlocutory Review .............................................6

          2.    Plaintiffs' Manufactured Dispute Over The "Reasonable Person"
               Consent Standard Is Not An Issue For Interlocutory Review .....................10

          3.    Plaintiffs' Challenge Regarding Google's Disclosures Rests On A
               False Premise And Is Not An Issue For Interlocutory Review ...................12

          4.    That The Court Did Not Take Judicial Notice Of Irrelevant
               Materials Is Not Cause For Interlocutory Review .......................................15

          5.    Plaintiffs' Incorrect Assertion That The Court Resolved Disputed
               Merits Questions Does Not Warrant Interlocutory Review .......................16

V.     CONCLUSION .......................................................................................................18

GOOGLE'S OPPOSITION TO MOTION TO CERTIFY ORDER FOR IMMEDIATE INTERLOCUTORY APPEAL

# **TABLE OF AUTHORITIES**

**Page**

### **Cases**

*In re Apple Inc. Secs. Litig.*,
    678 F. Supp. 3d 1147 (N.D. Cal. 2023) ......................................................................... 14

*Ass'n of Irritated Residents v. Fred Schakel Dairy*,
    634 F. Supp. 2d 1081 (E.D. Cal. 2008) ......................................................................... 12

*Atkinson v. Pac. Fire Extinguisher Co.*,
    40 Cal.2d 192 (1953) ......................................................................................................... 8

*Backhaut v. Apple Inc.*,
    2015 WL 4776427 (N.D. Cal. 2015) ............................................................................. 15

*Brown v. Google, LLC*,
    2022 WL 17961497 (N.D. Cal. Dec. 12, 2022) .............................................................. 7

*Calhoun v. Google, LLC*,
    113 F.4th 1141 (9th Cir. 2024) ............................................................................ 6, 7, 10

*Calhoun v. Google, LLC*,
    2023 WL 11988490 (N.D. Cal. May 16, 2023) ........................................................... 11

*Hammerling v. Google, LLC*,
    2024 WL 937247 (9th Cir. Mar. 5, 2024) .................................................................... 12

*In re Cement Antitrust Litig.*,
    673 F.2d 1020 (9th Cir. 1981) ....................................................................... 3, 10, 11

*Couch v. Telescope Inc.*,
    611 F.3d 629 (9th Cir. 2010) ........................................................................... 3, 7, 11

*Frasco v. Flo Health, Inc.*,
    2025 WL 1433825 (N.D. Cal. May 19, 2025) .......................................................... 7, 11

*Garner v. Amazon.com, Inc.*,
    2025 WL 1911088 (W.D. Wash. July 7, 2025) ............................................................ 10

*In re Google Inc. Gmail Litig.*,
    2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) .................................................. 7, 8, 10, 12

*In re Google RTB Consumer Privacy Litig.*,
    2024 WL 2242690 (N.D. Cal. Apr. 4, 2024) ................................................................. 7

*Griffith v. TikTok, Inc.*,
    2024 WL 4308813 (C.D. Cal. Sept. 9, 2024) ............................................................... 10

*Harris v. comScore, Inc.*,
    292 F.R.D. 579 (N.D. Ill. 2013) ................................................................................. 8

*Hoffman v. Citibank (S. Dakota), N.A.*,
    2007 WL 5659406 (C.D. Cal. Feb. 15, 2007) ......................................................... 5

*ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*,
    22 F.4th 1125 (9th Cir. 2022) ......................................................................... 3, 4, 10

*Kamal v. Eden Creamery, LLC*,
    88 F.4th 1268 (9th Cir. 2023) .................................................................................. 4

*Lewis v. YouTube, LLC*,
    244 Cal. App. 4th 118 (2015) ................................................................................ 17

*Old Repub. Ins. Co. v. FSR Brokerage, Inc.*,
    80 Cal. App. 4th 666 (2000) .................................................................................... 8

*Pointe San Diego Residential Community, L.P. v. W.W.I. Props., L.L.C.*,
    2007 WL 1991205 (Cal. App. July 11, 2007) ......................................................... 8

*Richardson Elecs., Ltd. v. Panache Broad. of Penn., Inc.*,
    202 F.3d 957 (7th Cir. 2000) ................................................................................... 4

*Roth v. Foris Ventures, LLC*,
    2022 WL 21777087 (N.D. Cal. Aug. 19, 2022) ..................................................... 9

*Senne v. Kansas City Royals Baseball Corp.*,
    2017 WL 5973487 (N.D. Cal. May 5, 2017) ......................................................... 5

*Senne v. Kansas City Royals Baseball Corp.*,
    934 F.3d 918 (9th Cir. 2019) ................................................................................... 5

*Torres v. Prudential Fin., Inc.*,
    2024 WL 4894289 (N.D. Cal. Nov. 26, 2024) ................................................ 11, 13

*United States v. W. T. Grant Co.*,
    345 U.S. 629 (1953) ............................................................................................... 16

*Wang v. Zymergen Inc.*,
    759 F. Supp. 3d 1002 (N.D. Cal. 2024) .......................................................... 11, 14

*Williams v. Apple, Inc.*,
    338 F.R.D. 629 (N.D. Cal. 2021) ............................................................................ 8

### Statutes and Rules

28 U.S.C. § 1292(b) ................................................................................ 1, 3, 4, 5, 11

28 U.S.C. § 1292(b) ..................................................................................................... 4

GOOGLE'S OPPOSITION TO MOTION TO CERTIFY ORDER FOR IMMEDIATE INTERLOCUTORY APPEAL

Cal. Civ. Code § 3515 ................................................................................................................ 7

Fed. R. Civ. P. 23 ..................................................................................................................... 5

Fed. R. Civ. P. 23(b)(2) ............................................................................................... 1, 2, 3, 15

Fed. R. Civ. P. 23(b)(3) ............................................................................................................. 2

Fed. R. Civ. P. 23(f) ..................................................................................................... 1, 2, 4, 5

# I.     **PRELIMINARY STATEMENT**

Plaintiffs' Motion to certify the Court's class-certification order (Dkt. 1105, the "Order") for interlocutory review under 28 U.S.C. § 1292(b) is not only meritless, but wasteful. Plaintiffs have already petitioned the Ninth Circuit for the same relief pursuant to Federal Rule of Civil Procedure 23(f). If their petition is granted, this motion will be moot. If the petition is denied, this motion will be futile because the Ninth Circuit will have already made clear its intention not to review the Order before final judgment. The Court should deny Plaintiffs' unnecessary and duplicative request on that basis alone.

As for the merits, the Court should deny the motion because Plaintiffs fail to show that the five issues they seek to certify meet Section 1292(b)'s exacting standards: they are neither controlling, reasonably contestable, nor likely to expedite these proceedings through interlocutory review. Plaintiffs' first two questions—whether a user can impliedly consent to an alleged contract breach and whether the implied consent analysis is objective or "individualized"—already have established answers and, in any event, a contrary answer from the Ninth Circuit would have no meaningful effect on the scope of expert discovery or any other phase left in this case. If implied consent could not defeat breach-of-contract claims, the parties would still have to litigate implied consent for Plaintiffs' five other claims. And if a user's implied consent were to be judged objectively rather than subjectively, that objective assessment would still require the same individualized examination of the particular set of disclosures and information the user encountered that drove the Court's decision to deny class certification.

Plaintiffs' three remaining questions are even more easily dispatched because each fundamentally mischaracterizes the decision it purports to challenge. Plaintiffs first claim that the Court improperly "presumed" the existence of disclosures supporting implied consent, but they ignore Google's robust evidentiary showing that underlies the Court's determination. Then they seek to certify the Court's *discretionary* decision not to take judicial notice of undisputedly non-contractual documents. Finally, Plaintiffs glaringly overread the Court's denial of a Rule 23(b)(2) injunctive relief class to *also* foreclose their argument that existing accountholders can enforce the CPN retroactively, when the Court never addressed that question. Certifying these issues for appeal

now would guarantee further delay in this case (already pending for over five years) with little or no corresponding benefit. Beyond their unsubstantiated say-so, Plaintiffs offer no basis to think an appellate ruling would materially affect the scope of expert discovery or the issues at trial. On the contrary, all of Plaintiffs' issues would be better raised in a post-judgment appeal on a complete record. Plaintiffs' motion should be denied.

## II.   **BACKGROUND**

On October 30, 2024, Plaintiffs filed their renewed motion for class certification, seeking to certify a class of Google Accountholders who created their Google Accounts prior to October 4, 2023, and who used Google's Chrome browser in either basic or signed in modes any time after September 23, 2018. Dkt. 1061-1 (Class Cert. Mot.) at 1. Plaintiffs sought certification of four causes of action: breach of contract, UCL, CIPA, and intrusion upon seclusion. *Id.* at 8. Google opposed the motion on December 4, 2024, arguing (among other things), that implied consent implicates myriad individual issues that defeat typicality and predominance, and that injunctive relief is not warranted because—with the removal of the CPN—Plaintiffs failed to meet their burden to show a cognizable danger that the alleged harm would recur in the future. Dkt. 1072-1 (Class Cert. Opp.) at 9–15, 24–25.

On June 9, 2025, the Court denied Plaintiffs' motion, correctly holding that as to the Rule 23(b)(3) class, "inquiries relating to Google's implied consent defense will overwhelm the damages claims for all causes of action." Order 9–10. As to the Rule 23(b)(2) class, the Court held that plaintiffs failed to show a sufficient likelihood that they would be wronged again in a similar way because "plaintiffs conceded that the current promises with regard to Chrome's data collection exist in non-contractual documents" and because "Plaintiffs' case rests on a theory of liability grounded in the synced/not-synced distinction found in the CPN," which "no longer exists." *Id.* at 11.

On June 23, 2025, Plaintiffs filed a Rule 23(f) petition with the Ninth Circuit seeking interlocutory review of the Court's determination that Google's implied-consent defense precluded certification of a Rule 23(b)(3) damages class. *Calhoun v. Google, LLC*, No. 25-3916, Dkt. 1 (9th Cir.). Plaintiffs' petition argues principally that (i) the Ninth Circuit's decision reversing this Court's earlier summary-judgment order on express consent also required the Court to assess implied

1  consent for the class as a whole under an "objective" standard, and (ii) implied consent does not

2  apply to the breach-of-contract claim.  The petition is fully briefed and remains pending.

3    On July 14, 2025, Plaintiffs filed this second request for interlocutory review of the Court's

4  class-certification order, seeking certification of three questions purportedly related to the Court's

5  implied-consent holding and two questions related to the Court's Rule 23(b)(2) holding. Dkt. 1111

6  (Mot.).

7  **III.    LEGAL STANDARD**

8    An interlocutory appeal under under 28 U.S.C. § 1292(b) is proper only when "exceptional

9  circumstances justify a departure from the basic policy of postponing appellate review until after

10  the entry of a final judgment." *ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th

11  1125, 1130 (9th Cir. 2022) (internal quotation marks omitted). Such circumstances are not present

12  unless all three requirements set out by Section 1292(b) are met: "(1) that there be a controlling

13  question of law, (2) that there be substantial grounds for difference of opinion [as to that question],

14  and (3) that an immediate [resolution of that question] may materially advance the ultimate

15  termination of the litigation." *Id.* (quoting *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th

16  Cir. 1981)). Under the first prong, a question of law is "controlling" only if its resolution will

17  "materially affect the outcome of litigation in the district court." *Id.* Under the second prong, there

18  may be substantial grounds for disagreement where "'novel legal issues are presented, on which

19  fair-minded jurists might reach contradictory conclusions,'" such as where "the circuits are in

20  dispute on the question and the court of appeals of the circuit has not spoken on the point, if

21  complicated questions arise under foreign law, or if novel and difficult questions of first impression

22  are presented." *Id.* (internal citations and quotation marks omitted). The third prong "is satisfied

23  when the resolution of the question 'may appreciably shorten the time, effort, or expense of

24  conducting' the district court proceedings." *Id.* at 1131 (quoting *In re Cement*, 673 F.2d at 1027).

25  "[T]he party pursuing the interlocutory appeal bears the burden of" showing the requirements are

26  met. *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010).

27    Certification by this Court is not the end of the matter. If the district court certifies the order,

28  and the moving party makes an application to the appellate court within 10 days, "a motions panel

of [the Ninth Circuit] will then decide whether to grant or deny the application." *ICTSI*, 22 F.4th at 1131. The three-prong test set out in 28 U.S.C. § 1292(b) is jurisdictional, so the appellate court cannot hear interlocutory appeals unless all three requirements are satisfied. *Couch*, 611 F.3d at 631, 633 (dismissing appeal for lack of jurisdiction where "there is no substantial ground for difference of opinion"). "Even when [the Ninth Circuit] has jurisdiction over an issue under § 1292(b), it enjoys broad discretion to refuse to accept it." *ICTSI*, 22 F.4th at 1131.

## IV.    **ARGUMENT**

### A.    **Plaintiffs' Request For Interlocutory Review Should Stand Or Fall With Its 23(f) Petition**

Interlocutory appeals from an order granting or denying class certification generally should be sought pursuant to the class-certification-specific procedures set out in Rule 23(f) rather than under 28 U.S.C. § 1292(b). The Ninth Circuit has explained that Rule 23(f) "'was the product of careful calibration' that sought to provide 'greater protection against improvident certification decisions than § 1292(b)' offered, while avoiding the possible abuse and increased delay and expense of allowing an appeal as of right from interlocutory class certification orders." *Kamal v. Eden Creamery, LLC*, 88 F.4th 1268, 1276 n.2 (9th Cir. 2023) (internal citations and quotations omitted). The Rule's committee notes further explain that it was carefully calibrated to be *more* permissive than 28 U.S.C. § 1292(b). *See* Fed. R. Civ. P. 23(f) advisory committee's note to 1998 amendment (explaining that "[s]ubdivision (f) . . . departs from the 1292(b) model" by eliminating "potentially limiting requirements").

Consistent with these rules (and ordinary practice), Plaintiffs have already filed a Rule 23(f) petition seeking review of the Order. If the Ninth Circuit grants the petition, it will hear Plaintiffs' appeal on the merits. If it denies the petition, there is no reason to expect a different result under Section 1292(b)—which has stricter criteria than Rule 23(f) and *still* requires the Ninth Circuit to exercise its discretion to accept the appeal if the district court certifies a question. Where the Ninth Circuit is already considering whether to accept an appeal of the same decision, this duplicative motion is a waste of the parties' and the Court's resources. Perhaps for this reason, other circuits to have considered the issue have "ma[d]e clear to bench and bar . . . that district judges should not,

and we shall not, authorize appeal under 28 U.S.C. § 1292(b) when appeal might lie under Rule 23(f)." *Richardson Elecs., Ltd. v. Panache Broad. of Penn., Inc.*, 202 F.3d 957, 959 (7th Cir. 2000) (declining to permit section 1292(b) appeal where the question at issue "might justify a Rule 23(f) appeal").

Tellingly, Plaintiffs cannot identify a single case in which a district court certified a question for interlocutory appeal where the same order was already subject to a pending Rule 23(f) petition. Plaintiffs argue (Mot. 5) that *Hoffman v. Citibank (S. Dakota), N.A.*, 2007 WL 5659406, at *2 (C.D. Cal. Feb. 15, 2007), supports the proposition that "a class certification order is appropriate for consideration under Section 1292(b)," but *Hoffman* involved neither a concurrent 23(f) petition nor a class certification decision. Rather, the *Hoffman* plaintiff sought to appeal an order *compelling arbitration* and merely "analogize[d] the practical result of th[at] Arbitration Order to a denial of class certification." 2007 WL 5659406, at *1–2. And while Plaintiffs highlight *Hoffman*'s observation that "District Courts often allow orders granting or denying class certification to be immediately appealed under 28 U.S.C. section 1292(b)" (Mot. 4), *Hoffman*'s only authority for that proposition dates from *before* Rule 23(f)'s adoption in 1998. *See Hoffman*, 2007 WL 5659406, at *2.

Plaintiffs also mischaracterize (Mot. 5) the posture in *Senne v. Kansas City Royals Baseball Corp.*, 2017 WL 5973487, at *1 (N.D. Cal. May 5, 2017), to support their argument that a Rule 23(f) petition and Section 1292(b) motion may proceed simultaneously. In *Senne*, the plaintiffs separately sought to certify **both** a Rule 23 class action and a collective action under the Fair Labor Standards Act ("FLSA"). *Senne*, 2017 WL 5973487 at *1. Consistent with the expectation that parties seeking interlocutory review of class-certification decisions will rely on Rule 23(f), the parties' Rule 23(f) petitions (filed by both plaintiffs and defendants) concerned only the portion of the district court's order addressing class certification, while the defendants' Section 1292(b) motion applied only to the portion of the court's order certifying a FLSA collective action—which, by its terms, could not be appealed under Rule 23(f). *Id.* Thus, when the Ninth Circuit agreed to hear the case, it did so by granting the Rule 23(f) petitions, accepting the district court's certification of the

FLSA collective action order for interlocutory review, and then consolidating the appeals. *Senne v. Kansas City Royals Baseball Corp.*, 934 F.3d 918, 926 (9th Cir. 2019).

This case presents a fundamentally different situation. Plaintiffs seek review of the *same* class-certification decision, on overlapping grounds, but via different procedural mechanisms. Neither *Hoffman*, *Senne*, nor any other case suggests that such duplication is permitted or appropriate.

### B.    None of Plaintiffs' Questions Merits Interlocutory Review

Even if this Court were to consider Plaintiffs' Motion on the merits, it should still deny the Motion because Plaintiffs cannot meet their burden to show that *any* of the five questions they identify satisfies the three requirements for interlocutory appeal.

#### 1.    That Implied Consent Is A Defense To Breach Of Contract Is Not An Appropriate Issue For Interlocutory Review

Question 1—whether implied consent is a defense to Plaintiffs' breach-of-contract claim—entails neither the uncertainty nor the urgency that would justify interlocutory review. Following bedrock principles of California law, this Court has repeatedly recognized implied consent as a defense to contract claims, and Plaintiffs point to no contrary authority. Indeed, Plaintiffs have previously conceded that consent "can be . . . implied" and is a defense to all of their claims, including breach of contract. Even if there were a basis to question the Court's well-reasoned decisions, there is no need to do so *now*. If the Ninth Circuit were to hold that implied consent was not a defense to breach of contract, (i) the parties would still need to litigate Google's implied-consent defense as to all of Plaintiffs' other claims; (ii) the Court would need to analyze Google's other arguments against certifying a breach of contract claim; and (iii) in the end, final judgment may ultimately rest on a ground other than implied consent that moots the need to appeal Question 1 at all. It would therefore be more efficient for the Ninth Circuit to consider a consolidated appeal after judgment and on a full record.

***Question 1 is conceded, not controlling.*** Plaintiffs long ago agreed with Google that "consent is an affirmative defense to [all] the claims against Google" and "can be explicit or implied." *Calhoun v. Google, LLC*, No. 22-16993, Dkt. 41-2 at 29 (9th Cir.) ("Pls. App. Br."). The

Ninth Circuit noted Plaintiffs' concession in its ruling. *Calhoun v. Google, LLC*, 113 F.4th 1141, 1147 (9th Cir. 2024) ("Calhoun I") ("The parties do not dispute that consent is a valid defense to [all] claims, and that . . . consent can be express or implied . . . ." (internal quotation marks and alterations omitted)). Plaintiffs may now regret that admission, but it makes little sense to delay resolution of the case for the Ninth Circuit to rule on an issue Plaintiffs previously told that court was settled.

Plaintiffs are simply wrong that an interlocutory appellate ruling in their favor would simplify this action by limiting "expert discovery and evidence at trial . . . to how a reasonable person would understand Google's contract, without any extra-contractual documents." Mot. 5. Plaintiffs do not dispute that implied consent is a defense to their many *non-contract* claims, all of which would still require an individualized examination of the disclosures to which each putative class member was exposed. *See, e.g.*, *In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *16 (N.D. Cal. Mar. 18, 2014) (holding that, as applied to Wiretap Act and CIPA claims, "implied consent . . . requires looking at all of the circumstances surrounding the interceptions" and rejecting "Plaintiffs['] conten[tion] that only Google's own disclosures to its users are relevant to the question of implied consent.").[1]

**There are not substantial grounds for difference of opinion.** Plaintiffs were right to concede that implied consent can defeat their breach-of-contract claim. It is a fundamental principle of California law that "[a] person who consents to an act is not wronged by it." Cal. Civ. Code § 3515. This principle applies as much to contract claims as any other. *See* 2 Cal. Aff. Defenses § 32:1 ("[c]onsent may also be a defense to an action for breach of contract when . . . the plaintiff previously accepted and consented to the performance now asserted as a breach."). And as long as it is "actual," such "consent can be [express] or implied." *Calhoun I*, 113 F.4th at 1141; *see* Pls. App. Br. 29 (calling this a "well-accepted framework for evaluating consent in the data-privacy context").

---

[1] Plaintiffs' argument that the scope of Google's implied consent defense is a "controlling question of law" makes even less sense in light of their assertion (Mot. 5, 9–11) that there is no evidence to support an implied consent defense in the first place. Plaintiffs fail to explain how the question of whether implied consent defeats their contract claim would "materially affect the outcome of litigation" if, as they claim, Google could not establish that defense to begin with.

1    Multiple class-certification decisions in this district—not only by this Court, as Plaintiffs claim, *see*

2    Mot. 6—have treated implied consent as a defense to breach of contract. *See Brown v. Google, LLC*,

3    2022 WL 17961497, at *19 (N.D. Cal. Dec. 12, 2022); *In re Google RTB Consumer Privacy Litig.*,

4    2024 WL 2242690, at *12 (N.D. Cal. Apr. 4, 2024); *Frasco v. Flo Health, Inc.*, 2025 WL 1433825,

5    at *3, *6–8 (N.D. Cal. May 19, 2025). Plaintiffs identify no case in which a court held otherwise.

6    *See Couch*, 611 F.3d at 633–34 (denying certification for interlocutory appeal where movants "have

7    not provided a single case that conflicts with the district court's construction or application").

8         Implied consent is also analogous to "waiver," a clearly established contract defense that can

9    be implied from a plaintiff's conduct when it is "inconsistent with an intent to enforce" a contractual

10   right "after full knowledge of the facts," *Old Repub. Ins. Co. v. FSR Brokerage, Inc.*, 80 Cal. App.

11   4th 666, 678 (2000). And whether Google's defense is framed as implied consent or implied waiver,

12   Plaintiffs plainly are incorrect in asserting that a contracting party is *unable* to consent to a form of

13   performance different from the one set out in a form contract. A contract is not a straitjacket; if a

14   user accepts a certain form of performance with full knowledge of what it entails, that mutually

15   acceptable performance cannot logically or fairly constitute an actionable breach. *See, e.g.*, *Pointe*

16   *San Diego Residential Community, L.P. v. W.W.I. Props., L.L.C.*, 2007 WL 1991205, at *21 (Cal.

17   App. July 11, 2007) (unpublished decision) ("A contracting party's acceptance of performance that

18   does not strictly comply with that promised by the other contracting party constitutes a waiver of

19   strict performance."); *Atkinson v. Pac. Fire Extinguisher Co.*, 40 Cal.2d 192, 194–195 (1953)

20   (finding that "stric[t] compliance thereafter is waived" by party's acceptance of deviation from

21   contractual payment requirements).

22        Plaintiffs' purportedly contrary authority simply misses the point. They cite the out-of-

23   circuit decision in *Harris v. comScore, Inc.*, 292 F.R.D. 579, 585 (N.D. Ill. 2013), to argue that the

24   rule that "the scope of consent will vary for each plaintiff depending on his subjective understanding

25   of the agreement and the surrounding circumstances" does not apply where "a party manifested

26   consent through the adoption of a form contract." Mot. 6. That argument conflates principles of

27   contract *interpretation* with (extra-contractual) consent. *Harris* addresses only the scope of consent

28

*conferred by the contract itself.*[2] 292 F.R.D. at 585. The same is true of the snippets Plaintiffs cherry-pick (Mot. 6–7) from various cases Google cited in its class-certification briefing.[3] Google's implied-consent argument, though, is *not* that Plaintiffs manifested their consent through the contract. (That is Google's *express*-consent argument.) As to *implied* consent, what matters is that, regardless of how the contract is interpreted, millions of users who agreed to its terms nonetheless made the conscious choice to use Chrome while fully aware of the data collection and understanding that enabling or disabling Sync has no effect on it. *See* Order 9 (limiting consideration of extrinsic evidence "when applied to the interpretation of a specific contractual term," but permitting inquiry into such evidence to assess implied consent).

> ***An immediate appeal will not advance the litigation.*** Plaintiffs likewise err in arguing (Mot. 7) that resolving Question 1 will advance the termination of litigation. As noted above, a successful interlocutory appeal would at most remove just one of several defenses to just one of six currently pending claims—the rest of which would still necessitate litigating Google's implied-consent defense in full. Further, the Court would need to resolve Google's other arguments against certifying a breach-of-contract claim. Resolving Question 1 now would have no effect on expert discovery or the scope of testimony at trial.[4] What's more, trial could render the contours of the implied-consent defense irrelevant to a final merits determination if, for example, Google (i) prevails on another independently dispositive defense like express consent, or (ii) fails to establish implied consent for the named Plaintiffs, as Plaintiffs insist it will (Mot. 5, 9–11). Because certifying Plaintiffs' appeal now would not "materially advance the ultimate termination of the litigation," it would be far more

---

[2] Judge Koh criticized *Harris*'s reasoning as "unpersuasive" because "express and implied consent are analytically distinct" and "a finder of fact [is] allowed to consider a broader set of materials in answering the factual question whether users impliedly consented." *Gmail*, 2014 WL 1102660, at *19.

[3] *See Gmail*, 2014 WL 1102660, at *19 (addressing contract interpretation); *Williams v. Apple, Inc.*, 338 F.R.D. 629, 638 (N.D. Cal. 2021) (articulating how to "interpret[]" "a standardized agreement" rather than addressing contracting parties' separate ability to consent to challenged conduct).

[4] This case is thus worlds apart from Plaintiffs' example *Roth v. Foris Ventures, LLC*, 2022 WL 21777087 (N.D. Cal. Aug. 19, 2022), in which reversal of the Court's decision would mean "the entire case would be dismissed." *Id.* at *1. Here, by contrast, early resolution of the issue would not affect the outcome of litigation *at all*.

efficient for either or both parties to file a consolidated appeal after trial, on a fully developed factual record and in light of the final judgment.

### 2. Plaintiffs' Manufactured Dispute Over The "Reasonable Person" Consent Standard Is Not An Issue For Interlocutory Review

Plaintiffs frame Question 2 as whether "consent in a breach of contract case is an *objective* inquiry rather than an *individualized* inquiry." Mot. 7; *but see* Mot. 9 (describing the same question as a "question of subjective inquiry vs. objective inquiry"). Determining whether putative class members impliedly consented, however, plainly can be both "objective" *and* "individualized" at the same time, and Plaintiffs' artfully worded question sets up a false dichotomy that needs no resolution. To the extent Plaintiffs meant to frame the question as whether implied consent is objective or *subjective*, that question, too, would be inappropriate for interlocutory review.

***Question 2 is not a question of law, much less a controlling one.*** "A controlling question of law must be one of law—not fact—and its resolution must 'materially affect the outcome of litigation in the district court.'" *ICTSI*, 22 F.4th at 1130 (quoting *In re Cement*, 673 F.2d at 1026). As phrased, Question 2 fails on both counts. *First*, to the extent Plaintiffs contest that implied consent is individualized because some Plaintiffs impliedly consented while others did not, that turns on a question of fact rather than law. *See Gmail*, 2014 WL 1102660, at *16 ("Implied consent is an intensely factual question . . . ."); *id.* ("[C]ourts have consistently held that implied consent is a question of fact . . . .").

*Second*, to the extent Plaintiffs actually seek to clarify the legal standard (objective or subjective) that guides that factual question, that standard does not "materially affect the outcome" of Plaintiffs' class-certification motion, let alone the outcome of the litigation. Contrary to Plaintiffs' suggestion, "objectivity does not dictate uniformity across the class." *Griffith v. TikTok, Inc.*, 2024 WL 4308813, at *5 (C.D. Cal. Sept. 9, 2024). Even an "objective" analysis must consider the actual "disclosures at issue" when "assessing whether a reasonable user reading them might believe they were consenting to certain practices." *Calhoun I*, 113 F.4th at 1151. For implied consent, these disclosures will vary from user to user because putative class members could have learned of the challenged conduct from many different disclosures "to which millions of class members were

exposed," each in a different combination. Order 9. Some combinations of the disclosures Google identified may be sufficient to imply consent (objectively *or* subjectively), while others may not—yielding a different result for each user. As explained in a recent decision from the Western District of Washington:

> Unless plaintiffs can "achieve an unalloyed and universal victory on the issue" of whether "after a review of all of the relevant disclosures and sources, the fact-finder determines that the available information would not have put a reasonable consumer on notice that he or she was consenting," then "the fact-finder would be required to determine which sources of information each non-registrant read, saw, or heard and whether that specific constellation of sources established the non-registrant's implied consent to the recordings, an intensely fact-based and individualized analysis."

*Garner v. Amazon.com, Inc.*, 2025 WL 1911088, at *7 (W.D. Wash. July 7, 2025). Thus, even characterized as a question of law, Question 2 is still not controlling (as to class certification or the case as a whole).

**There is no basis for difference of opinion.** "That settled law might be applied differently does not establish a substantial ground for difference of opinion," and "just because counsel contends that one precedent rather than another is controlling does not mean there is such a substantial difference of opinion as will support an interlocutory appeal." *Couch*, 611 F.3d at 633. "Settled law . . . be[ing] applied differently" is all Plaintiffs show here, identifying two cases (*Frasco* and *Torres*) that applied similar legal principles to those the Court applied here to facts that are vastly different. *See* Mot. 8–9. Indeed, both decisions acknowledged this Court's decision in *Brown* and did not disagree with it. Rather, each distinguished *Brown* on the facts. *Frasco* held that, unlike in *Brown*, the defendants identified only three articles allegedly disclosing the data collection at issue and made "no effort to demonstrate that a meaningful portion of the proposed classes might have seen or read these three specific articles." 2025 WL 1433825, at *7. And *Torres* similarly distinguished *Brown* by noting that only one article was "capable of providing the kind of notice required to establish consent, and . . . was published just a few weeks before the end of the class period." *See Torres v. Prudential Fin., Inc.*, 2024 WL 4894289, at *8 (N.D. Cal. Nov. 26, 2024). The courts in both *Frasco* and *Torres* also concluded that the defendants' privacy policies did not disclose the conduct at issue, *see Frasco*, 2025 WL 1433825, at *7; *Torres*, 2024 WL 4894289, at

*6, while the Court concluded the opposite here, *Calhoun v. Google, LLC*, 2023 WL 11988490, at *10–17 (N.D. Cal. May 16, 2023); *see also Hammerling v. Google, LLC*, 2024 WL 937247, at *1–2 (9th Cir. Mar. 5, 2024) (Google's Privacy Policy "unambiguously discloses Google's collection of user activity data" on third party apps and sites).

**An immediate appeal will not advance the litigation.** Plaintiffs again say that if they prevailed on this issue in a post-trial appeal, "it would require completely restarting expert discovery, *Dauberts* and dispositive motions," Mot. 9, but they fail to explain why. Since the same claims and defenses would proceed to trial, and the Court's denial of class certification on predominance grounds would still stand, regardless of how the Ninth Circuit might answer Question 2, there is no reason to believe an interlocutory appeal would meaningfully change the scope of the case. In any event, Plaintiffs' argument gets the standard backwards. The Section 1292(b) analysis asks whether "resolution of the question 'may appreciably shorten the time, effort, or expense of conducting' the district court proceedings," *Wang v. Zymergen Inc.*, 759 F. Supp. 3d 1002, 1011 (N.D. Cal. 2024) (quoting *In re Cement*, 673 F.2d at 1027), not whether additional time, effort, or expense may be necessary should the order be reversed post-judgment. Indeed, if Plaintiffs' articulation of the standard were correct, interlocutory appeals would be granted as a matter of course, since a post-judgment reversal nearly always creates more work on remand. Plaintiffs have not identified any way in which the current proceedings would be shortened if this question is answered now.

           3.     <u>Plaintiffs' Challenge Regarding Google's Disclosures Rests On A False Premise And Is Not An Issue For Interlocutory Review</u>

Question 3 is based on the false premise that the Court "*presume[d]* that class members might have been exposed to disclosures contradicting Google's express promises without an evidentiary showing that such disclosures exist." Mot. 9 (emphasis added). The Court made no such presumption. It considered Google's robust evidentiary showing and concluded that "Google has met its burden of presenting concrete evidence" establishing that "a Chrome user could have understood which data [Google] collected." Order at 6–8; *see also* Dkt. 1074 (Fair Decl.);

Dkts. 1073-72–1073-105 (Broome Decl. Exs. 44–77).[5] Plaintiffs' disagreement is not with the Court's analytical methods, but with its *conclusion* that those sources would notify a user who read them of the data collection. But that conclusion (which is not even the question Plaintiffs seek to certify) is not an issue appropriate for interlocutory appeal.

**Question 3 is not a controlling question of law.** Question 3 is not controlling first and foremost because the Court did *not* "presume . . . without an evidentiary showing" (Mot. 9) the existence of adequate disclosures. The Ninth Circuit's answer to Question 3 would thus have no effect on the outcome of the class-certification decision or case. Moreover, second-guessing the factual analysis this Court *actually* performed (which Plaintiffs' question does not even encompass) would require the Ninth Circuit to delve into the factual record to examine whether the dozens of sources Google identified sufficiently disclose the challenged conduct, and whether Google's evidence that class members may have seen these disclosures is adequate. That is not a question of law at all. *See Gmail*, 2014 WL 1102660, at *16 ("[I]mplied consent is a question of fact . . . .").

**There is no basis for difference of opinion.** Plaintiffs' mere "disagreement with the Court's ruling is not sufficient to establish that a substantial ground for difference of opinion exists." *Ass'n of Irritated Residents v. Fred Schakel Dairy*, 634 F. Supp. 2d 1081, 1090 (E.D. Cal. 2008). But that sort of disagreement is all Plaintiffs offer here—arguing that Google's evidence was insufficient to establish implied consent for some putative class members. Even if that were a legal question eligible for interlocutory review, there can be no question that the disclosures identified by Google could have put users on notice of the challenged conduct. *See, e.g.*, Dkt. 1073-81 (Broome Decl. Ex. 53) ("The . . . Chrome web browser . . . and publisher tools like Google Analytics and AdWords can glean information from web searches, map inquiries, and other online activities without you knowing -- or controlling -- it . . . . Most people have long since accepted that using Google's suite of free products means turning over your data."); Dkt. 1073-85 (Broome Decl. Ex. 57) ("Google Chrome is the most popular web browser in the world by a long shot. Not only is Chrome fast and

---

[5] Plaintiffs' incorrect claim that "Google only presented evidence that Google requires first-party websites, when using Google tools, to post a privacy policy and generally disclose how those tools collect and process data," Mot. 10, requires ignoring all of this evidence.

1    highly customizable, it's also tracking you as you surf the internet . . . . Aside from cookies, Chrome

2    tracks you through a number of identifiers. These include: IP address[,] Log-in information[,]

3    Browser user agents and more.").

4            Plaintiffs' contrary arguments fail. *First*, they suggest that a disclosure cannot be adequate

5    unless it specifically "advis[es] Chrome members that the CPN's privacy promises were false with

6    respect to not-sync'd Chrome users" and "warn[s] Chrome users that the data at issue will be

7    transmitted to Google even when not sync'd with a Google Account." Mot. 10. But Plaintiffs admit

8    (Mot. 10) that websites using Google's services "*generally* disclose how [Google's] tools collect

9    and process data"—without ever suggesting Sync affects that collection. And in any event, Google

10   pointed to disclosures that *do* expressly distinguish the data it receives through Chrome Sync from

11   the data it receives through activity on third-party websites, as well as multiple tools that show users

12   the exact data being transmitted to Google in real time (including when they are not using Sync).

13   Dkt. 1072-1 at 4–7. 10–13. Google's evidence showed that millions of users consulted these tools

14   and disclosures. *See id.* at 6–7. The adequacy of these widely viewed disclosures is far from

15   speculative. Google presented unrebutted survey evidence showing that even after reading the CPN,

16   most Chrome users expected that Google would receive the data at issue regardless of Sync status.

17   *Id.* at 8, 12.

18           *Second*, Plaintiffs again turn to *Torres*, noting that Judge Breyer concluded that none of the

19   third-party sources in that case "disclosed the challenged conduct in sufficient detail, as a matter of

20   law." Mot. 11 (quoting *Torres*, 2024 WL 4894289, at *7–8). That may have been true in *Torres*, but

21   as noted above, the differing result was not because this Court failed to "consider[] defendants'

22   submission of actual third-party sources," *id.*; but rather that both the disclosures and the alleged

23   conduct in *Torres* were *different* than those here. *See supra* IV.B.2.

24           ***An immediate appeal will not advance the litigation.*** While Plaintiffs once again claim,

25   without any support or even explanation, that resolution of this issue would "impact trial" and

26   "shape[] expert discovery" (Mot. 11), they do not (and cannot) argue that it would "appreciably

27   shorten the time, effort, and expense of this litigation." *Wang*, 759 F. Supp. 3d at 1014. As Plaintiffs

28   acknowledge, the factfinder at trial will "examine the relevant sources for information and determine

whether any were a sufficient basis for implied consent." Mot. 11. Expert discovery and the presentation of evidence at trial will thus proceed the same way regardless of Question 3's answer.

### 4. That The Court Did Not Take Judicial Notice Of Irrelevant Materials Is Not Cause For Interlocutory Review

Question 4 takes issue with the Court's exercise of its discretion not to take judicial notice of certain non-contractual disclosures that were irrelevant to class certification. As a preliminary matter, Plaintiffs are wrong to frame Question 4 as "whether the Court may take notice of Google's documents but not Plaintiffs," *see* Mot. 12, since that is not what happened: Plaintiffs are the only ones who requested judicial notice, *all* of the documents included in that request are "Google documents" (*i.e.*, authored by Google), and the Court denied the request in full. *See generally* Dkt. 1058 (Plaintiffs' request for judicial notice); Order 1 n.1 (denying request for judicial notice). In any event, this question does not meet the requirements for interlocutory appeal.

*First,* Plaintiffs cannot credibly claim that the Court's decision not to take judicial notice of documents presents a controlling question of law. *See, e.g.*, *In re Apple Inc. Secs. Litig.*, 678 F. Supp. 3d 1147, 1152 (N.D. Cal. 2023) ("Courts have discretion in taking judicial notice."). They apparently are dissatisfied with this Court's determination that the "Privacy in Chrome" documents were unnecessary to resolve the class-certification motion. But the Court's decision not to consider those concededly non-contractual disclosures (Order 11)—which Plaintiffs do not allege they reviewed and did not even exist until years after they filed suit—plainly does not "control" the resolution of what Plaintiffs describe as fundamentally contract-based claims.[6] Dkt. 1110 (Case Mgmt. Stmt.) at 1 (the "core" of Plaintiffs' case is that "Google made an express contractual promise" in the CPN that it purportedly breaks). *Second*, Plaintiffs do not even attempt to argue that there are substantial grounds for disagreement on the actual question they pose—*i.e.*, whether the Court may take judicial notice of some disclosures but not others. *Third*, Plaintiffs' mere interest in knowing what evidence will ultimately be admissible at trial (even before the district court addresses that question) plainly does not justify an interlocutory appeal; otherwise interlocutory review would

---

[6] Plaintiffs' contrary position is perplexing given their concurrent argument (*see* Mot. 6–7) that material outside the contract should not be considered.

1    be the norm in every case. Nothing in this Court's class-certification ruling prevents Plaintiffs from

2    asking their merits experts to consider public documents beyond those in the class-certification

3    record (even if Google may ultimately challenge their relevance before trial).

4        Apparently recognizing that denying their motion for judicial notice presents no controlling

5    issue on its own, Plaintiffs strain to argue that this denial was tantamount to an adverse decision on

6    *other* legal issues like "the status of Plaintiffs' rights under the CPN." *See* Mot. 12. But the Order

7    did not purport to decide that question, and Plaintiffs do not seek to certify its "resolution" for

8    interlocutory appeal. There is thus no reason for the Ninth Circuit to consider Question 4 at this (or

9    any) stage of the case.

10            5.    Plaintiffs' Incorrect Assertion That The Court Resolved Disputed
                    Merits Questions Does Not Warrant Interlocutory Review
11

12        Question 5 likewise seeks an advisory opinion on two issues this Court has not yet addressed,

13    *i.e.* "whether the CPN is still enforceable by *existing* accountholders who accepted the Terms of

14    Service prior to the depreciation [sic]" and "whether the replacement Privacy in Chrome pages

15    (when read together with the Privacy Policy and Terms of Service) could still be understood by a

16    reasonable Chrome user as providing the same privacy protections for un-sync'd users." Mot. 13.

17    Neither issue is ripe for appellate review because the Court did not decide them. To be sure, the

18    Court denied Rule 23(b)(2) certification because, after Google retired the CPN, there was no "real

19    and immediate threat of repeated injury" requiring (inherently prospective) injunctive relief. Order

20    11 (quoting *Backhaut v. Apple Inc.*, 2015 WL 4776427, at *8 (N.D. Cal. 2015)). But the Court made

21    no finding as to existing accountholders' rights to *enforce* the CPN as it existed when they created

22    and maintained their accounts, and certainly did not decide whether the CPN's deprecation applied

23    "retroactiv[ely] for existing accountholders," Mot. 3—a live issue that Plaintiffs will surely continue

24    to litigate as the case advances. Nor did the Court make any findings as to how a reasonable user

25    would interpret the Privacy in Chrome pages—*because the Amended Complaint does not mention

26    these pages and they are not a basis for Plaintiffs' claims*. *See* Dkt. 163. If Plaintiffs seek to add

27    claims based on those documents, they would need to seek leave to do so. But any requested leave

28    should be denied because these Plaintiffs (who did not even read the CPN) could not possibly have

been misled by the Privacy in Chrome pages (launched in 2023) after participating in this case for years.

**_Question 5 is not controlling._** Question 5—whether the Court can resolve disputed merits questions on class certification—is not controlling because, as explained above, Plaintiffs have not identified any "disputed merits questions" that the Court improperly decided. Moreover, even assuming that a user could interpret the Privacy in Chrome pages the same way Plaintiffs interpret the CPN—a proposition for which there is no evidence—that interpretation would not assist Plaintiffs' "core" contract claims or undermine Google's express-consent defense because the Privacy in Chrome pages are undisputedly non-contractual. *See* Order 11. Nor would it undermine the Court's conclusion that the implied-consent inquiry is individualized, since millions of users either would not have seen the Privacy in Chrome pages or would have seen them in combination with other tools and disclosures that provide adequate notice of the challenged data collection.

**_There is no basis for difference of opinion._** Because the Court did not "rule[] that class members have no ongoing rights to enforce the contract," Mot. 14, there is no opinion with which another court could disagree. Nor was it questionable to deny Plaintiffs' request to certify an injunctive-relief class—which, as explained above, was *not* based on any merits ruling about Plaintiffs' "ongoing rights." Plaintiffs may well believe Google broke promises in the CPN, but "[t]he purpose of an injunction is to prevent *future* violations," not compensate plaintiffs for past ones. *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953) (emphasis added). What's more, injunctive relief is unavailable in contract actions unless the plaintiff can show she is entitled to specific performance. Cal. Civ. Code. § 3423 ("An injunction may not be granted . . . [t]o prevent the breach of a contract the performance of which would not be specifically enforced . . . .").[7] Thus, even if Plaintiffs were correct that deprecating the CPN did not modify Google's contract with existing accountholders (Mot. 14), that would not make certification of an injunctive-relief class any more appropriate.

---

[7] Plaintiffs do not seek specific performance, *see* Dkt. 163 § VIII (Prayer for Relief), nor could they, given that would require a showing of inadequacy of legal remedy. *Lewis v. YouTube, LLC*, 244 Cal. App. 4th 118, 126 (2015).

GOOGLE'S OPPOSITION TO MOTION TO CERTIFY ORDER FOR IMMEDIATE INTERLOCUTORY APPEAL

***An immediate appeal will not advance the litigation.*** For all the reasons above, there is no reason to certify Plaintiffs' unripe questions for appeal now. Yet again, Plaintiffs protest (Mot. 14–15) that "expert discovery would have to be re-opened" if the Ninth Circuit reached a different conclusion than this Court in a post-trial appeal, but they never explain why. If Plaintiffs believe they are entitled to enforce the CPN and seek injunctive relief on an individual basis, this Court has not precluded them from developing expert testimony in support of that relief. And if the Court precludes them from doing so at a later stage of the case, Plaintiffs can weigh their appellate options at that time.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny Plaintiffs' motion to certify the Order for immediate interlocutory appeal.

1    DATED:  August 4, 2025                Respectfully Submitted

2                                          QUINN EMANUEL URQUHART &
                                           SULLIVAN, LLP
3

4

5                                          By _____ */s/ Andrew H. Schapiro* _____
                                              Andrew H. Schapiro (admitted *pro hac vice*)
6                                             andrewschapiro@quinnemanuel.com
                                              Teuta Fani (admitted *pro hac vice*)
7                                             teutafani@quinnemanuel.com
                                              Joseph H. Margolies (admitted *pro hac vice*)
8                                             josephmargolies@quinnemanuel.com
                                              191 N. Wacker Drive, Suite 2700
9
                                              Chicago, IL 60606
10                                            Telephone: (312) 705-7400
                                              Facsimile: (312) 705-7401
11

12                                            Stephen A. Broome (CA Bar No. 314605)
13                                            stephenbroome@quinnemanuel.com
                                              Viola Trebicka (CA Bar No. 269526)
14                                            violatrebicka@quinnemanuel.com
                                              Crystal Nix-Hines (Bar No. 326971)
15                                            crystalnixhines@quinnemanuel.com
                                              Alyssa G. Olson (CA Bar No. 305705)
16                                            alyolson@quinnemanuel.com
                                              865 S. Figueroa Street, 10th Floor
17                                            Los Angeles, CA 90017
                                              Telephone: (213) 443-3000
18                                            Facsimile: (213) 443-3100
19

20                                            Xi ("Tracy") Gao (CA Bar No. 326266)
21                                            tracygao@quinnemanuel.com
                                              Carl Spilly (admitted *pro hac vice*)
22                                            carlspilly@quinnemanuel.com
                                              1300 I Street NW, Suite 900
23                                            Washington D.C., 20005
                                              Telephone: (202) 538-8000
24                                            Facsimile: (202) 538-8100
25
                                              *Attorneys for Defendant Google LLC*
26

27

28

                                    -19-                     Case No. 4:20-cv-05146-YGR-SVK