**BLEICHMAR FONTI & AULD LLP**
Lesley E. Weaver (SBN 191305)
Anne K. Davis (SBN 267909)
Joshua D. Samra (SBN 313050)
1330 Broadway, Suite 630
Oakland, CA 94612
Tel.: (415) 445-4003
Fax: (415) 445-4020
*lweaver@bfalaw.com*

**SIMMONS HANLY CONROY LLP**
Jason 'Jay' Barnes (admitted *pro hac vice*)
Jayne Conroy (admitted *pro hac vice*)
An Truong (admitted *pro hac vice*)
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel.: (212) 784-6400
Fax: (212) 213-5949
*jaybarnes@simmonsfirm.com*

**DiCELLO LEVITT LLP**
David A. Straite (admitted *pro hac vice*)
Julia Veeser (admitted *pro hac vice*)
Adam Prom (admitted *pro hac vice*)
485 Lexington Avenue, Suite 1001
New York, NY 10017
Tel.: (646) 933-1000
*dstraite@dicellolevitt.com*

*Counsel for Plaintiffs*
*[Additional counsel on signature page]*

## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

PATRICK CALHOUN, *et al*., on behalf of themselves and all others similarly situated,

                          Plaintiffs,

          v.

GOOGLE LLC,

                          Defendant.

Case No. 4:20-cv-05146-YGR-SVK

**PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION TO CERTIFY ORDER FOR IMMEDIATE INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(B)**

JUDGE: Hon. Yvonne Gonzalez Rogers

1

## I.    INTRODUCTION

2      Google's Opposition Brief ("Opp," Dkt. No. 1119) raises more questions than it resolves.

3  Google argues that Plaintiffs' Motion ("Motion," Dkt. No. 1111) is merely duplicative of the

4  pending Rule 23(f) petition. It is not. The Motion seeks resolution of five legal questions that will

5  shape expert discovery and trial *irrespective of whether a class is certified*. Google's proposal is to

6  proceed through costly expert discovery (including merits expert reports, depositions of experts

7  and rebuttal reports) and address the disputed legal questions following a lengthy and expensive

8  trial. But if Plaintiffs are successful in the court of appeals, that would not just require a re-trial – it

9  would require a wholesale restart of expert discovery. Google does not explain how this could

10  possibly be more efficient or how it could advance the ultimate termination of the litigation.

11  Google's legal argument that a 1292 motion may not be adjudicated while a Rule 23(f) petition is

12  pending is also wrong, based on cases that interpose scenarios similar to the one here.

13      Google's Opposition also makes a key concession regarding the deprecation of the Chrome

14  Privacy Notice ("CPN") for **legacy** accountholders (i.e., those who, like Plaintiffs, became

15  accountholders prior the date of deprecation), who are the **only** Chrome users in the proposed class.

16  The Court denied Plaintiffs' motion for certification of a Rule 23(b)(2) class, holding that "plaintiffs

17  have failed to identify any surviving promise in Google's various disclosures that evidence an

18  **ongoing promise** to avoid collecting data that Google does, in fact, surreptitiously collect. As a

19  result, injunctive relief is not warranted." Dkt. No. 1105 at 12 (emphasis added). Plaintiffs dispute

20  this finding, because contractual promises made to legacy accountholders (and ongoing rights under

21  that contract) remain in force for the current class. In the Opposition, Google now agrees with

22  Plaintiffs and takes the position that "the Court did **not** rule that class members have no **ongoing**

23  **rights** to enforce the contract." Opp. at 17 (internal citations omitted) (emphasis added); *id* at 16

24  ("the Court made no finding as to existing accountholders' rights to *enforce* the CPN as it existed

25  when they created and maintained their accounts . . . a live issue that Plaintiffs will surely continue

26  to litigate as the case advances.") (emphasis in original). The parties thus agree that whether the

27  class has ongoing rights is a matter for summary judgment or trial.

28

## II.    ARGUMENT

### A.    The Motion is Procedurally Proper and Non-Duplicative

Google's opposition brief incorrectly posits that where a Rule 23(f) petition is pending, a Section 1292(b) motion is not permitted. Opp. at 4-5. Google cites a single (out-of-circuit) case for this point but mischaracterizes the holding. *See id*. at 5 (citing *Richardson Elecs., Ltd. v. Panache Broadcasting of Penn., Inc*., 202 F.3d 957 (7th Cir. 2000)). *Richardson* held that where an issue might qualify for both Section 1292(b) review and 23(f) review simultaneously, a party may not use Section 1292 as a vehicle "to circumvent the 10-day limitation in Rule 23(f)." 202 F.3d at 959. But other than this time-limit issue (which is not relevant here, because Plaintiffs filed a timely 23(f) petition), the Seventh Circuit went out of its way to clarify that a simultaneous 1292 motion and 23(f) appeal could be proper for the appellant's "protection" because the criteria for each are distinct:

> Should a case arise in which a class-certification order is appealable under 1292(b) but not under 23(f), perhaps because it presents an issue that while it satisfies the criteria of the statute does not involve the merits of class certification, ***the appellant can protect himself by seeking the district judge's permission to take a 1292(b) appeal at the same time that the appellant asks us to entertain his appeal under 23(f).***

*Id*. (emphasis added). And even where the criteria fully overlap, the Seventh Circuit further emphasized, "[w]e need not, at least at this juncture, consider whether Rule 23(f) may actually supersede section 1292(b) in the area of their overlap." *Id*.

It is also unfortunate that Google elected to omit decisions that cited *Richardson* as authority for <u>Plaintiffs'</u> position here. For example, one judge in the Northern District of Illinois recently expressed personal skepticism about the dual-tracking approach, but confirmed *Richardson* is controlling authority and held that plaintiff "was right to simultaneously move this Court under §1292(b) while also petitioning the Seventh Circuit under Rule 23(f)." *Mussat v. IQVIA, Inc*., 2019 WL 3423661, at *1 (N.D. Ill. Feb. 20, 2019). Other circuit courts addressing this issue have also rejected Google's argument, but Google failed to cite any in its brief. *See, e.g., Johnson v. West Pub. Corp*., 504 Fed.Appx. 531, 534-35 (8th Cir. 2013) ("We granted both the §1292(b) and Rule 23(f) applications and consolidated the appeals."). Plaintiffs are not aware of any Circuit rejecting

the dual-application approach, and Google cited to none. Indeed, the United States Supreme Court has authorized a Section 1292(b) motion to review a class cert order following a denial of a Rule 23(f) petition, see *Microsoft Corp. v. Baker*, 582 U.S. 23, 34 (2017), and there is no logical reason to presume that simultaneous petitions would be precluded if seriatim petitions are appropriate.[1]

Google is also incorrect to characterize the Motion as fully "duplicative" of the Rule 23(f) petition. Opp. at 1. Plaintiffs' Motion seeks interlocutory review of purely legal questions, the resolution of which will materially advance the litigation (particularly expert discovery), whether the court of appeals reviews or reverses the class certification order. For example, the relevance to the consent inquiry of disclosures on non-Google websites will fundamentally shape expert discovery – are they admissible evidence, or not? As discussed in more detail below, Judge Seeborg just last week held that such non-Google disclosures will be inadmissible in a similar data privacy case against Google proceeding to trial on August 19, 2025. Likewise, as also discussed below, review of this Court's determination regarding the prospective legal effect of Google's deprecation of the CPN for new accountholders (as opposed to Plaintiffs and other legacy accountholders) is appropriate in light of Google's concession that existing accountholders may continue to have the right to enforce the CPN.

**B.     The Court Should Certify the Five Questions for Interlocutory Review**

> 1.  *Whether "implied consent" is a cognizable defense to Plaintiffs' claim for breach of express contract under California law.*

California "recognizes the objective theory of contracts, under which it is the objective intent, as evidenced by the words of the contract, rather than the subjective intent of one of the parties, that controls interpretation." *Rodman v. Safeway*, 2014 WL 988992, at *7 (N.D. Cal. Mar. 9, 2014). Thus, express contract terms are "interpreted wherever reasonable as treating alike all those similarly situated, without regard to their knowledge or understanding." *Id*. at *8 (quoting Restatement (Second) of Contracts § 211(2)).

Google argues that Plaintiffs' cited authorities conflate contract interpretation with consent. Opp. at 8. But Google mischaracterizes these authorities. For example, in *Harris v. comScore, Inc.*,

---

[1] Indeed, given the duty to file a Section 1292(b) without undue delay, Google does not explain how one could hold back the 1292 motion pending resolution of the 23(f) petition.

292 F.R.D. 579 (N.D. Ill. 2013), defendant argued, just like Google here, that "the scope of consent will vary for each plaintiff depending on his subjective understanding of the agreement and the surrounding circumstances." *Id.* at 585. But the Court rejected this argument, holding that "that rule has no place where a party manifested consent through the adoption of a form contract." *Id.* The Court could not have been clearer that this rule governs **consent**, not just "contract interpretation" as Google incorrectly argues: "The scope of the plaintiffs' consent here is determined by that identical process" of accepting the form contract. *Id.*

Google argues that Judge Koh "criticized" the reasoning of *Harris*. Opp. at 9, fn.2 (citing *In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *19 (N.D. Cal. Mar. 18, 2014)). Not so. Instead, she found *Harris* unpersuasive outside of the contract law context. Where consent is obtained contractually, in contrast, she agreed with *Harris* that "the subjective intent of the parties must give way to the terms of the contract that embody the parties' mutual asset." *Id.* She also found the *Gmail* facts "distinguishable" from *Harris* because in *Gmail* there was no express contract between plaintiffs and Google. *Id.* Only because the class was defined to be those who were <u>not</u> in contractual privity with Google did Judge Koh reject the application of *Harris* to the *Gmail* facts. But Google is flatly wrong when it argues that Judge Koh rejected *Harris* when the scope of consent is defined by an express contract.

Google also mischaracterizes Plaintiffs' uncontroversial statement that consent is a defense Google will raise. Opp. at 6-7. But Google's contract and linked disclosures alone define the scope of that consent. If a jury were to conclude, through the eyes of a reasonable person, that the contract gave consent for Chrome to send the data-at-issue to Google, all claims would fail. But Plaintiffs do not concede that California law permits one to impliedly consent to a practice forbidden by the very contract governing consent. Google needed to stitch together portions of different paragraphs of Plaintiff's 2023 opening appellate brief to create that misrepresentation. Plaintiffs instead argued that consent in general – whether implied or express – is governed by the same high "unambiguous" standard, and the same burden of proof. Plaintiffs have never conceded that one may ever impliedly consent to a practice expressly forbidden by a written contract, and Plaintiffs have maintained that position throughout this case. *See, e.g.*, Dkt. No. 1079 at 11 ("Implied Consent Is Not a Defense to

1    the Contract Claim").

2         Google also argues in the alternative that implied consent is "analogous" to a waiver. But

3    waiver and implied consent are distinct defenses. Waiver requires that the plaintiff intentionally

4    relinquish a known right after knowledge of the facts. CACI Instruction 336. It is also subject to a

5    "clear and convincing" standard of proof. *Id*. (citing CACI Instruction 201). Google has never

6    raised this contract enforcement-waiver defense. Nor could it in this case. Indeed, the Opposition

7    fails to address Plaintiffs' argument that no CACI instruction exists for implied consent (a fact

8    noted by the Court, Mot. at 6), and Google cites no authority for applying a different defense by

9    "analogy."

10        The cases cited above clearly demonstrate a basis for difference of opinion. They also

11   demonstrate that resolution of the issue will materially advance the litigation. Google's primary

12   defense is "consent." *See* Answer, Dkt. No. 195, Affirmative Defense No. 1. It is absolutely

13   essential to know if the scope of consent for each plaintiff is defined by the contract alone, or instead

14   by additional facts and circumstances. Just last week, for example, Judge Seeborg issued an

15   omnibus order on 20 different motions *in limine* in *Rodriguez v. Google*, 3:20-cv-4688, Dkt. No.

16   587 (N.D. Cal. Aug. 6, 2025). In that order, he held that any disclosures other than Google's

17   disclosures to plaintiffs were irrelevant to the scope of consent. *Id*. at 5-7; *see also id*. at 18 ("this

18   case is about the relationship between Google and Plaintiffs. Third-party app disclosures to

19   Plaintiffs, and Google's disclosures to third-party apps, do not speak to . . . the scope of their

20   consent").

21          2.  *Whether the Ninth Circuit's "reasonable person" standard governing consent in a*

22             *breach of contract case is an <u>objective</u> inquiry rather than an <u>individualized</u>*
          *inquiry as the District Court held.*

23        Google refers to this question as a "false dichotomy" because consent could be both

24   objective and individualized. Opp. at 10. Google's position is achieved only by re-writing the Class

25   Certification Order – framing the inquiry as "objective" but based on different disclosures to

26   different Chrome users (thus, "individualized"). But that's not what the Court held, and not what is

27   presented by this question. Instead, the Court held that "liability in this case ultimately turns on

28   each class member's subjective understanding of defendant's promises." Dkt. No. 1105 at 13. It is

the "subjective understanding" vs. "objective understanding" issue for which Plaintiffs seek appellate review, even if just for the individual Plaintiffs' claims. Even if Google is correct that documents extrinsic to the contract are relevant (an issue Plaintiffs dispute, see below), there is a still a disputed question of law whether each Plaintiffs' subjective understanding governs, or whether it is that of a hypothetical "reasonable person." This question will fundamentally shape expert discovery and trial.

Google's cited authorities fail to address the actual question presented. For example, Google cites *Griffith v. TikTok, Inc.*, 2024 WL 4308813 (C.D. Cal. Sept. 8, 2024) for the proposition that "objectivity does not dictate uniformity." *Id*. at *5 (cited at Opp. at 10). Even accepting *Griffith* on its face, it is not relevant to the question of whether implied consent in a *contract* case is evaluated objectively or subjectively, because the claims in *Griffith* do not sound in contract. Moreover, Google's argument relates to class certification, whereas this Motion relates to a legal issue that must be resolved for the Plaintiffs irrespective of whether the case proceeds as a class action.

More importantly, the reasoning of *Griffith* supports Plaintiffs, not Google. The *Griffith* Court discussed *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020) which the *Griffith* Court conceded might support the "objective" standard. But the *Griffith* Court distinguished Facebook from TikTok because Facebook had made uniform representations to its subscribers that the data would not be collected and had built profiles on the data. *Griffith*, 2024 WL 4308813, at *6. Those facts were absent in *Griffith* but are present here, which is why the Ninth Circuit found the *Calhoun* facts "in line with" *Facebook Tracking*, see *Calhoun v. Google*, 113 F.4th 1141, 1149 (9th Cir. 2024), the opposite of *Griffith*. The *Griffith* Court also distinguished *Rodriguez v. Google* for the same reason: in *Rodriguez*, each Plaintiff selected the same privacy setting (WAA-off) and Google made identical representations about those settings. *Id*. at *5. *Calhoun* similarly is brought on behalf of Chrome users who used Chrome in the same setting (not sync'd with an account) and who were bound by the same identical representations. *Calhoun* is thus more closely aligned with *Rodriguez*, not *Griffith*.

Finally, Google fails to grapple with the question of efficiency with respect to expert discovery if this disputed question is not resolved through interlocutory review. Google simply

1   argues for delaying resolution until after trial on the theory that post-trial appeals, if successfully,

2   always require work upon remand. But a re-trial following a reversed ruling on an objection or

3   motion *in limine* is a far cry from re-starting expert discovery.

4          3.     *Whether the District Court was correct as a matter of law to presume that class*
     *members might have been exposed to disclosures contradicting Google's express*
5   *promises without an evidentiary showing that such disclosures exist.*

6         Google's Opposition does not dispute that "the Ninth Circuit instructs that a defendant must

7   present non-speculative evidence that an affirmative defense would require individualized inquiries

8   to defeat the predominance inquiry." Order at 6 (citing *Brown v. Google LLC*, 2022 WL 17961497,

9   at *18 (N.D. Cal. Dec. 12, 2022)) (relying on *True Health Chiropractic, Inc. v. McKesson Corp.*,

10  896 F.3d 923, 931-32 (9th Cir. 2018)); *see also* Mar. 28, 2025 *Calhoun* Hr'g Tr. 22:4-6 ("So the

11  Ninth Circuit does say, for consent to be actual, the disclosures must explicitly notify users of the

12  conduct at issue."); *Frasco v. Flo Health, Inc.*, 2025 WL 1433825, at *7 (N.D. Cal. May 19, 2025)

13  ("Speculation about events or issues for which a defendant has not offered evidence will not do")

14  (citing *Miles v. Kirkland's Stores Inc.*, 89 F.4th 1217, 1222 (9th Cir. 2024)). Instead, Google's sole

15  argument is that the Court did not speculate, but instead found that some extrinsic disclosures

16  informed Chrome users of the conduct at issue (contrary to the express promise in the Chrome

17  contract). Opp. at 13. But the Court's opinion never cited any disclosure in the record that expressly

18  informs any Chrome user that the at-issue promise was false; Plaintiffs contend that is because none

19  exists.

20        For example, Google cites Dkt. 1073-79 (Broome Ex. 51) as one of the disclosures

21  supposedly "explicitly notifying users of the conduct at issue." Opp. at 13. Exhibit 51 is an article

22  at lifehacker.com (published in 2014, long before the start of this class) asking which browser is

23  better for privacy. Its source of authority for "what information they get and what they do with that

24  information" is just a link to Google. The article also reports that the "amount of information

25  Google gets varies depending [on] the feature you use. . . It's a lot of data, but Google is absolutely

26  clear: none of it is personally identifying." Under no circumstances could this article put any

27  Chrome user on notice that Chrome will send personal information to Google if sync'd with an

28  account, contrary to Google's contractual promises.

PLAINTIFFS' REPLY ISO MOTION TO CERTIFY ORDER FOR IMMEDIATE INTERLOCUTORY APPEAL

The parties will present evidence at trial to determine whether and to what extent the record as it exists is sufficient to establish implied consent – questions which will guide expert discovery and trial. But it cannot be based on supposition. Compare *Torres v. Prudential Financial, Inc.,* where Judge Breyer evaluated defendants' submission of third-party sources that plaintiffs and class members might have been exposed to but concluded that none disclosed the challenged conduct in sufficient detail, as a matter of law. *Torres*, 2024 WL 4894289, at *7-8 (N.D. Cal. Nov. 26, 2024). Similarly, Judge Donato considered Google's (and other defendants') implied consent defense and would only consider the language of actual third-party disclosures; there was no speculation of whether others not in the record "might" give rise to implied consent. *Frasco*, 2025 WL 1433825, at *8. And last week Judge Seeborg excluded evidence of third-party disclosures from the implied consent inquiry entirely. *Rodriguez*, 3:20-cv-4688, Dkt. No. 587 at 8, 18.

4.     *Whether the District Court may take judicial notice of Google's deprecation of the Chrome Privacy Notice but simultaneously deny a request for judicial notice of the Privacy in Chrome pages that replaced the Chrome Privacy Notice.*

Under the Federal Rules of Evidence, a court may take judicial notice of facts that are "not subject to reasonable dispute" and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Plaintiffs sought judicial notice of a host of documents, including Google's landing page showing that the CPN had been deprecated while this case was on appeal, and a series of interlocking replacement disclosures called "Privacy in Chrome." (Dkt. No. 1059-1). One of the new disclosures continued to represent that when a Chrome user turns off sync, "you're also signed out of other Google services." Dkt. No. 1059-18 (Ex. D-12). Google's entire defense in this case hinges on the theory that when a third-party website uses "Google services," Chrome users are impliedly consenting to sending personal information to Google, despite the promises to the contrary in the CPN. But Exhibit D-12 says that by not sync'ing, the Chrome user is signed out of "other Google services." Thus, for any accountholder who might be subject to these new terms, the RJN appropriately informed the Court of the change of documents and the continuing disputed question of consent.

The Court denied the RJN in its entirety. Dkt. No. 1105, fn.1. For purposes of this Motion, Plaintiffs do not seek interlocutory review of that footnote. But later in the Order, the Court then

did take notice of the CPN deprecation – and denied Rule 23(b)(2) certification on that basis. It is the Court's decision to take notice of the deprecation, but not take notice of the Privacy Pages that replaced it, that warrants interlocutory review. Plaintiffs concede that they could find no authority directly on point for this unusual circumstance – and Google cited to none either. But the unfairness of the Court's decision warrants review—granting Google the benefit of a purported 'deprecation' while simultaneously denying Plaintiffs the ability to rebut it, particularly because it will be relevant to expert discovery whether and to what extent the CPN deprecation and the replacement "Privacy in Chrome" pages will be admissible.

5.      *Whether the District Court may, on class certification, resolve disputed merits questions regarding Google's obligations to existing Accountholders under the Chrome Privacy Notice in effect when they accepted the Terms of Service and deny Rule 23(b)(2) certification on the basis of that merits resolution.*

In its Opposition Brief, Google concedes that the Plaintiffs may continue to litigate the question of whether existing accountholders (i.e., those who became accountholders prior to the deprecation of the CPN) may continue to enforce the CPN. Opp. at 16; *see also id.* at 17 (arguing that the Order "was *not* based on any merits ruling about Plaintiffs' 'ongoing rights'" (emphasis in original)). This cannot be reconciled with the Court's actual ruling that subsequent to the deprecation, "plaintiffs have failed to identify any surviving promise in Google's various disclosures that evidence an ***ongoing promise*** to avoid collecting data that Google does, in fact, surreptitiously collect". Dkt. No. 1105 at 12.

It is of course black letter law that District Court may not resolve merits disputes at class certification. *Tyson Foods, Inc. v. Bouapheakeo,* 577 U.S. 442, 459 (2016). Google does not dispute this premise, and to avoid conceding error in the Order, Google now instead argues that the Court resolved no merits dispute, and Plaintiffs are free to litigate the question of whether they have "ongoing rights" under the CPN. Opp. at 16.

This is a peculiar situation, to be sure. If Google's new position is correct and Plaintiffs still have a live claim regarding ongoing rights under the CPN, don't all pre-deprecation accountholders also have claims? And leaving aside the class certification implications of Google's position, expert discovery cannot intelligently proceed without review of the Court's ruling and knowing whether

there are prospective rights (at least for legacy accountholders like Plaintiffs) under the CPN. It

would be far more efficient to review this ruling now before expert discovery begins.[2]

## III.    CONCLUSION

For the reasons stated in the Motion and this brief, Plaintiffs respectfully request that the

Court certify the June 9, 2025 Order for interlocutory appeal.

Dated: August 11, 2025                              Respectfully submitted,

**BLEICHMAR FONTI & AULD LLP**                     **SIMMONS HANLY CONROY LLP**

By:    */s/ Lesley E. Weaver*                       By:    */s/ Jay Barnes*
Lesley E. Weaver (SBN 191305)                       Jason 'Jay' Barnes (admitted *pro hac vice*)
Anne K. Davis (SBN 267909)                          Jayne Conroy (admitted *pro hac vice*)
Joshua D. Samra (SBN 313050)                        An Truong (admitted *pro hac vice*)
1330 Broadway, Suite 630                            112 Madison Avenue, 7th Floor
Oakland, CA 94612                                   New York, NY 10016
Tel.: (415) 445-4003                                Tel.: (212) 784-6400
Fax: (415) 445-4020                                 Fax: (212) 213-5949
*lweaver@bfalaw.com*                                *jaybarnes@simmonsfirm.com*
*adavis@bfalaw.com*                                 *jconroy@ simmonsfirm.com*
*jsamra@bfalaw.com*                                 *atruong@simmonsfirm.com*


Gregory S. Mullens (admitted *pro hac vice*)        Eric Johnson (admitted *pro hac vice*)
75 Virginia Road, 2nd Floor                         Jennifer 'Jenny' Paulson (admitted *pro hac vice*)
White Plains, New York 10603                        One Court Street
Tel.: (415) 445-4006                                Alton, IL 62002
*gmullens@bfalaw.com*                               Tel.: 618-693-3104
                                                    *ejohnson@simmonsfirm.com*
**DiCELLO LEVITT LLP**                              *jpaulson@simmonsfirm.com*


By:    */s/ David A. Straite*
David A. Straite (admitted *pro hac vice*)
Corban Rhodes (admitted *pro hac vice*)
485 Lexington Avenue, Suite 1001
New York, NY 10017

---

[2] Google argues that injunctive relief is not available for specific performance of the contract without a showing of inadequate legal remedy. Opp. at 17. But this Court has already rejected Google's argument in *Brown v. Google LLC*, 685 F. Supp. 3d 909, 933 (N.D. Cal. 2023) ("Google asks for summary judgment because plaintiffs are only seeking injunctive relief. Not so. Plaintiffs also seek equitable relief, including specific performance which has long been held 'a remedy associated with breach of contract.'" (citing *Pauma Band of Luiseno Mission Indians of Pauma & Yuima Reservation v. California*, 813 F.3d 1155, 1167 (9th Cir. 2015))); *id.* at 942 ("given the nature of Google's data collection, the Court is satisfied that money damages alone are not an adequate remedy. Injunctive relief is necessary to address Google's ongoing collection of users' private browsing data.").

Tel.: (646) 933-1000
*dstraite@dicellolevitt.com*
*crhodes@dicellolevitt.com*

Amy E. Keller (admitted *pro hac vice*)
Adam Prom (admitted *pro hac vice*)
Julia Veeser (admitted *pro hac vice*)
Ten North Dearborn St., Sixth Floor
Chicago, IL 60602
Tel.: (312) 214-7900
*akeller@dicellolevitt.com*
*aprom@dicellolevitt.com*
*jveeser@dicellolevitt.com*

## <u>ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)</u>

I, David Straite, attest that concurrence in the filing of this document has been obtained from the other signatories. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 11th day of August, 2025, at New York, New York.

   */s/ David Straite*              
David A. Straite
DiCello Levitt LLP

*Co-Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 11, 2025, I caused to be electronically filed the foregoing document using the CM/ECF system which will send notification of such filing to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List.

 /s/ *David Straite*
David A. Straite
DiCello Levitt LLP

*Co-Counsel for Plaintiffs*
