**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Stephen A. Broome (CA Bar No. 314605)
stephenbroome@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
Crystal Nix-Hines (CA Bar No. 326971)
crystalnixhines@quinnemanuel.com
Alyssa G. Olson (CA Bar No. 305705)
alyolson@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
Teuta Fani (admitted *pro hac vice*)
teutafani@quinnemanuel.com
Joseph H. Margolies (admitted *pro hac vice*)
josephmargolies@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Xi ("Tracy") Gao (CA Bar No. 326266)
tracygao@quinnemanuel.com
Carl Spilly (admitted *pro hac vice*)
carlspilly@quinnemanuel.com
1300 I Street NW, Suite 900
Washington D.C., 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

*Counsel for Defendant Google LLC*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| PATRICK CALHOUN, *et al.*, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>- v -<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 4:20-cv-05146-YGR-SVK<br>**GOOGLE LLC'S NOTICE OF MOTION AND MOTION TO DISMISS DORMANT CLAIMS**<br><br>The Honorable Yvonne Gonzalez Rogers<br>Courtroom: 1 – 4th Floor<br>Date: November 18, 2025<br>Time: 2:00 p.m.<br>Amended Complaint Filed: April 16, 2021<br>Trial Date: None Set |

# TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION ........................................................................1

ISSUE PRESENTED ..............................................................................................1

RELIEF REQUESTED ...........................................................................................1

I.      PRELIMINARY STATEMENT ...................................................................2

II.     BACKGROUND AND PROCEDURAL HISTORY ....................................3

     A.    Background .....................................................................................3

     B.    Relevant Procedural History ..........................................................4

III.    ARGUMENT ...............................................................................................5

     A.    Plaintiffs' Federal Wiretap Act Claim (Count One) Fails..............5

          1.    Websites Consented to Google's Receipt of the Data...................5

          2.    Google Received the Data in the Ordinary Course of Business ...................8

          3.    Plaintiffs Fail to Adequately Allege that Google Intercepted the Contents of Their Communications with Websites......................................10

     B.    Plaintiffs' Invasion of Privacy Claim (Count Six) Fails .........................13

     C.    Plaintiffs' Quasi-Contract Claim for Restitution and Unjust Enrichment (Count Ten) Fails .....................................................................15

     D.    Plaintiffs' Cal. Penal Code § 502 (CDAFA) Claim (Count Twelve) Fails.............17

     E.    Plaintiffs' Claim for Punitive Damages (Count Fifteen) Fails................20

     F.    Plaintiffs Claim for Declaratory Relief (Count Sixteen) Fails ..............20

IV.    CONCLUSION ...........................................................................................21

# TABLE OF AUTHORITIES

**Page**

**Cases**

*AdTrader, Inc. v. Google LLC*,
    2018 WL 3428525 (N.D. Cal. July 13, 2018) ................................................................ 16

*Ahringer v. LoanDepot, Inc.*,
    715 F. Supp. 3d 1274 (C.D. Cal. 2024) .................................................................... 13

*Anderson v. Apple Inc.*,
    500 F. Supp. 3d 993 (N.D. Cal. 2020) ...................................................................... 6

*Andrews v. Sirius XM Radio Inc.*,
    932 F.3d 1253 (9th Cir. 2019) ................................................................................. 19

*Baghikian v. Providence Health & Servs.*,
    715 F. Supp. 3d 1265 (C.D. Cal. 2024) .................................................................... 6

*Brodsky v. Apple Inc.*,
    445 F. Supp. 3d 110, 134 (N.D. Cal. 2020) ............................................................ 16

*Brown v. Google LLC*,
    685 F. Supp. 3d 909 (N.D. Cal. 2023) ................................ 5, 7, 8, 9, 11, 12, 14, 15, 17, 18, 19

*Bui-Ford v. Tesla, Inc.*,
    2024 WL 694485 (N.D. Cal. Feb. 20, 2024) ........................................................... 19

*In re Carrier IQ, Inc. Consumer Privacy Litig.*,
    78 F. Supp. 3d 1051 (N.D. Cal. 2015) ..................................................................... 10

*Chance v. Avenue A, Inc.*,
    165 F. Supp. 2d 1153 (W.D. Wash. 2001) ............................................................... 5

*Cohen v. Casper Sleep, Inc.*,
    2018 WL 3392877 (S.D.N.Y. July 12, 2018) .......................................................... 5

*Collins v. Conifer Value-Based Care*,
    2025 WL 1140788 (C.D. Cal. Feb. 28, 2025) ......................................................... 13

*Cook v. GameStop, Inc.*,
    689 F. Supp. 3d 58 (W.D. Pa. 2023) ....................................................................... 13

*Cottle v. Plaid Inc.*,
    536 F. Supp. 3d 461 (N.D. Cal. 2021) ..................................................................... 20

*Cousin v. Sharp Healthcare*,
    681 F. Supp. 3d 1117 (S.D. Cal. 2023) .................................................................... 15

*Deras v. Volkswagen Grp. of Am., Inc.*,
 2018 WL 2267448 (N.D. Cal. May 17, 2018) ............................................................. 16

*Doe v. Cnty. of Santa Clara*,
 2024 WL 3346257 (N.D. Cal. July 8, 2024) ............................................................... 20

*Doe v. Meta Platforms, Inc.*,
 690 F. Supp. 3d 1064 (N.D. Cal. 2023) ..................................................................... 18

*Doe v. Tenet Healthcare Corp.*,
 2025 WL 1635956 (E.D. Cal. June 9, 2025) ............................................................... 20

*In re DoubleClick Privacy Litig.*,
 154 F. Supp. 2d 497 (S.D.N.Y. 2001) .......................................................................... 5

*Facebook, Inc. v. Power Ventures, Inc.*,
 2010 WL 3291750 (N.D. Cal. July 20, 2010) ............................................................. 17

*Folgelstrom v. Lamps Plus, Inc.*,
 195 Cal. App. 4th 986 (2011), *as modified* (June 7, 2011) ...................................... 15

*Gerstle v. Am. Honda Motor Co.*,
 2017 WL 2797810 (N.D. Cal. June 28, 2017) ........................................................... 16

*Gonzales v. Uber Techs., Inc.*,
 305 F. Supp. 3d 1078 (N.D. Cal. 2018) ..................................................................... 11

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
 806 F.3d 125 (3d Cir. 2015) ....................................................................................... 7

*In re Google Inc. Gmail Litig.*,
 2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) ............................................................. 7

*In re Google, Inc. Priv. Pol'y Litig.*,
 2013 WL 6248499 (N.D. Cal. Dec. 3, 2013) ............................................................... 9

*Griffith v. TikTok, Inc.*,
 2024 WL 5279224 (C.D. Cal. Dec. 24, 2024) ........................................................... 12

*Gutierrez v. Converse Inc.*,
 2023 WL 8939221 (C.D. Cal. Oct. 27, 2023) ............................................................. 17

*Hammerling v. Google LLC*,
 615 F. Supp. 3d 1069 (N.D. Cal. 2022) ............................................................... 14, 15

*Heiting v. Taro Pharm. USA, Inc.*,
 709 F. Supp. 3d 1007 (C.D. Cal. 2023) ................................................................. 19, 20

*Hernandez v. Hillsides, Inc.*,
 47 Cal. 4th 272 (2009) ............................................................................................... 14

*Hill v. Nat'l Collegiate Athletic Assn.*,
    7 Cal. 4th 1 (1994)..................................................................................................... 13, 14

*Hilliard v. A. H. Robins Co.*,
    148 Cal. App. 3d 374 (1983)............................................................................................ 20

*Hubbard v. Google LLC*,
    2024 WL 3302066 (N.D. Cal. July 1, 2024) ........................................... 13, 14, 15, 16

*Hughes v. Vivint, Inc.*,
    2024 WL 5179916 (C.D. Cal. July 12, 2024) ............................................................ 12

*Ingrao v. AddShoppers, Inc.*,
    2024 WL 4892514 (E.D. Pa. Nov. 25, 2024)....................................................... 19, 20

*Jensen v. Quality Loan Serv. Corp.*,
    702 F. Supp. 2d 1183 (E.D. Cal. 2010) ....................................................................... 20

*Karnazes v. Am. Airlines, Inc.*,
    2021 WL 179591 (N.D. Cal. Jan. 19, 2021) .............................................................. 20

*King v. Hard Rock Cafe Int'l (USA), Inc.*,
    2025 WL 1635419 (E.D. Cal. June 9, 2025)................................................................ 12

*Kishnani v. Royal Caribbean Cruises Ltd.*,
    2025 WL 1745726 (N.D. Cal. June 24, 2025) ............................................................ 12

*Klein v. Chevron U.S.A., Inc.*,
    202 Cal. App. 4th 1342 (2012).................................................................................... 15

*Lakes v. Ubisoft, Inc.*,
    2025 WL 1036639 (N.D. Cal. Apr. 2, 2025) ................................................................ 7

*Luna v. Google LLC*,
    Case No. 24CV434093 (Cal. Super. Ct. May 1, 2025) ............................................... 19

*In re Meta Pixel Healthcare Litig.*,
    647 F. Supp. 3d 778 (N.D. Cal. 2022) ..................................................................... 5, 6

*Meta Platforms, Inc. v. BrandTotal Ltd.*,
    605 F. Supp. 3d 1218 (N.D. Cal. 2022) ............................................................... 17, 18

*New Show Studios LLC v. Needle*,
    2014 WL 2988271 (C.D. Cal. June 30, 2014)............................................................. 18

*In re Nickelodeon Consumer Priv. Litig.*,
    827 F.3d 262 (3d Cir. 2016)........................................................................................... 5

*Nowak v. Xapo, Inc.*,
    2020 WL 6822888 (N.D. Cal. Nov. 20, 2020)............................................................ 19

*Popa v. Microsoft Corp.*,
— F.4th —, 2025 WL 2448824 (9th Cir. Aug. 26, 2025) ................................................ 14

*Ringler v. J.M. Smucker Co.*,
2025 WL 1674390 (C.D. Cal. May 13, 2025) ................................................................ 6

*Rodriguez v. Google LLC*,
2021 WL 2026726 (N.D. Cal. May 21, 2021) ...................................................... 5, 6, 19

*Rutherford Holdings, LLC v. Plaza Del Rey*,
223 Cal. App. 4th 221 (2014) ...................................................................................... 16

*Shah v. Cap. One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) ....................................................................... 20

*Stang v. Teal Drones, Inc.*,
2023 WL 11956370 (N.D. Cal. Mar. 24, 2023) ........................................................... 16

*Sussman v. Am. Broad. Companies, Inc.*,
186 F.3d 1200 (9th Cir. 1999) ................................................................................... 6, 7

*Thomas v. Papa Johns Int'l, Inc.*,
2024 WL 2060140 (S.D. Cal. May 8, 2024) ................................................................ 14

*Thomas v. Papa Johns Int'l, Inc.*,
2025 WL 1704437 (9th Cir. June 18, 2025) ................................................................ 14

*Tsai v. Wang*,
2017 WL 2587929 (N.D. Cal. June 14, 2017) ............................................................. 16

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ................................................................. 12, 13

*Zak v. Bose Corp.*,
2019 WL 1437909 (N.D. Ill. Mar. 31, 2019) ................................................................ 7

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014) ........................................................... 10, 11, 12, 13

**Statutes**

18 U.S.C. § 2510(4) ........................................................................................... 9, 10

18 U.S.C. § 2510(5)(a) .............................................................................................. 8

18 U.S.C. § 2510(8) ................................................................................................. 10

18 U.S.C. § 2510(15) ................................................................................................. 9

18 U.S.C. § 2511(1) ............................................................................................. 8, 9

18 U.S.C. § 2511(2)(d) ........................................................................................................ 5, 7

Cal. Penal Code § 502(e)(1) ................................................................................................ 18

Cal. Penal Code § 502(b)(1) ................................................................................................ 17

Cal. Penal Code § 502(c)(2) ................................................................................................ 17

Cal. Penal Code § 502(c)(6) ................................................................................................ 17

Cal. Penal Code § 502(c)(7) ................................................................................................ 17

Cal. Penal Code § 502(c)(8) ................................................................................................ 18

**Rules**

Fed. R. Civ. P. 9(b) .............................................................................................................. 6

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE THAT, on November 18, 2025, at 2:00 p.m., before the Honorable Yvonne Gonzalez Rogers of the United States District Court, Northern District of California at the Oakland Courthouse, Courtroom 1, 4th Floor, 1301 Clay Street, Oakland, CA 94612, Defendant Google LLC will and hereby does move for an order dismissing Plaintiffs' six Dormant Claims: violation of the Federal Wiretap Act (Count One), invasion of privacy (Count Six), quasi-contract (Count Ten), violation of Cal. Penal Code § 502 (CDAFA) (Count Twelve), punitive damages (Count Fifteen), and declaratory relief (Count Sixteen).

Google's motion is based on this Notice of Motion and Motion; the attached Memorandum of Points and Authorities; the pleadings, papers, and other documents on file in this action; and such other evidence and argument presented to the Court at or prior to any hearing in this matter.

## ISSUE PRESENTED

Whether the Court should dismiss the six Dormant Claims in Plaintiffs' First Amended Complaint ("FAC") because they fail to state a claim upon which relief can be granted.

## RELIEF REQUESTED

Google respectfully requests that the Court dismiss the six Dormant Claims with prejudice.

## I.    PRELIMINARY STATEMENT

The Court is deeply familiar with this case after over five years of litigation. Plaintiffs brought a hodgepodge of sixteen claims alleging that a Google privacy notice they admit they never read somehow tricked them into thinking that using Google's Chrome browser in its *default* mode would block routine data transmissions that enable Google's analytics, advertising, and other popular web services like Google Maps and Google Fonts. Now before the Court are Plaintiffs' six claims that were set aside earlier in the case and have not previously been addressed ("Dormant Claims").[1] None is plausibly alleged.

*First*, the federal Wiretap Act "interception" claim fails because (i) one party's consent is a complete defense, and the websites that choose to use Google services plainly consented to Google's receiving the at-issue data; (ii) Google received the data in the ordinary course of business, rendering any alleged "interceptions" lawful; and (iii) Plaintiffs do not plausibly allege that Google intercepted the "contents" of a communication, as the statute requires.

*Second*, the invasion-of-privacy claim fails because Plaintiffs fail to allege a reasonable expectation of privacy in the data or conduct by Google that constitutes an egregious breach of social norms.

*Third*, the quasi-contract claim fails because Plaintiffs have sued Google for breach of contract and do not allege that contract is invalid or unenforceable.

*Fourth*, the California Comprehensive Computer Data Access and Fraud Act ("CDAFA") claim fails because Plaintiffs do not plausibly allege that (i) Google circumvented technological barriers, which is required to show the collection was "without permission"; (ii) Google "accessed" their computers; (iii) they suffered the type of damage or loss required for statutory standing; or (iv) cookies constitute a "contaminant."

---

[1]    The Dormant Claims are violation of the Federal Wiretap Act for unauthorized interception (Count One), invasion of privacy (Count Six), quasi-contract (Count Ten), violation of Cal. Penal Code § 502 (CDAFA) (Count Twelve), punitive damages (Count Fifteen), and declaratory relief (Count Sixteen). *See* Dkt. 142 at 7–8.

*Fifth*, the claim for punitive damages fails because there is no separate cause of action for punitive damages.

*Finally*, the declaratory relief claim fails because it is duplicative of Plaintiffs' other claims.

Because these defects are legal, not factual, amendment would be futile. The Court should dismiss Plaintiffs' six Dormant Claims with prejudice.[2]

## II.    BACKGROUND AND PROCEDURAL HISTORY

### A.    Background

Plaintiffs are Google account holders and users of Google's Chrome browser. Chrome offers a Sync feature allowing users to conveniently store certain categories of information—*e.g.*, passwords/logins, payment cards, bookmarks, tabs, Chrome history, and auto-fill information—in their Google Accounts so that they "may access it when [they] sign in and sync to Chrome on other computers and devices." *See* Dkt. 2 at Exs. 17–33 (historical CPNs).  Plaintiffs allege they entered a "contract" with Google when they signed up for their Google accounts and "chose not to 'Sync' their browsers with their Google accounts while browsing the web." Dkt. 162-3 ("FAC") ¶ 1.

Google separately provides popular services to websites, including Google Analytics, Ads, Maps, Fonts, and Captcha (the "Services"). *See* FAC ¶ 148. Plaintiffs allege that when a Chrome user visits a website that uses one or more of the Services, Chrome sends Google five data categories regardless of whether a user has enabled Sync: (1) "cookie identifiers"; (2) "GET requests"; (3) "POST communications"; (4) "IP address and User-Agent information"; and (5) "x-client-data identifier[s]" (the "Data"). *Id.* ¶ 141. Websites choosing to enable the Services intend to send the Data to Google when a user visits their sites. *See id.* ¶ 129 ("[T]he server for the website with which the user is exchanging a communication will send a set of instructions to Chrome, commanding Chrome with source code . . . provided by Google and specifically designed to command the Chrome [browser] to contemporaneously re-direct the precise content of the GET or POST part of the

---

[2]  As further detailed where applicable below, Google acknowledges that in this action and the related *Brown* action, either Judge Koh or this Court has rejected or declined to adopt arguments similar to some of those Google raises in this motion. Google raises the arguments again to the extent (i) new allegations or authority dictate a different outcome or (ii) the prior ruling rested on a mistaken application of law that Google respectfully takes the opportunity to clarify here.

communication to Google . . . ."); *id.* ¶ 130 (website developers place Google's source code in the website's header), *id.* ¶ 140 (website developers deploy Google source code on their websites). Google's Privacy Policy discloses that Google collects the Data when users visit websites that use the Services. *See* Dkt. 2 at Exs. 7–16 (historical Privacy Policies). Google also discloses how it uses the Data. *Id.*

### B. Relevant Procedural History

Plaintiffs filed the Complaint on July 27, 2020, asserting sixteen claims against Google. Dkt. 1. The case was assigned to Judge Lucy Koh. On September 18, 2020, Judge Koh directed the parties to select ten claims to "litigate[] through trial … after which the Court and the parties can discuss what to do about the remaining [six] claims." Dkt. 51. The parties jointly selected ten claims to litigate ("Selected Claims") and proceeded to motion-to-dismiss briefing. *See* Dkt. 57.

On March 17, 2021, Judge Koh granted Google's motion to dismiss four of the Selected Claims,[3] and denied Google's motion as to the remaining six Selected Claims.[4] The Dormant Claims were not addressed. The case was transferred to this Court on January 21, 2022, following Judge Koh's confirmation to the Ninth Circuit. Dkt. 471. The parties litigated the remaining Selected Claims through fact discovery and class certification.

On June 9, 2025, the Court denied class certification. Dkt. 1105. On July 14, 2025, the Court instructed the parties that the six Dormant Claims should be reintegrated into the case or dismissed as appropriate, and ordered the parties to confer on a schedule for Google's anticipated motion to dismiss those claims. *See* Dkt. 1112.

---

[3]  The Court dismissed the following claims: Unauthorized disclosure under the Wiretap Act (Count Two), unauthorized access under the Stored Communications Act ("SCA") (Count Three), unauthorized disclosure under the SCA (Count Four), and violation of the Computer Fraud and Abuse Act ("CFAA") (Count Eleven).

[4]  The surviving claims are the following: breach of contract (Count Eight), breach of implied covenant of good faith and fair dealing (Count Nine), intrusion upon seclusion (Count Seven), statutory larceny (Count Thirteen), UCL (Count Fourteen), and CIPA (Count Five).

1    **III.    ARGUMENT**

2        **A.    Plaintiffs' Federal Wiretap Act Claim (Count One) Fails**

3            **1.    Websites Consented to Google's Receipt of the Data**

4        The Wiretap Act is a one-party-consent statute, and "the consent of one party is a complete

5    defense to liability." *Brown v. Google LLC*, 685 F. Supp. 3d 909, 933 (N.D. Cal. 2023) (Gonzalez

6    Rogers, J.); 18 U.S.C. § 2511(2)(d). The intended recipients of Plaintiffs' alleged communications—

7    websites using the Services—plainly consented to Google's receipt of the Data. Indeed, the purpose

8    of installing Google code is to send the Data to Google *to obtain the benefit of those Services*.

9    *See* FAC ¶¶ 129–30, 140. It is therefore unremarkable that courts treat developers' installation of

10   web services as creating a presumption of consent to sending the data necessary for those services

11   to the service provider. *See, e.g.*, *Rodriguez v. Google LLC*, 2021 WL 2026726, at *5–6 (N.D. Cal.

12   May 21, 2021) (Google not liable under Wiretap Act for intercepting app activity data because

13   developers installed Google's code for the purpose of transmitting the data to Google and to receive

14   Google's Services); *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 274 (3d Cir. 2016)

15   (dismissing wiretapping claim where "Google was either a party to all communications with the

16   plaintiffs' computers or was permitted to communicate with the plaintiffs' computers by Viacom,

17   who was itself a party to all such communications").[5]

18       Plaintiffs' attempt to circumvent the website developer's unambiguous consent through

19   allegations of "fraudulent omission" (FAC ¶ 282)—*i.e.*, Google's alleged concealment of its

20   promises to users in the Chrome Privacy Notice ("CPN")—is not credible and fails for three reasons.

21

22   _____

     [5]   *See also In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 796 (N.D. Cal. 2022) (no

23   Wiretap Act liability because "healthcare providers who configured [Meta's code] on their websites
     presumably consented to Meta's receipt of the information"); *Cohen v. Casper Sleep, Inc.*, 2018 WL

24   3392877, at *1–3 (S.D.N.Y. July 12, 2018) (dismissing Wiretap Act claims where "[h]undreds of
     online retailers entered into voluntary partnerships with [an activity tracking company] to insert [its]

25   Code into their websites"); *In re DoubleClick Privacy Litig.*, 154 F. Supp. 2d 497, 510–11 (S.D.N.Y.
     2001) ("find[ing] it implausible to infer that the Web sites have not authorized DoubleClick's [n.k.a.

26   Ad Manager] access" since "the very reason clients hire DoubleClick is to target advertisements
     based on users' demographic profiles"); *Chance v. Avenue A, Inc.*, 165 F. Supp. 2d 1153, 1162

27   (W.D. Wash. 2001) ("It is implicit in the web pages' code instructing the user's computer to contact
     [defendant] . . . that the web pages have consented to [defendant]'s interception of the

28   communication between them and the individual user.").

_____

*First*, it improperly conflates the developers' consent with users' consent. The former does not rise or fall with the latter.[6]  As Judge Seeborg explained in rejecting a similar argument, where website developers "knowingly agree" that Google will receive certain data from their visitors and plaintiffs "do not argue developers somehow misapprehend the product's general function or purpose," consent is not negated just because "that collection [does not] comport[] with [users'] individual privacy expectations."  *Rodriguez*, 2021 WL 2026726, at *5.  Simply stated, given that website developers unambiguously intended to send the Data to Google, FAC ¶¶ 129–30, 140, it is facially implausible to argue that their transmission to Google was unauthorized. *See Baghikian v. Providence Health & Servs.*, 715 F. Supp. 3d 1265, 1270 (C.D. Cal. 2024) ("[A] court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations").

*Second*, even if credited, Plaintiffs fail to plead with particularity the "circumstances constituting fraud or mistake." *See* Fed. R. Civ. P. 9(b). To allege a fraud by omission, Plaintiffs must show either that the omission contradicted a representation made by the defendant or that the defendant was obligated to disclose the fact, *Ringler v. J.M. Smucker Co.*, 2025 WL 1674390, at *6 (C.D. Cal. May 13, 2025), and actual reliance, *Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1017 (N.D. Cal. 2020). Here, Plaintiffs have not: (1) identified any contrary representations Google made to any website developers; (2) alleged that Google was obligated to specifically bring the CPN's terms (which were public) to website developers' attention; or (3) alleged that the purported "promise" to Plaintiffs was material to the websites' consent, as is necessary to establish reliance.[7]

---

[6]  This is particularly so given that Plaintiffs' theory that Google "defrauded" website developers is not based on affirmative misrepresentations that Google allegedly made to developers; rather, it rests solely on the flawed premise that Google failed to tell website developers that it had allegedly made promises to users in the CPN. FAC ¶ 282. In other words, Plaintiffs offer no basis to conclude that developers would expect that Google does not receive the Data from ordinary Chrome users in the first place.

[7]  The Wiretap Act's "crime-tort" exception to the consent exception does not apply here because the communications at issue are not "intercepted for the purpose of committing any criminal or tortious act." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 796. "[T]he focus [of the Wiretap Act's crime-tort exception] is not upon whether the interception itself violated another law; it is upon whether the purpose for the interceptions—its intended use—was criminal or tortious." *Sussman v. Am. Broad. Companies, Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999) (citation omitted);

*Third*, even if Plaintiffs had plausibly and particularly alleged that Google "defrauded" website developers, Google's actions would not be actionable under the Wiretap Act. *Cf. In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 144 (3d Cir. 2015) ("The Wiretap Act is a wiretapping statute, and just because a scenario sounds in fraud or deceit does not mean it sounds in wiretapping."); *Zak v. Bose Corp.*, 2019 WL 1437909, at *3 (N.D. Ill. Mar. 31, 2019) ("a defendant is a 'party' to the communication . . . even if the defendant became a participant 'through a fraud in the inducement'"); *In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *14 n.11 (N.D. Cal. Mar. 18, 2014) ("consent for purposes of contract law is distinct from consent for purposes of the Wiretap Act.").

In sum, Plaintiffs' allegation that websites did not consent to Google's receiving Data from ordinary Chrome users is not plausible, and the Wiretap Act claim should be dismissed.

This Court's decision in the related *Brown* case does not change that conclusion. *See Brown*, 685 F. Supp. 3d at 933. *Brown* involved users who—unlike Plaintiffs here—affirmatively selected a *privacy feature*, Chrome's Incognito mode. As the Court recently noted, this case is "not *Brown*. . . . [H]ow people think about using searches in browsers is very different than clicking on a button and saying you're going Incognito." Dkt. 1103 (Mar. 28, 2025 Hr'g Tr.) at 13:20–23. Indeed, it is "common knowledge" that Google receives browsing information when using Chrome in its default mode. *See Brown*, No. 4:20-cv-03664, Dkt. 886 ¶ 163 (N.D. Cal.) ("It is common knowledge that Google collects information about the web-browsing activity of users who are <u>not</u> in 'private browsing mode.'"). Plaintiffs do not allege they used any privacy mode or setting in Chrome, or

_____

18 U.S.C. § 2511(2)(d); *see also In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *18 n.13 (N.D. Cal. Mar. 18, 2014) (the exception applies only where the "primary motivation or a determining factor in [the interceptor's] actions has been to injure plaintiffs tortiously" (citation omitted)). Plaintiffs do not allege that Google acted with "the purpose of facilitating some further impropriety, such as blackmail." *Sussman*, 186 F.3d at 1202. Instead, they allege "Google's motivation…was to increase user engagement and increase revenue for Google." See, e.g., FAC ¶ 97. This is insufficient to bring Google's conduct under the crime-tort exception. *Lakes v. Ubisoft, Inc.*, 2025 WL 1036639, at *7 (N.D. Cal. Apr. 2, 2025) (rejecting the crime-tort exception where defendant's motivation was "improv[ing] the effectiveness of its and Meta's advertising and marketing"); *Gmail*, 2014 WL 1102660, at *18 n.13 ("the tort or crime exception cannot apply where the interceptor's 'purpose has plainly not been to perpetuate torts on millions of Internet users, but to make money.'").

took any other steps to protect their privacy online. Rather, they allege their unsupported belief that using Chrome in its *default state* would prevent websites from sending the Data to Google to provide Services. *See, e.g.*, FAC ¶ 46 ("Syncing has never been a default setting during the Relevant Period."), *id.* ¶ 162 (Plaintiff Calhoun browsing in default state "per his usual practice"), *id.* ¶ 176 (Plaintiff Crespo browsing while signed-in to her Google Account "per her usual practice"). It is precisely the situation where the Court previously found website developers "had to consent to Google collecting data *generally*" in order to use the Services.  *Brown*, 685 F. Supp. 3d at 933.[8]

### 2.    Google Received the Data in the Ordinary Course of Business

Plaintiffs' Wiretap Act claim independently fails because—based on the facts alleged—Google received the intercepted Data in the ordinary course of its business. *See* 18 U.S.C. §§ 2510(5)(a) & 2511(1) (no Wiretap Act liability for interceptions using technology "being used by a provider of wire or electronic communication service in the ordinary course of business").

The alleged intercepting "device" here is Google source code that website publishers choose to install on their sites to enable Google's Services. *See* FAC ¶ 277(f).  Plaintiffs allege "source code provided by Google [is] ***specifically designed to command [] Chrome to contemporaneously re-direct the precise content of the GET or POST part of the communication to Google***." *Id.* ¶ 129 (emphasis added). Plaintiffs further acknowledge that websites "deploy" this code for the express purpose of sending the Data to Google to enable the Services. *Id.* ¶¶ 98–104, 140.[9]   The only

---

[8]    Google acknowledges that Judge Koh previously rejected a similar website-consent argument challenging Plaintiffs' claims under another section of the Wiretap Act and the Stored Communications Act. Dkt. 142 at 18. Judge Koh found that "even assuming that Google has established that websites generally consented to the interception of their communications with users, Google does not demonstrate that websites consented to, or even knew about, the interception of their communications with users who were using Chrome without sync." *Id.*  Respectfully, Judge Koh's decision in that early stage of the case failed to recognize that "Chrome without sync" is just Chrome. And as this Court recently stated, this case is "generic," "it's using Chrome," "[i]t's using the internet, so to speak." Dkt. 1103 (Mar. 28, 2025 Hr'g Tr.) at 13:16–21.

[9]    Indeed, as a "pioneer" in the online analytics field, Google's Services permit Google's website customers to "understand the factors that contribute to higher engagement and use product analytics [to] measure what features affect user behavior." FAC ¶¶ 101, 104. As Plaintiffs allege, "up to 86 percent of popular websites" use the Services in order to gain these insights. *Id.* ¶ 129.

1  reasonable inference from these allegations is that the Google source code (and related

2  infrastructure) is used in the ordinary course of Google's advertising and analytics businesses.

3      In *Brown*, the Court found that the application of the ordinary course of business exception

4  turned on a factual dispute because a "second GET request" to Google—although "essential for

5  Google's services, like Analytics, to work"—was not indisputably "necessary to 'facilitate a

6  transmission of a communication' *between a user and a third-party website*,'" which is the purpose

7  of a browser. 685 F. Supp. 3d at 934–35 (emphasis added) (citation omitted).[10] Respectfully, that

8  conclusion misinterprets the law. Under the Wiretap Act's express text, the controlling question is

9  whether the intercepting "device" (*i.e.*, the code directing the browser to send Data to Google) is

10 "being used by a provider of a wire or electronic communication service in the ordinary course of

11 business."[11] 18 U.S.C. §§ 2510(4), (5)(a) & 2511(1); *In re Google, Inc. Priv. Pol'y Litig.*, 2013 WL

12 6248499, at *10–11 (N.D. Cal. Dec. 3, 2013) ("[T]he 'ordinary course of business' exception is not

13 limited to actions necessary to providing the [ECS] at issue," but provides "broad immunity" for all

14 "customary and routine business practices."). Here, it cannot reasonably be disputed that the

15 "device" at issue is being used in the ordinary course of business.

16     The reasoning in *Brown* cannot save Plaintiffs' claims because while *Chrome* operates (in

17 part) to "'facilitate a transmission of a communication between a user and a third-party website,'"

18 *Brown*, 685 F. Supp. 3d at 935, Plaintiffs fail to plausibly allege that Chrome is the intercepting

19 "device" here.  Plaintiffs do not allege, for example, that Chrome automatically sends every user

20

21 [10]   The cases the Court relied on in *Brown* are distinguishable. In *In re Google Assistant Privacy
Litigation*, the alleged interceptions were "the product of a defect," 457 F. Supp. 3d 797, 819 (N.D.

22 Cal. 2020), not the intended purpose of the code, which is the case here. And in *Matera v. Google
Inc.*, the court found that scanning emails to serve targeted advertising outside of the email product

23 does not "facilitate the provision of email services, [and is] not an incidental effect of providing

24 those services."  2016 WL 8200619, at *14 (N.D. Cal. Aug. 12, 2016). Here, by contrast, the
websites incorporate Google's code into their sites' own code for the express purpose of learning

25 information about, or providing information to, website visitors.

26 [11]   The Wiretap Act defines electronic communication service ("ECS") as "any service which
provides to users thereof the ability to send or receive … electronic communications." 18 U.S.C. §

27 2510(15). If, as Plaintiffs allege, HTTP requests are "electronic communications" under the Wiretap
Act, then website developers use the Services to send and receive electronic communications

28 to/from Google.

"communication" with websites to Google.  Rather, they allege that, when users visit sites using Google's Services, the code embedded in the websites (not in Chrome) to support those Services causes the Data to be sent to Google.  And there can be no genuine dispute that the *code*'s primary function is to provide web services in the ordinary course of Google's (and the websites') business. Chrome on its own is no more an intercepting "device" than a standard telephone; both support communications, but neither will automatically transmit those communications to a third-party absent a separate device (*i.e.*, the "wiretap" from which the Wiretap Act gets its name).[12]  Here, that alleged "wiretap" (inapt as the comparison may be) can only be the code, not the browser.

Indeed, to find that ordinary browsers, or code supporting third party web services, constitute wiretapping would effectively criminalize the modern internet. The ordinary course of business exception exists to avoid this result.

### 3.   Plaintiffs Fail to Adequately Allege that Google Intercepted the Contents of Their Communications with Websites

Plaintiffs' Wiretap Act claim fails for another reason. The Wiretap Act "only applies to the interception of the 'contents' of a communication." *In re Carrier IQ, Inc. Consumer Privacy Litig.*, 78 F. Supp. 3d 1051, 1082 (N.D. Cal. 2015) (citing 18 U.S.C. § 2510(4)). "Contents" means "information concerning the substance, purport, or meaning of th[e] communication," 18 U.S.C. § 2510(8)—in other words, "a person's intended message to another," *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). Nowhere does any Plaintiff allege that *they* actually conveyed any "intended message[s]" to another person. Instead, they allege certain generalized information about their computer, browser, internet connection, or browsing activity was transmitted to Google's servers.

Plaintiffs broadly allege five categories of information potentially contained within GET or POST requests qualify as "contents": "text of GET requests," "text of user search queries," "text of

---

[12]   Plaintiffs also allege that their computers, Google's servers, the servers of websites that use Google's Services, and cookies are also intercepting "devices." FAC ¶ 277(a)–(e). The FAC, however, includes no facts explaining how any of these technologies cause a transmission to Google. Each is simply reacting to instructions in the code. *See, e.g.*, FAC ¶ 124 ("When a user [visits a website], Chrome determines whether it [sends] a GET or POST request based on the source code within . . . the current website with which the user is communicating.")

1    specific buttons that users click," "text of information that users submit in forms," and "the general

2    subject of communications that non-Google websites send back to users in response to search

3    queries and requests for information [*i.e.*, the webpages viewed]."[13] FAC ¶ 276. This information is

4    entirely contained within routine HTTP requests.

5        The Ninth Circuit has held that routine internet transmissions (*i.e.* HTTP requests)

6    containing "the address of the webpage from which the request was sent" simply "identif[y] the

7    location of a webpage a user is viewing on the internet," and do not constitute contents. *Zynga*, 750

8    F.3d at 1102, 1107; *see also Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1084 (N.D. Cal.

9    2018) ("[T]he url of the webpage the individual was viewing [is] not the contents of a

10   communication when that information is automatically generated when the individual clicks an app

11   or game icon."). Each of the GET requests Plaintiffs identify in the FAC confirms that Google

12   received only record information that the Ninth Circuit held is not contents.[14] *See* FAC ¶¶ 122, 146,

13   164–65, 168, 170, 177–79, 184–85.

14       Moreover, the Ninth Circuit has distinguished even a detailed URL—*i.e.*, the URL of a

15   specific page within a site—from a URL that contains "the specific search terms the user had

16   communicated" to a search engine. *Zynga*, 750 F.3d at 1108. And while Plaintiffs allege that

17

---

18   [13]  Plaintiffs do not allege that the remaining Data elements—"cookie identifiers," "IP address and
     User-Agent information," and "x-client-data identifier[s]"—are "contents of a communication."
19   *See* FAC ¶ 276 (not listing these identifiers as allegedly intercepted information). Nor could they
     under well-settled law. *See Zynga*, 750 F.3d at 1107 (an "ID [that] identifies a . . . user and so
20   functions as a 'name' or a 'subscriber number or identity'" is not contents); *see also Brown*, 685
     F. Supp. 3d at 935 ("IP addresses and their user-agents[] is the record, not substance, of the
21   communication").

22   [14]  In *Zynga*, the plaintiffs argued that the webpage the user was visiting could reveal the contents
23   of a communication because "if a Facebook user who was gay and struggling to come out of the
     closet was viewing the Facebook page of a gay support group, and then clicked on an ad, the
24   advertiser would know . . . that s/he was viewing the Facebook page of a gay support group just
     before navigating to their site." 750 F.3d at 1108. Similarly here, Plaintiffs allege that GET requests
25   contain "content" because if a hypothetical Chrome user accessed "an article on mental health
     during the Covid-19 pandemic," Google would know that the user was viewing the "specific
26   article." FAC ¶¶ 143–48. The Ninth Circuit rejected this argument in *Zynga*, finding that "specific
     information regarding a webpage that a user previously viewed," was still just "the address of the
27   Facebook webpage the user was viewing," (*i.e.*, record information) and not the contents of the
28   communication.

Google's Services *may* collect "user search queries," none of them alleges that *they* ran any search queries on sites using Google's Services or that Google collected such search queries *from them*. *See Griffith v. TikTok, Inc.*, 2024 WL 5279224, at *10 (C.D. Cal. Dec. 24, 2024) (dismissing Wiretap Act claim where plaintiffs failed to identify "any specific Event Information or Content Information collected ***from any Plaintiff***" (emphasis added)); *Hughes v. Vivint, Inc.*, 2024 WL 5179916, at *5 (C.D. Cal. July 12, 2024) (dismissing claims where "[p]laintiff does not clearly allege what personalized information of hers was actually collected"); *Kishnani v. Royal Caribbean Cruises Ltd.*, 2025 WL 1745726, at *4 (N.D. Cal. June 24, 2025) (dismissing claims where plaintiff "alleges that Defendants ***could*** gain 'additional information about [a] visitor such as name, date of birth, and address,'" because it "fails to convert that hypothetical into concrete harm"). Indeed, none of the referer URLs identified in the FAC contain search terms entered into a search engine. They simply identify the location of the webpage the user was viewing. Under controlling precedent, these URLs are not contents. *Zynga*, 750 F.3d at 1108–09.[15]

Nor does the "text of specific buttons that users click," FAC ¶ 276(c), constitute contents. *See, e.g., King v. Hard Rock Cafe Int'l (USA), Inc.*, 2025 WL 1635419, at *4 (E.D. Cal. June 9, 2025) ("button clicks" that "convey 'the destination to which [Website users] wish to travel, the desired dates for their trip, the number of rooms they require, the number of adults and children who will be traveling, and the particular hotel section or tower in which they wish to stay'" are "'more akin to the "record" information that the Ninth Circuit has held not to be contents of a

---

[15]    Google acknowledges that the Court reached a different conclusion in *Brown*, deciding that "Google collects the type of search queries the Ninth Circuit thought could be content in *Zynga Privacy*" because the example URL in that case could inform Google that "the user was searching for updates on Russia's war against Ukraine on the Washington Post's 'World' section." 685 F. Supp. 3d at 935. Respectfully, the information contained in the example URL in *Brown*—which contained the folder structure used by the website but no search queries from the user—is indistinguishable from the example the Ninth Circuit rejected as content in *Zynga*: a URL that indicated the user was viewing a gay support group page, but did not reveal any "message" the user conveyed to the site. A URL identifying a page *within* a website—as opposed to the website's homepage—is still merely identifying the location of the page and thus not "contents" under *Zynga*. The Ninth Circuit did not distinguish between a website's homepage and its other pages, even if such pages allowed some inference about the user's activity or interests. On the contrary, the specific pages at issue in *Zynga* were specific pages within Facebook's website. *See* 750 F.3d at 1103, 1108.

communication'"); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082–83 (C.D. Cal. 2021) (*Zynga* establishes that "contents" does not include "keystrokes, mouse clicks, pages viewed, . . . the date and time of the visit, the duration of the visit, Plaintiffs' IP address, her location at the time of the visit, her browser type, and the operating system on her device"); *Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 70 (W.D. Pa. 2023), *aff'd as modified*, 2025 WL 2250261 (3d Cir. Aug. 7, 2025) ("movements and clicks" constitute "'routing information' . . . to go to a digital location," not any "communicative" content or "the substance of a communication").

## B.  Plaintiffs' Invasion of Privacy Claim (Count Six) Fails

"[A] plaintiff alleging an invasion of privacy in violation of the state constitutional right to privacy must establish: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy." *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 39–40 (1994). "If the undisputed material facts show no reasonable expectation of privacy or an insubstantial impact on privacy interests, the question of invasion may be adjudicated as a matter of law." *Id.* at 40.

At the outset, "California's 'Constitution expressly grants Californians a right of privacy'" and so Plaintiffs may "bring their invasion of privacy claim under the California Constitution only on behalf of California residents or people who were in California when the alleged wrong occurred." *Ahringer v. LoanDepot, Inc.*, 715 F. Supp. 3d 1274, 1285 (C.D. Cal. 2024). Plaintiff Kindler is the only named Plaintiff alleged to be a resident of California. *See* FAC ¶¶ 20–30.[16] Therefore, this claim must be dismissed as to the other Plaintiffs. *Collins v. Conifer Value-Based Care*, 2025 WL 1140788, at *7 (C.D. Cal. Feb. 28, 2025) ("Plaintiffs may not bring an invasion of privacy claim under the California Constitution because Plaintiffs are not 'California residents or people who were in California when the alleged wrong occurred.'").

***Reasonable Expectation of Privacy.*** Courts in this District hold that "[c]ontemporary internet browsing involves the collection of users' data, including by tracking users across the internet, <u>and a reasonable user should expect as much</u>." *Hubbard v. Google LLC*, 2024 WL 3302066,

---

[16]  After filing the FAC, Plaintiffs Jackson, Randolph, Genova, and Guzmán dismissed their claims.

at *7 (N.D. Cal. July 1, 2024) (emphasis in original) (collecting cases); *see also Thomas v. Papa Johns Int'l, Inc.*, 2024 WL 2060140, at *2 (S.D. Cal. May 8, 2024) ("Given the inherent nature of the internet, a number of courts have found that consumers do not have a reasonable expectation of privacy over their activity in that space.").

Plaintiffs' only basis for asserting a reasonable expectation of privacy in the Data is that Google allegedly promised Chrome users it would not send the Data "to Google unless the users choose to Sync with their Google accounts." FAC ¶ 338. But a defendant's "alleged failure to give notice, in and of itself, does not give rise to a reasonable expectation of privacy in users' 'Website Communications.'" *Thomas*, 2024 WL 2060140, at *5; *Brown*, 685 F. Supp. 3d at 941 (considering both "the nature of the data collection" and "representations to users" in deciding whether plaintiffs have a reasonable expectation of privacy). And because Plaintiffs' allegations relate to browsing using Chrome in its default state, they cannot plausibly allege any "plus factors" establishing a reasonable expectation of privacy.

**Serious invasion of privacy.** "Actionable invasions of privacy must be sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right." *Hill*, 7 Cal. 4th at 37; *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 295 (2009) (same). Even if Plaintiffs had plausibly alleged a reasonable expectation of privacy in the routine data transmissions at issue here, "that does not mean that a reasonable consumer would be particularly shocked or offended to discover that Google is in fact collecting this sort of data." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1091 (N.D. Cal. 2022).

On the contrary, consistent with the pragmatic and rational approach taken in *Hubbard*, the Ninth Circuit recently held that even the use of session replay software—which records all of a user's actions on a website—is not "highly offensive." *Thomas v. Papa Johns Int'l, Inc.*, 2025 WL 1704437, at *1 (9th Cir. June 18, 2025); *Popa v. Microsoft Corp.*, — F.4th —, 2025 WL 2448824, at *5 (9th Cir. Aug. 26, 2025) (secretly tracking user interactions with commercial website including location, device, and text inputs is not "highly offensive" conduct and does not even give rise to an injury in fact); *see also Hammerling*, 615 F. Supp. 3d at 1090–91 ("Courts in this district have held that data collection and disclosure to third parties that is 'routine commercial behavior' is not a

'highly offensive' intrusion of privacy."). Further, Plaintiffs' conclusory allegations that Google received "general information" regarding visits to banking websites, healthcare providers, continuing education providers, and political websites, *see, e.g.* FAC ¶ 23, does not suffice. *Hammerling*, 615 F. Supp. 3d at 1091; *see also Hubbard*, 2024 WL 3302066, at *7 & n.9 (collection of users' data across the internet is not highly offensive because "reasonable users should expect the collection of their internet-browsing data"); *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1126 (S.D. Cal. 2023) (dismissing invasion of privacy claim because "disclosing a user's browsing history does not plausibly reach the level of 'highly offensive' conduct under either common law or the California Constitution").

Plaintiffs further allege that the collection was highly offensive because it violates other state or federal laws. FAC ¶ 339. But alleged "violations of law do not necessarily represent highly offensive behavior." *Hubbard*, 2024 WL 3302066, at *8; *see also Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992–93 (2011), *as modified* (June 7, 2011) (obtaining "ZIP code under false pretenses and using it for [defendants'] own marketing purposes" is not highly offensive). This is particularly true here where related plaintiffs alleged that the challenged data collection is "common knowledge." *Brown*, No. 4:20-cv-03664, Dkt. 886 ¶ 163 (N.D. Cal.) ("It is common knowledge that Google collects information about the web-browsing activity of users who are <u>not</u> in 'private browsing mode.'").[17]

## C. Plaintiffs' Quasi-Contract Claim for Restitution and Unjust Enrichment (Count Ten) Fails

A "plaintiff may not . . . pursue or recover on a quasi-contract claim if the parties have an enforceable agreement regarding a particular subject matter." *Klein v. Chevron U.S.A., Inc.*, 202 Cal.

---

[17]   Google recognizes that Judge Koh previously allowed Plaintiffs' similar intrusion-upon-seclusion claim to proceed, Dkt. 142 at 26–30, but respectfully submits that March 2021 decision is no longer consistent with prevailing authority. As more recent cases like the Ninth Circuit's *Thomas* and *Popa* decisions demonstrate, the collection of basic browsing data—even the complete replication of a user's browsing session—neither invades a user's reasonable expectations of privacy nor approaches the level of extreme conduct necessary to be deemed "highly offensive to a reasonable person." *See, e.g.*, *Thomas*, 2025 WL 1704437, at *1; *Popa*, 2025 WL 2448824, at *5; *Hubbard*, 2024 WL 3302066, at *7.

1   App. 4th 1342, 1388 (2012). A plaintiff bringing a claim for quasi-contract against its contracting

2   counterparty must "allege that their contract with [the defendant] is unenforceable or invalid."

3   *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 134 (N.D. Cal. 2020). That is not the case here. Plaintiffs

4   do not allege that the alleged contract is unenforceable or invalid. On the contrary, Plaintiffs

5   repeatedly allege (and Google has never disputed) the existence of an enforceable contract. *See, e.g.*,

6   FAC ¶¶ 6, 33–46, 354, 357. That is fatal to their quasi-contract claim.

7        Plaintiffs contend that they should be permitted to assert their quasi-contract claim "in the

8   alternative" because "[i]f Plaintiffs' contract claims fail they have no adequate remedy at law to

9   force the disgorgement of Defendant's unjustly earned profits." FAC ¶ 371. The mere fact that

10   Plaintiffs' contract claim might "fail" in no way means that they can fall back on a quasi-contract

11   claim where they have not alleged that their contract is unenforceable and invalid. Although a

12   plaintiff "may assert . . . inconsistent claims alleging both the existence and absence of an

13   enforceable contract," "a plaintiff may ***not*** plead the existence of an enforceable contract and

14   simultaneously maintain a quasi-contract claim unless the plaintiff also pleads facts suggesting that

15   the contract may be ***unenforceable or invalid***." *Tsai v. Wang*, 2017 WL 2587929, at *8 (N.D. Cal.

16   June 14, 2017) (emphases added); *accord Stang v. Teal Drones, Inc.*, 2023 WL 11956370, at *3

17   (N.D. Cal. Mar. 24, 2023).[18]

18        Plaintiffs are also wrong in arguing they are entitled to "force the disgorgement of

19   Defendant's unjustly earned profits." FAC ¶ 371. "That Defendants earned profits in the process of

20   inflicting [alleged] harm renders neither damages for the harm a *per se* inadequate legal remedy nor

21   the earning of those profits a distinct harm for which Plaintiffs may also recover . . . ." *Hubbard*,

22   2024 WL 3302066, at *6 (dismissing claims for unjust enrichment and other equitable relief).

---

23

24   [18]  *See also Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014) ("[A] party to an express contract can assert a claim for restitution based on unjust enrichment by alleging

25   in that cause of action that the express contract is void or was rescinded."); *AdTrader, Inc. v. Google LLC*, 2018 WL 3428525, at *11 (N.D. Cal. July 13, 2018) ("Plaintiffs must allege in the alternative

26   that the parties do not have an enforceable contract pertaining to Google's advertisement services in order to plead an unjust enrichment claim."); *Deras v. Volkswagen Grp. of Am., Inc.*, 2018 WL

27   2267448, at *3 (N.D. Cal. May 17, 2018) ("[A] quasi-contract action for unjust enrichment does not lie where express binding agreements exist and define the parties' rights." (quoting *Gerstle v. Am.*

28   *Honda Motor Co.*, 2017 WL 2797810, at *14 (N.D. Cal. June 28, 2017)).

1    Plaintiffs' quasi-contract claim must be dismissed.

2    **D.    Plaintiffs' Cal. Penal Code § 502 (CDAFA) Claim (Count Twelve) Fails**

3    Plaintiffs' CDAFA claim fails for three independent reasons.

4    *First*, CDAFA requires that the defendant have accessed a computer "without permission."

5    Courts have held that "the mere fact that a plaintiff does not consent to an action does not create

6    liability under the CDAFA." *Gutierrez v. Converse Inc.*, 2023 WL 8939221, at *4 (C.D. Cal. Oct.

7    27, 2023); *see Facebook, Inc. v. Power Ventures, Inc.*, 2010 WL 3291750, at *11 (N.D. Cal. July

8    20, 2010) (plaintiff cannot show "access . . . without permission simply because [defendant

9    allegedly] violated a contractual term of use"). Instead, the plaintiff must allege that Google

10    "overcame [] technical or code-based barriers." *Gutierrez*, 2023 WL 8939221, at *4. But where the

11    website developer "designed the Website to facilitate the so-called 'interception' and 'diversion'"

12    of the at-issue data, that is insufficient to establish the defendant acted "without permission" for

13    purposes of CDAFA. *Id.*[19]

14    *Second*, Plaintiffs fail to allege that *Google* (as opposed to the websites Plaintiffs visited) did

15    the accessing in violation of Cal. Penal Code §§ 502(c)(1), (2), (6) & (7). CDAFA defines access as

16    "gain[ing] entry to, instruct[ing], caus[ing] input to, caus[ing] output from, caus[ing] data processing

17    with, or communicat[ing] with, the logical, arithmetical, or memory function resources of a

18    computer, computer system, or computer network." Cal. Penal Code § 502(b)(1). Plaintiffs do not

19    plausibly allege that Google does any of these things; rather, they allege Google is the *recipient* of

20    the Data. The websites' *code* "instructs" the user's browser to send an HTTP request to both the

21    website and the servers of any service providers (including Google) that the websites use to provide

22    services. FAC ¶ 129. Therefore, Google is only "accessing and processing the data that [Plaintiffs

23    ha[ve] sent to [websites] . . . not proactively 'accessing' or 'communicating with' [Plaintiffs'

24    computers]"—conduct that falls outside CDAFA's scope. *Meta Platforms, Inc. v. BrandTotal Ltd.*,

25

---

26    [19]    Although some courts, including this one, have rejected the narrower interpretation of "without
permission" as requiring that the plaintiff allege the defendant overcame a technical or code-based
27    barrier, *see, e.g.*, *Brown*, 685 F. Supp. 3d at 940 n.38, the narrower interpretation is the only reading
that avoids the "constitutionally untenable situation in which criminal penalties could be meted out
28    on the basis of violating vague or ambiguous terms of use," *Facebook*, 2010 WL 3291750, at *11.

605 F. Supp. 3d 1218, 1260 (N.D. Cal. 2022) (holding "reactive" collection of data transmitted

through "normal use of the website" does not implicate CDAFA); s*ee also New Show Studios LLC*

*v. Needle,* 2014 WL 2988271, at *6–8 (C.D. Cal. June 30, 2014) (dismissing CDAFA claim because

"[a]ccessing plaintiffs' information . . . is not the same thing as accessing plaintiffs' computer

systems, even if that information was at some point stored on those computers").[20]   Any broader

interpretation of CDAFA's "access" requirement is unreasonable—and would be inconsistent with

the rule of lenity—because it would criminalize routine internet functionality. *See Meta Platforms*,

605 F. Supp. 3d at 1261. Indeed, *every* web-service provider that receives HTTP requests to provide

their services could be accused of criminal conduct.

As to the provision of CDAFA that does not require "access," Cal. Penal Code § 502(c)(8),

that section requires Google to have placed a "contaminant" on Plaintiffs' computers, and Plaintiffs

allege Google did so by installing cookies on their browsers. FAC ¶ 393. Cookies are ubiquitous

and essential to normal operation of the modern internet—they cannot plausibly be characterized as

"contaminants." Again, to find otherwise would be to criminalize the internet. Rather, "the

[CDAFA] section on 'computer contaminants' appears to be aimed at 'viruses or worms,' and other

malware that usurps the normal operation of the computer or computer system." *Doe v. Meta*

*Platforms, Inc.*, 690 F. Supp. 3d 1064, 1083 (N.D. Cal. 2023). Plaintiffs do not and cannot allege

that commonplace cookies "usurped" their browsers.

*Third*, Plaintiffs do not plausibly allege they suffered "damage or loss by reason of a

violation" of CDAFA. Cal. Penal Code § 502(e)(1). "The majority of courts to consider the issue

have held that 'damage or loss' under the CDAFA 'contemplates some damage to the computer

---

[20]  In *Brown*, the Court distinguished *Meta Platforms* based on the understanding that the defendant there received plaintiff's data from third parties who had permission to access the data, instead of from the plaintiff's servers directly. *Brown*, 685 F. Supp. 3d at 939–40. Respectfully, *Meta Platforms* is not distinguishable on that basis because there the plaintiff alleged the defendant directly accessed its data as it was "transmitted over the wire *from [plaintiff]'s computers.*" *Meta Platforms*, 605 F. Supp. 3d at 1260. The reason Meta's claim still failed is not that the defendant collected data from somewhere other than plaintiff's computers, but rather that all the defendant received was whatever the plaintiff was already sending to the third-parties that invited the defendant to collect it. This case presents the same situation: Google collects only the data users are already sending to websites that enabled Google's Services.

system, network, program, or data contained on that computer." *Ingrao v. AddShoppers, Inc.*, 2024 WL 4892514, at *15 (E.D. Pa. Nov. 25, 2024); *see also Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1082 (N.D. Cal. 2023) (dismissing CDAFA claim that fails to allege "an intrusion that impacts the performance or operation of computer devices"); *Heiting v. Taro Pharm. USA, Inc.*, 709 F. Supp. 3d 1007, 1020–21 (C.D. Cal. 2023) (collecting cases). Because Plaintiffs do not allege any physical damage to their property or data, their CDAFA claim should be dismissed. *See* FAC ¶ 394.

Indeed, Judge Koh dismissed Plaintiffs' analogous CFAA claim because Plaintiffs were required (but failed) to allege economic harm exceeding $5,000. Dkt. 142 at 35. Judge Koh acknowledged that *Andrews v. Sirius XM Radio Inc.*, 932 F.3d 1253, 1262 (9th Cir. 2019), stands for the proposition that "loss" under the CFAA is "narrow" and cannot be supported by allegations that the defendant "stole the personal information without compensating [plaintiff]" or that the plaintiff "lost the value of that information and the opportunity to sell it." Dkt. 142 at 35 n.7. Although CDAFA and the CFAA do not have identical loss definitions, *Andrews* is instructive because courts in this District "import[] the loss requirements from the CFAA except as to the $5,000 requirement found in the CFAA." *Bui-Ford v. Tesla, Inc.*, 2024 WL 694485, at *6 (N.D. Cal. Feb. 20, 2024); *see also Nowak v. Xapo, Inc.*, 2020 WL 6822888, at *5 (N.D. Cal. Nov. 20, 2020) ("While the CDAFA does not impose a minimum of $5,000 in damages, the rest of 'the necessary elements of [§] 502 [*i.e.*, CDAFA] do not differ materially from the necessary elements of the CFAA.'"). Because Plaintiffs do not allege any damage to their computers or data, they fail to state a CDAFA claim.

Plaintiffs cannot avoid this result by alleging they suffered loss because *Google* derives value from the Data.[21] Plainly, a benefit to Google does not automatically result in loss to Plaintiffs. And

---

[21]   Google recognizes that this Court and others have held that a plaintiff may establish loss under CDAFA through allegations that his data has value in the marketplace, *Brown*, 685 F. Supp. 3d at 940; *Rodriguez*, 772 F. Supp. 3d at 1110.  Google respectfully submits, however, that even if "a loss of control over personal data may constitute an economic injury" in the abstract, that does not mean "such an injury is contemplated by the CDAFA." *Heiting*, 709 F. Supp. 3d at 1021; *Luna v. Google LLC*, No. 24CV434093, Order on Demurrer, at 12 (Cal. Super. Ct. May 1, 2025) ("Applying the majority view, the Court concludes that while a loss of control over personal data may constitute an economic injury in some form, it is not an injury under the CDAFA"); *see Andrews*, 932 F.3d at 1262 (Ninth Circuit rejecting the same theory in the analogous CFAA context).

courts have held that is not a viable theory of loss under CDAFA, just as it cannot support an analogous federal-law claim under the CFAA. *See, e.g.*, *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1048 (N.D. Cal. 2025) (neither "profit Defendant made as a result of disclosing Plaintiffs' data" nor "diminution of the value of [plaintiffs'] private and personal information" is a "loss" under CDAFA); *Ingrao*, 2024 WL 4892514, at *15 (defendant's receipt of "data generated by a plaintiff while engaging with a defendant's website" does not satisfy CDAFA's "loss" requirement); *Heiting*, 709 F. Supp. 3d 1007, 1021 (C.D. Cal. 2023) (same); *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 488 (N.D. Cal. 2021) ("loss of the value of [plaintiff's] data" is not "'damage or loss' within the meaning of the CDAFA").[22]

### E.   Plaintiffs' Claim for Punitive Damages (Count Fifteen) Fails

It is blackletter law that "[t]here is no cause of action for punitive damages." *Hilliard v. A. H. Robins Co.*, 148 Cal. App. 3d 374, 391 (1983). Instead, punitive damages are a potential remedy "available to a party who can plead and prove the facts and circumstances set forth" in the statute or the case law. *Id.* Plaintiffs' standalone claim for punitive damages should therefore be dismissed. *See, e.g.*, *Karnazes v. Am. Airlines, Inc.*, 2021 WL 179591, at *3 (N.D. Cal. Jan. 19, 2021) (dismissing "cause of action for 'exemplary damages'" because it "is not a cognizable cause of action"), *aff'd*, 2023 WL 4893584 (9th Cir. Aug. 1, 2023).

### F.   Plaintiffs Claim for Declaratory Relief (Count Sixteen) Fails

A separate claim for declaratory relief is not appropriate here because Plaintiffs have "a fully matured cause of action for money" and have "alleged a substantive cause of action" for which Plaintiffs are seeking "'determination of identical issues' subsumed within the first." *Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183, 1189 (E.D. Cal. 2010).

---

[22]   *See also Doe v. Tenet Healthcare Corp.*, 2025 WL 1635956, at *19 (E.D. Cal. June 9, 2025) ("Where, as here, 'plaintiffs allege that their privacy has been invaded because of the disclosure of sensitive and private healthcare information—plaintiffs cannot base their CDAFA damages on a theory that they lost a benefit to sell that data themselves.'"); *Doe v. Cnty. of Santa Clara*, 2024 WL 3346257, at *9 (N.D. Cal. July 8, 2024) ("the value of the data that the County took and derived a benefit from" is not a "loss" to plaintiffs).

Plaintiffs request a declaration as to which documents are part of the contract, whether the Data is "personal information" under the contract, and whether Google breached the contract. FAC ¶ 428 (a)–(c). Each of these issues will be decided in the resolution of the breach of contract claim. *See id.* ¶¶ 353–359. Similarly, whether Google violated Plaintiffs' and class members' privacy rights, *id.* ¶ 428(d), will be decided by adjudication of the various privacy claims asserted, *id.* ¶¶ 335–352. And whether Plaintiffs suffered privacy and/or economic harm, *id.* ¶ 428(e)–(f), will also be determined by the other causes of action, *see, e.g.*, *id.* ¶¶ 342, 352, 358, 369. Plaintiffs' declaratory judgment claim is therefore superfluous and should be dismissed.

## IV.    CONCLUSION

Plaintiffs' Dormant Claims should be dismissed with prejudice.

DATED:  August 28, 2025                    Respectfully submitted,


QUINN EMANUEL URQUHART &
   SULLIVAN, LLP

By:    /s/ *Andrew H. Schapiro*
       Andrew H. Schapiro (admitted *pro hac vice*)
       andrewschapiro@quinnemanuel.com
       Teuta Fani (admitted *pro hac vice*)
       teutafani@quinnemanuel.com
       Joseph H. Margolies (admitted *pro hac vice*)
       josephmargolies@quinnemanuel.com
       191 N. Wacker Drive, Suite 2700
       Chicago, IL 60606
       Telephone: (312) 705-7400
       Facsimile: (312) 705-7401

       Stephen A. Broome (CA Bar No. 314605)
       stephenbroome@quinnemanuel.com
       Viola Trebicka (CA Bar No. 269526)
       violatrebicka@quinnemanuel.com
       Crystal Nix-Hines (Bar No. 326971)
       crystalnixhines@quinnemanuel.com
       Alyssa G. Olson (CA Bar No. 305705)
       alyolson@quinnemanuel.com
       865 S. Figueroa Street, 10th Floor
       Los Angeles, CA 90017
       Telephone: (213) 443-3000
       Facsimile: (213) 443-3100

Xi ("Tracy") Gao (CA Bar No. 326266)
tracygao@quinnemanuel.com
Carl Spilly (admitted *pro hac vice*)
carlspilly@quinnemanuel.com
1300 I Street NW, Suite 900
Washington D.C., 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

*Attorneys for Defendant Google LLC*