**BLEICHMAR FONTI & AULD LLP**
Lesley E. Weaver (SBN 191305)
Anne K. Davis (SBN 267909)
Joshua D. Samra (SBN 313050)
1330 Broadway, Suite 630
Oakland, CA 94612
Tel.: (415) 445-4003
Fax: (415) 445-4020
*lweaver@bfalaw.com*

**SIMMONS HANLY CONROY LLP**
Jason 'Jay' Barnes (admitted *pro hac vice*)
Jayne Conroy (admitted *pro hac vice*)
An Truong (admitted *pro hac vice*)
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel.: (212) 784-6400
Fax: (212) 213-5949
*jaybarnes@simmonsfirm.com*

**DiCELLO LEVITT LLP**
David A. Straite (admitted *pro hac vice*)
Julia Veeser (admitted *pro hac vice*)
Adam Prom (admitted *pro hac vice*)
485 Lexington Avenue, Suite 1001
New York, NY 10017
Tel.: (646) 933-1000
*dstraite@dicellolevitt.com*

*Counsel for Plaintiffs*
*[Additional counsel on signature page]*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

PATRICK CALHOUN, *et al*., on behalf of themselves and all others similarly situated,

    Plaintiffs,

    v.

GOOGLE LLC,

    Defendant.

Case No. 4:20-cv-05146-YGR-SVK

**PLAINTIFFS' OPPOSITION TO GOOGLE'S MOTION TO DISMISS "DORMANT" CLAIMS**

The Honorable Yvonne Gonzalez Rogers
Courtroom: 1 – 4th Floor
Date: November 18, 2025
Time: 2:00 p.m.
Amended Complaint Filed: April 16, 2021
Trial Date: None Set

1

## TABLE OF CONTENTS

2

I.    INTRODUCTION AND PROCEDURAL HISTORY ........................................................1

3

II.    STATEMENT OF FACTS .............................................................................................3

4

A.  The Promise: Chrome Will Not Send *Personal Information* to Google "Unless You
5    Choose" To Do So "By Turning on Chrome Sync" .................................................. 3

6    B.  The Breach: Chrome Sends PI to Google Regardless of Sync ...................................... 4

III.   LEGAL STANDARD ..................................................................................................4

7

IV.   ARGUMENT .................................................................................................................5

8

9    A.  Plaintiffs Adequately State a Federal Wiretap (ECPA) Claim (Count One) ................ 5

10    1.   Websites Did Not—and Cannot—Consent to the Conduct at Issue; Even if They
         Did, Plaintiffs Adequately Alleged Google's Intent is Sufficient to Satisfy 18
11       U.S.C. § 2511(2)(d)...................................................................................... 5

     2.   The Ordinary Course of Business Exception Does Not Apply.............................. 11
12
     3.   Google Intercepted "Contents" ................................................................... 13
13
     4.   In the Alternative, the Court Should Grant Plaintiffs Leave to Amend................ 16

     B.  Plaintiffs Adequately State an Invasion of Privacy Claim (Count 6) .......................... 16
14

15    C.  Plaintiffs Adequately State a Quasi-Contract Claim for Disgorgement of Unjust
         Enrichment in the Alternative (Count 10)....................................................................... 19
16
     D.  Plaintiffs Adequately State a CDAFA Claim (Count 12) .......................................... 20
17
     E.  Plaintiffs Adequately Pled Punitive Damages Under California Law but Concede
18       it is Not a Separate Claim (Count 15) ..................................................................... 23

19    F.  Plaintiffs Adequately State a Claim for Declaratory Relief (Count 16) ..................... 24

V.    CONCLUSION .............................................................................................................25
20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*In re Adobe Systems, Inc. Privacy Litig.*,
5   66 F. Supp. 3d 1197 (N.D. Cal. 2014) .............................................................. 8, 24

6   *Ashcroft v. Iqbal*,
      556 U.S. 662 (2009) ......................................................................................... 4
7

*Brown v. Google LLC ("Brown I")*,
8   525 F.Supp.3d 1049 (N.D. Cal. 2021) ...................................................... 8, 11, 13

9   *Brown v. Google LLC ("Brown II")*,
10   685 F. Supp. 3d 909 (N.D. Cal. Aug. 7, 2023) .............................................. *passim*

11   *Cal. Spine & Neurology Inst. v. United Healthcare Ins. Co.*,
      2019 WL 4450842 (N.D. Cal. Sept. 17, 2019) ................................................ 19
12

*Calhoun v. Google*,
13   526 F. Supp. 3d 605 (N.D. Cal. 2021) .................................................... 5, 7, 17, 18

14   *Calhoun v. Google LLC*,
15   113 F.4th 1141 (9th Cir. 2024) .............................................................. 7, 9, 18

16   *Campbell v. Facebook Inc.*,
      315 F.R.D. 250 (N.D. Cal. 2016) ................................................................ 14
17

*In re Carrier IQ, Inc.*,
18   78 F. Supp. 3d 1051 (N.D. Cal. 2015) ........................................................ 14

19   *Cherkin v. PowerSchool Holdings, Inc.*,
20   2025 WL 844378 (N.D. Cal. Mar. 17, 2025) ............................................... 21

21   *Cook v. GameStop, Inc.*,
      689 F. Supp. 3d 58 (W.D. Pa. 2023) ......................................................... 15
22

*Cousin v. Sharp Healthcare*,
23   702 F. Supp. 3d 967 (S.D. Cal. 2023) ...................................................... 17

24   *DiDio v. Jones*,
25   2014 WL 12591626 (C.D. Cal. Feb. 6, 2014) ............................................. 4

26   *Doe I v. Google LLC*,
      2025 WL 1616720 (N.D. Cal. June 6, 2025) ............................................. 14
27

*Doe v. Meta Platforms, Inc.*,
28   690 F. Supp. 3d 1064 (N.D. Cal. 2023) ..................................................... *passim*

*Facebook v. Power Ventures, Inc.*,
  2010 WL 3291750 (N.D. Cal. July 20, 2010) ................................................. 20, 22

*Facebook, Inc. v. Power Ventures, Inc.*,
  844 F.3d 1058 (9th Cir. 2016) ................................................................. 20

*Fausto v. Credigy Svcs Corp.*,
  598 F. Supp. 2d 1049 (N.D. Cal. 2009) ...................................................... 23

*Frasco v. Flo Health, Inc.*,
  349 F.R.D. 557 (N.D. Cal. 2025) .............................................................. 9

*Gabrielli v. Haleon US Inc.*,
  2025 WL 2494368 (N.D. Cal. Aug. 29, 2025) ............................................... 14

*Gershzon v. Meta Platforms, Inc.*,
  2023 WL 5420234 (N.D. Cal. Aug. 22, 2023) ............................................... 14

*Gonzeles v. Uber Tech., Inc.*,
  305 F. Supp. 3d 1078 (N.D. Cal. 2018) ...................................................... 15

*In re Google RTB Consumer Privacy Litig.*,
  606 F. Supp. 3d 935 (N.D. Cal. 2022) ..................................................... 10, 14

*Griffith v. TikTok, Inc.*,
  2024 WL 5279224 (C.D. Cal. Dec. 24, 2024) ............................................... 15

*Hadley v. Kellogg Sales Co.*,
  324 F. Supp. 3d 1084 (N.D. Cal. 2018) ...................................................... 20

*Hammerling v. Google, LLC*,
  615 F. Supp. 3d 1069 (N.D. Cal. 2022) .............................................. 14, 17, 18

*Hubbard v. Google*,
  2024 WL 3302066 (N.D. Cal. Jul. 1, 2024) ......................................... 16, 17, 18

*Hughes v. Vivint, Inc.*,
  2024 WL 5179916 (C.D. Cal. Jul. 12, 2024) ................................................ 15

*Jackson v. East Bay Hosp.*,
  980 F. Supp. 1341 (N.D. Cal. 1997) ......................................................... 23

*Jensen v. Quality Loan Serv. Corp.*,
  702 F. Supp. 2d 1183 (E.D. Cal. 2010) ...................................................... 24

*Kaffaga v. Estate of Steinbeck*,
  938 F.3d 1006 (9th Cir. 2019) ................................................................ 23

*Katz-Lacabe v. Oracle America, Inc.*,
  668 F. Supp. 3d 928 (N.D. Cal. 2023) ....................................................... 14

*King v. Hard Rock Café Int'l (USA), Inc.*,
    2025 WL 1635419 (E.D. Cal. Jun. 9, 2025) ........................................ 15

*Kishnani v. Royal Caribbean Cruises, Ltd.*,
    2025 WL 1745726 (N.D. Cal. Jun. 24, 2025) ...................................... 15

*Lopez v. Smith*,
    203 F.3d 1122 (9th Cir. 2000) ............................................................ 16

*M.G. v. Therapymatch, Inc.*,
    2024 WL 4219992 (N.D. Cal. Sept. 16, 2024) .................................... 14

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
    519 F.3d 1025 (9th Cir. 2008) .............................................................. 4

*In re Meta Healthcare Pixel Litig.*,
    713 F. Supp. 3d 650 (N.D. Cal. 2024) ................................................ 22

*In re Meta Pixel Healthcare Litig.*,
    647 F. Supp. 3d 778 (N.D. Cal. 2022) ................................................ 14

*Meta Platforms, Inc. v. BrandTotal Ltd.*,
    605 F. Supp. 3d 1218 (N.D. Cal. 2022) .............................................. 21

*Mobayen v. Blinken*,
    780 F. Supp. 3d 969 (C.D. Cal. 2025) .................................................. 6

*Nedlloyd Lines B.V. v. Superior Court*,
    3 Cal.4th 459 (1992) .......................................................................... 19

*New Show Studios LLC v. Needle*,
    2014 WL 2988271 (C.D. Cal. June 30, 2014) .................................... 21

*In re Nickelodeon*,
    827 F.3d 262 (3d Cir. 2016) ............................................................... 18

*Parklane Hosiery Co., Inc. v. Shore*,
    439 U.S. 322 (1979) ........................................................................... 10

*Petrash v. Biomet Orthopedics, LLC*,
    2019 WL 8013939 (N.D. Cal. June 6, 2019) ...................................... 23

*Popa v. Microsoft Corp.*,
    2025 WL 2448824 (9th Cir. Aug. 26, 2025) ...................................... 17

*Reynolds v. Shure*,
    148 F. Supp. 3d 928 (E.D. Cal. 2015) ................................................ 24

*Riganian v. LiveRamp Holdings, Inc.*,
    2025 WL 2021802 (N.D. Cal. Jul. 18, 2025) ................................. 11, 18

*Rollolazo v. BMW of North America, LLC*,
  2017 WL 1536456 (C.D. Cal. Feb. 3, 2017) .................................................................. 23

*Ruiz v. Bradford Exch., Ltd.*,
  No. 24-3378, 2025 WL 2473007 (9th Cir. Aug. 28, 2025) ............................................. 1

*Shah v. Cap. One Fin. Corp.*,
  768 F. Supp. 3d 1033 (N.D. Cal. 2025) ....................................................................... 22

*Shay v. Apple, Inc.*,
  512 F. Supp. 3d 1066 (S.D. Cal. 2021) ..................................................................... 6, 7

*Smith v. Google, LLC*,
  735 F. Supp. 3d 1188 (N.D. Cal. 2024) ......................................................................... 4

*Smith v. Rack Room Shoes, Inc.*,
  2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) .......................................................... 14, 22

*St. Aubin v. Carbon Health Tech., Inc.*,
  2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) ................................................................ 14

*Stein v. Edward-Elmhurst Health*,
  2025 WL 580556 (N.D. Ill. 2025) ............................................................................... 11

*Theofel v. Farey-Jones*,
  359 F.3d 1066 (9th Cir. 2004) ................................................................................ 9, 10

*Thomas v. Papa Johns Int'l, Inc.*,
  2024 WL 2060140 (S.D. Cal. May 8, 2024) ................................................................ 16

*United States v. Christensen*,
  825 F.3d 763 (9th Cir. 2015) ...................................................................................... 20

*United States v. Google LLC*,
  778 F. Supp. 3d 797 (E.D. Va. 2025) .......................................................................... 10

*Wade v. Sw. Bank*,
  211 Cal.App.2d 392 (1962) ......................................................................................... 10

*Washington Mut. Bank, FA v. Superior Court*,
  24 Cal.4th 906 (2001) ................................................................................................. 19

*Yoon v. Lululemon USA, Inc.*,
  549 F. Supp. 3d 1073 (C.D. Cal. 2021) ....................................................................... 15

*Yoon v. Meta Platforms, Inc.*,
  2024 WL 5264041 (N.D. Cal. Dec. 30, 2024) ............................................................. 14

1

**Statutes**

2

12 U.S.C. § 2601 ............................................................................................................... 24

3

18 U.S.C. 2511(2)(d) .......................................................................................................... 11

4

18 U.S.C. § 2510(5)(a)(i) ................................................................................................... 11

5

18 U.S.C. § 2510(8) ........................................................................................................... 13

6

18 U.S.C. § 2511(2)(d) ...................................................................................................... 5, 7

7

28 U.S.C. § 2201 ................................................................................................................ 24

8

Cal. Penal Code § 502 ................................................................................................ 1, 2, 21

9

**Other Authorities**

10

Fed. R. Civ. P. 8 .................................................................................................................. 4

11

Fed. R. Civ. P. 9(b) ............................................................................................................. 4

12

Fed. R. Civ. P. 12(b)(6) .................................................................................................. 2, 10

13

Fed. R. Civ. P. 15(a) .......................................................................................................... 16

14

H.R. Rep. No. 107-236 ...................................................................................................... 15

15

Local Civil Rule 7-9 ................................................................................................. 1, 5, 17

16

Restatement (Second) of Torts § 892A .............................................................................. 9

17

18

19

20

21

22

23

24

25

26

27

28

1  **I.    INTRODUCTION AND PROCEDURAL HISTORY**

2  Plaintiffs' initial complaint was filed on July 27, 2020, alleging 16 causes of action. Dkt.

3  No. 1. Succinctly put, the claims cover more than 200 million U.S. users of Google's Chrome

4  browser who were promised that if they did not synchronize ("sync") their browser with a Google

5  account, Chrome would not send personal information to Google. At its core, this case is about

6  consent, which the Ninth Circuit said must go to a jury: reading Google's disclosures, in their

7  totality, is a reasonable Chrome user deemed to have consented to Chrome sending their personal

8  information to Google in light of this express promise?

9  On September 18, 2020, the District Court ordered the parties to confer to prioritize ten

10  claims for litigation, permitting the defendant to select five and the Plaintiffs to select five, *see* Dkt.

11  No. 51, despite that Plaintiffs are the "masters of their complaint." *Ruiz v. Bradford Exch., Ltd.*,

12  No. 24-3378, 2025 WL 2473007, at *7 (9th Cir. Aug. 28, 2025). On September 25, 2020, as

13  ordered, the parties submitted their selected ten claims to be "litigated through trial," staying the

14  six remaining causes of action at issue in Defendant's motion until after trial. Dkt. No. 54.[1] Of the

15  original ten prioritized claims, six survived Google's original motion to dismiss. Dkt. No. 142.[2]

16  Plaintiffs then filed an amended complaint (the "FAC," Dkt. No. 163).[3]

17  The parties have litigated the prioritized claims for five years. This Court, and the Ninth

18  Circuit, have examined those claims, issuing rulings of law and findings of fact that apply in this

19  case. The District Court then dismissed the priority claims on summary judgment on Google's

20  affirmative defense of consent. Dkt. No. 935. The District Court clarified that Google's consent

21  defense also disposed of the six "dormant" claims, and thus judgment was entered dismissing the

22  entire case. Dkt. No. 1018. The Ninth Circuit then reversed the summary judgment dismissal,

---

[1] The dormant claims are: Count One (Federal Wiretap Act); Count 6 (Invasion of Privacy); Count 10 (Quasi-Contract); Count 12 (Cal. Penal Code § 502 or "CDAFA")); Count 15 (Punitive Damages); Count 16 (Declaratory Relief).

[2] Google seeks reconsideration of at least two rulings in this 2021 Order, see Mot. at 3, n.2, without complying with Civil Local Rule 7-9. This deficiency is addressed below.

[3] In this brief, "¶" and "Ex" refer to the FAC and Exhibits thereto, unless otherwise stated.

finding that Google's consent defense (as applied to any relevant claim) is a question for a jury, and ordered that the case be set for trial, pending class certification. Dkt. No. 1031. After remand and conclusion of fact discovery on the prioritized claims, the Court denied class certification as to four claims, Dkt. No. 1105, and Plaintiffs' 23(f) petition is pending. Dkt. No. 1109.

At the Case Management Conference on July 14, 2025, the Court permitted Google to move to dismiss the six dormant claims while waiting for the Ninth Circuit to rule on the 23(f) petition, Dkt. No. 1112, lifting the Court's earlier order staying those claims until "after trial." Dkt. No. 51. Thus, the procedural posture of this matter and this motion is unusual: the parties are testing dormant claims under a Rule 12(b)(6) standard, when the prioritized claims have been litigated through the close of fact discovery, following the Ninth Circuit's order to set the case for trial, but before the pleadings on the dormant claims have been amended to conform to proof.

Google seeks the dismissal of the dormant claims arguing that Plaintiffs failed to plausibly allege each of them. Google's arguments fail, based on the law of the case. First, Google's argument that first-party websites consented to Chrome sending class member personal information to Google on the wiretap claim fails, because Google cannot show that the websites obtained actual consent – particularly where Google is making a clear promise to the contrary – in light of the Court' in its 2021 order on motion to dismiss already considering and rejecting this exact argument. Second, Google asserts that Plaintiffs have no reasonable expectation of privacy in their browsing history, ignoring that Chrome expressly promised their personal information would not be sent to Google, which again this Court has already found to be sufficient basis for an expectation of privacy. Third, Google concedes that its three arguments for dismissing the CDAFA claim would require this Court to reverse its earlier rulings in *Brown*. Google also fails to note that the Ninth Circuit has found unjust enrichment to be sufficient basis for "loss" under the statute. Finally, even if the Court were inclined to dismiss, Plaintiffs should be granted leave to conform to proof.

The Court should deny Google's motion to dismiss Counts One (Federal Wiretap Act), Six (Invasion of Privacy), Ten (Quasi-Contract); Twelve (Cal. Penal Code § 502 or CDAFA), and Sixteen (Declaratory Relief). In the alternative, the Court should grant Plaintiffs leave to amend

Count One to conform to proof. Plaintiffs concede that Count Fifteen (Punitive Damages) is a remedy, not a cause of action, and accordingly withdraw Count Fifteen.

## II.  STATEMENT OF FACTS

The FAC sets forth, and subsequent discovery confirmed, Chrome's actions did not match its promises to users. Google promised users that Chrome would not send personal information to Google unless synced with a Google account. ¶ 2. But contrary to this promise, Chrome sends personal information to Google even when not synced; this is alleged in the Complaint. ¶ 3, 4, 113-42. Google does not dispute that Chrome sends the at-issue data even if not synced.

### A.  The Promise: Chrome Will Not Send *Personal Information* to Google "Unless You Choose" To Do So "By Turning on Chrome Sync"

As alleged, Google promised all Google Accountholders who use the Chrome browser that they "don't need to provide any personal information to use Chrome" and that "the personal information that Chrome stores won't be sent to Google unless you choose to store that data in your Google Account by turning on sync." ¶ 2. The FAC alleges that "Google's contract . . . defines 'Personal Information' as 'information that you provide to us which personally identifies you … *or other data that can be reasonably linked to such information by Google, such as information we associate with your Google Account*.' " ¶ 6 (emphasis in original).

Plaintiffs further allege that "the following data qualifies as personal information when Google code instructs the Google Chrome browser to report it to Google: (a) IP addresses linked to user agent; (b) Session and Persistent cookie identifiers; (c) X-client data headers; and (d) Browsing history and information regarding a consumer's interaction with an Internet website." ¶ 52. Plaintiffs then allege that "Google is reasonably capable of linking IP addresses …, persistent cookie identifiers, X-client-data headers, and web browsing history and information regarding a consumer's interaction with an Internet website, and, in fact, does link such information with individual consumers and their devices." ¶ 53. Finally, 42 paragraphs in the Complaint explain why these are "personal information." Thus, the key promise and key facts in this case revolve around whether the data Chrome sends to Google is "*personal information*," not whether it is a specific or isolated cookie, IP address, or X-client data header.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### B.    The Breach: Chrome Sends PI to Google Regardless of Sync

"Despite these express and binding promises, Google intentionally and unlawfully causes Chrome to record and send users' personal information to Google ***regardless of whether a user elects to Sync***[.]" ¶ 3 (emphasis in original). Specifically, regardless of whether a user enables sync, Chrome sends personal information to Google on all websites where it is commanded to do so by Google source. That personal information includes persistent cookies, IP address and User-Agent information, X-client data headers, and browsing history information. However, Plaintiffs' suit is not based solely on the label placed on these data elements. Rather, Google's conduct is actionable because Google is reasonably capable of associating the data with a Google Account—making it personal information under Google's contract and California law.

### III.    LEGAL STANDARD

A motion to dismiss must be denied if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The Court's evaluation must construe the complaint in the light most favorable to the plaintiff, accept as true all well-pleaded facts therein, and draw all reasonable inferences in plaintiff's favor. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

Plaintiffs' claims are governed by Rule 8. Fed. R. Civ. P. 8. Google argues that Rule 9(b)'s heightened pleading standard applies to Count One (the ECPA claim). But whether Rule 9(b) applies depends on the precise claim at issue and does not apply here. *See DiDio v. Jones*, 2014 WL 12591626, *4 (C.D. Cal. Feb. 6, 2014) (only claims that sound in fraud are subject to Rule 9(b)) (citing *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502 (7th Cir. 2007). "Because plaintiffs are directly challenging Google's alleged data collection rather than challenging any potentially fraudulent or misleading representations about this collection, their claims do not sound in fraud and are not subject to Rule 9(b)." *Smith v. Google, LLC*, 735 F. Supp. 3d 1188, 1198 (N.D. Cal. 2024).

**IV.    ARGUMENT**

**A.    Plaintiffs Adequately State a Federal Wiretap (ECPA) Claim (Count One)**

1.    Websites Did Not—and Cannot—Consent to the Conduct at Issue; Even if They Did, Plaintiffs Adequately Alleged Google's Intent is Sufficient to Satisfy 18 U.S.C. § 2511(2)(d*)*

Google argues that "websites using the Services—plainly consented to Google's receipt of *the Data.* Indeed, the purpose of installing Google code is to send the Data *to Google to obtain the benefit of those services*." Mot. at 5 (emphasis in original). But this argument suffers four fatal flaws: (1) this Court already rejected the website-consent argument, and Google does not seek formal reconsideration; (2) Google's argument changes the theory of the case as pled in the FAC; (3) it ignores binding Ninth Circuit precedent and other relevant case law on the nature of "consent;" and (4) it ignores that Google intercepted the data for tortious purposes.

*First*, the Court has already rejected this argument at the pleading stage, specifically under the Wiretap Act and the companion Stored Communications Act. *See Calhoun v. Google*, 526 F. Supp. 3d 605, 623-24 (N.D. Cal. 2021). Presumably, this is one of the rulings here (or in the related *Brown* action) for which Google seeks reconsideration. Mot. at 3, n.2 (noting only that Google seeks reconsideration if there are unnamed new allegations or authority or if "the priority ruling rested on a mistaken application of law that Google respectfully takes the opportunity to clarify here."). But Google does not attempt to comply with the leave requirement under Local Civil Rule 7-9 ("No party may notice a motion for reconsideration without first obtaining leave of Court to file the motion"), nor any of the substantive requirements of 7-9(b). Plaintiffs respond in substance to Google's arguments below for completeness but submit that Google's argument should be rejected on the basis of the 2021 Order alone.

*Second*, Google substitutes its preferred theory of the case for the actual challenged conduct. Specifically, in its opposition, Google concedes that this case is about "the Data," which it acknowledges cookies (including GAIA IDs); GET requests and POST communications (i.e. "browsing history" in FAC ¶ 4(d)); IP address and User-Agent information (i.e., information about the configuration of users' devices); and Chrome-specific X-Client data headers. Mot. at 3. Google then argues that the "websites choosing to enable the Services intend to send the Data to Google

1    when a user visits their sites." *Id*. But Google conflates the data that the websites receive, and the

2    data that Google causes Chrome to send to itself – the latter alleged to be personally identifying

3    information. ¶ 6 (personal information is "information that you provide to us which personally

4    identifies you … ***or other data that can be reasonably linked to such information by Google, such***

5    ***as information we associate with your Google Account.***") (emphasis in original). Thus, even if

6    websites could consent sending certain communications to Google generally when users interact

7    with their sites, they are not consenting that users' personal information will be intercepted by

8    Google in violation of its promise to the contrary. The key question is whether a website consented

9    (or could consent on behalf of a website visitor) to Google's interception of communications that

10   contain personal information. The FAC alleges otherwise, and Google cannot defeat this claim at

11   the 12(b)(6) stage.

12        On a motion to dismiss, "the Court accepts all facts alleged in a complaint as true and draws

13   all reasonable inferences in favor of the plaintiff." *Mobayen v. Blinken*, 780 F. Supp. 3d 969, 976

14   (C.D. Cal. 2025) (citing *Gant v. Cnty. of Los Angeles*, 772 F.3d 608, 614 (9th Cir. 2014)). Further,

15   "[o]n a motion to dismiss, it is the defendant's burden to demonstrate that plaintiff has failed to

16   state a claim." *Shay v. Apple, Inc*., 512 F. Supp. 3d 1066, 1071 (S.D. Cal. 2021). In *Shay*, "[t]he

17   gist of Plaintiffs' claims [was] that Apple [knew or should have known] that its gift cards [were]

18   vulnerable to thieves … and has failed to take reasonable steps to secure the cards and … concealed

19   material facts from customers." *Id*. at 1070. In moving to dismiss, Apple changed the theory of

20   liability to assert it could not be liable for the actions of third parties—which the Court then

21   expressly rejected because "defendants … failed to address the allegations and theories of liability

22   relied upon by Plaintiff." *Id.* at 1071.

23        Here, Google attempts a similar, improper argument. The gist of Plaintiffs' claims is that

24   Chrome promised not to send ***personal information*** to Google unless a person chose to sync, but

25   did so anyway. ***Personal information*** is that which identifies a person or a device associated with

26   that person or "data that can be reasonably linked to such information by Google, such as

27   information [Google] associate[s] with your Google Account." ¶ 6. The Chrome Privacy Notice

28   repeats the core promise in several different ways. For example, it states that, "In general, the fact

that you use Chrome to access Google's services, such as Gmail, does not cause Google to receive any additional personally identifying information about you." Ex. 33 at 2. Similarly, it promised that unless "you enable sync with your Google Account" and elect to "use your Chrome data to personalize your Google experience outside of Chrome, Google will only use your Chrome data after it's anonymized and aggregated with data from other users." Ex. 33 at 7. Thus, this is not a case about ordinary-course pseudonymous web browsing. It is about personal information – as specifically defined by Google and set forth in ¶ 6.[4] Like the *Apple* Court, this Court should reject Google's inapposite argument. *Shay*, 512 F. Supp. 3d at 1071. Indeed, this was the explicit basis for the Court's 2021 Order rejecting this exact argument. *Calhoun*, 526 F. Supp. 3d at 634-34.

*Third*, the ECPA's party-consent defense relied on by Google ("where one of the parties to the communication has given prior consent to such interception") requires that the consent be *actual*. 18 U.S.C. § 2511(2)(d). The Ninth Circuit explained the law of consent in this case:

> First, consent can be express or implied, but any consent must be actual. For consent to be actual, the disclosures must explicitly notify users of the conduct at issue. Moreover, consent is only effective if the person alleging harm consented to the particular conduct, or to substantially the same conduct, and if the alleged tortfeasor did not exceed the scope of that consent.

> The parties agree that consent is an affirmative defense for which defendant bears the burden of proof. In determining consent, courts consider whether the circumstances, considered as a whole, demonstrate that a reasonable person understood that an action would be carried out so that their acquiescence demonstrates knowing authorization. If that user could have plausibly understood the disclosures as *not* disclosing that the defendant would engage in particular conduct, then the disclosures are insufficient to establish consent. …

> [T]he governing standard is what a 'reasonable user' of a service would understand they were consenting to, not what a technical expert would. …

> Whether a reasonable user of Google's computer software at issue in this case consented to a particular data collection practice is not to be determined by attributing to that user the skill of an experienced business lawyer or someone who is able to easily ferret through a labyrinth of legal jargon to understand what he or she is consenting to. Instead, a determination of what a reasonable user would have understood must take into account the level of sophistication attributable to the general public, which uses Google's services.

*Calhoun v. Google LLC*, 113 F.4th 1141, 1147, 1149, 1151 (9th Cir. 2024) (internal citations

---

[4] Although not necessary to state a claim, Plaintiffs' FAC even alleged a motive. *See* FAC ¶¶ 97-112 (Motive was "to encourage, not diminish, user engagement" to "increase revenue for Google"). If given leave to amend, Plaintiffs could support this with robust evidence obtained in discovery.

1   omitted).

2      The "actual consent" rule applies to websites just as to consumers. A defendant must show

3   that that a website "did not just presumably but *actually* consented" to the challenged conduct. *Doe*

4   *v. Meta Platforms, Inc*., 690 F. Supp. 3d 1064, 1078 (N.D. Cal. 2023) (stating that burden was on

5   defendant to point to something the court could "judicially notice on this motion to dismiss to show

6   as a matter of law" that the websites consented). Importantly, the Doe Court cited this Court's

7   Brown case as authority for rejecting the one-party consent defense, specifically citing *Brown v.*

8   *Google LLC*, 685 F. Supp. 3d 909, 928 (N.D. Cal. Aug. 7, 2023) ("*Brown II*") ("Though the Court

9   takes Google's point that website developers had to consent to Google collecting data generally

10  when they added Google's services to their websites, Google has not proven that websites

11  consented to the collection of users' private browsing data in particular."))*.* Similarly, at the

12  12(b)(6) stage, this Court rejected Google's defense. *Brown v. Google LLC*, 525 F.Supp.3d 1049,

13  1068 (N.D. Cal. 2021) ("*Brown I*") (rejecting Google defense because documents for which Google

14  requested judicial notice tells websites using Google Analytics that "the Google privacy policy &

15  principles describes how we treat personal information when you use Google's products and

16  services, including Google Analytics" and that "Google represents to consumers and websites that

17  use Google Ad Manager that Google will adhere to Google's Privacy Policy."). Google

18  acknowledges that *Brown I* rejected Google's one-party consent defense at the 12(b)(6) stage, but

19  argues that Chrome's "Incognito" mode is a privacy setting, whereas "Signed In But Not Consented

20  for Sync" or "Basic Browser" modes are not. Mot. at 8. Again, this is contrary to the allegations in

21  the FAC, where the contractual promises regarding user control over personal information are

22  contained in a document called the "Chrome **Privacy** Notice" that describes "Sync" as the way to

23  control what personal information is sent to Google – i.e., a privacy setting. ¶ 45 (emphasis added).

24  Google also attempts to distinguish *Brown I* because "Incognito Mode" is a choice Chrome users

25  make, but "Basic Browser" mode is the default. Google never explains why this distinction is

26  relevant to the consent inquiry, and as importantly, ignores that this case also involves a second

27  not-synced mode (the "Signed In But Not Consented for Sync" mode) that, like Incognito mode, is

28  affirmatively selected by Chrome users.

1    In *Brown II*, the triable issue was whether Google had consent to collect users' data in

2    Incognito mode. Here, the triable issue is whether Google had consent for Chrome to send personal

3    information to Google when a person was in one of two not-synced modes: (1) "Signed In But Not

4    Consented for Sync" mode; and (2) "Basic Browser" mode. Plaintiffs here alleged that Google did

5    not have such consent because Google "fail[ed] to adequately inform websites using its third-party

6    tracking tools that Google had promised Chrome users that it would not share user personal

7    information unless the user was logged-in to Sync." ¶ 282. Inadequate disclosures are enough. *See*

8    *Calhoun*, 113 F.4th at 1147 ("For consent to be actual, the disclosures must explicitly notify users

9    of the conduct at issue."). Like the *Meta* case cited above, there is no evidence in the voluminous

10   record in this case (and certainly not in the FAC or in Google's motion) demonstrating that a single

11   website consented to Google intercepting personal information in violation of the Chrome Privacy

12   Notice. As such, the Court should reject the argument on the motion to dismiss.

13   Here, the Ninth Circuit has already ruled that "because applying the correct standard reveals

14   disputes of material fact regarding whether 'reasonable' users of Google's product consented to

15   Google's data collection practices, the issue of consent—assuming a plaintiff class is certified—is

16   remanded to the district court for trial." *Id.* at 1151. Plaintiffs respectfully submit that the logic of

17   the Ninth Circuit's ruling also applies to Google's website consent defense because, per this Court's

18   ruling in *Brown*, Google's Privacy Policy applies to websites and the Plaintiffs. And, in turn, that

19   Privacy Policy incorporated the Chrome Privacy Notice by express reference in the section titled

20   "Related Privacy Practices." *See* FAC, Ex. 16, Dkt. No. 163-16.

21   Further, "[t]he evidence of notice that must be established before an individual may be

22   deemed to have consented is greater than that required to show she had inquiry notice." *Frasco v.*

23   *Flo Health, Inc.*, 349 F.R.D. 557, 574-75 (N.D. Cal. 2025). Even "overt manifestation[s] of assent

24   or willingness" are not effective "if the defendant knew, or probably if he ought to have known in

25   the exercise of reasonable care, that the [other party] was mistaken as to the nature and quality of

26   the invasion intended." *Theofel v. Farey-Jones*, 359 F.3d 1066, 1073 (9th Cir. 2004) (citing

27   Restatement (Second) of Torts §§ 173, 892B(2)); *see also* Restatement (Second) of Torts § 892A

28   ("To be effective, consent must be … to the particular conduct, or to substantially the same conduct

1    [and] is effective only within the limits of [a] condition or restriction. If the actor exceeds the

2    consent, it is not effective for the excess.") This applies where there is a "substantial mistake …

3    concerning the nature of the invasion." *Theofel*, 359 F.3d at 1073. Here, Google has not cited to

4    any evidence, even if such evidence-based arguments were proper under Rule 12(b)(6), that it put

5    websites on even inquiry notice that the quality of the data Chrome sends to Google renders it

6    ***personal information***. A public statement that Google may use cookies and IP address alone is not

7    enough to establish consent to send this "quality" of data that Chrome sends to Google.

8           Finally, to establish consent, a defendant must show that the allegedly consenting party had

9    a choice in the matter. *Wade v. Sw. Bank*, 211 Cal.App.2d 392, 406 (1962) ("[C]onsent … means

10   a voluntary agreement by a person in the possession and exercise of sufficient mentality to make

11   an intelligent choice to do something proposed by another."); *see also In re Google RTB*, Dkt. No.

12   680, Mar, 7, 2024 Hearing Tr. at 75:9-16 ("Transparency and choice. It's kind of my mantra.").

13   Here, even if Google were to show that websites informed users that Chrome might send personal

14   information to Google in some circumstances in the absence of sync (no such evidence exists

15   anywhere), it still cannot show consent because it has been proven at trial "that Google possesses

16   monopoly power in the publisher ad server for open-web display advertising market," such that it

17   was able to make changes to "degrade [the product's] features without fear that its customers would

18   switch to alternative publisher ad servers." *United States v. Google LLC*, 778 F. Supp. 3d 797, 850

19   (E.D. Va. 2025). "In the words of a former Google and DoubleClick executive, switching publisher

20   ad servers 'takes an act of God to do' and is a 'nightmare' because 'nothing has such high switching

21   costs.'" *Id*. at 851. There are also a "lack of meaningful alternatives to [DoubleClick for

22   Publishers]" for websites serving ads. *Id.* The same Court found "that Google possesses monopoly

23   power in the ad exchange for open-web display advertising market." *Id*. at 852. As a result, Google

24   should be precluded from raising the website consent defense with respect to its DoubleClick

25   products under the doctrine of non-mutual offensive collateral estoppel. *See Parklane Hosiery Co.,*

26   *Inc. v. Shore*, 439 U.S. 322 (1979) (permitting use of the doctrine by private litigant in securities

27   case seeking to preclude re-litigation of finding in an action brought by SEC).

28           *Fourth*, even if a defendant demonstrates website consent, an exception to that affirmative

defense exists where "such communication is intercepted for the purpose of committing any criminal or tortious act[.]" 18 U.S.C. 2511(2)(d). In *Brown*, this Court explained that "consent is not a defense to Plaintiffs' [ECPA] claim because their communications were allegedly intercepted for the purpose of associating their data with user profiles." *Brown I*, 525 F.Supp.3d at 1068. Similarly, in *Planned Parenthood Federation of America, Inc. v. Center for Medical Progress*, the Court found that an "alleged purpose of *further* invading the privacy of plaintiffs[] . . . satisfies the exception." 214 F. Supp. 3d 808, 828 (N.D. Cal. 2016) (emphasis in original). Plaintiffs in this case allege that Google's interceptions "feed[] … into a massive interconnected database of surveillance material;" "constitute rank theft;" "constitute unlawful computer intrusion … and caused damage without authorization by turning the [Plaintiffs'] computers into surveillance machines." ¶¶ 10-12. Plaintiffs further alleged actionable claims for Intrusion Upon Seclusion (¶¶ 343-52); violation of the California Computer Data Access and Fraud Act (¶¶ 385-96); and statutory larceny (¶¶ 397-406). These allegations are sufficient. If the Court deems otherwise, Plaintiffs should be granted leave to amend to incorporate years of discovery into a Second Amended Complaint.

Moreover, a defendant's "financial motivation is not a get-out-of-liability-free card." *Stein v. Edward-Elmhurst Health*, 2025 WL 580556, at *6 (N.D. Ill. 2025) ("That's like saying that a bank robber's purpose was not to commit a crime - it was to make money."). Plaintiffs acknowledge some courts have gone the other way but submit Judge Tigar's recent opinion in *Riganian v. LiveRamp Holdings, Inc*., 2025 WL 2021802 (N.D. Cal. Jul. 18, 2025) as the most thoughtful on the topic. As Judge Tigar put it, "[p]ut simply, committing a tort and seeking a profit are not mutually exclusive (if anything, the latter is often the reason for the former)." *Id*. at *9 (collecting cases).

### 2.    The Ordinary Course of Business Exception Does Not Apply

The ECPA creates another affirmative defense where the device used for the interception is being used "by a provider of wire or electronic communication service in the ordinary course of its business." 18 U.S.C. § 2510(5)(a)(i). This exception applies "only where [defendant's] interception *facilitates* the transmission of the communication at issue or *is incidental* to the transmission of such communication." *Brown II*, 685 F. Supp. 3d at 934 (quoting *In re Google Assistant Priv. Litig.*,

457 F. Supp. 3d 797, 818 (N.D. Cal. 2020)) (emphasis in original). In other words, there "must be some nexus between the need to engage in the alleged interception and the provider's ultimate business, that is, the ability to provide the underlying service or good." *Id*. (quoting *Matera v. Google, Inc*., 2016 WL 8200619, at *7 (N.D. Cal. Aug. 12, 2016)).

In *Brown II*, this Court correctly rejected the argument that Google offers again here, explaining that the fact that "the second GET request is essential for Google's services, like Analytics, to work and is therefore core to Google's advertising business is tangential, at best, to whether it is necessary to 'facilitate a transmission of a communication' between a user and a third-party website." 685 F. Supp. 3d at 935. Nothing has changed for this motion. Here, like *Brown*, there is no dispute about how it works. As alleged in the FAC, "when a user clicks a hyperlink or hits ENTER to send a communication, Chrome … connects to and begins a back-and-forth … communication … between the user and the website." ¶ 124. Google source code then "command[s] Chrome to contemporaneously re-direct the precise content of the GET or POST part of the communication to Google and its various entities attached to personal information." ¶ 129. This works for Google's interceptions because Google "designed Chrome to send the personal information to Google *regardless of whether the user is logged-in to Google Sync*." ¶ 140 (emphasis in original). Chrome's design is that last causal factor in whether the data sent to Google is "personal information."

The FAC gives an example: a communication between a Chrome user and the San Jose Mercury News website about "Mental health tips for handling the pandemic." ¶¶ 143-160. "Chrome … immediately communicates a GET request on behalf of the user to The Mercury News" asking for the article with the content "/2020/05/24/qa-mental-health-tips-for-handling-the-pandemic." ¶¶ 145-146. "The user's simple act of clicking a mouse to begin the communication with The Mercury News about Mental Health Tips for Handling the Pandemic triggers a set of contemporaneous, ongoing connections between Chrome and The Mercury News—and the contemporaneous redirection of the contents of the communication between the user and The Mercury News to various Google properties." ¶ 147. "Google's source code and *the Chrome browser then immediately re-direct* the content of the user's side of the communication and the Mercury News'

1  response to Google Tag Manager, Google Ads, Google DoubleClick, Google Analytics, and

2  Google Captcha." ¶ 148. "*Chrome copies and re-directs*" communication contents

3  ("2020/05/24/qa-mental-health-tips-for-handling-the-pandemic"); X-client data headers; IP

4  address and User-Agent; and different persistent, unique cookies regardless of whether the user is

5  synced. ¶¶ 152-160.

6      In *Brown I*, Google argued (like here) that "the underlying service or good … is [Google's]

7  analytics and ad services, not the communication between the user's computer and the website."

8  525 F. Supp. 3d at 1072. However, the Court rightly pointed out that "the allegedly intercepted

9  communication … is the communication between the user's computer and the website" while "the

10 communication between the user's computer and Google is an unrelated communication." *Id*.

11     Google argues that this case is different because, it claims, "Plaintiffs fail to plausibly allege

12 that Chrome is the intercepting 'device' here" because "Plaintiffs do not allege, for example, that

13 Chrome automatically sends every user 'communication' with websites to Google." Mot. at 9. But

14 such allegation is not required. Plaintiffs allege that Google used six "devices" under the ECPA:

15 cookies, "the Plaintiffs' browsers;" "the Plaintiffs' computing devices;" Google's webservers, the

16 websites' webservers, and the computer code deployed by Google. ¶ 277. Plaintiffs also allege that

17 Chrome sends personal information at-issue in this case on "up to 86 percent of popular websites."

18 ¶ 129(b).

19          3.    *Google Intercepted "Contents"*

20     As defined under the ECPA, "contents, when used with respect to any … electronic

21 communication, includes *any information* concerning the substance, purport, or meaning of that

22 communication." 18 U.S.C. § 2510(8) (emphasis added). There is no serious question that the term

23 covers full-string URLs—just as this Court has ruled on at least two prior occasions. In *Brown II*,

24 this Court held that a full-string URL like www.washingtonpost.com/world/2022/02/18/russia-

25 ukraine-updates contained ECPA "contents" because it "is not like the 'outside of an envelope,'

26 revealing the address and name of the recipient, but instead the contents of a letter." 685 F. Supp.

27 3d at 935-36. This Court explained, "In *Facebook Tracking*, the Ninth Circuit held that these 'full-

28 string detailed URLs' are distinct" from the data discussed in Zynga because "[t]he URLs, by virtue

of including the particular documents within a website that a person views, reveals much more information … divulging a user's personal interests, queries, and habits." *Id*. Similarly, in *In re Google RTB Consumer Privacy Litigation*, 606 F. Supp. 3d 935, 949 (N.D. Cal. 2022) this Court denied Google's motion to dismiss, holding that allegations of URL interceptions adequately alleged the "content" element.

So too here. Plaintiffs provided a general example of at-issue content at ¶¶ 143-152 (www.mercurynews.com/2020/05/24/qa-mental-health-tips-for-handling-the-pandemic); specific examples for Plaintiffs Calhoun (¶¶ 161-166) and Crespo (¶¶ 175-180), and statements that Plaintiffs had similar information for each Named Plaintiff that "demonstrate that Chrome sent her personal information to Google when [they were] not synced," just the examples provided for Plaintiffs Calhoun and Crespo. ¶¶ 187 (Kindler); 192 (Wilson); 193 (Johnson); 194 (Henry).

Plaintiffs respectfully submit that this Court's prior rulings appear close to reaching black-letter law status in cases involving the types of technology at-issue here. In addition to this Court's prior decisions and the Ninth Circuit's decision in *Facebook Internet Tracking,* 956 F.3d at 589, that the Court relied upon, nearly every other judge in the Northern District of California has agreed with this Court's prior ruling.[5] This is for good reason: it has long been understood that "content"

---

[5] *See, e.g., In re Meta Pixel Healthcare Litig*., 647 F. Supp. 3d 778, 795 (N.D. Cal. 2022) (Orrick, J.); *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1076 (N.D. Cal. 2023) (Orrick, J.); *Gabrielli v. Haleon US Inc.*, 2025 WL 2494368, at *10-11 (N.D. Cal. Aug. 29, 2025) (Orrick, J.); *M.G. v. Therapymatch, Inc*., 2024 WL 4219992, at *4 (N.D. Cal. Sept. 16, 2024) ("[D]escriptive URLs are 'contents' … because they reveal the 'path' and 'query string'") (Martinez-Olguin, J.); *Smith v. Rack Room Shoes, Inc*., 2025 WL 1085169, at *4 (N.D. Cal. Apr. 4, 2025) (Lin, J.) ("a basic URL that directs to the homepage of a website is often found not to be content, while detailed URLs reflecting users' queries can be 'content.'"); *St. Aubin v. Carbon Health Tech., Inc*., 2024 WL 4369675, at *4-5 (N.D. Cal. Oct. 1, 2024) (Tigar, J.) (example of www.carbonhealth.com/get-care/pap-smear); *Hammerling v. Google, LLC*, 615 F. Supp. 3d 1069, 1093 (N.D. Cal. 2022) (Breyer, J.) ("[W]hen [URLs] reproduce a person's personal search engine queries, they are contents."); *Doe I v. Google LLC*, 2025 WL 1616720, *3 (N.D. Cal. June 6, 2025) (Chhabria, J.) (the URLs collected contained both the path and the query string, which were "contents"); *Gershzon v. Meta Platforms, Inc*., 2023 WL 5420234, at *12 (N.D. Cal. Aug. 22, 2023) (Illston, J.) (when URLs reproduce a person's personal search engine queries they are contents); *Katz-Lacabe v. Oracle America, Inc.*, 668 F. Supp. 3d 928, 944-45 (N.D. Cal. 2023) (Seeborg, J.) (plaintiffs sufficiently alleged referrer URLs as "contents," though URLs with user-searched content and full-string detailed URLs stronger examples of "contents"); *Campbell v. Facebook Inc.*, 315 F.R.D. 250, 265 (N.D. Cal. 2016) (Hamilton, J.) ("The fact that the substance of the message happens to be in the form of a URL does not transform it from "content" to "record information"); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1083 (N.D. Cal. 2015) (Chen, J.) ("The parties agree that Plaintiffs' allegations that the Carrier IQ Software intercepted…URLs (to the extent the URLs contain a user's search terms) implicate 'content' under the Wiretap Act."); *Yoon v. Meta Platforms, Inc.*, 2024 WL

1    under the ECPA protects "movement around the Internet to different websites and so on," such as

2    "the second and third and below level URLs, which are indications of, once you visit a website,

3    what exactly you are looking at on the website." H.R. Rep. No. 107-236 at 294 (PATRIOT Act

4    legislative history) ("If someone were able to follow somebody as they surfed the Internet and saw

5    every single page they looked at, they could write quite a convincing dossier about that individual

6    without ever having obtained any court order to obtain that level of information.").

7          Google's cases support the Plaintiffs or are inapposite. *Zynga* supports the Plaintiffs because

8    it distinguished the Facebook URLs at issue in that case (that only contained www.facebook.com

9    and information identifying the owner of a Facebook page, like www.facebook.com/nytimes) with

10    "a search term *or similar communication* made by [a] user" contain contents, i.e. "a person's

11    intended message to another." 750 F.3d at 1106, 1109. Here, the information in the file path of a

12    URL includes information about the substance, purport, or meaning of an intended message. In

13    *Griffith v. TikTok, Inc.*, 2024 WL 5279224, at *10 (C.D. Cal. Dec. 24, 2024), the Court ruled for

14    the defendant on summary judgment "because Plaintiffs produce[d] no evidence of any contents of

15    a communication that Defendants obtained from them" but took care to distinguish the facts from

16    this Court's ruling in *Brown II*. All other cases cited by Google do not address the personal

17    information claims. *Hughes v. Vivint, Inc.*, 2024 WL 5179916 (C.D. Cal. Jul. 12, 2024) and

18    *Kishnani v. Royal Caribbean Cruises, Ltd.*, 2025 WL 1745726 (N.D. Cal. Jun. 24, 2025), are pen

19    register cases. *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082-83 (C.D. Cal. 2021) and

20    *Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 70 (W.D. Pa. 2023) consider "session replay"

21    technology, not the conduct at-issue here. And *Gonzeles v. Uber Tech., Inc.*, 305 F. Supp. 3d 1078,

22    1084 (N.D. Cal. 2018) was decided before *Facebook Internet Tracking* and involved identifiers,

23    geolocation, pricing, and willingness to provide a ride, not URLs. Finally, in *King v. Hard Rock*

24    *Café Int'l (USA), Inc.*, 2025 WL 1635419, at *4 (E.D. Cal. Jun. 9, 2025), the Court acknowledged

25    that "descriptive URLs that reveal specific information about a user's queries may reflect the

26    contents of communications," but held that the complaint in that case was "devoid" of any such

27

28    5264041, *5 (N.D. Cal. Dec. 30, 2024) (Cousins, M.J.) (finding intercepted URLs and titles of
videos constituted "contents").

1    allegations specific to the Plaintiff. That is not the case here.

2                    *4.    In the Alternative, the Court Should Grant Plaintiffs Leave to Amend*

3           A district court "should freely give leave [to amend] when justice so requires." Fed. R. Civ.

4    P. 15(a). The purpose underlying the liberal amendment policy is to "facilitate decision on the

5    merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th

6    Cir. 2000). Therefore, leave to amend should be granted unless the Court determines "that the

7    pleading could not possibly be cured by the allegation of other facts." *Id*. (quoting *Doe v. United

8    States*, 8 F.3d 494, 497 (9th Cir. 1995)). As discussed in the Introduction, *supra*, fact discovery in

9    this case proceeded on the prioritized claims, putting Plaintiffs in a position to amend their ECPA

10   claim to conform to proof.

11          **B.    Plaintiffs Adequately State an Invasion of Privacy Claim (Count 6)**

12          Google argues that American residents generally have no reasonable expectation of privacy

13   in their internet browsing history. Mot. at 13, citing *Hubbard v. Google*, 2024 WL 3302066, at *7

14   (N.D. Cal. Jul. 1, 2024); *Thomas v. Papa Johns Int'l, Inc*., 2024 WL 2060140, at *2 (S.D. Cal. May

15   8, 2024). However, Google's cherry-picked cases are nothing like this one, and the differences are

16   outcome-determinative. In *Hubbard*, the issue was whether there was a reasonable expectation of

17   privacy that Google would not collect information when the plaintiffs were on YouTube, a website

18   owned *by Google* – whereas this case challenges Google's tracking activities on *non-Google*

19   websites. In *Papa John's*, the Plaintiffs sued for similar activity—including deployment of Session

20   Reply technology that did not include any specific allegations about the Defendant's actions.

21          Worse for Google's argument, this Court has already rejected Google's argument with

22   respect to the Intrusion claim, which also has an identical "expectation of privacy" prong:

23          Plaintiffs have adequately alleged that they had a reasonable expectation of privacy
            based on the amount of data collected, the sensitivity of the data collected, and the
24          nature of the data collection. Indeed, as explained above, the instant case involves
            the same data and the same process by which the data was collected as *Facebook
25          Tracking*. Compare *id*. at 607 (describing how Facebook's code directs the user's
            browser to copy the referrer header and sends a duplicate request to Facebook) with
26          Compl. ¶ 122 (describing how Google's code directs the user's browser to send a
            duplicate request to Google). Like in Facebook Tracking, the amount of data
27          collected and the nature of the data collection demonstrate that Plaintiffs had a
            reasonable expectation of privacy. Like in Facebook Tracking, Plaintiffs allege that
28          the amount of data collected was vast. *See* Compl. ¶ 122 (alleging that "up to 86

percent of popular websites" use Google's code). Finally, like in *Facebook Tracking*, Plaintiffs allege that a vast amount of data was collected secretly, without any notice to users. *Id.* ¶ 5 (alleging that "Chrome secretly sends personal information to Google even when a Chrome user does not Sync").

*Calhoun*, 526 F. Supp. 3d at 629.

Google declined to argue that "reasonable expectation of privacy" in the Intrusion count should be interpreted any differently than in the Invasion of Privacy count and is therefore waived. And to the extent it is considered a motion for reconsideration of the Court's 2021 Order, it should also be rejected for violating Civil Local Rule 7-9. And in addition, the very authority cited by Google (*Papa John's*) explicitly recognized that "courts have found users have a reasonable expectation of privacy *if a company states it will not collect your information in certain spaces*." *Id.* at *2 (emphasis added) (citing *Calhoun*, 526 F. Supp. 3d at 630; *Facebook Internet Tracking*, 956 F.3d at 601-03; and *Brown II*, 685 F. Supp. 3d at 937-39).

Google also gets the facts and the law wrong on whether Plaintiffs have adequately alleged a "serious invasion of privacy." To start, Google misstates the nature of the case. Google offered a product to hundreds of millions of Americans while expressly promising Chrome would not send their personal information to Google unless the browser were synced with a Google account. But that device – Chrome – sent personal information to Google when interacting with "up to 86 percent" of popular websites. ¶ 129(b). The cases that Google cites are nothing like this. *Hubbard* asked about Google's conduct on its own website, as discussed above. This case in contrast involves Google's conduct on *non-Google* websites. Google's citations to *Papa John's* and *Popa v. Microsoft Corp*., 2025 WL 2448824 (9th Cir. Aug. 26, 2025), Mot. at 14, involved a single pizza website and a pet store's website, respectively. This case is not about a single website, pizza, or pet stores. Furthermore, the Ninth Circuit in *Popa* emphasized that *Facebook Internet Tracking* remains good law because Facebook tracked users on a personally identifiable basis after they logged out of their accounts, across multiple websites, contrary to promises in the Facebook Help Center. *Popa*, 2025 WL 2448824, at *8. Google is alleged here to track Chrome users, even if not synced with a Google account, across multiple websites, and the relevant Circuit authority is *Facebook Internet Tracking*, not *Popa*. In *Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 974 (S.D. Cal. 2023), the Court found that plaintiffs adequately stated a claim on re-pleading. In

*Hammerling v. Google*, 615 F.Supp.3d 1069 (N.D. Cal. 2022), the plaintiffs only alleged unauthorized collection of app usage and engagement information—not communications content. More importantly, the Ninth Circuit distinguished *Hammerling* in this very case. *Calhoun*, 113 F.4th at 1149 (stating that *Hammerling* is inapposite because plaintiffs in that case did "not argue[] that … Google had service-specific privacy policies that could reasonably be read to say the opposite").

Furthermore, in *Facebook Internet Tracking*, the Ninth Circuit held that a reasonable expectation can arise simply from defendant's express promises not to collect the data, calling that fact "critical." 956 F.3d at 602-03 ("[T]he critical fact was that the online entity represented to the plaintiffs that their information would not be collected, but then proceeded to collect it anyway.") (discussing *Google Cookie*, 806 F.3d at 129 and *In re Nickelodeon*, 827 F.3d 262, 293-94 (3d Cir. 2016)). In *Calhoun*, the Ninth Circuit made the same observation – a reasonable expectation of privacy can arise from a promise of privacy. 113 F.4th at 1150. Google's motion ignores this key point.

The bar is incredibly high for Google to prevail on a motion to dismiss on the "serious invasion" element. As Judge Tigar recently explained, "Under California law, courts must be reluctant to reach a conclusion at the pleading stage about how … serious the privacy intrusion is." *Riganian*, 2025 WL 2021802, at *7 (quoting *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 797 (N.D. Cal. 2019)). Here, a ruling in Google's favor has no support in prior case law and would conflict with the Ninth Circuit's remand order.

Google's argument that "violations of law do not necessarily represent highly offensive behavior" is certainly correct as a general statement. Mot. at 15 (quoting *Hubbard,* 2024 WL 3302066, at *8). A minor speeding infraction is not highly offensive. But alleged violations of federal and State wiretapping laws and statutory larceny, coupled with the allegations that the non-consensual data collection was "vast and sensitive" means that at the pleading stage, Google cannot prevail. *See also Brown II*, 685 F. Supp. 3d at 941 (denying motion for summary judgment on the Intrusion count). *Hubbard* is inapposite because there were no allegations of deception, nor a violation of any criminal laws. *Fogelstrom v. Lamps Plus, Inc.*, *see* Mot. at 15, does not help Google

1    either, as neither the data collected (customer zip code), nor the means of collection (asking the

2    customer directly, not surreptitiously) come close to Google's conduct here. 195 Cal. App. 4th 986,

3    992 (2011), as modified (June 7, 2011). Those limited intrusions are fundamentally different than

4    the scale of privacy violation at issue here.

5          Finally, non-Californians may invoke the protection of the California Constitution where

6    the defendant adopts California law in its own contract and both directs and engages in the activities

7    in the state of California, as is alleged here, ¶ 6, a contractual provision not disputed by Google.

8    The California Supreme Court has long recognized "strong policy considerations favoring the

9    enforcement of freely negotiated choice-of-law clauses," *see Nedlloyd Lines B.V. v. Superior Court*,

10   3 Cal.4th 459 (1992), and extended *Nedlloyd* to consumer contracts of adhesion in 2001. *See*

11   *Washington Mut. Bank, FA v. Superior Court*, 24 Cal.4th 906, 918 (2001) ("we conclude *Nedlloyd*'s

12   analysis is properly applied in the context of consumer adhesion contracts"). Google's motion cites

13   case law limiting the extraterritoriality of this cause of action under traditional choice-of-law

14   analysis, Mot. at 13, but such authority is irrelevant when Google's own contract designates

15   California law nationwide. Google's motion makes no mention of these California Supreme Court

16   cases and does not attempt to argue against application of the contractual provision it wrote.

17   **C.    Plaintiffs Adequately State a Quasi-Contract Claim for Disgorgement of**
         **Unjust Enrichment in the Alternative (Count 10)**

18

19         Plaintiffs plead an unjust enrichment / quasi-contract claim "in the alternative to the contract

20   claims." ¶ 374. Google argues that because it has "never disputed" that *"an"* enforceable contract

21   exists (Mot. at 16), there is no dispute as to what constitutes the contract at issue. But at the pleading

22   change, Plaintiffs need not choose. At trial, if Google defeats the contract claim, Plaintiffs should

23   be permitted to proceed with its quasi-contract claim. *Doe,*, 690 F. Supp. 3d at 1086 (Plaintiffs

24   may plead a quasi-contract claim as an alternative, even if the contract claim can be read to cover

25   plaintiffs' allegations that Meta sold data without consent and unjustly retained the proceeds); *Cal.*

26   *Spine & Neurology Inst. v. United Healthcare Ins. Co.*, 2019 WL 4450842, at *4 (N.D. Cal. Sept.

27   17, 2019) (express and implied contract claims may be alternatively pled).

28         Google is also wrong that Plaintiffs are not "entitled to 'force the disgorgement of

Defendant's unjustly earned profits.'" Mot. at 16. Under California law, there are two types of disgorgement remedies: "restitutionary disgorgement, which focuses on the plaintiff's loss, and nonrestitutionary disgorgement, which focuses on the defendant's unjust enrichment." *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1113 (N.D. Cal. 2018) (quoting *In re Tobacco Cases II*, 240 Cal. App. 4th 779, 800, 192 Cal.Rptr.3d 881 (2015)). Here, Plaintiffs seek non-restitutionary disgorgement of Defendant's unjustly earned profits. "California law recognizes a right to disgorgement of profits resulting from unjust enrichment, even where an individual has not suffered a corresponding loss." *Facebook Internet Tracking*, 956 F.3d at 599.

### D.    Plaintiffs Adequately State a CDAFA Claim (Count 12)

Google advances three arguments for dismissing the CDAFA claim. All three would require this Court to reverse its prior rulings in *Brown,* and two have been foreclosed by the Ninth Circuit. Google also ignores two recent decisions in this District rejecting its arguments, including *Rodriguez*, where a jury returned a CDAFA verdict against Google involving similar conduct.

***Without Permission***: Google argues that to act "without permission" requires that Google overcome a technical or code-based barrier. Mot. at 17. Google acknowledges that its argument has already been rejected in *Brown*, but asks for reconsideration to avoid the "constitutionally untenable situation in which criminal penalties could be meted out on the basis of violating vague or ambiguous terms of use." Mot. at 17, n.19 (citing *Facebook v. Power Ventures, Inc.*, 2010 WL 3291750, at *11 (N.D. Cal. July 20, 2010)). Google's lenity argument ignores that the Ninth Circuit has rejected Google's argument, *see Brown II*, 685 F. Supp. 3d at 940 & n.38 (citing *United States v. Christensen*, 825 F.3d 763, 789 (9th Cir. 2015)) and Google also seems to presuppose "vague or ambiguous" terms of use. But Google has already taken the position that its terms are clear and unambiguous – that was the basis for its summary judgment motion, *see* Dkt. No. 395 – further emphasizing the correctness of the Court's rejection of Google's lenity argument in *Brown*.

In any event, Google offered no basis to disregard the Ninth Circuit's ruling in *Christensen*, nor did Google even cite *Christensen*. Google instead cites *Power Ventures*. But Google failed to note that, in that same case, the Ninth Circuit on appeal held that a mere letter could be the basis for revoking consent; overcoming technological barriers not required. *Facebook, Inc. v. Power*

*Ventures, Inc*., 844 F.3d 1058, 1069 (9th Cir. 2016) ("*Power Ventures II*") ("when Facebook sent the cease and desist letter, Power, as it conceded, knew that it no longer had permission to access Facebook's computers at all. Power, therefore, knowingly accessed and without permission took, copied, and made use of Facebook's data. Accordingly, we affirm *in part* the district court's holding that Power violated section 502.") (emphasis added); *accord*, *Cherkin v. PowerSchool Holdings, Inc*., 2025 WL 844378, at *6 (N.D. Cal. Mar. 17, 2025) ("Ninth Circuit precedent makes clear that is not necessary to constitute a violation of CDAFA.").

    *Access*: Google also argues that first-party websites, not Google, accessing the sending computer and Google merely receives the data. Mot. at 17. This Court rejected the identical argument in *Brown*. Google acknowledges this, Mot. at 18, n.20, but asks for reconsideration of that ruling. Google believes the better authority is *Meta Platforms, Inc. v. BrandTotal Ltd*., 605 F. Supp. 3d 1218 (N.D. Cal. 2022) (a case distinguished in *Brown*), which held that mere "reactive" receipt of data is not "access" to the sending computer. But Google is not just a passive recipient of data. Google *wrote the code* used on first-party websites that is designed for the very purpose of sending the data to Google. Google also instructs developers how to use Google code to ensure that Google gets the data. *See* FAC ¶ 130 ("Google instructs developers to place its code 'as close to the opening <head> tag as possible on every page of your website.'"); ¶ 131 (Google code designed to redirect information to Google "as soon as possible"); ¶ 137 (transmissions caused by Google source code on websites, and Google-designed Chrome browser, in combination causing the data to be sent to Google); ¶ 140 (same). Google also developed the Chrome software and Plaintiffs alleged in detail how this Google software transforms the web browsing data, adds cookies and other identifiers and sends it to Google. ¶¶ 113-141. Thus, Google wrote the code used by websites that triggers the data flow and instructed websites how to use it; Google designed the browser that creates and transmits the personal data; and Google receives the data. This complete control of the data stream is the opposite of Google just being a "reactive" recipient of data. Google's citation to *New Show Studios LLC v. Needle*, 2014 WL 2988271 (C.D. Cal. June 30, 2014) is not relevant because the plaintiff only alleged an ordinary trade secret misappropriation case – misappropriation of sensitive business information, but no allegation that it was taken from a computer. *Id*. at *6.

Google also argues that "access" requires the use of a "contaminant" which Google contends is absent here. In support, Google cites *Doe*, 690 F. Supp. 3d at 1083, which Google contends limits "contaminants" to viruses, worms or other "malware" usurping the normal operation of a computer. Mot. at 18. But a later decision in the same (later renamed) case, holds that Meta's pixel (transmitted to the user's browser as a cookie which in turn transmits information to Facebook) can be a contaminant. *In re Meta Healthcare Pixel Litig.*, 713 F. Supp. 3d 650, 657 (N.D. Cal. 2024) (denying motion to dismiss CDAFA claim). Plaintiffs also alleged that the "contaminants" introduced by Google are cookies that transmit information back to Google. ¶ 393; *see also* ¶ 138 (alleging use of tracking pixels). These allegations plead a "contaminant" even in the authority cited by Google.

**Damage or Loss**: Google again asks this Court to reconsider its holding in *Brown,* this time to hold that "damage or loss" under the CDAFA requires physical damage to a device, and to exclude damage or loss resulting from unjust enrichment. Mot. at 19, n.21. Google acknowledges that Judge Seeborg agreed with *Brown* earlier this year in a case <u>against Google</u>, *see id.* (citing *Rodriguez*, 772 F. Supp. 3d at 1110) (finding CDAFA standing where "Google profited from the misappropriation of [plaintiff] data"), but does not attempt to address the Ninth Circuit's holding that unjust enrichment is sufficient under the statute. *Facebook Internet Tracking*, 956 F.3d at 600-01; *accord Rack Room Shoes, Inc.*, 2025 WL 2210002, at *3 ("disgorgement theory" can satisfy CDAFA standing).

Google cites one case finding the right to disgorgement to be an insufficient basis for injury and standing under the CDAFA. *See* Mot. at 20 (*Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1048 (N.D. Cal. 2025)). Respectfully, Plaintiffs believe this decision is wrongly decided in part because it is inconsistent with the Ninth Circuit's *Facebook Internet Tracking* opinion. Further, Google ignores that "any amount of damage or loss may be sufficient" under the Act, *Power Ventures, Inc.*, 2010 WL 3291750, at *4, when it tries to analogize the CDAFA to the CFAA's $5,000.00 damages threshold. Google's other citations reject restitutionary measures of loss for the loss of value of PII, but do not address right to disgorgement of unjust enrichment, as the Ninth Circuit did.

1

2

**E.    Plaintiffs Adequately Pled Punitive Damages Under California Law but Concede it is Not a Separate Claim (Count 15)**

3

"In California, punitive damages may be awarded 'where it is proven by clear and

4

convincing evidence that the defendant has been guilty of oppression, fraud, or malice.'" *Fausto v.*

5

*Credigy Svcs Corp*., 598 F. Supp. 2d 1049, 1057 (N.D. Cal. 2009) (quoting Cal. Civ. Code § 3294).

6

Punitive damages are available in privacy cases. *Id*. ("[T]he Court finds that punitive damages are

7

available for Plaintiffs' intrusion upon seclusion cause of action"). Even where claims for punitive

8

damages rest on the malice or fraudulent prong, allegations of "[m]alice, intent, knowledge, and

9

other conditions of a person's mind may be alleged generally." *Petrash v. Biomet Orthopedics,*

10

*LLC*, 2019 WL 8013939 at *5 (N.D. Cal. June 6, 2019) (quoting Fed. R. Civ. P. 9(b)). "Applying

11

this principle, courts have concluded 'a plaintiff may include a short and plain prayer for punitive

12

damages that relies entirely on unsupported and conclusory averments of malice or fraudulent

13

intent.'" *Id*. (quoting *Rees v. PNC Bank, N.A.*, 308 F.R.D. 266, 273 (N.D. Cal. 2015)); *see also*

14

*Kaffaga v. Estate of Steinbeck*, 938 F.3d 1006, 1016 (9th Cir. 2019) ("The requisite intent to support

15

punitive damages" may be proved "by implication (by indirect evidence from which the jury may

16

draw inferences)") (internal citations omitted). Furthermore, under *Erie*, Section 3294 is "a

17

substantive law, as it *establishes a right* to recover punitive damages, and lists the essential

18

elements, rather than laying out a procedural requirement." *Jackson v. East Bay Hosp*., 980 F. Supp.

19

1341, 1353 (N.D. Cal. 1997).

20

Google's motion does not argue that punitive damages are unavailable for any claim in this

21

case, nor does it argue that Plaintiffs failed to allege sufficient facts to support a request for punitive

22

damages. Instead, Google argues that punitive damages are a remedy, and not a separate standalone

23

cause of action. Mot. at 20. Most Courts agree with Google, and Plaintiffs concede the technical

24

point. However, Plaintiffs' claim for punitive damages as a remedy is well-pled, and not challenged

25

by Google, and the Complaint should be read to allege and preserve the statutory claim as a remedy,

26

as other Courts have done. *See, e.g., Rollolazo v. BMW of North America, LLC*, 2017 WL 1536456,

27

at *21 (C.D. Cal. Feb. 3, 2017) ("Accordingly, the Court GRANTS without leave to amend

28

Defendant's Motion with respect to the 'exemplary damages' claim as a separately stated cause of

1  action. However, the Court's ruling does not prevent Plaintiffs from pleading 'the facts and

2  circumstances set forth in Civil Code section 3294' and seeking exemplary damages as a remedy.");

3  *Reynolds v. Shure*, 148 F. Supp. 3d 928, 935 (E.D. Cal. 2015) ("Accordingly, the court will dismiss

4  the punitive action claim as a cause of action but permit plaintiff to seek punitive damages as a

5  remedy.").

6      **F.    Plaintiffs Adequately State a Claim for Declaratory Relief (Count 16)**

7          Plaintiffs seek a judgment under 28 U.S.C. § 2201 that includes a declaration that (a) the

8  Chrome Privacy Notice is part of the contract; (b) the at issue data Chrome sends to Google is

9  "Personal Information under the terms of the contract and under California law;" and (c) "Google

10  *is in breach* of its contracts with Plaintiffs and signed-out Chrome users by causing PI to be sent

11  from Chrome to Google." ¶¶ 426-28 (emphasis added).

12          In its motion, Google relies solely on *Jensen v. Quality Loan Serv. Corp*., 702 F. Supp. 2d

13  1183, 1189 (E.D. Cal. 2010) to argue Plaintiffs cannot do so because they also have "a fully matured

14  cause of action for money" and have "alleged a substantive cause of action" with "'identical issues'

15  subsumed within the first." *Jensen* was a *pro se* action removed from state to federal court based

16  on a federal RESPA claim under 12 U.S.C. § 2601, not a claim for declaratory judgment under 28

17  U.S.C. § 2201. *Id.* at 1186-88. In dismissing the claim, the *Jensen* Court only examined California

18  state law on claims for declaratory relief—not the applicable federal statute pled here, which does

19  not include any such limitation.

20          To the contrary, federal law provides that permits a claim for declaratory judgment where

21  there is an "actual controversy" to "declare the rights and other legal relations of any interested

22  party seeking such declaration, *whether or not further relief is or could be sought*." 28 U.S.C. §

23  2201 (emphasis added). *Jensen* acknowledges that an action for declaratory judgment is appropriate

24  where "the remedy is to be used in the interests of preventative justice, to declare rights rather than

25  execute them." *Jensen*, 702 F. Supp. 2d at 1188. Similarly, in *In re Adobe Systems, Inc. Privacy*

26  *Litig.*, 66 F. Supp. 3d 1197, 1222 (N.D. Cal. 2014), the Court explained that an action under 28

27  U.S.C. § 2201 may proceed to "seek a declaration clarifying [the defendant's] ongoing contractual

28  obligation to provide reasonable security," which "requests precisely the type of relief that the

1    Declaratory Judgment Act is supposed to provide: a declaration that will prevent future harm from

2    ongoing and future violations before the harm occurs." Plaintiffs seek a declaration of ongoing

3    rights—which Google has acknowledged is "a live issue that Plaintiffs will surely continue to

4    litigate as the case advances." Google Opp. to Mot. for Interlocutory Appeal, Dkt. No. 1119 at 16,

5    Question 5.

6    **V.      CONCLUSION**

7         Plaintiffs concede that their claim for punitive damages (Count 15) is a remedy under

8    California law, not a separate count, and withdraw Count 15. Otherwise, Plaintiffs request that the

9    Court deny Google's motion to dismiss the other five Dormant Claims. In the alternative, Plaintiffs

10   seek leave to amend dormant claims to conform to proof.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated: October 9, 2025                          Respectfully submitted,

**BLEICHMAR FONTI & AULD LLP**           **SIMMONS HANLY CONROY LLP**

By:    */s/ Lesley E. Weaver*                   By:        */s/ Jay Barnes*
Lesley E. Weaver (SBN 191305)            Jason 'Jay' Barnes (admitted *pro hac vice*)
Anne K. Davis (SBN 267909)               Jayne Conroy (admitted *pro hac vice*)
Joshua D. Samra (SBN 313050)             An Truong (admitted *pro hac vice*)
1330 Broadway, Suite 630                 112 Madison Avenue, 7th Floor
Oakland, CA 94612                        New York, NY 10016
Tel.: (415) 445-4003                     Tel.: (212) 784-6400
Fax: (415) 445-4020                      Fax: (212) 213-5949
*lweaver@bfalaw.com*                     *jaybarnes@simmonsfirm.com*
*adavis@bfalaw.com*                      *jconroy@ simmonsfirm.com*
*jsamra@bfalaw.com*                      *atruong@simmonsfirm.com*

Gregory S. Mullens (admitted *pro hac vice*)   Eric Johnson (admitted *pro hac vice*)
75 Virginia Road, 2nd Floor              Jennifer 'Jenny' Paulson (admitted *pro hac vice*)
White Plains, New York 10603             One Court Street
Tel.: (415) 445-4006                     Alton, IL 62002
*gmullens@bfalaw.com*                    Tel.: 618-693-3104
                                         *ejohnson@simmonsfirm.com*
**DiCELLO LEVITT LLP**                   *jpaulson@simmonsfirm.com*

By:    */s/ David A. Straite*
David A. Straite (admitted *pro hac vice*)
Corban Rhodes (admitted *pro hac vice*)
485 Lexington Avenue, Suite 1001
New York, NY 10017
Tel.: (646) 933-1000
*dstraite@dicellolevitt.com*
*crhodes@dicellolevitt.com*

Amy E. Keller (admitted *pro hac vice*)
Adam Prom (admitted *pro hac vice*)
Julia Veeser (admitted *pro hac vice*)
Ten North Dearborn St., Sixth Floor
Chicago, IL 60602
Tel.: (312) 214-7900
*akeller@dicellolevitt.com*
*aprom@dicellolevitt.com*
*jveeser@dicellolevitt.com*

*Counsel for Plaintiffs and the Putative Class*

1

## **ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(h)(3)**

2

      I, David A. Straite attest that concurrence in the filing of this document has been obtained

3

from the other signatories. I declare under penalty of perjury that the foregoing is true and correct.

4

Executed this 9th Day of October, 2025, at New York, New York.

5

6

                                     By      */s/ David Straite*
                                                David A. Straite

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>CERTIFICATE OF SERVICE</u>

2

3      I, David A. Straite, hereby certify that on October 9, 2025, I caused to be electronically filed

4  the foregoing document with the Clerk of the United States District Court for the Northern District

5  of California using the CM/ECF system, which will send electronic notification to all counsel of

6  record.

                                    */s/David Straite*
7                                      David A. Straite

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28