**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Stephen A. Broome (CA Bar No. 314605)
stephenbroome@quinnemanuel.com
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
Crystal Nix-Hines (CA Bar No. 326971)
crystalnixhines@quinnemanuel.com
Alyssa G. Olson (CA Bar No. 305705)
alyolson@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
Teuta Fani (admitted *pro hac vice*)
teutafani@quinnemanuel.com
Joseph H. Margolies (admitted *pro hac vice*)
josephmargolies@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Xi ("Tracy") Gao (CA Bar No. 326266)
tracygao@quinnemanuel.com
Carl Spilly (admitted *pro hac vice*)
carlspilly@quinnemanuel.com
1300 I Street NW, Suite 900
Washington D.C., 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

*Counsel for Defendant Google LLC*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

PATRICK CALHOUN, *et al*., on behalf of themselves and all others similarly situated,

Plaintiffs,

- v -

GOOGLE LLC,

Defendant.

Case No. 4:20-cv-05146-YGR-SVK
**GOOGLE LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS DORMANT CLAIMS**

The Honorable Yvonne Gonzalez Rogers
Hearing: None Set (Dkt. 1135)
Amended Complaint Filed: April 16, 2021
Trial Date: None Set

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ..................................................................................1

II.   ARGUMENT ........................................................................................................1

    A.    Google's Motion Seeks New Relief, Not Reconsideration .........................................1

    B.    Plaintiffs' Federal Wiretap Act Claim (Count One) Should Be Dismissed .............2

        1.    Websites Consented to Google's Receipt of the Data.....................................2

        2.    Google Received the Data in the Ordinary Course of Business ...................7

        3.    Plaintiffs Do Not Allege Google Intercepted Contents................................8

    C.    Plaintiffs' Invasion of Privacy Claim (Count Six) Should Be Dismissed...............10

        1.    Plaintiffs Fail to Allege a Reasonable Expectation of Privacy ...................10

        2.    Plaintiffs Fail to Allege a Serious Invasion of Privacy ..............................10

    D.    Plaintiffs' Quasi-Contract Claim (Count Ten) Should Be Dismissed....................12

    E.    Plaintiffs' CDAFA Claim (Count Twelve) Should Be Dismissed..........................12

        1.    Google Did Not Take Data Without Permission...........................................12

        2.    Google Did Not "Access" Plaintiffs' Computers.........................................13

        3.    Plaintiffs Suffered No Statutory "Damage or Loss" ..................................14

    F.    Plaintiffs' Claim for Punitive Damages (Count Fifteen) Should Be
        Dismissed ...................................................................................................14

    G.    Plaintiffs' Claim for Declaratory Relief (Count Sixteen) Should Be
        Dismissed ...................................................................................................15

III.  CONCLUSION ...................................................................................................15

# TABLE OF AUTHORITIES

**Page**

## Cases

*In re Adobe Systems, Inc. Privacy Litig.*,
  66 F. Supp. 3d 1197 (N.D. Cal. 2014) ................................................................. 15

*AdTrader, Inc. v. Google LLC*,
  2018 WL 3428525 (N.D. Cal. July 13, 2018) ..................................................... 12

*Amarel v. Connell*,
  102 F.3d 1494 (9th Cir. 1996) .............................................................................. 2

*Askins v. U.S. Dep't of Homeland Sec.*,
  899 F.3d 1035 (9th Cir. 2018) .............................................................................. 2

*Brodsky v. Apple Inc.*,
  2019 WL 4141936 (N.D. Cal. Aug. 30, 2019) ................................................... 13

*Brown v. Google LLC*,
  685 F. Supp. 3d 909 (N.D. Cal. 2023) ................................................................. 9

*Calhoun v. Google, LLC*,
  113 F.4th 1141 (9th Cir. 2024) ........................................................................... 11

*Luviano v. Multi Cable, Inc.*,
  2016 WL 11220483 (C.D. Cal. Nov. 14, 2016) ................................................. 13

*Doe I v. Google LLC*,
  2025 WL 1616720 (N.D. Cal. June 6, 2025) ....................................................... 9

*Doe v. Chao*,
  540 U.S. 614 (2004) ............................................................................................ 14

*Doe v. Meta Platforms, Inc.*,
  690 F. Supp. 3d 1064 (N.D. Cal. 2023) ......................................................... 3, 14

*In re DoubleClick Inc. Privacy Litig.*,
  154 F. Supp. 2d 497 (S.D.N.Y. 2001) .................................................................. 6

*In re Facebook, Inc. Internet Tracking Litig.*,
  956 F.3d 589 (9th Cir. 2020) ................................................................................ 9

*In re Ford Tailgate Litig.*,
  2014 WL 1007066 (N.D. Cal. Mar. 12, 2014) ................................................... 12

*Fund for Animals, Inc. v. Lujan*,
  962 F.2d 1391 (9th Cir. 1992) .............................................................................. 4

*Gershzon v. Meta Platforms, Inc.*,
    2023 WL 5420234 (N.D. Cal. Aug. 22, 2023) ....................................................................... 9

*In re Google Inc. Gmail Litig.*,
    2013 WL 5423918 (N.D. Cal. Sep. 26, 2013) ....................................................................... 8

*In re Google Inc. Gmail Litig.*,
    2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) .................................................................. 6, 7

*Gray v. OneWest Bank*,
    2014 WL 3899548 (D. Haw. Aug. 11, 2014) ...................................................................... 15

*Gutierrez v. Converse, Inc.*,
    2023 WL 8939221 (C.D. Cal. Oct. 27, 2023) ..................................................................... 13

*Hammerling v. Google, LLC*,
    615 F. Supp. 3d 1069 (N.D. Cal. 2022) .......................................................................... 9, 11

*Hubbard v. Google*,
    2024 WL 3302066 (N.D. Cal. Jul. 1, 2024) ............................................................. 10, 11, 12

*Katz-Lacabe v. Oracle Am., Inc.*,
    668 F. Supp. 3d 928 (N.D. Cal. 2023) ............................................................................... 4, 5

*La Barbera v. Olé Mex. Foods Inc.*,
    2023 WL 4162348 (C.D. Cal. May 18, 2023) ....................................................................... 2

*Lakes v. Ubisoft*,
    777 F. Supp. 3d 1047 (N.D. Cal. 2025) ............................................................................... 6

*Mangindin v. Wash. Mut. Bank*,
    637 F. Supp. 2d 700 (N.D. Cal. 2009) ............................................................................... 15

*Matera v. Google, Inc.*,
    2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) ..................................................................... 8

*In re Meta Healthcare Pixel Litigation*,
    713 F. Supp. 3d 650 (N.D. Cal. 2024) ............................................................................... 14

*Meta Platforms, Inc. v. BrandTotal Ltd.*,
    605 F. Supp. 3d 1218 (N.D. Cal. 2022) ............................................................................. 14

*Nedlloyd Lines B.V. v. Super. Ct.*,
    3 Cal. 4th 459 (1992) .......................................................................................................... 12

*Peralta v. Dillard*,
    744 F.3d 1076 (9th Cir. 2014) ............................................................................................. 2

*Popa v. Microsoft Corp.*,
    153 F.4th 784 (9th Cir. 2025) ............................................................................................ 11

*Riganian v. LiveRamp Holdings, Inc.*,
    2025 WL 2021802 (N.D. Cal. Jul. 18, 2025) ........................................................ 7

*Rodriguez v. Google LLC*,
    2021 WL 2026726 (N.D. Cal. May 21, 2021) ...................................................... 4

*Saeedy v. Microsoft Corp.*,
    2023 WL 8828852 (W.D. Wash. Dec. 21, 2023) .................................................. 10

*Shah v. Cap. One Fin. Corp.*,
    768 F. Supp. 3d 1033 (N.D. Cal. 2025) ............................................................ 11

*Shay v. Apple*,
    512 F. Supp. 3d 1066 (S.D. Cal. 2021) ............................................................ 5

*Starks v. Geico Indem. Co.*,
    2017 WL 11633159 (C.D. Cal. Sept. 1, 2017) .................................................. 2

*Sussman v. Am. Broad. Cos., Inc.*,
    186 F.3d 1200 (9th Cir. 1999) ...................................................................... 6, 7

*Thomas v. Papa Johns Int'l, Inc.*,
    2024 WL 2060140 (S.D. Cal. May 8, 2024) ...................................................... 10

*Thomas v. Papa Johns Int'l, Inc.*,
    2025 WL 1704437 (9th Cir. June 18, 2025) ...................................................... 11

*Tsai v. Wang*,
    2017 WL 2587929 (N.D. Cal. June 14, 2017) .................................................. 12

*United States v. Google*,
    778 F. Supp. 3d 797 (E.D. Va. 2025) ............................................................ 4

*United States v. Christensen*,
    828 F.3d 763 (9th Cir. 2015) .................................................................... 12, 13

*Wash. Mut. Bank, FA v. Super. Ct.*,
    24 Cal. 4th 906 (2001) ............................................................................ 12

*Williams v. Facebook, Inc.*,
    384 F. Supp. 3d 1043 (N.D. Cal. 2018) .......................................................... 13

*In re Zynga Privacy Litig.*,
    750 F.3d 1098 (9th Cir. 2014) .................................................................. 9, 10

### **Statutes**

18 U.S.C. § 2510(4) ...................................................................................... 8

18 U.S.C. § 2510(5)(a) .................................................................................. 8

# I.    PRELIMINARY STATEMENT

Plaintiffs' opposition confirms that none of the six Dormant Claims should proceed. Unable to defend those claims on the merits, Plaintiffs hide behind Judge Koh's motion-to-dismiss order, which addressed ten different claims, and this Court's summary judgment order in *Brown*, which addressed the fundamentally different situation in which users affirmatively elected to use a private-browsing mode rather than using Chrome in its default state. Their gambit fails. Because the Dormant Claims have never been adjudicated, Judge Koh's prior order does not insulate them. And because *Brown* is a completely different case, Plaintiffs' claims should be tested on their own merits.

When they are tested, they crumble. Plaintiffs rightly concede that their cause of action for "punitive damages" must be dismissed. The remaining Dormant Claims fare no better. *First*, Plaintiffs fail to rebut any of the three fatal flaws in their federal Wiretap Act claim: (i) websites choosing to use Google services consented to the transmissions at issue regardless of whether the Data constituted "personal information"; (ii) Google received those transmissions in the ordinary course of business; and (iii) none of the plausibly alleged transmissions are "contents" under the statute. *Second*, Plaintiffs have no good response to the mountain of authority establishing that Google's collection of routine browsing data does not violate users' constitutional privacy rights because it is neither unexpected nor offensive. *Third*, Plaintiffs cannot defend their quasi-contract claim in the "alternative" where no party contests the validity of the actual contract. *Fourth*, Plaintiffs' effort to read out of the statute the three CDAFA requirements they cannot meet misstates the relevant authority and does not save their claim. *Finally*, Plaintiffs offer no authority allowing them to duplicate their damages claims with declaratory relief. In each case, amendment would be futile—the Dormant Claims should be dismissed with prejudice.

# II.    ARGUMENT

## A.    Google's Motion Seeks New Relief, Not Reconsideration

Plaintiffs' "law of the case" arguments are makeweight.[1] Google's motion to dismiss addresses six claims that have never been adjudicated. The Court expressly ordered briefing on

---

[1] Plaintiffs make the cursory arguments that certain of Google's arguments contradict the "law of the case" or seek reconsideration of prior orders without leave under Local Rule 7-9.

1    them, and Google is entitled to consideration of its arguments on their own merits.

2        Even if the Court had previously addressed the Dormant Claims, the law-of-the-case doctrine

3    is inapplicable. "'[L]aw of the case' refers to rulings of a court of appeals when a case is remanded

4    . . . . [T]he Ninth Circuit has cautioned [that] '[p]retrial rulings, often based on incomplete

5    information, don't bind district judges for the remainder of the case.'" *Starks v. Geico Indem. Co.*,

6    2017 WL 11633159, at *5 (C.D. Cal. Sept. 1, 2017) (quoting *Peralta v. Dillard*, 744 F.3d 1076,

7    1088 (9th Cir. 2014)); *see also Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1042 (9th

8    Cir. 2018) ("[L]aw of the case doctrine does not preclude a court from reassessing its own legal

9    rulings in the same case."); *Amarel v. Connell*, 102 F.3d 1494, 1515 (9th Cir. 1996) ("[I]nterlocutory

10   orders and rulings made pre-trial by a district judge are subject to modification by the district judge

11   at any time prior to final judgment, and may be modified to the same extent if the case is reassigned

12   to another judge."). Plainly, the Court's hands are not tied, and it is free to consider arguments

13   concerning the Dormant Claims.

14       Plaintiffs' assertion (Opp. 1 & n.2) that Google seeks "reconsideration" of prior holdings

15   without leave makes even less sense. At the Court's express direction, Google is seeking to dismiss

16   claims that were not the subject of Judge Koh's motion-to-dismiss order (and, needless to say, could

17   not have been the subject of this Court's summary judgment order in *Brown*). And Plaintiffs even

18   acknowledge (Opp. 2) that "the Court permitted Google to move to dismiss the six dormant claims."[2]

19       **B.    Plaintiffs' Federal Wiretap Act Claim (Count One) Should Be Dismissed**

20           **1.    Websites Consented to Google's Receipt of the Data**

21       Google cannot be liable under the Wiretap Act because it is a one-party consent statute and

22   websites (the other parties to the allegedly intercepted communications) plainly consented to

23   Google's receipt of the Data when they installed Google's services for precisely that purpose.

24   Mot. 5–8. Plaintiffs' scattershot attempts to avoid this conclusion fail.

25

26   _____

27   [2] *See also La Barbera v. Olé Mex. Foods Inc.*, 2023 WL 4162348, at *7 (C.D. Cal. May 18, 2023)
     (when evaluating a new complaint in the same case, "the law of the case doctrine does not prevent

28   the Court from revisiting the central holding of the MTD Complaint Order [and] [t]he Court . . .
     need not treat the Motion as a motion for reconsideration")

1    ***Neither Judge Koh's prior order nor the* Brown *order prevents this Court from dismissing***

2    ***the Wiretap Act claim on the basis of website consent.*** Plaintiffs argue that Judge Koh's decision

3    permitting a different Wiretap Act claim to proceed precludes a finding that websites consented.

4    Opp. 5. That decision does not bind this Court for the reasons discussed above. And in any event,

5    Judge Koh's early assessment of website consent rested on a false distinction that websites using

6    Google services "generally consented to the interception of their communications with users" but

7    not to "the interception of their communications with users who were using Chrome without sync."

8    Dkt. 142 at 18. Respectfully, that early assessment rested on a distinction without a difference

9    because, as this Court later recognized, "Chrome without sync" is simply "using Chrome" and

10   tantamount to just "using the internet, so to speak." Dkt. 1103 at 13:16–21; *see* MTD 8 n.8. That

11   characterization is accurate—Plaintiffs do not allege they used any privacy settings or features while

12   browsing the web. On the contrary, they admit they simply used Chrome in its default state.

13   Accordingly, Judge Koh's finding that websites' "generally consented to the interception of their

14   communications with users" applies with full force. It is implausible that a website's consenting to

15   send the Data to Google to obtain its services did not intend its consent to apply to the default state

16   of one of the world's most popular browsers.

17        Nor is there any basis for Plaintiffs to argue (Opp. 7–10) that consent was not "actual" by

18   analogy to *Brown*, where the Court held that websites' general consent to sending Data to Google

19   may not encompass Data generated when users visit their sites ***in private-browsing modes***.

20   Opp. 8–9. As this Court has repeatedly (and correctly) recognized, "this case . . . . is not *Brown*."

21   Dkt. 1103 at 13:20, 14:11–13.[3] It is undisputed that users in what Plaintiffs confusingly call "two

22   not-synced modes"—terms no one used until Plaintiffs made them up—are simply browsing in

23   Chrome's default or signed-in states without enabling any privacy settings, modes, or features.

24   *See* Mot. 7–8. Indeed, Plaintiffs betray the weakness of their own analogy by awkwardly rebranding

25   Chrome's signed-in state to make it sound more privacy-protective (*i.e.* "Signed In But Not

---

[3] Nor does this case present the same Wiretap Act analysis as *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1078 (N.D. Cal. 2023), in which the question was whether healthcare providers consented to Meta's collection of "sensitive healthcare information" after patients had affirmatively logged into their personal patient portals.

1   Consented for Sync mode"). But their made-for-litigation moniker appears nowhere in the Chrome

2   browser, Google's disclosures, or even in the Complaint.[4]

3          Because the browsing activity Plaintiffs allege is "generic," the Wiretap Act analysis in this

4   case more closely resembles that in *Katz-Lacabe v. Oracle America, Inc.*, 668 F. Supp. 3d 928, 945

5   (N.D. Cal. 2023), and *Rodriguez v. Google LLC*, 2021 WL 2026726, at *5 (N.D. Cal. May 21, 2021).

6   In *Katz-Lacabe*, the court dismissed analogous Wiretap Act claims because the website's choice to

7   deploy a defendant's web services "necessarily" means it consented to the alleged interception. The

8   same logic was also dispositive in *Rodriguez*, where Judge Seeborg dismissed Wiretap Claims at

9   the pleading stage based on the finding that app developers necessarily consented to Google's

10  collection of data **even if users had not**. In rejecting precisely the developer-consent argument

11  Plaintiffs raise here, Judge Seeborg explained that "this 'consent-upon-consent' rationale, [whereby]

12  an app creator's agreement to use [Google Services] ends precisely where a user's plausible

13  interpretation of a conflicting privacy setting . . . begins," lacks "[c]ommon sense," is unsupported

14  by any authority, and fails to "grapple with its plainly untenable real-world implications."[5]

15  2021 WL 2026726, at *5. For this reason, Plaintiffs' argument (Opp. 9) that the Ninth Circuit's

16  *Calhoun* decision "also applies to Google's website consent defense," is plainly incorrect. That

17  decision applied solely to **user** expectations, which have no bearing on the issue of **website** consent.[6]

18  _____

19  [4] Plaintiffs' own allegations demonstrate there is no mechanism to enable a "not-synced" mode
    analogous to Incognito. On the contrary, the Complaint admits "syncing has never been a default,"

20  and requires a series of "affirmative steps to enable." FAC ¶ 46.
    [5] Those cases likewise vitiate Plaintiffs' attempt (Opp. 10) to defeat website consent on the basis

21  that Google did not "put websites on even inquiry notice that the quality of the data Chrome sends
    to Google renders it **personal information**." As an initial matter, that argument makes no sense

22  because Plaintiffs' theory of the case assumes that the Data is "personal information" on the face of
    Google's disclosures and California law. *See* FAC ¶¶ 50–96. But in any event, the plaintiffs in both

23  *Katz-Lacabe* and *Rodriguez* **also** alleged the defendants collected personal information—indeed,
    *Katz-Lacabe* concerned allegations that Oracle "aggregate[s] and synchronize[s] the collected data

24  to . . . establish 'a single, universal view of identity' for each user," 668 F. Supp. 3d at 935–36—
    and websites' deployment of the relevant tools was still sufficient for consent.

25  [6] As an afterthought, Plaintiffs argue "non-mutual offensive collateral estoppel" somehow precludes

26  Google's website-consent defense because a different court in an unrelated antitrust action found
    that switching from a Google ads product to a new ad server is difficult. Opp. 10 (citing *United

27  States v. Google*, 778 F. Supp. 3d 797, 850–52 (E.D. Va. 2025)). That is baseless. "[C]ollateral
    estoppel applies only when the issues presented in each matter are identical [and] is inapplicable if

28  the issues are merely similar." *Fund for Animals, Inc. v. Lujan*, 962 F.2d 1391, 1399 (9th Cir. 1992).

1    ***Plaintiffs' subjective and self-serving claim that the Data is "personal" is irrelevant.***

2    Plaintiffs argue that websites' consent is insufficient because websites supposedly did not "consent

3    on behalf of a website visitor" to "Google's interception of communications that contain personal

4    information." Opp. 6. Their argument fails for four independent reasons.

5        *First*, Google's website-consent argument does not turn on whether websites consented "on

6    behalf of Plaintiffs." Because the Wiretap Act is a one-party consent statute, websites' consent on

7    their own behalf is enough. *See* Mot. 5.

8        *Second*, Plaintiffs' assertion that Google is improperly "conflat[ing] the data that the

9    websites receive, and the data that Google causes Chrome to send to itself," Opp. 6, is a strawman

10   rebutted by their own Complaint. Plaintiffs themselves allege that the Data websites receive (and

11   consent to send to Google) is the same as the Data Google receives. *See, e.g.*, FAC ¶ 279 ("Google[]

12   received the content of Plaintiff communications with non-Google websites through the

13   surreptitious ***duplication*** and forwarding of those communications.") (emphasis added); *id.* ¶ 152

14   ("Chrome ***copies and re-directs*** the content of the user's GET request [to the website] . . . to Google

15   Ads, Google DoubleClick, and Google Analytics." (emphasis added)). Indeed, if the Data were not

16   the same, there could be no "interception" because the communications Plaintiffs allege Google

17   intercepted ***are their communications with websites***. There is no daylight between them.

18       *Third*, whether the Data constitutes "personal" information is immaterial. The Wiretap Act's

19   consent exception does not distinguish between "personal" and "non-personal" information, and

20   Plaintiffs offer no case applying such a distinction.[7] *See, e.g.*, *Katz-Lacabe*, 668 F. Supp. 3d at 945

21   (dismissing Wiretap Act claim involving alleged personal information based on website consent).

22   However labelled, Google is alleged to have received precisely the Data categories websites

23   _____

24   Here, they are neither: another court's *Sherman Act* findings (in a totally different factual context)
     have nothing to do with the *Wiretap Act* consent defense at issue here.

25   [7] Plaintiffs try to analogize this case to *Shay v. Apple*, in which the court rejected arguments that
     "failed to address the allegations and theories of liability" in the complaint. Opp. 6. *Shay* is

26   inapposite. There, the plaintiffs alleged Apple failed to warn customers that its gift cards were prone
     to fraud, and Apple inaptly argued it could not be liable for the fraud itself. *Shay v. Apple*, 512

27   F. Supp. 3d 1066, 1071 (S.D. Cal. 2021). Here, by contrast, Plaintiffs allege that Google received
     the Data without consent, and Google meets that argument head-on by explaining that websites

28   consented to exactly those Data transmissions.

consented to Google receiving (*i.e.*, the data embedded in HTTP requests that enable the Services). Plaintiffs' subjective and self-serving characterization of the Data is irrelevant.

*Fourth*, Plaintiffs conspicuously *do not allege* that websites did not consent to Google's receipt of the Data, and their opposition points to no such allegation.[8] They carefully allege only that Google supposedly "vitiate[d]" websites' consent—tacitly conceding consent was obtained—by not informing them of the alleged promises in the CPN (a public document). *See* FAC ¶ 282. That implausible assertion cannot save Plaintiffs' claim for the (largely unrebutted) reasons in Google's motion. *See* Mot. 5–7.

**The crime-tort exception does not apply.** Plaintiffs' attempt to shoehorn this case into the Wiretap Act's narrow crime-tort exception fails. The exception negates consent only if the "primary motivation or a determining factor in [the interceptor's] actions has been to injure plaintiffs tortiously." *In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *18 n.13 (N.D. Cal. Mar. 18, 2014) (Koh, J.); *see, e.g.*, *Sussman v. Am. Broad. Cos., Inc.*, 186 F.3d 1200, 1202–03 (9th Cir. 1999) ("[T]he focus . . . is upon whether the *purpose* for the interception—its intended use—was criminal or tortious"); Mot. 6–7 & n.7 (collecting cases). Plaintiffs do not and cannot allege that is the case here. Rather, they allege "Google's motivation . . . was to increase user engagement and increase revenue for Google." FAC ¶ 97. *See Lakes v. Ubisoft*, 777 F. Supp. 3d 1047, 1057-58 (N.D. Cal. 2025) (dismissing claims where purpose of alleged interception is "to improve the effectiveness of [the defendant's] advertising and marketing" and benefit economically); *In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 519 (S.D.N.Y. 2001) ("DoubleClick's purpose has plainly not been to perpetuate torts on millions of Internet users, but to make money by providing a valued service to commercial Web sites."). Google's alleged goals of increasing user engagement and improving its bottom-line revenue are far from a crime.

Recognizing as much, Plaintiffs ask the Court to ignore decades of consistent authority—including the Ninth Circuit's controlling decision in *Sussman*—in favor of the purportedly contrary

---

[8] Even if Plaintiffs *had* facially alleged that website publishers did not consent to the Data transmissions they purposely configured their websites to cause, the Court need not accept that implausible allegation. *See* Mot. 5–6 & n.5.

1   reasoning in *Riganian v. LiveRamp Holdings, Inc.*, 2025 WL 2021802 (N.D. Cal. Jul. 18, 2025), a

2   recent case involving Plaintiffs' counsel that observed "committing a tort and seeking a profit are

3   not mutually exclusive." Opp. 11 (quoting *Riganian*, 2025 WL 2021802, at *9). The Court should

4   decline to break with the weight of precedent based on *Riganian*. While *Riganian* may be right that

5   "exploiting unlawfully obtained information is [not] 'licit' merely because it is profitable,"

6   2025 WL 2021802, at *9, that misstates the issue, which is whether the "primary motivation or a

7   determining factor" for the interception is "to injure plaintiffs." *Gmail*, 2014 WL 1102660, at *18

8   n.13; *see Sussman*, 186 F.3d at 1202–03 ("Where the purpose is not illegal or tortious, but the means

9   are, the victims must seek redress elsewhere.").

10      *Riganian*'s broad approach to the crime-tort exception—motivated by fears that the

11   exception would excuse blackmail or bank robbery just because blackmailers and robbers also hope

12   to make money, *see* 2025 WL 20218002, at *9—overreads that exception. "[I]ntercepting a

13   communication with the intent to use that communication to blackmail," *see id.*, would **not** be

14   excusable, because a blackmailer's **purpose** is to commit a crime. Nor is the narrow scope of the

15   exception tantamount to letting a bank robber off the hook, because bank robbery is independently

16   prohibited by statute. Broadly construing the crime-tort exception to apply here—despite websites'

17   consent and the absence of any allegation that Google intended to injure Plaintiffs or commit a

18   crime—would extend Wiretap Act liability to situations Congress clearly intended to exempt.[9]

19      ## 2.   Google Received the Data in the Ordinary Course of Business

20      Plaintiffs admit "Google source code" installed on third-party websites to provide web

21   services effectuates the alleged interception. Opp. 12 (Google source code third-party websites

22   install on their site "command[s] Chrome to contemporaneously re-direct the precise content of the

23   GET or POST part of the communication to Google"). That admission is dispositive.

24   The ordinary-course-of-business ("OCB") exception applies if the intercepting "device" is "being

25   used by a provider of a wire or electronic communication service in the ordinary course of business."

26

27   _____

[9] In *Sussman*, for instance, the Ninth Circuit recognized that ABC's alleged interception "may well

28   have been a tortious invasion of privacy," but was not actionable under the Wiretap Act because
    ABC's *purpose* was not tortious. 186 F.3d at 1203.

18 U.S.C. § 2510(4) & (5)(a).[10] Here, the "device" **can only be the Google code**, *see* Mot. 8–10 & n.12, and Plaintiffs' allegations make clear that the installation of Google's code and the resulting Data collection is the core—and used in the ordinary course—of Google's web services business. *See, e.g.*, FAC ¶¶ 97–112, 130–140.

The requirement that there be "some nexus between the need to engage in the alleged interception and the provider's ultimate business," Opp. 12 (quoting *Matera v. Google, Inc.*, 2016 WL 8200619, at *7 (N.D. Cal. Aug. 12, 2016)), only reinforces this conclusion. The alleged interceptions enable Google's relevant businesses. To avoid this result, Plaintiffs reframe the relevant inquiry—arguing that the interceptions must be necessary for users to communicate with websites to trigger the OCB exception. Opp. 12–13. But that misstates the statute's plain language: the Wiretap Act does not ask whether a "device" facilitates the challenged *communication*, but whether that "device" is "being used . . . in the ordinary course of [a provider's] business," to facilitate the provider's "ability to provide the underlying service or good." *In re Google Inc. Gmail Litig.*, 2013 WL 5423918, at *7, 11 (N.D. Cal. Sep. 26, 2013) (citing 18 U.S.C. § 2510(5)(a)(ii)). Plainly, the Google code serving as the "device" under Plaintiffs' Wiretap Act theory fits the bill.[11]

### 3.    Plaintiffs Do Not Allege Google Intercepted Contents

Google has explained that the Data alleged in the Complaint is not "content" under the Wiretap Act. Mot. 10–13. Plaintiffs concede that conclusion as to all but one category—so-called "full-string URLs." Opp. 13. But Plaintiffs' argument erroneously conflates (i) URLs that contain search terms typed in by a user—which can be contents but which Plaintiffs fail to allege—and (ii) URLs that just happen to be long. The URLs in Plaintiffs' complaint reflect exclusively the latter category—*i.e.*, none contains search terms. *See* FAC ¶¶ 122, 146, 164–65, 168, 170, 177–79,

---

[10] Plaintiffs point to their bare allegation that Google uses additional alleged wiretapping devices, Opp. 13, but allege no concrete facts to suggest these purported devices cause any transmission to Google independently of the code. That Chrome may "send [Data] to Google regardless of whether the user is logged-in to Chrome Sync," Opp. 12, does not make Chrome a wiretapping device any more than a telephone that does not affirmatively disable bugs.

[11] Even more, Plaintiffs' attempt to treat the alleged interceptions as hermetically sealed from the interactions between users and websites is belied by their Complaint, which explains, (i) Plaintiffs use Chrome to request websites' code, and (ii) websites—as a part of the communication—intentionally include the code that causes the challenged transmissions. FAC ¶¶ 120, 129.

1  184–85. And because those URLs contain only "address information, not a search term or similar

2  communication **made by the user**," they "do[] not constitute the contents of a communication."

3  *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1109 (9th Cir. 2014) (emphasis added).

4      These details matter. And Plaintiffs' cited authority (Opp. 14 & n.5) actually supports

5  Google. Consistent with the Ninth Circuit's decision in *Zynga*, nearly all of the cases Plaintiffs

6  string-cite as "approaching black-letter law" expressly state that a URL can be "contents" if it

7  contains **user-generated search terms or queries**.[12] *Facebook Tracking* does not dictate otherwise—

8  nor could it, since that opinion addressed the level of detail in a URL only as it pertained to a

9  plaintiff's "reasonable expectation of privacy," **not** what constitutes "content" under the Wiretap

10  Act—a wholly distinct issue. *In re Facebook, Inc. Internet Tracking Litig.,* 956 F.3d 589, 601–06

11  (9th Cir. 2020). Even so, *Facebook Tracking* still expressed concerns only about URLs that

12  "emanate from search terms inputted into a third-party search engine." *Id.* at 605.

13      This Court's *Brown* decision does not compel a different result. While the Court concluded

14  that a particular sample URL without user-generated queries may contain contents, Opp. 13, it did

15  so under the apparent understanding that the URL *did* contain "the type of **search queries** the Ninth

16  Circuit thought could be content in *Zynga Privacy*." *Brown v. Google LLC*, 685 F. Supp. 3d 909,

17  935 (N.D. Cal. 2023) (emphasis added). Google has since clarified that it did not (Mot. 12 n.15),

18  and neither do the URLs in Plaintiffs' Complaint.

19      Finally, Plaintiffs' efforts to distinguish Google's cases fail. Plaintiffs claim *Zynga* is

20  distinguishable because the URLs at issue in *Zynga* did not "include[] information about the

21  substance, purport, or meaning of an intended message." Opp. 14–15 (citing the URL for an article

22  providing mental health tips). That is an accurate description of *Zynga*, but not a way to distinguish

23  its holding. In *Zynga*, the Ninth Circuit considered the example of a URL allegedly revealing that

24  "a Facebook user who was gay and struggling to come out of the closet was viewing the Facebook

25  page of a gay support group"; the Court nevertheless held such a URL was not content because it

---

26

27  [12] *See, e.g. Hammerling v. Google, LLC*, 615 F. Supp. 3d 1069, 1093 (N.D. Cal. 2022) (URLs can be contents "when they reproduce a person's personal search engine queries"); *Gershzon v. Meta Platforms, Inc.*, 2023 WL 5420234, at *12 (N.D. Cal. Aug. 22, 2023) (same); *Doe I v. Google LLC*,

28  2025 WL 1616720, *3 (N.D. Cal. June 6, 2025) (URLs "contained . . . the query string").

merely reflected the location of a page he visited and did not include the user's specific search terms. 750 F.3d at 1108. And despite Plaintiffs' breezy attempt (Opp. 15) to distinguish Google's authority concerning "session replay" technology as not concerning URLs, that authority is instructive: if even a complete history of a user's mouse movements, clicks, and keystrokes around a website are not content, URLs without search queries are not either. *See* Mot. 12–13.

## C. Plaintiffs' Invasion of Privacy Claim (Count Six) Should Be Dismissed

Plaintiffs cannot satisfy either element of their invasion of privacy claims.[13]

### 1. Plaintiffs Fail to Allege a Reasonable Expectation of Privacy

Plaintiffs fail to distinguish Google's authority holding that modern internet browsing necessarily entails a level of data collection and cross-site tracking that reasonable users expect. *See* Mot. 13–14. Their only response to *Hubbard* is that it concerned visitors to YouTube rather than non-Google sites, Opp. 16, but *Hubbard* confirmed that users reasonably expect tracking "across the internet." *Hubbard v. Google*, 2024 WL 3302066, at *7 (N.D. Cal. Jul. 1, 2024).[14] Plaintiffs seek to distinguish the Ninth Circuit's recent decision in *Thomas* on the basis that the complaint in that case purportedly omitted "specific allegations about the Defendant's actions." Opp. 16. But the decision the Ninth Circuit affirmed as "properly dismiss[ing]" the claim made clear that "numerous cases filed in federal courts around the country" demonstrated the data collection challenged there to be commonplace. *Thomas v. Papa Johns Int'l, Inc.*, 2024 WL 2060140, at *3–4 (S.D. Cal. May 8, 2024), *aff'd* 2025 WL 1704437 (9th Cir. June 18, 2025).

### 2. Plaintiffs Fail to Allege a Serious Invasion of Privacy

Plaintiffs baldly assert (Opp. 18) that "[t]he bar is incredibly high" to dismiss a claim on the "serious invasion" element. Exactly the opposite is true. "The California Constitution sets a high

---

[13] Judge Koh previously sustained Plaintiffs' claim for intrusion upon seclusion, a cause of action courts frequently analyze in tandem with claims for invasion of privacy. *See* Opp. 16. Google respectfully submits that in light of the more recent authority discussed in its Motion and herein, both claims should be dismissed. *See* Mot. 15 n.17. To the extent the Court agrees, it should dismiss at least the invasion-of-privacy claim now, and Google will seek to dispose of the parallel intrusion claim at summary judgment.

[14] *See also, e.g.*, *Saeedy v. Microsoft Corp.*, 2023 WL 8828852, at *4 (W.D. Wash. Dec. 21, 2023) (observing "Plaintiffs have no recognized reasonable expectation of privacy in their browsing data" in case alleging Microsoft's Edge browser sent browsing data to Microsoft).

bar for **establishing** an invasion of privacy claim." *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1047 (N.D. Cal. 2025) (emphasis added). Plaintiffs do not meet that bar. At root, Plaintiffs allege that Google received routine HTTP requests and that some users (though not Plaintiffs, who did not read Google's disclosures) could interpret Google's policies to mean that data would not be collected. Opp. 1. None of the routine browser data allegedly collected here is highly offensive—it is sent and received by countless users, websites, and third-party service providers every single day. *See Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022) (collecting authority).[15] Indeed, these transmissions are the underpinning of the internet. *Id.* Nor do Google's disclosures make the data collection highly offensive under *Facebook Tracking*. There is a world of difference between policies that are simply "ambiguous" and those that are "blatantly deceitful." *Hammerling*, 615 F. Supp. 3d at 1090. In holding only that "in the light most favorable to Plaintiffs, a reasonable user would *not necessarily* understand that they were consenting to the data collection at issue," the Ninth Circuit put the disclosures at issue in this case firmly in the former category. *See Calhoun v. Google, LLC*, 113 F.4th 1141, 1150 (9th Cir. 2024) (emphasis added).

Plaintiffs also offer no authority (Opp. 19) for vesting non-residents who were allegedly harmed outside California with rights under California's Constitution just because Google's contract contains a California choice-of-law clause. Google does not dispute that California law governs the parties' dispute, but California law extends the privacy protections of its constitution only to individuals who reside (or were harmed) in California. *See* Mot. 13. Neither of Plaintiffs' cases remotely suggests that non-Californians may bring constitutional claims. *See Nedlloyd Lines B.V. v. Super. Ct.*, 3 Cal. 4th 459, 462-63 (1992) (enforcing choice-of-law clause by applying California

---

[15] Plaintiffs' glib attempt (Opp. 17) to dismiss the Ninth Circuit's recent decisions *Thomas v. Papa Johns Int'l, Inc.*, 2025 WL 1704437 (9th Cir. June 18, 2025), and *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025), on the basis that "[t]his case is not about a single website, pizza, or pet stores," is unavailing. Google cited those cases to illustrate that the forms of data it collects to provide the Services—each far less invasive than the session replay software at issue in *Thomas* and *Popa*—are routine and not highly offensive. Mot. 14–15. The mere fact that such routine data was collected from millions of users across multiple websites instead of just one does not transform its collection into a "serious" invasion. *See Hammerling*, 615 F. Supp. 3d at 1089–90 (no serious invasion despite alleged collection "from 'millions of individuals'"); *Hubbard*, 2024 WL 3302066, at *7 ("Contemporary internet browsing involves . . . tracking users across the internet . . . .").

law to claims for breach of contract, breach of the implied duty of fair dealing, and breach of fiduciary duty "arising out of the contract"); *Wash. Mut. Bank, FA v. Super. Ct.,* 24 Cal. 4th 906, 927–28 (2001) (holding adhesion contracts designating the laws of various other states required individualized evaluation before certification of a nationwide class).

### D.   Plaintiffs' Quasi-Contract Claim (Count Ten) Should Be Dismissed

Facing blackletter law that no quasi-contract claim is available when the parties have an enforceable agreement, *see* Mot. 15–16 & n.18, Plaintiffs argue that "if Google defeats the contract claim [at trial], Plaintiffs should be permitted to proceed with [a] quasi-contract claim," Opp. 19. That is wrong. Because Google has never disputed the existence of a contract, if Plaintiffs' contract claim fails at trial, it would not be due to *unenforceability* but to the *absence of breach*. Even in the alternative, Plaintiffs do not "plead[] facts suggesting that the contract may be unenforceable or invalid," and thus their quasi-contract claim must be dismissed. *Tsai v. Wang*, 2017 WL 2587929, at *8 (N.D. Cal. June 14, 2017); *see also, e.g.*, *AdTrader, Inc. v. Google LLC*, 2018 WL 3428525, at *11 (N.D. Cal. July 13, 2018) ("Plaintiffs must allege in the alternative that the parties do not have an enforceable contract pertaining to Google's advertisement services in order to plead an unjust enrichment claim.").[16]

### E.   Plaintiffs' CDAFA Claim (Count Twelve) Should Be Dismissed

Plaintiffs fail to rebut any of the three independent reasons to dismiss their CDAFA claim.

#### 1.   Google Did Not Take Data Without Permission

Recognizing they cannot plead that Google circumvented technical or code-based barriers to obtain the Data, *see* Mot. 17, Plaintiffs instead argue that *United States v. Christensen*, 828 F.3d

---

[16] Although irrelevant in the absence of a quasi-contract claim, Plaintiffs further err (Opp. 19–20) in arguing they are entitled to disgorgement in any form. Plaintiffs may not recover "two different remedies for a singular injury," *i.e.*, "the harm Plaintiffs [allegedly] suffered as a result of Defendants' misappropriation of their information." *Hubbard*, 2024 WL 3302066, at *6 (addressing claim to disgorge profits in excess of actual economic damages). Because Plaintiffs have an adequate remedy at law under their statutory and tort claims, they cannot pile atop that remedy with "disgorgement of Defendant's [allegedly] unjustly earned profits." *See In re Ford Tailgate Litig.*, 2014 WL 1007066, at *5 (N.D. Cal. Mar. 12, 2014) ("[W]here the unjust enrichment claim relies upon the same factual predicates as a plaintiff's legal causes of action, it is not a true alternative theory of relief but rather is duplicative of those legal causes of action." (citation omitted)).

763, 789 (9th Cir. 2015) read that requirement out of CDAFA jurisprudence entirely. Opp. 20–21. But *Christensen* did **not** do away with the circumvention test; indeed, it did not analyze CDAFA's "without permission" prong at all. The basis for Plaintiffs' argument seems to be that *Christensen* (after considering only the "access" prong) affirmed convictions of police officers who took bribes to extract unauthorized law-enforcement data after "logging into a database with a valid password." 828 F.3d 763, 789. But logging into a password-protected database is the *epitome* of overcoming a code-based barrier—it is nothing like Google's **receipt** of Data that websites send to Google by design to receive services. No wonder, then, that even after *Christensen*, courts have repeatedly reaffirmed the circumvention test Plaintiffs fail to meet here.[17] The Ninth Circuit's decision in *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1068 (9th Cir. 2016), is not to the contrary either because liability there turned on the computer owner's cease-and-desist letter affirmatively stating the defendant lacked permission, for which there is no analogue here.[18]

### 2. Google Did Not "Access" Plaintiffs' Computers

Plaintiffs argue that even though it is third-party websites (and **not** Google) that instruct Chrome to send the Data to Google, Google should still be considered the party "accessing" Plaintiffs' computers. Opp. 21. But the fact that Google made its code available to websites and provided instructions on how to use it, Opp. 21, does not change that the websites themselves choose to install that code and transmit it to their users. *Google* does not "proactively 'access[]' or

---

[17] *See, e.g.*, *Brodsky v. Apple Inc.*, 2019 WL 4141936, at *9 (N.D. Cal. Aug. 30, 2019) ("To allege that a defendant acted without permission under [CDAFA], a plaintiff must allege that the offending software was 'designed in such a way to render ineffective any barriers . . . [or] circumvent[] technical or code-based barriers'"); *Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1053 (N.D. Cal. 2018); *Gutierrez v. Converse, Inc.*, 2023 WL 8939221, at *4 (C.D. Cal. Oct. 27, 2023). One such case applied that test while expressly recognizing that there could still be a CDAFA violation if someone "used technically-operable log-in information to access portions of a computer system which the individual knew he was not permitted to access"—exactly what happened in *Christensen*. *Luviano v. Multi Cable, Inc.*, 2016 WL 11220483, at *5 & n.11 (C.D. Cal. Nov. 14, 2016).

[18] The rule of lenity also precludes finding Google liable based on a broader definition of "without permission" because it would criminalize the violation of ambiguous terms. Mot. 17 n.19. That Google previously argued (and the Court agreed) that its terms were unambiguous, Opp. 20, is irrelevant because the Ninth Circuit subsequently held their meaning is a question for a jury.

---

-13-

'communicat[e] with'" users' computers, as CDAFA requires, and so cannot be liable. *Meta Platforms, Inc. v. BrandTotal Ltd.*, 605 F. Supp. 3d 1218, 1260 (N.D. Cal. 2022).

Nor do Plaintiffs plausibly defend their characterization of cookies as a "contaminant." To fit the statutory definition, a contaminant must "usurp[] the normal operation of the computer or computer system." *See* Mot. 18 (quoting *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1083 (N.D. Cal. 2023)). While the court in *Doe* later allowed CDAFA claims involving certain (non-Google) cookies and tracking pixels to proceed, *see* Opp. 22, it did so based on allegations that those alleged contaminants "alter[ed] plaintiffs' data and devices," and "usurp[ed] the normal operation of website visitors' devices." *See In re Meta Healthcare Pixel Litigation*, 713 F. Supp. 3d 650, 656–57 (N.D. Cal. 2024). Plaintiffs cannot allege concrete facts to support such allegations here.

### 3.    Plaintiffs Suffered No Statutory "Damage or Loss"

The weight of authority (*see* Mot. 18–19) holds that CDAFA requires actual damage to a plaintiff's computer system or data, which Plaintiffs do not and cannot allege. Plaintiffs simply claim that such an allegation is unnecessary because *Facebook Tracking* held that a defendant's unjust enrichment may be sufficient to confer Article III standing. Opp. 22. But an injury-in-fact, while sufficient for Article III standing, is not sufficient to state a claim where, as here, the statute requires a particular *type* of injury. *See Doe*, 690 F. Supp. 3d at 1082 n.5 (distinguishing *Facebook Tracking* because it "f[ound] Article III standing to allege CDAFA claim, but [did] not address[] standing under the 'loss or damage' requirement of the statute"); *cf. Doe v. Chao*, 540 U.S. 614, 624–25 (2004) ("[A]n individual subjected to an adverse effect [may have] injury enough to open the courthouse door, but without more has no cause of action for damages."). Thus, Plaintiffs' failure to allege injury to their systems or data is dispositive.

### F.    Plaintiffs' Claim for Punitive Damages (Count Fifteen) Should Be Dismissed

Plaintiffs "concede that [punitive damages] is a remedy, not a cause of action, and accordingly withdraw" that claim. Opp. 3. There is thus no dispute this claim should be dismissed with prejudice. Plaintiffs' remaining argument (Opp. 23–24) that punitive damages are nonetheless available is both premature and irrelevant to this motion.

1

**G.    Plaintiffs' Claim for Declaratory Relief (Count Sixteen) Should Be Dismissed**

Plaintiffs quibble with the established principle that declaratory relief is inappropriate where it duplicates another cause of action because the case Google happened to cite applied that rule to declaratory relief under California law rather than the federal Declaratory Judgment Act ("DJA"). Opp. 24–25. Plainly, that near-universal principle is not limited to a single case, and applies equally to claims under the DJA. *See, e.g.*, *Gray v. OneWest Bank*, 2014 WL 3899548, at \*12 (D. Haw. Aug. 11, 2014) ("[A] claim for declaratory relief is not cognizable as an independent cause of action under the Declaratory Judgment Act, 28 U.S.C. § 2201, where it is based on Defendant's past wrongs and simply duplicates Plaintiff's other causes of action."); *Mangindin v. Wash. Mut. Bank*, 637 F. Supp. 2d 700, 707 (N.D. Cal. 2009) ("A claim for declaratory relief is unnecessary where an adequate remedy exists under some other cause of action."). Because all of Plaintiffs' proposed declaratory relief is subsumed by their other causes of action—particularly their contract claim—their standalone declaratory-judgment claim should be dismissed.[19]

**III.    CONCLUSION**

Plaintiffs' Dormant Claims should be dismissed with prejudice.[20]

---

[19] Plaintiffs mistakenly suggest (Opp. 24–25) they may "seek a declaration of ongoing rights" under Google's contract like the plaintiffs in *In re Adobe Systems, Inc. Privacy Litig.*, 66 F. Supp. 3d 1197 (N.D. Cal. 2014), omitting that declaratory relief was available in *Adobe* because the plaintiffs *had not pleaded a separate breach-of-contract claim to vindicate those rights*. *Id.* at 1222–23, 1225.

[20] Plaintiffs alternatively seek leave to amend their dormant claims "to conform to proof," Opp. 25, but provide no basis to believe that any "proof" they could offer resolves the *legal* deficiencies precluding each of their claims.

1    DATED:  October 30, 2025                Respectfully submitted,

2

3                                            QUINN EMANUEL URQUHART &
                                             SULLIVAN, LLP
4
                                             By:    /s/ *Andrew H. Schapiro*
5                                                   Andrew H. Schapiro (admitted *pro hac vice*)
                                                    andrewschapiro@quinnemanuel.com
6                                                   Teuta Fani (admitted *pro hac vice*)
                                                    teutafani@quinnemanuel.com
7                                                   Joseph H. Margolies (admitted *pro hac vice*)
                                                    josephmargolies@quinnemanuel.com
8                                                   191 N. Wacker Drive, Suite 2700
                                                    Chicago, IL 60606
9                                                   Telephone: (312) 705-7400
                                                    Facsimile: (312) 705-7401
10

11                                                  Stephen A. Broome (CA Bar No. 314605)
                                                    stephenbroome@quinnemanuel.com
12                                                  Viola Trebicka (CA Bar No. 269526)
                                                    violatrebicka@quinnemanuel.com
13                                                  Crystal Nix-Hines (Bar No. 326971)
                                                    crystalnixhines@quinnemanuel.com
14                                                  Alyssa G. Olson (CA Bar No. 305705)
                                                    alyolson@quinnemanuel.com
15                                                  865 S. Figueroa Street, 10th Floor
                                                    Los Angeles, CA 90017
16                                                  Telephone: (213) 443-3000
                                                    Facsimile: (213) 443-3100
17

18                                                  Xi ("Tracy") Gao (CA Bar No. 326266)
                                                    tracygao@quinnemanuel.com
19                                                  Carl Spilly (admitted *pro hac vice*)
                                                    carlspilly@quinnemanuel.com
20                                                  1300 I Street NW, Suite 900
                                                    Washington D.C., 20005
21                                                  Telephone: (202) 538-8000
                                                    Facsimile: (202) 538-8100
22

23                                                  *Attorneys for Defendant Google LLC*

24

25

26

27

28

GOOGLE'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS DORMANT CLAIMS